## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re Rembrandt Technologies, LP<br>Patent Litigation | ) MDL Case No. 07-md-1848 (GMS) |
| Rembrandt Technologies, LP,<br><br>Plaintiff,<br><br>v.<br><br>Adelphia Communications Corporation;<br>Century-TCI California, LP;<br>Century-TCI California Communications, LP;<br>Century-TCI Distribution Company, LLC;<br>Century-TCI Holdings, LLC;<br>Parnassos, LP;<br>Parnassos Communications, LP;<br>Parnassos Distribution Company I, LLC;<br>Parnassos Distribution Company II, LLC;<br>Parnassos Holdings, LLC; and<br>Western NY Cablevision, LP,<br><br>Defendants | ) Case No. 1:07-cv-00214 (WHP)<br>)<br>) **STATEMENT PURSUANT TO**<br>) **LOCAL RULE 81.2**<br>) Filed: July 11, 2007 |

Defendants Adelphia Communications Corporation; Century-TCI California, LP; Century-TCI California Communications, LP; Century-TCI Distribution Company, LLC; Century-TCI Holdings, LLC; Parnassos, LP; Parnassos Communications, LP; Parnassos Distribution Company I, LLC; Parnassos Distribution Company II, LLC; Parnassos Holdings, LLC; and Western NY Cablevision, LP (collectively, "Defendants" or "Adelphia"), by their attorneys, The Bayard Firm, P.A., hereby state as follows:

1.    Defendants filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code in June 2002 in the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), Case No. 02-41729.

1

2.      Plaintiff filed the above-captioned case, Case No. 1:07-cv-00214 (WHP), in the District Court for the Southern District of New York (the "District Court"). Case No. 1:07-cv-00214, D.I. 1-2, attached hereto as Exhibits A-B.

3.      Specifically, the plaintiff filed a Motion to Withdraw the Reference to the Bankruptcy Court (the "Motion"), requesting that the District Court withdraw the reference of Adversary Proceeding, Case No. 06-01739 (REG) (the "Adversary Proceeding"), to the Bankruptcy Court. *Id.*

4.      Plaintiff's complaint in the Adversary Proceeding, attached hereto as Exhibit C, alleged post-petition infringement of United States Letters Patent 5,710,761; 5,778,234; 6,131,159; and 6,950,444.

5.      Adelphia opposed the Motion. Case No. 1:07-cv-00214, D.I. 5, attached hereto as Exhibit D.

6.      Shortly after Adelphia filed its opposition to the Motion, Coxcom, Inc. filed a notification that it had filed a motion with the Judicial Panel on Multidistrict Litigation (the "JPMDL") to transfer and consolidate certain patent infringement cases filed by plaintiff, including the above-captioned case and the Adversary Proceeding. *See* Case No. 1:07-cv-00214, D.I. 7, attached hereto as Exhibit E.

7.      The JPMDL subsequently ordered the transfer of both the above-captioned case and the Adversary Proceeding to this Court for coordinated or consolidated pretrial proceedings. (D.I. 1.)

8.      The District Court transferred the above-captioned case to this Court on June 26, 2007. *See* Case No. 1:07-cv-00214, Docket Sheet, attached hereto as Exhibit F.

9.      At the time that the District Court transferred the above-captioned case to this Court, the District Court had not ruled on the Motion. *See id.*

10.     The Motion is, therefore, a "pending matter[] which requires judicial action" under as the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware. D. Del. LR 81.2.

664583-1

11.    Adelphia is not aware of any other matter which requires judicial action in the above-captioned case.

Dated: July 11, 2007

OF COUNSEL:

Jeremy S. Pitcock
Peter J. Toren
Monica V. Bhattacharyya
Steven D. Chin
Jamie W. McGloin-King
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, NY 10019

THE BAYARD FIRM, P.A.

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk (No. 0922)
Scott G. Wilcox (No. 3882)
Stephen B. Brauerman (No. 4952)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, Delaware 19899
(302) 655-5000

Attorneys for Defendants / Counterclaimants and Third-Party Plaintiffs Adelphia Communications Corporation; Century-TCI California, LP; Century-TCI California Communications, LP; Century-TCI Distribution Company, LLC; Century-TCI Holdings, LLC; Parnassos, LP; Parnassos Communications, LP; Parnassos Distribution Company I, LLC; Parnassos Distribution Company II, LLC; Parnassos Holdings, LLC; and Western NY Cablevision, LP

664583-1

# EXHIBIT A

Vineet Bhatia (VB 9964)
SUSMAN GODFREY L.L.P.
590 Madison Ave , 8th Floor
New York, NY 10022
Main Telephone: (212) 336-8330

James L. Garrity, Jr. (JG 8389)
Marc B. Hankin (MH 7001)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York  10022
Telephone:  (212) 848-4000
Facsimile:  (212) 848-7179

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: Adelphia Communications Corporation, et al. | ) ) ) | Chapter 11 |
| Debtors | ) ) ) | Case No. 02-41729 (REG) Jointly Administered |
| ———————————————————— | ) | |
| Rembrandt Technologies, LP | ) ) | |
| *Plaintiff/Counter-defendants* | ) ) | Adversary Proceeding |
| v. | ) ) ) | No. 06-01739 (REG) |
| Adelphia Communications Corporation; Century-TCI California, LP; Century-TCI California Communications, LP; Century-TCI Distribution Company, LLC; Century-TCI Holdings, LLC; Parnassos, LP; Parnassos Communications, LP; Parnassos Distribution Company I, LLC; Parnassos Distribution Company II, LLC; Parnassos Holdings, LLC; Western NY Cablevision, LP | ) ) ) ) ) ) ) ) ) ) ) ) | ____ Civ. _____ (  ) |
| *Defendants/Counterclaimants* | ) ) | |

## REMBRANDT TECHNOLOGIES, LP'S MOTION
## TO WITHDRAW THE REFERENCE TO THE BANKRUPTCY COURT

NYDOCS03 823399

Plaintiff and Counter-defendant Rembrandt Technologies, LP ("Rembrandt") file this

Motion to Withdraw the Reference to the Bankruptcy Court pursuant to 28 U.S.C. § 157(d), Fed.

R. Bankr. P. 5011 and Local Rule 5011-1. For the reasons set forth in the accompanying

Memorandum of Law in Support of Rembrandt Technologies, LP's Motion to Withdraw the

Reference, and the Declaration of Marc B. Hankin in Support of Rembrandt Technologies, LP's

Motion to Withdraw the Reference, the Court should withdraw the reference of the above-

captioned  adversary proceeding (the "Adversary Proceeding") to the Bankruptcy Court.

WHEREFORE, Rembrandt respectfully requests that this Court withdraw the reference

of the Adversary Proceeding to the Bankruptcy Court.

Dated:  January 10, 2007

SUSMAN GODFREY L.L.P.


By: /s/ Vineet Bhatia
    Vineet Bhatia (VB 9964)
    590 Madison Ave., 8th Floor
    New York, NY 10022
    Main Telephone: (212) 336-8330


SHEARMAN & STERLING LLP

    James L. Garrity, Jr. (JG 8389)
    Marc B. Hankin (MH 7001)
    599 Lexington Avenue
    New York, NY  10022
    Main Telephone:  (212) 848-4000
    Main Fax:  (212) 848-7179


    *Attorneys for Plaintiff /Counter-defendant*
    *Rembrandt Technologies, LP*

**CERTFICATE OF SERVICE**

I, Marc B. Hankin, do hereby certify that on January 10, 2007, a true and correct copy of (i) Rembrandt Technologies, LP's Motion for Withdrawal of the Reference to the Bankruptcy Court (the "Motion"), (ii) Memorandum of Law in Support of the Motion, and (iii) Declaration of Marc B. Hankin in Support of the Motion, each dated January 10, 2007, was served by electronic mail and first class mail on:

Thomas Meloro
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019-6099

Attorneys for Defendants/Counterclaimants
Adelphia Communications Corp. et al.

/s/ Marc B. Hankin
Marc B. Hankin

Dated:  January 10, 2007

SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York  10022
Telephone:  (212) 848-4000
Facsimile:  (212) 848-7179

*Co-counsel to Plaintiff / Counter-defendant
Rembrandt Technologies, LP*

# EXHIBIT B

Vineet Bhatia (VB 9964)
SUSMAN GODFREY L.L.P.
590 Madison Ave., 8th Floor
New York, NY 10022
Main Telephone: (212) 336-8330

James L. Garrity, Jr. (JG 8389)
Marc B. Hankin (MH 7001)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York  10022
Telephone:  (212) 848-4000
Facsimile:  (212) 848-7179

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: Adelphia Communications Corporation, et al. | ) ) ) | Chapter 11 |
| | ) | Case No. 02-41729 (REG) |
| Debtors | ) ) | Jointly Administered |
| _____ | ) ) | |
| Rembrandt Technologies, LP | ) ) | Adversary Proceeding |
| *Plaintiff/Counter-defendants* | ) ) ) | No. 06-01739 (REG) |
| v. | ) ) | |
| Adelphia Communications Corporation; Century-TCI California, LP; Century-TCI California Communications, LP; Century-TCI Distribution Company, LLC; Century-TCI Holdings, LLC; Parnassos, LP; Parnassos Communications, LP; Parnassos Distribution Company I, LLC; Parnassos Distribution Company II, LLC; Parnassos Holdings, LLC; Western NY Cablevision, LP | ) ) ) ) ) ) ) ) ) ) ) ) | _____ Civ._____ (    ) |
| *Defendants/Counterclaimants* | ) | |
| _____ | | |

**Memorandum of Law in Support of Rembrandt Technologies, LP's
Motion to Withdraw the Reference to the Bankruptcy Court**

NYDOCS03/823894 5

This is a patent infringement action against Adelphia Communications Corporation ("Adelphia") and certain related debtor entities. Plaintiff Rembrandt Technologies, LP's complaint asserts four causes of action: infringement of U.S. Patent Nos. 5,710,761 (the "'761 Patent"); 5,778,234 (the "'234 Patent"); 6,131,159 (the "'159 Patent") and 6,950,444 (the "'444 Patent") (collectively, the "Patents-in-Suit"). To resolve the issues underlying the above-captioned adversary proceeding (the "Adversary Proceeding"), the trial court, in accordance with federal patent law, will – at a minimum – need to construe the claims set forth in the Patents-in-Suit, determine whether the accused systems infringe on the asserted claims, make a finding of validity based upon any prior art or other arguments asserted by Adelphia, and consider the merits of Adelphia's laches defense. Because, "[u]nquestionably, determining whether an accused product infringes a patent requires significant and material consideration of patent law," mandatory withdrawal of the reference of this patent infringement action is appropriate. *The Singer Co., B.V. v. Groz-Beckert KG (In re The Singer Co., N.V.,)* 2002 WL 243779 at *3 (S.D.N.Y. February 20, 2002).

## Statement of Facts

On June 10, 2002, Century Communications Corp., an Adelphia Communications Corporation ("Adelphia") subsidiary, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Thereafter, commencing on June 25, 2002, and continuing periodically thereafter, Adelphia and substantially all of its subsidiaries filed voluntary petitions under chapter 11 of the Bankruptcy Code. After seeking bankruptcy protection, Adelphia and its affiliates continued to provide cable internet and television services to consumers throughout the United States until the sale of substantially all of their assets on July 31, 2006, to Time Warner Cable and Comcast.

2

On September 13, 2006, Rembrandt Technologies, LP ("Rembrandt") commenced the Adversary Proceeding by filing a complaint (the "Complaint")[1] against Adelphia and certain of its subsidiaries and affiliates set forth therein as defendants (collectively, the "Defendants"). That same day Rembrandt filed a corresponding administrative expense claim (the "Rembrandt Administrative Claim") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").[2]   The Adversary Proceeding seeks damages in respect of the Defendants' post-petition infringement, in violation of 35 U.S.C. § 271, of the Patents-in-Suit. On November 27, 2006, the Defendants filed their answer (the "Answer") to the Complaint. The Answer contains counterclaims that the Patents-in-Suit are invalid for failing to satisfy the requirements in 35 U.S.C. § 101, *et seq.*; that the doctrine of laches bars Rembrandt from bringing this action; and that Adelphia's services did not infringe the Patents-in-Suit.[3]   On December 15, 2006, Rembrandt filed its reply (the "Reply") to the counterclaims.[4]

No formal discovery has taken place with respect to these claims or counterclaims. Instead, the time spent in Bankruptcy Court to date has been dedicated to determining an appropriate amount to reserve for Rembrandt's claims. Before going forward with the merits of

---

[1]      A copy of the Complaint is attached as Exhibit A to the Declaration of Marc B. Hankin In Support of Rembrandt Technologies, LP's Motion To Withdraw The Reference To The Bankruptcy Court (the "Hankin Declaration").

[2]      A copy of the Rembrandt Administrative Claim is annexed as Exhibit B to the Hankin Declaration. The bar date for filing administrative expense claims against the Defendants, other than Adelphia, was September 14, 2006. Pursuant to the Bankruptcy Court's Order Confirming First Modified Fifth Amended Joint Chapter 11 Plan for Adelphia Communications Corporation and Certain of its Affiliated Debtors, dated January 5, 2007 (the "Confirmation Order"), the bar date for filing administrative claims against Adelphia is forty days after service of a Notice of Confirmation. Confirmation Order at 35-37. As of the date hereof, no such notice has been filed with the Bankruptcy Court or received by Rembrandt.

[3]      A copy of Defendants' Answer is annexed as Exhibit C to the Hankin Declaration.

[4]      A copy of Rembrandt's Reply is annexed as Exhibit D to the Hankin Declaration.

the case, Rembrandt needed to ensure that there would be funds to pay any judgment obtained. Absent a reserve, Rembrandt could not have that assurance.

On November 22, 2006, Rembrandt objected to confirmation of the Fifth Amended Joint Chapter 11 Plan for Adelphia Communications Corporation and Certain of Its Affiliated Debtors (the "Adelphia Plan"), requesting, *inter alia*, that confirmation of the Adelphia Plan be conditioned upon the establishment of a cash reserve that would be used solely to satisfy the Rembrandt Administrative Claim once such claim is fixed and liquidated. At Adelphia's request, the Bankruptcy Court scheduled a hearing for the purpose of estimating the amount of cash to be reserved for Rembrandt's benefit in connection with the proposed confirmation of the Adelphia Plan. The parties engaged in limited discovery solely with respect to this estimation hearing. As noted above, formal discovery with respect to the Adversary Proceeding has not yet commenced.

Just prior to the scheduled estimation hearing, and the submission of any pleadings with respect to that matter, the parties agreed on the funding of a separate reserve for the Rembrandt Administrative Claim. On December 13, 2006, the Bankruptcy Court entered a stipulated order that, *inter alia*, established a $35 million cash reserve in respect of the Rembrandt Administrative Claim in the event the Adelphia Plan was confirmed by the Bankruptcy Court and became effective (the "Reserve Stipulation").[5] The Reserve Stipulation expressly provides that the stipulation is without prejudice to Rembrandt's right to be paid from any available source of Adelphia funds in the event the Rembrandt Administrative Claim is ultimately allowed in an amount greater than $35 million. The Bankruptcy Court confirmed the Adelphia Plan by order dated January 5, 2007. With the Reserve Stipulation in place and the Bankruptcy Court having

---

[5]     A copy of the Reserve Stipulation is annexed as Exhibit E to the Hankin Declaration.

confirmed the Adelphia Plan, Rembrandt now wishes to proceed with the merits of its case in the United States District Court.

## Argument

### I.    Withdrawal of the Reference is Mandatory Because Resolution of the Adversary Proceeding Requires Substantial and Material Consideration of Patent Law

28 U.S.C. § 157(d) ("Section 157(d)") describes mandatory withdrawal as follows:

> The district court . . . shall, on timely motion of a party, . . . withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

"'The purpose of the [mandatory withdrawal provision in] Section 157(d) is to assure that an Article III judge decides issues calling for more than routine application of [federal laws] outside the Bankruptcy Code.'" *Enron Power Mktg., Inc. v. Cal. Power Exch. Corp. (In re Enron Corp.)*, 2004 WL 2711101, at *2 (S.D.N.Y. Nov. 23, 2004) (quoting *Eastern Airlines, Inc. v. Air Line Pilots Ass'n Int'l (In re Ionosphere Clubs, Inc.)*, 1990 WL 5203, at *5 (S.D.N.Y. Jan. 24, 1990)). Accordingly, Section 157(d) "require[s] withdrawal to the district court of cases or issues that would otherwise require a bankruptcy court judge to engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes." *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991).

"Withdrawal under §157(d) . . . is reserved for cases where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding." *Shugrue v. Air Line Pilots Ass'n (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 995 (2d. Cir. 1990) (quoting *In re Ionosphere Clubs, Inc.*, 103 B.R. 416, 418-19 (S.D.N.Y. 1989) (footnote omitted)); *accord Enron Power Marketing,* 2003 WL 68036, at *4. Notably, however, the issues of non-bankruptcy federal law raised by the proceeding need not present issues of first

5

impression or even involve the application of unsettled case law to meet the mandatory withdrawal standard. *McCrory Corp. v. 99¢ Only Stores (In re McCrory Corp.)* 160 B.R. 502, 505 (S.D.N.Y. 1993). So long as the bankruptcy judge must engage in "something more than the mere process of examining, thinking about or taking into account" non-bankruptcy federal laws, mandatory withdrawal is required. *In re Horizon Air, Inc.*, 156 B.R. 369, 373 (N.D.N.Y. 1993) (citing *Am. Freight Sys., Inc. v. ICC (In re Am. Freight Sys.)*, 150 B.R. 790, 792 (D. Kan. 1993)); *see also In re Keene Corp.*, 182 B.R. 379, 382 (S.D.N.Y. 1995) ("Withdrawal is . . . warranted when resolution of the matter would require the bankruptcy judge to 'engage in significant interpretation, as opposed to simple application,' of federal non-bankruptcy statutes.") (quoting *City of New York*, 932 F.2d at 1026).

Patent infringement actions are precisely the sort of cases in which mandatory withdrawal is appropriate, as this Court recently demonstrated in *Singer*, 2002 WL 243779, *3 (S.D.N.Y. Feb. 20, 2002). The defendant in *Singer* sought to withdraw the reference of an adversary proceeding in which, among other things, the plaintiff sought a declaration that it held an implied license in a sewing needle patent, and the defendant sought to recover damages predicated on plaintiff's alleged infringement of the patent. In granting the motion, this Court held that "withdrawal is mandatory because resolution of the adversary proceeding requires substantial and material consideration of domestic patent law, a statutory creation." *Id.* In so holding, this Court found that patent law issues were "central to the complaint," *id.*, noting that

> [u]nquestionably, determining whether an accused product infringes a patent requires significant and material consideration of patent law. This determination requires a two-step analysis in which the court must construe the disputed patent claims and then apply the construed claims to the accused device . . . The claim construction itself requires a hearing, followed by the court's examination of the intrinsic evidence (the words of the patent itself), the prosecution history, if in evidence, and in some instances, extrinsic evidence.

*Id.* (citations omitted).[6] *See also In re Nat'l Gypsum Co.*, 145 B.R. 539, 541-42 (N.D. Tex. 1992) (holding that mandatory withdrawal of the reference is appropriate in a complex patent infringement case in which the defendant raised the defenses of best mode and prior art to the validity of the patents, and an antitrust defense to the enforcement of the patents). Indeed, as in *Singer*, to resolve the matters at issue in the Complaint, the trial court will be required to "construe the disputed patent claims and then apply the construed claims to the accused device." *See Singer*, 2002 WL 243779 at *3.

Here, there is no doubt that the resolution of Rembrandt's claims requires substantial and material consideration of United States patent law. The Patents-in-Suit disclose inventions designed to enhance the ability of the component parts of Adelphia's cable system to interface with one another and to facilitate the use of Adelphia's services by its customers. More specifically, the '761 Patent relates to the "error control negotiation" phase of a data connection, which can be thought of as a sort of "handshaking" sequence between modems; the '444 Patent teaches a method for improving the way that modems transmit the first portion or "preamble" of data over communication lines, thereby improving modem data transmission generally; and the '159 and '234 Patents facilitate the remote updating of operating software on a modem, so that no activity by the subscriber is required. Rembrandt's action arises entirely from the fact that the technology employed by the Defendants in operating Adelphia's high speed cable internet

---

[6]      Similarly, in *McCrory*, this Court held that mandatory withdrawal is required where the proceeding raised issues that would require substantial and material consideration of issues under the Lanham Act. *McCrory*, 160 B.R. at 505. It based its conclusion on the fact that "[i]nterpreting Lanham Act provisions to a given set of facts is, generally, neither simple nor straightforward." *Id.* For instance, the court must determine the parties' rights to various marks under trademark law, whether the marks are protected under the Lanham Act, and whether the uses of the marks created a likelihood of confusion. *Id.* at 506. *McCrory* is further evidence that mandatory withdrawal is appropriate for cases dealing with a body of complex federal law and involve complexity in the application of the law.

system infringed these four U.S. patents. Like *Singer*, this action "[u]nquestionably… requires significant and material consideration of patent law." 2002 WL 243779, *3.[7]

## II.    The Motion to Withdraw the Reference is Timely

This Motion has been timely made, as required by Section 157(d). This case is in its infancy: the only proceedings that have occurred to date involved the bankruptcy-specific process of agreeing to reserve an amount for the Rembrandt Administrative Claim. At a practical level, Rembrandt was forced to resolve the reserve issue before proceeding with the merits; otherwise there could be no guarantee that there would be *any* amount of money to satisfy Rembrandt's claims once liquidated. Now that Adelphia and Rembrandt have agreed to a reserve, it is time to proceed with the merits of this litigation by withdrawing the reference from the Bankruptcy Court.

Neither the statute nor case law prescribe a specific time limit within which a motion to withdraw the reference must be filed. *Lone Star Indus., Inc. v. Rankin County Econ. Dev. Dist. (In re New York Trap Rock Corp.)*, 158 B.R. 574, 577 (S.D.N.Y. 1993). In place of a specific time limit, courts have stated that "a motion is timely if it is made as soon as possible in light of the status of the bankruptcy proceedings." *In re Texaco Inc.*, 84 B.R. 911, 919 (S.D.N.Y. 1988) (citations omitted).

Here, only slightly more than three months have passed since Rembrandt filed the Complaint. During all of that time, the parties have focused on the estimation of Rembrandt's

---

[7]    It is plain that the conduct complained of here has more that a *de minimis* effect on interstate commerce. Rembrandt alleges that the high speed internet services infringed the Patents – in – Suit. Adelphia provided these services across state lines, and thus infringed the patents while participating in interstate commerce. The trial court's interpretation of patent laws will therefore have more than a *de minimis* effect on interstate commerce. In a patent case like this one, this is almost a foregone conclusion. *See In re Nat'l Gypsum*, 145 B.R. at 542 ("[I]t is apparent that the nature of the alleged patent infringement is such that its effect, if infringement is found, would be on items placed in the stream of commerce. Thus, the non-[Bankruptcy] Code federal law would have more than a *de minimis* effect on interstate commerce.").

claim for purposes of establishing a reserve in connection with the Adelphia Plan.   No substantive motions have been filed with the Bankruptcy Court.   Now that Rembrandt and Adelphia have agreed upon a reserve for the Rembrandt Administrative Claim, it is time to withdraw the Adversary Proceeding from the Bankruptcy Court.

## **Conclusion**

Based upon the foregoing, Rembrandt respectfully request that this Court enter an Order withdrawing the reference of the Adversary Proceeding to the Bankruptcy Court.

Dated:  January 10, 2007

SUSMAN GODFREY L.L.P.


By: /s/ Vineet Bhatia
       Vineet Bhatia (VB 9964)
       590 Madison Ave., 8th Floor
       New York, NY 10022
       Main Telephone: (212) 336-8330


SHEARMAN & STERLING LLP


By: /s/ James L. Garrity, Jr.
       James L. Garrity, Jr. (JG 8389)
       Marc B. Hankin (MH 7001)
       599 Lexington Avenue
       New York, NY  10022
       Main Telephone:  (212) 848-4000
       Main Fax:  (212) 848-7179

       *Attorneys for Plaintiff /Counter-defendant*
       *Rembrandt Technologies, LP*

NYDOCS03/823894.5

# EXHIBIT C

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In Re: Adelphia Communications Corporation, et al. | ) ) ) | Chapter 11 Case No. 02-41729 (REG) |
| Debtors | ) ) | Jointly Administered |
| _____ | ) | |
| Rembrandt Technologies LP | ) ) | Adversary Proceeding |
| *Plaintiff* | ) ) | No. _____ |
| v. | ) ) | |
| Adelphia Communications Corporation; Century-TCI California, LP; Century-TCI California Communications, LP; Century-TCI Distribution Company, LLC; Century-TCI Holdings, LLC; Parnassos, LP; Parnassos Communications, LP; Parnassos Distribution Company I, LLC; Parnassos Distribution Company II, LLC; Parnassos Holdings, LLC; Western NY Cablevision, LP | ) ) ) ) ) ) ) ) ) ) ) ) | |
| *Defendants* | ) | |

## COMPLAINT FOR POST-PETITION PATENT INFRINGEMENT

Plaintiff Rembrandt Technologies, LP files this complaint for post-petition infringement

of United States Patent Nos. 5,710,761; 5,778,234; 6,131,159 and 6,950,444 under 35 U.S.C.

