# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE: REMBRANDT TECHNOLOGIES, LP PATENT LITIGATION | ) ) ) ) ) |  MDL Docket No. 07-md-1848 (GMS) |

|  |  |
|---|---|
| MOTOROLA, INC., CISCO SYSTEMS, INC., SCIENTIFIC-ATLANTA, INC., ARRIS GROUP, INC., THOMSON, INC., AMBIT MICROSYSTEMS, INC., and NETGEAR, INC., | |
| Plaintiffs, | |
| v. | Civil Action No. 07-752-GMS |
| REMBRANDT TECHNOLOGIES, LP, | |
| Defendant. | **JURY TRIAL DEMANDED** |

| | |
|---|---|
| REMBRANDT TECHNOLOGIES, LP, and REMBRANDT TECHNOLOGIES, LLC d/b/a REMSTREAM, | |
| Counter-Plaintiffs, Counterclaim Defendants, | |
| v. | Civil Action No. 07-752-GMS |
| MOTOROLA, INC., CISCO SYSTEMS, INC., SCIENTIFIC-ATLANTA, INC., ARRIS GROUP, INC., THOMSON, INC., AMBIT MICROSYSTEMS, INC., NETGEAR, INC., | |
| Counter-Defendants, | **JURY TRIAL DEMANDED** |
| and | |
| TIME WARNER CABLE, INC., TIME WARNER CABLE LLC, TIME WARNER NEW YORK CABLE LLC, TIME WARNER ENTERTAINMENT COMPANY, LP, COMCAST CORPORATION, COMCAST CABLE COMMUNICATIONS, LLC, CHARTER COMMUNICATIONS, INC., CHARTER COMMUNICATIONS OPERATING, LLC, COXCOM, INC., COX COMMUNICATIONS, | |

INC., COX ENTERPRISES, INC., CSC )
HOLDINGS, INC., CABLEVISION SYSTEMS )
CORPORATION, ADELPHIA )
COMMUNICATIONS CORPORATION, )
CENTURY-TCI CALIFORNIA )
COMMUNICATIONS, LP, CENTURY-TCI )
HOLDINGS, LLC, COMCAST OF )
FLORIDA/PENNSYLVANIA, L.P. (f/k/a )
PARNASSOS, LP), COMCAST OF )
PENNSYLVANIA II, L.P. (f/k/a CENTURY-TCI )
CALIFORNIA, L.P.), PARNASSOS )
COMMUNICATIONS, LP, ADELPHIA )
CONSOLIDATION, LLC, PARNASSOS )
HOLDINGS, LLC, and WESTERN NY )
CABLEVISION, LP, )
                                                              )
       Counter-Defendants, Counterclaim )
       Plaintiffs, )
                                                              )
       and )
                                                              )
TIME WARNER ENTERTAINMENT- )
ADVANCE/NEWHOUSE )
PARTNERSHIP, )
                                                              )
       Counterclaim Plaintiff. )
                                                              )

## TWC'S REPLY TO REMBRANDT'S COUNTERCLAIM FOR PATENT INFRINGEMENT AND COUNTERCLAIMS OF TWC COUNTERCLAIMANTS

      Counter-Defendants Time Warner Cable Inc., Time Warner Cable LLC, Time Warner

New York Cable LLC (properly known as Time Warner NY Cable LLC) and Time Warner

Entertainment Company, L.P. (collectively "TWC Counter-Defendants" or "TWC"), by their

undersigned counsel, respond to the allegations asserted in the Counterclaim For Patent

Infringement (the "Counterclaim") of Counter-Plaintiffs Rembrandt Technologies, LP and

Rembrandt Technologies, LLC d/b/a Remstream (collectively "Rembrandt") as follows:

      1.     TWC lacks knowledge or information sufficient to form a belief as to the truth of

the allegations made in paragraph 1 of the Counterclaim, and on that basis denies those

allegations.

      2.     TWC lacks knowledge or information sufficient to form a belief as to the truth of

the allegations made in paragraph 2 of the Counterclaim, and on that basis denies those

allegations.

3.      TWC lacks knowledge or information sufficient to form a belief as to the truth of the allegations made in paragraph 3 of the Counterclaim, and on that basis denies those allegations.

4.      TWC lacks knowledge or information sufficient to form a belief as to the truth of the allegations made in paragraph 4 of the Counterclaim, and on that basis denies those allegations.

5.      TWC lacks knowledge or information sufficient to form a belief as to the truth of the allegations made in paragraph 5 of the Counterclaim, and on that basis denies those allegations.

6.      TWC lacks knowledge or information sufficient to form a belief as to the truth of the allegations made in paragraph 6 of the Counterclaim, and on that basis denies those allegations.

7.      TWC lacks knowledge or information sufficient to form a belief as to the truth of the allegations made in paragraph 7 of the Counterclaim, and on that basis denies those allegations.

8.      TWC lacks knowledge or information sufficient to form a belief as to the truth of the allegations made in paragraph 8 of the Counterclaim, and on that basis denies those allegations.

9.      TWC lacks knowledge or information sufficient to form a belief as to the truth of the allegations made in paragraph 9 of the Counterclaim, and on that basis denies those allegations.

10.     TWC lacks knowledge or information sufficient to form a belief as to the truth of the allegations made in paragraph 10 of the Counterclaim, and on that basis denies those allegations.

11.     TWC admits that one or more TWC Counter-Defendants, either directly or indirectly through one or more subsidiaries, purchases and/or leases equipment from one or more Plaintiffs/Counter-Defendants "for the provision of high-speed internet, cable broadband, and/or other services." Except as expressly so admitted, TWC denies the remaining allegations in this

paragraph as they relate to TWC.  To the extent the allegations of paragraph 11 of the Counterclaim do not relate to TWC, no responsive pleading is required or provided.

12.    TWC admits the allegations of paragraph 12 of the Counterclaim that Time Warner Cable Inc. is a Delaware corporation and that its registered agent for service of process in Delaware is the Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801.  TWC denies the remaining allegations made in paragraph 12 of the Counterclaim.  Time Warner Cable Inc.'s principle place of business is One Time Warner Center, New York, New York 10019.

13.    TWC admits the allegations of paragraph 13 of the Counterclaim that Time Warner Cable LLC is a Delaware limited liability company and that its "registered agent for service of process is the Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801."  TWC denies the remaining allegations made in paragraph 13 of the Counterclaim.  Time Warner Cable Inc.'s principle place of business is One Time Warner Center, New York, New York 10019.

14.    TWC admits the allegations of paragraph 14 of the Counterclaim that Time Warner New York Cable LLC is a Delaware limited liability company, except that it is known as Time Warner NY Cable LLC, and that its registered agent for service of process in Delaware is the Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801.  TWC denies the remaining allegations made in paragraph 14 of the Counterclaim.  Time Warner NY Cable LLC's principle place of business is One Time Warner Center, New York, New York 10019.

15.    TWC admits the allegations of paragraph 15 of the Counterclaim that Time Warner Entertainment Company, L.P. is a Delaware limited partnership and that its registered agent for service of process in Delaware is the Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801.  TWC denies the remaining allegations made in paragraph 15 of the Counterclaim.  Time Warner Entertainment Company, L.P.'s principle place of business is One Time Warner Center, New York, New York 10019.

16.    TWC admits the allegations of paragraph 16 of the Counterclaim that Time

Warner Cable Inc. is the direct or indirect parent of each of Time Warner Cable LLC, Time

Warner NY Cable LLC, and Time Warner Entertainment Company, L.P.  TWC admits that

through one or more of its subsidiaries, affiliates, partners, or other related parties, Time Warner

Cable Inc. owns and/or operates cable systems throughout the United States.  TWC denies the

remaining allegations of paragraph 16 of the Counterclaim.  TWC is not infringing, and has not

in the past infringed, any of the patents identified in the Counterclaim.

     17.     TWC lacks knowledge or information sufficient to form a belief as to the truth of

the allegations made in paragraph 17 of the Counterclaim, and on that basis denies those

allegations.

     18.     TWC lacks knowledge or information sufficient to form a belief as to the truth of

the allegations made in paragraph 18 of the Counterclaim, and on that basis denies those

allegations.

     19.     TWC lacks knowledge or information sufficient to form a belief as to the truth of

the allegations made in paragraph 19 of the Counterclaim, and on that basis denies those

allegations.

     20.     TWC lacks knowledge or information sufficient to form a belief as to the truth of

the allegations made in paragraph 20 of the Counterclaim, and on that basis denies those

allegations.

     21.     TWC lacks knowledge or information sufficient to form a belief as to the truth of

the allegations made in paragraph 21 of the Counterclaim, and on that basis denies those

allegations.

     22.     TWC lacks knowledge or information sufficient to form a belief as to the truth of

the allegations made in paragraph 22 of the Counterclaim, and on that basis denies those

allegations.

     23.     TWC lacks knowledge or information sufficient to form a belief as to the truth of

the allegations made in paragraph 23 of the Counterclaim, and on that basis denies those

allegations.

     24.     TWC lacks knowledge or information sufficient to form a belief as to the truth of

the allegations made in paragraph 24 of the Counterclaim, and on that basis denies those allegations.

25.    TWC lacks knowledge or information sufficient to form a belief as to the truth of the allegations made in paragraph 25 of the Counterclaim, and on that basis denies those allegations.

26.    TWC lacks knowledge or information sufficient to form a belief as to the truth of the allegations made in paragraph 26 of the Counterclaim, and on that basis denies those allegations.

27.    TWC lacks knowledge or information sufficient to form a belief as to the truth of the allegations made in paragraph 27 of the Counterclaim, and on that basis denies those allegations.

28.    TWC lacks knowledge or information sufficient to form a belief as to the truth of the allegations made in paragraph 28 of the Counterclaim, and on that basis denies those allegations.

29.    TWC lacks knowledge or information sufficient to form a belief as to the truth of the allegations made in paragraph 29 of the Counterclaim, and on that basis denies those allegations.

