IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: REMBRANDT TECHNOLOGIES, LP PATENT LITIGATION | MDL Docket No. 07-md-1848 (GMS) |
| MOTOROLA, INC., CISCO SYSTEMS, INC., SCIENTIFIC-ATLANTA, INC., ARRIS GROUP, INC., THOMSON, INC., AMBIT MICROSYSTEMS, INC., and NETGEAR, INC.<br><br>Plaintiffs,<br><br>v.<br><br>REMBRANDT TECHNOLOGIES, LP,<br><br>Defendant. | Civil Action No. 07-752-GMS |
| REMBRANDT TECHNOLOGIES, LP, and REMBRANDT TECHNOLOGIES, LLC d/b/a REMSTREAM,<br><br>Counter-Plaintiffs,<br><br>v.<br><br>MOTOROLA, INC., CISCO SYSTEMS, INC., SCIENTIFIC-ATLANTA, INC., ARRIS GROUP, INC., THOMSON, INC., AMBIT MICROSYSTEMS, INC., and NETGEAR, INC., TIME WARNER CABLE, INC., TIME WARNER CABLE LLC, TIME WARNER NEW YORK CABLE LLC, TIME WARNER ENTERTAINMENT COMPANY, LP, COMCAST CORPORATION, COMCAST CABLE COMMUNICATIONS, LLC, CHARTER COMMUNICATIONS OPERATING, LLC, COXCOM, INC., COX COMMUNICATIONS, | Civil Action No. 07-752-GMS |

INC., COX ENTERPRISES, INC., CSC )
HOLDINGS, INC., CABLEVISION SYSTEMS )
CORPORATION, ADELPHIA )
COMMUNICATIONS CORPORATION, )
CENTURY-TCI CALIFORNIA )
COMMUNICATIONS, LP, CENTURY-TCI )
HOLDINGS, LLC, COMCAST OF )
FLORIDA/PENNSYLVANIA, L.P. (f/k/a )
PARNASSOS, LP), COMCAST OF )
PENNSYLVANIA II, L.P. (f/k/a CENTURY-TCI )
CALIFORNIA, L.P.), PARNASSOS )
COMMUNICATIONS, LP, ADELPHIA )
CONSOLIDATION, LLC, PARNASSOS )
HOLDINGS, LLC, and WESTERN NY )
CABLEVISION, LP, )
                                                                        )
                Counter-Defendants.                 )
_____ )

## NOTICE OF SUBPOENAS

PLEASE TAKE NOTICE of the attached subpoenas.

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

_____
Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
Jeffrey T. Castellano (No. 4837)
1000 West Street
Wilmington, DE 19801
(302) 571-6600
jcastellano@ycst.com

*Liaison Counsel and Attorneys for
Plaintiffs/Counter-Defendants Motorola,
Inc., Cisco Systems, Inc., Scientific-
Atlanta, Inc., ARRIS Group, Inc.,
Thomson, Inc., Ambit Microsystems, Inc.,
and NETGEAR, Inc.*

2

Of Counsel:

John Desmarais
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022-4611

Eric Lamison
Benjamin Ostapuk
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104

Russell E. Levine, P.C.
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL 60601

*Attorneys for Plaintiffs/Counter-Defendants*
*Motorola, Inc., Cisco Systems, Inc.,*
*Scientific-Atlanta, Inc., ARRIS Group, Inc.,*
*Thomson, Inc., Ambit Microsystems, Inc.,*
*and NETGEAR, Inc.*

Date:   March 11, 2008

## CERTIFICATE OF SERVICE

I, Jeffrey T. Castellano, Esquire, hereby certify that on March 11, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Collins J. Seitz, Jr., Esquire
Francis DiGiovanni, Esquire
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building – 8th Floor
1007 N. Orange Street
Wilmington, DE 19801
cseitz@cblh.com
fdigiovanni@cblh.com

Jack B. Blumenfeld, Esquire
Morris Nichols Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
jblumenfeld@mnat.com

I further certify that on March 11, 2008, I caused a copy of the foregoing document to be served by e-mail and hand delivery on the above-listed counsel of record and on the following in the manner indicated:

**BY E-MAIL**

David S. Benyacar, Esquire
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022
dbenyacar@kayescholer.com

**BY E-MAIL**

Matthew D. Powers, Esquire
Edward R. Reines, Esquire
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
matthew.powers@weil.com
edward.reines@weil.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
Jeffrey T. Castellano (No. 4837)
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
*jcastellano@ycst.com*

# TAB 1

AO 88 (Rev. 01/07) Subpoena in a Civil Case

## Issued by the
# UNITES STATES DISTRICT COURT
### DISTRICT OF DELAWARE

In re: **REMBRANDT TECHNOLOGIES, LP**
**PATENT LITIGATION**
**MOTOROLA, INC., et al.**

**V.**

**REMBRANDT TECHNOLOGIES, LP**

## SUBPOENA IN A CIVIL CASE

CASE NUMBER: [1]    MDL Docket No. 1:07-md-1848-GMS
This subpoena relates to:
1:07-cv-752-GMS

TO:    **Conexant Systems, Inc.**
c/o Corporation Service Company, Registered Agent
2711 Centerville Road
Suite 400
Wilmington, DE 19808

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): **See Attachment A.**

| PLACE | DATE AND TIME |
|---|---|
| Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 17th Floor, 1000 West Street, P. O. Box 391, Wilmington, DE 19899-0391 | March 27, 2008-9:00a |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure. 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE March 10, 2008 |
|---|---|

Attorney for Plaintiffs Motorola, Inc., Cisco Systems, Inc., Scientific-Atlanta, Inc., ARRIS Group, Inc., Thomson, Inc., Ambit Microsystems, Inc., and NETGEAR, Inc.

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Jeffrey T. Castellano, Esquire, Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 17th Floor, PO Box 391, Wilmington, DE 19899-0391 (302) 571-6600

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (DE Rev. 01/07) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | . | MANNER OF SERVICE |
|---|---|---|

| SERVED BY (PRINT NAME) |  | TITLE |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

**ATTACHMENT A**

**DEFINITIONS AND INSTRUCTIONS**

1.    "Rembrandt" means Rembrandt Technologies, LP, Rembrandt Technologies, LLC d/b/a Remstream, and all predecessors, successors, subsidiaries, parents, sisters, partnerships and affiliates thereof, and all directors, officers, agents, employees, attorneys and other persons acting on their behalf.

2.    "Paradyne" refers to any Paradyne entity including without limitation Paradyne Corporation, AT&T Paradyne, Paradyne Acquisition Corp., Paradyne Networks, Inc., Zhone Technologies, Inc. (hereafter "Zhone"), collectively and individually, including all predecessors, successors, subsidiaries, parents, sisters, partnerships and affiliates thereof, and all directors, officers, agents, employees, attorneys and other persons acting on their behalf.

3.    "Globespan" means GlobeSpan, Inc., GlobeSpan Semiconductor, Inc., and GlobeSpanVirata, Inc., collectively and individually, including all predecessors, successors, subsidiaries, parents, sisters, partnerships and affiliates thereof, and all directors, officers, agents, employees, attorneys and other persons acting on their behalf.

4.    "Patents-in-suit" mean the following patents at issue in this litigation: U.S. Patent No. 4,937,819 ("the '819 patent"); U.S. Patent No. 5,008,903 ("the '903 patent"); U.S. Patent No. 5,710,761 ("the '761 patent"); U.S. Patent No. 5,719,858 ("the '858 patent"); U.S. Patent No. 5,778,234 ("the '234 patent"); U.S. Patent No. 5,852,631 ("the '631 patent"); U.S. Patent No. 6,131,159 ("the '159 patent"); U.S. Patent No. 6,960,444 ("the '444 patent").

5.    "Related patents or patent applications" means any U.S. or foreign patent or patent application that either (i) stems from or claims priority to the patents-in-suit, (ii) describes subject matter claimed or described in the patents-in-suit, or (iii) claims any subject matter in the patents-in-suit. "Related patents or patent applications" specifically includes, but is not limited

to Aband. App. 08/149,348, Aband. App. 09/031,226, CA 2 093 042, EP 0 569 178, Prov. App.

60/022,474, Prov. App. 60/026,970, U.S. Pat. No. 5,751,796 (App No. 08/781,787), U.S. Pat.

No. 5,796,808 (App. No. 08/781,067), U.S. Pat. No. 5,787,363 (App No. 08/780,238), WO

97/49193, WO 97/49229, WO 97/49230, WO 97/49228, Prov. App. 60/039,265, U.S. Pat. No.

6,580,785 (App. No. 09/032,671), U.S. Pat. No. 7,020,266 (App. No. 10/269,209), Pend. App.

11/086,063 (U.S. Pub 2005/0163303), Pend. App. 11/690,807, Prov. App. 60/128,064, U.S. Pat.

No. 6,922,415 (App. No. 09/537,609), Prov. App. 60/038,324, JP 2002 513532, EP 0 983 691

(WO98 38813), Prov. App. 60/150,436, Pend. App. 10/179,544 (U.S. Pub. 2002/0167949), Pend.

App. 11/076,737 (U.S. Pub. 2005/0152404), and any foreign counterparts thereof.

6.    "Paradyne Patents" refers to any patent that was issued to or applied for by or on

behalf of any Paradyne entity including without limitation Paradyne Corporation, AT&T

Paradyne, or Paradyne Networks, Inc., or issued to or applied for by or on behalf of any inventor

named on any of the patents-in-suit.

7.    "Inventors" refers to any of the named inventors on any of the patents-in-suit or

related patents or patent applications, including Joseph B. King, Wayne T. Moore, Robert Earl

Scott, Gideon Hecht, Kurt Ervin Holmquist, Donald C. Snoll, Joseph Chapman, William L.

Betts, or James J. DesRosiers.

8.    "Assignee" or "the assignees" refers to any alleged assignee of the patents-in-suit

or any related patents or patent applications, including, but not limited to Paradyne, Rembrandt,

AT&T Paradyne, or Lucent Technologies, Inc.

9.    "Prosecuting Attorney" shall refer to any counsel involved in the application or

prosecution of a patent-in-suit, related patent or patent application, or Paradyne Patent.

- 2 -

10.    "Document" shall have the meaning accorded by Rule 34(a) of the Federal Rules of Civil Procedure including, but not limited to all of the matters defined in Rule 1001 of the Federal Rules of Evidence, any written, printed, typed, recorded, magnetic, punched, copied, graphic, or other tangible thing in which information may be embodied, translated, conveyed, or stored. If a draft document has been prepared in several copies that are not identical, or if the original identical copies are no longer identical due to subsequent notation, each non-identical document is a separate document.

11.    "Concerning" means pertaining to, relating to, referring to, regarding, representing, embodying, illustrating, describing, evidencing, discussing, mentioning or constituting.

12.    "Communication" is used in a comprehensive sense, and means any instance in which any person has had contact with any other person by oral or written utterance, question, comment, inquiry, notation, or statement of any nature whatsoever, including but not limited to writings, documents, conversations, dialogues, discussions, interviews, consultations, agreements, and understandings.

13.    "DOCSIS" shall mean any Data-Over-Cable Service Interface Specification(s), including but not limited to DOCSIS 1.0, DOCSIS 1.1, and DOCSIS 2.0.

14.    "Related Action" means the Multi-District Litigation *In re: Rembrandt Technologies LP Patent Litigation*, C.A. No. 07-1848-GMS (D. Del.), and the lawsuits consolidated therein, including the following: 06-cv-00635-GMS, *Rembrandt Technologies LP v. Cablevision Systems Corporation et al.*; 06-cv-00721-GMS, *Coxcom Inc. v. Rembrandt Technologies LP*; 06-cv-00727-GMS, *Rembrandt Technologies LP v. CBS Corporation*; 06-cv-00729-GMS, *Rembrandt Technologies LP v. NBC Universal Inc.*; 06-cv-00730-GMS, *Rembrandt Technologies LP v. ABC Inc.*; 06-cv-00731-GMS, *Rembrandt Technologies LP v.*

- 3 -

*Fox Entertainment Group Inc. et al*; 07-cv-00396-GMS, *Rembrandt Technologies LP v.*

*Adelphia Communications Corporation et al*; 07-cv-00397-GMS, *Rembrandt Technologies LP v.*

*Adelphia Commications Corp.*; 07-cv-00398-GMS, *Rembrandt Technologies LP v. Comcast*

*Corporation et al*; 07-cv-00399-GMS, *Rembrandt Technologies LP v. Sharp Corporation et al*;

07-cv-00400-GMS, *Rembrandt Technologies LP v. Charter Communications Inc. et al*; 07-cv-

00401-GMS, *Rembrandt Technologies LP v. Time Warner Cable Inc. et al*; 07-cv-00402-GMS,

*Rembrandt Technologies LP v. Time Warner Cable Inc.*; 07-cv-00403-GMS, *Rembrandt*

*Technologies LP v. Comcast Corporation et al*; and 07-cv-00404-GMS, *Rembrandt*

*Technologies LP v. Charter Communications Inc. et al.*

15.    As used herein, "and" and "or" shall be construed either conjunctively or

disjunctively as necessary to bring within the scope of the discovery request all responses that

might otherwise be construed to be outside of its scope.

16.    Where appropriate, the singular form of a word should be interpreted in the plural

and vice versa, to acquire the broadest possible meaning.

17.    If any document relating to the subject matter of this subpoena has been destroyed,

describe the content of said document, the last location of said document, the date of its

destruction and the name of the person or entity that ordered or authorized its destruction.

## DOCUMENT REQUESTS

### *PATENT & PATENT PROSECUTION*

1.    All documents discussing, describing, referring, or relating to the patents-in-suit,

any related patents or patent applications, or to the same or similar subject matter as the subject

matter disclosed in the patents-in-suit.

2.      All documents discussing, describing, referring, or relating to the preparation, filing, or prosecution of the patents-in-suit or any related patents or patent applications, including, but not limited to invention disclosure information, technical descriptions, prior art, publications, non-identical drafts of patent applications, abandoned applications (*e.g.*, Application No. 08/149,348) prosecution file histories of the patents-in-suit, prosecution file histories of related patents or patent applications, communications with inventors or experts, and any communications with any agent, attorney, firm, foreign patent office or the U.S. Patent and Trademark Office ("USPTO").

3.      Documents sufficient to identify all persons who assisted in any aspect of the preparation, filing, or prosecution of the patents-in-suit or any related patents or patent applications.

4.      All documents discussing, describing, referring, or relating to any Paradyne Patents, including without limitation any abandoned application.

5.      All documents concerning the preparation, filing, or prosecution of any Paradyne Patent, including, but not limited to invention disclosure information, technical descriptions, prior art, publications, non-identical drafts of patent applications, abandoned applications, prosecution file histories, communications with inventors or experts, and any communications with any agent, attorney, firm, foreign patent office or the U.S. Patent and Trademark Office ("USPTO").

6.      All documents referring to or concerning any patent applications filed by or patents issued to any of the Inventors.

7.      All documents evidencing, describing, concerning, or referring to the preparation, filing, or prosecution of any patents or patent applications naming one or more of the Inventors,

including, but not limited to invention disclosure information, technical descriptions, prior art, publications, non-identical drafts of patent applications, abandoned applications, prosecution file histories, and any communications with any agent, attorney, firm, foreign patent office or the U.S. Patent and Trademark Office ("USPTO").

8. All documents and materials concerning inventorship of any invention allegedly disclosed or claimed by the patents-in-suit or by any related patents or patent applications, including, but not limited to documents sufficient to identify all persons who assisted in any aspect of the research, development, manufacture, testing, marketing, sale, or licensing of the alleged invention(s), and documents sufficient to identify all materials suppliers for any embodiment of the alleged invention(s).

9. All actual or potential prior art known, cited, referenced, considered, or discussed during or in prosecution of the patents-in-suit or any related patents or patent applications, whether or not first cited or found by the assignee(s), the named inventors, counsel, agent(s), any patent office or any other person or entity.

10. All documents provided to any Prosecuting Attorney or Inventor by anyone prior to or during the preparation and prosecution of the patents-in-suit or any related patents or patent applications in connection with such preparation and prosecution, including, without limitation notes, laboratory notebooks, sketches, memoranda, articles, technical reports, technical journals, and technical specifications.

11. All documents and materials concerning the conception of the alleged invention(s) of the patents-in-suit or of related patents or patent applications, the best mode of practicing such alleged invention(s), the reduction to practice of such alleged invention(s), and any improvements to such alleged invention(s), including, but not limited to inventor records,

notebooks, physical embodiments of all or part of such alleged invention(s), and all devices, apparatus or software purchased or built by the inventors for the purpose of researching, developing, or reducing to practice such alleged invention(s).

12.    All documents concerning any actual or constructive reduction to practice of the alleged invention(s) of the patents-in-suit or of any related patents or patent applications, including but not limited to documents relating to research, development, manufacture, testing, marketing, or sale of the alleged invention(s).

13.    All documents concerning any costs associated with the conception, reduction-to-practice, or research and development of the alleged invention(s), including, but not limited to receipts for supplies.

14.    All documents concerning, describing, or evidencing when the inventors, the assignees, their counsel, or anyone subject to the duty of candor before the USPTO learned of any potential or actual prior art to the patents-in-suit or to any related patents or patent applications.

15.    All documents and materials comprising, concerning or referring to any search for prior art to the patents-in-suit or any related patents or patent applications.

16.    All documents comprising, concerning or referring to potential or actual prior art to the patents-in-suit or to any related patents or patent applications, even if you dispute that the material constitutes or discloses prior art, including, but not limited to art cited during prosecution of the patents-in-suit, art cited during the prosecution of any related patents or patent applications, and art disclosed by any third parties (including in any litigation involving the patents-in-suit or in licensing discussions).

17.    All documents that allegedly support any contention that the alleged invention(s) of the patents-in-suit are not obvious under 35 U.S.C. § 103, including, but not limited to documents that allegedly relate to or evidence secondary considerations of non-obviousness such as commercial success, long-felt need, copying by others, prior failure by others, licensing by others, or unexpected results.

18.    All documents referring to or concerning any litigation or other proceeding involving the patents-in-suit or any related patents or patent applications, including, but not limited to all pleadings, motions, exhibits, orders, depositions or other testimony, hearing transcripts, written discovery responses or initial disclosures, document productions, correspondence, settlement agreements, consent decrees, or any other materials from prior litigations.

19.    All documents and other materials provided to any Prosecuting Attorney by the inventors, any assignee, or their counsel relating to this litigation or to any of the patents-in-suit or any related patent or patent application or to any Paradyne Patent.

20.    All documents and other materials provided by any Prosecuting Attorney to the inventors, any assignee, or their counsel relating to this litigation or to any of the patents-in-suit or any related patent or patent application or to any Paradyne Patent.

21.    All documents concerning the level of ordinary skill in the art of the alleged invention(s) of the patents-in-suit.

22.    All documents concerning the interpretation or construction of any of the claim terms in the patents-in-suit.

## COMMERCIALIZATION & PRIOR ART

23.    All documents concerning any disclosure by anyone to anyone of the alleged invention(s) of the patents-in-suit or of related patents or patent applications, including, but not limited to any disclosure of the alleged invention(s) by the assignee(s) or the named inventors to each other or to any third party.

24.    All documents concerning any sale, offer for sale, importation, public use, or public disclosure of any activity, product, process, or method that may embody any of the claims or disclosures of the patents-in-suit or of related patents or patent applications.

25.    All documents concerning the first sale, offer for sale, importation, public use, or public disclosure of any activity, product, process, or method that may embody any of the claims or disclosures of the patents-in-suit or of related patents or patent applications.

26.    All documents referring or relating to any products marketed or sold by any assignee of the patents-in-suit or of related patents or patent applications that relates to any activity, product, process, or method that may embody any of the claims or disclosures of the patents-in-suit or of related patents or patent applications.

27.    All documents concerning trade shows, manuals, articles, books, patents, publications, or any other reference materials relating to the subject matter described, shown or claimed in the patents-in-suit or any related patents or patent applications or any products relating to those patents or applications.

28.    All documents referring or relating to any products that compete with any product marketed or sold by any assignee that relates to any activity, product, process, or method that

may embody any of the claims or disclosures of the patents-in-suit or of related patents or patent applications.

29.     All documents referring or relating to the following products: (1) Enhanced Throughput Cellular or ETC (including ETC1 and ETC2); (2) AT&T KeepInTouch; (3) FrameSaver; (4) Accucom products; (5) Compshere products; (6) 3400, 3800 and 3900 series products; (7) I-Marc 9000 Series products; (8) Eclipse products.

30.     All documents and materials concerning any strategies, plans, or expectations (whether of the assignees of the patents-in-suit or of related patents or patent applications, the inventors, licensing counsel, or otherwise) with respect to the subject matter disclosed or claimed by the patents-in-suit or by any related patents or patent applications, including without limitation any plans to commercialize, sell, license, or otherwise derive business or revenues from the patents-in-suit or from any related patents or applications.