§ 271. All acts of infringement alleged herein relate solely to acts by the Defendants that

occurred after the applicable petition dates set forth herein and before July 31, 2006.

## PARTIES

1.    Plaintiff Rembrandt Technologies, LP ("Rembrandt") is a limited partnership

organized under the laws of the state of New Jersey with its principal place of business at 401

City Avenue, Suite 815, Bala Cynwyd, Pennsylvania 19004.

1

2.      Defendant Adelphia Communications Corporation ("ACC") is a corporation organized under the laws of the State of Delaware.  On June 25, 2002, ACC filed a petition in bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York in a case captioned *In re Adelphia Communications Corporation*, Case No. 02-41729 (REG).  That case remains pending in the bankruptcy court.  ACC's principal place of business on the Petition Date was located in Coudersport, Pennsylvania, and is currently located in Greenwood Village, Colorado.  ACC was one of the leading cable and telecommunications companies in the United States.  Since seeking bankruptcy protection on June 25, 2002, ACC continued to provide cable internet and television services to consumers throughout the United States until the sale of substantially all of its assets on July 31, 2006.

3.      Defendant Century-TCI California, LP is a partnership organized under the laws of the State of Delaware.  Century-TCI California, LP is an affiliate of ACC.  On June 25, 2002, Century-TCI California, LP filed a petition in bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York.  Century-TCI California, LP's bankruptcy proceedings are jointly administered with *In re Adelphia Communications Corporation*, Case No. 02-41729 (REG).

4.      Defendant Century-TCI California Communications, LP is a partnership organized under the laws of the State of Delaware.  Century-TCI California Communications, LP is an affiliate of ACC.  On June 25, 2002, Century-TCI California Communications, LP filed a petition in bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York.  Century-TCI California Communications, LP's bankruptcy proceedings are jointly administered with *In re Adelphia Communications Corporation*, Case No. 02-41729 (REG).

5.    Defendant Century-TCI Distribution Company, LLC is a limited liability company organized under the laws of the State of Delaware. Century-TCI Distribution Company, LLC is an affiliate of ACC. On October 6, 2005, Century-TCI Distribution Company, LLC filed a petition in bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York. Century-TCI Distribution Company, LLC's bankruptcy proceedings are jointly administered with *In re Adelphia Communications Corporation*, Case No. 02-41729 (REG).

6.    Defendant Century-TCI Holdings, LLC is a corporation organized under the laws of the State of Delaware. Century-TCI Holdings, LLC is an affiliate of ACC. On June 25, 2002, Century-TCI Holdings, LLC filed a petition in bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York. Century-TCI Holdings, LLC's bankruptcy proceedings are jointly administered with *In re Adelphia Communications Corporation*, Case No. 02-41729 (REG).

7.    Defendant Parnassos Communications, LP is a partnership organized under the laws of the State of Delaware. Parnassos Communications, LP is an affiliate of ACC. On June 25, 2002, Parnassos Communications, LP filed a petition in bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York. Parnassos Communications, LP's bankruptcy proceedings are jointly administered with *In re Adelphia Communications Corporation*, Case No. 02-41729 (REG).

8.    Defendant Parnassos Distribution Company I, LLC is a limited liability company organized under the laws of the State of Delaware. Parnassos Distribution Company I, LLC is an affiliate of ACC. On October 6, 2005, Parnassos Distribution Company I, LLC filed a petition in bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Southern District of

New York.     Parnassos Distribution Company I, LLC's bankruptcy proceedings are jointly administered with *In re Adelphia Communications Corporation*, Case No. 02-41729 (REG).

9.     Defendant Parnassos Distribution Company II, LLC is a limited liability company organized under the laws of the State of Delaware.  Parnassos Distribution Company II, LLC is an affiliate of ACC.  On October 6, 2005, Parnassos Distribution Company II, LLC filed a petition in bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York.  Parnassos Distribution Company II, LLC's bankruptcy proceedings are jointly administered with *In re Adelphia Communications Corporation*, Case No. 02-41729 (REG).

10.     Defendant Parnassos Holdings, LLC is a corporation organized under the laws of the State of Delaware.  Parnassos Holdings, LLC is an affiliate of ACC.  On June 25, 2002, Parnassos Holdings, LLC filed a petition in bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York.  Parnassos Holdings, LLC's bankruptcy proceedings are jointly administered with *In re Adelphia Communications Corporation*, Case No. 02-41729 (REG).

11.     Defendant Parnassos, LP is a partnership organized under the laws of the State of Delaware.  Parnassos, LP is an affiliate of ACC.  On June 25, 2002, Parnassos, LP filed a petition in bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York.  Parnassos, LP's bankruptcy proceedings are jointly administered with *In re Adelphia Communications Corporation*, Case No. 02-41729 (REG).

12.     Defendant Western NY Cablevision, LP is a partnership organized under the laws of the State of Delaware.  Western NY Cablevision, LP is an affiliate of ACC.  On June 25, 2002, Western NY Cablevision, LP filed a petition in bankruptcy under Chapter 11 in the United

States Bankruptcy Court for the Southern District of New York.  Western NY Cablevision, LP's bankruptcy proceedings are jointly administered with *In re Adelphia Communications Corporation*, Case No. 02-41729 (REG).

13.    On information and belief, Defendants are liable for the infringement of Rembrandt's patents as alleged herein.  Rembrandt makes these allegations with regard to particular Defendants based on a review of publicly available information.  Other affiliates of ACC may also be liable for infringement of these patents.  Rembrandt intends to amend this pleading to add other ACC affiliates who have infringed Rembrandt's patents or, if appropriate, to dismiss Defendants who are shown not to have engaged in any infringing activity.

### JURISDICTION AND VENUE

14.    This is an action for patent infringement arising under the law of the United States relating to patents, including, *inter alia*, 35 U.S.C. §§ 271, 281, 284 and 285.  This court has jurisdiction over such federal question claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

15.    For the avoidance of doubt and for the sake of clarity, Plaintiffs hereby explicitly state that all acts of infringement alleged herein relate solely to actions taken by Defendants *after* their filing for bankruptcy in this district on June 25, 2002 or October 6, 2005, as applicable, and *before* the acquisition by Time Warner Cable and Comcast on July 31, 2006 (such period for each Defendant, the "Post-Petition Period").  Plaintiffs hereby explicitly state and affirm that they are not seeking relief for any actions of Defendants that occurred prior to the filing of ACC's bankruptcy petition.    ACC continued to operate its cable internet and television businesses after June 25, 2002 and prior to its acquisition.  In doing so, as alleged in greater detail below, ACC engaged in post-petition acts of infringement that have damaged Rembrandt.

It is solely based on these post-petition actions, and for relief under the United States patent laws, that Rembrandt brings this action.

16.    This Court has personal jurisdiction over the Defendants because one or more events giving rise to the causes of action herein occurred in this district and because the Defendants have submitted to the jurisdiction of this Court.

17.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1409(a).

### COUNT I: INFRINGEMENT OF U.S. PATENT NO. 5,710,761

18.    Rembrandt refers to and incorporates herein the allegations of Paragraphs 1-17 above.

19.    Rembrandt is the owner of all right, title and interest, including the right to sue, enforce and recover damages for all infringements, in U.S. Patent No. 5,710,761, entitled "Error Control Negotiation Based on Modulation" ("the '761 patent."). A true copy of the '761 patent is attached as Exhibit A.

20.    The '761 patent was duly and legally issued by the United States Patent and Trademark Office on January 20, 1998, after full and fair examination.

21.    During the Post-Petition Period, the Defendants have directly or indirectly infringed the '761 patent by practicing or causing others to practice, by inducement or contributorily, the inventions claimed in the '761 patent, in this district and otherwise within the United States. For example, Defendants infringed the '761 patent by providing high-speed cable modem internet products and services to subscribers.

22.    Rembrandt suffered substantial damages due to the Defendants' infringement. Furthermore, upon information and belief, such infringement was willful, making this an

exceptional case and entitling Rembrandt to increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

**COUNT II: INFRINGEMENT OF U.S. PATENT NO. 5,778,234**

23.    Rembrandt refers to and incorporates herein the allegations of Paragraphs 1-17 above.

24.    Rembrandt is the owner of all right, title and interest, including the right to sue, enforce and recover damages for all infringements, in U.S. Patent No. 5,778,234, entitled "Method for Downloading Programs" ("the '234 patent."). A true copy of the '234 patent is attached as Exhibit B.

25.    The '234 patent was duly and legally issued by the United States Patent and Trademark Office on July 7, 1998, after full and fair examination.

26.    During the Post-Petition Period, the Defendants have directly or indirectly infringed the '234 patent by practicing or causing others to practice, by inducement or contributorily, the inventions claimed in the '234 patent, in this district and otherwise within the United States. For example, the Defendants infringed the '234 patent by providing high-speed cable modem internet products and services to subscribers.

27.    Rembrandt suffered substantial damages due to the Defendants' infringement. Furthermore, upon information and belief, such infringement was willful, making this an exceptional case and entitling Rembrandt to increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

**COUNT III: INFRINGEMENT OF U.S. PATENT NO. 6,131,159**

28.    Rembrandt refers to and incorporates herein the allegations of Paragraphs 1-17 above.

7

29.    Rembrandt is the owner of all right, title and interest, including the right to sue, enforce and recover damages for all infringements, in U.S. Patent No. 6,131,159, entitled "System for Downloading Programs" ("the '159 patent."). A true copy of the '159 patent is attached as Exhibit C.

30.    The '159 patent was duly and legally issued by the United States Patent and Trademark Office on October 10, 2000, after full and fair examination.

31.    During the Post-Petition Period, the Defendants have directly or indirectly infringed the '159 patent by practicing or causing others to practice, by inducement or contributorily, the inventions claimed in the '159 patent, in this district and otherwise within the United States. For example, the Defendants infringed the '159 patent by providing high-speed cable modem internet products and services to subscribers.

32.    Rembrandt suffered substantial damages due to the Defendants' infringement. Furthermore, upon information and belief, such infringement was willful, making this an exceptional case and entitling Rembrandt to increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

### COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 6,950,444

33.    Rembrandt refers to and incorporates herein the allegations of Paragraphs 1-17 above.

34.    Rembrandt is the owner of all right, title and interest, including the right to sue, enforce and recover damages for all infringements, in U.S. Patent No. 6,950,444, entitled "System and Method for a Robust Preamble and Transmission Delimiting in a Switched-Carrier Transceiver" ("the '444 patent."). A true copy of the '444 patent is attached as Exhibit D.

35.    The '444 patent was duly and legally issued by the United States Patent and Trademark Office on September 27, 2005, after full and fair examination.

36.    During the Post-Petition Period, Defendants directly or indirectly infringed the '444 patent by practicing or causing others to practice, by inducement or contributorily, the inventions claimed in the '444 patent, in this district and otherwise within the United States. For example, the Defendants infringed the '444 patent by providing high-speed cable modem internet products and services to subscribers.

37.    Rembrandt suffered substantial damages due to the Defendants' infringement. Furthermore, upon information and belief, such infringement was willful, making this an exceptional case and entitling Rembrandt to increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

## PRAYER FOR RELIEF

WHEREFORE, Rembrandt prays that it have judgment from the District Court against the Defendants for the following:

(1) An order that the Defendants have infringed the patents-in-suit;

(2) An award of damages for said infringement;

(4) An award of increased damages pursuant to 35 U.S.C. § 284;

(5) An award of all costs of this action, including attorneys' fees and interest; and

(6) Such other and further relief, at law or in equity, to which Rembrandt is justly entitled.

Dated:  September 13, 2006                    **SUSMAN GODFREY L.L.P.**

                              By: /s/ Vineet Bhatia

                                    VINEET BHATIA (VB 9964)

                                    MAX L. TRIBBLE, JR.
                                    Texas Bar 20213950 (*application pending*)

                                    EDGAR SARGENT
                                    Washington Bar 28283 (*application pending*)

                                    BROOKE A.M. TAYLOR
                                    Washington Bar 33190 (*application pending*)

                                    TIBOR L. NAGY
                                    Texas Bar 24041562 (*application pending*)

                                    SUSMAN GODFREY L.L.P.
                                    590 Madison Ave., 8th Floor
                                    New York, NY 10022
                                    Main Telephone: (212) 336-8330
                                    Main Fax: (212) 336-8340
                                    Email: vbhatia@susmangodfrey.com
                                    Email: mtribble@susmangodfrey.com
                                    Email: esargent@susmangodfrey.com
                                    Email: btaylor@susmangodfrey.com
                                    Email:  tnagy@susmangodfrey.com

# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                           :

Rembrandt Technologies, LP,
                           :

            Plaintiff,
                           :

        - against -
                           :

Adelphia Communications Corporation;
Century-TCI California, LP;
Century-TCI California Communications, LP;    :      Case No. 1:07-cv-00214 (WHP)
Century-TCI Distribution Company, LLC;     :
Century-TCI Holdings, LLC;
Parnassos, LP;                        :
Parnassos Communications, LP;
Parnassos Distribution Company I, LLC;      :
Parnassos Distribution Company II, LLC;
Parnassos Holdings, LLC; and             :
Western NY Cablevision, LP,
                           :

           Defendants.
                           :
---------------------------------------------------------------x

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO WITHDRAW THE REFERENCE TO BANKRUPTCY COURT

Roger Netzer
Thomas Meloro
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019
Tel: (212) 728-8000

Attorneys for Defendants and
Reorganized Debtors

3585064

## Table of Contents

Table of Contents ................................................................................................................. ii

Table of Cases .................................................................................................................... iv

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS .................................................................................................2

    A. Parties .........................................................................................................................2

    B. Rembrandt's Adversary Proceeding and Objection to Confirmation. ...........................4

        1. Rembrandt Waited More Than Four Years Before Suing. ........................................4

        2. Rembrandt Engaged In Extensive Discovery In Bankruptcy Court. .........................5

    C. Rembrandt Asked The Bankruptcy Court To Conduct An Evidentiary Hearing
       On Its Claims Of Infringement And Damages. .............................................................7

ARGUMENT .......................................................................................................................9

    A. Rembrandt's Tactic in Invoking the Bankruptcy Court's Jurisdiction and then
       Belatedly Seeking Withdrawal Warrants Denial of the Motion. ...................................10

        1. As Rembrandt Initiated Proceedings On The Patent Issues in Bankruptcy
          Court, Any Withdrawal Motion Should Have Been Filed Immediately. ...............11

        2. Rembrandt's Four-Month Delay In Filing The Withdrawal Motion Renders
          The Withdrawal Motion Untimely Under Section 157(d). ....................................12

        3. Both Parties, as Well as the Bankruptcy Court, Have Already Devoted
          Considerable Time and Effort Litigating the Patent Issues in Bankruptcy
          Court. ..................................................................................................................15

    B. The Adversary Proceeding Does Not Require Substantial And Material
       Consideration Of Non-Bankruptcy Federal Law. ........................................................16

        1. The Adversary Proceeding Only Requires Routine Application of Patent
          Law Which Does Not Entitle Rembrandt to Mandatory Withdrawal Under
          Section 157(d). .....................................................................................................16

        2. The Authorities Relied on by Rembrandt Do Not Require that the Adversary
          Proceeding's Reference Be Withdrawn. ................................................................19

        3. Rembrandt Fails to Provide Any Analysis to Satisfy its Burden to
          Demonstrate that Substantial and Material Consideration of Patent Law is
          Necessary to Resolve the Adversary Proceeding. ..................................................21

3585064

CONCLUSION..............................................................................................................23

3585064

## Table of Cases

Adelphia Commc'ns Corp. v. Rigas (In re Adelphia Commc'ns Corp.),
    No. 02 Civ. 8495 (GBD), 2003 WL 21297258 (S.D.N.Y. June 4, 2003)..............17, 19, 21

Bianco v. Hoehn (In re Gaston & Snow),
    173 B.R. 302 (S.D.N.Y. 1994).................................................................................18

Carr v. Mich. Real Estate Ins. Trust (In re Mich. Real Estate Ins. Trust),
    87 B.R. 447 (E.D. Mich. 1988)...............................................................................21

Caterpillar Tractor Co. v. Berco, S.P.A.,
    714 F.2d 1110 (Fed. Cir. 1983)..............................................................................20

Cent. Ill. Sav. & Loan Assoc. v. Rittenberg Co., Ltd. (In re IQ Telecomm., Inc.),
    70 B.R. 742 (N.D. Ill. 1987) ..................................................................................14

Childs v. Gallagher,
    342 B.R. 823 (M.D. Ala. 2006) ..............................................................................16

City of New York v. Exxon Corp.,
    932 F.2d 1020 (2d Cir. 1991).................................................................................18

Connolly v. Biderman Indus. U.S.A., Inc.,
    No. 95 Civ. 1791 (RPP), 1996 WL 325575 (S.D.N.Y. June 13, 1996)..............10

Davis v. Mahlmann (In re Mahlmann),
    149 B.R. 866 (N.D. Ill. 1993) ....................................................................11, 12, 16

Enron Power Mktg., Inc. v. City of Santa Clara (In re Enron Power Mktg., Inc.),
    No. 01 Civ. 7964, 2003 WL 68036 (S.D.N.Y. Jan. 8, 2003).........................18, 19

Grunewald v. Power Swing Partners (In re Power Swing Partners),
    9 B.R. 512 (Bankr. S.D. Cal. 1980) .......................................................................17

In re Giorgio,
    50 B.R. 327 (D. R.I. 1985).....................................................................................10

In re Adelphia Bus. Solutions, Inc.,
    341 B.R. 415 (Bankr. S.D.N.Y. 2003) ...................................................................15

In re Cambridge Biotech Corp.,
    186 F.3d 1356 (Fed. Cir. 1999)..............................................................................13

In re Great Northern Paper, Inc.,
    323 B.R. 7 (D. Me. 2005) .......................................................................................13

In re Holcomb Health Care Servs., LLC,
    329 B.R. 622 (Bankr. M.D. Tenn. 2004) ...............................................................16

3585064

In re Loral Space & Commc'ns,
    No. 04 Civ. 04547, 2004 WL 1586466 (S.D.N.Y. July 14, 2004) ......................................11

In re Patient Educ. Media, Inc.,
    210 B.R. 237 (Bankr. S.D.N.Y. 1997) ...............................................................................17

In re Recoton Corp.,
    No. 04 Civ. 2466, 2004 WL 1497570 (S.D.N.Y. July 1, 2004) .........................................18

In re Sec. Group,
    89 B.R. 192 (M.D. Fla. 1988) ...........................................................................................14

In re Stavriotis,
    111 B.R. 154 (N.D. Ill. 1990) ...........................................................................................14

In re Texaco Inc.,
    84 B.R. 911 (S.D.N.Y. 1988).............................................................................................18

In re Vicars Ins. Agency, Inc.,
    96 F.3d 949 (7th Cir. 1996) ..............................................................................................21

In re White Motor Corp.,
    42 B.R. 693 (N.D. Ohio 1984)......................................................................................18, 19

Institut Pasteur & Genetic Sys. Corp. v. Cambridge Biotech Corp.
    (In re Cambridge Biotech Corp.), 186 B.R. 9 (Bankr. D. Mass. 1995), aff'd, 212 B.R.
    10 (D. Mass. 1997), aff'd, 186 F.3d 1356 (Fed. Cir. 1999)...............................................17

Keene Corp. v. Williams Bailey & Wesner L.L.P. (In re Keene Corp.),
    182 B.R. 379 (S.D.N.Y. 1995).........................................................................................17

Kentile Floors, Inc. v. Congoleum Corp. (In re Kentile Floors, Inc.),
    No. 95 Civ. 2470, 1995 WL 479512, at *2 (S.D.N.Y. Aug. 10, 1995) ..............................10

Laine v. Gross,
    128 B.R. 588 (D. Me. 1991) .........................................................................................12, 14

Lone Star Indus., Inc. v. Rankin County Econ. Dev. Dist.,
    158 B.R. 574 (S.D.N.Y. 1993)......................................................................................11, 13

Markman v. Westview Instr., Inc.,
    517 U.S. 370 (1996)..........................................................................................................20

McCrory Corp. v. 99¢ Only Stores (In re McCrory Corp.),
    160 B.R. 502 (S.D.N.Y. 1993)..........................................................................................20

O'Connell v. Terranova (In re Adelphi Inst., Inc.),
    112 B.R. 534 (S.D.N.Y. 1990).............................................................................18, 19, 20, 22

3585064

Official Comm. of Unsecured Creditors of FMI Forwarding Co., Inc. v. Union Transp. Corp.
    (In re: FMI Forwarding Co., Inc.),
    No. 00 B 41815 (CB), 2005 WL 147298 (S.D.N.Y. Jan. 24, 2005) ..............................10, 13

Rickel & Assocs., Inc. v. Smith,
    No. 03 Civ. 7236, 2003 WL 23021972 (S.D.N.Y. Dec. 24, 2003) .....................................11

Royal Bank & Trust Co. v. Pereira (In re Lady Madonna Indus., Inc.),
    99 B.R. 536 (S.D.N.Y. 1989) ........................................................................................17, 20

Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.),
    922 F.2d 984 (2d Cir. 1990) ........................................................................................18, 20

Singer Co. B.V. v. Groz-Beckert KG (In re Singer Co. N.V.),
    No. 01 Civ. 0165 (WHP), 2002 WL 243779 (S.D.N.Y. Feb. 20, 2002) .....................11, 19

Sunbeam Prods, Inc. v. Wing Shing Prods. (BVI) Ltd. (In re AI Realty Mktg. of N.Y., Inc.),
    293 B.R. 586 (Bankr. S.D.N.Y. 2003), aff'd in part and rev'd in part on other
    grounds, 311 B.R. 378 (S.D.N.Y. 2004), aff'd, 153 F.App'x 703 (Fed. Cir. 2005),
    cert. denied, 126 S. Ct. 1085 (2006) ..........................................................................17, 19

Vitronics Corp. v. Conceptronic, Inc.,
    90 F.3d 1576 (Fed. Cir. 1996) ............................................................................................20

United States v. Johns-Manville Corp. (In re Johns-Manville Corp.),
    63 B.R. 600 (S.D.N.Y. 1986) ..............................................................................................22

United States v. Kaplan,
    146 B.R. 500 (D. Mass. 1992) .....................................................................................10, 12

Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.,
    520 U.S. 17 (1997) ..............................................................................................................20

Wolverine World Wide, Inc. v. Nike, Inc.,
    38 F.3d 1192 (Fed. Cir. 1994) ............................................................................................20

PRELIMINARY STATEMENT

Defendants and Reorganized Debtors Adelphia Communications Corporation ("Adelphia"); Century-TCI California, LP; Century-TCI California Communications, LP; Century-TCI Distribution Company, LLC; Century-TCI Holdings, LLC; Parnassos, LP; Parnassos Communications, LP; Parnassos Distribution Company I, LLC; Parnassos Distribution Company II, LLC; Parnassos Holdings, LLC; and Western NY Cablevision, LP (collectively, "Debtor Defendants") submit this memorandum of law in opposition to Plaintiff Rembrandt Technologies, LP's ("Rembrandt") Motion to Withdraw the Reference to the Bankruptcy Court and its Memorandum of Law in Support ("Withdrawal Motion").

Plaintiff Rembrandt is not entitled to mandatory withdrawal of the reference of the adversary proceeding that it commenced September 13, 2006 ("Adversary Proceeding"), for two equal and sufficient reasons. First, Rembrandt's pro-active invocation of the bankruptcy court's jurisdiction and its failure to timely seek withdrawal of the reference, violated the mandatory withdrawal statute. Second, straightforward application of non-bankruptcy law is all that is required to decide this case. By way of background, Rembrandt waited until the eve of confirmation, fifty-one months after the Debtor Defendants first filed for bankruptcy protection, to file its administrative expense claim and the complaint in the Adversary Proceeding (the "Complaint"). Further, Rembrandt then litigated in bankruptcy court for an additional four months before reversing course and filing its Withdrawal Motion.