30.    TWC lacks knowledge or information sufficient to form a belief as to the truth of the allegations made in paragraph 30 of the Counterclaim, and on that basis denies those allegations.

31.    TWC lacks knowledge or information sufficient to form a belief as to the truth of the allegations made in paragraph 31 of the Counterclaim, and on that basis denies those allegations.

32.    TWC lacks knowledge or information sufficient to form a belief as to the truth of the allegations made in paragraph 32 of the Counterclaim, and on that basis denies those allegations.

33.    TWC lacks knowledge or information sufficient to form a belief as to the truth of the allegations made in paragraph 33 of the Counterclaim, and on that basis denies those

allegations.

34.     TWC lacks knowledge or information sufficient to form a belief as to the truth of the allegations made in paragraph 34 of the Counterclaim, and on that basis denies those allegations.

35.     TWC lacks knowledge or information sufficient to form a belief as to the truth of the allegations made in paragraph 35 of the Counterclaim, and on that basis denies those allegations.

36.     TWC lacks knowledge or information sufficient to form a belief as to the truth of the allegations made in paragraph 36 of the Counterclaim, and on that basis denies those allegations.

## JURISDICTION AND VENUE

37.     This paragraph does not require a response.

38.     Paragraph 38 of the Counterclaim sets forth legal conclusions for which no response is required.  To the extent paragraph 38 contains factual allegations to which a response is required, those allegations are denied.

39.     TWC denies that the Plaintiffs/Counter-Defendants have committed acts of patent infringement to the extent that such infringement would require infringement by TWC, because TWC has not infringed any patent asserted by Rembrandt in this action.  TWC lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 39 of the Counterclaim, and on that basis denies those allegations.

40.     TWC admits that this Court has personal jurisdiction over the TWC Counter-Defendants.  TWC denies that it has committed acts of patent infringement in this, or any, judicial district.  TWC lacks knowledge or information sufficient to form a belief as to the truth of the allegations made in paragraph 40 of the Counterclaim to the extent they do not relate to TWC, and on that basis denies those allegations.

41.     Paragraph 41 of the Counterclaim sets forth legal conclusions for which no response is required.  To the extent paragraph 41 contains factual allegations to which a response

is required, those allegations are denied.

## COUNT I

42.    TWC restates and realleges its responses to paragraphs 1-41 of the Counterclaim and incorporates them herein by reference.

43.    TWC lacks knowledge or information sufficient to form a belief as to the truth of the allegations made in paragraph 43 of the Counterclaim, and on that basis denies those allegations.

44.    TWC admits that U.S. Patent No. 4,937,819 (the "'819 patent") was issued by the United States Patent and Trademark Office ("the PTO") on June 26, 1990.  TWC denies the remaining allegations made in paragraph 44 of the Counterclaim.

45.    TWC admits that one or more TWC Counter-Defendants, either directly or indirectly through one or more subsidiaries, purchases and/or leases equipment from one or more Plaintiffs/Counter-Defendants for use in the operation of cable networks.  TWC denies the remaining allegations of paragraph 45 of the Counterclaim as they relate to TWC.  To the extent those remaining allegations do not relate to TWC, no responsive pleading is required or provided.

46.    TWC denies the allegations of paragraph 46 of the Counterclaim as they relate to TWC.  TWC denies that the Plaintiffs/Counter-Defendants have indirectly infringed the '819 patent, or are continuing to indirectly infringe the '819 patent, to the extent that allegation is based on alleged infringement by TWC.  TWC does not infringe and has not infringed the '819 patent in this district or anywhere else within the United States.  To the extent the allegations of paragraph 46 of the Counterclaim do not relate to TWC, no responsive pleading is required or provided.

47.    TWC denies the allegations of paragraph 47 of the Counterclaim as they relate to TWC.  TWC does not infringe and has not infringed the '819 patent in this district or anywhere else within the United States.  To the extent the allegations of paragraph 47 of the Counterclaim do not relate to TWC, no responsive pleading is required or provided.

48.    TWC denies the allegations of paragraph 48 of the Counterclaim as they relate to TWC. TWC does not infringe the '819 patent, and therefore will not "continue to infringe" the '819 patent. To the extent the allegations of paragraph 48 of the Counterclaim do not relate to TWC, no responsive pleading is required or provided.

## COUNT II

49.    TWC restates and realleges its responses to paragraphs 1-48 of the Counterclaim and incorporates them herein by reference.

50.    TWC lacks knowledge or information sufficient to form a belief as to the truth of the allegations made in paragraph 50 of the Counterclaim, and on that basis denies those allegations.

51.    TWC admits that U.S. Patent No. 5,008,903 (the "'903 patent") was issued by the PTO on April 16, 1991. TWC denies the remaining allegations made in paragraph 51 of the Counterclaim.

52.    TWC admits that one or more TWC Counter-Defendants, either directly or indirectly through one or more subsidiaries, purchases and/or leases equipment from one or more Plaintiffs/Counter-Defendants for use in the operation of cable networks. TWC denies the remaining allegations of paragraph 52 of the Counterclaim as they relate to TWC. To the extent those remaining allegations do not relate to TWC, no responsive pleading is required or provided.

53.    TWC denies the allegations of paragraph 53 of the Counterclaim as they relate to TWC. TWC denies that the Plaintiffs/Counter-Defendants have indirectly infringed the '903 patent, or are continuing to indirectly infringe the '903 patent, to the extent that allegation is based on alleged infringement by TWC. TWC does not infringe and has not infringed the '903 patent in this district or anywhere else within the United States. To the extent the allegations of paragraph 53 of the Counterclaim do not relate to TWC, no responsive pleading is required or provided.

54.    TWC denies the allegations of paragraph 54 of the Counterclaim as they relate to TWC. TWC does not infringe and has not infringed the '903 patent in this district or anywhere

else within the United States.  To the extent the allegations of paragraph 54 of the Counterclaim do not relate to TWC, no responsive pleading is required or provided.

55.    TWC denies the allegations of paragraph 55 of the Counterclaim as they relate to TWC.  TWC does not infringe the '903 patent, and therefore will not "continue to infringe" the '903 patent.  To the extent the allegations of paragraph 55 of the Counterclaim do not relate to TWC, no responsive pleading is required or provided.

## COUNT III

56.    TWC restates and realleges its responses to paragraphs 1-55 of the Counterclaim and incorporates them herein by reference.

57.    TWC lacks knowledge or information sufficient to form a belief as to the truth of the allegations made in paragraph 57 of the Counterclaim, and on that basis denies those allegations.

58.    TWC admits that U.S. Patent No. 5,710,761 (the "'761 patent," which is incorrectly identified as Patent No. 5,701,761 in paragraph 57 of the Counterclaim) was issued by the PTO on January 20, 1998.  TWC denies the remaining allegations made in paragraph 58 of the Counterclaim.

59.    TWC admits that one or more TWC Counter-Defendants, either directly or indirectly through one or more subsidiaries, purchases and/or leases equipment from one or more Plaintiffs/Counter-Defendants for use in the operation of cable networks.  TWC denies the remaining allegations of paragraph 59 of the Counterclaim as they relate to TWC.  To the extent those remaining allegations do not relate to TWC, no responsive pleading is required or provided.

60.    TWC denies the allegations of paragraph 60 of the Counterclaim as they relate to TWC.  TWC denies that the Plaintiffs/Counter-Defendants have directly or indirectly infringed the '761 patent, or are continuing to directly or indirectly infringe the '761 patent, to the extent that allegation is based on alleged infringement by TWC.  TWC does not infringe and has not infringed the '761 patent in this district or anywhere else within the United States.  To the extent the allegations of paragraph 60 of the Counterclaim do not relate to TWC, no responsive

pleading is required or provided.

61.     TWC denies the allegations of paragraph 61 of the Counterclaim as they relate to TWC.  TWC does not infringe and has not infringed the '761 patent in this district or anywhere else within the United States.  To the extent the allegations of paragraph 61 of the Counterclaim do not relate to TWC, no responsive pleading is required or provided.

62.     TWC denies the allegations of paragraph 62 of the Counterclaim as they relate to TWC.  TWC does not infringe the '761 patent, and therefore will not "continue to infringe" the '761 patent.  To the extent the allegations of paragraph 62 of the Counterclaim do not relate to TWC, no responsive pleading is required or provided.

63.     TWC denies the allegations of paragraph 63 of the Counterclaim as they relate to TWC.  TWC does not infringe and has not infringed the '761 patent.  To the extent the allegations of paragraph 63 of the Counterclaim do not relate to TWC, no responsive pleading is required or provided.

## COUNT IV

64.     TWC restates and realleges its responses to paragraphs 1-63 of the Counterclaim and incorporates them herein by reference.

65.     TWC lacks knowledge or information sufficient to form a belief as to the truth of the allegations made in paragraph 65 of the Counterclaim, and on that basis denies those allegations.

66.     TWC admits that U.S. Patent No. 5,719,858 (the "'858 patent") was issued by the PTO on February 17, 1998.  TWC denies the remaining allegations made in paragraph 66 of the Counterclaim.

67.      TWC admits that one or more TWC Counter-Defendants, either directly or indirectly through one or more subsidiaries, purchases and/or leases equipment from one or more Plaintiffs/Counter-Defendants for use in the operation of cable networks.  TWC denies the remaining allegations of paragraph 67 of the Counterclaim as they relate to TWC.  To the extent those remaining allegations do not relate to TWC, no responsive pleading is required or provided.

68.     TWC denies the allegations of paragraph 68 of the Counterclaim as they relate to TWC.  TWC denies that the Plaintiffs/Counter-Defendants have indirectly infringed the '858 patent, or are continuing to indirectly infringe the '858 patent, to the extent that allegation is based on alleged infringement by TWC.  TWC does not infringe and has not infringed the '858 patent in this district or anywhere else within the United States.  To the extent the allegations of paragraph 68 of the Counterclaim do not relate to TWC, no responsive pleading is required or provided.