### *PATENT OWNERSHIP & LICENSING*

31.     All documents concerning the ownership of the patents-in-suit or any related patents or patent applications, including, but not limited to all documents relating to assignments, acquisitions, liens, licenses, auctions, sales, or other transfers of rights by or to any entity or person.

32.     All documents concerning any license, proposed license, assignment, proposed assignment, sale, proposed sale, covenant not to sue, right of first refusal or any other actual or proposed transfer or extension of rights in or to the patents-in-suit or any related patents or patent applications.

33.     All documents concerning a reasonable royalty for licensing one or more of the patents-in-suit or any related patents or patent applications.

- 10 -

34.    All documents concerning any settlement, covenant not to sue, consent decree, judgment or other resolution of any litigation (actual or potential) involving the patents-in-suit or any related patents or patent applications.

35.    All documents concerning any products that have been licensed or for which any covenant not to sue has been extended under the patents-in-suit or under any related patents or patent applications.

36.    All documents referring or relating to the actual or potential enforcement of the patents-in-suit or any related patents or patent applications.

37.    All documents comprising, concerning or referring to communications or agreements involving Paradyne, Lucent Technologies, Inc., Texas Pacific Group, Globespan, Rembrandt, and/or Zhone relating to the patents-in-suit or related patents and patent applications or to Paradyne Patents.

38.    All documents referring or relating to the development of any standards that refer, relate to or concern any of the patents-in-suit or related patents or patent applications.

### CABLE & OTHER ISSUES

39.    All Rembrandt, Paradyne, Globespan, Zhone, Inventor or Prosecuting Attorney documents referring or relating to cable modems or cable modem terminating systems.

40.    All documents referring or relating to the development of any standards relating to cable modems or cable modem terminating systems.

41.    All documents referring to or concerning the relationship, or absence thereof, between any version of DOCSIS and any of the patents-in-suit.

42.    All documents concerning any alleged infringement (whether direct, contributory or by inducement) of the patents-in-suit or any related patents.

43.    All documents concerning comparisons between the patents-in-suit or any related patents or patent applications to anything else including any activity, product, process, method, prior art, patent, or publication.

44.    All documents concerning any contention by any person or party, including without limitation any third party, named inventor, prosecuting counsel, prior art search firm, or any other person or party, that any of the patents-in-suit or any related patent or patent application is valid or invalid, enforceable or unenforceable, or infringed or not infringed.

45.    All documents comprising, concerning or referring to any opinions, evaluations, advice, or analyses concerning the validity or invalidity, enforceability or unenforceability, infringement or noninfringement, or scope of the claims of the patents-in-suit or of any related patents or patent applications, and all documents reviewed in the formation of such opinions, evaluations, advice, or analyses.

46.    All documents comprising, concerning or referring to any assertion that any claim of the patents-in-suit is valid or invalid, enforceable or unenforceable, or infringed or not infringed.

DB02:6633542.2

066919.1001

### FURTHER AGREEMENTS & COMMUNICATIONS

47.     All documents comprising or referring or relating to any agreements including the Inventors or the Prosecuting Attorneys relating to this litigation or to any of the patents-in-suit or any related patent or patent application or any Paradyne Patent.

48.     All documents comprising or referring or relating to any communications with the Inventors or the Prosecuting Attorneys relating to this litigation or to any of the patents-in-suit or any related patent or patent application or to any Paradyne Patent.

49.     All communications with or between the Inventors.

50.     All documents concerning communications regarding the patents-in-suit, any related patents or patent applications or the same or similar subject matter as that disclosed in the patents-in-suit, including, but not limited to internal communications or communications with third parties (including without limitation communications with the USPTO, any foreign patent office, or any assignee).

### FURTHER BUSINESS DOCUMENTS

51.     All documents and things referring or relating to the business of Rembrandt, including without limitations all documents and things referring or relating to any intellectual property licensing, acquisition or enforcement agreements, strategies or plans or to any agreements, strategies or plans to supply products or enter agreements with others to supply products implementing any intellectual property.

52.     All documents and things referring or relating to Rembrandt.

53.     All documents and things referring or relating to Remstream or any Remstream product.

54.    Documents sufficient to identify policies and procedures of any assignee for generating, maintaining, and disposing of documents, including, but not limited to policies and procedures relating to patent applications, patent prosecution files, and any scientific or technical references related to such patent prosecution files.

### *DUE DILIGENCE AND VALUATIONS*

55.    All documents that reflect, discuss, describe, evidence or concern the actual, potential, or possible value, if any, of any of the patents-in-suit or any related patents or patent applications and all documents that were used in, created for, or created during due diligence in any transaction (including by way of illustration but not limitation, any actual or proposed stock sale, asset sale, merger, spin-off, acquisition, divestiture, purchase, assignment, sale, bid, auction, covenant not to sue, license or any other potential or actual transaction) involving Paradyne, any transaction involving any patents-in-suit, or any transaction involving related patents or patent application.

56.    All offering memoranda and other documents created in connection with any transaction involving Paradyne (including by way of illustration but not limitation, any actual or proposed stock sale, asset sale, merger, spin-off, acquisition, divestiture, purchase, assignment, sale, bid, auction, covenant not to sue, license or any other potential or actual transaction) that reflects, discusses, describes, evidences, or concerns any valuation of Paradyne, any patent-in-suit, or any related patent or patent application.

57.    All communications discussing, concerning, reflecting, or describing any due diligence activities involving any patent-in-suit or any related patent or patent application.

58.    All documents created, used in, reflecting, discussing, or covering any due diligence activities in connection with Paradyne, any patent-in-suit, or any related patent or patent application.

59.    Documents sufficient to show identify all financial, legal, or other advisors representing any party involved in any transaction (including by way of illustration but not limitation, any actual or proposed stock sale, asset sale, merger, spin-off, acquisition, divestiture, purchase, assignment, sale, bid, auction, covenant not to sue, license or any other potential or actual transaction) including Paradyne, any patent-in-suit, or any related patent or patent application.

60.    All documents concerning the actual or proposed transfer, sale, securitization, monetization, acquisition or licensing of any patent-in-suit.

61.    All documents and things describing, evidencing, discussing, referring to or relating to any review or inspection of the Paradyne Patents, any agreements relating to the Paradyne Patents or any communications relating to the Paradyne Patents.

62.    All minutes of any board of directors that discuss, evidence or describe the actual or possible value of any patent-in-suit or any related patent or patent application.

63.    All documents presented to or provided to any board of directors that discuss, evidence or describe the actual or possible value of any patent-in-suit or any related patent or patent application.

### *PREVIOUSLY-SUBPOENAED DOCUMENTS*

64.    All documents requested pursuant to any previously-served subpoena in a Related Action.

# TAB 2

AO 88 (Rev. 01/07) Subpoena in a Civil Case

<div align="center">

## Issued by the
# UNITES STATES DISTRICT COURT
### DISTRICT OF DELAWARE

</div>

| | |
|---|---|
| **In re: REMBRANDT TECHNOLOGIES, LP PATENT LITIGATION** **MOTOROLA, INC., et al.** **V.** | **SUBPOENA IN A CIVIL CASE** CASE NUMBER: [1]   MDL Docket No. 1:07-md-1848-GMS This subpoena relates to: 1:07-cv-752-GMS |

### REMBRANDT TECHNOLOGIES, LP

TO:  **Lucent Technologies, Inc.**
c/o Corporation Trust Company, Registered Agent
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): **See Attachment A.**

| PLACE Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 17th Floor, 1000 West Street, P.O. Box 391, Wilmington, DE 19899-0391 | DATE AND TIME March 27, 2008-9:00a |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure. 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE March 11, 2008 |
|---|---|
| *[signature]*   Attorney for Plaintiffs Motorola, Inc., Cisco Systems, Inc., Scientific-Atlanta, Inc., ARRIS Group, Inc., Thomson, Inc., Ambit Microsystems, Inc., and NETGEAR, Inc. | |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Jeffrey T. Castellano, Esquire, Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 17th Floor, PO Box 391, Wilmington, DE 19899-0391 (302) 571-6600

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (DE Rev. 01/07) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                     DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
    (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
    (2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
    (B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
    (3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
        (i) fails to allow reasonable time for compliance;
        (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
        (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
        (iv) subjects a person to undue burden.
    (B) If a subpoena
        (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
        (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
        (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
    (1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
    (B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
    (C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
    (D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
    (2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
    (B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the notifying party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## ATTACHMENT A

## DEFINITIONS AND INSTRUCTIONS

1.     "Rembrandt" means Rembrandt Technologies, LP, Rembrandt Technologies, LLC

d/b/a Remstream, and all predecessors, successors, subsidiaries, parents, sisters, partnerships and

affiliates thereof, and all directors, officers, agents, employees, attorneys and other persons

acting on their behalf.

2.     "Paradyne" refers to any Paradyne entity including without limitation Paradyne

Corporation, AT&T Paradyne, Paradyne Acquisition Corp., Paradyne Networks, Inc., Zhone

Technologies, Inc. (hereafter "Zhone"), collectively and individually, including all predecessors,

successors, subsidiaries, parents, sisters, partnerships and affiliates thereof, and all directors,

officers, agents, employees, attorneys and other persons acting on their behalf.

3.     "Globespan" means GlobeSpan, Inc., GlobeSpan Semiconductor, Inc., and

GlobeSpanVirata, Inc., collectively and individually, including all predecessors, successors,

subsidiaries, parents, sisters, partnerships and affiliates thereof, and all directors, officers, agents,

employees, attorneys and other persons acting on their behalf.

4.     "Patents-in-suit" mean the following patents at issue in this litigation:  U.S. Patent

No. 4,937,819 ("the '819 patent"); U.S. Patent No. 5,008,903 ("the '903 patent"); U.S. Patent

No. 5,710,761 ("the '761 patent"); U.S. Patent No. 5,719,858 ("the '858 patent"); U.S. Patent

No. 5,778,234 ("the '234 patent"); U.S. Patent No. 5,852,631 ("the '631 patent"); U.S. Patent

No. 6,131,159 ("the '159 patent"); U.S. Patent No. 6,960,444 ("the '444 patent").

5.     "Related patents or patent applications" means any U.S. or foreign patent or patent

application that either (i) stems from or claims priority to the patents-in-suit, (ii) describes

subject matter claimed or described in the patents-in-suit, or (iii) claims any subject matter in the

patents-in-suit.  "Related patents or patent applications" specifically includes, but is not limited

to Aband. App. 08/149,348, Aband. App. 09/031,226, CA 2 093 042, EP 0 569 178, Prov. App. 60/022,474, Prov. App. 60/026,970, U.S. Pat. No. 5,751,796 (App No. 08/781,787), U.S. Pat. No. 5,796,808 (App. No. 08/781,067), U.S. Pat. No. 5,787,363 (App No. 08/780,238), WO 97/49193, WO 97/49229, WO 97/49230, WO 97/49228, Prov. App. 60/039,265, U.S. Pat. No. 6,580,785 (App. No. 09/032,671), U.S. Pat. No. 7,020,266 (App. No. 10/269,209), Pend. App. 11/086,063 (U.S. Pub 2005/0163303), Pend. App. 11/690,807, Prov. App. 60/128,064, U.S. Pat. No. 6,922,415 (App. No. 09/537,609), Prov. App. 60/038,324, JP 2002 513532, EP 0 983 691 (WO98 38813), Prov. App. 60/150,436, Pend. App. 10/179,544 (U.S. Pub. 2002/0167949), Pend. App. 11/076,737 (U.S. Pub. 2005/0152404), and any foreign counterparts thereof.

6.    "Paradyne Patents" refers to any patent that was issued to or applied for by or on behalf of any Paradyne entity including without limitation Paradyne Corporation, AT&T Paradyne, or Paradyne Networks, Inc., or issued to or applied for by or on behalf of any inventor named on any of the patents-in-suit.

7.    "Inventors" refers to any of the named inventors on any of the patents-in-suit or related patents or patent applications, including Joseph B. King, Wayne T. Moore, Robert Earl Scott, Gideon Hecht, Kurt Ervin Holmquist, Donald C. Snoll, Joseph Chapman, William L. Betts, or James J. DesRosiers.

8.    "Assignee" or "the assignees" refers to any alleged assignee of the patents-in-suit or any related patents or patent applications, including, but not limited to Paradyne, Rembrandt, AT&T Paradyne, or Lucent Technologies, Inc.

9.    "Prosecuting Attorney" shall refer to any counsel involved in the application or prosecution of a patent-in-suit, related patent or patent application, or Paradyne Patent.

066919.1001

10. "Document" shall have the meaning accorded by Rule 34(a) of the Federal Rules of Civil Procedure including, but not limited to all of the matters defined in Rule 1001 of the Federal Rules of Evidence, any written, printed, typed, recorded, magnetic, punched, copied, graphic, or other tangible thing in which information may be embodied, translated, conveyed, or stored. If a draft document has been prepared in several copies that are not identical, or if the original identical copies are no longer identical due to subsequent notation, each non-identical document is a separate document.

11. "Concerning" means pertaining to, relating to, referring to, regarding, representing, embodying, illustrating, describing, evidencing, discussing, mentioning or constituting.

12. "Communication" is used in a comprehensive sense, and means any instance in which any person has had contact with any other person by oral or written utterance, question, comment, inquiry, notation, or statement of any nature whatsoever, including but not limited to writings, documents, conversations, dialogues, discussions, interviews, consultations, agreements, and understandings.

13. "DOCSIS" shall mean any Data-Over-Cable Service Interface Specification(s), including but not limited to DOCSIS 1.0, DOCSIS 1.1, and DOCSIS 2.0.

14. "Related Action" means the Multi-District Litigation *In re: Rembrandt Technologies LP Patent Litigation*, C.A. No. 07-1848-GMS (D. Del.), and the lawsuits consolidated therein, including the following: 06-cv-00635-GMS, *Rembrandt Technologies LP v. Cablevision Systems Corporation et al.*; 06-cv-00721-GMS, *Coxcom Inc. v. Rembrandt Technologies LP*; 06-cv-00727-GMS, *Rembrandt Technologies LP v. CBS Corporation*; 06-cv-00729-GMS, *Rembrandt Technologies LP v. NBC Universal Inc.*; 06-cv-00730-GMS, *Rembrandt Technologies LP v. ABC Inc.*; 06-cv-00731-GMS, *Rembrandt Technologies LP v.*

- 3 -

*Fox Entertainment Group Inc. et al*; 07-cv-00396-GMS, *Rembrandt Technologies LP v.*

*Adelphia Communications Corporation et al*; 07-cv-00397-GMS, *Rembrandt Technologies LP v.*

*Adelphia Commications Corp.*; 07-cv-00398-GMS, *Rembrandt Technologies LP v. Comcast*

*Corporation et al*; 07-cv-00399-GMS, *Rembrandt Technologies LP v. Sharp Corporation et al*;

07-cv-00400-GMS, *Rembrandt Technologies LP v. Charter Communications Inc. et al*; 07-cv-

00401-GMS, *Rembrandt Technologies LP v. Time Warner Cable Inc. et al*; 07-cv-00402-GMS,

*Rembrandt Technologies LP v. Time Warner Cable Inc.*; 07-cv-00403-GMS, *Rembrandt*

*Technologies LP v. Comcast Corporation et al*; and 07-cv-00404-GMS, *Rembrandt*

*Technologies LP v. Charter Communications Inc. et al.*

15.    As used herein, "and" and "or" shall be construed either conjunctively or

disjunctively as necessary to bring within the scope of the discovery request all responses that

might otherwise be construed to be outside of its scope.

16.    Where appropriate, the singular form of a word should be interpreted in the plural

and vice versa, to acquire the broadest possible meaning.

17.    If any document relating to the subject matter of this subpoena has been destroyed,

describe the content of said document, the last location of said document, the date of its

destruction and the name of the person or entity that ordered or authorized its destruction.

## DOCUMENT REQUESTS

### *PATENT & PATENT PROSECUTION*

1.    All documents discussing, describing, referring, or relating to the patents-in-suit,

any related patents or patent applications, or to the same or similar subject matter as the subject

matter disclosed in the patents-in-suit.

- 4 -

2.    All documents discussing, describing, referring, or relating to the preparation, filing, or prosecution of the patents-in-suit or any related patents or patent applications, including, but not limited to invention disclosure information, technical descriptions, prior art, publications, non-identical drafts of patent applications, abandoned applications (*e.g.,* Application No. 08/149,348) prosecution file histories of the patents-in-suit, prosecution file histories of related patents or patent applications, communications with inventors or experts, and any communications with any agent, attorney, firm, foreign patent office or the U.S. Patent and Trademark Office ("USPTO").

3.    Documents sufficient to identify all persons who assisted in any aspect of the preparation, filing, or prosecution of the patents-in-suit or any related patents or patent applications.

4.    All documents discussing, describing, referring, or relating to any Paradyne Patents, including without limitation any abandoned application.

5.    All documents concerning the preparation, filing, or prosecution of any Paradyne Patent, including, but not limited to invention disclosure information, technical descriptions, prior art, publications, non-identical drafts of patent applications, abandoned applications, prosecution file histories, communications with inventors or experts, and any communications with any agent, attorney, firm, foreign patent office or the U.S. Patent and Trademark Office ("USPTO").

6.    All documents referring to or concerning any patent applications filed by or patents issued to any of the Inventors.

7.    All documents evidencing, describing, concerning, or referring to the preparation, filing, or prosecution of any patents or patent applications naming one or more of the Inventors,

- 5 -

including, but not limited to invention disclosure information, technical descriptions, prior art, publications, non-identical drafts of patent applications, abandoned applications, prosecution file histories, and any communications with any agent, attorney, firm, foreign patent office or the U.S. Patent and Trademark Office ("USPTO").

8.    All documents and materials concerning inventorship of any invention allegedly disclosed or claimed by the patents-in-suit or by any related patents or patent applications, including, but not limited to documents sufficient to identify all persons who assisted in any aspect of the research, development, manufacture, testing, marketing, sale, or licensing of the alleged invention(s), and documents sufficient to identify all materials suppliers for any embodiment of the alleged invention(s).

9.    All actual or potential prior art known, cited, referenced, considered, or discussed during or in prosecution of the patents-in-suit or any related patents or patent applications, whether or not first cited or found by the assignee(s), the named inventors, counsel, agent(s), any patent office or any other person or entity.

10.    All documents provided to any Prosecuting Attorney or Inventor by anyone prior to or during the preparation and prosecution of the patents-in-suit or any related patents or patent applications in connection with such preparation and prosecution, including, without limitation notes, laboratory notebooks, sketches, memoranda, articles, technical reports, technical journals, and technical specifications.

11.    All documents and materials concerning the conception of the alleged invention(s) of the patents-in-suit or of related patents or patent applications, the best mode of practicing such alleged invention(s), the reduction to practice of such alleged invention(s), and any improvements to such alleged invention(s), including, but not limited to inventor records,

- 6 -

notebooks, physical embodiments of all or part of such alleged invention(s), and all devices, apparatus or software purchased or built by the inventors for the purpose of researching, developing, or reducing to practice such alleged invention(s).

12.    All documents concerning any actual or constructive reduction to practice of the alleged invention(s) of the patents-in-suit or of any related patents or patent applications, including but not limited to documents relating to research, development, manufacture, testing, marketing, or sale of the alleged invention(s).

13.    All documents concerning any costs associated with the conception, reduction-to-practice, or research and development of the alleged invention(s), including, but not limited to receipts for supplies.

14.    All documents concerning, describing, or evidencing when the inventors, the assignees, their counsel, or anyone subject to the duty of candor before the USPTO learned of any potential or actual prior art to the patents-in-suit or to any related patents or patent applications.

15.    All documents and materials comprising, concerning or referring to any search for prior art to the patents-in-suit or any related patents or patent applications.

16.    All documents comprising, concerning or referring to potential or actual prior art to the patents-in-suit or to any related patents or patent applications, even if you dispute that the material constitutes or discloses prior art, including, but not limited to art cited during prosecution of the patents-in-suit, art cited during the prosecution of any related patents or patent applications, and art disclosed by any third parties (including in any litigation involving the patents-in-suit or in licensing discussions).

-7-

17.    All documents that allegedly support any contention that the alleged invention(s) of the patents-in-suit are not obvious under 35 U.S.C. § 103, including, but not limited to documents that allegedly relate to or evidence secondary considerations of non-obviousness such as commercial success, long-felt need, copying by others, prior failure by others, licensing by others, or unexpected results.

18.    All documents referring to or concerning any litigation or other proceeding involving the patents-in-suit or any related patents or patent applications, including, but not limited to all pleadings, motions, exhibits, orders, depositions or other testimony, hearing transcripts, written discovery responses or initial disclosures, document productions, correspondence, settlement agreements, consent decrees, or any other materials from prior litigations.

19.    All documents and other materials provided to any Prosecuting Attorney by the inventors, any assignee, or their counsel relating to this litigation or to any of the patents-in-suit or any related patent or patent application or to any Paradyne Patent.