Rembrandt is looking to have its cake and eat it too -- after choosing to invoke the benefits of the Debtor Defendants' bankruptcy proceeding by filing the Adversary Proceeding and an administrative expense claim on identical facts, Rembrandt was able to obtain a special benefit that almost none of the other administrative claimants received -- a special reserve set up in Rembrandt's own name for any potential recovery in the Adversary Proceeding. Now, having

3585064

garnered all of the benefit it was seeking from the bankruptcy court, Rembrandt is attempting to forum shop by withdrawing the reference to the bankruptcy court on the sole ground that the case involves patent law, which it was well aware of even before filing the Complaint.

Second, Rembrandt does not offer any analysis in its Withdrawal Motion as to why this case requires anything other than the simple and straightforward application of established patent law. The import of Rembrandt's argument is that all patent infringement cases must be withdrawn, with no analysis of the underlying claims. Supporting such an argument would eviscerate the powers of the bankruptcy court to ever hear a patent case regardless of the circumstances. This is simply not in accord with 28 U.S.C. section 157(d) or prevailing authority.

STATEMENT OF FACTS

A.    Parties

  Plaintiff

Plaintiff Rembrandt is an entity that has only one line of "business." It purports to be the owner of various patents. Rembrandt does not design, develop or manufacture cable modem technology. Rembrandt is neither a participant in the cable modem industry, nor a provider of high-speed internet ("HSI") services. It has no customers or clients. Rembrandt simply buys third-party rights to patents to technology it never intends to use in order to sue companies that actually make or use products, and service customers. The sole basis of Rembrandt's "business" is to seek to generate revenue by claims of patent infringement.

U.S. Patent Nos. 5,710,761, 5,778,234, 6,131,159, and 6,950,444 (the "patents-in-suit") were originally owned by Paradyne Corporation, a manufacturer of DSL modems. The '761, '234, and '159 patents were assigned to Rembrandt on December 20, 2004, in connection

3585064

with a sale by Paradyne of a package of patents. Zhone Technologies, Inc., Paradyne's

successor, subsequently agreed to assign another package of patents, including the '444 patent.

>Defendants

Adelphia is a Delaware corporation and the ultimate corporate parent of each of

the other Debtor Defendants and of the other debtors (collectively, "Debtors") in Adelphia's

chapter 11 case. The Debtors owned and operated cable systems.

The Debtors combined constituted the fifth largest operator of cable television

systems in the United States. Prior to the sale of substantially all of their assets on July 31, 2006,

Adelphia and its affiliates served customers in 31 states by supplying analog and digital video

services, HSI access and other advanced services over their broadband networks. At no time did

the Debtor Defendants (or any affiliate) design or manufacture the cable modems used by their

customers to access HSI services. Rather, the Debtor Defendants simply purchased the cable

modems from unrelated third-party vendors, and in turn leased or sold these devices to their

customers.

On June 25, 2002, the Debtor Defendants filed voluntary petitions for relief under

chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the

Southern District of New York. On October 6, 2005, certain additional Debtor Defendants also

filed voluntary petitions to reorganize under Chapter 11.

On April 20, 2005, Adelphia entered into definitive sale agreements with Time

Warner NY Cable LLC ("Time Warner") and Comcast Corporation ("Comcast" and, together

with Time Warner, the "Buyers") pursuant to which the Buyers agreed to purchase substantially

all of the Debtors' assets for approximately $12.7 billion in cash and a 16% interest in Time

3585064

Warner Cable, Inc., for total consideration valued at such time at approximately $17.6 billion. On July 31, 2006, Adelphia completed the sale of its assets to the Buyers.

On January 5, 2007, the bankruptcy court entered an order confirming the First Modified Fifth Amended Joint Chapter 11 Plan for Adelphia Communications Corporation and Certain of its Affiliated Debtors (the "Plan"), dated as of January 3, 2007. On February 13, 2007, all conditions to consummation of the Plan were satisfied or waived in accordance with the Plan (the "Effective Date"). Distributions in accordance with the Plan commenced on February 13, 2007.

The bankruptcy court has also established a process for filing and resolving the claims filed against the Debtors' estates, including establishing bar dates for both pre-petition and administrative claims. The ultimate amount of the Debtors' liabilities will be determined during this claims resolution process, which is already ongoing in the bankruptcy court before Judge Gerber.

      B.      <u>Rembrandt's Adversary Proceeding and Objection to Confirmation.</u>

          1.      <u>Rembrandt Waited More Than Four Years Before Suing.</u>

Rembrandt filed the Complaint in the bankruptcy court against the Debtor Defendants on September 13, 2000. The Complaint alleges that the Debtor Defendants had been infringing the patents-in-suit since at least June 2002.

Rembrandt simultaneously filed a proof of claim. The proof of claim incorporated the Complaint as the sole and exclusive basis for Rembrandt's claim. The patents themselves were attached as exhibits to both filings. (<u>See</u> Exs. A & B to Decl. of Marc B. Hankin, Jan. 10, 2007.)

The Debtor Defendants answered the Complaint and counterclaimed on November 27, 2006. Rembrandt replied to the Debtor Defendants' answer and counterclaim on December 15, 2006.

Despite Rembrandt's allegation that the Debtor Defendants have been infringing since June 2002, Rembrandt, Paradyne, and Zhone did not seek any redress from Adelphia at any point before filing the claim for over $130 million. Indeed, they did not provide the Debtor Defendants with any notice of the alleged infringement at any point during the entire period, even though they have presumably known of their claim relating to the patents-in-suit for many years.

The reason for Rembrandt's four year of delay quickly become apparent. On November 22, 2006, Rembrandt filed an objection to the confirmation of the Plan. (A copy of the Objection of Rembrandt Technologies, LP to Confirmation of the Fifth Amended Joint Chapter 11 Plan for Adelphia Communications Corporation and Certain of its Affiliated Debtors is attached as Ex. E to Cahalan Decl.) Rembrandt objected to confirmation of the Plan unless the Plan was modified to provide for a cash reserve to be used solely to satisfy Rembrandt's administrative claim.

2.    Rembrandt Engaged In Extensive Discovery In Bankruptcy Court.

Rembrandt sent a letter to the Debtor Defendants on October 16, 2006 requesting discovery, "all of it standard in a patent case." (See Ex. A to Decl. of Eilish M. Cahalan dated Mar. 2, 2007 ("Cahalan Decl.").) Rembrandt's discovery requests included 37 document requests, 21 interrogatories, 7 deposition topics, and 9 requests for admission. Rembrandt subsequently served its First Request for the Production of Documents in the Adversary Proceeding on October 20, 2006. (See Cahalan Decl. Ex. B.) Rembrandt sought broad discovery relating to its claims in the Adversary Proceeding of patent infringement and patent

3585064

damages. In response, Debtor Defendants produced over 13,000 pages of documents. Rembrandt also sought document production in the Adversary Proceeding by third-party subpoena to Broadcom Corporation entitled "Subpoena in an Adversary Proceeding," seeking discovery that it contended was relevant to the issue of infringement. Specifically, Rembrandt sought production of the source code for the micro-chips used in some of the accused modems.

On November 3, 2006, Rembrandt provided the Debtor Defendants with "claim charts" in which it asserted its contentions of infringement of the patents-in-suit. Both parties also retained experts and produced extensive expert reports on the very issue at the heart of the Adversary Proceeding -- whether the Debtor Defendants infringed the patents-in-suit and the appropriate damage calculation if such infringement did occur. On November 13, 2006, Rembrandt provided the expert report of Dr. Kevin Almeroth on the issue of infringement and the expert report of Walter Bratic on the issue of damages. Dr. Almeroth's report referenced the claim charts that specifically identified Rembrandt's contentions on how each element of the asserted patent claims was infringed by Adelphia, and set forth his conclusion of patent infringement. Mr. Bratic's report opined that Rembrandt was entitled to significantly less than the $130 million in damages Rembrandt filed its claim for. Mr. Bratic's report contained an analysis on the amount of damages Rembrandt contended it was owed based upon application of the *Georgia-Pacific* factors established in patent law to hypothesize what a reasonable royalty on Adelphia's revenues would be.

At the November 14, 2006 pre-trial conference, both parties explained to Judge Gerber the underlying issues in the case. Rembrandt's counsel confirmed that the parties had already begun exchanging fact and expert discovery on the issues of patent infringement and alleged damages that would be resolved in the Adversary Proceeding:

> We've also engaged in some expert discovery. Rembrandt has provided to defendants an expert report from a computer scientist expert who has analyzed the patents, analyzed the DOCSIS standard, and has opined that the DOCSIS standard infringes these four patents. We provided that to the debtors.
>
> We've also provided an expert report from an expert economist who has analyzed the revenues that these cable modem services have generated for the debtors and has stated a damages claim that he alleges -- he opines is the appropriate damages remedy in this particular case.

(See Transcript of November 14, 2006 Hearing, 10:23-11:8, attached as Ex. C to Cahalan Decl.)

Although Judge Gerber specifically inquired about coordination of the Adversary Proceeding with litigations commenced by Rembrandt in other jurisdictions against several different cable entities, Rembrandt never disclosed its intention to seek to withdraw the reference of the Adversary Proceeding.[1]  Instead, counsel for Rembrandt implied that the case would remain before Judge Gerber and indicated that Judge Gerber should simply "coordinate" pre-trial matters with the Eastern District of Texas.  Rembrandt's counsel stated:

> [The Texas court] has a lot of experience with patent matters. Not to suggest that Your Honor doesn't, but if Your Honor wanted to coordinate more closely with the eastern district and sort of follow along on pretrial matters with that district in the Time Warner case, I think that probably would be advantageous to everyone involved.

(Id. at 13:23-14:10.)

   C.   Rembrandt Asked The Bankruptcy Court To Conduct An Evidentiary Hearing On Its Claims Of Infringement And Damages.

At Rembrandt's request, Judge Gerber scheduled an estimation hearing for December 12, 2006, for the purpose of setting a reserve specifically for Rembrandt's claim.  On November 15, 2006, the parties entered into a stipulation and proposed order for a limited

---

[1] Rembrandt has asserted the patents-in-suit against various cable operators in the District of Delaware and the Eastern District of Texas.

3585064

discovery schedule for the purposes of the estimation hearing. (A copy of the stipulation is attached as Ex. D to Cahalan Decl.)

The Debtor Defendants subsequently also produced two expert reports on November 22, 2006 -- issued by Dr. Jim Martin on the issue of the alleged infringement and Kathleen Kedrowski on the issue of damages. These reports rebutted the expert reports of Dr. Almeroth and Mr. Bratic and also contained analyses of the patent claims and the *Georgia-Pacific* factors, respectively. The expert reports from both parties were to be the basis for the experts' testimony on the issues of infringement and damages at the estimation hearing to determine what reserve, if any, Rembrandt was entitled to. At no time did Rembrandt raise the concern that Judge Gerber would not be qualified to understand either the testimony and documentary evidence that was to be used at the estimation hearing or the applicable patent law that would need to be applied by Judge Gerber to determine the amount of reserve that Rembrandt should be given.

On the contrary, Rembrandt showed a complete willingness to present testimony and other evidence to Judge Gerber at the estimation hearing on the issues of infringement and damages, which would have required Judge Gerber to (1) understand the patents and the claim language, (2) understand the accused Adelphia services, and (3) determine for purposes of setting a reserve amount whether the claims were infringed by the accused services. Furthermore, the estimation hearing would have also required Judge Gerber to apply the applicable patent law with respect to damages.

On December 8, 2006, on the eve of the estimation hearing, the parties reached a consensual resolution of Rembrandt's objection to confirmation. They agreed to a reserve of $35 million for any potential recovery for Rembrandt's claim, and the estimation hearing was

3585064

canceled. This $35 million reserve was an additional significant downward departure from the allegation of damages in Rembrant's expert report and little more than one-fourth of the $130 million that Rembrandt initially claimed. The parties agreed in the stipulation that the establishment of a reserve was not an admission of liability by the Debtor Defendants or an admission as to the ultimate amount of damages correctly attributable to Rembrandt's claim. (A copy of the Stipulated Order Establishing Separate Reserve for Rembrandt Technologies, LP Administrative Claim is attached as Ex. F to Cahalan Decl.) Rembrandt will only be entitled to that portion of the $35 million reserve that it can prove would be reasonable damages, with the rest of the reserve being distributed to other creditors upon resolution of the Adversary Proceeding.

Rembrandt chose not to file its Withdrawal Motion when it filed the Adversary Proceeding. It also neglected to file the Withdrawal Motion when it replied to the Debtor Defendants' counterclaim or even after the reserve in Rembrandt's name had been established. Rembrandt waited more than a month after the reserve amount had been agreed upon, just days after the bankruptcy court confirmed the plan of reorganization which included the Rembrandt reserve, to file its Withdrawal Motion.

## ARGUMENT

28 U.S.C. § 157(d) provides:

> The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

The statute is not "jurisdictional." Instead, bankruptcy courts can hear cases that would otherwise be entitled to "mandatory withdrawal" if a party invokes the jurisdiction of the

3585064

bankruptcy court or if the party is not timely in invoking the potential right to withdraw. Here, both circumstances apply. Rembrandt invoked the jurisdiction of the bankruptcy court by filing the Adversary Proceeding there, and then delayed filing its motion to withdraw while it litigated the issues leading to its reserve. Until the present motion, Rembrandt made clear that it was willing to proceed in bankruptcy court on all of the "substantive" patent issues that it now contends must be handled by the District Court.

A.   Rembrandt's Tactic in Invoking the Bankruptcy Court's Jurisdiction and then Belatedly Seeking Withdrawal Warrants Denial of the Motion.

Rembrandt's Withdrawal Motion should be denied because it does not satisfy the threshold requirement of timeliness under Section 157(d). See Connolly v. Biderman Indus. U.S.A., Inc., No. 95 Civ. 1791 (RPP), 1996 WL 325575, at *6 (S.D.N.Y. June 13, 1996). Courts in the Second Circuit have held that the motion to withdraw must be filed as soon as practicable after it has become clear that other laws of the United States as described in Section 157(d) are implicated. See id. at *3; see also Official Comm. of Unsecured Creditors of FMI Forwarding Co., Inc. v. Union Transp. Corp. (In re FMI Forwarding Co., Inc.), No. 00 B 41815 (CB), 2005 WL 147298, at *6 (S.D.N.Y. Jan. 24, 2005) ("[C]ourts in this Circuit have defined 'timely' to mean 'as soon as possible after the moving party has notice of the grounds for withdrawing the reference.'") (quoting Kentile Floors, Inc. v. Congoleum Corp. (In re Kentile Floors, Inc.), No. 95 Civ. 2470, 1995 WL 479512, at *2 (S.D.N.Y. Aug. 10, 1995)). As one court succinctly stated: "Once a case becomes subject to withdrawal, a 'party has a plain duty to act diligently – or else, to forever hold his peace.'" United States v. Kaplan, 146 B.R. 500, 503 (D. Mass. 1992) (quoting In re Giorgio, 50 B.R. 327, 329 (D. R.I. 1985)).

- 10 -

3585064

1.    As Rembrandt Initiated Proceedings On The Patent Issues in Bankruptcy
Court, Any Withdrawal Motion Should Have Been Filed Immediately.

Rembrandt bears the burden of demonstrating that its Withdrawal Motion is

timely. See, e.g., Singer Co. B.V. v. Groz-Beckert KG (In re Singer Co. N.V.), No. 01 Civ. 0165

(WHP), 2002 WL 243779, at *4 (S.D.N.Y. Feb. 20, 2002); Kaplan, 146 B.R. at 503 ("[T]he

movant carries the burden to show that both elements of § 157(d) have been met."). Ordinarily,

a party that has initiated proceedings in bankruptcy court does not thereafter change its mind and

seek withdrawal. In such unusual circumstances, there is a heavy burden on immediate

withdrawal of the reference to prevent forum shopping and prejudice.

The court in Davis v. Mahlmann (In re Mahlmann), 149 B.R. 866 (N.D. Ill. 1993),

similarly dealt with a situation where the party moving to withdraw the reference had initiated

the action in bankruptcy court. The court correctly noted that in most cases which have

considered the timeliness issue, the party moving to withdraw the reference was responding to

pleadings which may have raised the other federal laws on which to move to withdraw the

reference. Id. at 869. In Davis, as in the case at hand, the plaintiffs were the moving party and

their own pleadings raised the federal issues which the plaintiffs later claimed merited

withdrawal of the reference. Id. The court in Davis found that a delay of less than one month

from the filing of the complaint to the motion to withdraw the reference rendered the motion

untimely under such circumstances where the plaintiffs themselves raised the federal issues.

Consequently, the court denied the motion as untimely. Id. at 870; see In re Loral Space &

Commc'ns, No. 04 Civ. 04547, 2004 WL 1586466, at *1 (S.D.N.Y. July 14, 2004) (citing Davis

with approval); Rickel & Assocs., Inc. v. Smith, No. 03 Civ. 7236, 2003 WL 23021972, at *2

(S.D.N.Y. Dec. 24, 2003) (same); Lone Star Indus., Inc. v. Rankin County Econ. Dev. Dist., 158

B.R. 574, 577 (S.D.N.Y. 1993) (same).

- 11 -

3585064

It is indisputable that Rembrandt's own allegations of patent infringement --
which are the entire basis for the Withdrawal Motion -- were apparent at the time that Rembrandt
filed its Complaint in the Adversary Proceeding on September 13, 2006. The Complaint itself is
entitled "Complaint for Post-Petition Patent Infringement." Moreover, the Complaint
specifically alleges that "[t]his is an action for patent infringement arising under the laws of the
United States relating to patents." (Compl. ¶ 14.) Rembrandt willingly chose to file both the
Adversary Proceeding and its proof of claim in the bankruptcy court alleging patent
infringement. Therefore, Rembrandt cannot argue that it was not aware of the allegations of
patent infringement in connection with the Adversary Proceeding which it now claims are
sufficient to justify mandatory withdrawal as of September 13, 2006. Rembrandt was required to
move to withdraw the reference, if at all, in September 2006. Having failed to act diligently,
Rembrandt must now proceed in the bankruptcy court where it chose to file its case. See, e.g.,
Davis, 149 B.R. 866; see also Laine v. Gross, 128 B.R. 588, 588-89 (D. Me. 1991) ("When the
complaint contains the allegations of 'other law' which are the grounds for the motion to
withdraw the reference, making existence of the issue clear, the filing of the complaint is the
point from which the timeliness of the motion should be assessed."); Kaplan, 146 B.R. at 503
("Timeliness is assessed from the time a complaint is filed or from the time the grounds for
withdrawing the complaint first become apparent.").

> 2.    Rembrandt's Four-Month Delay In Filing The Withdrawal Motion
>        Renders The Withdrawal Motion Untimely Under Section 157(d).

Rembrandt offers virtually no legal support for its contention that the Withdrawal
Motion is timely despite its four-month delay, other than its argument that neither section 157(d)
or the case law prescribes a specific time limit. (See Mem. of Law in Support of Rembrandt
Technologies, LP's Mot. to Withdraw the Ref. 8.) That argument is beside the point, since it

- 12 -

3585064

ignores that the alleged rationale for withdrawal existed the very day Rembrandt began the

proceeding. Rembrandt's justification for the delay -- that it needed to ensure that it would get a

reserve for its claim -- establishes precisely why withdrawal now would be inappropriate:

Having chosen to litigate its claim in bankruptcy court for a substantial period in order to procure

a specific benefit (the reserve), Rembrandt waived its right to seek withdrawal. See, e.g., In re

Cambridge Biotech Corp., 186 F.3d 1356, 1371 (Fed. Cir. 1999) (holding that upon filing by

defendant of what amounted to proof of claim in bankruptcy case, bankruptcy court obtained

jurisdiction to determine validity and infringement of patents); see also In re FMI Forwarding

Co., 2005 WL 147298, at *6 ("Delay for tactical reasons, such as forum shopping, or which

prejudices the opposing party or the administration of justice, can be grounds for denying a

withdrawal motion as untimely.") (citations omitted).

   Even in cases where the moving party was merely responding to a complaint filed

in bankruptcy court, courts have still found that a delay shorter than Rembrandt's warranted

denying the motion to withdraw as untimely. For example, in Lone Star Industries, Inc. v.

Rankin County Economic Development District, 158 B.R. 574 (S.D.N.Y. 1993), the court found

that a motion to withdraw the reference filed approximately three months after the complaint was

filed and two months after the moving party answered the complaint was untimely. The court

held that "to permit an application to withdraw the reference and to transfer to succeed, when

first filed at such a juncture, would reward forum shopping." Id. at 577. Similarly, in In re Great

Northern Paper, Inc., 323 B.R. 7 (D. Me. 2005), the defendants moved to withdraw the reference

less than three months after the original complaint in the adversary proceeding was filed and

eleven days after the defendants filed an answer. The defendants argued that the motion was

timely because it was only eleven days after they filed their answer in which the other issues of

- 13 -

3585064

federal law were first raised. <u>Id.</u> at 10. The court still denied the motion because the defendants

had long known of the looming federal issue. <u>Id.</u> As such, the three-month delay from the

complaint to the filing of the motion to withdraw the reference rendered such motion untimely.

<u>Id.</u>

    Other courts similarly faced with motions to withdraw the reference filed months

after the movant became aware of the federal issues have also denied such motions as untimely.

<u>See, e.g.</u>, <u>Laine</u>, 128 B.R. at 589 (denying defendants' motion to withdraw the reference, filed

six months after the complaint, as untimely where the basis for defendants' motion to withdraw

the reference -- the RICO statutes -- should have been apparent to the defendants at the time of

filing of the complaint); <u>In re Stavriotis</u>, 111 B.R. 154, 157-58 (N.D. Ill. 1990) (denying the

motion to withdraw the reference as untimely and stating, "It is clear from the briefs that the

motion to withdraw the reference was not made as soon as possible after [defendant] learned that

federal laws might be implicated in the action before the bankruptcy court (late 1988) but rather

when it learned that it might have something to gain from withdrawal (May 1989). That the

motion was filed as soon as [defendant] realized withdrawal might be to its advantage is not

sufficient to make the motion for withdrawal of the reference 'timely.'"); <u>In re Sec. Group</u>, 89

B.R. 192, 194 (M.D. Fla. 1988) (finding that having failed to seek withdrawal when filing their

answer which relied on federal securities law, defendants waived the right to have the reference

withdrawn and "submitted to the jurisdiction of the bankruptcy court for resolution of the federal

nonbankruptcy law issues which are present within the adversary proceeding"); <u>Cent. Ill. Sav. &</u>

<u>Loan Assoc. v. Rittenberg Co., Ltd. (In re IQ Telecomm., Inc.)</u>, 70 B.R. 742, 746 (N.D. Ill. 1987)

(denying defendants' motion to withdraw the reference as untimely as the RICO claim was

3585064

included in the original complaint, so the defendants were on notice at that point that the grounds for withdrawing the reference existed).

Accordingly, the timeliness of the motion to withdraw the reference must be evaluated from the filing of the Complaint -- September 13, 2006. By failing to move to withdraw the reference in a timely manner, Rembrandt has waived any right it may otherwise have to seek mandatory withdrawal pursuant to Section 157(d).

       3.    Both Parties, as Well as the Bankruptcy Court, Have Already Devoted Considerable Time and Effort Litigating the Patent Issues in Bankruptcy Court.

Although Rembrandt makes repeated reference to the contention that "formal discovery with respect to the Adversary Proceeding has not yet commenced," Rembrandt's Withdrawal Motion ignores the fact that substantial work on this action has already occurred in the bankruptcy court before Judge Gerber. Rembrandt argued that "the time spent in Bankruptcy Court to date has been dedicated to determining an appropriate amount to reserve for Rembrandt's claims." (Mem. of Law in Supp. of Withdrawal Mot. 3.) What Rembrandt failed to bring to the Court's attention is that both Rembrandt and the Debtor Defendants served formal requests for discovery in the Adversary Proceeding and all of the discovery was focused specifically on the issues of patent infringement and patent damages in the Adversary Proceeding. See, e.g., In re Adelphia Bus. Solutions, Inc., 341 B.R. 415, 424-25 (Bankr. S.D.N.Y. 2003) (explaining in the bankruptcy context that "[a]n estimator of claims must take into account the likelihood that each party's version might or might not be accepted by a trier of fact. The estimated value of a claim is then the amount of the claim diminished by [the] probability that it may be sustainable only in part or not at all." Further, legal arguments must be evaluated "for their correctness as a matter of governing law.") (quotations and citations omitted).