69.     TWC denies the allegations of paragraph 69 of the Counterclaim as they relate to TWC.  TWC does not infringe and has not infringed the '858 patent in this district or anywhere else within the United States.  To the extent the allegations of paragraph 69 of the Counterclaim do not relate to TWC, no responsive pleading is required or provided.

70.     TWC denies the allegations of paragraph 70 of the Counterclaim as they relate to TWC.  TWC does not infringe the '858 patent, and therefore will not "continue to infringe" the '858 patent.  To the extent the allegations of paragraph 70 of the Counterclaim do not relate to TWC, no responsive pleading is required or provided.

## COUNT V

71.     TWC restates and realleges its responses to paragraphs 1-70 of the Counterclaim and incorporates them herein by reference.

72.     TWC lacks knowledge or information sufficient to form a belief as to the truth of the allegations made in paragraph 72 of the Counterclaim, and on that basis denies those allegations.

73.     TWC admits that U.S. Patent No. 5,778,234 (the "'234 patent") was issued by the PTO on July 7, 1998.  TWC denies the remaining allegations made in paragraph 73 of the Counterclaim.

74.      TWC admits that one or more TWC Counter-Defendants, either directly or indirectly through one or more subsidiaries, purchases and/or leases equipment from one or more Plaintiffs/Counter-Defendants for use in the operation of cable networks.  TWC denies the remaining allegations of paragraph 74 of the Counterclaim as they relate to TWC.  To the extent

those remaining allegations do not relate to TWC, no responsive pleading is required or provided.

75.    TWC denies the allegations of paragraph 75 of the Counterclaim as they relate to TWC. TWC denies that the Plaintiffs/Counter-Defendants have directly or indirectly infringed the '234 patent, or are continuing to directly or indirectly infringe the '234 patent, to the extent that allegation is based on alleged infringement by TWC. TWC does not infringe and has not infringed the '234 patent in this district or anywhere else within the United States. To the extent the allegations of paragraph 75 of the Counterclaim do not relate to TWC, no responsive pleading is required or provided.

76.    TWC denies the allegations of paragraph 76 of the Counterclaim as they relate to TWC. TWC does not infringe and has not infringed the '234 patent in this district or anywhere else within the United States. To the extent the allegations of paragraph 76 of the Counterclaim do not relate to TWC, no responsive pleading is required or provided.

77.    TWC denies the allegations of paragraph 77 of the Counterclaim as they relate to TWC. TWC does not infringe the '234 patent, and therefore will not "continue to infringe" the '234 patent. To the extent the allegations of paragraph 77 of the Counterclaim do not relate to TWC, no responsive pleading is required or provided.

78.    TWC denies the allegations of paragraph 78 of the Counterclaim as they relate to TWC. TWC does not infringe and has not infringed the '234 patent. To the extent the allegations of paragraph 78 of the Counterclaim do not relate to TWC, no responsive pleading is required or provided.

## COUNT VI

79.    TWC restates and realleges its responses to paragraphs 1-78 of the Counterclaim and incorporates them herein by reference.

80.    TWC lacks knowledge or information sufficient to form a belief as to the truth of the allegations made in paragraph 80 of the Counterclaim, and on that basis denies those allegations.

81.    TWC admits that U.S. Patent No. 5,852,631 (the "'631 patent") was issued by the

PTO on December 22, 1998. TWC denies the remaining allegations made in paragraph 81 of the Counterclaim.

82.    TWC admits that one or more TWC Counter-Defendants, either directly or indirectly through one or more subsidiaries, purchases and/or leases equipment from one or more Plaintiffs/Counter-Defendants for use in the operation of cable networks. TWC denies the remaining allegations of paragraph 82 of the Counterclaim as they relate to TWC. To the extent those remaining allegations do not relate to TWC, no responsive pleading is required or provided.

83.    TWC denies the allegations of paragraph 83 of the Counterclaim as they relate to TWC. TWC denies that the Plaintiffs/Counter-Defendants have indirectly infringed the '631 patent, or are continuing to indirectly infringe the '631 patent, to the extent that allegation is based on alleged infringement by TWC. TWC does not infringe and has not infringed the '631 patent in this district or anywhere else within the United States. To the extent the allegations of paragraph 83 of the Counterclaim do not relate to TWC, no responsive pleading is required or provided.

84.    TWC denies the allegations of paragraph 84 of the Counterclaim as they relate to TWC. TWC does not infringe and has not infringed the '631 patent in this district or anywhere else within the United States. To the extent the allegations of paragraph 84 of the Counterclaim do not relate to TWC, no responsive pleading is required or provided.

85.    TWC denies the allegations of paragraph 85 of the Counterclaim as they relate to TWC. TWC does not infringe the '631 patent, and therefore will not "continue to infringe" the '631 patent. To the extent the allegations of paragraph 85 of the Counterclaim do not relate to TWC, no responsive pleading is required or provided.

## COUNT VII

86.    TWC restates and realleges its responses to paragraphs 1-85 of the Counterclaim and incorporates them herein by reference.

87.    TWC lacks knowledge or information sufficient to form a belief as to the truth of the allegations made in paragraph 87 of the Counterclaim, and on that basis denies those

allegations.

88.     TWC admits that U.S. Patent No. 6,131,159 (the "'159 patent") was issued by the PTO on October 10, 2000.  TWC denies the remaining allegations made in paragraph 88 of the Counterclaim.

89.     TWC admits that one or more TWC Counter-Defendants, either directly or indirectly through one or more subsidiaries, purchases and/or leases equipment from one or more Plaintiffs/Counter-Defendants for use in the operation of cable networks.  TWC denies the remaining allegations of paragraph 89 of the Counterclaim as they relate to TWC.  To the extent those remaining allegations do not relate to TWC, no responsive pleading is required or provided.

90.     TWC denies the allegations of paragraph 90 of the Counterclaim as they relate to TWC.  TWC denies that the Plaintiffs/Counter-Defendants have directly or indirectly infringed the '159 patent, or are continuing to directly or indirectly infringe the '159 patent, to the extent that allegation is based on alleged infringement by TWC.  TWC does not infringe and has not infringed the '159 patent in this district or anywhere else within the United States.  To the extent the allegations of paragraph 90 of the Counterclaim do not relate to TWC, no responsive pleading is required or provided.

91.     TWC denies the allegations of paragraph 91 of the Counterclaim as they relate to TWC.  TWC does not infringe and has not infringed the '159 patent in this district or anywhere else within the United States.  To the extent the allegations of paragraph 91 of the Counterclaim do not relate to TWC, no responsive pleading is required or provided.

92.     TWC denies the allegations of paragraph 92 of the Counterclaim as they relate to TWC.  TWC does not infringe the '159 patent, and therefore will not "continue to infringe" the '159 patent.  To the extent the allegations of paragraph 92 of the Counterclaim do not relate to TWC, no responsive pleading is required or provided.

93.     TWC denies the allegations of paragraph 93 of the Counterclaim as they relate to TWC.  TWC does not infringe and has not infringed the '159 patent.  To the extent the allegations of paragraph 93 of the Counterclaim do not relate to TWC, no responsive pleading is

required or provided.

## COUNT VIII

94.    TWC restates and realleges its responses to paragraphs 1-93 of the Counterclaim and incorporates them herein by reference.

95.    TWC lacks knowledge or information sufficient to form a belief as to the truth of the allegations made in paragraph 95 of the Counterclaim, and on that basis denies those allegations.

96.    TWC admits that U.S. Patent No. 6,950,444 (the "'444" patent) was issued by the PTO on September 27, 2005. TWC denies the remaining allegations made in paragraph 96 of the Counterclaim.

97.    TWC admits that one or more TWC Counter-Defendants, either directly or indirectly through one or more subsidiaries, purchases and/or leases equipment from one or more Plaintiffs/Counter-Defendants for use in the operation of cable networks. TWC denies the remaining allegations of paragraph 97 of the Counterclaim as they relate to TWC. To the extent those remaining allegations do not relate to TWC, no responsive pleading is required or provided.

98.    TWC denies the allegations of paragraph 98 of the Counterclaim as they relate to TWC. TWC denies that the Plaintiffs/Counter-Defendants have directly or indirectly infringed the '444 patent, or are continuing to directly or indirectly infringe the '444 patent, to the extent that allegation is based on alleged infringement by TWC. TWC does not infringe and has not infringed the '444 patent in this district or anywhere else within the United States. To the extent the allegations of paragraph 98 of the Counterclaim do not relate to TWC, no responsive pleading is required or provided.

99.    TWC denies the allegations of paragraph 99 of the Counterclaim as they relate to TWC. TWC does not infringe and has not infringed the '444 patent in this district or anywhere else within the United States. To the extent the allegations of paragraph 99 of the Counterclaim do not relate to TWC, no responsive pleading is required or provided.

100.    TWC denies the allegations of paragraph 100 of the Counterclaim as they relate to

TWC.  TWC does not infringe the '444 patent, and therefore will not "continue to infringe" the '444 patent.  To the extent the allegations of paragraph 100 of the Counterclaim do not relate to TWC, no responsive pleading is required or provided.

      101.    TWC denies the allegations of paragraph 101 of the Counterclaim as they relate to TWC.  TWC does not infringe and has not infringed the '444 patent.  To the extent the allegations of paragraph 101 of the Counterclaim do not relate to TWC, no responsive pleading is required or provided.

## PRAYER FOR RELIEF

      TWC denies that Counter-Plaintiff Rembrandt is entitled to the relief it requests.  To the extent that Rembrandt's prayer for relief contains factual allegations relating to TWC, those allegations are denied.

## AFFIRMATIVE AND OTHER DEFENSES

      TWC sets forth the following affirmative and other defenses.  TWC does not intend hereby to assume the burden of proof with respect to those matters as to which, pursuant to law, Counter-Plaintiff Rembrandt bear the burden.