20.    All documents and other materials provided by any Prosecuting Attorney to the inventors, any assignee, or their counsel relating to this litigation or to any of the patents-in-suit or any related patent or patent application or to any Paradyne Patent.

21.    All documents concerning the level of ordinary skill in the art of the alleged invention(s) of the patents-in-suit.

22.    All documents concerning the interpretation or construction of any of the claim terms in the patents-in-suit.

- 8 -

### *COMMERCIALIZATION & PRIOR ART*

23.    All documents concerning any disclosure by anyone to anyone of the alleged invention(s) of the patents-in-suit or of related patents or patent applications, including, but not limited to any disclosure of the alleged invention(s) by the assignee(s) or the named inventors to each other or to any third party.

24.    All documents concerning any sale, offer for sale, importation, public use, or public disclosure of any activity, product, process, or method that may embody any of the claims or disclosures of the patents-in-suit or of related patents or patent applications.

25.    All documents concerning the first sale, offer for sale, importation, public use, or public disclosure of any activity, product, process, or method that may embody any of the claims or disclosures of the patents-in-suit or of related patents or patent applications.

26.    All documents referring or relating to any products marketed or sold by any assignee of the patents-in-suit or of related patents or patent applications that relates to any activity, product, process, or method that may embody any of the claims or disclosures of the patents-in-suit or of related patents or patent applications.

27.    All documents concerning trade shows, manuals, articles, books, patents, publications, or any other reference materials relating to the subject matter described, shown or claimed in the patents-in-suit or any related patents or patent applications or any products relating to those patents or applications.

28.    All documents referring or relating to any products that compete with any product marketed or sold by any assignee that relates to any activity, product, process, or method that

- 9 -

may embody any of the claims or disclosures of the patents-in-suit or of related patents or patent applications.

29.    All documents referring or relating to the following products: (1) Enhanced Throughput Cellular or ETC (including ETC1 and ETC2); (2) AT&T KeepInTouch; (3) FrameSaver; (4) Accucom products; (5) Compshere products; (6) 3400, 3800 and 3900 series products; (7) I-Marc 9000 Series products; (8) Eclipse products.

30.    All documents and materials concerning any strategies, plans, or expectations (whether of the assignees of the patents-in-suit or of related patents or patent applications, the inventors, licensing counsel, or otherwise) with respect to the subject matter disclosed or claimed by the patents-in-suit or by any related patents or patent applications, including without limitation any plans to commercialize, sell, license, or otherwise derive business or revenues from the patents-in-suit or from any related patents or applications.

### *PATENT OWNERSHIP & LICENSING*

31.    All documents concerning the ownership of the patents-in-suit or any related patents or patent applications, including, but not limited to all documents relating to assignments, acquisitions, liens, licenses, auctions, sales, or other transfers of rights by or to any entity or person.

32.    All documents concerning any license, proposed license, assignment, proposed assignment, sale, proposed sale, covenant not to sue, right of first refusal or any other actual or proposed transfer or extension of rights in or to the patents-in-suit or any related patents or patent applications.

33.    All documents concerning a reasonable royalty for licensing one or more of the patents-in-suit or any related patents or patent applications.

- 10 -

34.     All documents concerning any settlement, covenant not to sue, consent decree, judgment or other resolution of any litigation (actual or potential) involving the patents-in-suit or any related patents or patent applications.

35.     All documents concerning any products that have been licensed or for which any covenant not to sue has been extended under the patents-in-suit or under any related patents or patent applications.

36.     All documents referring or relating to the actual or potential enforcement of the patents-in-suit or any related patents or patent applications.

37.     All documents comprising, concerning or referring to communications or agreements involving Paradyne, Lucent Technologies, Inc., Texas Pacific Group, Globespan, Rembrandt, and/or Zhone relating to the patents-in-suit or related patents and patent applications or to Paradyne Patents.

38.     All documents referring or relating to the development of any standards that refer, relate to or concern any of the patents-in-suit or related patents or patent applications.

### CABLE & OTHER ISSUES

39.     All Rembrandt, Paradyne, Globespan, Zhone, Inventor or Prosecuting Attorney documents referring or relating to cable modems or cable modem terminating systems.

40.     All documents referring or relating to the development of any standards relating to cable modems or cable modem terminating systems.

41.     All documents referring to or concerning the relationship, or absence thereof, between any version of DOCSIS and any of the patents-in-suit.

42.     All documents concerning any alleged infringement (whether direct, contributory or by inducement) of the patents-in-suit or any related patents.

- 11 -

43.    All documents concerning comparisons between the patents-in-suit or any related patents or patent applications to anything else including any activity, product, process, method, prior art, patent, or publication.

44.    All documents concerning any contention by any person or party, including without limitation any third party, named inventor, prosecuting counsel, prior art search firm, or any other person or party, that any of the patents-in-suit or any related patent or patent application is valid or invalid, enforceable or unenforceable, or infringed or not infringed.

45.    All documents comprising, concerning or referring to any opinions, evaluations, advice, or analyses concerning the validity or invalidity, enforceability or unenforceability, infringement or noninfringement, or scope of the claims of the patents-in-suit or of any related patents or patent applications, and all documents reviewed in the formation of such opinions, evaluations, advice, or analyses.

46.    All documents comprising, concerning or referring to any assertion that any claim of the patents-in-suit is valid or invalid, enforceable or unenforceable, or infringed or not infringed.

## *FURTHER AGREEMENTS & COMMUNICATIONS*

47.    All documents comprising or referring or relating to any agreements including the Inventors or the Prosecuting Attorneys relating to this litigation or to any of the patents-in-suit or any related patent or patent application or any Paradyne Patent.

48.    All documents comprising or referring or relating to any communications with the Inventors or the Prosecuting Attorneys relating to this litigation or to any of the patents-in-suit or any related patent or patent application or to any Paradyne Patent.

49.    All communications with or between the Inventors.

50.    All documents concerning communications regarding the patents-in-suit, any related patents or patent applications or the same or similar subject matter as that disclosed in the patents-in-suit, including, but not limited to internal communications or communications with third parties (including without limitation communications with the USPTO, any foreign patent office, or any assignee).

## *FURTHER BUSINESS DOCUMENTS*

51.    All documents and things referring or relating to the business of Rembrandt, including without limitations all documents and things referring or relating to any intellectual property licensing, acquisition or enforcement agreements, strategies or plans or to any agreements, strategies or plans to supply products or enter agreements with others to supply products implementing any intellectual property.

52.    All documents and things referring or relating to Rembrandt.

53.    All documents and things referring or relating to Remstream or any Remstream product.

54.    Documents sufficient to identify policies and procedures of any assignee for generating, maintaining, and disposing of documents, including, but not limited to policies and procedures relating to patent applications, patent prosecution files, and any scientific or technical references related to such patent prosecution files.

### DUE DILIGENCE AND VALUATIONS

55.    All documents that reflect, discuss, describe, evidence or concern the actual, potential, or possible value, if any, of any of the patents-in-suit or any related patents or patent applications and all documents that were used in, created for, or created during due diligence in any transaction (including by way of illustration but not limitation, any actual or proposed stock sale, asset sale, merger, spin-off, acquisition, divestiture, purchase, assignment, sale, bid, auction, covenant not to sue, license or any other potential or actual transaction) involving Paradyne, any transaction involving any patents-in-suit, or any transaction involving related patents or patent application.

56.    All offering memoranda and other documents created in connection with any transaction involving Paradyne (including by way of illustration but not limitation, any actual or proposed stock sale, asset sale, merger, spin-off, acquisition, divestiture, purchase, assignment, sale, bid, auction, covenant not to sue, license or any other potential or actual transaction) that reflects, discusses, describes, evidences, or concerns any valuation of Paradyne, any patent-in-suit, or any related patent or patent application.

57.    All communications discussing, concerning, reflecting, or describing any due diligence activities involving any patent-in-suit or any related patent or patent application.

- 14 -

58.    All documents created, used in, reflecting, discussing, or covering any due diligence activities in connection with Paradyne, any patent-in-suit, or any related patent or patent application.

59.    Documents sufficient to show identify all financial, legal, or other advisors representing any party involved in any transaction (including by way of illustration but not limitation, any actual or proposed stock sale, asset sale, merger, spin-off, acquisition, divestiture, purchase, assignment, sale, bid, auction, covenant not to sue, license or any other potential or actual transaction) including Paradyne, any patent-in-suit, or any related patent or patent application.

60.    All documents concerning the actual or proposed transfer, sale, securitization, monetization, acquisition or licensing of any patent-in-suit.

61.    All documents and things describing, evidencing, discussing, referring to or relating to any review or inspection of the Paradyne Patents, any agreements relating to the Paradyne Patents or any communications relating to the Paradyne Patents.

62.    All minutes of any board of directors that discuss, evidence or describe the actual or possible value of any patent-in-suit or any related patent or patent application.

63.    All documents presented to or provided to any board of directors that discuss, evidence or describe the actual or possible value of any patent-in-suit or any related patent or patent application.

### *PREVIOUSLY-SUBPOENAED DOCUMENTS*

64.    All documents requested pursuant to any previously-served subpoena in a Related Action.

- 15 -

# TAB 3

AO 88 (Rev. 01/07) Subpoena in a Civil Case

<div align="center">

**Issued by the**

## UNITES STATES DISTRICT COURT

DISTRICT OF DELAWARE

</div>

| | |
|---|---|
| In re: **REMBRANDT TECHNOLOGIES, LP PATENT LITIGATION**<br>**MOTOROLA, INC., et al.**<br><br>V.<br><br><br>**REMBRANDT TECHNOLOGIES, LP** | **SUBPOENA IN A CIVIL CASE**<br><br>CASE NUMBER: [1]   MDL Docket No. 1:07-md-1848-GMS<br>This subpoena relates to:<br>1:07-cv-752-GMS |

TO:    **Presser International, LLC**
c/o Francis DiGiovanni, Esquire
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
Wilmington, DE 19899

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): **See Attachment A.**

| PLACE<br>Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 17th Floor, 1000 West Street, P.O. Box 391, Wilmington, DE 19899-0391 | DATE AND TIME<br>March 29, 2008-9:00a |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure. 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br><br>*[signature]*<br>Attorney for Plaintiffs Motorola, Inc., Cisco Systems, Inc., Scientific-Atlanta, Inc., ARRIS Group, Inc., Thomson, Inc., Ambit Microsystems, Inc., and NETGEAR, Inc. | DATE<br>March 11, 2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Jeffrey T. Castellano, Esquire, Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 17th Floor, PO Box 391, Wilmington, DE 19899-0391 (302) 571-6600

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (DE Rev. 01/07) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                           DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

**ATTACHMENT A**

**DEFINITIONS AND INSTRUCTIONS**

1.    "Rembrandt" means Rembrandt Technologies, LP, Rembrandt Technologies, LLC

d/b/a Remstream, and all predecessors, successors, subsidiaries, parents, sisters, partnerships and

affiliates thereof, and all directors, officers, agents, employees, attorneys and other persons

acting on their behalf.

2.    "Paradyne" refers to any Paradyne entity including without limitation Paradyne

Corporation, AT&T Paradyne, Paradyne Acquisition Corp., Paradyne Networks, Inc., Zhone

Technologies, Inc. (hereafter "Zhone"), collectively and individually, including all predecessors,

successors, subsidiaries, parents, sisters, partnerships and affiliates thereof, and all directors,

officers, agents, employees, attorneys and other persons acting on their behalf.

3.    "Globespan" means GlobeSpan, Inc., GlobeSpan Semiconductor, Inc., and

GlobeSpanVirata, Inc., collectively and individually, including all predecessors, successors,

subsidiaries, parents, sisters, partnerships and affiliates thereof, and all directors, officers, agents,

employees, attorneys and other persons acting on their behalf.

4.    "Patents-in-suit" mean the following patents at issue in this litigation:  U.S. Patent

No. 4,937,819 ("the '819 patent"); U.S. Patent No. 5,008,903 ("the '903 patent"); U.S. Patent

No. 5,710,761 ("the '761 patent"); U.S. Patent No. 5,719,858 ("the '858 patent"); U.S. Patent

No. 5,778,234 ("the '234 patent"); U.S. Patent No. 5,852,631 ("the '631 patent"); U.S. Patent

No. 6,131,159 ("the '159 patent"); U.S. Patent No. 6,960,444 ("the '444 patent").

5.    "Related patents or patent applications" means any U.S. or foreign patent or patent

application that either (i) stems from or claims priority to the patents-in-suit, (ii) describes

subject matter claimed or described in the patents-in-suit, or (iii) claims any subject matter in the

patents-in-suit.  "Related patents or patent applications" specifically includes, but is not limited

to Aband. App. 08/149,348, Aband. App. 09/031,226, CA 2 093 042, EP 0 569 178, Prov. App. 60/022,474, Prov. App. 60/026,970, U.S. Pat. No. 5,751,796 (App No. 08/781,787), U.S. Pat. No. 5,796,808 (App. No. 08/781,067), U.S. Pat. No. 5,787,363 (App No. 08/780,238), WO 97/49193, WO 97/49229, WO 97/49230, WO 97/49228, Prov. App. 60/039,265, U.S. Pat. No. 6,580,785 (App. No. 09/032,671), U.S. Pat. No. 7,020,266 (App. No. 10/269,209), Pend. App. 11/086,063 (U.S. Pub 2005/0163303), Pend. App. 11/690,807, Prov. App. 60/128,064, U.S. Pat. No. 6,922,415 (App. No. 09/537,609), Prov. App. 60/038,324, JP 2002 513532, EP 0 983 691 (WO98 38813), Prov. App. 60/150,436, Pend. App. 10/179,544 (U.S. Pub. 2002/0167949), Pend. App. 11/076,737 (U.S. Pub. 2005/0152404), and any foreign counterparts thereof.

6.      "Paradyne Patents" refers to any patent that was issued to or applied for by or on behalf of any Paradyne entity including without limitation Paradyne Corporation, AT&T Paradyne, or Paradyne Networks, Inc., or issued to or applied for by or on behalf of any inventor named on any of the patents-in-suit.

7.      "Inventors" refers to any of the named inventors on any of the patents-in-suit or related patents or patent applications, including Joseph B. King, Wayne T. Moore, Robert Earl Scott, Gideon Hecht, Kurt Ervin Holmquist, Donald C. Snoll, Joseph Chapman, William L. Betts, or James J. DesRosiers.

8.      "Assignee" or "the assignees" refers to any alleged assignee of the patents-in-suit or any related patents or patent applications, including, but not limited to Paradyne, Rembrandt, AT&T Paradyne, or Lucent Technologies, Inc.

9.      "Prosecuting Attorney" shall refer to any counsel involved in the application or prosecution of a patent-in-suit, related patent or patent application, or Paradyne Patent.

10.    "Document" shall have the meaning accorded by Rule 34(a) of the Federal Rules of

Civil Procedure including, but not limited to all of the matters defined in Rule 1001 of the

Federal Rules of Evidence, any written, printed, typed, recorded, magnetic, punched, copied,

graphic, or other tangible thing in which information may be embodied, translated, conveyed, or

stored. If a draft document has been prepared in several copies that are not identical, or if the

original identical copies are no longer identical due to subsequent notation, each non-identical

document is a separate document.

11.    "Concerning" means pertaining to, relating to, referring to, regarding, representing,

embodying, illustrating, describing, evidencing, discussing, mentioning or constituting.

12.    "Communication" is used in a comprehensive sense, and means any instance in

which any person has had contact with any other person by oral or written utterance, question,

comment, inquiry, notation, or statement of any nature whatsoever, including but not limited to

writings, documents, conversations, dialogues, discussions, interviews, consultations,

agreements, and understandings.

13.    "DOCSIS" shall mean any Data-Over-Cable Service Interface Specification(s),

including but not limited to DOCSIS 1.0, DOCSIS 1.1, and DOCSIS 2.0.

14.    "Related Action" means the Multi-District Litigation *In re: Rembrandt

Technologies LP Patent Litigation*, C.A. No. 07-1848-GMS (D. Del.), and the lawsuits

consolidated therein, including the following: 06-cv-00635-GMS, *Rembrandt Technologies LP v.

Cablevision Systems Corporation et al.*; 06-cv-00721-GMS, *Coxcom Inc. v. Rembrandt

Technologies LP*; 06-cv-00727-GMS, *Rembrandt Technologies LP v. CBS Corporation*; 06-cv-

00729-GMS, *Rembrandt Technologies LP v. NBC Universal Inc.*; 06-cv-00730-GMS,

*Rembrandt Technologies LP v. ABC Inc.*; 06-cv-00731-GMS, *Rembrandt Technologies LP v.*

- 3 -

*Fox Entertainment Group Inc. et al*; 07-cv-00396-GMS, *Rembrandt Technologies LP v.*

*Adelphia Communications Corporation et al*; 07-cv-00397-GMS, *Rembrandt Technologies LP v.*

*Adelphia Commications Corp.*; 07-cv-00398-GMS, *Rembrandt Technologies LP v. Comcast*

*Corporation et al*; 07-cv-00399-GMS, *Rembrandt Technologies LP v. Sharp Corporation et al*;

07-cv-00400-GMS, *Rembrandt Technologies LP v. Charter Communications Inc. et al*; 07-cv-

00401-GMS, *Rembrandt Technologies LP v. Time Warner Cable Inc. et al*; 07-cv-00402-GMS,

*Rembrandt Technologies LP v. Time Warner Cable Inc.*; 07-cv-00403-GMS, *Rembrandt*

*Technologies LP v. Comcast Corporation et al*; and 07-cv-00404-GMS, *Rembrandt*

*Technologies LP v. Charter Communications Inc. et al.*

15.    As used herein, "and" and "or" shall be construed either conjunctively or

disjunctively as necessary to bring within the scope of the discovery request all responses that

might otherwise be construed to be outside of its scope.

16.    Where appropriate, the singular form of a word should be interpreted in the plural

and vice versa, to acquire the broadest possible meaning.

17.    If any document relating to the subject matter of this subpoena has been destroyed,

describe the content of said document, the last location of said document, the date of its

destruction and the name of the person or entity that ordered or authorized its destruction.

## **DOCUMENT REQUESTS**

### *PATENT & PATENT PROSECUTION*

1.    All documents discussing, describing, referring, or relating to the patents-in-suit,

any related patents or patent applications, or to the same or similar subject matter as the subject

matter disclosed in the patents-in-suit.

- 4 -

2.    All documents discussing, describing, referring, or relating to the preparation, filing, or prosecution of the patents-in-suit or any related patents or patent applications, including, but not limited to invention disclosure information, technical descriptions, prior art, publications, non-identical drafts of patent applications, abandoned applications (*e.g.,* Application No. 08/149,348) prosecution file histories of the patents-in-suit, prosecution file histories of related patents or patent applications, communications with inventors or experts, and any communications with any agent, attorney, firm, foreign patent office or the U.S. Patent and Trademark Office ("USPTO").

3.    Documents sufficient to identify all persons who assisted in any aspect of the preparation, filing, or prosecution of the patents-in-suit or any related patents or patent applications.

4.    All documents discussing, describing, referring, or relating to any Paradyne Patents, including without limitation any abandoned application.

5.    All documents concerning the preparation, filing, or prosecution of any Paradyne Patent, including, but not limited to invention disclosure information, technical descriptions, prior art, publications, non-identical drafts of patent applications, abandoned applications, prosecution file histories, communications with inventors or experts, and any communications with any agent, attorney, firm, foreign patent office or the U.S. Patent and Trademark Office ("USPTO").

6.    All documents referring to or concerning any patent applications filed by or patents issued to any of the Inventors.

7.    All documents evidencing, describing, concerning, or referring to the preparation, filing, or prosecution of any patents or patent applications naming one or more of the Inventors,

including, but not limited to invention disclosure information, technical descriptions, prior art, publications, non-identical drafts of patent applications, abandoned applications, prosecution file histories, and any communications with any agent, attorney, firm, foreign patent office or the U.S. Patent and Trademark Office ("USPTO").

8.    All documents and materials concerning inventorship of any invention allegedly disclosed or claimed by the patents-in-suit or by any related patents or patent applications, including, but not limited to documents sufficient to identify all persons who assisted in any aspect of the research, development, manufacture, testing, marketing, sale, or licensing of the alleged invention(s), and documents sufficient to identify all materials suppliers for any embodiment of the alleged invention(s).

9.    All actual or potential prior art known, cited, referenced, considered, or discussed during or in prosecution of the patents-in-suit or any related patents or patent applications, whether or not first cited or found by the assignee(s), the named inventors, counsel, agent(s), any patent office or any other person or entity.

10.    All documents provided to any Prosecuting Attorney or Inventor by anyone prior to or during the preparation and prosecution of the patents-in-suit or any related patents or patent applications in connection with such preparation and prosecution, including, without limitation notes, laboratory notebooks, sketches, memoranda, articles, technical reports, technical journals, and technical specifications.