- 15 -

3585064

Rembrandt has already produced over 24,000 pages of materials in discovery. The Debtor Defendants produced over 13,000 pages of discovery. Both Rembrandt and the Debtor Defendants have already retained expert witnesses in this case that have submitted expert reports on infringement and damages. Rembrandt's attempt to forum-shop its way out of the court which presided over this litigation should not be countenanced. See Childs v. Gallagher, 342 B.R. 823, 828 (M.D. Ala. 2006) ("The reason for the timeliness requirement is to prevent parties from forum shopping, stalling, or otherwise engaging in obstructionist tactics.") (quoting In re Holcomb Health Care Servs., LLC, 329 B.R. 622, 645 (Bankr. M.D. Tenn. 2004)); Davis, 149 B.R. at 870 ("[E]vidence of forum shopping is a factor courts may consider in denying a motion to withdraw the reference.").

Rembrandt's behavior here transcends mere forum shopping, and approaches sandbagging. At the November 14, 2006 conference, Judge Gerber specifically asked Rembrandt's counsel whether they had a "view or position on the advantages or disadvantages of coordinating this litigation with the actions in other jurisdictions where similar or identical issues are being raised?" (Ex. C to Cahalan Declaration.) Rembrandt did not utter a word about its plan to seek withdrawal of the reference as soon as Judge Gerber had set a satisfactory reserve for Rembrandt. Only after Rembrandt secured its reserve and the plan for reorganization was confirmed did Rembrandt surface its withdrawal maneuver.

B.    The Adversary Proceeding Does Not Require Substantial And Material Consideration Of Non-Bankruptcy Federal Law.

1.    The Adversary Proceeding Only Requires Routine Application of Patent Law Which Does Not Entitle Rembrandt to Mandatory Withdrawal Under Section 157(d).

Even had Rembrandt's Withdrawal Motion been timely, this is not an appropriate case to invoke mandatory withdrawal. Bankruptcy courts are capable of applying patent law and

3585064

have considered and ruled on issues of patent and other intellectual property matters. See, e.g.,

Royal Bank & Trust Co. v. Pereira (In re Lady Madonna Indus., Inc.), 99 B.R. 536, 541

(S.D.N.Y. 1989) (district court affirmed bankruptcy court's determination that trademarks did

not relate to debtor's accounts receivable and contract rights); Sunbeam Prods, Inc. v. Wing

Shing Prods. (BVI) Ltd. (In re AI Realty Mktg. of N.Y., Inc.), 293 B.R. 586 (Bankr. S.D.N.Y.

2003), aff'd in part and rev'd in part on other grounds, 311 B.R. 378 (S.D.N.Y. 2004), aff'd, 153

F.App'x 703 (Fed. Cir. 2005), cert. denied, 126 S. Ct. 1085 (2006) (deciding patent infringement

case, including addressing laches defense); In re Patient Educ. Media, Inc., 210 B.R. 237, 241

(Bankr. S.D.N.Y. 1997) ("Bankruptcy courts have generally treated nonexclusive copyright and

patent licenses as executory contracts and have considered their assignability under 11 U.S.C. §

365.") (citations omitted); Institut Pasteur & Genetic Sys. Corp. v. Cambridge Biotech Corp. (In

re Cambridge Biotech Corp.), 186 B.R. 9, 19-22 (Bankr. D. Mass. 1995), aff'd, 212 B.R. 10 (D.

Mass. 1997), aff'd, 186 F.3d 1356 (Fed. Cir. 1999) (deciding, after motion to withdraw the

reference was denied, patent infringement claims and the patent defenses of lack of enablement,

lack of utility, and obviousness); Grunewald v. Power Swing Partners (In re Power Swing

Partners), 9 B.R. 512 (Bankr. S.D. Cal. 1980) (deciding issues of patent infringement, breach of

license agreement, trademark infringement, and unfair competition).

       Mandatory withdrawal only applies when "resolution of the proceeding requires

consideration of both title 11 and other laws of the United States regulating organizations or

activities affecting interstate commerce." 28 U.S.C. § 157(d) (West 2004). It is well-settled that

"[m]andatory withdrawal pursuant to the second sentence of § 157(d) is narrowly applied."

Keene Corp. v. Williams Bailey & Wesner L.L.P. (In re Keene Corp.), 182 B.R. 379, 382

(S.D.N.Y. 1995) (citation omitted); Adelphia Commc'ns Corp. v. Rigas (In re Adelphia

3585064

Commc'ns Corp.), No. 02 Civ. 8495 (GBD), 2003 WL 21297258, at *3 (S.D.N.Y. June 4, 2003)

(quoting same); see Enron Power Mktg., Inc. v. City of Santa Clara (In re Enron Power Mktg.,

Inc.), No. 01 Civ. 7964, 2003 WL 68036, at *5 (S.D.N.Y. Jan. 8, 2003) ("[C]ourts in this Circuit

have interpreted the mandatory withdrawal provision narrowly, for 'if read literally, [it] would

eviscerate much of the work of the bankruptcy courts.'" (second alteration in original)) (quoting

O'Connell v. Terranova (In re Adelphi Inst., Inc.), 112 B.R. 534, 536 (S.D.N.Y. 1990)); In re

Texaco Inc., 84 B.R. 911, 921 (S.D.N.Y. 1988) ("Section 157(d) should be construed narrowly

and not become an 'escape hatch' through which bankruptcy matters will be removed to the

district court.") (citing In re White Motor Corp., 42 B.R. 693, 704 (N.D. Ohio 1984)).

      Mandatory withdrawal is not required whenever non-bankruptcy statutes (such as

the patent statutes) will be considered in the bankruptcy court. Rather, it is reserved only for

those cases where substantial and material consideration of non-Bankruptcy Code federal

statutes is necessary. Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.), 922

F.2d 984, 995 (2d Cir. 1990); see City of New York v. Exxon Corp., 932 F.2d 1020, 1026 (2d

Cir. 1991) (explaining that the bankruptcy court must be required "to engage in significant

interpretation, as opposed to simple application," of federal non-bankruptcy statutes); In re

Recoton Corp., No. 04 Civ. 2466, 2004 WL 1497570, at *3 (S.D.N.Y. July 1, 2004); Bianco v.

Hoehn (In re Gaston & Snow), 173 B.R. 302, 306 (S.D.N.Y. 1994); In re Adelphi Inst., 112 B.R.

at 536 (explaining that section 157(d) does not mandate withdrawal unless the district court "can

make an affirmative determination that resolution of the claims will require substantial and

material consideration of non-code statutes") (quotations and citations omitted).

      "Significant interpretation" exists only "when complicated interpretative issues,

often of first impression, have been raised under non-Title 11 federal laws" or when the

3585064

bankruptcy court must resolve "substantial and material conflicts between non-title 11 federal laws and the Bankruptcy Code." In re Adelphi Inst., 112 B.R. at 537; see Adelphia Commc'ns., 2003 WL 21297258, at *3; Enron Power Mktg., 2003 WL 68036, at *4 ("I do not agree that federal issues are substantial, let alone substantial issues of 'first impression' that preclude resolution by a bankruptcy judge."). "[A]ny reading of § 157(d) which limits bankruptcy court jurisdiction to questions arising solely under the [Bankruptcy] Code would strip the court of much of its authority to resolve debtor-creditor disputes, since numerous [Bankruptcy] Code provisions themselves require reference to other state and federal law." In re White Motor, 42 B.R. at 703.

Rembrandt has not, and cannot, even contend that any specific issues of first impression exist under the patent statutes or that there is any conflict between the Bankruptcy Code and any patent law that would be at issue in this case. The Adversary Proceeding should not be withdrawn simply because patent statutes will be considered by the bankruptcy court in deciding the case. See Sunbeam Prods., 293 B.R. 586.

2.    The Authorities Relied on by Rembrandt Do Not Require that the Adversary Proceeding's Reference Be Withdrawn.

Plaintiff relies heavily on Singer Co. B.V. v. Groz-Beckert KG (In re Singer Co. N.V.), No. 01 Civ. 0165 (WHP), 2002 WL 243779, at *3 (S.D.N.Y. Feb. 20, 2002). Unlike Rembrandt, however, in Singer the movant seeking the withdrawal of the reference was the defendant because the debtor had initiated an action against it in bankruptcy court. See id. at *1. While the defendant movant had previously filed a patent infringement suit in another district, that suit named only a nondebtor and had not asserted a claim against the debtors' estate. See id. Furthermore, the "primary issue" in Singer was whether the transfer of a machine to another company "led to an implied patent license." Id. at *3; see id. at *1 ("The central controversy . . .

- 19 -

is whether [a] plaintiff . . . owns an implied license in [the patent], . . . and if so, whether that implied license is subject to a bankruptcy reorganization plan.") (citation omitted). The plaintiffs' "claim to an implied patent raise[d] the difficult patent law question of determining under what circumstances an implied patent license can arise." Id. at *3. The Court then found that this issue "will require patent law interpretation, as little statutory and decisional law addresses [these] circumstances." Id. In contrast, Rembrandt's claim, and in fact none of the pleadings in this case, make any reference to a single licensing issue, implied or otherwise. The claim requires only a straightforward application of patent law, an exercise the bankruptcy court is capable of and authorized to perform. See Shugrue, 922 F.2d at 995; In re Adelphi Inst., 112 B.R. at 537; In re Lady Madonna Indus., 99 B.R at 541.

Finally, unlike the license issue in Singer, there is a wealth of "statutory and decisional law" to assist the bankruptcy court in its straightforward application of established patent law. See, e.g., Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co., 520 U.S. 17, 40 (1997) (stating the essential inquiry for determination of patent infringement); Markman v. Westview Instr., Inc., 517 U.S. 370 (1996); Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996); Wolverine World Wide, Inc. v. Nike, Inc., 38 F.3d 1192, 1196 (Fed. Cir. 1994) (explaining two-step inquiry to be used in determining whether a patent claim is infringed); Caterpillar Tractor Co. v. Berco, S.P.A., 714 F.2d 1110, 1114 (Fed. Cir. 1983) ("Determination of patent infringement requires two steps: the meaning of the claims must be learned from a study of all relevant patent documents; and the claims must be applied to the accused structures.").

Rembrandt also relies on McCrory Corp. v. 99¢ Only Stores (In re McCrory Corp.), 160 B.R. 502 (S.D.N.Y. 1993). McCrory is materially different, and actually

3585064

demonstrates how Rembrandt fails to carry its burden. First, the movants in <u>McCrory</u> made a

specific showing that issues to be addressed included "whether such marks are properly

registerable trademarks under Section 2(e)(1) of the Lanham Act . . . or whether Defendant's

conduct constitutes unfair competition prohibited by . . . the Lanham Act." <u>Id.</u> at 504 (citation

omitted). Second, the movants met their burden by specifically and substantially identifying the

complex legal issues to be addressed in the case, including those concerning the nuances of

"secondary meaning." <u>Id.</u> at 505. Rembrandt, however, fails to proffer similar information and

analysis. It offers nothing other than the undeveloped and unsupported contention that the

technology used by the Debtor Defendant's "high speed cable internet system infringed"

Rembrandt's patents. Furthermore, unlike the movants in <u>McCrory</u>, Rembrandt then offers

nothing but a conclusory statement that its case requires the requisite significant and material

consideration of patent law. By not substantively addressing these key issues, Rembrandt's

reliance on <u>McCrory</u> is misplaced.

> 3.    Rembrandt Fails to Provide Any Analysis to Satisfy its Burden to
>        Demonstrate that Substantial and Material Consideration of Patent Law is
>        <u>Necessary to Resolve the Adversary Proceeding.</u>

Rembrandt fails to provide any supporting analysis which would demonstrate that

the claims in the Adversary Proceeding will require anything more than the straightforward

application or routine interpretation of patent law. <u>See</u> <u>In re Vicars Ins. Agency, Inc.</u>, 96 F.3d

949, 953 (7th Cir. 1996) ("[T]he specifics of the particular context or posture should be fleshed

out by the moving party to demonstrate that the grounds for withdrawal are satisfied (i.e.,

substantial and material consideration is required). That party ultimately bears the risk of

nonpersuasion.") (citing <u>Carr v. Mich. Real Estate Ins. Trust (In re Mich. Real Estate Ins. Trust)</u>,

87 B.R. 447, 459 (E.D. Mich. 1988)). Rembrandt merely describes very generally the four

patents at issue and alleges that the Debtor Defendants infringed these patents. There is no

- 21 -

contention that these particular patents, and any subsequent patent infringement analyses, will be unusually difficult to discern or that the bankruptcy court will be required to substantially interpret the patent laws in an uncommon fashion. See Adelphia Commc'ns, 2003 WL 21297258, at *3 ("Mandatory withdrawal is a fact specific inquiry, looking to the circumstances involved in each case."); In re Adelphi Inst., 112 B.R. at 537 ("[I]t is not enough for defendants to show that the adversary proceeding involve[d] RICO, [or] that RICO is . . . even [a] complex statute.").

The procedures in a patent case are well-established, and Judge Gerber has demonstrated an awareness and recognition of those procedures. In hearings before Judge Gerber, he has demonstrated an understanding of the patent laws at issue, as well as the patents-in-suit and the allegedly infringing acts committed by the Debtor Defendants. Indeed, Rembrandt's counsel, at a pre-trial conference before Judge Gerber in this matter, stated that Judge Gerber was experienced in this area and never alluded to the fact that it intended to later move to withdraw the reference. (See Ex. C to Cahalan Decl. 14.)

The import of Rembrandt's argument is that all patent infringement cases, without regard to their complexity, uniqueness or merit, must inherently require significant interpretation of non-bankruptcy law. With no supporting facts addressing the specifics of this case, Rembrandt's argument cannot stand. Cf. United States v. Johns-Manville Corp. (In re Johns-Manville Corp.), 63 B.R. 600, 602 (S.D.N.Y. 1986) ("It would seem incompatible with congressional intent to provide a rational structure for the assertion of bankruptcy claims to withdraw each case involving the straightforward application of a federal statute to a particular set of facts."). Permitting withdrawal based on the reasoning set forth in Rembrandt's Withdrawal Motion would effectively be deciding that bankruptcy courts are never capable of

3585064

handling cases involving patent laws, and mandatory withdrawal would always apply in such

cases. Instead, the reference to cases involving patent statutes, similar to those involving the

federal securities laws or the RICO statutes, should only be withdrawn if significant

interpretation and not straightforward application of patent statutes is required. As no such

showing has been made by Rembrandt here, the Withdrawal Motion should be denied.

## **CONCLUSION**

WHEREFORE, the Debtor Defendants respectfully request that the Motion to

Withdraw the Reference be denied.


Date: March 2, 2007


/s/ Roger Netzer
Roger Netzer (RN-7190)
Thomas Meloro (TM-7668)
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019-6099
Tel: (212) 728-8000

*Attorneys for Defendants and Reorganized
Debtors
Adelphia Communications Corporation;
Century-TCI California, LP;
Century-TCI California Communications, LP;
Century-TCI Distribution Company, LLC;
Century-TCI Holdings, LLC;
Parnassos, LP;
Parnassos Communications, LP;
Parnassos Distribution Company I, LLC;
Parnassos Distribution Company II, LLC;
Parnassos Holdings, LLC; and
Western NY Cablevision, LP*

# EXHIBIT E

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
FOLEY SQUARE DIVISON

| | |
|---|---|
| IN RE: ADELPHIA COMMUNICATION CORP.<br><br>    Debtor,<br><br>REMBRANDT TECHNOLOGIES, LP<br><br>    Plaintiff,<br><br>v.<br>ADELPHIA COMMUNICATIONS CORP.<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)  Case No.  1:07-cv-00214-WHP<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

NOTICE OF FILING MOTION FOR TRANSFER AND CONSOLIDATION OF
REMRBANDT TECHNOLOGIES, LP PATENT LITIGATION
PURSUANT TO 28 U.S.C. § 1407

PLEASE TAKE NOTICE that, pursuant to J.P.M.L. Rule 5.2(b), on March 9th, 2007,

CoxCom, Inc. filed its Motion for Transfer and Consolidation of the Rembrandt

Technologies, LP Patent Litigation Pursuant to 28 U.S.C. § 1407 with the Judicial Panel on

Multidistrict Litigation in Washington, D.C. CoxCom, Inc., a non-party to this action, is a

named defendant in both *Rembrandt Technologies, LP v. Charter Communications, Inc., et.*

*al.*; Civil Action No. 2:06-CV-507, and *Rembrandt Technologies, LP v. Charter*

*Communications, Inc., et. al.*; Civil Action No. 2:06-CV-223, both pending before Judge T.

John Ward in the Eastern District of Texas. Enclosed with this Notice are copies of the

motion for transfer and consolidation and all documents in support thereof. These

documents are relevant to the above-captioned case currently pending before Judge William

H. Pauley, III in the Southern District of New York.

Dated: March 9th, 2006.

Respectfully Submitted

KILPATRICK STOCKTON
1100 Peachtree Street
Suite 2800
Atlanta, Georgia 30309
(404) 815-6500
(404) 815-6555 (facsimile)
Mstockwell@kilpatrickstockton.com
Sgriffin@kilpatrickstockton.com

*Mitchell G. Stockton*

Mitchell G. Stockton
R. Scott Griffin

Tonya R. Deem
KILPATRICK STOCKTON
1001 West Fourth Street
Winston-Salem, NC 27101-2400
(336) 607-7300
(336) 607-7500 (facsimile)
tdeem@kilpatrickstockton.com

**ATTORNEYS FOR COXCOM, INC.**

## CERTIFICATE OF SERVICE

The Undersigned certifies that a copy of the NOTICE OF FILING MOTION FOR

TRANSFER AND CONSOLIDATION OF REMBRANDT TECHNOLOGIES, LP

PATENT LITIGATION PURSUANT TO 28 U.S.C. § 1407 was filed electronically in

compliance with local rules and contemporaneously served by first class mail on all counsel

of record in the above-captioned case.

Mitchell G. Stockton
KILPATRICK STOCKTON
1100 Peachtree Street
Suite 2800
Atlanta, Georgia 30309
(404) 815-6500
(404) 815-6555 (facsimile)
mstockton@kilpatrickstockton.com

**ATTORNEY FOR COXCOM, INC.**

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| In re:<br><br>Rembrandt Technologies, LP Patent<br>Litigation | MDL Docket No. |

**MOTION FOR TRANSFER AND CONSOLIDATION OF REMBRANDT TECHNOLOGIES PATENT LITIGATION PURSUANT TO 28 U.S.C. § 1407**

Mitchell G. Stockwell
Taylor Higgins Ludlam
KILPATRICK STOCKTON LLP
1100 Peachtree Street, N.E., Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

Tonya R. Deem
KILPATRICK STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101-2400
Telephone: (336) 607-7300
Facsimile: (336) 607-7500

**Attorneys For COXCOM, INC.**

Pursuant to 28 U.S.C. § 1407 and Rule 7.2 of the Rules of Procedure of the Judicial

Panel on Multidistrict Litigation (the "Panel"), Defendant CoxCom, Inc. ("CoxCom")[1]

moves the Panel for an Order: (1) transferring fourteen (14) related patent infringement

actions filed by or against Rembrandt Technologies, LP ("Rembrandt") (the "Actions"), as

well as any actions that may subsequently be filed by or against Rembrandt, asserting similar

or related claims to the District of Delaware.[2]

In support of this Motion, CoxCom states the following, as more fully explained in

the accompanying Memorandum of Law:

1.     This Motion seeks the transfer and consolidation of fourteen related actions for

patent infringement filed by Rembrandt against twenty-nine defendants[3] (the "Actions"), ten

of which were filed within the last six months. The Actions have been filed in three judicial

districts: the Eastern District of Texas; the District of Delaware; and the Southern District of

New York.

---

[1] CoxCom is a defendant in the recently filed cases of *Rembrandt Technologies, LP v. Charter Communications, Inc., et al.*, No. 2:06-CV-223-TJW (E.D. Tex.) (Marshall Division) and *Rembrandt Technologies, LP v. Charter Communications, Inc., et al.*, No. 2:06-CV-507-TJW (E.D. Tex.) (Marshall Division). CoxCom is also a plaintiff in the recently filed declaratory judgment action of *CoxCom, Inc. v. Rembrandt Technologies, L.P.*, No. 06-721-GMS (D. Del.).
[2] As explained more fully in the accompanying Memorandum of Law, CoxCom moves for consolidation of all 14 related patent infringement actions, but suggests that, because of the illogical way in which the claims were grouped in the 14 cases, the most convenient, just and efficient administration of these actions would be achieved if the transferee court severed from the consolidated action those claims asserting the '627 patent for separate treatment and conduct. Claims relating to the '627 patent implicate completely different technology and activity (receipt and transmission of broadcast television signals through ATSC-compliant equipment) than the rest of the claims (which implicate high speed internet services through DOCSIS-compliant equipment).
[3] The Actions were initially filed against twenty-nine defendants, but claims asserted against Cox Communications, Inc. and Cox Enterprises, Inc. were voluntarily dismissed. See *Rembrandt Technologies, LP v. Charter Communications, Inc., et al.*, No. 2:06-CV-223-TJW (E.D. Tex.).

2.      Pursuant to Rule 7.2(a)(ii) of the Rules of the Panel, a schedule of the Actions is attached hereto as Exhibit A.

3.      Plaintiff Rembrandt is a limited partnership organized under the laws of the State of New Jersey with its principal place of business in Bala Cynwyd, Pennsylvania. Rembrandt is a company that invests in patents, but does not practice them. Instead, it acquires rights to patents and sues entities it believes infringe upon those patents.

4.      Rembrandt has initiated two waves of patent litigation relating to: (a) the receipt and transmission over the cable television systems of digital terrestrial broadcast signals that comply with the ATSC[4] Digital Television Standard; and (b) the provision of high speed internet services through the use of DOCSIS[5]-compliant equipment.

5.      Rembrandt filed the Actions in two waves, apparently as it became the assignee of the various patents in suit. The first wave of litigation (the "Rembrandt I" litigation) includes nine cases against fifteen current defendants spanning three industries (cable, television broadcast, and manufacturing) and asserts infringement of up to five patents. One of the five patents asserted in the Rembrandt I litigation, U.S. Patent No. 5,243,627 (the "'627 patent"), is asserted against each of the Rembrandt I defendants. The '627 patent relates to the receipt and transmission of ATSC-compliant television broadcast signals. The remaining four patents asserted in the Rembrandt I litigation do not relate to the transmission of television signals. Instead, the remaining four patents relate to the provision of high speed internet service through the use of DOCSIS-compliant cable modems and related equipment. The second wave of litigation (the "Rembrandt II" litigation) includes

---

[4]      "Advanced Television System Committee"
[5]      "Data-Over-Cable Service Interface Specifications"

three cases filed by Rembrandt in the Eastern District of Texas against seven cable service providers (all of whom are also defendants in the Rembrandt I litigation), a declaratory judgment action filed by CoxCom in the District of Delaware, and an action filed in the Southern District of New York. The Rembrandt II litigation asserts infringement of five patents relating to the provision of high speed internet service and accuses the same DOCSIS-compliant equipment that is accused in the Rembrandt I litigation.

6.     But for the claim of infringement of the '627 patent, all of the claims in the Rembrandt I and Rembrandt II actions relate to the provision of high speed internet and related services through the use of DOCSIS-compliant cable modems and related equipment.

7.     For the Panel's convenience, a table identifying the asserted patents, the actions in which they have been asserted and the industry standards that are accused is attached to the Motion as Exhibit B.

8.     There have been no substantive orders issued in any of the Actions and no claim construction hearings have been held.

9.     In each of the Actions, defendants already have asserted, or may be expected to assert, overlapping defenses that some or all of the various asserted patent claims are not valid and/or not enforceable (i.e., void for inequitable conduct and/or prosecution laches) under the patent laws.

10.     In each of the Actions, Rembrandt alleges that the defendants infringe its patents by virtue of their compliance with industry standards, either the ATSC standard with respect to the '627 patent or the DOCSIS standard with respect to the other patents in suit. Therefore, the Actions involve identical infringement allegations regarding the patents and the defendants may be expected to assert overlapping non-infringement defenses.