## FIRST DEFENSE

      102.    Each of the claims of the '819, '903, '761, '858, '234, '631, '159 and '444 patents is invalid for failure to satisfy the provisions of one or more of sections 101, 102, 103, and/or 112 of Title 35 of the United States Code.

## SECOND DEFENSE

      103.    TWC does not manufacture, use, offer for sale, sell, or import into the United States any product or method that infringes any claim of the '819, '903, '761, '858, '234, '631, '159, or '444 patents and it has not done so in the past.  TWC also does not contribute to or induce infringement of the '819, '903, '761, '858, '234, '631, '159, or '444 patents and it has not done so in the past.  TWC does not infringe, and has not in the past infringed, either directly or indirectly, the '819, '903, '761, '858, '234, '631, '159, or '444 patents.

### THIRD AFFIRMATIVE DEFENSE

104.    The Counterclaim's claims are barred by the doctrine of estoppel.


### FOURTH AFFIRMATIVE DEFENSE

105.    The Counterclaim's claims are barred by the doctrine of laches.


### COUNTERCLAIMS

### PARTIES

1.    Counterclaimant Time Warner Cable Inc. is a Delaware corporation having its corporate headquarters at One Time Warner Center, New York, New York 10019.

2.    Counterclaimant Time Warner Cable LLC is a Delaware limited liability company having its corporate headquarters at One Time Warner Center, New York, New York 10019.

3.    Counterclaimant Time Warner NY Cable LLC is a Delaware limited liability company having its corporate headquarters at One Time Warner Center, New York, New York 10019.

4.    Counterclaimant Time Warner Entertainment Company, L.P. is a Delaware limited partnership having its corporate headquarters at One Time Warner Center, New York, New York 10019.

5.    Counterclaimant Time Warner Entertainment-Advance/Newhouse Partnership is a New York partnership having its corporate headquarters at One Time Warner Center, New York, New York 10019.  Joinder of Time Warner Entertainment-Advance/Newhouse Partnership as a Counterclaim-Plaintiff in this action is proper under Federal Rules of Civil Procedure 13(h) and 20(a).

6.    Counterclaim Defendant Rembrandt Technologies, LP purports to be a limited partnership organized under the laws of the state of New Jersey with its principal place of business at 401 City Avenue, Suite 900, Bala Cynwyd, PA 19004.

7.    Counterclaim Defendant Rembrandt Technologies, LLC, d/b/a Remstream,

purports to be a Delaware LLC with it headquarters at 401 City Avenue, Suite 900, Bala Cynwyd, PA 19004.

## JURISDICTION AND VENUE

8.      These counterclaims seek a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

9.      This Court has jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1338 and 1367.

10.     Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400.

11.     A justifiable controversy exists between Time Warner Cable Inc., Time Warner Cable LLC, Time Warner NY Cable LLC, Time Warner Entertainment Company, L.P., and Time Warner Entertainment-Advance/Newhouse Partnership ("Counterclaimants" or "TWC Counterclaimants") and Counterclaim Defendants with respect to the invalidity and non-infringement of the claims of U.S. Patent Nos. 4,937,819 (the "'819 patent"), 5,008,903 (the "'903 patent"), 5,710,761 (the "'761 patent"), 5,719,858 (the "'858 patent"), 5,778,234 (the "'234 patent"), 5,852,631 (the "'631 patent"), 6,131,159 (the "'159 patent"), 6,950,444 (the "'444 patent"), and 5,243,627 (the "'627 patent").

## FIRST COUNTERCLAIM

12.     Counterclaimants hereby repeat and reiterate the allegations made in paragraphs 1-11 of these Counterclaims as if fully set forth herein.

13.     Each of the claims of the '819, '903, '761, '858, '234, '631, '159, '444 and '627 patents is invalid for failure to satisfy the provisions of one or more of sections 101, 102, 103, and/or 112 of Title 35 of the United States Code.

## SECOND COUNTERCLAIM

14.     Counterclaimants hereby repeat and reiterate the allegations made in paragraphs 1-13 of these Counterclaims as if fully set forth herein.

15.     Counterclaimants do not manufacture, use, offer for sale, sell, or import into the United States any product or method that infringes any claim of the '819, '903, '761, '858, '234, '631, '159, '444, or '627 patents and Counterclaimants have not done so in the past. Counterclaimants also do not contribute to or induce infringement of the '819, '903, '761, '858, '234, '631, '159, '444, or '627 patents and Counterclaimants have not done so in the past. Counterclaimants do not infringe, and have not in the past infringed, either directly or indirectly, the '819, '903, '761, '858, '234, '631, '159, '444, or '627 patents.

## PRAYER FOR RELIEF

WHEREFORE, the Counterclaimants pray that:

a)  The Court dismiss all of Rembrandt's claims against TWC with prejudice;

b)  The Court declare invalid each of the claims of the '819, '903, '761, '858, '234, '631, '159, '444, and '627 patents;

c)  The Court declare that Counterclaimants do not manufacture, use, offer for sale, sell, or import into the United States any product or method that infringes any of the claims of the '819, '903, '761, '858, '234, '631, '159, '444, or '627 patents and have not done so in the past, and that Counterclaimants therefore and otherwise do not directly infringe the '819, '903, '761, '858, '234, '631, '159, '444, or '627 patents and have not done so in the past;

d)  The Court declare that Counterclaimants do not contribute to or induce infringement of the '819, '903, '761, '858, '234, '631, '159, '444, or '627 patents and Counterclaimants have not done so in the past, and that Counterclaimants therefore and otherwise do not indirectly infringe the '819, '903, '761, '858, '234, '631, '159, '444, or '627 patents and have not done so in the past;

e)  Counterclaimants be awarded their costs in this action;

f)  Counterclaimants be awarded their attorneys fees pursuant to 35 U.S.C. § 285; and

g)  Counterclaimants be awarded such other and further relief as this Court deems is just and proper.

Respectfully submitted,


By:  */s/ David S. Benyacar*_____
     David S. Benyacar
     Daniel L. Reisner
     **Kaye Scholer LLP**
     425 Park Avenue
     New York, NY 10022-3598
     (212) 836-8000

     *Attorneys for Time Warner Cable Inc.,*
     *Time Warner Cable LLC, Time Warner*
     *New NY Cable LLC, Time Warner*
Dated:  February 7, 2008     *Entertainment Company, L.P., and Time*
     *Warner Entertainment-Advance/Newhouse*
     *Partnership*

TWC'S REPLY TO REMBRANDT'S COUNTERCLAIM FOR PATENT INFRINGEMENT
MDL Docket No. 07-md-1848 (GMS); Civil Action No. 07-752-GMS

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2008, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.

I further certify that I caused to be served copies of the foregoing document on February 7, 2008 upon the following in the manner indicated:

## VIA EMAIL

Collins J. Seitz, Jr., Esquire
Francis DiGiovanni, Esquire
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 North Orange Street
Wilmington, DE 19801
cseitz@cblh.com
fdigiovanni@cblh.com

John W. Shaw, Esquire
YOUNG CONAWAY STARGATT & TAYLOR LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
jshaw@ycst.com

David S. Benyacar, Esquire
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
dbenyacar@kayescholer.com

John M. DesMarais, Esquire
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, NY 10022-4611
Jdesmarais@kirkland.com

Eric R. Lamison, Esquire
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
elamison@kirkland.com

*/s/ Karen Jacobs Louden (#2881)*

_____
Karen Jacobs Louden (#2881)

EXHIBIT A

# United States Patent [19]

## Betts et al.

US005243627A

[11] **Patent Number:** 5,243,627

[45] **Date of Patent:** Sep. 7, 1993

[54] **SIGNAL POINT INTERLEAVING TECHNIQUE**

[75] Inventors: **William L. Betts**, St. Petersburg; **Edward S. Zuranski**, Largo, both of Fla.

[73] Assignee: **AT&T Bell Laboratories**, Murray Hill, N.J.

[21] Appl. No.: **748,594**

[22] Filed: **Aug. 22, 1991**

[51] Int. Cl.$^5$ ............................................. H04L 5/12
[52] U.S. Cl. ...................................... 375/39; 375/60; 375/99; 371/43
[58] Field of Search ...................... 375/39, 58, 60, 99; 371/43, 37.5, 2.1, 45; 341/81

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,988,677 | 10/1976 | Fletcher et al. | 371/45 X |
| 4,677,624 | 6/1987 | Betts et al. | 375/39 |
| 4,945,549 | 7/1990 | Simon et al. | 375/53 |
| 5,029,185 | 7/1991 | Wei | 375/39 X |

*Primary Examiner*—Curtis Kuntz
*Assistant Examiner*—Tesfaldet Bocure
*Attorney, Agent, or Firm*—Ronald D. Slusky; Gerard A. deBlasi

[57] **ABSTRACT**

Viterbi decoder performance in a data communication system using 2N-dimensional channel symbols N>1 can be further enhanced by an interleaving technique which uses a distributed trellis encoder in combination with a signal point interleaver.