11.    All documents and materials concerning the conception of the alleged invention(s) of the patents-in-suit or of related patents or patent applications, the best mode of practicing such alleged invention(s), the reduction to practice of such alleged invention(s), and any improvements to such alleged invention(s), including, but not limited to inventor records,

- 6 -

notebooks, physical embodiments of all or part of such alleged invention(s), and all devices, apparatus or software purchased or built by the inventors for the purpose of researching, developing, or reducing to practice such alleged invention(s).

12.    All documents concerning any actual or constructive reduction to practice of the alleged invention(s) of the patents-in-suit or of any related patents or patent applications, including but not limited to documents relating to research, development, manufacture, testing, marketing, or sale of the alleged invention(s).

13.    All documents concerning any costs associated with the conception, reduction-to-practice, or research and development of the alleged invention(s), including, but not limited to receipts for supplies.

14.    All documents concerning, describing, or evidencing when the inventors, the assignees, their counsel, or anyone subject to the duty of candor before the USPTO learned of any potential or actual prior art to the patents-in-suit or to any related patents or patent applications.

15.    All documents and materials comprising, concerning or referring to any search for prior art to the patents-in-suit or any related patents or patent applications.

16.    All documents comprising, concerning or referring to potential or actual prior art to the patents-in-suit or to any related patents or patent applications, even if you dispute that the material constitutes or discloses prior art, including, but not limited to art cited during prosecution of the patents-in-suit, art cited during the prosecution of any related patents or patent applications, and art disclosed by any third parties (including in any litigation involving the patents-in-suit or in licensing discussions).

- 7 -

17.    All documents that allegedly support any contention that the alleged invention(s) of the patents-in-suit are not obvious under 35 U.S.C. § 103, including, but not limited to documents that allegedly relate to or evidence secondary considerations of non-obviousness such as commercial success, long-felt need, copying by others, prior failure by others, licensing by others, or unexpected results.

18.    All documents referring to or concerning any litigation or other proceeding involving the patents-in-suit or any related patents or patent applications, including, but not limited to all pleadings, motions, exhibits, orders, depositions or other testimony, hearing transcripts, written discovery responses or initial disclosures, document productions, correspondence, settlement agreements, consent decrees, or any other materials from prior litigations.

19.    All documents and other materials provided to any Prosecuting Attorney by the inventors, any assignee, or their counsel relating to this litigation or to any of the patents-in-suit or any related patent or patent application or to any Paradyne Patent.

20.    All documents and other materials provided by any Prosecuting Attorney to the inventors, any assignee, or their counsel relating to this litigation or to any of the patents-in-suit or any related patent or patent application or to any Paradyne Patent.

21.    All documents concerning the level of ordinary skill in the art of the alleged invention(s) of the patents-in-suit.

22.    All documents concerning the interpretation or construction of any of the claim terms in the patents-in-suit.

### *COMMERCIALIZATION & PRIOR ART*

23.     All documents concerning any disclosure by anyone to anyone of the alleged invention(s) of the patents-in-suit or of related patents or patent applications, including, but not limited to any disclosure of the alleged invention(s) by the assignee(s) or the named inventors to each other or to any third party.

24.     All documents concerning any sale, offer for sale, importation, public use, or public disclosure of any activity, product, process, or method that may embody any of the claims or disclosures of the patents-in-suit or of related patents or patent applications.

25.     All documents concerning the first sale, offer for sale, importation, public use, or public disclosure of any activity, product, process, or method that may embody any of the claims or disclosures of the patents-in-suit or of related patents or patent applications.

26.     All documents referring or relating to any products marketed or sold by any assignee of the patents-in-suit or of related patents or patent applications that relates to any activity, product, process, or method that may embody any of the claims or disclosures of the patents-in-suit or of related patents or patent applications.

27.     All documents concerning trade shows, manuals, articles, books, patents, publications, or any other reference materials relating to the subject matter described, shown or claimed in the patents-in-suit or any related patents or patent applications or any products relating to those patents or applications.

28.     All documents referring or relating to any products that compete with any product marketed or sold by any assignee that relates to any activity, product, process, or method that

may embody any of the claims or disclosures of the patents-in-suit or of related patents or patent applications.

29.    All documents referring or relating to the following products: (1) Enhanced Throughput Cellular or ETC (including ETC1 and ETC2); (2) AT&T KeepInTouch; (3) FrameSaver; (4) Accucom products; (5) Compshere products; (6) 3400, 3800 and 3900 series products; (7) I-Marc 9000 Series products; (8) Eclipse products.

30.    All documents and materials concerning any strategies, plans, or expectations (whether of the assignees of the patents-in-suit or of related patents or patent applications, the inventors, licensing counsel, or otherwise) with respect to the subject matter disclosed or claimed by the patents-in-suit or by any related patents or patent applications, including without limitation any plans to commercialize, sell, license, or otherwise derive business or revenues from the patents-in-suit or from any related patents or applications.

### PATENT OWNERSHIP & LICENSING

31.    All documents concerning the ownership of the patents-in-suit or any related patents or patent applications, including, but not limited to all documents relating to assignments, acquisitions, liens, licenses, auctions, sales, or other transfers of rights by or to any entity or person.

32.    All documents concerning any license, proposed license, assignment, proposed assignment, sale, proposed sale, covenant not to sue, right of first refusal or any other actual or proposed transfer or extension of rights in or to the patents-in-suit or any related patents or patent applications.

33.    All documents concerning a reasonable royalty for licensing one or more of the patents-in-suit or any related patents or patent applications.

- 10 -

34.    All documents concerning any settlement, covenant not to sue, consent decree, judgment or other resolution of any litigation (actual or potential) involving the patents-in-suit or any related patents or patent applications.

35.    All documents concerning any products that have been licensed or for which any covenant not to sue has been extended under the patents-in-suit or under any related patents or patent applications.

36.    All documents referring or relating to the actual or potential enforcement of the patents-in-suit or any related patents or patent applications.

37.    All documents comprising, concerning or referring to communications or agreements involving Paradyne, Lucent Technologies, Inc., Texas Pacific Group, Globespan, Rembrandt, and/or Zhone relating to the patents-in-suit or related patents and patent applications or to Paradyne Patents.

38.    All documents referring or relating to the development of any standards that refer, relate to or concern any of the patents-in-suit or related patents or patent applications.

### CABLE & OTHER ISSUES

39.    All Rembrandt, Paradyne, Globespan, Zhone, Inventor or Prosecuting Attorney documents referring or relating to cable modems or cable modem terminating systems.

40.    All documents referring or relating to the development of any standards relating to cable modems or cable modem terminating systems.

41.    All documents referring to or concerning the relationship, or absence thereof, between any version of DOCSIS and any of the patents-in-suit.

42.    All documents concerning any alleged infringement (whether direct, contributory or by inducement) of the patents-in-suit or any related patents.

- 11 -

43.    All documents concerning comparisons between the patents-in-suit or any related patents or patent applications to anything else including any activity, product, process, method, prior art, patent, or publication.

44.    All documents concerning any contention by any person or party, including without limitation any third party, named inventor, prosecuting counsel, prior art search firm, or any other person or party, that any of the patents-in-suit or any related patent or patent application is valid or invalid, enforceable or unenforceable, or infringed or not infringed.

45.    All documents comprising, concerning or referring to any opinions, evaluations, advice, or analyses concerning the validity or invalidity, enforceability or unenforceability, infringement or noninfringement, or scope of the claims of the patents-in-suit or of any related patents or patent applications, and all documents reviewed in the formation of such opinions, evaluations, advice, or analyses.

46.    All documents comprising, concerning or referring to any assertion that any claim of the patents-in-suit is valid or invalid, enforceable or unenforceable, or infringed or not infringed.

### *FURTHER AGREEMENTS & COMMUNICATIONS*

47.     All documents comprising or referring or relating to any agreements including the Inventors or the Prosecuting Attorneys relating to this litigation or to any of the patents-in-suit or any related patent or patent application or any Paradyne Patent.

48.     All documents comprising or referring or relating to any communications with the Inventors or the Prosecuting Attorneys relating to this litigation or to any of the patents-in-suit or any related patent or patent application or to any Paradyne Patent.

49.     All communications with or between the Inventors.

50.     All documents concerning communications regarding the patents-in-suit, any related patents or patent applications or the same or similar subject matter as that disclosed in the patents-in-suit, including, but not limited to internal communications or communications with third parties (including without limitation communications with the USPTO, any foreign patent office, or any assignee).

### *FURTHER BUSINESS DOCUMENTS*

51.     All documents and things referring or relating to the business of Rembrandt, including without limitations all documents and things referring or relating to any intellectual property licensing, acquisition or enforcement agreements, strategies or plans or to any agreements, strategies or plans to supply products or enter agreements with others to supply products implementing any intellectual property.

52.     All documents and things referring or relating to Rembrandt.

53.     All documents and things referring or relating to Remstream or any Remstream product.

- 13 -

54.    Documents sufficient to identify policies and procedures of any assignee for generating, maintaining, and disposing of documents, including, but not limited to policies and procedures relating to patent applications, patent prosecution files, and any scientific or technical references related to such patent prosecution files.

## DUE DILIGENCE AND VALUATIONS

55.    All documents that reflect, discuss, describe, evidence or concern the actual, potential, or possible value, if any, of any of the patents-in-suit or any related patents or patent applications and all documents that were used in, created for, or created during due diligence in any transaction (including by way of illustration but not limitation, any actual or proposed stock sale, asset sale, merger, spin-off, acquisition, divestiture, purchase, assignment, sale, bid, auction, covenant not to sue, license or any other potential or actual transaction) involving Paradyne, any transaction involving any patents-in-suit, or any transaction involving related patents or patent application.

56.    All offering memoranda and other documents created in connection with any transaction involving Paradyne (including by way of illustration but not limitation, any actual or proposed stock sale, asset sale, merger, spin-off, acquisition, divestiture, purchase, assignment, sale, bid, auction, covenant not to sue, license or any other potential or actual transaction) that reflects, discusses, describes, evidences, or concerns any valuation of Paradyne, any patent-in-suit, or any related patent or patent application.

57.    All communications discussing, concerning, reflecting, or describing any due diligence activities involving any patent-in-suit or any related patent or patent application.

- 14 -

58.    All documents created, used in, reflecting, discussing, or covering any due diligence activities in connection with Paradyne, any patent-in-suit, or any related patent or patent application.

59.    Documents sufficient to show identify all financial, legal, or other advisors representing any party involved in any transaction (including by way of illustration but not limitation, any actual or proposed stock sale, asset sale, merger, spin-off, acquisition, divestiture, purchase, assignment, sale, bid, auction, covenant not to sue, license or any other potential or actual transaction) including Paradyne, any patent-in-suit, or any related patent or patent application.

60.    All documents concerning the actual or proposed transfer, sale, securitization, monetization, acquisition or licensing of any patent-in-suit.

61.    All documents and things describing, evidencing, discussing, referring to or relating to any review or inspection of the Paradyne Patents, any agreements relating to the Paradyne Patents or any communications relating to the Paradyne Patents.

62.    All minutes of any board of directors that discuss, evidence or describe the actual or possible value of any patent-in-suit or any related patent or patent application.

63.    All documents presented to or provided to any board of directors that discuss, evidence or describe the actual or possible value of any patent-in-suit or any related patent or patent application.

### *PREVIOUSLY-SUBPOENAED DOCUMENTS*

64.    All documents requested pursuant to any previously-served subpoena in a Related Action.

- 15 -

066919.1001

# TAB 4

AO 88 (Rev. 01/07) Subpoena in a Civil Case

## Issued by the
# UNITES STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

In re: REMBRANDT TECHNOLOGIES, LP
**PATENT LITIGATION**
MOTOROLA, INC., et al.

## SUBPOENA IN A CIVIL CASE

V.

CASE
NUMBER: [1]

MDL Docket No. 1:07-md-1848-GMS
(pending in the District of Delaware)
This subpoena relates to:
1:07-cv-752-GMS
(pending in the District of Delaware)

REMBRANDT TECHNOLOGIES, LP

TO:
Ronald E. Brown, Esquire
c/o Day Pitney LLP
7 Times Square-Broadway Between 41st and 42nd Street
New York, NY  10036

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify
in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the
above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place,
date, and time specified below (list documents or objects): **See Attachment A.**

| PLACE | DATE AND TIME |
|---|---|
| Young Conaway Stargatt & Taylor, LLP, 845 Third Avenue, Suite 606, New York, NY  10022; (646) 290-5018 | March 27, 2008-9:00a |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other
persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil
Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _[signature]_ Attorney for Plaintiffs Motorola, Inc., Cisco Systems, Inc., Scientific-Atlanta, Inc., ARRIS Group, Inc., Thomson, Inc., Ambit Microsystems, Inc., and NETGEAR, Inc. | March 10, 2008 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Jeffrey T. Castellano, Esquire, Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 17th Floor, PO Box 391,
Wilmington, DE 19899-0391 (302) 571-6600

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (DE Rev. 01/07) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

**ATTACHMENT A**

**DEFINITIONS AND INSTRUCTIONS**

1.     "Rembrandt" means Rembrandt Technologies, LP, Rembrandt Technologies, LLC d/b/a Remstream, and all predecessors, successors, subsidiaries, parents, sisters, partnerships and affiliates thereof, and all directors, officers, agents, employees, attorneys and other persons acting on their behalf.

2.     "Paradyne" refers to any Paradyne entity including without limitation Paradyne Corporation, AT&T Paradyne, Paradyne Acquisition Corp., Paradyne Networks, Inc., Zhone Technologies, Inc. (hereafter "Zhone"), collectively and individually, including all predecessors, successors, subsidiaries, parents, sisters, partnerships and affiliates thereof, and all directors, officers, agents, employees, attorneys and other persons acting on their behalf.

3.     "Globespan" means GlobeSpan, Inc., GlobeSpan Semiconductor, Inc., and GlobeSpanVirata, Inc., collectively and individually, including all predecessors, successors, subsidiaries, parents, sisters, partnerships and affiliates thereof, and all directors, officers, agents, employees, attorneys and other persons acting on their behalf.

4.     "Patents-in-suit" mean the following patents at issue in this litigation:  U.S. Patent No. 4,937,819 ("the '819 patent"); U.S. Patent No. 5,008,903 ("the '903 patent"); U.S. Patent No. 5,710,761 ("the '761 patent"); U.S. Patent No. 5,719,858 ("the '858 patent"); U.S. Patent No. 5,778,234 ("the '234 patent"); U.S. Patent No. 5,852,631 ("the '631 patent"); U.S. Patent No. 6,131,159 ("the '159 patent"); U.S. Patent No. 6,960,444 ("the '444 patent").

5.     "Related patents or patent applications" means any U.S. or foreign patent or patent application that either (i) stems from or claims priority to the patents-in-suit, (ii) describes subject matter claimed or described in the patents-in-suit, or (iii) claims any subject matter in the patents-in-suit.  "Related patents or patent applications" specifically includes, but is not limited

to Aband. App. 08/149,348, Aband. App. 09/031,226, CA 2 093 042, EP 0 569 178, Prov. App. 60/022,474, Prov. App. 60/026,970, U.S. Pat. No. 5,751,796 (App No. 08/781,787), U.S. Pat. No. 5,796,808 (App. No. 08/781,067), U.S. Pat. No. 5,787,363 (App No. 08/780,238), WO 97/49193, WO 97/49229, WO 97/49230, WO 97/49228, Prov. App. 60/039,265, U.S. Pat. No. 6,580,785 (App. No. 09/032,671), U.S. Pat. No. 7,020,266 (App. No. 10/269,209), Pend. App. 11/086,063 (U.S. Pub 2005/0163303), Pend. App. 11/690,807, Prov. App. 60/128,064, U.S. Pat. No. 6,922,415 (App. No. 09/537,609), Prov. App. 60/038,324, JP 2002 513532, EP 0 983 691 (WO98 38813), Prov. App. 60/150,436, Pend. App. 10/179,544 (U.S. Pub. 2002/0167949), Pend. App. 11/076,737 (U.S. Pub. 2005/0152404), and any foreign counterparts thereof.

6.    "Paradyne Patents" refers to any patent that was issued to or applied for by or on behalf of any Paradyne entity including without limitation Paradyne Corporation, AT&T Paradyne, or Paradyne Networks, Inc., or issued to or applied for by or on behalf of any inventor named on any of the patents-in-suit.

7.    "Inventors" refers to any of the named inventors on any of the patents-in-suit or related patents or patent applications, including Joseph B. King, Wayne T. Moore, Robert Earl Scott, Gideon Hecht, Kurt Ervin Holmquist, Donald C. Snoll, Joseph Chapman, William L. Betts, or James J. DesRosiers.

8.    "Assignee" or "the assignees" refers to any alleged assignee of the patents-in-suit or any related patents or patent applications, including, but not limited to Paradyne, Rembrandt, AT&T Paradyne, or Lucent Technologies, Inc.

9.    "Prosecuting Attorney" shall refer to any counsel involved in the application or prosecution of a patent-in-suit, related patent or patent application, or Paradyne Patent.

- 2 -

10. "Document" shall have the meaning accorded by Rule 34(a) of the Federal Rules of Civil Procedure including, but not limited to all of the matters defined in Rule 1001 of the Federal Rules of Evidence, any written, printed, typed, recorded, magnetic, punched, copied, graphic, or other tangible thing in which information may be embodied, translated, conveyed, or stored. If a draft document has been prepared in several copies that are not identical, or if the original identical copies are no longer identical due to subsequent notation, each non-identical document is a separate document.

11. "Concerning" means pertaining to, relating to, referring to, regarding, representing, embodying, illustrating, describing, evidencing, discussing, mentioning or constituting.

12. "Communication" is used in a comprehensive sense, and means any instance in which any person has had contact with any other person by oral or written utterance, question, comment, inquiry, notation, or statement of any nature whatsoever, including but not limited to writings, documents, conversations, dialogues, discussions, interviews, consultations, agreements, and understandings.

13. "DOCSIS" shall mean any Data-Over-Cable Service Interface Specification(s), including but not limited to DOCSIS 1.0, DOCSIS 1.1, and DOCSIS 2.0.

14. "Related Action" means the Multi-District Litigation *In re: Rembrandt Technologies LP Patent Litigation*, C.A. No. 07-1848-GMS (D. Del.), and the lawsuits consolidated therein, including the following: 06-cv-00635-GMS, *Rembrandt Technologies LP v. Cablevision Systems Corporation et al.*; 06-cv-00721-GMS, *Coxcom Inc. v. Rembrandt Technologies LP*; 06-cv-00727-GMS, *Rembrandt Technologies LP v. CBS Corporation*; 06-cv-00729-GMS, *Rembrandt Technologies LP v. NBC Universal Inc.*; 06-cv-00730-GMS, *Rembrandt Technologies LP v. ABC Inc.*; 06-cv-00731-GMS, *Rembrandt Technologies LP v.*

- 3 -

*Fox Entertainment Group Inc. et al*; 07-cv-00396-GMS, *Rembrandt Technologies LP v. Adelphia Communications Corporation et al*; 07-cv-00397-GMS, *Rembrandt Technologies LP v. Adelphia Commications Corp.*; 07-cv-00398-GMS, *Rembrandt Technologies LP v. Comcast Corporation et al*; 07-cv-00399-GMS, *Rembrandt Technologies LP v. Sharp Corporation et al*; 07-cv-00400-GMS, *Rembrandt Technologies LP v. Charter Communications Inc. et al*; 07-cv-00401-GMS, *Rembrandt Technologies LP v. Time Warner Cable Inc. et al*; 07-cv-00402-GMS, *Rembrandt Technologies LP v. Time Warner Cable Inc.*; 07-cv-00403-GMS, *Rembrandt Technologies LP v. Comcast Corporation et al*; and 07-cv-00404-GMS, *Rembrandt Technologies LP v. Charter Communications Inc. et al.*

15.    As used herein, "and" and "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

16.    Where appropriate, the singular form of a word should be interpreted in the plural and vice versa, to acquire the broadest possible meaning.

17.    If any document relating to the subject matter of this subpoena has been destroyed, describe the content of said document, the last location of said document, the date of its destruction and the name of the person or entity that ordered or authorized its destruction.

## DOCUMENT REQUESTS

### *PATENT & PATENT PROSECUTION*

1.    All documents discussing, describing, referring, or relating to the patents-in-suit, any related patents or patent applications, or to the same or similar subject matter as the subject matter disclosed in the patents-in-suit.

- 4 -

2.      All documents discussing, describing, referring, or relating to the preparation,

filing, or prosecution of the patents-in-suit or any related patents or patent applications,

including, but not limited to invention disclosure information, technical descriptions, prior art,

publications, non-identical drafts of patent applications, abandoned applications (*e.g.*,

Application No. 08/149,348) prosecution file histories of the patents-in-suit, prosecution file

histories of related patents or patent applications, communications with inventors or experts, and

any communications with any agent, attorney, firm, foreign patent office or the U.S. Patent and

Trademark Office ("USPTO").