4

11.    Transfer and consolidation of these Actions is necessary to: (a) eliminate the potential for inconsistent rulings on critical pretrial motions, including but not limited to, claim construction rulings; (b) eliminate the burden of duplicative discovery on common issues; (c) prevent inconsistent pretrial rulings; (d) avoid the unnecessary use of judicial resources; and (e) reduce the overall costs and burdens for all of the parties. Moreover, because the Actions assert infringement based on compliance with industry standards, the effect of having inconsistent rulings regarding industry standards would be significant and deleterious.

12.    Due to the many overlapping patents, the Actions in this litigation involve common questions of fact. Each of the Actions involves allegations of infringement, invalidity and enforceability issues common to the overlapping patents. All the Actions can be expected to share factual and legal questions concerning such matters as the technology underlying the patents, the scope and content of the prior art, claim construction, the prosecution histories of the asserted patents and any inequitable conduct and/or unreasonable delays (prosecution laches) committed during their prosecution, and/or issues of infringement involving the patents.

13.    The claims relating to the provision of high speed internet service and related services accuse the same DOCSIS-compliant equipment—cable modems and related equipment used by the cable service provider defendants in providing high speed internet service. However, because some of these claims are asserted in the Rembrandt I actions while others are asserted in the Rembrandt II actions and because seven of the cable service provider defendants have been sued in both the Rembrandt I and Rembrandt II actions, it is expected that the cable service provider defendants and the third parties who supply and

5

manufacture the accused equipment will be subjected to burdensome and inefficient discovery as they are forced to respond to overlapping and duplicative discovery requested in the separate actions.

14.    Further, the question of damages will present many other common issues of fact among the Actions.  Because Rembrandt is not a competitor of the defendants, Rembrandt can be expected to seek damages in the form of a reasonable royalty, which involves consideration of multiple factors as set forth in the seminal case of *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir. 1971).  Because many of these factors relate to the specific patent or patent owner involved in the case, each patent for which Rembrandt seeks damages will present numerous common factual issues.  Moreover, because the claims relating to the provision of high speed internet services straddle both Rembrandt I and Rembrandt II actions, because the claims accuse the same equipment, and because seven of the cable service provider defendants have been sued in both the Rembrandt I and Rembrandt II actions, there is a risk that Rembrandt may receive inflated damages.

15.    Of the fourteen actions currently at issue, at least six are pending before Judge Gregory Sleet in the District of Delaware.  These six actions assert five of the nine patents at issue in the Actions and implicate both of the accused industry standards.  As such, Judge Sleet has the opportunity to gain familiarity with the patents, technology and industry standards at issue.

16.    Judge Sleet has presided over a number of complex patent litigation cases in the past and has demonstrated an understanding and ability to effectively administer this type

6

of complex litigation. Moreover, Judge Sleet has already indicated an interest in at least coordinating the six actions pending in Delaware.

17. Consolidation and transfer before Judge Sleet in the District of Delaware is appropriate.

WHEREFORE CoxCom requests that this Panel enter an order transferring the Actions, as well as any actions that may subsequently be filed by or against Rembrandt asserting similar or related claims to the District of Delaware and consolidating those actions for coordinated pretrial proceedings.

This the 9th day of March 2007.

Respectfully Submitted:

Mitchell G. Stockwell
Taylor Higgins Ludlam
KILPATRICK STOCKTON LLP
1100 Peachtree Street, N.E., Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

Tonya R. Deem
KILPATRICK STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101-2400
Telephone: (336) 607-7300
Facsimile: (336) 607-7500

**Attorneys for COXCOM, INC.**

7

**Exhibit A**
**SCHEDULE OF ACTIONS**

| NO. | NAME OF ACTION | DISTRICT COURT/ DIVISION | DATE ACTION FILED | CIVIL ACTION NUMBER | JUDGE ASSIGNED |
|---|---|---|---|---|---|
| 1. | Rembrandt Technologies, LP v. Sharp Corporation and Sharp Electronics Corporation | U.S.D.C., Eastern District of Texas/Marshall Division | 02/03/06 | 2:06-cv-047 | T. John Ward |
| 2. | Rembrandt Technologies, LP v. Comcast Corporation; Comcast Cable Communications, LLC; and Comcast of Plano, LP | U.S.D.C., Eastern District of Texas/Marshall Division | 09/16/05 | 2:05-cv-443 | T. John Ward |
| 3. | Rembrandt Technologies, LP v. Comcast Corporation; Comcast Cable Communications, LLC; and Comcast of Plano, LP | U.S.D.C., Eastern District of Texas/Marshall Division | 11/30/06 | 2:06-cv-506 | T. John Ward |
| 4. | Rembrandt Technologies, LP v. Time Warner Cable, Inc. | U.S.D.C., Eastern District of Texas/Marshall Division | 06/01/06 | 2:06-cv-224 | T. John Ward |
| 5. | Rembrandt Technologies, LP v. Time Warner Cable, Inc. | U.S.D.C., Eastern District of Texas/Marshall Division | 09/13/06 | 2:06-cv-369 | T. John Ward |
| 6. | Rembrandt Technologies, LP v. Charter Communications, Inc.; Charter Communications Operating, LLC; Cox Communications, Inc., Cox Enterprises, Inc.; CoxCom, Inc.; CSC Holdings, Inc., and Cablevision Systems Corporation | U.S.D.C., Eastern District of Texas/Marshall Division | 06/01/06 | 2:06-cv-223 | T. John Ward |
| 7. | Rembrandt Technologies, LP v. Charter Communications, Inc.; Charter Communications Operating, LLC, and CoxCom, Inc. | U.S.D.C., Eastern District of Texas/Marshall Division | 11/30/06 | 2:06-cv-507 | T. John Ward |

| NO. | NAME OF ACTION | DISTRICT COURT/ DIVISION | DATE ACTION FILED | CIVIL ACTION NUMBER | JUDGE ASSIGNED |
|---|---|---|---|---|---|
| 8. | Rembrandt Technologies, LP v. Cablevision Systems Corporation and CSC Holdings, Inc. | U.S.D.C., District of Delaware | 10/13/06 | 1:06-cv-635 | Gregory M. Sleet |
| 9. | CoxCom, Inc. v. Rembrandt Technologies, LP | U.S.D.C., District of Delaware | 11/30/06 | 1:06-cv-721 | Gregory M. Sleet |
| 10 | Rembrandt Technologies, LP v. CBS Corporation | U.S.D.C., District of Delaware | 12/01/06 | 1:06-cv-727 | Gregory M. Sleet |
| 11 | Rembrandt Technologies, LP v. NBC Universal, Inc. | U.S.D.C., District of Delaware | 12/01/06 | 1:06-cv-729 | Gregory M. Sleet |
| 12 | Rembrandt Technologies, LP v. ABC, Inc. | U.S.D.C., District of Delaware | 12/01/06 | 1:06-cv-730 | Gregory M. Sleet |
| 13 | Rembrandt Technologies, LP v. Fox Entertainment Group, Inc. and Fox Broadcasting Company | U.S.D.C., District of Delaware | 12/01/06 | 1:06-cv-731 | Gregory M. Sleet |
| 14 | In Re Adelphia Communication Corp. Rembrandt Technologies, LP v. Adelphia Communications Corp. Corporation, Century-TCI California Communications, LP, Century- TCI Distribution Company, LLC, Century- TCI Holdings, LLC, Parnassos, L.P., Parnassos Communications, LP, Parnassos Distribution Company I, LLC, Parnassos Distribution Company II, LLC, Parnassos Holdings, LLC, Western NY Cablevision, LP | U.S. Bankr. Court and U.S.D.C., Southern District of New York | 01/11/07 | Bankr: 02-41729 U.S.D.C.: 1:07-cv-214 | Bankr: Robert E. Gerber U.S.D.C.: William H. Pauley III |

**EXHIBIT B**
**Rembrandt Litigation**

| Patent | Rembrandt v. Sharp (2:06-cv-047-TJW) | Rembrandt v. Comcast (2:05-cv-443-TJW) | Rembrandt v. Comcast (2:06-cv-506-TJW) | Rembrandt v. Time Warner (2:06-cv-224-TJW) | Rembrandt v. Time Warner (2:06-cv-369-TJW) | Rembrandt v. Charter, et al. (2:06-cv-223-TJW) | Rembrandt v. Charter, et al. (2:06-cv-507-TJW) | Rembrandt v. Cablevision (1:06-cv-635-GMS) | CoxCom v. Rembrandt (1:06-cv-721-GMS) | Rembrandt v. CBS (1:06-cv-727-GMS) | Rembrandt v. NBC (1:06-cv-729-GMS) | Rembrandt v. ABC (1:06-cv-730-GMS) | Rembrandt v. Fox (1:06-cv-731-GMS) | Rembrandt v. Adelphia et al. (1:07-cv-214-WHP) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| '627 (5,243,627) | XXX | XXX | | XXX | | XXX | | XXX | | XXX | XXX | XXX | XXX | |
| '631 (5,852,631) | | XXX | | XXX | | XXX | | XXX | | | | | | |
| '858 (5,719,958) | | XXX | | XXX | | XXX | | XXX | | | | | | |
| '819 (4,937,819) | | XXX | | XXX | | XXX | | XXX | | | | | | |
| '761 (5,710,761) | | | XXX | | XXX | | XXX | | | | | | | XXX |
| '234 (5,778,234) | | | XXX | | XXX | | XXX | | | | | | | XXX |
| '159 (6,131,159) | | | XXX | | XXX | | XXX | | | | | | | XXX |
| '444 (6,950,444) | | | XXX | | XXX | | XXX | | | | | | | XXX |
| '903 (5,008,903) | | | XXX | | XXX | | XXX | XXX | XXX | | | | | |

**Legend:**
Blue cases are pending in the E.D. Tex.
Gold cases are pending in the D. Del.
Purple case is pending in the S.D.N.Y.
Green patents implicate the ATSC industry standard.
Red patents implicate the DOCSIS industry standard.
Shaded columns indicate the Rembrandt I cases.
Clear columns indicate the Rembrandt II cases.

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| In re: | ) |
| | ) |
| Rembrandt Technologies, LP Patent | )    MDL Docket No. |
| Litigation | ) |
| | ) |

## MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO TRANSFER AND CONSOLIDATION OF
## REMBRANDT TECHNOLOGIES, LP PATENT LITIGATON
## <u>PURSUANT TO 28 U.S.C. § 1407</u>

Mitchell G. Stockwell
Taylor Higgins Ludlam
KILPATRICK STOCKTON LLP
1100 Peachtree Street, N.E., Suite 2800
Atlanta, GA  30309
Telephone:  (404) 815-6500
Facsimile:  (404) 815-6555

Tonya R. Deem
KILPATRICK STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC  27101-2400
Telephone:  (336) 607-7300
Facsimile:  (336) 607-7500

**Attorneys For COXCOM, INC.**

## TABLE OF CONTENTS

I.      BACKGROUND OF THE LITIGATION ................................................................1

III.    ARGUMENT ...........................................................................................................9

        A.     The Actions Present Many Common Questions of Fact ......................9

        A.     Number of Related Cases And Parties Pending in Delaware ...............16

        B.     Judge Sleet is Familiar with Patents ..................................................17

        C.     Delaware Docket is Less Congested ...................................................18

        D.     Delaware is Home Jurisdiction ...........................................................19

        E.     Policy Considerations Favor Transfer to Delaware.............................19

IV.     CONCLUSION ......................................................................................................20

US2000 9807131 4 C8490-331049

## TABLE OF ABBREVIATIONS

| Full Name | Abbreviation |
|---|---|
| CoxCom, Inc. | CoxCom |
| Rembrandt Technologies, LP | Rembrandt |
| Sharp Corporation and Sharp Electronics Corporation | Sharp |
| Time Warner Cable, Inc. | Time Warner |
| Charter Communications, Inc. and Charter Communications Operating, LLC, | Charter |
| Cablevision Systems Corporation and CSC Holdings, Inc. | Cablevision |
| Adelphia Communications Corporation, Century-TCI California Communications, LP, Century- TCI Distribution Company, LLC, Century- TCI Holdings, LLC, Parnassos, L.P., Parnassos Communications, LP, Parnassos Distribution Company I, LLC, Parnassos Distribution Company II, LLC, Parnassos Holdings, LLC, Western NY Cablevision, LP | Adelphia |
| Comcast Corporation; Comcast Cable Communications, LLC; and Comcast of Plano LP | Comcast |
| CBS Corporation | CBS |
| NBC Universal, Inc. | NBC |
| ABC, Inc. | ABC |
| Fox Entertainment Group, Inc. and Fox Broadcasting Company | Fox |
| Rembrandt I Patents: | Rembrandt I Patents: |
| U.S. Patent No. 5,243,627 | '627 Patent |
| U.S. Patent No. 5,852,631 | '631 Patent |
| U.S. Patent No. 5,719,858 | '858 Patent |
| U.S. Patent No. 4,937,819 | '819 Patent |
| Litigation initiated by Rembrandt in 2005 and 2006 involving the '627, '631, '858, and '819 patents. | Rembrandt I litigation |
| Rembrandt II Patents: | Rembrandt II Patents: |
| U.S. Patent No. 5,008,903 | '903 Patent |
| U.S. Patent No. 5,710,761 | '761 Patent |
| U.S. Patent No. 5,778,234 | '234 Patent |

iii

| | |
|---|---|
| U.S. Patent No. 6,131,159 | '159 Patent |
| U.S. Patent No. 6,950,444 | '444 Patent |
| Litigation initiated by Rembrandt in 2006 involving the '903, '761, '234, '159, and '444 patents. | Rembrandt II litigation |
| Data-Over-Cable Service Interface Specifications | DOCSIS |
| Advanced Television System Committee | ATSC |
| United States District Court for the Eastern District of Texas | E.D. Tex. |
| United States District Court for the District of Delaware | D. Del. |
| United States District Court for the Southern District of New York | S.D.N.Y. |

iv

## BRIEF IN SUPPORT OF MOTION FOR TRANSFER AND CONSOLIDATION FOR COORDINATED PRETRIAL PROCEEDINGS

Pursuant to 28 U.S.C. §1407 and Rule 7.2 of the Rules of Procedure of the Judicial

Panel on Multidistrict Litigation, Defendant CoxCom[1] submits this Memorandum of Law in

Support of its Motion for Transfer and Consolidation of the Rembrandt Technologies, LP

Patent Litigation pursuant to 28 U.S.C. §1407. CoxCom moves the Panel for an Order

transferring and consolidating fourteen (14) related patent infringement actions filed by or

against Rembrandt, as well as any actions that may subsequently be filed by or against

Rembrandt, asserting similar or related claims to the District of Delaware.[2]

## I.    BACKGROUND OF THE LITIGATION

This Motion seeks transfer and consolidation of fourteen related actions for alleged

patent infringement filed by or against Rembrandt in three District Courts, ten of which were

filed within the last six months (collectively, the "Actions"). Nine of the Actions allege

infringement of numerous overlapping patents relating to the provision of high speed internet

services through the use of DOCSIS-compliant equipment. *See, e.g.*, Ex. 13 ¶¶ 19-36[3]; Ex.

---

[1] CoxCom is a defendant in the recently filed cases of *Rembrandt v. Charter, et al*, No. 2:06-CV-223-TJW (E.D. Tex.) and *Rembrandt v Charter, et al*, No. 2:06-CV-507-TJW (E.D. Tex.). CoxCom is also a plaintiff in the recently filed declaratory judgment action of *CoxCom v. Rembrandt*, No. 06-721-GMS (D. Del.).

[2] CoxCom moves the Panel for consolidation of all 14 related patent infringement actions, but suggests that, because of the illogical way in which the claims were grouped in the 14 cases, the most convenient, just and efficient administration of these actions would be achieved if the transferee court severed from the consolidated action the claims of the '627 patent for separate treatment and conduct. Rembrandt asserts the claims of the '627 patent against completely different technology and activity (receipt and transmission of broadcast television signals through ATSC-compliant equipment) than the rest of the patent claims (which are asserted against high speed internet services through DOCSIS-compliant equipment).

[3] Except as otherwise indicted, references to Exhibits 1-42 refer to the Exhibits in Support of Motion for Transfer and Consolidation of Rembrandt Technologies Patent Litigation filed concurrently herewith. References to Exhibits A-B refer to the exhibits attached to the Motion for Transfer and Consolidation of Rembrandt Technologies Patent Litigation.

15 ¶¶ 8-32. Of these nine actions, four also allege infringement of a separate and distinct patent, the '627 patent, relating to the receipt and transmission over the cable television systems of digital terrestrial broadcast signals that comply with the ATSC Digital Television Standard. *See, e.g.*, Ex.13 ¶¶ 13-18. The five remaining actions allege infringement solely of the '627 patent. *See, e.g.*, Ex. 22 ¶¶ 6-12. Pursuant to Rule 7.2(a)(ii) of the Rules of the Panel, a schedule of the fourteen Actions is attached as Exhibit A to the Motion.

Due to the large number of overlapping patents asserted in the Actions and the fact that Rembrandt contends that industry standards infringe the patents in suit, the Actions present numerous common issues of fact and law regarding such matters as the technology underlying the patents, the prior art, the construction of the patent claims, the validity, enforceability and the alleged infringement of the patents, and the extent to which the doctrine of prosecution history estoppel precludes any finding of infringement under the doctrine of equivalents. Accordingly, if the Actions are not transferred and consolidated, needless expense and waste of judicial resources will be incurred as fourteen actions go forward on separate tracks. Moreover, without transfer and consolidation, there is a serious risk of inconsistent pre-trial rulings (especially on the critical issues of claim construction and prosecution history estoppel) and, thus, the distinct possibility of inconsistent judgments on the merits. Because the Actions assert infringement based on compliance with industry standards, the effect of having inconsistent rulings regarding industry standards would be significant and deleterious.

By contrast, consolidation in a single district, will conserve judicial resources, reduce costs, prevent duplicative discovery and protect against inconsistent pre-trial rulings and

contradictory results.  Presumable for these reasons, even Rembrandt believes that transfer

and consolidation under 28 U.S.C. § 1407 is desirable.  Ex. 43 at Ex. C at 13:16-14:10.

## II.    FACTUAL BACKGROUND

### A.    Rembrandt

Rembrandt is a New Jersey limited partnership with its principal place of business in

Bala Cynwyd, Pennsylvania.  Ex. 20 ¶ 2.  Rembrandt is a non-practicing entity ("NPE")—a

firm that invests in patents for the purpose of litigating patent infringement and obtaining

royalties and licenses, but does not practice the patents.  *Id.* ¶¶ 7, 9.  According to its website,

Rembrandt "shoulders the legal, financial, and business risks associated with pursuing patent

pirates and provides the capital and expertise required to litigate complex patent

infringements."  *Id.* ¶ 8.  To pursue such patent infringement litigation, Rembrandt maintains

a "staff of in-house professionals and outside consultants" that "includes scientists, inventors,

financial analysts, lawyers, and researchers who are expert at identifying the validity and

market value of patents and Intellectual Property (IP), and securing revenue for these

inventors and companies as well as Rembrandt's investors."  *Id.*  In fact, Rembrandt

distinguishes itself from other NPEs by emphasizing its willingness and "ability to pursue

patent infringement."  *Id.*  Rembrandt claims to have raised $150 million "to acquire patents

and litigate patent infringement."  *Id.*

Rembrandt filed the Actions in two waves, apparently as it became the assignee of the

various patents in suit.  As a result, the Actions were not broken out in a logical fashion.

Instead, four of the actions assert two separate and unrelated sets of patents and accuse two

separate and unrelated industry standards.  Despite this timing issue, the two waves of

litigation ("Rembrandt I" and "Rembrandt II") overlap significantly with regard to the

-3-

alleged infringers and the accused activities as they relate to those patents implicating the

DOCSIS industry standard. Those cases asserting the '627 patent (implicating the ATSC

industry standard) also overlap with respect to the accused activities.

**B.    The Present Actions**

| NAME OF ACTION | DISTRICT COURT | CIVIL ACTION NUMBER |
|---|---|---|
| ***Rembrandt I Litigation*** | | |
| *Rembrandt Technologies, LP v. Sharp Corp., et al.* | E.D. Tex. | 2:06-cv-047 |
| *Rembrandt Technologies, LP v. Comcast Corp., et al.* | E.D. Tex. | 2:05-cv-443 |
| *Rembrandt Technologies, LP v. Time Warner Cable, Inc.* | E.D. Tex. | 2:06-cv-224 |
| *Rembrandt Technologies, LP v. Charter Commc'n, et al.* | E.D. Tex. | 2:06-cv-223 |
| *Rembrandt Technologies, LP v. Cablevision Sys., et al.* | D. Del. | 1:06-cv-635 |
| *Rembrandt Technologies, LP v. CBS Corp.* | D. Del. | 1:06-cv-727 |
| *Rembrandt Technologies, LP v. NBC Universal, Inc.* | D. Del. | 1:06-cv-729 |
| *Rembrandt Technologies, LP v. ABC, Inc.* | D. Del. | 1:06-cv-730 |
| *Rembrandt Technologies, LP v. Fox Entm't Group, Inc., et al.* | D. Del. | 1:06-cv-731 |
| | | |
| ***Rembrandt II Litigation*** | | |
| *Rembrandt Technologies, LP v. Comcast Corp., et al.* | E.D. Tex. | 2:06-cv-506 |
| *Rembrandt Technologies, LP v. Time Warner Cable, Inc.* | E.D. Tex. | 2:06-cv-369 |
| *Rembrandt Technologies, LP v. Charter Commc'n, et al.* | E.D. Tex. | 2:06-cv-507 |
| *CoxCom, Inc. v. Rembrandt Technologies, LP* | D. Del. | 1:06-cv-721 |
| *Rembrandt Technologies, LP v. Adelphia Commc'n Corp., et al.* | S.D.N.Y. | 1:07-cv-214 |

The Rembrandt I litigation includes nine cases against fifteen current defendants

spanning three industries (cable, television broadcast, and manufacturing) and asserts

infringement of up to five patents. One of the five patents asserted in the Rembrandt I

litigation, the '627 patent, is asserted against each of the fifteen current Rembrandt I

defendants. Rembrandt contends that the '627 patent covers the receipt and transmission of

ATSC-compliant television broadcast signals. *See, e.g.*, Ex. 13 ¶¶ 13-18. The remaining

four patents asserted in the Rembrandt I litigation do not relate to the transmission of

-4-

television signals. Instead, Rembrandt asserts the remaining four patents against the provision of high speed internet service through the use of DOCSIS-compliant cable modems and related equipment. Ex. 13 ¶¶ 19-36; *see also* Ex 19 at 1-3.

The Rembrandt II litigation includes three cases filed by Rembrandt in the E.D. Tex. against seven cable service providers (all of whom are also defendants in the Rembrandt I litigation), a declaratory judgment action filed by CoxCom in the D. Del., and an action filed in the S.D.N.Y against Adelphia.[4] In the Rembrandt II litigation, Rembrandt alleges infringement of five patents based on the Defendants' provision of high speed internet service and accuses the same DOCSIS-compliant equipment that is accused in the Rembrandt I litigation.[5] *See, e.g.*, Ex. 15 ¶¶ 8-32; *see also* Ex. 32 ¶¶ 20-28.

But for the claim of infringement based on the '627 patent, all of the infringement claims in the Rembrandt I and Rembrandt II actions relate to the provision of high speed internet and related services using DOCSIS-compliant cable modems and related equipment. Because of the illogical way in which these actions were filed, it is necessary to consolidate not only all of those cases asserting patents implicating the DOCSIS industry standard, but also those cases asserting the '627 patent implicating the ATSC industry standard.

### 1. The Rembrandt I Litigation.

#### a. *Rembrandt v. Sharp, No. 2:06-cv-047 (E.D. Tex.).*

Rembrandt filed the *Sharp* action on February 3, 2006, in the E.D. Tex., asserting the '627 patent. *See* Ex. 1 ¶¶ 6-10. As of March 6, 2007, the defendants have answered and

---

[4] The lawsuit against Adelphia was initiated as an adversary proceeding filed in Adelphia's bankruptcy matter. *See* Ex. 33.

[5] For the Panel's convenience, a table identifying the asserted patents, the actions in which they have been asserted and the industry standards which are accused is attached to the Motion as Exhibit B.

-5-

filed counterclaims, which also have been answered. No discovery has been taken and no

substantive orders have been issued. *See* Ex. 2. In fact, the court just presided over the

initial case management conference on February 20, 2007. *Id.*

>   **b.** ***Rembrandt v. Comcast, et al., No. 2:05-cv-443 (E.D. Tex.).***

Rembrandt filed the first *Comcast* complaint on September 16, 2005 in the E.D. Tex.,

asserting the '627 patent against the ATSC standard and three other patents ('631, '819, and

'858) against DOCSIS. *See* Ex. 3 ¶¶ 13-30. There have been no substantive orders issued.