**24 Claims, 4 Drawing Sheets**





*FIG. 1*

PRIOR ART



*FIG. 2*





*FIG. 3*



FIG. 4

www.freepatentsonline.com

*FIG. 5*

|   |   | 4D SYMBOL | 4D SYMBOL | 4D SYMBOL | 4D SYMBOL | 4D SYMBOL | 4D SYMBOL |
|---|---|---|---|---|---|---|---|
| I | NOT INTERLEAVED ONE TRELLIS STAGE | $x_0^\alpha$ $x_1^\alpha$ | $x_2^\alpha$ $x_3^\alpha$ | $x_4^\alpha$ $x_5^\alpha$ | $x_6^\alpha$ $x_7^\alpha$ | $x_8^\alpha$ $x_9^\alpha$ | $x_{10}^\alpha$ ... |
| II | NOT INTERLEAVED THREE TRELLIS STAGES | $x_0^\alpha$ $x_1^\alpha$ | $x_2^\beta$ $x_3^\beta$ | $x_4^\gamma$ $x_5^\gamma$ | $x_6^\alpha$ $x_7^\alpha$ | $x_8^\beta$ $x_9^\beta$ | $x_{10}^\gamma$ ... |
| III | INTERLEAVED ONE TRELLIS STAGE | $x_0^\alpha$ $x_{-1}^\alpha$ | $x_2^\alpha$ $x_1^\alpha$ | $x_4^\alpha$ $x_3^\alpha$ | $x_6^\alpha$ $x_5^\alpha$ | $x_8^\alpha$ $x_7^\alpha$ | $x_{10}^\alpha$ ... |
| IV | INTERLEAVED TWO TRELLIS STAGES | $x_0^\alpha$ $x_{-1}^\beta$ | $x_2^\beta$ $x_1^\alpha$ | $x_4^\alpha$ $x_3^\beta$ | $x_6^\beta$ $x_5^\alpha$ | $x_8^\alpha$ $x_7^\beta$ | $x_{10}^\beta$ ... |
| V | INTERLEAVED THREE TRELLIS STAGES | $x_0^\alpha$ $x_{-1}^\gamma$ | $x_2^\beta$ $x_1^\alpha$ | $x_4^\gamma$ $x_3^\beta$ | $x_6^\alpha$ $x_5^\gamma$ | $x_8^\beta$ $x_7^\alpha$ | $x_{10}^\gamma$ ... |

*FIG. 6*



*FIG. 7*



www.freepatentsonline.com

5,243,627

1

## SIGNAL POINT INTERLEAVING TECHNIQUE

### BACKGROUND OF THE INVENTION

The present invention relates to the transmission of digital data over band-limited channels.

Over the years, the requirements of modern-day digital data transmission over band-limited channels—such as voiceband telephone channels—have resulted in a push for higher and higher bit rates. This push has led to the development and introduction of such innovations as adaptive equalization, multi-dimensional signal constellations, echo cancellation (for two-wire applications), and trellis coding. Today, the data rates achieved using these and other techniques are beginning to approach the theoretical limits of the channel.

It has been found that various channel impairments, whose effects on the achievable bit rate were relatively minor compared to, say, additive white Gaussian noise and linear distortion, have now become of greater concern. These include such impairments as nonlinear distortion and residual (i.e., uncompensated-for) phase jitter. Such impairments are particularly irksome in systems which use trellis coding. Indeed, it has been found that the theoretical improvement in Gaussian noise immunity promised by at least some trellis codes is not realized in real-world applications where these impairments are manifest. The principal reason this is so appears to be that the noise components introduced into the received signal samples are such as to worsen the effectiveness of the Viterbi decoder used in the receiver to recover the transmitted data.

U.S. Pat. No. 4,677,625, issued Jun. 30, 1987 to Betts et al, teaches a method and arrangement in which, through the use of a distributed trellis encoder/Viterbi decoder, the effects of many of these impairments can be reduced. The invention in the Betts et al patent recognizes that a part of the reason that the performance of the Viterbi decoder is degraded by these impairments is the fact that the noise components of channel symbols which closely follow one another in the transmission channel are highly correlated for many types of impairments. And it is that correlation which worsens the effect that these impairments have on the Viterbi decoder. Among the impairments whose noise is correlated in this way are impulse noise, phase "hits" and gain "hits." All of these typically extend over a number of adjacent channel symbols in the channel, and thus all result in channel symbol noise components which are highly correlated. The well-known noise enhancement characteristics of linear equalizers also induce correlated noise in adjacent channel symbols, as does uncompensated-for phase jitter. Also, the occurrence of one of the relatively high power points of the signal constellation can, in pulse code modulation (PCM) systems, for example, give rise to noise on adjacent channel symbols which, again, is correlated.

The Betts et al patent addresses this issue by distributing the outgoing data to a plurality of trellis encoders in round-robin fashion and interleaving the trellis encoder outputs on the transmission channel. In the receiver, the stream of received interleaved channel symbols is correspondingly distributed to a plurality of trellis decoders. Since the successive pairs of channel symbols applied to a particular trellis decoder are separated from one another as they traverse the channel, the correlation of the noise components of these channel symbol

2

pairs is reduced from what it would have otherwise been.

### SUMMARY OF THE INVENTION

In accordance with the present invention, it has been realized that the Viterbi decoder performance in a data communication system using 2N-dimensional channel symbols can be further enhanced by an interleaving technique which uses, in combination, a) the aforementioned distributed trellis encoder/Viterbi decoder technique and b) a signal point interleaving technique which causes the constituent signal points of the channel symbols to be non-adjacent as they traverse the channel.

In preferred embodiments of the invention, the interleaving is carried out in such a way that every $N^{th}$ signal point in the signal point stream traversing the channel is the $N^{th}$ signal point of a respective one of the channel symbols. This criterion enhances the accuracy with which the phase tracking loop in the receiver performs its function.

Also in preferred embodiments, we have found that the use of three parallel trellis encoders in conjunction with a signal point interleaving regime in which the signal points of each channel symbol are separated from one another by three signaling intervals (bauds) provides an optimum or near-optimum tradeoff between signal point/channel symbol separation and the decoding delay that is caused by the interleaving.

### BRIEF DESCRIPTION OF THE DRAWING

In the drawing,

FIG. 1 is a block diagram of the transmitter section of a prior art modem;

FIG. 2 is shows a signal constellation used by the transmitter of FIG. 1;

FIG. 3 is a block diagram of the transmitter section of a modem employing four-dimensional channel symbols and embodying the principles of the invention;

FIG. 4 is a block diagram of the receiver section of a modem embodying the principles of the invention which processes the received four-dimensional channel symbols generated by the transmitter of FIG. 3;

FIG. 5 is a signal point timing/sequencing chart helpful in explaining the principles of the present invention;

FIG. 6 is a signal point interleaver which can be used in the transmitter of FIG. 3 to interleave the signal points of eight-dimensional channel symbols; and

FIG. 7 is a signal point deinterleaver which can be used in the receiver of FIG. 4 to deinterleave the signal points of eight-dimensional channel symbols.

### DETAILED DESCRIPTION

FIG. 1 depicts the transmitter section of a prior art modem employing a 2N-dimensional signaling scheme, $N \geq 1$. The modem receives input information in the form of a serial bit stream from data terminal equipment (DTE) 111—illustratively a host computer. That bit stream is then scrambled, or randomized, by randomizer 113 whose output bits are provided in serial form to serial-to-parallel (S/P) converter 115.

Serial-to-parallel converter 115, in turn, provides, during each of a succession of symbol intervals (comprised of N baud intervals), some predetermined number of parallel bits on lead 109 and some number of parallel bits on lead 108. (It will be appreciated that whenever bits are provided in parallel in the modem, separate leads are required to carry each of the bits.) The bits on lead 109 are applied to trellis encoder 119α,

3

and are referred to as the "trellis bits." The bits on lead 108 are applied to modulus converter 116, and are referred to as the "uncoded bits."

To better understand how trellis encoder 119α and modulus converter 116 work, reference is made to FIG. 2, which shows the two-dimensional signal constellation that forms the basis of the 2N-dimensional signaling scheme illustratively used by the modem. This constellation is comprised of 32 signal points, which are divided into four subsets, A through D, each comprised of eight signal points. The eight points of subset A are explicitly labeled as $A_0$ through $A_7$. It may be noted that subsets C, B and D can be arrived at by clockwise rotation of subset A by 90, 180 and 270 degrees, respectively. (Conventional differential encoding circuitry within trellis encoder 119α exploits this symmetry.) For reference, a single signal point of each of those subsets is also shown on FIG. 2.

Consider, first, the case of N=1, i.e., a two-dimensional signaling scheme. In this case, one trellis bit on lead 109 would be expanded to two bits by trellis encoder 119α on lead 121. The four possible values of those three bits 00, 01, 10, and 11 identify subsets A, B, C and D, respectively. The successive 2-bit words on lead 121 are represented as $a_n$, n=0,1,2. . . , where n is an index that advances at the baud rate. At the same time, three parallel bits would be provided on lead 108. These are converted by modulus converter 116 into an index having a value within the range (decimal) 0 to 7. The index value, represented in binary form on lead 117, selects a particular signal point from the subset identified on lead 121. Thus if lead 121 carries the two bits 00 while lead 117 carries the three bits 001, then signal point $A_1$ of the FIG. 2 constellation has been selected. The words on leads 117 and 121 are applied to QAM encoder 124 which generates, on lead 125, values representing the I (in-phase) and Q (quadrature-phase) components of signal point $A_1$. The signal point generated on lead 125 in the $n^{th}$ baud interval is denoted $X_n^{\alpha}$, which is passed on to modulator 128 to generate a passband line signal which is applied to the communication channel. The superscript, α, indicates that the trellis encoder that was used to identify the subset for any particular signal point was trellis encoder 119α. That is, of course, a trivial notation as far as FIG. 1 goes inasmuch as trellis encoder 119α is the only trellis encoder in the modem. However, it is useful to introduce this notation because more than one trellis encoder stage is used in preferred embodiments of modems incorporating the principles of the present invention as shown in later FIGS.

In the case of N>1, the operation is similar. Now, however, the words on lead 109 are used by trellis encoder 119α to sequentially identify on lead 121N subsets, while the words on lead 108 are used to generate N corresponding index values on lead 117. The N signal points identified in this way are the component signal points of a 2N-dimensional channel symbol, the first such symbol being comprised of the signal points $X_0^{\alpha}$, . . $X_{(N-1)}^{\alpha}$. For example, a modem in which the transmitter of FIG. 1 could be used may be a 14,400 bit per second modem using four-dimensional coding (i.e., N=2) and a baud rate of 3200. In this case, nine bits from S/P converter 115 are used for each four-dimensional symbol. Specifically, three parallel bits on lead 109 are expanded into four bits on lead 121 to identify a pair of subsets while six bits on lead 108 are used to select particular signal points from those two subsets.