3.      Documents sufficient to identify all persons who assisted in any aspect of the

preparation, filing, or prosecution of the patents-in-suit or any related patents or patent

applications.

4.      All documents discussing, describing, referring, or relating to any Paradyne

Patents, including without limitation any abandoned application.

5.      All documents concerning the preparation, filing, or prosecution of any Paradyne

Patent, including, but not limited to invention disclosure information, technical descriptions,

prior art, publications, non-identical drafts of patent applications, abandoned applications,

prosecution file histories, communications with inventors or experts, and any communications

with any agent, attorney, firm, foreign patent office or the U.S. Patent and Trademark Office

("USPTO").

6.      All documents referring to or concerning any patent applications filed by or

patents issued to any of the Inventors.

7.      All documents evidencing, describing, concerning, or referring to the preparation,

filing, or prosecution of any patents or patent applications naming one or more of the Inventors,

including, but not limited to invention disclosure information, technical descriptions, prior art,
publications, non-identical drafts of patent applications, abandoned applications, prosecution file
histories, and any communications with any agent, attorney, firm, foreign patent office or the
U.S. Patent and Trademark Office ("USPTO").

8.      All documents and materials concerning inventorship of any invention allegedly
disclosed or claimed by the patents-in-suit or by any related patents or patent applications,
including, but not limited to documents sufficient to identify all persons who assisted in any
aspect of the research, development, manufacture, testing, marketing, sale, or licensing of the
alleged invention(s), and documents sufficient to identify all materials suppliers for any
embodiment of the alleged invention(s).

9.      All actual or potential prior art known, cited, referenced, considered, or discussed
during or in prosecution of the patents-in-suit or any related patents or patent applications,
whether or not first cited or found by the assignee(s), the named inventors, counsel, agent(s), any
patent office or any other person or entity.

10.     All documents provided to any Prosecuting Attorney or Inventor by anyone prior
to or during the preparation and prosecution of the patents-in-suit or any related patents or patent
applications in connection with such preparation and prosecution, including, without limitation
notes, laboratory notebooks, sketches, memoranda, articles, technical reports, technical journals,
and technical specifications.

11.     All documents and materials concerning the conception of the alleged
invention(s) of the patents-in-suit or of related patents or patent applications, the best mode of
practicing such alleged invention(s), the reduction to practice of such alleged invention(s), and
any improvements to such alleged invention(s), including, but not limited to inventor records,

- 6 -

notebooks, physical embodiments of all or part of such alleged invention(s), and all devices, apparatus or software purchased or built by the inventors for the purpose of researching, developing, or reducing to practice such alleged invention(s).

12.    All documents concerning any actual or constructive reduction to practice of the alleged invention(s) of the patents-in-suit or of any related patents or patent applications, including but not limited to documents relating to research, development, manufacture, testing, marketing, or sale  of the alleged invention(s).

13.    All documents concerning any costs associated with the conception, reduction-to-practice, or research and development of the alleged invention(s), including, but not limited to receipts for supplies.

14.    All documents concerning, describing, or evidencing when the inventors, the assignees, their counsel, or anyone subject to the duty of candor before the USPTO learned of any potential or actual prior art to the patents-in-suit or to any related patents or patent applications.

15.    All documents and materials comprising, concerning or referring to any search for prior art to the patents-in-suit or any related patents or patent applications.

16.    All documents comprising, concerning or referring to potential or actual prior art to the patents-in-suit or to any related patents or patent applications, even if you dispute that the material constitutes or discloses prior art, including, but not limited to art cited during prosecution of the patents-in-suit, art cited during the prosecution of any related patents or patent applications, and art disclosed by any third parties (including in any litigation involving the patents-in-suit or in licensing discussions).

17.     All documents that allegedly support any contention that the alleged invention(s) of the patents-in-suit are not obvious under 35 U.S.C. § 103, including, but not limited to documents that allegedly relate to or evidence secondary considerations of non-obviousness such as commercial success, long-felt need, copying by others, prior failure by others, licensing by others, or unexpected results.

18.     All documents referring to or concerning any litigation or other proceeding involving the patents-in-suit or any related patents or patent applications, including, but not limited to all pleadings, motions, exhibits, orders, depositions or other testimony, hearing transcripts, written discovery responses or initial disclosures, document productions, correspondence, settlement agreements, consent decrees, or any other materials from prior litigations.

19.     All documents and other materials provided to any Prosecuting Attorney by the inventors, any assignee, or their counsel relating to this litigation or to any of the patents-in-suit or any related patent or patent application or to any Paradyne Patent.

20.     All documents and other materials provided by any Prosecuting Attorney to the inventors, any assignee, or their counsel relating to this litigation or to any of the patents-in-suit or any related patent or patent application or to any Paradyne Patent.

21.     All documents concerning the level of ordinary skill in the art of the alleged invention(s) of the patents-in-suit.

22.     All documents concerning the interpretation or construction of any of the claim terms in the patents-in-suit.

## *COMMERCIALIZATION & PRIOR ART*

23.    All documents concerning any disclosure by anyone to anyone of the alleged invention(s) of the patents-in-suit or of related patents or patent applications, including, but not limited to any disclosure of the alleged invention(s) by the assignee(s) or the named inventors to each other or to any third party.

24.    All documents concerning any sale, offer for sale, importation, public use, or public disclosure of any activity, product, process, or method that may embody any of the claims or disclosures of the patents-in-suit or of related patents or patent applications.

25.    All documents concerning the first sale, offer for sale, importation, public use, or public disclosure of any activity, product, process, or method that may embody any of the claims or disclosures of the patents-in-suit or of related patents or patent applications.

26.    All documents referring or relating to any products marketed or sold by any assignee of the patents-in-suit or of related patents or patent applications that relates to any activity, product, process, or method that may embody any of the claims or disclosures of the patents-in-suit or of related patents or patent applications.

27.    All documents concerning trade shows, manuals, articles, books, patents, publications, or any other reference materials relating to the subject matter described, shown or claimed in the patents-in-suit or any related patents or patent applications or any products relating to those patents or applications.

28.    All documents referring or relating to any products that compete with any product marketed or sold by any assignee that relates to any activity, product, process, or method that

- 9 -

may embody any of the claims or disclosures of the patents-in-suit or of related patents or patent applications.

29.    All documents referring or relating to the following products: (1) Enhanced Throughput Cellular or ETC (including ETC1 and ETC2); (2) AT&T KeepInTouch; (3) FrameSaver; (4) Accucom products; (5) Compshere products; (6) 3400, 3800 and 3900 series products; (7) I-Marc 9000 Series products; (8) Eclipse products.

30.    All documents and materials concerning any strategies, plans, or expectations (whether of the assignees of the patents-in-suit or of related patents or patent applications, the inventors, licensing counsel, or otherwise) with respect to the subject matter disclosed or claimed by the patents-in-suit or by any related patents or patent applications, including without limitation any plans to commercialize, sell, license, or otherwise derive business or revenues from the patents-in-suit or from any related patents or applications.

### PATENT OWNERSHIP & LICENSING

31.    All documents concerning the ownership of the patents-in-suit or any related patents or patent applications, including, but not limited to all documents relating to assignments, acquisitions, liens, licenses, auctions, sales, or other transfers of rights by or to any entity or person.

32.    All documents concerning any license, proposed license, assignment, proposed assignment, sale, proposed sale, covenant not to sue, right of first refusal or any other actual or proposed transfer or extension of rights in or to the patents-in-suit or any related patents or patent applications.

33.    All documents concerning a reasonable royalty for licensing one or more of the patents-in-suit or any related patents or patent applications.

- 10 -

34.    All documents concerning any settlement, covenant not to sue, consent decree, judgment or other resolution of any litigation (actual or potential) involving the patents-in-suit or any related patents or patent applications.

35.    All documents concerning any products that have been licensed or for which any covenant not to sue has been extended under the patents-in-suit or under any related patents or patent applications.

36.    All documents referring or relating to the actual or potential enforcement of the patents-in-suit or any related patents or patent applications.

37.    All documents comprising, concerning or referring to communications or agreements involving Paradyne, Lucent Technologies, Inc., Texas Pacific Group, Globespan, Rembrandt, and/or Zhone relating to the patents-in-suit or related patents and patent applications or to Paradyne Patents.

38.    All documents referring or relating to the development of any standards that refer, relate to or concern any of the patents-in-suit or related patents or patent applications.

### CABLE & OTHER ISSUES

39.    All Rembrandt, Paradyne, Globespan, Zhone, Inventor or Prosecuting Attorney documents referring or relating to cable modems or cable modem terminating systems.

40.    All documents referring or relating to the development of any standards relating to cable modems or cable modem terminating systems.

41.    All documents referring to or concerning the relationship, or absence thereof, between any version of DOCSIS and any of the patents-in-suit.

42.    All documents concerning any alleged infringement (whether direct, contributory or by inducement) of the patents-in-suit or any related patents.

- 11 -

43.    All documents concerning comparisons between the patents-in-suit or any related patents or patent applications to anything else including any activity, product, process, method, prior art, patent, or publication.

44.    All documents concerning any contention by any person or party, including without limitation any third party, named inventor, prosecuting counsel, prior art search firm, or any other person or party, that any of the patents-in-suit or any related patent or patent application is valid or invalid, enforceable or unenforceable, or infringed or not infringed.

45.    All documents comprising, concerning or referring to any opinions, evaluations, advice, or analyses concerning the validity or invalidity, enforceability or unenforceability, infringement or noninfringement, or scope of the claims of the patents-in-suit or of any related patents or patent applications, and all documents reviewed in the formation of such opinions, evaluations, advice, or analyses.

46.    All documents comprising, concerning or referring to any assertion that any claim of the patents-in-suit is valid or invalid, enforceable or unenforceable, or infringed or not infringed.

DB02:6633542.2                                          066919.1001

## *FURTHER AGREEMENTS & COMMUNICATIONS*

47.    All documents comprising or referring or relating to any agreements including the Inventors or the Prosecuting Attorneys relating to this litigation or to any of the patents-in-suit or any related patent or patent application or any Paradyne Patent.

48.    All documents comprising or referring or relating to any communications with the Inventors or the Prosecuting Attorneys relating to this litigation or to any of the patents-in-suit or any related patent or patent application or to any Paradyne Patent.

49.    All communications with or between the Inventors.

50.    All documents concerning communications regarding the patents-in-suit, any related patents or patent applications or the same or similar subject matter as that disclosed in the patents-in-suit, including, but not limited to internal communications or communications with third parties (including without limitation communications with the USPTO, any foreign patent office, or any assignee).

## *FURTHER BUSINESS DOCUMENTS*

51.    All documents and things referring or relating to the business of Rembrandt, including without limitations all documents and things referring or relating to any intellectual property licensing, acquisition or enforcement agreements, strategies or plans or to any agreements, strategies or plans to supply products or enter agreements with others to supply products implementing any intellectual property.

52.    All documents and things referring or relating to Rembrandt.

53.    All documents and things referring or relating to Remstream or any Remstream product.

54.     Documents sufficient to identify policies and procedures of any assignee for generating, maintaining, and disposing of documents, including, but not limited to policies and procedures relating to patent applications, patent prosecution files, and any scientific or technical references related to such patent prosecution files.

### *DUE DILIGENCE AND VALUATIONS*

55.     All documents that reflect, discuss, describe, evidence or concern the actual, potential, or possible value, if any, of any of the patents-in-suit or any related patents or patent applications and all documents that were used in, created for, or created during due diligence in any transaction (including by way of illustration but not limitation, any actual or proposed stock sale, asset sale, merger, spin-off, acquisition, divestiture, purchase, assignment, sale, bid, auction, covenant not to sue, license or any other potential or actual transaction) involving Paradyne, any transaction involving any patents-in-suit, or any transaction involving related patents or patent application.

56.     All offering memoranda and other documents created in connection with any transaction involving Paradyne (including by way of illustration but not limitation, any actual or proposed stock sale, asset sale, merger, spin-off, acquisition, divestiture, purchase, assignment, sale, bid, auction, covenant not to sue, license or any other potential or actual transaction) that reflects, discusses, describes, evidences, or concerns any valuation of Paradyne, any patent-in-suit, or any related patent or patent application.

57.     All communications discussing, concerning, reflecting, or describing any due diligence activities involving any patent-in-suit or any related patent or patent application.

066919.1001

58.    All documents created, used in, reflecting, discussing, or covering any due diligence activities in connection with Paradyne, any patent-in-suit, or any related patent or patent application.

59.    Documents sufficient to show identify all financial, legal, or other advisors representing any party involved in any transaction (including by way of illustration but not limitation, any actual or proposed stock sale, asset sale, merger, spin-off, acquisition, divestiture, purchase, assignment, sale, bid, auction, covenant not to sue, license or any other potential or actual transaction) including Paradyne, any patent-in-suit, or any related patent or patent application.

60.    All documents concerning the actual or proposed transfer, sale, securitization, monetization, acquisition or licensing of any patent-in-suit.

61.    All documents and things describing, evidencing, discussing, referring to or relating to any review or inspection of the Paradyne Patents, any agreements relating to the Paradyne Patents or any communications relating to the Paradyne Patents.

62.    All minutes of any board of directors that discuss, evidence or describe the actual or possible value of any patent-in-suit or any related patent or patent application.

63.    All documents presented to or provided to any board of directors that discuss, evidence or describe the actual or possible value of any patent-in-suit or any related patent or patent application.

### *PREVIOUSLY-SUBPOENAED DOCUMENTS*

64.    All documents requested pursuant to any previously-served subpoena in a Related Action.

# TAB 5

AO 88 (Rev. 01/07) Subpoena in a Civil Case

<div align="center">

**Issued by the**

# UNITES STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

</div>

| | |
|---|---|
| **In re: REMBRANDT TECHNOLOGIES, LP PATENT LITIGATION**<br>**MOTOROLA, INC., et al.**<br><br><div align="center">**V.**</div> | **SUBPOENA IN A CIVIL CASE**<br><br>MDL Docket No. 1:07-md-1848-GMS<br>(pending in the District of Delaware)<br>CASE NUMBER: [1]  This subpoena relates to:<br>1:07-cv-752-GMS<br>(pending in the District of Delaware) |

**REMBRANDT TECHNOLOGIES, LP**

TO:   **Day Pitney LLP**
**7 Times Square-Broadway Between 41ˢᵗ and 42ⁿᵈ Street**
**New York, NY  10036**

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):  **See Attachment A.**

| PLACE<br>Young Conaway Stargatt & Taylor, LLP, 845 Third Avenue, Suite 606, New York, NY  10022; (646) 290-5018 | DATE AND TIME<br>March 27, 2008-9:00a |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure. 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br><br>*[signature]*<br>Attorney for Plaintiffs Motorola, Inc., Cisco Systems, Inc., Scientific-Atlanta, Inc., ARRIS Group, Inc., Thomson, Inc., Ambit Microsystems, Inc., and NETGEAR, Inc. | DATE<br>March 10, 2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Jeffrey T. Castellano, Esquire, Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 17ᵗʰ Floor, PO Box 391, Wilmington, DE 19899-0391 (302) 571-6600

<div align="center">(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)</div>

[1]  If action is pending in district other than district of issuance, state district under case number.

AO88  (DE Rev. 01/07) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                         DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
    (1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
    (2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
    (B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
    (3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
        (i) fails to allow reasonable time for compliance;
        (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
        (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
        (iv) subjects a person to undue burden.
    (B) If a subpoena
        (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
        (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
        (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
    (1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
    (B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
    (C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
    (D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
    (2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
    (B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## ATTACHMENT A

## DEFINITIONS AND INSTRUCTIONS

1.    "Rembrandt" means Rembrandt Technologies, LP, Rembrandt Technologies, LLC d/b/a Remstream, and all predecessors, successors, subsidiaries, parents, sisters, partnerships and affiliates thereof, and all directors, officers, agents, employees, attorneys and other persons acting on their behalf.

2.    "Paradyne" refers to any Paradyne entity including without limitation Paradyne Corporation, AT&T Paradyne, Paradyne Acquisition Corp., Paradyne Networks, Inc., Zhone Technologies, Inc. (hereafter "Zhone"), collectively and individually, including all predecessors, successors, subsidiaries, parents, sisters, partnerships and affiliates thereof, and all directors, officers, agents, employees, attorneys and other persons acting on their behalf.

3.    "Globespan" means GlobeSpan, Inc., GlobeSpan Semiconductor, Inc., and GlobeSpanVirata, Inc., collectively and individually, including all predecessors, successors, subsidiaries, parents, sisters, partnerships and affiliates thereof, and all directors, officers, agents, employees, attorneys and other persons acting on their behalf.

4.    "Patents-in-suit" mean the following patents at issue in this litigation:  U.S. Patent No. 4,937,819 ("the '819 patent"); U.S. Patent No. 5,008,903 ("the '903 patent"); U.S. Patent No. 5,710,761 ("the '761 patent"); U.S. Patent No. 5,719,858 ("the '858 patent"); U.S. Patent No. 5,778,234 ("the '234 patent"); U.S. Patent No. 5,852,631 ("the '631 patent"); U.S. Patent No. 6,131,159 ("the '159 patent"); U.S. Patent No. 6,960,444 ("the '444 patent").

5.    "Related patents or patent applications" means any U.S. or foreign patent or patent application that either (i) stems from or claims priority to the patents-in-suit, (ii) describes subject matter claimed or described in the patents-in-suit, or (iii) claims any subject matter in the patents-in-suit.  "Related patents or patent applications" specifically includes, but is not limited

to Aband. App. 08/149,348, Aband. App. 09/031,226, CA 2 093 042, EP 0 569 178, Prov. App. 60/022,474, Prov. App. 60/026,970, U.S. Pat. No. 5,751,796 (App No. 08/781,787), U.S. Pat. No. 5,796,808 (App. No. 08/781,067), U.S. Pat. No. 5,787,363 (App No. 08/780,238), WO 97/49193, WO 97/49229, WO 97/49230, WO 97/49228, Prov. App. 60/039,265, U.S. Pat. No. 6,580,785 (App. No. 09/032,671), U.S. Pat. No. 7,020,266 (App. No. 10/269,209), Pend. App. 11/086,063 (U.S. Pub 2005/0163303), Pend. App. 11/690,807, Prov. App. 60/128,064, U.S. Pat. No. 6,922,415 (App. No. 09/537,609), Prov. App. 60/038,324, JP 2002 513532, EP 0 983 691 (WO98 38813), Prov. App. 60/150,436, Pend. App. 10/179,544 (U.S. Pub. 2002/0167949), Pend. App. 11/076,737 (U.S. Pub. 2005/0152404), and any foreign counterparts thereof.

6.    "Paradyne Patents" refers to any patent that was issued to or applied for by or on behalf of any Paradyne entity including without limitation Paradyne Corporation, AT&T Paradyne, or Paradyne Networks, Inc., or issued to or applied for by or on behalf of any inventor named on any of the patents-in-suit.

7.    "Inventors" refers to any of the named inventors on any of the patents-in-suit or related patents or patent applications, including Joseph B. King, Wayne T. Moore, Robert Earl Scott, Gideon Hecht, Kurt Ervin Holmquist, Donald C. Snoll, Joseph Chapman, William L. Betts, or James J. DesRosiers.

8.    "Assignee" or "the assignees" refers to any alleged assignee of the patents-in-suit or any related patents or patent applications, including, but not limited to Paradyne, Rembrandt, AT&T Paradyne, or Lucent Technologies, Inc.

9.    "Prosecuting Attorney" shall refer to any counsel involved in the application or prosecution of a patent-in-suit, related patent or patent application, or Paradyne Patent.

- 2 -

10.    "Document" shall have the meaning accorded by Rule 34(a) of the Federal Rules of Civil Procedure including, but not limited to all of the matters defined in Rule 1001 of the Federal Rules of Evidence, any written, printed, typed, recorded, magnetic, punched, copied, graphic, or other tangible thing in which information may be embodied, translated, conveyed, or stored. If a draft document has been prepared in several copies that are not identical, or if the original identical copies are no longer identical due to subsequent notation, each non-identical document is a separate document.

11.    "Concerning" means pertaining to, relating to, referring to, regarding, representing, embodying, illustrating, describing, evidencing, discussing, mentioning or constituting.

12.    "Communication" is used in a comprehensive sense, and means any instance in which any person has had contact with any other person by oral or written utterance, question, comment, inquiry, notation, or statement of any nature whatsoever, including but not limited to writings, documents, conversations, dialogues, discussions, interviews, consultations, agreements, and understandings.

13.    "DOCSIS" shall mean any Data-Over-Cable Service Interface Specification(s), including but not limited to DOCSIS 1.0, DOCSIS 1.1, and DOCSIS 2.0.