*See* Ex. 4. A claim construction hearing was to be held on February 8, 2007. However, after

granting a motion to disqualify Rembrandt's counsel, the court canceled the hearing,

suspended all deadlines and ordered the parties to submit a proposed schedule after plaintiff

retained new counsel and such counsel appeared in the case. Ex. 5; Ex. 6. No new schedule

has yet been proposed to or issued by the court. Ex. 4.

>   **c.** ***Rembrandt v. Time Warner, No. 2:06-cv-224 (E.D. Tex.)* and**
>   ***Rembrandt v. Charter, et al., No. 2:06-cv-223 (E.D. Tex.).***

On June 1, 2006, Rembrandt filed actions in the E.D. Tex. against Time Warner,

Charter, CoxCom and their respective related entities, asserting the same patents ('627, '631,

'819, '858) Rembrandt asserted in the *Comcast* case. *See* Ex. 9 ¶¶ 6-29; Ex. 13 ¶¶ 13-36. As

of March 6, 2007, the defendants have answered and filed counterclaims, which have been

answered. *See* Ex. 10; Ex. 14. CoxCom moved to dismiss for lack of personal jurisdiction.

*Id.* No discovery has been taken and no substantive orders have been issued. *Id.*; Ex. 10.

>   **d.** ***Rembrandt v. Cablevision, No. 1:06-cv-635 (D. Del.).***

On October 13, 2006, Rembrandt filed an action against Cablevision in the D. Del.,

asserting the same four patents ('627, '631, '819, '858) Rembrandt asserted in the prior E.D.

Tex. cases, and an additional patent (the '903 patent) against DOCSIS. *See* Ex. 17 ¶¶ 8-37.

As of March 6, 2007, the defendants have answered and filed counterclaims, which also have

been answered. *See* Ex. 18. Within the last month, defendants have served written discovery

requests and their mandatory disclosures required by Rule 26(a) of the Federal Rules of Civil

Procedure. *Id.* No substantive orders have issued. *Id.*

> e.   ***Rembrandt v. CBS, No. 1:06-cv-727 (D. Del.); Rembrandt v.
> NBC, No. 1:06-cv-729 (D. Del.); Rembrandt v. ABC, No. 1:06-
> cv-730 (D. Del.),*** **and** ***Rembrandt v. Fox, No. 1:06-cv-731 (D.
> Del.).***

On December 1, 2006, Rembrandt filed in the D. Del. four separate actions against

CBS, NBC, ABC and Fox broadcasting companies asserting the '627 patent. *See* Ex. 22 ¶¶

6-12; Ex. 24 ¶¶ 6-12; Ex. 26 ¶¶ 6-12; Ex. 28 ¶¶ 7-13. As of March 6, 2007, the defendants

have answered and filed counterclaims, which also have been answered. *See* Ex. 23; Ex. 25;

Ex. 27; Ex. 29. No discovery has been taken and no substantive orders have been issued. *Id.*

### 2.   The Rembrandt II Litigation.

> a.   ***Rembrandt v. Time Warner, No. 2:06-cv-369 (E.D. Tex.).***

On September 13, 2006, Rembrandt initiated a new wave of litigation against the

cable service providers with an action against Time Warner filed in the E.D. Tex., asserting

five additional patents against DOCSIS. *See* Ex. 11 ¶¶ 11-35. Specifically, Rembrandt's

complaint asserts infringement of the '761, '234, '159, '444 and '903 patents. *Id.* Time

Warner has answered and filed counterclaims, which have been answered. *See* Ex. 12. On

February 23, 2007, Rembrandt moved for leave to amend its complaint. *Id.* No discovery

has been taken and no substantive orders have been issued. *Id.*

US2000 9807131 4

      **b.**      *Rembrandt v. Comcast, No. 2:06-cv-506 (E.D. Tex.)* **and**
                  *Rembrandt v. Charter, et al., No. 2:06-cv-507 (E.D. Tex.).*

On November 30, 2006, Rembrandt filed two more actions against cable companies

Comcast, Charter, CoxCom, and their respective related entities, asserting infringement of

the same five additional patents ('761, '234, '159, '444 and '903) against DOCSIS. *See* Ex.

7 ¶¶ 6-30; Ex. 15 ¶¶ 8-32. As of March 6, 2007, the defendants have answered and filed

counterclaims, which have been answered. *See* Ex. 8; Ex. 16. CoxCom has moved for

dismissal or, in the alternative, to transfer to the D. Del. *Id.* No discovery has been taken

and no substantive orders have been issued. *Id.*; Ex. 16.

      **c.**      *CoxCom v. Rembrandt, No. 1:06-cv-721 (D. Del.).*

CoxCom filed a declaratory judgment action in the D. Del. on November 30, 2006,

seeking declarations as to the noninfringement and invalidity as to the '903 patent. *See* Ex.

20 ¶¶ 18-22. The declaratory judgment action was filed four hours before Rembrandt filed

suit against CoxCom in the E.D. Tex. Rembrandt has moved to dismiss the action. *See* Ex.

21. No discovery has been taken and no substantive orders have been issued. *Id.*

      **d.**      *Rembrandt v. Adelphia, No. 1:07-cv-214 (S.D.N.Y.).*

On September 13, 2006, Rembrandt filed an adversary proceeding in the Adelphia

bankruptcy action pending in the S.D.N.Y., asserting four of the DOCSIS patents asserted

against the other cable companies (the '761, '234, '159, and '444 patents). *See* Ex. 33 ¶¶ 18-

37. On January 10, 2007, Rembrandt moved to withdraw the reference to the bankruptcy

court so that the litigation would proceed in the district court. *See* Ex. 30. Adelphia has filed

an opposition to the motion. *See Id.*. The motion has not yet been resolved. *Id.*

US2000 9807131 4

## III.    ARGUMENT

Under 28 U.S.C. § 1407(a), civil actions "involving one or more common questions of fact," pending in different federal districts may be transferred to a single district for coordinated or consolidated pretrial proceedings. Transfers are appropriate if the Panel determines that "transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." *Id.* The Actions involved in this litigation easily satisfy each of these requirements.

### A.    The Actions Present Many Common Questions of Fact.

The Panel has recognized that actions involving overlapping patents are particularly well-suited for consolidation under 28 U.S.C. §1407 because they, by their very nature, present many common questions of fact. For example, in *In re Acacia Media Techs. Corp. Patent Litig.*, the Panel recognized that when overlapping patents are asserted in multiple actions, "[a]ll actions . . . can be expected to share factual and legal questions concerning such matters as the technology underlying the patents, prior art, claim construction and/or issues of infringement involving the patents." 360 F. Supp. 2d 1377, 1379 (J.P.M.L. 2005); *accord In re PharmaStem Therapeutics, Inc., Patent Litig.*, 360 F. Supp. 2d 1362, 1364 (J.P.M.L. 2005) (consolidating five actions asserting overlapping patents with a related unfair competition action); *In re MLR, LLC, Patent Litig.*, 269 F. Supp. 2d 1380 (ordering consolidation of three actions dealing with cellular phone and/or modem products, on the basis that overlapping complex patents, "can thus be expected to share factual and legal questions concerning such matters as patent validity, prior art, obviousness and interpretation if various claims of the patents.").

-9-

Here, Rembrandt has asserted many overlapping patents in each of the Actions.

Specifically, as shown in Exhibit B attached to the Motion:

- Four (4) patents ('761, '234, '159 and '444) have been asserted in four actions;
- Three (3) patents ('631, '858, and '819) have been asserted in four actions;
- One (1) patent ('903) has been asserted in five actions; and
- One (1) patent ('627) has been asserted in nine actions.

Due to the large number of overlapping patents asserted by Rembrandt in the

Actions, this litigation involves many common questions of fact. Each of the Actions

involve allegations of infringement, invalidity and enforceability issues common to the

overlapping patents. The Actions, therefore, can be expected to share factual and legal

questions concerning such matters as the technology underlying the patents, the scope and

content of the prior art, claim construction, the prosecution histories of the asserted patents

and any inequitable conduct and/or unreasonable delays (prosecution laches) committed

during their prosecution, and/or issues of infringement involving the patents.

The Panel has routinely recognized that the issue of infringement are likely to raise

common questions of fact in multidistrict patent litigation actions. *See In re Acacia Media

Techs. Corp. Patent Litg.*, 360 F. Supp. 2d 1377, 1379 (J.P.M.L. 2005) (where overlapping

patents are asserted in multiple actions it can be expected that they share factual and legal

questions concerning issues such as infringement involving the patents); *In re Mirtazapine

Patent Litig.*, 199 F. Supp. 2d 1380, 1381 (J.P.M.L. 2002) (ordering consolidation of six

actions involving common infringement and invalidity contentions). Furthermore, when

actions involve the same underlying technology, as these do here, claims of infringement as

to each defendant will necessarily involve common questions of fact.

-10-

All of the Actions involve the same underlying technologies and industry standards—
the provision of high speed internet services by virtue of DOCSIS-compliant modems and
related equipment; or, in the case of the '627 patent, the receipt and transmission of ATSC-
compliant television broadcast signals.  Because the accused systems in each of the Actions
is DOCSIS-compliant or ATSC-compliant, claims of infringement as to each defendant will
necessarily involve common questions of fact, therefore making them appropriate for
consolidation.  *See* Ex. 43 at Ex. C at 5:22-7:20 (arguing that the DOCSIS standard infringes
and, thus, any services that comply with the standard also infringe); *see also In re FMC
Corp. Patent Litig.*, 422 F.Supp. 1163, 1165 (J.P.M.L. 1976) (finding that because all the
defendants used the same product, common factual questions concerning the infringement
issues were also present).  In fact, Rembrandt recently acknowledged that the alleged
infringing activity of any specific defendant is not unique.  Instead, it is the defendants'
compliance with the industry standards that is accused.  *See* Ex. 43 at Ex. C at 5:22-7:9.

Further, the question of damages will present many other common issues of fact
among the Actions.  Because Rembrandt is not a competitor of the defendants, Rembrandt is
expected to seek damages in the form of a reasonable royalties *see, e.g.*, Ex. 42, which
involves consideration of multiple factors as set forth in the seminal case of *Georgia-Pacific
Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified
and aff'd*, 446 F.2d 295 (2d Cir. 1971).  Because many of these factors relate to the specific
patent or patent owner involved in the case, each patent for which Rembrandt seeks damages
will present numerous common factual issues.  Also, Rembrandt has offered to license the
'627 patent under reasonable terms and conditions on a non-discriminatory, non-exclusive
basis.  *See* Ex. 42.  Thus, the terms and conditions of any such licenses will be common to all

-11-

of the defendants against whom the '627 patent has been asserted. Moreover, because the

claims relating to the provision of high speed internet services straddle both Rembrandt I and

Rembrandt II actions, because the claims accuse the same equipment, and because seven of

the cable service provider defendants have been sued in both the Rembrandt I and Rembrandt

II actions, there is a risk that Rembrandt may receive overlapping damages for the same

activity at issue in the Rembrandt I and Rembrandt II actions

The Actions all involve common questions of fact; thus, transfer and consolidation

would serve the convenience of the parties and witness and would promote the just and

efficient conduct of the Actions. Because of these common questions, centralization would

eliminate duplicative discovery, prevent inconsistent or repetitive pretrial rulings, and

conserve the resources of the parties, their counsel, and the judiciary.

**B.      Transfer and Consolidation Would Serve the Convenience of the Parties.**

There can be no question that consolidation and transfer to a single district would

serve the convenience of the parties. The claims relating to the provision of high speed

internet and related services accuse the same DOCSIS-compliant equipment—cable modems

and related equipment used by the defendants to provide high speed internet service.

However, because some of these claims are asserted in the Rembrandt I actions while other,

related claims are asserted in the Rembrandt II actions and because many of the cable service

provider defendants have been sued in both the Rembrandt I and Rembrandt II actions, it is

expected that the cable service provider defendants and the third parties who supply and

manufacture the accused equipment will be subjected to burdensome and inefficient

discovery as they are forced to respond to overlapping and duplicative discovery requested in

the separate actions. For example, in *Rembrandt v. Comcast*, No. 2:05-CV-443 (E.D. Tex.),

-12-

Rembrandt has already served subpoenas on over forty (40) third party vendors seeking

identical discovery information regarding the accused DOCSIS-compliant devices supplied

to the defendants. *See* Ex. 41. Because the defendants in both Rembrandt I and Rembrandt

II rely on the same group of vendors and manufacturers to supply them with the accused

equipment, it is expected that Rembrandt will pursue the same information from each of the

third party vendors in each Action, resulting in unnecessary, duplicative discovery.

Unnecessary, duplicative discovery is exactly what 28 U.S.C. § 1407 was designed to

avoid. *In re Multidistrict Litig. Involving Frost Patent*, 316 F. Supp. 977, 979 (J.P.M.L.

1970) ("Section 1407 was intended to provide a procedure which would insure that

repetitious and duplicative discovery is avoided by providing that all related actions be

assigned to a single judge). Coordination of discovery in this case, however, would

eliminate this possibility. It would reduce the burden of both the defendants and plaintiff in

pursuing discovery on the many common issues. It will also benefit the third party vendors

and manufacturers, who may possess information relevant to each action, by avoiding the

possibility of having to engage in identical discovery efforts for each of the fourteen Actions.

Thus, it is clear that consolidation and transfer to a single district would serve the

convenience of the parties by avoiding costly and unnecessarily duplicative discovery.

## C. Transfer and Consolidation Would Promote Just and Efficient Conduct of the Actions.

As Rembrandt recently agreed during a hearing held in the Adelphia matter, transfer

and consolidation would also promote just and efficient conduct of the Actions. *See* Ex. 43

at Ex. C at 13:16-13:23. Without consolidation, the Actions would likely proceed in a

manner that is contrary to the meaning of judicial economy. If allowed to proceed

-13-

separately, these Actions will follow a costly and inefficient path, resulting in wasteful, duplicative discovery and create the potential for inconsistent pretrial rulings. By ordering consolidation, however, the Panel will ensure that the resources of the party and judiciary are used in their most judicious manner, avoiding the potential for conflicting rulings and inconsistent claim constructions.

Under *Markman v. Westview Instuments, Inc.*, it is the obligation of each district court to construe the claims of a patent as a matter of law. 517 U.S. 370, 388-91 (1996). While the prior claim constructions of other courts are relevant and persuasive authority, each district court must make its own judgment as to claim construction. *Texas Instruments, Inc. v. Linear Tech. Corp.*, 182 F. Supp. 2d 580, 589 (E.D. Tex. 2002). Here, given the large number of Actions asserting overlapping, complex patents in at least three different courts, the parties face the untenable prospect of several different claim constructions on identical claim terms. Such varying claim constructions could result in contradictory determinations on the core issues of infringement and invalidity. Consolidation is therefore necessary to ensure uniform application of the patent claims across all the Actions. *See In re Columbia Univ. Patent Litig.*, 313 F. Supp. 2d 1383, 1385 (J.P.M.L. 2004) ("Centralization . . . is necessary in order to . . . prevent inconsistent pretrial rulings, especially with respect to time-consuming and complex matters of claim construction . . . ."); *see also In re Mosaid Tech., Inc. Patent Litig.*, 283 F. Supp. 2d 1359, 1360 (J.P.M.L. 2003) (same).

As noted above, Rembrandt's assertion of so many overlapping patents means that the defendants will all pursue much of the same discovery to elicit facts to support their defenses. For example, all defendants can be expected to pursue documents and depositions supporting the defense of invalidity based on anticipation or obviousness, including

-14-

documents and depositions relating to the same prior inventions, prior printed publications, prior commercial sales and prior uses. *See* 35 U.S.C. §§ 102, 103. All defendants are also likely to see discovery relating to the enforceability of the asserted patents, including any inequitable conduct during their prosecution and/or unreasonable prosecution delays, which would result in a finding of prosecution laches. *See, e.g. Symbol Techs., Inc. v. Lemelson Med. Edu. & Research Found., L.P.*, 422 F.3d 1378, 1384-85, *amended on other grounds by* 429 F.3d 1051 (Fed. Cir. 2005). Furthermore, the defendants will also seek the same damages discovery relating to reasonable royalty factors, thereby resulting in duplicative and wasteful discovery efforts. Consolidation and coordination of the Actions for pretrial proceedings would therefore promote the just and efficient conduct of the Actions by avoiding wasteful and duplicative discovery efforts as well as inconsistent pretrial rulings.

Finally, but for the claim of infringement of the '627 patent, all of Rembrandt's infringement claims relate to the provision of high speed internet and related services by virtue of DOCSIS-compliant cable modems and related equipment. By consolidating all of the Actions in one forum, the transferee court will, at its discretion, be able to sever out and consolidate those claims relating to the '627 patent/ATSC standard, while preserving the consolidation of all the actions involving patents implicating the DOCSIS industry standard.

## III. THE DISTRICT COURT OF DELAWARE IS THE APPROPRIATE TRANSFEREE DISTRICT.

Consolidation and transfer to the District of Delaware, before Judge Gregory M. Sleet, is the most appropriate action. Factors considered by the Panel when selecting a particular transferee forum include: (1) the pendency in that district of a number of the actions; (2) the court's familiarity with the issues; (3) the district or judge's willingness to

-15-

accept responsibility for conducting coordinated or consolidated pretrial proceedings; and (4)

the favorable status of the civil docket. *In re PharmaStem Therapeutics, Inc. Patent Litig.*,

360 F. Supp. 2d 1362, 1364 (J.P.M.L. 2005) (transfer to judge who was already familiar with

the technology involved and who had related cases pending within his district); *In re*

*Mirtazapine Patent Litig.*, 199 F. Supp. 2d 1380, 1381 (J.P.M.L. 2003) (Panel gave weight to

the judge's familiarity with the patents at issue, the pendency of 5 of the 6 actions within that

district, and the judge's favorable caseload); *In re FMC Corp. Patent Litig.*, 422 F. Supp.

1163, 1165 (J.P.M.L. 1976) (transfer to judge who is more familiar with patents involved and

related cases were in a more advanced stage of discovery); *In re Ampicillin Antitrust Litig.*,

315 F. Supp. 317, 319 (J.P.M.L. 1970) (stating that "availability of an experienced and

capable judge familiar with the litigation is one of the more important factors in selecting a

transferee forum"). The Panel also considers public and judicial policies when determining

whether and where to consolidate separate proceedings pursuant to 28 U.S.C. § 1407.

## A.    Number of Related Cases and Parties Pending in Delaware.

Of the fourteen actions currently at issue, at least six of the actions are currently

pending before Judge Sleet in the District of Delaware. In situations where there are actions

currently pending in a district, the Panel has expressed "a strong policy favoring the litigation

of related claims in the same tribunal." *In re Koratron*, 302 F. Supp. 239, 243 (J.P.M.L.

1969); *see also In re Mirtazapine Patent Litig.*, 199 F. Supp. 2d 1380 (J.P.M.L. 2002); *In re*

*CBS Color Tube Patent Litig.*, 329 F. Supp. 540 (J.P.M.L. 1971). Given the Panel's strong

policy favoring transfer to forums where related cases are currently pending and given that a

number of the actions are currently proceeding before Judge Sleet in the District of

Delaware, transfer and consolidation in the District of Delaware is appropriate.

-16-

### B.     Judge Sleet is Familiar with the Patents.

More importantly, however, Judge Sleet is familiar with and has some understanding

of the complex technology at issue in the Actions. The Panel has repeatedly recognized that

"the availability of an experienced and capable judge familiar with the litigation is one of the

more important factors in selecting a transferee forum . . . ." *In re Ampicillin Antitrust Litig.*,

315 F. Supp. 317, 319 (J.P.M.L. 1970). This is especially true when dealing with patent

litigation involving complex technologies. *In re PharmaStem Therapeutics, Inc. Patent

Litig.*, 360 F. Supp. 2d 1362 (J.P.M.L. 2005) (transfer to district judge who was familiar with

technologies involved); *In re Mirtazapine Patent Litig.*, 199 F. Supp. 2d 1380 (J.P.M.L.

2002) (ordering transfer to district judge who is familiar with the underlying issues); *In re

Panty Hose Seaming Patent Litig.*, 402 F. Supp. 1401 (J.P.M.L. 1975) (judge's familiarity

with patents in suit cited as only reason for transfer).

Here, each of the six actions currently pending before Judge Sleet assert claims

relating to five of the nine patents at issue the Actions. Moreover, the actions pending before

Judge Sleet implicate both of the industry standards at issue—ATSC and DOCSIS. As such,

Judge Sleet has the opportunity to gain familiarity with a number of the patents at issue in the

Actions. Furthermore, Judge Sleet, having presided over a number of complex patent

litigation cases in the past, including a multidistrict litigation matter *see* Ex. 35, has

demonstrated an understanding and ability to effectively administer this type of complex

patent litigation. In fact, Judge Sleet has already indicated an interest in at least coordinating

the six Rembrandt actions pending in Delaware. *See* Ex. 19 at 3-4. Thus, consolidation and

transfer before Judge Sleet in the District of Delaware is most appropriate.

-17-

## C.    The Delaware Docket is Less Congested.

Of the three districts in which actions are currently pending, Delaware is the least

congested, making it the logical choice for transfer.  The Panel often considers the

congestion of the proposed docket when determining the appropriate transferee forum

pursuant to 28 U.S.C. § 1407.  *In re Laughlin Prods., Inc. Patent Litig.*, 240 F. Supp. 2d

1358, 1359 (J.P.M.L. 2003) (transfer to a district that "enjoys general caseload conditions . . .

with the present resources to devote time to pretrial matters" is preferable); *In re*

*Compensation of Managerial, Professional & Technical Employees Antitrust Litig.*, 206 F.

Supp. 2d 1374 (J.P.M.L. 2002) (transfer to district not already burdened with a complex

docket was appropriate).  According to the *2005 Annual Report of the Administrative Office*

*of the United States Courts*, the number of civil cases pending in the D. Del. has decreased

more than twelve percent from 2005 to 2006.  *2005 Annual Report of the Administrative*

*Office of the United States Courts*, Table C.[6]  There has also been a corresponding 17.3%

decrease in the number of pending cases in the D. Del. in 2006, dropping from 1,733 cases in

2005 to 1,433 cases in 2006.  *Federal Judicial Caseload Statistics*, March 31, 2006,

Administrative Office of the United States Courts.[7]  Furthermore, based on the Federal

Docket reports, Judge Sleet currently has 64 patent cases pending, demonstrating his

familiarity with patent issues.[8]  Overall, it appears that the District of Delaware is less

---

[6]  The *2005 Annual Report of the Administrative Office of the United States Courts*, Table C provides statistics for the 24-month period ending on March 31, 2006.  A copy of which is attached as Exhibit 36.

[7]  A copy of which is attached as Exhibit 37.

[8]  A copy of the docket for all patent cases pending before Judge Sleet is attached as Exhibit 38.

-18-

congested than either the E.D. Tex. or the S.D.N.Y.[9]  Thus, it is clear that Judge Sleet in the

has the docket, availability and resources necessary to handle this complex patent litigation.

### D.    Delaware is Home Jurisdiction to Many Defendants.

CoxCom, like most of the defendants involved in the Actions,[10] is incorporated in

Delaware.  As the home jurisdiction for most of the defendants, the D. Del. would be

convenient for parties, witnesses and discovery.  CoxCom and the other Delaware

corporations would be subject to jurisdiction in Delaware, therefore making venue and

jurisdiction proper, eliminating the possibility for expensive and time-consuming motions

practice.  Accordingly, the D. Del. is an appropriate venue for transfer and consolidation.

### E.    Policy Considerations Favor Transfer to Delaware.

Policy considerations also support consolidation in the D. Del.  The purpose behind

28 U.S.C. § 1407 is "'to promote the just and efficient conduct' of multidistrict actions, in

part, by 'eliminating the potential for conflicting contemporaneous rulings by coordinate

district and appellate courts.'" *In re Air Crash off Long Island, New York*, 965 F. Supp. 5, 7

(S.D.N.Y. 1997) (quoting *In re Korean Air Lines Disaster*, 829 F.2d 1171, 1179 (D.C. Cir.

1987)).  Cases moving forward in many different courts could subject the parties to differing

pre-trial judgments and rulings that could affect the final outcomes of the cases.  This could

---

[9] *See* the 2006 Federal Judicial Caseload Statistics for the United States District Court for the District of Delaware, Eastern District of Texas and Southern District of New York, attached as Exhibits 37, 39, & 40, respectively.