4

Those two signal points are thereupon communicated over the channel by QAM encoder 124 and modulator 128 as described above.

Note that, implementationally, the 2N-dimensional channel symbol is generated by having the trellis encoder identify, interdependently, N subsets of the two-dimensional constellation of FIG. 2, then select a two-dimensional signal point from each of the subsets thus identified. The concatenation of the N two-dimensional signal points thus selected is the desired 2N-dimensional channel symbol. This process, however, can be understood as involving the direct selection of a 2N-dimensional channel symbol. Viewed in this context, the set of all possible combinations of N of the two-dimensional subsets identified by N successive trellis encoder outputs can be understood to be a set of 2N-dimensional subsets of a 2N-dimensional constellation, the latter being comprised of all possible combinations of N of the signal points of the two-dimensional constellation. A succession of N outputs from the trellis encoder identifies a particular one of the 2N-dimensional subsets and a succession of N outputs from the modulus converter selects a particular 2N-dimensional signal point from the identified 2N-dimensional subset.

Modulus converter 116 is illustratively of the type disclosed in co-pending, commonly-assigned U.S. patent application Ser. No. 588,658 filed Sep. 26, 1990 and allowed on May 21, 1991, hereby incorporated by reference. Modulus converter 116 provides the modem with the ability to support data transmission at various different bit rates. Assume, for example, that the rate at which bits are provided by DTE 111 decreases. The serial-to-parallel converter will continue to provide its outputs on leads 108 and 109 at the same baud rate as before. However, the upper limit of the range of index values that are provided by modulus converter 116 on lead 117 will be reduced, so that, effectively, each of the four subsets A through D, instead of having eight signal points, will have some smaller number. Conversely if the rate at which bits are provided by DTE 111 should increase over that originally assumed, the upper limit of the range of index values, and thus the number of parallel bits, that appear on lead 117 will be increased beyond eight and the constellation itself will be expanded to accommodate the larger number of signal points thus being selected. As an alternative to using a modulus converter, fractional bit rates can be supported using, for example, the technique disclosed in L. Wei, "Trellis-Coded Modulation with Multidimensional Constellations," *IEEE Trans. on Communication Theory*, Vol. IT-33, No. 4, July 1987, pp. 483–501.

Turning now to FIG. 3, the transmitter portion of a modem embodying the principles of the invention is shown. This embodiment illustratively uses the aforementioned four-dimensional, i.e., N=2, signaling scheme. Many of the components are similar to those shown in FIG. 1. Thus, in particular, the transmitter of FIG. 3—which receives its input information in the form of a stream of input bits from DTE 311—includes randomizer 313, which supplies its output, on lead 314, to S/P converter 315. The latter outputs uncoded bits to modulus converter 316. The transmitter further includes four-dimensional QAM encoder 324 and modulator 328. The trellis bits, on lead 309, are provided not to a standard single trellis encoder, but to a distributed trellis encoder comprised of three trellis encoder stages: trellis encoder stage 319α, trellis encoder stage 319β, and trellis encoder stage 319γ.

www.freepatentsonline.com

5,243,627

5

Such a distributed trellis encoder, which is described in the aforementioned Betts et al patent, generates a plurality of streams of trellis encoded channel symbols in response to respective portions of the input information. Specifically, a three-bit word on lead 309 is supplied to trellis encoder stage 319α. The next three-bit word on lead 309 is supplied to trellis encoder stage 319β. The next three-bit word is supplied to trellis encoder stage 319γ, and then back to trellis encoder stage 319α. This distribution of the trellis bits to the various trellis encoder stages is performed by switching circuit 331 operating under the control of symbol clock 325. The initial data word outputs of the trellis encoders are subset identifiers α₀ and α₁ for encoder stage 319α, β₂ and β₃ for encoder stage 319β, and γ₄ and γ₅ for encoder stage 319γ, followed by α₆ and α₇ for encoder stage 319α, and so forth. These are supplied to four-dimensional QAM encoder 324 by switching circuit 337—also operating under the control of symbol clock 325—on lead 338 through a one-symbol delay 364 and lead 363, in order to compensate for a one-symbol delay caused by modulus converter 316. Thus, the stream of subset identifiers on lead 338 is α₀, α₁, β₂, β₃, γ₄, γ₅, α₆ . . . . Using the notation introduced above, then, the output of encoder 324 on lead 325 is the stream of signal points X₀α, X₁α, X₂β, X₃β, X₄γ, X₅γ, X₆α . . . , which is comprised of these interleaved streams of trellis encoded channel symbols, these streams being X₀α, X₁α, X₆α, X₇α, X₁₂α . . . ; X₂β, X₃β, X₈β, X₉β, X₁₄β . . . ; and X₄γ, X₅γ, X₁₀γ, X₁₁γ, X₁₆γ . . . . These, in turn, are supplied, in accordance with the invention, to signal point interleaver 341 which applies alternate ones of the signal points applied thereto to lead 3412—which signal points appear immediately at the interleaver output on lead 342—and to one-symbol ($Z^{-1}$) delay element 3411, which appear on lead 342 after being delayed therein by one symbol interval. The resulting interleaved stream of trellis encoded signal points is X₀α, X₋₁γ, X₂β, X₁α, X₄γ, X₃β, X₆α, X₅γ, X₈β, X₇α, X₁₀γ, X₉β . . . (the signal point X₋₁γ being, of course, the signal point applied to interleaver 341 just ahead of signal point X₀α).

A discussion and explanation of how the interleaving just described is advantageous is set forth hereinbelow. In order to fully set the stage for that explanation, however, it will be first useful to consider the receiver section of a modem which receives the interleaved signal point stream.

Thus referring to FIG. 4, the line signal transmitted by the transmitter of FIG. 3 is received from the channel and applied to demodulator/equalizer 456 which, in conventional fashion—including an input from phase tracking loop 457—generates a stream of outputs on lead 456 representing the demodulator/equalizer's best approximation of the values of the I and Q components of the signal points of the transmitted interleaved signal point stream. These outputs are referred to herein as the "received signal points." (Due to distortion and other channel impairments that the demodulator/equalizer is not able to compensate for, the I and Q components of the received signal points, instead of having exact integer values, can have any value. Thus a transmitted signal point having coordinates (3, −5) may be output by the demodulator/equalizer as the received signal point (2.945, −5.001).) The stream of received signal points on lead 456 is denoted X̄₀α, X̄₋₁γ, X̄₂β, X̄₁α, X̄₄γ, X̄₃β, X̄₆α, X̄₅γ, X̄₈β, X̄₇α, X̄₁₀γ, X̄₉β . . . .

The successive received signal points are deinterleaved in signal point deinterleaver 441, which provides

6

the opposite function to interleaver 341 in the transmitter. The output of deinterleaver 441 on lead 442 is thus X̄₀α, X̄₁α, X̄₂β, X̄₃β, X̄₄γ, X̄₅γ, X̄₆α, . . . , etc. (Although not explicitly shown in the drawing, the same well-known techniques used in modems of this general kind to identify within the stream of received signal points the boundaries between successive symbols is used to synchronize the operation of signal point deinterleaver 441 to ensure that received signal points X̄₀α, X̄₂β, X̄₄γ . . . are applied to delay element 4411 while received signal points X̄₁α, X̄₃β, X̄₅γ . . . are applied to lead 4412.)

The received signal points on lead 442 are then distributed by switching circuit 431 under the control of symbol clock 425 to a distributed Viterbi decoder comprised of 4D Viterbi decoder stages 419α, 419β and 419γ. Specifically, received signal points X̄₀α and X̄₁α are applied to decoder stage 419α; received signal points X̄₂β and X̄₃β are applied to decoder stage 419β; and received signal points X̄₄γ and X̄₅γ are applied to decoder stage 419γ. The outputs of the three decoder stages are then combined into a serial stream on lead 438 by switching circuit 437, also operating under the control of symbol clock 425. Those outputs, representing decisions as to the values of the transmitted signal points, are denoted X̄₀, X̄₁, X̄₂, X̄₃, X̄₄, X̄₅, X̄₆, . . . , the α, β and γ superscripts no longer being needed.

In conventional fashion, the bits that represent each of the decisions on lead 438 can be divided into bits that represent a) the trellis bits that appeared on transmitter lead 309 and b) the index values that appeared on transmitter lead 317. Those two groups of bits are provided in the receiver on leads 461 and 462, respectively. The latter group of bits are deconverted by modulus deconverter 416 (also disclosed in the aforementioned '658 patent application) back to uncoded bit values on lead 414. The operation of the modulus deconverter imparts a one-symbol delay to the bits on lead 414. Accordingly, the bits on lead 461 are caused to be delayed by one symbol by delay element 464. The resulting combined bits on lead 415 thus represent the stream of bits that appeared at the output of randomizer 313 in the transmitter. These are derandomized in the receiver by derandomizer 413 and the resulting derandomized bit stream is applied to DTE 411 which may be, for example, a computer terminal.

Referring to FIG. 5, one can see the improvement that is achieved by the present invention.

Line I shows the stream of output signal points generated and launched into the channel using one stage of trellis encoding and no signal point interleaving. This is, of course, the prior art arrangement shown in FIG. 1. Line II shows the effect of providing a three-stage distributed trellis encoder but still no signal point interleaving. This is the arrangement shown in the aforementioned Betts et al patent. Note that the signal points of each channel symbol operated on by a particular trellis encoder stage are adjacent in the output signal point stream. For example, the second signal point of the symbol X₀α X₁α—namely signal point X₁α—is separated by five baud intervals from the first (closer) signal point of the symbol X₆α X₇α—namely signal point X₆α. As noted earlier, such separation is advantageous because the channel symbols which are processed one after the other in a particular Viterbi decoder stage have noise components which are not highly correlated.