14.    "Related Action" means the Multi-District Litigation *In re: Rembrandt Technologies LP Patent Litigation*, C.A. No. 07-1848-GMS (D. Del.), and the lawsuits consolidated therein, including the following: 06-cv-00635-GMS, *Rembrandt Technologies LP v. Cablevision Systems Corporation et al.*; 06-cv-00721-GMS, *Coxcom Inc. v. Rembrandt Technologies LP*; 06-cv-00727-GMS, *Rembrandt Technologies LP v. CBS Corporation*; 06-cv-00729-GMS, *Rembrandt Technologies LP v. NBC Universal Inc.*; 06-cv-00730-GMS, *Rembrandt Technologies LP v. ABC Inc.*; 06-cv-00731-GMS, *Rembrandt Technologies LP v.*

*Fox Entertainment Group Inc. et al*; 07-cv-00396-GMS, *Rembrandt Technologies LP v. Adelphia Communications Corporation et al*; 07-cv-00397-GMS, *Rembrandt Technologies LP v. Adelphia Commications Corp.*; 07-cv-00398-GMS, *Rembrandt Technologies LP v. Comcast Corporation et al*; 07-cv-00399-GMS, *Rembrandt Technologies LP v. Sharp Corporation et al*; 07-cv-00400-GMS, *Rembrandt Technologies LP v. Charter Communications Inc. et al*; 07-cv-00401-GMS, *Rembrandt Technologies LP v. Time Warner Cable Inc. et al*; 07-cv-00402-GMS, *Rembrandt Technologies LP v. Time Warner Cable Inc.*; 07-cv-00403-GMS, *Rembrandt Technologies LP v. Comcast Corporation et al*; and 07-cv-00404-GMS, *Rembrandt Technologies LP v. Charter Communications Inc. et al*.

15. As used herein, "and" and "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

16. Where appropriate, the singular form of a word should be interpreted in the plural and vice versa, to acquire the broadest possible meaning.

17. If any document relating to the subject matter of this subpoena has been destroyed, describe the content of said document, the last location of said document, the date of its destruction and the name of the person or entity that ordered or authorized its destruction.

## DOCUMENT REQUESTS

### *PATENT & PATENT PROSECUTION*

1. All documents discussing, describing, referring, or relating to the patents-in-suit, any related patents or patent applications, or to the same or similar subject matter as the subject matter disclosed in the patents-in-suit.

- 4 -

2.      All documents discussing, describing, referring, or relating to the preparation, filing, or prosecution of the patents-in-suit or any related patents or patent applications, including, but not limited to invention disclosure information, technical descriptions, prior art, publications, non-identical drafts of patent applications, abandoned applications (*e.g.*, Application No. 08/149,348) prosecution file histories of the patents-in-suit, prosecution file histories of related patents or patent applications, communications with inventors or experts, and any communications with any agent, attorney, firm, foreign patent office or the U.S. Patent and Trademark Office ("USPTO").

3.      Documents sufficient to identify all persons who assisted in any aspect of the preparation, filing, or prosecution of the patents-in-suit or any related patents or patent applications.

4.      All documents discussing, describing, referring, or relating to any Paradyne Patents, including without limitation any abandoned application.

5.      All documents concerning the preparation, filing, or prosecution of any Paradyne Patent, including, but not limited to invention disclosure information, technical descriptions, prior art, publications, non-identical drafts of patent applications, abandoned applications, prosecution file histories, communications with inventors or experts, and any communications with any agent, attorney, firm, foreign patent office or the U.S. Patent and Trademark Office ("USPTO").

6.      All documents referring to or concerning any patent applications filed by or patents issued to any of the Inventors.

7.      All documents evidencing, describing, concerning, or referring to the preparation, filing, or prosecution of any patents or patent applications naming one or more of the Inventors,

including, but not limited to invention disclosure information, technical descriptions, prior art, publications, non-identical drafts of patent applications, abandoned applications, prosecution file histories, and any communications with any agent, attorney, firm, foreign patent office or the U.S. Patent and Trademark Office ("USPTO").

8.     All documents and materials concerning inventorship of any invention allegedly disclosed or claimed by the patents-in-suit or by any related patents or patent applications, including, but not limited to documents sufficient to identify all persons who assisted in any aspect of the research, development, manufacture, testing, marketing, sale, or licensing of the alleged invention(s), and documents sufficient to identify all materials suppliers for any embodiment of the alleged invention(s).

9.     All actual or potential prior art known, cited, referenced, considered, or discussed during or in prosecution of the patents-in-suit or any related patents or patent applications, whether or not first cited or found by the assignee(s), the named inventors, counsel, agent(s), any patent office or any other person or entity.

10.     All documents provided to any Prosecuting Attorney or Inventor by anyone prior to or during the preparation and prosecution of the patents-in-suit or any related patents or patent applications in connection with such preparation and prosecution, including, without limitation notes, laboratory notebooks, sketches, memoranda, articles, technical reports, technical journals, and technical specifications.

11.     All documents and materials concerning the conception of the alleged invention(s) of the patents-in-suit or of related patents or patent applications, the best mode of practicing such alleged invention(s), the reduction to practice of such alleged invention(s), and any improvements to such alleged invention(s), including, but not limited to inventor records,

notebooks, physical embodiments of all or part of such alleged invention(s), and all devices, apparatus or software purchased or built by the inventors for the purpose of researching, developing, or reducing to practice such alleged invention(s).

12.    All documents concerning any actual or constructive reduction to practice of the alleged invention(s) of the patents-in-suit or of any related patents or patent applications, including but not limited to documents relating to research, development, manufacture, testing, marketing, or sale  of the alleged invention(s).

13.    All documents concerning any costs associated with the conception, reduction-to-practice, or research and development of the alleged invention(s), including, but not limited to receipts for supplies.

14.    All documents concerning, describing, or evidencing when the inventors, the assignees, their counsel, or anyone subject to the duty of candor before the USPTO learned of any potential or actual prior art to the patents-in-suit or to any related patents or patent applications.

15.    All documents and materials comprising, concerning or referring to any search for prior art to the patents-in-suit or any related patents or patent applications.

16.    All documents comprising, concerning or referring to potential or actual prior art to the patents-in-suit or to any related patents or patent applications, even if you dispute that the material constitutes or discloses prior art, including, but not limited to art cited during prosecution of the patents-in-suit, art cited during the prosecution of any related patents or patent applications, and art disclosed by any third parties (including in any litigation involving the patents-in-suit or in licensing discussions).

DB02:6633542.2                                                                                       066919.1001

17.     All documents that allegedly support any contention that the alleged invention(s) of the patents-in-suit are not obvious under 35 U.S.C. § 103, including, but not limited to documents that allegedly relate to or evidence secondary considerations of non-obviousness such as commercial success, long-felt need, copying by others, prior failure by others, licensing by others, or unexpected results.

18.     All documents referring to or concerning any litigation or other proceeding involving the patents-in-suit or any related patents or patent applications, including, but not limited to all pleadings, motions, exhibits, orders, depositions or other testimony, hearing transcripts, written discovery responses or initial disclosures, document productions, correspondence, settlement agreements, consent decrees, or any other materials from prior litigations.

19.     All documents and other materials provided to any Prosecuting Attorney by the inventors, any assignee, or their counsel relating to this litigation or to any of the patents-in-suit or any related patent or patent application or to any Paradyne Patent.

20.     All documents and other materials provided by any Prosecuting Attorney to the inventors, any assignee, or their counsel relating to this litigation or to any of the patents-in-suit or any related patent or patent application or to any Paradyne Patent.

21.     All documents concerning the level of ordinary skill in the art of the alleged invention(s) of the patents-in-suit.

22.     All documents concerning the interpretation or construction of any of the claim terms in the patents-in-suit.

## COMMERCIALIZATION & PRIOR ART

23.    All documents concerning any disclosure by anyone to anyone of the alleged invention(s) of the patents-in-suit or of related patents or patent applications, including, but not limited to any disclosure of the alleged invention(s) by the assignee(s) or the named inventors to each other or to any third party.

24.    All documents concerning any sale, offer for sale, importation, public use, or public disclosure of any activity, product, process, or method that may embody any of the claims or disclosures of the patents-in-suit or of related patents or patent applications.

25.    All documents concerning the first sale, offer for sale, importation, public use, or public disclosure of any activity, product, process, or method that may embody any of the claims or disclosures of the patents-in-suit or of related patents or patent applications.

26.    All documents referring or relating to any products marketed or sold by any assignee of the patents-in-suit or of related patents or patent applications that relates to any activity, product, process, or method that may embody any of the claims or disclosures of the patents-in-suit or of related patents or patent applications.

27.    All documents concerning trade shows, manuals, articles, books, patents, publications, or any other reference materials relating to the subject matter described, shown or claimed in the patents-in-suit or any related patents or patent applications or any products relating to those patents or applications.

28.    All documents referring or relating to any products that compete with any product marketed or sold by any assignee that relates to any activity, product, process, or method that

may embody any of the claims or disclosures of the patents-in-suit or of related patents or patent applications.

29.    All documents referring or relating to the following products: (1) Enhanced Throughput Cellular or ETC (including ETC1 and ETC2); (2) AT&T KeepInTouch; (3) FrameSaver; (4) Accucom products; (5) Compshere products; (6) 3400, 3800 and 3900 series products; (7) I-Marc 9000 Series products; (8) Eclipse products.

30.    All documents and materials concerning any strategies, plans, or expectations (whether of the assignees of the patents-in-suit or of related patents or patent applications, the inventors, licensing counsel, or otherwise) with respect to the subject matter disclosed or claimed by the patents-in-suit or by any related patents or patent applications, including without limitation any plans to commercialize, sell, license, or otherwise derive business or revenues from the patents-in-suit or from any related patents or applications.

## *PATENT OWNERSHIP & LICENSING*

31.    All documents concerning the ownership of the patents-in-suit or any related patents or patent applications, including, but not limited to all documents relating to assignments, acquisitions, liens, licenses, auctions, sales, or other transfers of rights by or to any entity or person.

32.    All documents concerning any license, proposed license, assignment, proposed assignment, sale, proposed sale, covenant not to sue, right of first refusal or any other actual or proposed transfer or extension of rights in or to the patents-in-suit or any related patents or patent applications.

33.    All documents concerning a reasonable royalty for licensing one or more of the patents-in-suit or any related patents or patent applications.

- 10 -

34.    All documents concerning any settlement, covenant not to sue, consent decree, judgment or other resolution of any litigation (actual or potential) involving the patents-in-suit or any related patents or patent applications.

35.    All documents concerning any products that have been licensed or for which any covenant not to sue has been extended under the patents-in-suit or under any related patents or patent applications.

36.    All documents referring or relating to the actual or potential enforcement of the patents-in-suit or any related patents or patent applications.

37.    All documents comprising, concerning or referring to communications or agreements involving Paradyne, Lucent Technologies, Inc., Texas Pacific Group, Globespan, Rembrandt, and/or Zhone relating to the patents-in-suit or related patents and patent applications or to Paradyne Patents.

*38.*    All documents referring or relating to the development of any standards that refer, relate to or concern any of the patents-in-suit or related patents or patent applications.

### CABLE & OTHER ISSUES

39.    All Rembrandt, Paradyne, Globespan, Zhone, Inventor or Prosecuting Attorney documents referring or relating to cable modems or cable modem terminating systems.

40.    All documents referring or relating to the development of any standards relating to cable modems or cable modem terminating systems.

41.    All documents referring to or concerning the relationship, or absence thereof, between any version of DOCSIS and any of the patents-in-suit.

42.    All documents concerning any alleged infringement (whether direct, contributory or by inducement) of the patents-in-suit or any related patents.

43.    All documents concerning comparisons between the patents-in-suit or any related patents or patent applications to anything else including any activity, product, process, method, prior art, patent, or publication.

44.    All documents concerning any contention by any person or party, including without limitation any third party, named inventor, prosecuting counsel, prior art search firm, or any other person or party, that any of the patents-in-suit or any related patent or patent application is valid or invalid, enforceable or unenforceable, or infringed or not infringed.

45.    All documents comprising, concerning or referring to any opinions, evaluations, advice, or analyses concerning the validity or invalidity, enforceability or unenforceability, infringement or noninfringement, or scope of the claims of the patents-in-suit or of any related patents or patent applications, and all documents reviewed in the formation of such opinions, evaluations, advice, or analyses.

46.    All documents comprising, concerning or referring to any assertion that any claim of the patents-in-suit is valid or invalid, enforceable or unenforceable, or infringed or not infringed.

DB02:6633542.2

066919.1001

### *FURTHER AGREEMENTS & COMMUNICATIONS*

47.    All documents comprising or referring or relating to any agreements including the Inventors or the Prosecuting Attorneys relating to this litigation or to any of the patents-in-suit or any related patent or patent application or any Paradyne Patent.

48.    All documents comprising or referring or relating to any communications with the Inventors or the Prosecuting Attorneys relating to this litigation or to any of the patents-in-suit or any related patent or patent application or to any Paradyne Patent.

49.    All communications with or between the Inventors.

50.    All documents concerning communications regarding the patents-in-suit, any related patents or patent applications or the same or similar subject matter as that disclosed in the patents-in-suit, including, but not limited to internal communications or communications with third parties (including without limitation communications with the USPTO, any foreign patent office, or any assignee).

### *FURTHER BUSINESS DOCUMENTS*

51.    All documents and things referring or relating to the business of Rembrandt, including without limitations all documents and things referring or relating to any intellectual property licensing, acquisition or enforcement agreements, strategies or plans or to any agreements, strategies or plans to supply products or enter agreements with others to supply products implementing any intellectual property.

52.    All documents and things referring or relating to Rembrandt.

53.    All documents and things referring or relating to Remstream or any Remstream product.

- 13 -

54.    Documents sufficient to identify policies and procedures of any assignee for generating, maintaining, and disposing of documents, including, but not limited to policies and procedures relating to patent applications, patent prosecution files, and any scientific or technical references related to such patent prosecution files.

### DUE DILIGENCE AND VALUATIONS

55.    All documents that reflect, discuss, describe, evidence or concern the actual, potential, or possible value, if any, of any of the patents-in-suit or any related patents or patent applications and all documents that were used in, created for, or created during due diligence in any transaction (including by way of illustration but not limitation, any actual or proposed stock sale, asset sale, merger, spin-off, acquisition, divestiture, purchase, assignment, sale, bid, auction, covenant not to sue, license or any other potential or actual transaction) involving Paradyne, any transaction involving any patents-in-suit, or any transaction involving related patents or patent application.

56.    All offering memoranda and other documents created in connection with any transaction involving Paradyne (including by way of illustration but not limitation, any actual or proposed stock sale, asset sale, merger, spin-off, acquisition, divestiture, purchase, assignment, sale, bid, auction, covenant not to sue, license or any other potential or actual transaction) that reflects, discusses, describes, evidences, or concerns any valuation of Paradyne, any patent-in-suit, or any related patent or patent application.

57.    All communications discussing, concerning, reflecting, or describing any due diligence activities involving any patent-in-suit or any related patent or patent application.

- 14 -

58.     All documents created, used in, reflecting, discussing, or covering any due diligence activities in connection with Paradyne, any patent-in-suit, or any related patent or patent application.

59.     Documents sufficient to show identify all financial, legal, or other advisors representing any party involved in any transaction (including by way of illustration but not limitation, any actual or proposed stock sale, asset sale, merger, spin-off, acquisition, divestiture, purchase, assignment, sale, bid, auction, covenant not to sue, license or any other potential or actual transaction) including Paradyne, any patent-in-suit, or any related patent or patent application.

60.     All documents concerning the actual or proposed transfer, sale, securitization, monetization, acquisition or licensing of any patent-in-suit.

61.     All documents and things describing, evidencing, discussing, referring to or relating to any review or inspection of the Paradyne Patents, any agreements relating to the Paradyne Patents or any communications relating to the Paradyne Patents.

62.     All minutes of any board of directors that discuss, evidence or describe the actual or possible value of any patent-in-suit or any related patent or patent application.

63.     All documents presented to or provided to any board of directors that discuss, evidence or describe the actual or possible value of any patent-in-suit or any related patent or patent application.

### *PREVIOUSLY-SUBPOENAED DOCUMENTS*

64.     All documents requested pursuant to any previously-served subpoena in a Related Action.

- 15 -

# TAB 6

AO 88 (Rev. 01/07) Subpoena in a Civil Case

<div align="center">

**Issued by the**

**UNITES STATES DISTRICT COURT**

NORTHERN DISTRICT OF GEORGIA

</div>

| | |
|---|---|
| **In re: REMBRANDT TECHNOLOGIES, LP PATENT LITIGATION MOTOROLA, INC., et al.** | **SUBPOENA IN A CIVIL CASE** |
| **V.** | MDL Docket No. 1:07-md-1848-GMS (pending in the District of Delaware) CASE NUMBER: [1] This subpoena relates to: 1:07-cv-752-GMS (pending in the District of Delaware) |

**REMBRANDT TECHNOLOGIES, LP**

TO:   **Thomas, Kayden, Horstemeyer & Risley, LLP**
      **600 Galleria Parkway, Suite 1500**
      **Atlanta, GA  30339**

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): **See Attachment A.**

| PLACE Atlanta Attorney Services, Attn: Douglas Dreeman, 2814 Spring Road, Suite 120, Atlanta, GA 30339 | DATE AND TIME March 27, 2008-9:00a. |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure. 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) *[signature]* Attorney for Plaintiffs Motorola, Inc., Cisco Systems, Inc., Scientific-Atlanta, Inc., ARRIS Group, Inc., Thomson, Inc., Ambit Microsystems, Inc., and NETGEAR, Inc. | DATE March 10, 2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Jeffrey T. Castellano, Esquire, Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 17th Floor, PO Box 391, Wilmington, DE 19899-0391 (302) 571-6600

<div align="center">(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)</div>

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (DE Rev. 01/07) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

**ATTACHMENT A**

**DEFINITIONS AND INSTRUCTIONS**

1.    "Rembrandt" means Rembrandt Technologies, LP, Rembrandt Technologies, LLC d/b/a Remstream, and all predecessors, successors, subsidiaries, parents, sisters, partnerships and affiliates thereof, and all directors, officers, agents, employees, attorneys and other persons acting on their behalf.

2.    "Paradyne" refers to any Paradyne entity including without limitation Paradyne Corporation, AT&T Paradyne, Paradyne Acquisition Corp., Paradyne Networks, Inc., Zhone Technologies, Inc. (hereafter "Zhone"), collectively and individually, including all predecessors, successors, subsidiaries, parents, sisters, partnerships and affiliates thereof, and all directors, officers, agents, employees, attorneys and other persons acting on their behalf.

3.    "Globespan" means GlobeSpan, Inc., GlobeSpan Semiconductor, Inc., and GlobeSpanVirata, Inc., collectively and individually, including all predecessors, successors, subsidiaries, parents, sisters, partnerships and affiliates thereof, and all directors, officers, agents, employees, attorneys and other persons acting on their behalf.

4.    "Patents-in-suit" mean the following patents at issue in this litigation:  U.S. Patent No. 4,937,819 ("the '819 patent"); U.S. Patent No. 5,008,903 ("the '903 patent"); U.S. Patent No. 5,710,761 ("the '761 patent"); U.S. Patent No. 5,719,858 ("the '858 patent"); U.S. Patent No. 5,778,234 ("the '234 patent"); U.S. Patent No. 5,852,631 ("the '631 patent"); U.S. Patent No. 6,131,159 ("the '159 patent"); U.S. Patent No. 6,960,444 ("the '444 patent").

5.    "Related patents or patent applications" means any U.S. or foreign patent or patent application that either (i) stems from or claims priority to the patents-in-suit, (ii) describes subject matter claimed or described in the patents-in-suit, or (iii) claims any subject matter in the patents-in-suit.  "Related patents or patent applications" specifically includes, but is not limited

to Aband. App. 08/149,348, Aband. App. 09/031,226, CA 2 093 042, EP 0 569 178, Prov. App.

60/022,474, Prov. App. 60/026,970, U.S. Pat. No. 5,751,796 (App No. 08/781,787), U.S. Pat.

No. 5,796,808 (App. No. 08/781,067), U.S. Pat. No. 5,787,363 (App No. 08/780,238), WO

97/49193, WO 97/49229, WO 97/49230, WO 97/49228, Prov. App. 60/039,265, U.S. Pat. No.

6,580,785 (App. No. 09/032,671), U.S. Pat. No. 7,020,266 (App. No. 10/269,209), Pend. App.

11/086,063 (U.S. Pub 2005/0163303), Pend. App. 11/690,807, Prov. App. 60/128,064, U.S. Pat.

No. 6,922,415 (App. No. 09/537,609), Prov. App. 60/038,324, JP 2002 513532, EP 0 983 691

(WO98 38813), Prov. App. 60/150,436, Pend. App. 10/179,544 (U.S. Pub. 2002/0167949), Pend.