[10] The following defendants are incorporated in Delaware: Comcast of Plano, LP; Time Warner Cable, Inc.; Charter Communications, Inc.; Charter Communications Operating, LLC; CSC Holdings, Inc.; Cablevision Systems Corp.; CBS Corporation; NBC Universal, Inc.; Fox Entertainment Group, Inc.; Fox Broadcasting Company; Adelphia Communications Corporation; Century-TCI California, LP, Century-TCI California Communications, LP; Century-TCI Distribution Company, LLC; Century-TCI Holdings, LLC; Parnassos Communications, LP; Parnassos Distribution Company I, LLC; Parnassos Distribution Company II, LLC; Parnassos Holdings, LLC; Parnassos, LP; and Western NY Cablevision, LP.

result in inconsistent claim constructions and evidentiary rulings for identical claims, technology, and systems, which is contrary to the very purposes for which the multidistrict transfer and consolidation statute was created. As such, consolidation in Delaware before Judge Sleet, is preferable as it would serve to promote the interests of judicial economy and efficiency for which the statute was created by eliminating the possibility of inconsistent claim construction, pretrial rulings and duplicative discovery.

## IV.    CONCLUSION

For the foregoing reasons, and the reasons to be stated in any reply brief and any oral argument on this matter, CoxCom respectfully requests that the Panel grant its Motion for Transfer and Consolidation and order that the Actions be consolidated and transferred to United States District Court for the District of Delaware before Judge Sleet for coordinated pretrial proceedings.

Respectfully submitted, this the 9th day of March 2007.

Mitchell G. Stockwell
Taylor Higgins Ludlam
KILPATRICK STOCKTON LLP
1100 Peachtree Street, N.E., Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

Tonya R. Deem
KILPATRICK STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101-2400
Telephone: (336) 607-7300
Facsimile: (336) 607-7500

**Attorneys for COXCOM, INC.**

-20-

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

In re:

Rembrandt Technologies, LP Patent
Litigation

MDL Docket No.

**EXHIBITS IN SUPPORT OF MOTION FOR TRANSFER AND CONSOLIDATION OF REMBRANDT TECHNOLOGIES PATENT LITIGATION PURSUANT TO 28 U.S.C. § 1407**

Mitchell G. Stockwell
Taylor Higgins Ludlam
KILPATRICK STOCKTON LLP
1100 Peachtree Street, N.E., Suite 2800
Atlanta, GA  30309
Telephone:  (404) 815-6500
Facsimile:  (404) 815-6555

Tonya R. Deem
KILPATRICK STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC  27101-2400
Telephone:  (336) 607-7300
Facsimile:  (336) 607-7500

1

US2000 9814009 1 C8490-331049

In compliance with Rule 7.1(g) of the Rules of Procedure of the Judicial Panel on

Multidistrict Litigation (the "Panel"), Defendant CoxCom, Inc. ("CoxCom")[1] herwith

submits copies of the following referenced exhibits in support of its Motion For Transfer and

Consolidation of Rembrandt Technologies Patent Litigation, file concurrently:

| Exhibit 1 | Plaintiff Rembrandt Technologies, LP Complaint, filed on February 3, 2006, in the matter of *Rembrandt Technologies, LP v. Sharp Corporation and Sharp Electronics Corporation*, No. 2:06-cv-047 (E.D. Tex.) |
| Exhibit 2 | Docket Report in the matter of *Rembrandt Technologies, LP v. Sharp Corporation and Sharp Electronics Corporation*, No. 2:06-cv-047 (E.D. Tex). |
| Exhibit 3 | Plaintiff Rembrandt Technologies, LP Complaint for Patent Infringement, filed on September 16, 2005, in the matter of *Rembrandt Technologies, LP v. Comcast Corporation; Comcast Cable Communications, LLC; and Comcast of Plano, LP*, No. 2:05-cv-443 (E.D. Tex.) |
| Exhibit 4 | Docket sheet in the matter of *Rembrandt Technologies, LP v. Comcast Corporation; Comcast Cable Communications, LLC; and Comcast of Plano, LP*, No. 2:05-cv-443 (E.D. Tex.) |
| Exhibit 5 | Memorandum Opinion and Order of Judge Ward filed February 8, 2007 Granting Motion to disqualify counsel Fish & Richardson in the matter of *Rembrandt Technologies, LP v. Comcast Corporation; Comcast Cable Communications, LLC; and Comcast of Plano, LP*, No. 2:05-cv-443 (E.D. Tex.) |
| Exhibit 6 | Order of Judge Ward filed February 8, 2007 Granting Motion to suspend all deadlines pending appointment of new counsel for plaintiff in the matter of *Rembrandt Technologies, LP v. Comcast Corporation; Comcast Cable Communications, LLC; and Comcast of Plano, LP*, No. 2:05-cv-443 (E.D. Tex.) |
| Exhibit 7 | Plaintiff Rembrandt Technologies, LP First Amended Complaint, filed on December 21, 2006, in the matter of *Rembrandt Technologies, LP v. Comcast Corporation; Comcast Cable Communications, LLC; and Comcast of Plano, LP*, No. 2:06-cv-506 (E.D. Tex.) |
| Exhibit 8 | Docket sheet in the matter of *Rembrandt Technologies, LP v. Comcast Corporation; Comcast Cable Communications, LLC; and Comcast of Plano,* |

---

[1] CoxCom is a defendant in the recently filed cases of *Rembrandt Technologies, LP v. Charter Communications, Inc., et al*, No. 2:06-CV-223-TJW (E.D. Tex.) (Marshall Division) and *Rembrandt Technologies, LP v. Charter Communications, Inc., et al.*, No. 2:06-CV-507-TJW (E.D. Tex.) (Marshall Division). CoxCom is also a plaintiff in the recently filed declaratory judgment action of *CoxCom, Inc. v. Rembrandt Technologies, L.P.*, No. 06-721-GMS (D. Del.).

| | *LP*, No. 2:06-cv-506 (E.D. Tex.) |
|---|---|
| Exhibit 9 | Plaintiff Rembrandt Technologies, LP Complaint filed on June 1, 2006 in the matter of *Rembrandt Technologies, LP v. Time Warner Cable, Inc.*, No. 2:06-cv-224 (E.D. Tex.) |
| Exhibit 10 | Docket sheet in the matter of *Rembrandt Technologies, LP v. Time Warner Cable, Inc.*, No. 2:06-cv-224 (E.D. Tex.) |
| Exhibit 11 | Plaintiff Rembrandt Technologies, LP First Amended Complaint filed on February 23, 2007 in the matter of *Rembrandt Technologies, LP v. Time Warner Cable, Inc.*, No. 2:06-cv-369 (E.D. Tex.) |
| Exhibit 12 | Docket sheet in the matter of *Rembrandt Technologies, LP v. Time Warner Cable, Inc.*, No. 2:06-cv-369 (E.D. Tex.) |
| Exhibit 13 | Plaintiff Rembrandt Technologies, LP Complaint for Patent Infringement filed on June 1, 2006 in the matter of *Rembrandt Technologies, LP v. Charter Communications, Inc.; Charter Communications Operating, LLC; Cox Communications, Inc., Cox Enterprises, Inc.; CoxCom, Inc.; CSC Holdings, Inc., and Cablevision Systems Corporation*, No. 2:06-cv-223 (E.D. Tex.) |
| Exhibit 14 | Docket sheet in the matter *Rembrandt Technologies, LP v. Charter Communications, Inc.; Charter Communications Operating, LLC; Cox Communications, Inc., Cox Enterprises, Inc.; CoxCom, Inc.; CSC Holdings, Inc., and Cablevision Systems Corporation*, No. 2:06-cv-223 (E.D. Tex.) |
| Exhibit 15 | Plaintiff Rembrandt Technologies, LP First Amended Complaint filed December 1, 2006 in the matter of *Rembrandt Technologies, LP v. Charter Communications, Inc., Charter Communications Operating, LLC, and CoxCom, Inc.*, No. 2:06-cv-507 (E.D. Tex.) |
| Exhibit 16 | Docket Sheet in the matter of *Rembrandt Technologies, LP v. Charter Communications, Inc., Charter Communications Operating, LLC, and CoxCom, Inc.*, No. 2:06-cv-507 (E.D. Tex.) |
| Exhibit 17 | Plaintiff Rembrandt Technologies, LP Complaint for Patent Infringement filed on October 13, 2006 in the matter of *Rembrandt Technologies, LP v. Cablevision Systems Corporation and CSC Holdings, Inc.*, No. 1:06-cv-635 (D. Del.) |
| Exhibit 18 | Docket sheet in the matter of *Rembrandt Technologies, LP v. Cablevision Systems Corporation and CSC Holdings, Inc.*, No. 1:06-cv-635 (D. Del.) |
| Exhibit 19 | Joint Status Report filed on February 9, 2007 in the matter of *Rembrandt Technologies, LP v. Cablevision Systems Corporation and CSC Holdings, Inc.*, No. 1:06-cv-635 (D. Del.) |
| Exhibit 20 | Plaintiff CoxCom, Inc. Complaint for Declaratory Judgment filed on November 30, 2006 in the matter of *CoxCom, Inc. v. Rembrandt Technologies, LP*, No. 1:06-cv-721 (D. Del.) |
| Exhibit 21 | Docket sheet in the matter of *CoxCom, Inc. v. Rembrandt Technologies, LP*, No. 1:06-cv-721 (D. Del.) |
| Exhibit 22 | Plaintiff Rembrandt Technologies, Inc. Complaint for Patent Infringement and Demand for Jury Trial filed on December 1, 2006 in the matter of |

3

| | *Rembrandt Technologies, LP v. CBS Corporation*, No. 1:06-cv-727 (D. Del.) |
|---|---|
| Exhibit 23 | Docket sheet in the matter of *Rembrandt Technologies, LP v. CBS Corporation*, No. 1:06-cv-727 (D. Del.) |
| Exhibit 24 | Plaintiff Rembrandt Technologies, LP Complaint for Patent Infringement and Demand for Jury trial filed on December 1, 2006 in the matter of *Rembrandt Technologies, LP v. NBC Universal, Inc.*, No. 1:06-cv-729 (D. Del.) |
| Exhibit 25 | Docket sheet in the matter of *Rembrandt Technologies, LP v. NBC Universal, Inc.*, No. 1:06-cv-729 (D. Del.) |
| Exhibit 26 | Plaintiff Rembrandt Technologies, LP Complaint for Patent Infringement and Demand for Jury trial filed on December 1, 2006 in the matter of *Rembrandt Technologies, LP v. ABC. Inc.*, No. 1:06-cv-730 (D. Del.) |
| Exhibit 27 | Docket sheet in the matter of *Rembrandt Technologies, LP v. ABC. Inc.*, No. 1:06-cv-730 (D. Del.) |
| Exhibit 28 | Plaintiff Rembrandt Technologies, LP Complaint for Patent Infringement and Demand for Jury trial filed on December 1, 2006 in the matter of *Rembrandt Technologies, LP v. Fox Entertainment Group, Inc. and Fox Broadcasting Company*, No. 1:06-cv-731 (D. Del.) |
| Exhibit 29 | Docket sheet in the matter of *Rembrandt Technologies, LP v. Fox Entertainment Group, Inc. and Fox Broadcasting Company*, No. 1:06-cv-731 (D. Del.) |
| Exhibit 30 | Plaintiff Rembrandt Technologies, LP's Motion to Withdraw the Reference to the Bankruptcy Court filed on January 11, 2007 in the matter of *In Re Adelphia Communication Corp. Rembrandt Technologies, LP v. Adelphia Communications Corp. Corporation, Century-TCI California Communications, LP, Century- TCI Distribution Company, LLC, Century-TCI Holdings, LLC, Parnassos, L.P., Parnassos Communications, LP, Parnassos Distribution Company I, LLC, Parnassos Distribution Company II, LLC, Parnassos Holdings, LLC, Western NY Cablevision, LP*, No. 1:07-cv-214 (S.D. New York). |
| Exhibit 31 | Docket sheet in the matter of *In Re Adelphia Communication Corp. Rembrandt Technologies, LP v. Adelphia Communications Corp. Corporation, Century-TCI California Communications, LP, Century- TCI Distribution Company, LLC, Century- TCI Holdings, LLC, Parnassos, L.P., Parnassos Communications, LP, Parnassos Distribution Company I, LLC, Parnassos Distribution Company II, LLC, Parnassos Holdings, LLC, Western NY Cablevision, LP*, No. 1:07-cv-214 (S.D. New York). |
| Exhibit 32 | Preliminary Expert Report of Kevin C. Almeroth dated November 13, 2006 in the matter of *In Re Adelphia Communication Corp. Rembrandt Technologies, LP v. Adelphia Communications Corp. Corporation, Century-TCI California Communications, LP, Century- TCI Distribution Company, LLC, Century- TCI Holdings, LLC, Parnassos, L.P., Parnassos Communications, LP, Parnassos Distribution Company I, LLC, Parnassos Distribution Company II, LLC, Parnassos Holdings, LLC, Western NY Cablevision, LP*, No. 1:07-cv-214 (S.D. New York). |

4

| Exhibit 33 | Plaintiff Rembrandt Technologies, LP's Complaint for Post-Petition Patent Infringement filed on September 13, 2006 in the matter of *In Re Adelphia Communication Corp. Rembrandt Technologies, LP v. Adelphia Communications Corp. Corporation, Century-TCI California Communications, LP, Century- TCI Distribution Company, LLC, Century-TCI Holdings, LLC, Parnassos, L.P., Parnassos Communications, LP, Parnassos Distribution Company I, LLC, Parnassos Distribution Company II, LLC, Parnassos Holdings, LLC, Western NY Cablevision, LP*, Adversary Proceeding No. 06-1739 (S.D. New York). |
|---|---|
| Exhibit 34 | Docket sheet in the matter of *In Re Adelphia Communication Corp. Rembrandt Technologies, LP v. Adelphia Communications Corp. Corporation, Century-TCI California Communications, LP, Century- TCI Distribution Company, LLC, Century- TCI Holdings, LLC, Parnassos, L.P., Parnassos Communications, LP, Parnassos Distribution Company I, LLC, Parnassos Distribution Company II, LLC, Parnassos Holdings, LLC, Western NY Cablevision, LP*, Adversary Proceeding No. 06-1739 (S.D. New York). |
| Exhibit 35 | Transfer Order filed on February 16, 2005, *In Re Pharmastem Therapeutics, Inc., Patent Litigation,* Judicial Panel on Multidistrict Litigation Case No. 1:05-md-01660. |
| Exhibit 36 | 2005 Annual Report of the Administrative Office of the United States Courts Table C: U.S. District Courts- Civil Cases Commenced, Terminated and Pending During the 12-month Periods Ending Marcy 31, 2005 and 2006. |
| Exhibit 37 | U.S. District Court Judicial Caseload Profile for the District of Delaware. |
| Exhibit 38 | Docket List of Pending Patent Cases in the District of Delaware before Judge Sleet. |
| Exhibit 39 | U.S. District Court Judicial Caseload Profile for the Eastern District of Texas. |
| Exhibit 40 | U.S. District Court Judicial Caseload Profile for the Southern District of New York. |
| Exhibit 41 | Declaration of Brian Ferrall |
| Exhibit 42 | February 14, 2007 Letter to counsel for Cox Communication, Inc. from Rembrandt |
| Exhibit 43 | Declaration of Eilish M. Cahalan in Support of Defendants' Memorandum in Opposition to Plaintiff's Motion to Withdraw the Reference to the Bankruptcy Court filed March 2, 2007 in the matter of *In Re Adelphia Communication Corp. Rembrandt Technologies, LP v. Adelphia Communications Corp. Corporation, Century-TCI California Communications, LP, Century- TCI Distribution Company, LLC, Century-TCI Holdings, LLC, Parnassos, L.P., Parnassos Communications, LP, Parnassos Distribution Company I, LLC, Parnassos Distribution Company II, LLC, Parnassos Holdings, LLC, Western NY Cablevision, LP*, No. 1:07-cv-214 (S.D. New York). |

5

This the 9th day of March 2007.

_Mitchell G. Stockwell_

Mitchell G. Stockwell
R. Scott Griffin
Taylor Higgins Ludlam
KILPATRICK STOCKTON LLP
1100 Peachtree Street, N.E., Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

Tonya R. Deem
KILPATRICK STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101-2400
Telephone: (336) 607-7300
Facsimile: (336) 607-7500

6

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| In re: | ) |
| | ) |
| Rembrandt Technologies, LP Patent | )    MDL Docket No. |
| Litigation | ) |
| | ) |

**NOTICE OF APPEARANCE OF COUNSEL**
**REPRESENTING DEFENDANT COXCOM, INC.**

In compliance with Rule 5.2(c), R.P.J.P.M.L., 199 F.R.D. 425, 431 (2001), the

following designated attorney is authorized to receive service of all pleadings, notices,

orders, and other papers relating to practice before the Judicial Panel on Multidistrict

Litigation on behalf of defendant CoxCom, Inc. I am aware that only one attorney can be

designated for each party.

Dated: March 9th, 2007.

By: _Mitchell G. Stockwell_
       Mitchell G. Stockwell
       KILPATRICK STOCKTON
       1100 Peachtree Street
       Suite 2800
       Atlanta, Georgia 30309
       (404) 815-6214
       (404) 541-3403 (facsimile)

       **Attorney for Defendant COXCOM,**
       **INC.**

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

In re:                                              )
                                                    )
Rembrandt Technologies, LP Patent                   )        MDL Docket No.
Litigation                                          )
                                                    )

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 5.3 of the Rules of Procedure of the Judicial Panel for Multidistrict

Litigation, Defendant Coxcom, Inc., through its attorneys, declares that Coxcom, Inc. is a

wholly owned subsidiary of Cox Enterprises, Inc., a privately owned company.

Dated: March 9th, 2006.

By: _____
Mitchell G. Stockton
KILPATRICK STOCKTON
1100 Peachtree Street
Suite 2800
Atlanta, Georgia 30309
(404) 815-6500
(404) 815-6555

**Attorney For Defendant:**
**COXCOM, INC.**

US2000 9823191 1

**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

In re:

Rembrandt Technologies, LP Patent
Litigation

MDL Docket No.

**CERTIFICATE OF SERVICE**

Mitchell G. Stockwell
Taylor Higgins Ludlam
KILPATRICK STOCKTON LLP
1100 Peachtree Street, N.E., Suite 2800
Atlanta, GA  30309
Telephone:  (404) 815-6500
Facsimile:  (404) 815-6555

Tonya R. Deem
KILPATRICK STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC  27101-2400
Telephone:  (336) 607-7300
Facsimile:  (336) 607-7500

**ATTORNEYS FOR COXCOM, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that on 9th day of March, 2007, copies of the following documents:

1. Motion for Transfer and Consolidation of Rembrandt Technologies Patent Litigation Pursuant to 28 U.S. C §1407;

2. Memorandum of Law in Support Motion for Transfer and Consolidation of Rembrandt Technologies Patent Litigation Pursuant to 28 U.S. C §1407;

3. Exhibits in Support of Motion for Transfer and Consolidation of Rembrandt Technologies Patent Litigation Pursuant to 28 U.S. C §1407;

4. Notice of Appearance of Counsel;

5. Corporate Disclosure Statement; and

6. Notice of Filing Motion for Transfer and Consolidation of Rembrandt Technologies Patent Litigation Pursuant to 28 U.S. C §1407 [for each party's respective case].

were served by U.S. Mail, postage pre-paid, upon the following parties and counsel on the

attached Service List.

I further certify that on the 9th day of March, 2007, pursuant to Rule 5.2(b) of the

Judicial Panel on Multidistrict Litigation, I caused to be served the following documents by

U.S. Mail, postage pre-paid:

1. Motion for Transfer and Consolidation of Rembrandt Technologies Patent Litigation Pursuant to 28 U.S. C §1407;

2. Memorandum of Law in Support Motion for Transfer and Consolidation of Rembrandt Technologies Patent Litigation Pursuant to 28 U.S. C §1407;

3. Exhibits in Support of Motion for Transfer and Consolidation of Rembrandt Technologies Patent Litigation Pursuant to 28 U.S. C §1407;

4. Notice of Appearance of Counsel;

5. Corporate Disclosure Statement; and

US2000 9814326 1 C8490-331049

6. Notice of Filing Motion for Transfer and Consolidation of Rembrandt Technologies Patent Litigation Pursuant to 28 U.S. C §1407 [to District Courts for the following cases:].

### U.S. District Court for the Eastern District of Texas

Case No. 02:05-cv-443-TJW; Case No. 02:06-cv-047-TJW; Case No. 02:05-cv-223-TJW; Case No. 02:06-cv-224-TJW; Case No. 02:06-cv-369-TJW; Case No. 02:06-cv-506-TJW; Case No. 02:06-cv-507-TJW

### U. S. District Court for the District of Delaware

Case No. 1:06-cv-635-GMS; Case No. 1:06-cv-721-GMS; Case No. 1:06-cv-727-GMS; Case No. 1:06-cv-729-GMS; Case No. 1:06-cv-730-GMS; Case No. 1:06-cv-731-GMS

### U. S. District Court for the Southern District of New York
Case No. 1:07-cv-214-WHP

### U. S. Bankruptcy Court for the Southern District of New York
Case No. 06-01739-REG

The above documents were filed in electronic format using the CM/ECF system to the following United States District Courts: U.S. District Court for the Eastern District of Texas, Marshall Division; U. S. District Court for the Southern District of New York, Foley Square Division; and U. S. Bankruptcy Court for the Southern District of New York, Manhattan Division.

The above documents were sent in paper format via Federal Express to the Clerk of the Court of for the U. S. District Court for the District of Delaware, Wilmington Division for filing.

US2000 9814326 I C8490-331049

This the 9th day of March 2007.