Note, however, that the individual signal points of each channel symbol, e.g., X₀α and X₁α, are adjacent to

www.freepatentsonline.com

7

one another as they pass through the channel; and since all the signal points of a channel symbol must be processed serially in the same Viterbi decoder stage, this means that the Viterbi decoder must process adjacent signal points that have highly correlated noise components.

It is to this end that signal point interleaver 341 is included within the transmitter in accordance with the invention. Firstly, it may be noted from Line III that using the signal point interleaver without the distributed trellis encoder—an arrangement not depicted in the drawing—will, advantageously, cause the signal points from the same channel symbol to be non-adjacent. Moreover, there is further advantage in that a pair of channel symbols processed serially by Viterbi decoder stage $419\alpha$ traverses the channel separated by five baud intervals rather than three, thereby providing greater decorrelation of the noise components thereof. Compare, for example, the span of baud intervals occupied by signal points $X_0{}^\alpha$ and $X_1{}^\alpha$, $X_2{}^\alpha$ and $X_3{}^\alpha$ in Line I and the span of baud intervals occupied by the same signal points in Line III. Disadvantageously, however, the use of a single trellis encoding stage brings back the problem that the distributed trellis encoder solves, as described above. Thus, for example, although signal points $X_0{}^\alpha$ and $X_1{}^\alpha$, which are from the same channel symbol, are separated from one another when traversing the channel, we find that, disadvantageously, signal points $X_2{}^\alpha$ and $X_1{}^\alpha$, which are signal points from two different channel symbols which will be processed serially by the Viterbi decoder, traverse the channel adjacent to one another.

Line IV shows that using the signal point interleaver with a two-stage trellis encoder—also an arrangement not depicted in the drawing—provides some improvement. Firstly, it may be noted that, as in Line III, signal points from the same channel symbol remain separated by three baud intervals. Additionally, pairs of channel symbols processed sequentially by a given Viterbi decoder stage—such as the channel symbols comprised of signal points $X_0{}^\alpha$ and $X_1{}^\alpha$, $X_4{}^\alpha$ and $X_5{}^\alpha$—are still non-adjacent and, indeed, are now separated by seven baud intervals, which is even greater than the separation of five baud intervals provided in Line III. Moreover, certain signal points that traverse the channel adjacent to one another and which are from channel symbols which would have been decoded sequentially in the one-trellis-encoding-stage case are, in the two-trellis-encoding-stage case of Line IV, processed by different Viterbi decoding stages. Signal points $X_2{}^\beta$ and $X_1{}^\alpha$ are such a pair of signal points. Note, however, that, disadvantageously, signal points $X_1{}^\alpha$ and $X_4{}^\alpha$ traverse the channel serially, and are from channel symbols which are serially processed by the "$\alpha$" Viterbi decoder stage.

Referring, however, to Line V, which depicts the stream of signal points output by the transmitter of FIG. 3, it will be seen that, in accordance with the invention, there is still a non-adjacency—indeed, a separation of at least three baud intervals—between a) the signal points which belong to any particular channel symbol (and which, therefore, are processed serially by a particular Viterbi decoder stage) and b) the signal points which belong to channel symbols which are processed serially by a Viterbi decoder stage. Thus, for example, signal points $X_1{}^\alpha$ and $X_4{}^\gamma$ are now processed by different Viterbi decoder stages. Moreover, pairs of channel symbols processed sequentially by a given Viterbi decoder stage—such as the channel symbols comprised of

8

signal points $X_0{}^\alpha$ and $X_1{}^\alpha$, $X_6{}^\alpha$ and $X_7{}^\alpha$—are now separated by none baud intervals.

Using more than three trellis encoder stages in the distributed trellis encoder and/or a signal point interleaver that separates signal points from the same channel symbol by more than three baud intervals would provide even greater separation and could, therefore, potentially provide even greater improvement in Viterbi decoding. However, such improvement comes at a price—that price being increased decoding delay—particularly as the number of trellis encoders is increased beyond three. An engineering trade-off can be made, as suits any particular application.

Moreover, it is desirable for the signal point interleaver to provide a sequence in which every $N^{th}$ signal point in the interleaved signal point stream is the $N^{th}$ signal point of a channel symbol. (The reason this is desirable is described in detail hereinbelow.) In the case of an $N=2$, four-dimensional signaling scheme, this means that every second, that is "every other," signal point in the interleaved stream is the second signal point of the channel symbol from which it comes. In the case of an $N=4$, eight-dimensional signaling scheme, this means that every fourth signal point in the interleaved stream is the fourth signal point of the channel symbol from which it comes. Indeed, this criterion is in fact satisfied in the embodiment of FIG. 3. Note that each one of signal points $X_0{}^\alpha$, $X_2{}^\beta$, $X_4{}^\gamma$, $X_6{}^\alpha$, . . . , which appear as every other signal point in the interleaved stream, is the second signal point of one of the four-dimensional channel symbols. Note that not all rearrangements of the signal points will, in fact, satisfy this criterion, such as, if the two signal points of a channel symbol are separated by two, rather than three, baud intervals.

Satisfying the above criterion is advantageous because it enhances the accuracy with which phase tracking loop 457 performs its function. This is so because the arrival of an $N^{th}$ signal point of a given symbol means that all the signal points comprising that channel symbol have arrived. This, in turn, makes it possible to form a decision as to the identity of that channel symbol by using the minimum accumulated path metric in the Viterbi decoder stages. (Those decisions are fed back to the tracking loop by decoder stages $419\alpha$, $419\beta$ $419\gamma$ on leads 494, 495 and 496, respectively, via switching circuit 456.) Without having received all of the signal points of a channel symbol, one cannot take advantage of the accumulated path metric information but, rather, must rely on the so-called raw sliced values, which is less accurate. By having every $N^{th}$ signal point in the interleaved stream be the $N^{th}$ signal point of a channel symbol, we are guaranteed that the time between adjacent such path metric "decisions" supplied to the phase tracking loop is, advantageously, never more than N baud intervals.

The foregoing merely illustrates the principles of the invention. Thus although the illustrative embodiment utilizes a four-dimensional signaling scheme, the invention can be used with signaling schemes of any dimensionality. In the general, 2N-dimensional, case each stage of the distributed trellis encoder would provide N two-dimensional subset identifiers to switching circuit 337 before the next move arrives on to the next stage. And, of course, each stage of the distributed Viterbi decoder would receive N successive received signal points. The distributed trellis encoder and distributed Viterbi decoder can, however, continue to include three trellis

5,243,627

9

encoders and still maintain, independent of the value of N, a separation of three baud intervals in the channel between signal points that are from channel symbols that are adjacent in the trellis encoder. If a greater separation of such signal points is desired, more stages can be added to the distributed trellis encoder/Viterbi decoder, just as was noted above for the four-dimensional case. However, when dealing with 2N-dimensional signaling where N>2, it is necessary to add additional delay elements to the signal point interleaver/deinterleaver in order to maintain a three-baud-interval separation among the signal points from any given channel symbol.

Consider, for example, the case of N=4, i.e., an eight-dimensional case. Looking again at FIG. 3, the three (8D) stages of the distributed trellis encoder would generate the three streams of subset identifiers $\alpha_0\, \alpha_1\, \alpha_2\, \alpha_3\, \alpha_{12}\ldots$, $\beta_4\, \beta_5\, \beta_6\, \beta_7\, \beta_{16}\ldots$, and $\gamma_8\, \gamma_9\, \gamma_{10}\, \gamma_{11}\, \gamma_{20}\ldots$, respectively. This would lead to the following stream of signal points of eight-dimensional trellis encoded channel symbols at the output of the QAM encoder on lead 325: $X_0^\alpha\, X_1^\alpha\, X_2^\alpha\, X_3^\alpha\, X_4^\beta\, X_5^\beta\, X_6^\beta\, X_7^\beta\, X_8^\gamma\, X_9^\gamma\, X_{10}^\gamma\, X_{11}^\gamma\, X_{12}^\alpha\ldots$. Signal point interleaving could be carried out by substituting signal point interleaver 641 of FIG. 6 for interleaver 341. Interleaver 641, in addition to direct connection 6414, includes one-, two-, and three-symbol delay elements 6413, 6412 and 6411, respectively.

The signal points on lead 325, after passing through interleaver 641, would appear on lead 342 in the following order: $X_0^\alpha\, X_{-3}^\gamma\, X_{-6}^\beta\, X_{-9}^\alpha\, X_4^\beta\, X_1^\alpha\, X_{-2}^\gamma\, X_{-5}^\beta\, X_8^\gamma\, X_5^\beta\, X_2^\alpha\, X_{-1}^\gamma\, X_{12}^\alpha\, X_9^\gamma\, X_6^\beta\, X_3^\alpha\, X_{16}^\beta\, X_{13}^\alpha\, X_{10}^\gamma\, X_7^\beta\ldots$ where signal points with negative subscripts are, of course, signal points that arrived before signal point $X_0^\alpha$ and were already stored in the delay elements 6411, 6412 and 6413. Examination of this signal point stream will reveal that there is either a three- or five-baud separation between signal points of channel symbols that are processed sequentially by the same trellis encoder stage, e.g., $X_3^\alpha$ and $X_{12}^\alpha$; that adjacent signal points of any one channel symbol, e.g., $X_0^\alpha$ and $X_1^\alpha$, are separated by five baud intervals; and that the four signal points comprising any particular one channel symbol are separated by fifteen baud intervals.

FIG. 7 shows the structure of a deinterleaver 741 that could be used in the receiver of FIG. 4 in place of deinterleaver 441 in order to restore the signal points of the eight-dimensional channel symbols to their original order. This structure, which is the inverse of interleaver 641, includes delay stages 7411, 7412 and 7413, as well as direct connection 7414.