App. 11/076,737 (U.S. Pub. 2005/0152404), and any foreign counterparts thereof.

6.    "Paradyne Patents" refers to any patent that was issued to or applied for by or on

behalf of any Paradyne entity including without limitation Paradyne Corporation, AT&T

Paradyne, or Paradyne Networks, Inc., or issued to or applied for by or on behalf of any inventor

named on any of the patents-in-suit.

7.    "Inventors" refers to any of the named inventors on any of the patents-in-suit or

related patents or patent applications, including Joseph B. King, Wayne T. Moore, Robert Earl

Scott, Gideon Hecht, Kurt Ervin Holmquist, Donald C. Snoll, Joseph Chapman, William L.

Betts, or James J. DesRosiers.

8.    "Assignee" or "the assignees" refers to any alleged assignee of the patents-in-suit

or any related patents or patent applications, including, but not limited to Paradyne, Rembrandt,

AT&T Paradyne, or Lucent Technologies, Inc.

9.    "Prosecuting Attorney" shall refer to any counsel involved in the application or

prosecution of a patent-in-suit, related patent or patent application, or Paradyne Patent.

- 2 -

10.   "Document" shall have the meaning accorded by Rule 34(a) of the Federal Rules of Civil Procedure including, but not limited to all of the matters defined in Rule 1001 of the Federal Rules of Evidence, any written, printed, typed, recorded, magnetic, punched, copied, graphic, or other tangible thing in which information may be embodied, translated, conveyed, or stored.  If a draft document has been prepared in several copies that are not identical, or if the original identical copies are no longer identical due to subsequent notation, each non-identical document is a separate document.

11.   "Concerning" means pertaining to, relating to, referring to, regarding, representing, embodying, illustrating, describing, evidencing, discussing, mentioning or constituting.

12.   "Communication" is used in a comprehensive sense, and means any instance in which any person has had contact with any other person by oral or written utterance, question, comment, inquiry, notation, or statement of any nature whatsoever, including but not limited to writings, documents, conversations, dialogues, discussions, interviews, consultations, agreements, and understandings.

13.   "DOCSIS" shall mean any Data-Over-Cable Service Interface Specification(s), including but not limited to DOCSIS 1.0, DOCSIS 1.1, and DOCSIS 2.0.

14.   "Related Action" means the Multi-District Litigation *In re: Rembrandt Technologies LP Patent Litigation*, C.A. No. 07-1848-GMS (D. Del.), and the lawsuits consolidated therein, including the following: 06-cv-00635-GMS, *Rembrandt Technologies LP v. Cablevision Systems Corporation et al.*; 06-cv-00721-GMS, *Coxcom Inc. v. Rembrandt Technologies LP*; 06-cv-00727-GMS, *Rembrandt Technologies LP v. CBS Corporation*; 06-cv-00729-GMS, *Rembrandt Technologies LP v. NBC Universal Inc.*; 06-cv-00730-GMS, *Rembrandt Technologies LP v. ABC Inc.*; 06-cv-00731-GMS, *Rembrandt Technologies LP v.*

- 3 -

*Fox Entertainment Group Inc. et al*; 07-cv-00396-GMS, *Rembrandt Technologies LP v.*

*Adelphia Communications Corporation et al*; 07-cv-00397-GMS, *Rembrandt Technologies LP v.*

*Adelphia Commications Corp.*; 07-cv-00398-GMS, *Rembrandt Technologies LP v. Comcast*

*Corporation et al*; 07-cv-00399-GMS, *Rembrandt Technologies LP v. Sharp Corporation et al*;

07-cv-00400-GMS, *Rembrandt Technologies LP v. Charter Communications Inc. et al*; 07-cv-

00401-GMS, *Rembrandt Technologies LP v. Time Warner Cable Inc. et al*; 07-cv-00402-GMS,

*Rembrandt Technologies LP v. Time Warner Cable Inc.*; 07-cv-00403-GMS, *Rembrandt*

*Technologies LP v. Comcast Corporation et al*; and 07-cv-00404-GMS, *Rembrandt*

*Technologies LP v. Charter Communications Inc. et al.*

      15.    As used herein, "and" and "or" shall be construed either conjunctively or

disjunctively as necessary to bring within the scope of the discovery request all responses that

might otherwise be construed to be outside of its scope.

      16.    Where appropriate, the singular form of a word should be interpreted in the plural

and vice versa, to acquire the broadest possible meaning.

      17.    If any document relating to the subject matter of this subpoena has been destroyed,

describe the content of said document, the last location of said document, the date of its

destruction and the name of the person or entity that ordered or authorized its destruction.

## DOCUMENT REQUESTS

### *PATENT & PATENT PROSECUTION*

      1.    All documents discussing, describing, referring, or relating to the patents-in-suit,

any related patents or patent applications, or to the same or similar subject matter as the subject

matter disclosed in the patents-in-suit.

- 4 -

2.　　All documents discussing, describing, referring, or relating to the preparation, filing, or prosecution of the patents-in-suit or any related patents or patent applications, including, but not limited to invention disclosure information, technical descriptions, prior art, publications, non-identical drafts of patent applications, abandoned applications (*e.g.*, Application No. 08/149,348) prosecution file histories of the patents-in-suit, prosecution file histories of related patents or patent applications, communications with inventors or experts, and any communications with any agent, attorney, firm, foreign patent office or the U.S. Patent and Trademark Office ("USPTO").

3.　　Documents sufficient to identify all persons who assisted in any aspect of the preparation, filing, or prosecution of the patents-in-suit or any related patents or patent applications.

4.　　All documents discussing, describing, referring, or relating to any Paradyne Patents, including without limitation any abandoned application.

5.　　All documents concerning the preparation, filing, or prosecution of any Paradyne Patent, including, but not limited to invention disclosure information, technical descriptions, prior art, publications, non-identical drafts of patent applications, abandoned applications, prosecution file histories, communications with inventors or experts, and any communications with any agent, attorney, firm, foreign patent office or the U.S. Patent and Trademark Office ("USPTO").

6.　　All documents referring to or concerning any patent applications filed by or patents issued to any of the Inventors.

7.　　All documents evidencing, describing, concerning, or referring to the preparation, filing, or prosecution of any patents or patent applications naming one or more of the Inventors,

including, but not limited to invention disclosure information, technical descriptions, prior art, publications, non-identical drafts of patent applications, abandoned applications, prosecution file histories, and any communications with any agent, attorney, firm, foreign patent office or the U.S. Patent and Trademark Office ("USPTO").

8.    All documents and materials concerning inventorship of any invention allegedly disclosed or claimed by the patents-in-suit or by any related patents or patent applications, including, but not limited to documents sufficient to identify all persons who assisted in any aspect of the research, development, manufacture, testing, marketing, sale, or licensing of the alleged invention(s), and documents sufficient to identify all materials suppliers for any embodiment of the alleged invention(s).

9.    All actual or potential prior art known, cited, referenced, considered, or discussed during or in prosecution of the patents-in-suit or any related patents or patent applications, whether or not first cited or found by the assignee(s), the named inventors, counsel, agent(s), any patent office or any other person or entity.

10.    All documents provided to any Prosecuting Attorney or Inventor by anyone prior to or during the preparation and prosecution of the patents-in-suit or any related patents or patent applications in connection with such preparation and prosecution, including, without limitation notes, laboratory notebooks, sketches, memoranda, articles, technical reports, technical journals, and technical specifications.

11.    All documents and materials concerning the conception of the alleged invention(s) of the patents-in-suit or of related patents or patent applications, the best mode of practicing such alleged invention(s), the reduction to practice of such alleged invention(s), and any improvements to such alleged invention(s), including, but not limited to inventor records,

- 6 -

notebooks, physical embodiments of all or part of such alleged invention(s), and all devices, apparatus or software purchased or built by the inventors for the purpose of researching, developing, or reducing to practice such alleged invention(s).

12.    All documents concerning any actual or constructive reduction to practice of the alleged invention(s) of the patents-in-suit or of any related patents or patent applications, including but not limited to documents relating to research, development, manufacture, testing, marketing, or sale of the alleged invention(s).

13.    All documents concerning any costs associated with the conception, reduction-to-practice, or research and development of the alleged invention(s), including, but not limited to receipts for supplies.

14.    All documents concerning, describing, or evidencing when the inventors, the assignees, their counsel, or anyone subject to the duty of candor before the USPTO learned of any potential or actual prior art to the patents-in-suit or to any related patents or patent applications.

15.    All documents and materials comprising, concerning or referring to any search for prior art to the patents-in-suit or any related patents or patent applications.

16.    All documents comprising, concerning or referring to potential or actual prior art to the patents-in-suit or to any related patents or patent applications, even if you dispute that the material constitutes or discloses prior art, including, but not limited to art cited during prosecution of the patents-in-suit, art cited during the prosecution of any related patents or patent applications, and art disclosed by any third parties (including in any litigation involving the patents-in-suit or in licensing discussions).

- 7 -

17.    All documents that allegedly support any contention that the alleged invention(s) of the patents-in-suit are not obvious under 35 U.S.C. § 103, including, but not limited to documents that allegedly relate to or evidence secondary considerations of non-obviousness such as commercial success, long-felt need, copying by others, prior failure by others, licensing by others, or unexpected results.

18.    All documents referring to or concerning any litigation or other proceeding involving the patents-in-suit or any related patents or patent applications, including, but not limited to all pleadings, motions, exhibits, orders, depositions or other testimony, hearing transcripts, written discovery responses or initial disclosures, document productions, correspondence, settlement agreements, consent decrees, or any other materials from prior litigations.

19.    All documents and other materials provided to any Prosecuting Attorney by the inventors, any assignee, or their counsel relating to this litigation or to any of the patents-in-suit or any related patent or patent application or to any Paradyne Patent.

20.    All documents and other materials provided by any Prosecuting Attorney to the inventors, any assignee, or their counsel relating to this litigation or to any of the patents-in-suit or any related patent or patent application or to any Paradyne Patent.

21.    All documents concerning the level of ordinary skill in the art of the alleged invention(s) of the patents-in-suit.

22.    All documents concerning the interpretation or construction of any of the claim terms in the patents-in-suit.

## COMMERCIALIZATION & PRIOR ART

23.    All documents concerning any disclosure by anyone to anyone of the alleged invention(s) of the patents-in-suit or of related patents or patent applications, including, but not limited to any disclosure of the alleged invention(s) by the assignee(s) or the named inventors to each other or to any third party.

24.    All documents concerning any sale, offer for sale, importation, public use, or public disclosure of any activity, product, process, or method that may embody any of the claims or disclosures of the patents-in-suit or of related patents or patent applications.

25.    All documents concerning the first sale, offer for sale, importation, public use, or public disclosure of any activity, product, process, or method that may embody any of the claims or disclosures of the patents-in-suit or of related patents or patent applications.

26.    All documents referring or relating to any products marketed or sold by any assignee of the patents-in-suit or of related patents or patent applications that relates to any activity, product, process, or method that may embody any of the claims or disclosures of the patents-in-suit or of related patents or patent applications.

27.    All documents concerning trade shows, manuals, articles, books, patents, publications, or any other reference materials relating to the subject matter described, shown or claimed in the patents-in-suit or any related patents or patent applications or any products relating to those patents or applications.

28.    All documents referring or relating to any products that compete with any product marketed or sold by any assignee that relates to any activity, product, process, or method that

DB02:6633542.2                                                                  066919.1001

may embody any of the claims or disclosures of the patents-in-suit or of related patents or patent applications.

29.    All documents referring or relating to the following products: (1) Enhanced Throughput Cellular or ETC (including ETC1 and ETC2); (2) AT&T KeepInTouch; (3) FrameSaver; (4) Accucom products; (5) Compshere products; (6) 3400, 3800 and 3900 series products; (7) I-Marc 9000 Series products; (8) Eclipse products.

30.    All documents and materials concerning any strategies, plans, or expectations (whether of the assignees of the patents-in-suit or of related patents or patent applications, the inventors, licensing counsel, or otherwise) with respect to the subject matter disclosed or claimed by the patents-in-suit or by any related patents or patent applications, including without limitation any plans to commercialize, sell, license, or otherwise derive business or revenues from the patents-in-suit or from any related patents or applications.

### PATENT OWNERSHIP & LICENSING

31.    All documents concerning the ownership of the patents-in-suit or any related patents or patent applications, including, but not limited to all documents relating to assignments, acquisitions, liens, licenses, auctions, sales, or other transfers of rights by or to any entity or person.

32.    All documents concerning any license, proposed license, assignment, proposed assignment, sale, proposed sale, covenant not to sue, right of first refusal or any other actual or proposed transfer or extension of rights in or to the patents-in-suit or any related patents or patent applications.

33.    All documents concerning a reasonable royalty for licensing one or more of the patents-in-suit or any related patents or patent applications.

34.    All documents concerning any settlement, covenant not to sue, consent decree, judgment or other resolution of any litigation (actual or potential) involving the patents-in-suit or any related patents or patent applications.

35.    All documents concerning any products that have been licensed or for which any covenant not to sue has been extended under the patents-in-suit or under any related patents or patent applications.

36.    All documents referring or relating to the actual or potential enforcement of the patents-in-suit or any related patents or patent applications.

37.    All documents comprising, concerning or referring to communications or agreements involving Paradyne, Lucent Technologies, Inc., Texas Pacific Group, Globespan, Rembrandt, and/or Zhone relating to the patents-in-suit or related patents and patent applications or to Paradyne Patents.

38.    All documents referring or relating to the development of any standards that refer, relate to or concern any of the patents-in-suit or related patents or patent applications.

### CABLE & OTHER ISSUES

39.    All Rembrandt, Paradyne, Globespan, Zhone, Inventor or Prosecuting Attorney documents referring or relating to cable modems or cable modem terminating systems.

40.    All documents referring or relating to the development of any standards relating to cable modems or cable modem terminating systems.

41.    All documents referring to or concerning the relationship, or absence thereof, between any version of DOCSIS and any of the patents-in-suit.

42.    All documents concerning any alleged infringement (whether direct, contributory or by inducement) of the patents-in-suit or any related patents.

43.    All documents concerning comparisons between the patents-in-suit or any related patents or patent applications to anything else including any activity, product, process, method, prior art, patent, or publication.

44.    All documents concerning any contention by any person or party, including without limitation any third party, named inventor, prosecuting counsel, prior art search firm, or any other person or party, that any of the patents-in-suit or any related patent or patent application is valid or invalid, enforceable or unenforceable, or infringed or not infringed.

45.    All documents comprising, concerning or referring to any opinions, evaluations, advice, or analyses concerning the validity or invalidity, enforceability or unenforceability, infringement or noninfringement, or scope of the claims of the patents-in-suit or of any related patents or patent applications, and all documents reviewed in the formation of such opinions, evaluations, advice, or analyses.

46.    All documents comprising, concerning or referring to any assertion that any claim of the patents-in-suit is valid or invalid, enforceable or unenforceable, or infringed or not infringed.

DB02:6633542.2

066919.1001

## *FURTHER AGREEMENTS & COMMUNICATIONS*

47.    All documents comprising or referring or relating to any agreements including the Inventors or the Prosecuting Attorneys relating to this litigation or to any of the patents-in-suit or any related patent or patent application or any Paradyne Patent.

48.    All documents comprising or referring or relating to any communications with the Inventors or the Prosecuting Attorneys relating to this litigation or to any of the patents-in-suit or any related patent or patent application or to any Paradyne Patent.

49.    All communications with or between the Inventors.

50.    All documents concerning communications regarding the patents-in-suit, any related patents or patent applications or the same or similar subject matter as that disclosed in the patents-in-suit, including, but not limited to internal communications or communications with third parties (including without limitation communications with the USPTO, any foreign patent office, or any assignee).

## *FURTHER BUSINESS DOCUMENTS*

51.    All documents and things referring or relating to the business of Rembrandt, including without limitations all documents and things referring or relating to any intellectual property licensing, acquisition or enforcement agreements, strategies or plans or to any agreements, strategies or plans to supply products or enter agreements with others to supply products implementing any intellectual property.

52.    All documents and things referring or relating to Rembrandt.

53.    All documents and things referring or relating to Remstream or any Remstream product.

- 13 -

54.    Documents sufficient to identify policies and procedures of any assignee for generating, maintaining, and disposing of documents, including, but not limited to policies and procedures relating to patent applications, patent prosecution files, and any scientific or technical references related to such patent prosecution files.

### DUE DILIGENCE AND VALUATIONS

55.    All documents that reflect, discuss, describe, evidence or concern the actual, potential, or possible value, if any, of any of the patents-in-suit or any related patents or patent applications and all documents that were used in, created for, or created during due diligence in any transaction (including by way of illustration but not limitation, any actual or proposed stock sale, asset sale, merger, spin-off, acquisition, divestiture, purchase, assignment, sale, bid, auction, covenant not to sue, license or any other potential or actual transaction) involving Paradyne, any transaction involving any patents-in-suit, or any transaction involving related patents or patent application.

56.    All offering memoranda and other documents created in connection with any transaction involving Paradyne (including by way of illustration but not limitation, any actual or proposed stock sale, asset sale, merger, spin-off, acquisition, divestiture, purchase, assignment, sale, bid, auction, covenant not to sue, license or any other potential or actual transaction) that reflects, discusses, describes, evidences, or concerns any valuation of Paradyne, any patent-in-suit, or any related patent or patent application.

57.    All communications discussing, concerning, reflecting, or describing any due diligence activities involving any patent-in-suit or any related patent or patent application.

- 14 -

58.     All documents created, used in, reflecting, discussing, or covering any due diligence activities in connection with Paradyne, any patent-in-suit, or any related patent or patent application.

59.     Documents sufficient to show identify all financial, legal, or other advisors representing any party involved in any transaction (including by way of illustration but not limitation, any actual or proposed stock sale, asset sale, merger, spin-off, acquisition, divestiture, purchase, assignment, sale, bid, auction, covenant not to sue, license or any other potential or actual transaction) including Paradyne, any patent-in-suit, or any related patent or patent application.

60.     All documents concerning the actual or proposed transfer, sale, securitization, monetization, acquisition or licensing of any patent-in-suit.

61.     All documents and things describing, evidencing, discussing, referring to or relating to any review or inspection of the Paradyne Patents, any agreements relating to the Paradyne Patents or any communications relating to the Paradyne Patents.

62.     All minutes of any board of directors that discuss, evidence or describe the actual or possible value of any patent-in-suit or any related patent or patent application.

63.     All documents presented to or provided to any board of directors that discuss, evidence or describe the actual or possible value of any patent-in-suit or any related patent or patent application.

## *PREVIOUSLY-SUBPOENAED DOCUMENTS*

64.     All documents requested pursuant to any previously-served subpoena in a Related Action.

# TAB 7

AO 88 (Rev. 01/07) Subpoena in a Civil Case

<div align="center">

**Issued by the**

**UNITES STATES DISTRICT COURT**

NORTHERN DISTRICT OF TEXAS

</div>

| | |
|---|---|
| **In re: REMBRANDT TECHNOLOGIES, LP** <br> **PATENT LITIGATION** <br> **MOTOROLA, INC., et al.** <br><br> **V.** | **SUBPOENA IN A CIVIL CASE** <br><br> MDL Docket No. 1:07-md-1848-GMS <br> (pending in the District of Delaware) <br> CASE   This subpoena relates to: <br> NUMBER: [1]   1:07-cv-752-GMS <br> (pending in the District of Delaware) |

**REMBRANDT TECHNOLOGIES, LP**

TO:   **Texas Pacific Group**
**301 Commerce Street, Suite 3300**
**Fort Worth, TX 76102**

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): **See Attachment A.**

| PLACE | DATE AND TIME |
|---|---|
| Professional Court Services, Attn: Paul Schuder, 111 East Rosedale St., Fort Worth, TX 76104 (Phone: 817-335-1655) | March 27, 2008-9:00a |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]* <br> Attorney for Plaintiffs Motorola, Inc., Cisco Systems, Inc., Scientific-Atlanta, Inc., ARRIS Group, Inc., Thomson, Inc., Ambit Microsystems, Inc., and NETGEAR, Inc. | March 10, 2008 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Jeffrey T. Castellano, Esquire, Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 17th Floor, PO Box 391, Wilmington, DE 19899-0391 (302) 571-6600

<div align="center">(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)</div>

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (DE Rev. 01/07) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  |  |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
|  |  |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## ATTACHMENT A

## DEFINITIONS AND INSTRUCTIONS

1.    "Rembrandt" means Rembrandt Technologies, LP, Rembrandt Technologies, LLC d/b/a Remstream, and all predecessors, successors, subsidiaries, parents, sisters, partnerships and affiliates thereof, and all directors, officers, agents, employees, attorneys and other persons acting on their behalf.