_Mitchell G. Stockwell_
_____
Mitchell G. Stockwell
Taylor Higgins Ludlam
KILPATRICK STOCKTON LLP
1100 Peachtree Street, N.E., Suite 2800
Atlanta, GA  30309
Telephone:  (404) 815-6500
Facsimile:  (404) 815-6555

Tonya R. Deem
KILPATRICK STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC  27101-2400
Telephone:  (336) 607-7300
Facsimile:  (336) 607-7500

**ATTORNEYS FOR COXCOM, INC.**

# In re: Rembrandt Technologies, LP Patent Litigation Service List
## Parties Represented by Counsel

Steven J. Balick, Esq.
Lauren E. Maguire, Esq.
Ashby & Geddes
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
sbalick@ashby-geddes.com
lmaguire@@ashby-geddes.com
*Attorneys for Plaintiff and Counter Defendant Rembrandt*
*Technologies LP*
*1 06-cv-00727 (D. Del.); 1 06-cv-00729 (D. Del.), 1 06-cv-*
*00730 (D. Del.);*
*1 06-cv-00731 (D. Del.)*

Samuel Franklin Baxter, Esq.
PO Box O
Marshall, TX 75671
sbaxter@mckoolsmith.com
*Attorney for Plaintiff Rembrandt Technologies, LP*
*2 06-cv-000047 (E.D. Tex.); 2 06-cv-00224 (E.D Tex.);*
*Attorney for Plaintiff and Counter Defendant Rembrandt*
*Technologies, LP 2 06-cv-00223 (E.D. Tex.); 2:05-cv-443*
*(E.D. Tex.)*

David J. Beck, Esq.
Beck Redden & Secrest
1221 McKinney Street, Suite 4500
One Huston Center
Houston, TX 77010
dbeck@brsfirm.com
ggannaway@brsfirm.com
*Attorney for Plaintiff Rembrandt Technologies, LP 2 05-*
*cv-443 (E.D. Tex.)*

Denis Ticak, Esq
Benesch Friedlander Coplan & Aronoff-Cleveland
2300 BP Tower
200 Public Square
Cleveland, OH 44114
dticak@bfca.com
*Attorney for Plaintiff Rembrandt Technologies, LP*
*2:05-cv-443 (E.D. Tex.)*

Elizabeth L. DeRieux, Esq.
Sidney Calvin Capshaw, III, Esq
Andrew Wesley Spangler, Esq
Brown Carroll - Longview
1127 Judson Road, Suite 220
PO Box 3999
Longview, TX 75606
ederieux@mailbmc.com
ccapshaw@mailbmc.com
aspangler@mailbmc.com
*Attorneys for Plaintiff Rembrandt Technologies, LP*
*2 05-cv-443 (E.D. Tex.), 2 06-cv-00224 (E.D. Tex.); 2 06-*
*cv-00507 (E.D. Tex.) 2 06-cv-00506 (E.D. Tex.)*

Gerald Levy, Esq.
Richard H. Brown, Esq
Yukio Kashiba, Esq.
Day Pitney LLP
7 Times Square
New York, NY 10036-7311
glevy@pitneyhardin.com
rbrown@pitneyhardin.com
ykashiba@pitneyhardin.com
*Attorneys for Defendant and Counter Claimant Sharp*
*Electronics Corp.*
*2 06-cv-000047 (E.D. Tex.)*

Robert W. Faulkner, Esq.
JAMS
8401 North Central Expressway, Suite 610
Dallas, TX 75225
rfaulkner@jamsadr.com
*Mediator 2 05-cv-443 (E.D. Tex.)*

Amanda J. Tessar, Esq
David A. Segal, Esq.
Gibson Dunn & Crutcher, LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Email: atessar@gibsondunn.com
Email: dsegal@gibsondunn.com
*Attorneys for Defendants and Counter Claimants*
*Cablevision Systems Corporation and*
*CSC Holdings Inc. 1 06-cv-00635 (D. Del.)*

Harry Lee Gillam, Jr., Esq.
Gillam & Smith, LLP
303 South Washington Avenue
Marshall, TX 75670
gil@gillamsmithlaw.com
*Attorney for Defendants Comcast Corporation, Comcast*
*Cable Communications, LLC and Comcast of Plano, LP*
*2 05-cv-443 (E.D. Tex.)*

Jennifer Haltom Doan, Esq
Haltom and Doan LLP
6500 North Summerhill Road
Crown Executive Center Suite 1A
PO Box 6227
Texarkana, TX 75505
jdoan@haltomdoan.com
*Attorney for Defendants and Counter Claimants Comcast*
*Corporation, Comcast Cable Communications, LLC,*
*Comcast of Plano, LP. , 2 05-cv-443 (E.D. Tex.);*
*Attorney for Defendants and Counter Claimants Comcast*
*Corporation, Comcast Cable Communications, LLC and*
*Comcast of Plano. LP 2 06-cv-00506 (E.D. Tex.)*

## In re: Rembrandt Technologies, LP Patent Litigation Service List
### Parties Represented by Counsel

Otis W Carroll, Jr , Esq
Collin Michael Maloney, Esq.
James Patrick Kelley, Esq
Ireland Carroll & Kelley
6101 S Broadway, Suite 500
Tyler, TX 75703
fedserv@icklaw com
patkelley@icklaw com
*Attorneys for Plaintiff Rembrandt Technologies, LP 2 05-cv-443 (E.D Tex ), 2 06-cv-00506 (E D Tex ), 2 06-cv-00224 (E D Tex ), 2 06-cv-00507 (E D Tex )*

Franklin Jones, Jr , Esq
Jones & Jones – Marshall
201 W Houston St
PO Drawer 1249
Marshall, TX 75670
maizieh@millerfirm com
*Attorneys for Plaintiff Rembrandt Technologies, LP 2 05-cv-443 (E D Tex ), 2 06-cv-00506 (E D Tex ), 2 06-cv-00224 (E D Tex ), 2 06-cv-00223 (E D Tex ), 2 06-cv-00507 (E D Tex )*

David S Benyacar, Esq
Michael A. Rogoff, Esq.
Kaye Scholer – New York
425 Park Avenue
New York, NY 10022
dbenyacar@kayescholer com
mrogoff@kayescholer com
*Attorneys for Defendant Time Warner Cable Inc 2 06-cv-00224 (E D Tex )*
*Attorneys for Movant Time Warner Cable, Inc 2 05-cv-443 (E D Tex )*

Daralyn J Durie, Esq
Leo L Lam, Esq.
Matthias Andreas Kamber, Esq
Steven K. Yoda, Esq
Asim M Bhansali, Esq
Brian L Ferrall, Esq
Eric MacMichael, Esq.
Matthew M Werdegar, Esq.
Keker & Van Nest
710 Sansome St
San Francisco, CA 94111
ddurie@kvn.com
llam@kvn com
mkamber@kvn com
syoda@kvn com
abhansali@svn com
bferrall@kvn com
emacmichael@kvn com
mwerdegar@kvn com
*Attorneys for Defendant and Counter Claimant Comcast Corporation Defendant and Counter Claimant Comcast Cable Communications, LLC, Defendant and Counter Claimant Comcast of Plano, LP 2 05-cv-443 (E D Tex )*

Candice C Decaire, Esq.
Leroy M. Toliver, Esq
Mitchell G. Stockwell, Esq
R. Scott Griffin, Esq.
Kilpatrick Stockton LLP – Atlanta
1100 Peachtree Street
Suite 2800
Atlanta, GA 30309-4530
cdecaire@kilpatrickstockton com
btoliver@kilpatrickstockton com
mstockwell@kilpatrickstockton com
sgriffin@kilpatrickstockton com
*Attorneys for Defendant Coxcom, Inc 2 06-cv-00223 (E D Tex ), 2 06-cv-00507 (E D Tex )*
*Attorneys for Plaintiff Coxcom Inc 1 06-cv-00721 (D Del )*

Tonya R. Deem, Esq
Kilpatrick Stockton LLP
1001 W. Fourth Street
Winston-Salem, NC 27101
tdeem@kilpatrickstockton com
*Attorney for Defendant Coxcom, Inc 2 06-cv-00223 (E D Tex ), 2 06-cv-00507 (E D Tex )*
*Attorney for Plaintiff Coxcom, Inc 1 06-cv-00721 (D Del)*

Bradford P. Lyerla, Esq.
Charles Edward Juister, Esq
Gregory E Stanton, Esq.
Jon-Thomas Bloch, Esq
Kevin D. Hogg, Esq
Margaret Lynn Begalle, Esq
Paul Bryan Stephens, Esq.
William Joseph Kramer, Esq
Marshall Gerstein & Borun
233 S. Wacker Dr
6300 Sears Tower
Chicago, IL 60606-6357
blyerla@marshallip com
cjuister@marshallip com
gstanton@marshallip com
jbloch@marshallip com
khogg@marshallip com
mbegalle@marshallip com
pstephens@marshallip com
wkramer@marshallip com
*Attorneys for Defendants Charter Communications, Inc and Charter Communications Operating, LLC 2 06-cv-00223 (E D Tex ); 2 06-cv-00507 (E D Tex )*

2

## In re: Rembrandt Technologies, LP Patent Litigation Service List
## Parties Represented by Counsel

David Sochia, Esq.
Douglas A. Cawley, Esq.
Bradley Wayne Caldwell, Esq
Jeffrey A. Carter, Esq
McKool Smith- Dallas
300 Crescent Court, Suite 1500
Dallas, TX 75201
dcawley@mckoolsmith.com
dsochia@mckoolsmith.com
bcaldwell@mckoolsmith.com
jcarter@mckoolsmith.com
*Attorneys for Plaintiff and Counter Defendant Rembrandt*
*Technologies, LP 2 06-cv-000047 ( E D Tex )*
*Attorneys for Plaintiff Rembrandt Technologies, LP*
*2 05-cv-443 (E D Tex ); 2 06-cv-00224 (E D Tex ), 2 06-*
*cv-00223 (E D Tex )*

John Franklin Garvish, II, Esq.
Travis Gordon White, Esq.
McKool Smith – Austin
300 W. 6th St
Ste 1700
Austin, TX 78701
jgarvish@mckoolsmith com
gwhite@mckoolsmith com
*Attorneys for Plaintiff Rembrandt Technologies, LP*
*2 05-cv-443 (E D Tex ). 2 06-cv-00224 (E D Tex ); 2 06-*
*cv-00223 (E D Tex )*

Rodger Dallery Smith, II, Esq
Leslie A. Polizoti, Esq.
Jack B. Blumenfeld, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
rdsefiling@mnat com
lpolizoti@mnat com
jbbefiling@mnat com
*Attorneys for Plaintiff Coxcom Inc 1 06-cv-00721 (D Del)*
*Attorneys for Defendant Rembrandt Technologies LP 1 06-*
*cv-00721 (D Del)*
*Attorneys for Defendant and Counter Claimant CBS*
*Corporation 1 06-cv-00727 (D Del )*
*Attorneys for Defendant and Counter Claimant NBC*
*Universal Inc 1 06-cv-00729 (D Del )*
*Attorneys for Defendant and Counter Claimant ABC*
*Inc 1 06-cv-00730 (D Del )*

William L. Anthony, Esq
William W. Oxley, Esq
Orrick Herrington & Sutcliff LLP
1000 Marsh Road
Menlo Park, CA 94025
wanthony@orrick com
woxley@orrick com
*Attorneys for Defendants and Counter Claimants Fox*
*Entertainment Group, Inc and Fox Broadcasting Company*
*1 06-cv-00731 (D Del )*

Charles Ainsworth, Esq

Robert Christopher Bunt, Esq
Robert M. Parker, Esq
Parker Bunt & Ainsworth , P C
100 E. Ferguson, Suite 1114
Tyler, TX 75702
charlie@pbatyler com
rcbunt@pbatyler.com
mparker@pbatyler com
*Attorneys for Plaintiff and Counter Defendant Rembrandt*
*Technologies, LP 2 06-cv-000047 ( E D Tex ) 2 06-cv-*
*00224 (E D Tex ); 2 06-cv-00223 (E D Tex ); 2 05-cv-443*
*(E D Tex )*
*Attorneys for Plaintiff Rembrandt Technologies, LP 2 06-*
*cv-00506 (E D Tex ); 2 06-cv-00507 (E D Tex )*

Allen Franklin Gardner, Esq
Michael Edwin Jones, Esq
Diane DeVasto, Esq
Potter Minton, P C
110 N. College Street, Suite 500
Tyler, TX 75702
allengardner@potterminton com
mikesjones@potterminton com
dianedevasto@pottterminton com
*Attorneys for Defendant and Counter Claimant Time*
*Warner Cable Inc*
*2 06-cv-00224 (E D Tex ); 2 06-cv-00369 (E D Tex )*
*Attorney for Movant Time Warner Cable, Inc 2 05-cv-443*
*(E D Tex )*
*Attorneys for Defendant Coxcom, Inc 2 06-cv-00223 (E D*
*Tex ), LLC 2 06-cv-00507 (E D Tex )*
*Attorneys for Counter Claimant Charter Communications,*
*Inc and Counter Claimant Charter Communications*
*Operating, LLC 2 06-cv-00223 (E D Tex )*
*Defendant Charter Communications, Inc and Defendant*
*Charter Communications Operating, LLC 2 06-cv-00507*
*(E D Tex )*

Richard L. Horowitz, Esq
David Ellis Moore, Esq.
Potter Anderson & Corroon, LLP
1313 N. Market St , Hercules Plaza, 6th Flr.
P.O. Box 951
Wilmington, DE 19899-0951
rhorwitz@potteranderson com
dmoore@potteranderson com
*Attorneys for Defendants and Counter Claimants Fox*
*Entertainment Group Inc and Fox Broadcasting Company*
*1 06-cv-00731 (D Del )*

3

## In re: Rembrandt Technologies, LP Patent Litigation Service List
### Parties Represented by Counsel

Walter Thomas Henson, Esq.
Ramey & Flock
100 E. Ferguson, Suite 500
Tyler, TX 75702-0629
thenson@rameyflock.com
*Attorney for Defendant and Counter Claimant Sharp
Corporation; Defendant and Counter Claimant Sharp
Electronics Corp. 2:06-cv-000047 (E.D. Tex.)*
Frederick L. Cottrell, III, Esq.
Kelly E. Farnan, Esq.
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
cottrell@rlf.com
farnam@rlf.com
*Attorneys for Defendants and Counter Claimants
Cablevision Systems Corporation and CSC Holdings
Inc 1:06-cv-00635 (D. Del.)*

Max Lalon Tribble, Jr., Esq.
Joseph Samuel Grinstein, Esq.
Tibor L. Nagy, Esq.
Susman Godfrey LLP - Houston
1000 Louisiana Street, Ste 5100
Houston, TX 77002-5096
mtribble@susmangodfrey.com
jgrinstein@susmangodfrey.com
tangy@susmangodfrey.com
*Attorneys for Plaintiff and Counter Defendant Rembrandt
Technologies, LP 2:06-cv-00369 (E.D. Tex.) 2:06-cv-00506
(E.D. Tex.) LP 2:06-cv-00507 (E.D. Tex.)
Attorneys for Plaintiff Rembrandt Technologies, LP
Adversary Proceeding 06-01739 (S.D.N.Y)*

Brooke Ashley-May Taylor, Esq.
Edgar G. Sargent, Esq.
Matthew R. Berry, Esq.
Susman Godfrey, LLP – Seattle
1201 Third Avenue, Suite 3100
Seattle, WA 98101
btaylor@susmangodfrey.com
esargent@susmangodfrey.com
mberry@susmangodfrey.com
*Attorneys for Plaintiff and Counter Defendant Rembrandt
Technologies, LP 2:06-cv-00506 (E.D. Tex.): 2:06-cv-
00369 (E.D. Tex.):
Attorneys for Plaintiff Rembrandt Technologies, LP 2:06-
cv-00507 (E.D. Tex.): Adversary Proceeding 06-01739
(S.D.N.Y)*

Vineet Bhatia, Esq.
James L. Garrity, Jr.
Susman Godfrey LLP
590 Madison Ave., 8th Floor
New York, NY 10022
*Attorneys for Plaintiff Rembrandt Technologies, LP 1:07-
cv-00214 (S.D.N.Y.): Attorney for Plaintiff and Counter
Defendant Rembrandt Technologies, LP Adversary
Proceeding 06-01739 (S.D.N.Y)*

Shelley C. Chapman, Esq.
Willkie Farr & Gallagher, LLP
787 Seventh Avenue
New York, NY 10019-6099
maosbny@willkie.com
*Attorney for Defendants and Counter Claimants Adelphia
Communications Corporation, Century-TCI California
Communications, LP, Century-TCI Distribution Company,
LLC, Century-TCI Holdings, LLC, Parnassos
Communications, LP, Parnassos Distribution Company I,
LLC, Parnassos Distribution II, LLC, Parnassos Holdings,
LLC, Parnassos, L.P., Western NY Cablevision, LP
Adversary Proceeding 06-01739 (S.D.N.Y)*

Kevin M. Baird, Esq.
James Michael Lennon, Esq.
Womble Carlyle Sandridge & Rice, PLLC
222 Delaware Avenue
Suite 1501
Wilmington, DE 19801
kbaird@wcsr.com
jlennon@wcsr.com
*Attorneys for Plaintiff Rembrandt Technologies LP 1:06-
cv-00635 (D. Del.)
Attorneys for Defendant Rembrandt Technologies LP 1:06-
cv-00721 (D. Del)*

US2000 9820U049 I C8490-331049

# EXHIBIT F

CLOSED, ECF

# U.S. District Court
## United States District Court for the Southern District of New York (Foley Square)
### CIVIL DOCKET FOR CASE #: 1:07-cv-00214-WHP

In Re: Adelphia Communication Corp.
Assigned to: Judge William H. Pauley, III
Case in other court: USBC-SDNY, 06-01739A
Cause: 28:157 Motion to Withdraw Reference

Date Filed: 01/11/2007
Date Terminated: 06/26/2007
Jury Demand: None
Nature of Suit: 423 Bankruptcy
Withdrawl
Jurisdiction: Federal Question

**In Re**

**Adelphia Communication Corp.**                    represented by **Jeremy S. Pitcock**
Kasowitz, Benson, Torres & Friedman,
LLP (NYC)
1633 Broadway
New York, NY 10019
(212)-506-1797
Fax: (212)-506-1800
Email: jpitcock@kasowitz.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Debtor**

**Adelphia Communication Corp.**                    represented by **Jeremy S. Pitcock**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Rembrandt Technologies, LP**                    represented by **Vineet Bhatia**
Susman Godfrey LLP
590 Madison Ave., 8th Floor
New York, NY 10022
212-336-8330
Email: vbhatia@susmangodfrey.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Adelphia Communications Corp.**                    represented by **Jeremy S. Pitcock**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas John Meloro, Jr.**
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8248
Fax: (212) 728-8111
Email: maosdny@willkie.com
*TERMINATED: 05/16/2007*
*LEAD ATTORNEY*

**<u>Movant</u>**

**CoxCom, Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 01/11/2007 | 1 | MOTION TO WITHDRAW THE BANKRUPTCY REFERENCE. Bankruptcy Court Case Numbers: 06-1739A.Document filed by Rembrandt Technologies, LP.(bkar, ) (Entered: 01/11/2007) |
| 01/11/2007 | 2 | MEMORANDUM OF LAW in Support re: 1 MOTION TO WITHDRAW THE BANKRUPTCY REFERENCE. Bankruptcy Court Case Numbers: 06-1739A. Document filed by Rembrandt Technologies, LP. (bkar, ) (Entered: 01/11/2007) |
| 01/11/2007 | 3 | DECLARATION of Marc B. Hankin in Support re: 1 MOTION TO WITHDRAW THE BANKRUPTCY REFERENCE. Bankruptcy Court Case Numbers: 06-1739A. Document filed by Rembrandt Technologies, LP. (Attachments: # 1 Exhibit A - Part I# 2 Exhibit A - Part II# 3 Exhibit B - Part I# 4 Exhibit B - Part II# 5 Exhibit C# 6 Exhibit D# 7 Exhibit E) (bkar, ) (Entered: 01/11/2007) |
| 01/11/2007 | | Magistrate Judge Douglas F. Eaton is so designated. (bkar, ) (Entered: 01/11/2007) |
| 01/11/2007 | | Case Designated ECF. (bkar, ) (Entered: 01/11/2007) |
| 01/11/2007 | 4 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Rembrandt Technologies, LP.(Roll, William) (Entered: 01/11/2007) |
| 03/02/2007 | 5 | MEMORANDUM OF LAW in Opposition re: 1 MOTION TO WITHDRAW THE BANKRUPTCY REFERENCE. Bankruptcy Court Case Numbers: 06-1739A.. Document filed by Adelphia Communications Corp.. (Attachments: # 1 Certificate of Service)(Netzer, Roger) (Entered: 03/02/2007) |
| 03/02/2007 | 6 | DECLARATION of Eilish M. Cahalan in Opposition re: 1 MOTION TO WITHDRAW THE BANKRUPTCY REFERENCE. Bankruptcy Court Case Numbers: 06-1739A.. Document filed by Adelphia Communications Corp.. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E# 6 Exhibit F# 7 Certificate of |

| | | |
|---|---|---|
| | | Service)(Netzer, Roger) (Entered: 03/02/2007) |
| 03/09/2007 | 7 | NOTICE of Filing Motion for Transfer and Consolidation of Rembrandt Technologies, LP Patent Litigation Pursuant to 28 U.S.C. 1407. Document filed by CoxCom, Inc.. (Attachments: # 1 MDL Motion for Transfer and Consolidation# 2 MDL Motion Ex. A# 3 MDL Motion Ex. B# 4 MDL Memorandum# 5 MDL Exhibit List# 6 MDL Notice of Appearance# 7 MDL Corporate Disclosures# 8 MDL Certificate of Service)(Petersen, Joseph) (Entered: 03/09/2007) |
| 03/09/2007 | 8 | NOTICE of Exhibit List re: 7 Notice (Other), Notice (Other). Document filed by CoxCom, Inc.. (Attachments: # 1 MDL Ex. 1# 2 MDL Ex. 2# 3 MDL Ex. 3# 4 MDL Ex. 4# 5 MDL Ex. 5# 6 MDL Ex. 6# 7 MDL Ex. 7# 8 MDL Ex. 8# 9 MDL Ex. 9# 10 MDL Ex. 10# 11 MDL Ex. 11# 12 MDL Ex. 12# 13 MDL Ex. 13# 14 MDL Ex. 14# 15 MDL Ex. 15# 16 MDL Ex. 16# 17 MDL Ex. 17-1# 18 MDL Ex. 17-2# 19 MDL Ex. 18# 20 MDL Ex. 19# 21 MDL Ex. 20# 22 MDL Ex. 21# 23 MDL Ex. 22# 24 MDL Ex. 23# 25 MDL Ex. 24# 26 MDL Ex. 25# 27 MDL Ex. 26# 28 MDL Ex. 27# 29 MDL Ex. 28# 30 MDL Ex. 29# 31 MDL Ex. 30# 32 MDL Ex. 31# 33 MDL Ex. 32# 34 MDL Ex. 33# 35 MDL Ex. 34# 36 MDL Ex. 35# 37 MDL Ex. 36# 38 MDL Ex. 37# 39 MDL Ex. 38# 40 MDL Ex. 39# 41 MDL Ex. 40# 42 MDL Ex. 41# 43 MDL Ex. 42# 44 MDL Ex. 43)(Petersen, Joseph) (Entered: 03/09/2007) |
| 03/23/2007 | 9 | REPLY MEMORANDUM OF LAW in Support re: 1 MOTION TO WITHDRAW THE BANKRUPTCY REFERENCE. Bankruptcy Court Case Numbers: 06-1739A.. Document filed by Rembrandt Technologies, LP. (Roll, William) (Entered: 03/23/2007) |
| 03/23/2007 | 10 | DECLARATION of / Second Declaration of Marc B. Hankin in Support re: 1 MOTION TO WITHDRAW THE BANKRUPTCY REFERENCE. Bankruptcy Court Case Numbers: 06-1739A.. Document filed by Rembrandt Technologies, LP. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C)(Roll, William) (Entered: 03/23/2007) |
| 04/05/2007 | 11 | NOTICE of Filing Opposition to Coxcom's Motion for Transfer and Consolidation of Rembrandt Technologies, LP Patent Litigation re: 7 Notice (Other), Notice (Other). Document filed by Rembrandt Technologies, LP. (Attachments: # 1 Response to Coxcom's Motion for Transfer and Consolidation# 2 Rembrandt's Brief in Opposition# 3 Reason Why Oral Argument Should be Heard# 4 Exhibit List# 5 Exhibit 1# 6 Exhibit 2# 7 Exhibit 3# 8 Exhibit 4# 9 Exhibit 5# 10 Exhibit 6# 11 Exhibit 7# 12 Exhibit 8# 13 Exhibit 9# 14 Exhibit 10# 15 Exhibit 11# 16 Exhibit 12# 17 Exhibit 13)(Roll, William) (Entered: 04/05/2007) |
| 04/23/2007 | 12 | NOTICE of Substitution of Attorney. Old Attorney: Thomas J. Meloro, New Attorney: Jeremy S. Pitcock, Address: Kasowitz, Benson, Torres & Friedman LLP, 1633 Broadway, New York, NY, USA 10019, 212-506-1700. Document filed by Adelphia Communication Corp., Adelphia Communications Corp.. (Pitcock, Jeremy) (Entered: 04/23/2007) |
| 05/16/2007 | 13 | SUBSTITUTION OF COUNSEL AND ORDER I consent to |

| | | subsitution Willkie Farr & Gallagher LLP. Thomas J. Meloro and The undersigned are duly admitted to practice in this District Kasowitz,Benson,Torres & Friedman LLP Jeremy S. Pitcock (Signed by Judge William H. Pauley III on 5/14/2007) (jmi) (Entered: 05/17/2007) |
|---|---|---|
| 06/26/2007 | 14 | CERTIFIED TRUE COPY OF CONDITIONAL MDL TRANSFER OUT ORDER FROM THE MDL PANEL...transferring this action from the U.S.D.C. - S.D.N.Y to the United States District Court - District of Delaware. (Signed by Judge MDL Panel on 06/18/2007) (jeh) (Entered: 07/03/2007) |
| 06/26/2007 | | MDL TRANSFER OUT: Emailed documents numbered 1-4, certified copy of docket entries and transfer order along with letter of acknowledgment to the United States District Court - District of Delaware. (jeh) (Entered: 07/03/2007) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/11/2007 17:02:25 | | |
| **PACER Login:** | bh0015 | **Client Code:** | 32817-1 |
| **Description:** | Docket Report | **Search Criteria:** | 1:07-cv-00214-WHP |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

## CERTIFICATE OF SERVICE

I, Richard D. Kirk, Esq., hereby certify that on July 11, 2007, I electronically filed

the foregoing with the Clerk of the Court using CM/ECF and by hand delivery to the

following counsel of record:

Steven J. Balick, Esq.
Ashby & Geddes
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899

Kevin M. Baird, Esq.
Womble Carlyle Sandridge & Rice, PLLC
222 Delaware Avenue
Suite 1501
Wilmington, DE 19801

Karen Jacobs Louden, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

*/s/ Richard D. Kirk*
_____
Richard D. Kirk (rk0922)