It will be appreciated that, although various components of the modem transmitter and receiver are disclosed herein for pedagogic clarity as discrete functional elements and indeed—in the case of the various switching circuits—as mechanical elements, those skilled in the art will recognize that the function of any one or more of those elements could be implemented with any appropriate available technology, including one or more appropriately programmed processors, digital signal processing (DSP) chips, etc. For example, multiple trellis encoders and decoders can be realized using a single program routine which, through the mechanism of indirect addressing of multiple arrays within memory, serves to provide the function of each of the multiple devices.

It will thus be appreciated that those skilled in the art will be able to devise numerous arrangements which,

10

although not explicitly shown or described herein, embody the principles of the invention and are within its spirit and scope.

We claim:

1. Apparatus for forming a stream of trellis encoded signal points in response to input information, said apparatus comprising

means for generating a plurality of streams of trellis encoded channel symbols in response to respective portions of said input information, each of said channel symbols being comprised of a plurality of signal points, and

means for interleaving the signal points of said generated channel symbols to form said stream of trellis encoded signal points, said interleaving being carried out in such a way that the signal points of each channel symbol are non-adjacent in said stream of trellis encoded signal points and such that the signal points of adjacent symbols in any one of said channel symbol streams are non-adjacent in said stream of trellis encoded signal points.

2. The apparatus of claim 1 wherein said means for generating generates three of said streams of trellis encoded channel symbols, and wherein said means for interleaving causes there to be interleaved between each of the signal points of each channel symbol at least two signal points from other channel symbols of said streams of trellis encoded channel symbols.

3. The apparatus of claim 1 wherein said channel symbols are 2N-dimensional channel symbols, N>1, and wherein said means for interleaving causes every $N^{th}$ signal point in said interleaved signal point stream to be the $N^{th}$ signal point of a respective one of said channel symbols.

4. The apparatus of claim 2 wherein said channel symbols are 2N-dimensional channel symbols, N>1, and wherein said means for interleaving causes every $N^{th}$ signal point in said interleaved signal point stream to be the $N^{th}$ signal point of a respective one of said channel symbols.

5. A modem comprising

means for receiving a stream of input bits,

means for dividing said stream of input bits into a stream of uncoded bits and a plurality of streams of trellis bits,

means for independently trellis encoding each of said plurality of streams of trellis bits to generate respective streams of data words each identifying one one of a plurality of predetermined subsets of the channel symbols of a predetermined 2N-dimensional constellation, N being an integer greater than unity, each of said channel symbols being comprised of a plurality of signal points,

means for selecting an individual channel symbol from each identified subset in response to said stream of uncoded bits to form a stream of channel symbols, and

means for generating a stream of output signal points, said signal point stream being comprised of the signal points of the selected channel symbols, the signal points of said signal point stream being sequenced in such a way that signal points that are either a) part of the same channel symbol, or b) part of channel symbols that are adjacent to one another in said channel symbol stream, are separated in said output stream by at least one other signal point.

6. The apparatus of claim 5 wherein said trellis encoding means includes a plurality of trellis encoder stage

www.freepatentsonline.com

5,243,627

11

means for trellis encoding respective ones of said streams of trellis bits.

7. The apparatus of claim 5 wherein said means for selecting includes means for modulus converting said stream of uncoded bits.

8. The apparatus of claim 5 wherein said channel symbols are 2N-dimensional channel symbols, $N>1$, and wherein said means for generating causes every $N^{th}$ signal point in said stream of output signal points to be the $N^{th}$ signal point of a respective one of said channel symbols.

9. Receiver apparatus for recovering information from a received stream of trellis encoded signal points, said signal points having been transmitted to said receiver apparatus by transmitter apparatus which generates said signal points by generating a plurality of streams of trellis encoded channel symbols in response to respective portions of said information, each of said channel symbols being comprised of a plurality of signal points, and by interleaving the signal points of said generated channel symbols to form said stream of trellis encoded signal points, said interleaving being carried out in such a way that the signal points of each channel symbol are non-adjacent in said stream of trellis encoded signal points and such that the signal points of adjacent symbols in any one of said channel symbol streams are non-adjacent in said stream of trellis encoded signal points,

said receiver apparatus comprising
means for deinterleaving the interleaved signal points to recover said plurality of streams of trellis encoded channel symbols, and
a distributed Viterbi decoder for recovering said information from the deinterleaved signal points.

10. The apparatus of claim 9 further comprising
a phase tracking loop, and
means for adapting the operation of said phase tracking loop in response to minimum accumulated path metrics in said distributed Viterbi decoder.

11. A method for forming a stream of trellis encoded signal points in response to input information, said method comprising the steps of
generating a plurality of streams of trellis encoded channel symbols in response to respective portions of said input information, each of said channel symbols being comprised of a plurality of signal points, and
interleaving the signal points of said generated channel symbols to form said stream of trellis encoded signal points, said interleaving being carried out in such a way that the signal points of each channel symbol are non-adjacent in said stream of trellis encoded signal points and such that the signal points of adjacent symbols in any one of said channel symbol streams are non-adjacent in said stream of trellis encoded signal points.

12. The method of claim 11 wherein said generating step generates three of said streams of trellis encoded channel symbols, and wherein said interleaving step causes there to be interleaved between each of the signal points of each channel symbol at least two signal points from other channel symbols of said streams of trellis encoded channel symbols.

13. The method of claim 11 wherein said channel symbols are 2N-dimensional channel symbols, $N>1$, and wherein said interleaving step causes every $N^{th}$ signal point in said interleaved signal point stream to be

12

the $N^{th}$ signal point of a respective one of said channel symbols.

14. The method of claim 12 wherein said channel symbols are 2N-dimensional channel symbols, $N>1$, and wherein said interleaving step causes every $N^{th}$ signal point in said interleaved signal point stream to be the $N^{th}$ signal point of a respective one of said channel symbols.

15. A method for use in a modem, said method comprising the steps of
receiving a stream of input bits,
dividing said stream of input bits into a stream of uncoded bits and a plurality of streams of trellis bits,
independently trellis encoding each of said plurality of streams of trellis bits to generate respective streams of data words each identifying one of a plurality of predetermined subsets of the channel symbols of a predetermined 2N-dimensional constellation, N being an integer greater than unity, each of said channel symbols being comprised of a plurality of signal points,
selecting an individual channel symbol from each identified subset in response to said stream of uncoded bits to form a stream of channel symbols, and
generating a stream of output signal points, said signal point stream being comprised of the signal points of the selected channel symbols, the signal points of said signal point stream being sequenced in such a way that signal points that are either a) part of the same channel symbol, or b) part of channel symbols that are adjacent to one another in said channel symbol stream, are separated in said output stream by at least one other signal point.

16. The method of claim 15 wherein in said trellis encoding step a plurality of trellis encoder stages trellis encode respective ones of said streams of trellis bits.

17. The method of claim 15 wherein said selecting step includes the step of modulus converting said stream of uncoded bits.

18. The method of claim 15 wherein said channel symbols are 2N-dimensional channel symbols, $N>1$, and wherein said generating step causes every $N^{th}$ signal point in said stream of output signal points to be the $N^{th}$ signal point of a respective one of said channel symbols.

19. A method for use in a receiver to recover information from a received stream of trellis encoded signal points, said signal points having been transmitted to said receiver apparatus by a method which includes the steps of
generating a plurality of streams of trellis encoded channel symbols in response to respective portions of said information, each of said channel symbols being comprised of a plurality of signal points, and
interleaving the signal points of said generated channel symbols to form said stream of trellis encoded signal points, said interleaving being carried out in such a way that the signal points of each channel symbol are non-adjacent in said stream of trellis encoded signal points and such that the signal points of adjacent symbols in any one of said channel symbol streams are non-adjacent in said stream of trellis encoded signal points,
said method comprising the steps of
deinterleaving the interleaved signal points to recover said plurality of streams of trellis encoded channel symbols, and

5,243,627

**13**

using a distributed Viterbi decoder to recover said information from the deinterleaved signal points.

20. The method of claim 19 wherein said receiver includes a phase tracking loop and wherein said method comprises the further step of adapting the operation of said phase tracking loop in response to minimum accumulated path metrics in said distributed Viterbi decoder.

21. Data communication apparatus comprising

means for receiving input information,

means for generating a plurality of streams of trellis encoded channel symbols in response to respective portions of said input information, each of said channel symbols being comprised of a plurality of signal points,

means for interleaving the signal points of said generated channel symbols to form a stream of trellis encoded signal points, said interleaving being carried out in such a way that the signal points of each channel symbol are non-adjacent in said stream of trellis encoded signal points and such that the signal points of adjacent symbols in any one of said channel symbol streams are non-adjacent in said stream of trellis encoded signal points,

means for applying the stream of trellis encoded signal points to a transmission channel,

**14**

means for receiving the stream of trellis encoded signal points from the channel,

means for deinterleaving the interleaved signal points to recover said plurality of streams of trellis encoded channel symbols, and

a distributed Viterbi decoder for recovering said information from the deinterleaved signal points.

22. The apparatus of claim 21 wherein said means for generating generates three of said streams of trellis encoded channel symbols, and wherein said means for interleaving causes there to be interleaved between each of the signal points of each channel symbol at least two signal points from other channel symbols of said streams of trellis encoded channel symbols.

23. The apparatus of claim 21 wherein said channel symbols are 2N-dimensional channel symbols, $N > 1$, and wherein said means for interleaving causes every $N^{th}$ signal point in said interleaved signal point stream to be the $N^{th}$ signal point of a respective one of said channel symbols.

24. The apparatus of claim 22 wherein said channel symbols are 2N-dimensional channel symbols, $N > 1$, and wherein said means for interleaving causes every $N^{th}$ signal point in said interleaved signal point stream to be the $N^{th}$ signal point of a respective one of said channel symbols.

* * * * *