2.    "Paradyne" refers to any Paradyne entity including without limitation Paradyne Corporation, AT&T Paradyne, Paradyne Acquisition Corp., Paradyne Networks, Inc., Zhone Technologies, Inc. (hereafter "Zhone"), collectively and individually, including all predecessors, successors, subsidiaries, parents, sisters, partnerships and affiliates thereof, and all directors, officers, agents, employees, attorneys and other persons acting on their behalf.

3.    "Globespan" means GlobeSpan, Inc., GlobeSpan Semiconductor, Inc., and GlobeSpanVirata, Inc., collectively and individually, including all predecessors, successors, subsidiaries, parents, sisters, partnerships and affiliates thereof, and all directors, officers, agents, employees, attorneys and other persons acting on their behalf.

4.    "Patents-in-suit" mean the following patents at issue in this litigation:  U.S. Patent No. 4,937,819 ("the '819 patent"); U.S. Patent No. 5,008,903 ("the '903 patent"); U.S. Patent No. 5,710,761 ("the '761 patent"); U.S. Patent No. 5,719,858 ("the '858 patent"); U.S. Patent No. 5,778,234 ("the '234 patent"); U.S. Patent No. 5,852,631 ("the '631 patent"); U.S. Patent No. 6,131,159 ("the '159 patent"); U.S. Patent No. 6,960,444 ("the '444 patent").

5.    "Related patents or patent applications" means any U.S. or foreign patent or patent application that either (i) stems from or claims priority to the patents-in-suit, (ii) describes subject matter claimed or described in the patents-in-suit, or (iii) claims any subject matter in the patents-in-suit.  "Related patents or patent applications" specifically includes, but is not limited

to Aband. App. 08/149,348, Aband. App. 09/031,226, CA 2 093 042, EP 0 569 178, Prov. App.

60/022,474, Prov. App. 60/026,970, U.S. Pat. No. 5,751,796 (App No. 08/781,787), U.S. Pat.

No. 5,796,808 (App. No. 08/781,067), U.S. Pat. No. 5,787,363 (App No. 08/780,238), WO

97/49193, WO 97/49229, WO 97/49230, WO 97/49228, Prov. App. 60/039,265, U.S. Pat. No.

6,580,785 (App. No. 09/032,671), U.S. Pat. No. 7,020,266 (App. No. 10/269,209), Pend. App.

11/086,063 (U.S. Pub 2005/0163303), Pend. App. 11/690,807, Prov. App. 60/128,064, U.S. Pat.

No. 6,922,415 (App. No. 09/537,609), Prov. App. 60/038,324, JP 2002 513532, EP 0 983 691

(WO98 38813), Prov. App. 60/150,436, Pend. App. 10/179,544 (U.S. Pub. 2002/0167949), Pend.

App. 11/076,737 (U.S. Pub. 2005/0152404), and any foreign counterparts thereof.

6.    "Paradyne Patents" refers to any patent that was issued to or applied for by or on

behalf of any Paradyne entity including without limitation Paradyne Corporation, AT&T

Paradyne, or Paradyne Networks, Inc., or issued to or applied for by or on behalf of any inventor

named on any of the patents-in-suit.

7.    "Inventors" refers to any of the named inventors on any of the patents-in-suit or

related patents or patent applications, including Joseph B. King, Wayne T. Moore, Robert Earl

Scott, Gideon Hecht, Kurt Ervin Holmquist, Donald C. Snoll, Joseph Chapman, William L.

Betts, or James J. DesRosiers.

8.    "Assignee" or "the assignees" refers to any alleged assignee of the patents-in-suit

or any related patents or patent applications, including, but not limited to Paradyne, Rembrandt,

AT&T Paradyne, or Lucent Technologies, Inc.

9.    "Prosecuting Attorney" shall refer to any counsel involved in the application or

prosecution of a patent-in-suit, related patent or patent application, or Paradyne Patent.

10. "Document" shall have the meaning accorded by Rule 34(a) of the Federal Rules of Civil Procedure including, but not limited to all of the matters defined in Rule 1001 of the Federal Rules of Evidence, any written, printed, typed, recorded, magnetic, punched, copied, graphic, or other tangible thing in which information may be embodied, translated, conveyed, or stored. If a draft document has been prepared in several copies that are not identical, or if the original identical copies are no longer identical due to subsequent notation, each non-identical document is a separate document.

11. "Concerning" means pertaining to, relating to, referring to, regarding, representing, embodying, illustrating, describing, evidencing, discussing, mentioning or constituting.

12. "Communication" is used in a comprehensive sense, and means any instance in which any person has had contact with any other person by oral or written utterance, question, comment, inquiry, notation, or statement of any nature whatsoever, including but not limited to writings, documents, conversations, dialogues, discussions, interviews, consultations, agreements, and understandings.

13. "DOCSIS" shall mean any Data-Over-Cable Service Interface Specification(s), including but not limited to DOCSIS 1.0, DOCSIS 1.1, and DOCSIS 2.0.

14. "Related Action" means the Multi-District Litigation *In re: Rembrandt Technologies LP Patent Litigation*, C.A. No. 07-1848-GMS (D. Del.), and the lawsuits consolidated therein, including the following: 06-cv-00635-GMS, *Rembrandt Technologies LP v. Cablevision Systems Corporation et al.*; 06-cv-00721-GMS, *Coxcom Inc. v. Rembrandt Technologies LP*; 06-cv-00727-GMS, *Rembrandt Technologies LP v. CBS Corporation*; 06-cv-00729-GMS, *Rembrandt Technologies LP v. NBC Universal Inc.*; 06-cv-00730-GMS, *Rembrandt Technologies LP v. ABC Inc.*; 06-cv-00731-GMS, *Rembrandt Technologies LP v.*

- 3 -

*Fox Entertainment Group Inc. et al*; 07-cv-00396-GMS, *Rembrandt Technologies LP v. Adelphia Communications Corporation et al*; 07-cv-00397-GMS, *Rembrandt Technologies LP v. Adelphia Commications Corp.*; 07-cv-00398-GMS, *Rembrandt Technologies LP v. Comcast Corporation et al*; 07-cv-00399-GMS, *Rembrandt Technologies LP v. Sharp Corporation et al*; 07-cv-00400-GMS, *Rembrandt Technologies LP v. Charter Communications Inc. et al*; 07-cv-00401-GMS, *Rembrandt Technologies LP v. Time Warner Cable Inc. et al*; 07-cv-00402-GMS, *Rembrandt Technologies LP v. Time Warner Cable Inc.*; 07-cv-00403-GMS, *Rembrandt Technologies LP v. Comcast Corporation et al*; and 07-cv-00404-GMS, *Rembrandt Technologies LP v. Charter Communications Inc. et al.*

15.    As used herein, "and" and "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

16.    Where appropriate, the singular form of a word should be interpreted in the plural and vice versa, to acquire the broadest possible meaning.

17.    If any document relating to the subject matter of this subpoena has been destroyed, describe the content of said document, the last location of said document, the date of its destruction and the name of the person or entity that ordered or authorized its destruction.

## DOCUMENT REQUESTS

### *PATENT & PATENT PROSECUTION*

1.    All documents discussing, describing, referring, or relating to the patents-in-suit, any related patents or patent applications, or to the same or similar subject matter as the subject matter disclosed in the patents-in-suit.

2.      All documents discussing, describing, referring, or relating to the preparation, filing, or prosecution of the patents-in-suit or any related patents or patent applications, including, but not limited to invention disclosure information, technical descriptions, prior art, publications, non-identical drafts of patent applications, abandoned applications (*e.g.*, Application No. 08/149,348) prosecution file histories of the patents-in-suit, prosecution file histories of related patents or patent applications, communications with inventors or experts, and any communications with any agent, attorney, firm, foreign patent office or the U.S. Patent and Trademark Office ("USPTO").

3.      Documents sufficient to identify all persons who assisted in any aspect of the preparation, filing, or prosecution of the patents-in-suit or any related patents or patent applications.

4.      All documents discussing, describing, referring, or relating to any Paradyne Patents, including without limitation any abandoned application.

5.      All documents concerning the preparation, filing, or prosecution of any Paradyne Patent, including, but not limited to invention disclosure information, technical descriptions, prior art, publications, non-identical drafts of patent applications, abandoned applications, prosecution file histories, communications with inventors or experts, and any communications with any agent, attorney, firm, foreign patent office or the U.S. Patent and Trademark Office ("USPTO").

6.      All documents referring to or concerning any patent applications filed by or patents issued to any of the Inventors.

7.      All documents evidencing, describing, concerning, or referring to the preparation, filing, or prosecution of any patents or patent applications naming one or more of the Inventors,

- 5 -

including, but not limited to invention disclosure information, technical descriptions, prior art, publications, non-identical drafts of patent applications, abandoned applications, prosecution file histories, and any communications with any agent, attorney, firm, foreign patent office or the U.S. Patent and Trademark Office ("USPTO").

8. All documents and materials concerning inventorship of any invention allegedly disclosed or claimed by the patents-in-suit or by any related patents or patent applications, including, but not limited to documents sufficient to identify all persons who assisted in any aspect of the research, development, manufacture, testing, marketing, sale, or licensing of the alleged invention(s), and documents sufficient to identify all materials suppliers for any embodiment of the alleged invention(s).

9. All actual or potential prior art known, cited, referenced, considered, or discussed during or in prosecution of the patents-in-suit or any related patents or patent applications, whether or not first cited or found by the assignee(s), the named inventors, counsel, agent(s), any patent office or any other person or entity.

10. All documents provided to any Prosecuting Attorney or Inventor by anyone prior to or during the preparation and prosecution of the patents-in-suit or any related patents or patent applications in connection with such preparation and prosecution, including, without limitation notes, laboratory notebooks, sketches, memoranda, articles, technical reports, technical journals, and technical specifications.

11. All documents and materials concerning the conception of the alleged invention(s) of the patents-in-suit or of related patents or patent applications, the best mode of practicing such alleged invention(s), the reduction to practice of such alleged invention(s), and any improvements to such alleged invention(s), including, but not limited to inventor records,

- 6 -

notebooks, physical embodiments of all or part of such alleged invention(s), and all devices, apparatus or software purchased or built by the inventors for the purpose of researching, developing, or reducing to practice such alleged invention(s).

12.    All documents concerning any actual or constructive reduction to practice of the alleged invention(s) of the patents-in-suit or of any related patents or patent applications, including but not limited to documents relating to research, development, manufacture, testing, marketing, or sale  of the alleged invention(s).

13.    All documents concerning any costs associated with the conception, reduction-to-practice, or research and development of the alleged invention(s), including, but not limited to receipts for supplies.

14.    All documents concerning, describing, or evidencing when the inventors, the assignees, their counsel, or anyone subject to the duty of candor before the USPTO learned of any potential or actual prior art to the patents-in-suit or to any related patents or patent applications.

15.    All documents and materials comprising, concerning or referring to any search for prior art to the patents-in-suit or any related patents or patent applications.

16.    All documents comprising, concerning or referring to potential or actual prior art to the patents-in-suit or to any related patents or patent applications, even if you dispute that the material constitutes or discloses prior art, including, but not limited to art cited during prosecution of the patents-in-suit, art cited during the prosecution of any related patents or patent applications, and art disclosed by any third parties (including in any litigation involving the patents-in-suit or in licensing discussions).

17.    All documents that allegedly support any contention that the alleged invention(s) of the patents-in-suit are not obvious under 35 U.S.C. § 103, including, but not limited to documents that allegedly relate to or evidence secondary considerations of non-obviousness such as commercial success, long-felt need, copying by others, prior failure by others, licensing by others, or unexpected results.

18.    All documents referring to or concerning any litigation or other proceeding involving the patents-in-suit or any related patents or patent applications, including, but not limited to all pleadings, motions, exhibits, orders, depositions or other testimony, hearing transcripts, written discovery responses or initial disclosures, document productions, correspondence, settlement agreements, consent decrees, or any other materials from prior litigations.

19.    All documents and other materials provided to any Prosecuting Attorney by the inventors, any assignee, or their counsel relating to this litigation or to any of the patents-in-suit or any related patent or patent application or to any Paradyne Patent.

20.    All documents and other materials provided by any Prosecuting Attorney to the inventors, any assignee, or their counsel relating to this litigation or to any of the patents-in-suit or any related patent or patent application or to any Paradyne Patent.

21.    All documents concerning the level of ordinary skill in the art of the alleged invention(s) of the patents-in-suit.

22.    All documents concerning the interpretation or construction of any of the claim terms in the patents-in-suit.

- 8 -

### *COMMERCIALIZATION & PRIOR ART*

23.     All documents concerning any disclosure by anyone to anyone of the alleged invention(s) of the patents-in-suit or of related patents or patent applications, including, but not limited to any disclosure of the alleged invention(s) by the assignee(s) or the named inventors to each other or to any third party.

24.     All documents concerning any sale, offer for sale, importation, public use, or public disclosure of any activity, product, process, or method that may embody any of the claims or disclosures of the patents-in-suit or of related patents or patent applications.

25.     All documents concerning the first sale, offer for sale, importation, public use, or public disclosure of any activity, product, process, or method that may embody any of the claims or disclosures of the patents-in-suit or of related patents or patent applications.

26.     All documents referring or relating to any products marketed or sold by any assignee of the patents-in-suit or of related patents or patent applications that relates to any activity, product, process, or method that may embody any of the claims or disclosures of the patents-in-suit or of related patents or patent applications.

27.     All documents concerning trade shows, manuals, articles, books, patents, publications, or any other reference materials relating to the subject matter described, shown or claimed in the patents-in-suit or any related patents or patent applications or any products relating to those patents or applications.

28.     All documents referring or relating to any products that compete with any product marketed or sold by any assignee that relates to any activity, product, process, or method that

- 9 -

may embody any of the claims or disclosures of the patents-in-suit or of related patents or patent applications.

29.    All documents referring or relating to the following products: (1) Enhanced Throughput Cellular or ETC (including ETC1 and ETC2); (2) AT&T KeepInTouch; (3) FrameSaver; (4) Accucom products; (5) Compshere products; (6) 3400, 3800 and 3900 series products; (7) I-Marc 9000 Series products; (8) Eclipse products.

30.    All documents and materials concerning any strategies, plans, or expectations (whether of the assignees of the patents-in-suit or of related patents or patent applications, the inventors, licensing counsel, or otherwise) with respect to the subject matter disclosed or claimed by the patents-in-suit or by any related patents or patent applications, including without limitation any plans to commercialize, sell, license, or otherwise derive business or revenues from the patents-in-suit or from any related patents or applications.

### *PATENT OWNERSHIP & LICENSING*

31.    All documents concerning the ownership of the patents-in-suit or any related patents or patent applications, including, but not limited to all documents relating to assignments, acquisitions, liens, licenses, auctions, sales, or other transfers of rights by or to any entity or person.

32.    All documents concerning any license, proposed license, assignment, proposed assignment, sale, proposed sale, covenant not to sue, right of first refusal or any other actual or proposed transfer or extension of rights in or to the patents-in-suit or any related patents or patent applications.

33.    All documents concerning a reasonable royalty for licensing one or more of the patents-in-suit or any related patents or patent applications.

- 10 -

34.    All documents concerning any settlement, covenant not to sue, consent decree, judgment or other resolution of any litigation (actual or potential) involving the patents-in-suit or any related patents or patent applications.

35.    All documents concerning any products that have been licensed or for which any covenant not to sue has been extended under the patents-in-suit or under any related patents or patent applications.

36.    All documents referring or relating to the actual or potential enforcement of the patents-in-suit or any related patents or patent applications.

37.    All documents comprising, concerning or referring to communications or agreements involving Paradyne, Lucent Technologies, Inc., Texas Pacific Group, Globespan, Rembrandt, and/or Zhone relating to the patents-in-suit or related patents and patent applications or to Paradyne Patents.

*38.*    All documents referring or relating to the development of any standards that refer, relate to or concern any of the patents-in-suit or related patents or patent applications.

### *CABLE & OTHER ISSUES*

39.    All Rembrandt, Paradyne, Globespan, Zhone, Inventor or Prosecuting Attorney documents referring or relating to cable modems or cable modem terminating systems.

40.    All documents referring or relating to the development of any standards relating to cable modems or cable modem terminating systems.

41.    All documents referring to or concerning the relationship, or absence thereof, between any version of DOCSIS and any of the patents-in-suit.

42.    All documents concerning any alleged infringement (whether direct, contributory or by inducement) of the patents-in-suit or any related patents.

43.     All documents concerning comparisons between the patents-in-suit or any related patents or patent applications to anything else including any activity, product, process, method, prior art, patent, or publication.

44.     All documents concerning any contention by any person or party, including without limitation any third party, named inventor, prosecuting counsel, prior art search firm, or any other person or party, that any of the patents-in-suit or any related patent or patent application is valid or invalid, enforceable or unenforceable, or infringed or not infringed.

45.     All documents comprising, concerning or referring to any opinions, evaluations, advice, or analyses concerning the validity or invalidity, enforceability or unenforceability, infringement or noninfringement, or scope of the claims of the patents-in-suit or of any related patents or patent applications, and all documents reviewed in the formation of such opinions, evaluations, advice, or analyses.

46.     All documents comprising, concerning or referring to any assertion that any claim of the patents-in-suit is valid or invalid, enforceable or unenforceable, or infringed or not infringed.

## *FURTHER AGREEMENTS & COMMUNICATIONS*

47. All documents comprising or referring or relating to any agreements including the Inventors or the Prosecuting Attorneys relating to this litigation or to any of the patents-in-suit or any related patent or patent application or any Paradyne Patent.

48. All documents comprising or referring or relating to any communications with the Inventors or the Prosecuting Attorneys relating to this litigation or to any of the patents-in-suit or any related patent or patent application or to any Paradyne Patent.

49. All communications with or between the Inventors.

50. All documents concerning communications regarding the patents-in-suit, any related patents or patent applications or the same or similar subject matter as that disclosed in the patents-in-suit, including, but not limited to internal communications or communications with third parties (including without limitation communications with the USPTO, any foreign patent office, or any assignee).

## *FURTHER BUSINESS DOCUMENTS*

51. All documents and things referring or relating to the business of Rembrandt, including without limitations all documents and things referring or relating to any intellectual property licensing, acquisition or enforcement agreements, strategies or plans or to any agreements, strategies or plans to supply products or enter agreements with others to supply products implementing any intellectual property.

52. All documents and things referring or relating to Rembrandt.

53. All documents and things referring or relating to Remstream or any Remstream product.

- 13 -

54.     Documents sufficient to identify policies and procedures of any assignee for generating, maintaining, and disposing of documents, including, but not limited to policies and procedures relating to patent applications, patent prosecution files, and any scientific or technical references related to such patent prosecution files.

### DUE DILIGENCE AND VALUATIONS

55.     All documents that reflect, discuss, describe, evidence or concern the actual, potential, or possible value, if any, of any of the patents-in-suit or any related patents or patent applications and all documents that were used in, created for, or created during due diligence in any transaction (including by way of illustration but not limitation, any actual or proposed stock sale, asset sale, merger, spin-off, acquisition, divestiture, purchase, assignment, sale, bid, auction, covenant not to sue, license or any other potential or actual transaction) involving Paradyne, any transaction involving any patents-in-suit, or any transaction involving related patents or patent application.

56.     All offering memoranda and other documents created in connection with any transaction involving Paradyne (including by way of illustration but not limitation, any actual or proposed stock sale, asset sale, merger, spin-off, acquisition, divestiture, purchase, assignment, sale, bid, auction, covenant not to sue, license or any other potential or actual transaction) that reflects, discusses, describes, evidences, or concerns any valuation of Paradyne, any patent-in-suit, or any related patent or patent application.

57.     All communications discussing, concerning, reflecting, or describing any due diligence activities involving any patent-in-suit or any related patent or patent application.

58.    All documents created, used in, reflecting, discussing, or covering any due diligence activities in connection with Paradyne, any patent-in-suit, or any related patent or patent application.

59.    Documents sufficient to show identify all financial, legal, or other advisors representing any party involved in any transaction (including by way of illustration but not limitation, any actual or proposed stock sale, asset sale, merger, spin-off, acquisition, divestiture, purchase, assignment, sale, bid, auction, covenant not to sue, license or any other potential or actual transaction) including Paradyne, any patent-in-suit, or any related patent or patent application.

60.    All documents concerning the actual or proposed transfer, sale, securitization, monetization, acquisition or licensing of any patent-in-suit.

61.    All documents and things describing, evidencing, discussing, referring to or relating to any review or inspection of the Paradyne Patents, any agreements relating to the Paradyne Patents or any communications relating to the Paradyne Patents.

62.    All minutes of any board of directors that discuss, evidence or describe the actual or possible value of any patent-in-suit or any related patent or patent application.

63.    All documents presented to or provided to any board of directors that discuss, evidence or describe the actual or possible value of any patent-in-suit or any related patent or patent application.

### *PREVIOUSLY-SUBPOENAED DOCUMENTS*

64.    All documents requested pursuant to any previously-served subpoena in a Related Action.

- 15 -