IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: REMBRANDT TECHNOLOGIES, LP PATENT LITIGATION | ) ) ) ) ) ) | MDL Docket No. 07-md-1848 (GMS) |
| MOTOROLA, INC., CISCO SYSTEMS, INC., SCIENTIFIC-ATLANTA, INC., ARRIS GROUP, INC., THOMSON, INC., AMBIT MICROSYSTEMS, INC., and NETGEAR, INC.<br><br>Plaintiffs,<br><br>v.<br><br>REMBRANDT TECHNOLOGIES, LP, and REMBRANDT TECHNOLOGIES, LLC d/b/a REMSTREAM,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 07-752-GMS<br><br><br>**JURY TRIAL DEMANDED** |
| REMBRANDT TECHNOLOGIES, LP, and REMBRANDT TECHNOLOGIES, LLC d/b/a REMSTREAM,<br><br>Counter-Plaintiffs,<br><br>v.<br><br>MOTOROLA, INC., CISCO SYSTEMS, INC., SCIENTIFIC-ATLANTA, INC., ARRIS GROUP, INC., THOMSON, INC., AMBIT MICROSYSTEMS, INC., and NETGEAR, INC., TIME WARNER CABLE, INC., TIME WARNER CABLE LLC, TIME WARNER NEW YORK CABLE LLC, TIME WARNER ENTERTAINMENT COMPANY, LP, COMCAST CORPORATION, COMCAST | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 07-752-GMS<br><br><br>**JURY TRIAL DEMANDED** |

CABLE COMMUNICATIONS, LLC, CHARTER                )
COMMUNICATIONS OPERATING, LLC,                    )
COXCOM, INC., COX COMMUNICATIONS,                 )
INC., COX ENTERPRISES, INC., CSC                  )
HOLDINGS, INC., CABLEVISION SYSTEMS               )
CORPORATION, ADELPHIA                             )
COMMUNICATIONS CORPORATION,                       )
CENTURY-TCI CALIFORNIA                            )
COMMUNICATIONS, LP, CENTURY-TCI                   )
HOLDINGS, LLC, COMCAST OF                         )
FLORIDA/PENNSYLVANIA, L.P. (f/k/a                 )
PARNASSOS, LP), COMCAST OF                        )
PENNSYLVANIA II, L.P. (f/k/a CENTURY-TCI          )
CALIFORNIA, L.P.), PARNASSOS                      )
COMMUNICATIONS, LP, ADELPHIA                      )
CONSOLIDATION, LLC, PARNASSOS                     )
HOLDINGS, LLC, and WESTERN NY                     )
CABLEVISION, LP,                                  )
                                                  )
                Counter-Defendants.               )
                                                  )
_____         )

## STIPULATED MOTION AND ORDER FOR LEAVE
## TO AMEND PLEADINGS PURSUANT TO FED. R. CIV. P. 15

WHEREAS, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, Plaintiffs

Motorola Inc., Cisco Systems Inc., Scientific-Atlanta Inc., ARRIS Group Inc., Thomson Inc.,

Ambit Microsystems Inc., and NETGEAR, Inc. (collectively, "Plaintiffs") seek to amend certain

of the claims in their Complaint and certain of the defenses in their Reply to the Rembrandt

Technologies, LP and Rembrandt Technologies, LLC (d/b/a/ Remstream) (collectively,

"Rembrandt") counterclaims, to add claims and defenses based on inequitable conduct with

respect to U.S. Patent Nos. 5,710,761; 5,852,631; 5,719,858; 4,937,819; 5,008,903; 6,131,159;

5,778,234; and 6,950,444 and certain related invalidity claims and defenses;

WHEREAS, the parties have met and conferred, and Rembrandt consents (without

conceding the merits of the amendments) to Plaintiffs' proposed amendments insofar as they

relate to inequitable conduct and invalidity claims or defenses;

WHEREAS, Plaintiffs and Rembrandt hereby stipulate to the filing of Plaintiffs' First Amended Reply to the Counterclaims of Counter-Plaintiffs, containing amended defenses based on inequitable conduct (without conceding the merits of the amendments), attached as Exhibit A hereto;

WHEREAS, Rembrandt further consents (without conceding the merits of the amendments) to the filing of Plaintiffs' Amended Complaint attached as Exhibit B, which incorporates the inequitable conduct allegations contained therein;

IT IS HEREBY STIPULATED AND AGREED by the parties to this stipulation, subject to the Order of the Court, that: (1) the amended reply attached as Exhibit A hereto shall be entered in this case and deemed filed and served upon entry of this stipulation as an Order of the Court; and (2) Plaintiffs' Amended Complaint attached as Exhibit B containing the inequitable

conduct claims shall be entered in the case and deemed filed and served upon entry of this stipulation as an Order of the Court.

| /s/ John W. Shaw | /s/ Collins J. Seitz, Jr. |
|---|---|
| Josy W. Ingersoll (No. 1088) | Collins J. Seitz, Jr. (#2237) |
| John W. Shaw (No. 3362) | Francis DiGiovanni (#3189) |
| Karen E. Keller (No. 4489) | James D. Heisman (#2746) |
| Jeffrey T. Castellano (No. 4837) | Kristen Healey Cramer (#4512) |
| YOUNG CONAWAY STARGATT & | CONNOLLY BOVE LODGE & HUTZ LLP |
|   TAYLOR, LLP | 1007 N. Orange Street |
| 1000 West Street | Wilmington, Delaware 19899 |
| Wilmington, DE 19801 | (302) 658-9141 |
| (302) 571-6600 | cseitz@cblh.com |
| jingersoll@ycst.com | fdigiovanni@cblh.com |
| jshaw@ycst.com | jheisman@cblh.com |
| kkeller@ycst.com | kcramer@cblh.com |
| jcastellano@ycst.com | |
| | *Counsel for Defendant/Counter-Plaintiff* |
| *Liaison Counsel and Attorneys for* | *Rembrandt Technologies, LP and Counter-* |
| *Plaintiffs/Counter-Defendants Motorola, Inc.,* | *Plaintiff Rembrandt Technologies, LLC (d/b/a/* |
| *Cisco Systems, Inc., Scientific-Atlanta, Inc.,* | *Remstream)* |
| *ARRIS Group, Inc., Thomson, Inc., Ambit* | |
| *Microsystems, Inc., and NETGEAR, Inc.* | |

IT IS SO ORDERED, this _____ of April, 2008.

_____
Chief, United States District Court Judge

604216

## CERTIFICATE OF SERVICE

I, John W. Shaw, Esquire, hereby certify that on April 11, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Collins J. Seitz, Jr., Esquire
Francis DiGiovanni, Esquire
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building – 8th Floor
1007 N. Orange Street
Wilmington, DE 19801
cseitz@cblh.com
fdigiovanni@cblh.com

Jack B. Blumenfeld, Esquire
Morris Nichols Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
jblumenfeld@mnat.com

I further certify that on April 11, 2008, I caused a copy of the foregoing document to be served by e-mail and hand delivery on the above-listed counsel of record and on the following in the manner indicated:

**BY E-MAIL**

David S. Benyacar, Esquire
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022
dbenyacar@kayescholer.com

**BY E-MAIL**

Matthew D. Powers, Esquire
Edward R. Reines, Esquire
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
matthew.powers@weil.com
edward.reines@weil.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
Jeffrey T. Castellano (No. 4837)
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
*jcastellano@ycst.com*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: REMBRANDT TECHNOLOGIES, LP PATENT LITIGATION | ) ) ) ) ) |  MDL Docket No. 07-md-1848 (GMS) |

| | |
|---|---|
| MOTOROLA, INC., CISCO SYSTEMS, INC., SCIENTIFIC-ATLANTA, INC., ARRIS GROUP, INC., THOMSON, INC., AMBIT MICROSYSTEMS, INC., and NETGEAR, INC. |
| Plaintiffs, |
| v. |  Civil Action No. 07-752-GMS |
| REMBRANDT TECHNOLOGIES, LP, and REMBRANDT TECHNOLOGIES, LLC d/b/a REMSTREAM, |
| Defendants. |  **JURY TRIAL DEMANDED** |

| | |
|---|---|
| REMBRANDT TECHNOLOGIES, LP, and REMBRANDT TECHNOLOGIES, LLC d/b/a REMSTREAM, |
| Counter-Plaintiffs, |
| v. |  Civil Action No. 07-752-GMS |
| MOTOROLA, INC., CISCO SYSTEMS, INC., SCIENTIFIC-ATLANTA, INC., ARRIS GROUP, INC., THOMSON, INC., AMBIT MICROSYSTEMS, INC., and NETGEAR, INC., TIME WARNER CABLE, INC., TIME WARNER CABLE LLC, TIME WARNER NEW YORK CABLE LLC, TIME WARNER ENTERTAINMENT COMPANY, LP, COMCAST CORPORATION, COMCAST CABLE COMMUNICATIONS, LLC, CHARTER COMMUNICATIONS OPERATING, LLC, |  **JURY TRIAL DEMANDED** |

COXCOM, INC., COX COMMUNICATIONS,                )
INC., COX ENTERPRISES, INC., CSC                 )
HOLDINGS, INC., CABLEVISION SYSTEMS              )
CORPORATION, ADELPHIA                            )
COMMUNICATIONS CORPORATION,                      )
CENTURY-TCI CALIFORNIA                           )
COMMUNICATIONS, LP, CENTURY-TCI                  )
HOLDINGS, LLC, COMCAST OF                        )
FLORIDA/PENNSYLVANIA, L.P. (f/k/a                )
PARNASSOS, LP), COMCAST OF                       )
PENNSYLVANIA II, L.P. (f/k/a CENTURY-TCI         )
CALIFORNIA, L.P.), PARNASSOS                     )
COMMUNICATIONS, LP, ADELPHIA                     )
CONSOLIDATION, LLC, PARNASSOS                    )
HOLDINGS, LLC, and WESTERN NY                    )
CABLEVISION, LP,                                 )
                                                 )
            Counter-Defendants.                  )
_____     )

## FIRST AMENDED REPLY OF PLAINTIFFS/COUNTER-DEFENDANTS TO THE COUNTERCLAIMS OF COUNTER-PLAINTIFFS

Plaintiffs and Counter-Defendants Motorola, Inc. ("Motorola"), Cisco Systems, Inc. ("Cisco"), Scientific-Atlanta, Inc. ("Scientific-Atlanta"), ARRIS Group, Inc. ("ARRIS"), Thomson, Inc. ("Thomson"), Ambit Microsystems, Inc. ("Ambit") and NETGEAR, Inc. ("NETGEAR") (collectively "Plaintiffs" or "Plaintiffs/Counter-Defendants") reply to the Counterclaims of Rembrandt Technologies, LP ("Rembrandt") and Rembrandt Technologies, LLC ("Remstream") (collectively "Counter-Plaintiffs") as follows:

1.     Rembrandt is a limited partnership organized under the laws of the state of New

       Jersey with its principal place of business at 401 City Avenue, Suite 900, Bala

       Cynwyd, PA 19004.

2

**ANSWER:**    Upon information and belief, Plaintiffs/Counter-Defendants admit that Rembrandt is a limited partnership organized under the laws of the state of New Jersey with its principal place of business at 401 City Avenue, Suite 900, Bala Cynwyd, PA 19004.

> 2.    Rembrandt Technologies, LLC, a Delaware LLC, is wholly owned by Rembrandt and does business as "Remstream."  Remstream has its headquarters at 401 City Avenue, Suite 900, Bala Cynwyd, PA 19004.  Joinder of Remstream, the exclusive licensee of the 761, '234, '159, and '444 patents, as a counter-plaintiff in this counterclaim is proper under Federal Rules of Civil Procedure 13(h) and 19.

**ANSWER:**    Upon information and belief, Plaintiffs/Counter-Defendants admit that Rembrandt Technologies, LLC is also known as "Remstream."   Upon information and belief, Plaintiffs/Counter-Defendants admit that Remstream has its headquarters at 401 City Avenue, Suite 900, Bala Cynwyd, PA 19004.   Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the remaining allegations contained in paragraph 2 and accordingly deny the remaining allegations of paragraph 2.

> 3.    Rembrandt has granted Remstream the exclusive right under the '761, '234, '159, and '444 patents, to make, have made, import, sell, offer to sell, or otherwise distribute, DOCSIS 1.0/1.1, 2.0 and/or 3.0 compliant cable modems and/or EMTA cable modems.

**ANSWER:**    Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 3 and accordingly deny the allegations of paragraph 3.

4.    Plaintiff/counter-defendant Ambit MicroSystems, Inc. ("Ambit") is a California corporation with its principal place of business at 9570 La Costa Lane, Lone Tree, CO 80124.

**ANSWER:**    Admitted.

5.    Plaintiff/counter-defendant ARRIS Group, Inc. ("ARRIS") is a Delaware corporation with its principal place of business at 3871 Lakefield Drive, Suwanee, GA 30024.

**ANSWER:**    Admitted.

6.    Plaintiff/counter-defendant Cisco Systems, Inc. ("Cisco") is a California corporation with its principal place of business at 170 West Tasman Drive, San Jose, CA 95134.

**ANSWER:**    Admitted.

7.    Plaintiff/counter-defendant Motorola, Inc. ("Motorola") is a Delaware corporation with its principal place of business at 1303 Algonquin Road, Schaumburg, IL 60196.

**ANSWER:**    Admitted.

8.    Plaintiff/counter-defendant NETGEAR, Inc. ("NETGEAR") is a Delaware corporation with its principal place of business at 4500 Great America Parkway, Santa Clara, CA 95054.

**ANSWER:**    Admitted.

9.     Plaintiff/counter-defendant Scientific-Atlanta, Inc. ("Scientific-Atlanta") is a wholly-owned subsidiary of Plaintiff/Counter-Defendant Cisco and is a Georgia corporation with its principal place of business at 5030 Sugarloaf Parkway, Lawrenceville, GA 30044-2896.

**ANSWER:**    Admitted.

10.    Plaintiff/counter-defendant Thomson, Inc. ("Thomson") is a Delaware corporation with its principal place of business at 101 W. 103rd Street, INH 3340, Indianapolis, IN 46290.

**ANSWER:**    Admitted.

11.    Plaintiffs/Counter-Defendants manufacture and/or sell cable equipment, including cable modems, to multiple system operators ("MSOs"), including but not limited to MSO Counter-Defendants. MSO Counter-Defendants sell and/or lease some of the cable equipment and/or include the equipment in their networks for the provision of high speed internet, cable broadband, and/or other services. MSO Counter-Defendants are made parties to the Counterclaim in accordance with the provisions of Federal Rules of Civil Procedure 13(h).

**ANSWER:**    Plaintiffs/Counter-Defendants    admit    that    Plaintiff/Counter-Defendants manufacture and/or sell cable equipment, including cable modems, to multiple system operators ("MSOs"), including but not limited to MSO Counter-Defendants who may supply such equipment for use in cable systems.    Plaintiffs/Counter-Defendants lack knowledge or

information sufficient to admit or deny the truth of the remaining allegations contained in paragraph 11 and accordingly deny the remaining allegations of paragraph 11.

12.     Counter-defendant Time Warner Cable, Inc. ("TWC") is a corporation organized under the laws of the state of Delaware with its principal place of business at 7910 Crescent Executive Drive, Suite 56, Charlotte, North Carolina 28217. TWC's registered agent for service of process in Delaware is The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

**ANSWER:**     Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 12 and accordingly deny the allegations of paragraph 12.

13.     Counter-defendant Time Warner Cable LLC ("TWCL") is a limited liability company organized under the laws of the state of Delaware with its principal place of business at 290 Harbor Drive, Stamford, Connecticut 06902. TWCL's registered agent for service of process in Delaware is The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

**ANSWER:**     Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 13 and accordingly deny the allegations of paragraph 13.

14.     Counter-defendant Time Warner New York Cable LLC ("TWNY") is a limited liability company organized under the laws of the state of Delaware with its principal place of business at 7910 Crescent Executive Drive, Suite 56, Charlotte,

North Carolina 28217. TWC's registered agent for service of process in Delaware

is The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

**ANSWER:**    Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 14 and accordingly deny the allegations of paragraph 14.

15.    Counter-defendant Time Warner Entertainment Company, LP ("TWE") is a limited partnership organized under the laws of the state of Delaware with its principal place of business at 290 Harbor Drive, Stamford, Connecticut 06902 in care of Time Warner Cable.  TWE's registered agent for service of process in Delaware is The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801

**ANSWER:**    Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 15 and accordingly deny the allegations of paragraph 15.

16.    Counter-defendant TWC is the direct or indirect parent of each of counter-defendants TWCL, TWNY, and TWE.  Through one or more of its subsidiaries, affiliates, partners, or other related parties, TWC owns and/or operates cable systems throughout the United States.  TWCL, TWNY, and TWE, each directly or through one or more subsidiaries, affiliates, partners, or other related parties, as set forth herein, have each committed and continue to commit tortuous acts of patent infringement.

**ANSWER:** Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 16 and accordingly deny the allegations of paragraph 16.

17. Counter-defendant Comcast Corporation is a corporation organized under the laws of the state of Pennsylvania with its principal place of business at 1500 Market Street, Philadelphia, Pennsylvania 19103. Comcast Corporation is a national provider of cable television and internet products and services, and regularly conducts and transacts business in Delaware.

**ANSWER:** Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 17 and accordingly deny the allegations of paragraph 17.

18. Counter-defendant Comcast Cable Communications, LLC is a limited liability company organized under the laws of Delaware with its principal place of business at 1500 Market Street Philadelphia, Pennsylvania 19103. Comcast Cable Communications, LLC's registered agent for service of process in Delaware is Comcast Capital Corporation, 1201 N. Market Street, Suite 1000, Wilmington, DE 19801.

**ANSWER:** Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 18 and accordingly deny the allegations of paragraph 18.

19.    Counter-defendants Comcast Corporation and Comcast Cable Communications, LLC, are collectively referred to as "Comcast." Comcast is a national provider of cable television and internet products and services, and regularly conducts and transacts business in Delaware.

**ANSWER:**    Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 19 and accordingly deny the allegations of paragraph 19.

20.    Counter-defendant Charter Communications, Inc. is a corporation organized under the laws of the state of Delaware with its principal place of business at 12405 Powerscourt Drive Ste. 100, St. Louis, Missouri 63131.    Charter Communications, Inc. is a national provider of cable television and internet products and services, and regularly conducts and transacts business in Delaware. Charter Communications, Inc.'s registered agent for service of process in Delaware is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808

**ANSWER:**    Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 20 and accordingly deny the allegations of paragraph 20.

21.    Counter-defendant Charter Communications Operating, LLC is a limited liability company organized under the laws of the state of Delaware with its principal place of business at 12405 Powerscourt Drive Ste. 100, St. Louis, Missouri 63131.    Charter Communications Operating, LLC is a subsidiary of Counter-

9

Defendant Charter Communications, Inc. is a national provider of cable television and internet products and services, and regularly conducts and transacts business in Delaware. Charter Communications Operating, LLC's registered agent for service of process in Delaware is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

**ANSWER:** Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 21 and accordingly deny the allegations of paragraph 21.

22. Counter-defendant Coxcom, Inc. is a corporation organized under the laws of the state of Delaware with its principal place of business at 1400 Lake Hearn Drive, Atlanta, Georgia 30319. Coxcom, Inc. is a national provider of cable television and internet products and services, and regularly conducts and transacts business in Delaware. Coxcom, Inc.'s registered agent for service of process in Delaware is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

**ANSWER:** Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 22 and accordingly deny the allegations of paragraph 22.

23. Counter-defendant Cox Communications, Inc. is a corporation organized under the laws of the state of Delaware with its principal place of business at 1400 Lake Hearn Drive, Atlanta, Georgia 30319. Cox Communications, Inc.'s registered

agent for service of process in Delaware is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

**ANSWER:**    Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 23 and accordingly deny the allegations of paragraph 23.

24.    Counter-defendant Cox Enterprises, Inc. is a corporation organized under the laws of the state of Georgia with its principal place of business at 6205 Peachtree Dunwoody Road NE, Atlanta, Georgia 30319.  Cox Enterprises, Inc. is a national provider of cable television and internet products and services, and upon information and belief, regularly conducts and transacts business in Delaware. Cox Enterprises, Inc.'s registered agent for service of process in Delaware is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

**ANSWER:**    Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 24 and accordingly deny the allegations of paragraph 24.

25.    Counter-defendant CSC Holdings, Inc. is a corporation organized under the laws of the state of Delaware with its principal place of business at 1111 Stewart Avenue, Bethpage, New York 11714.  CSC Holdings, Inc.'s registered agent for service of process in Delaware is The Prentice-Hall Corporation System Inc., 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

**ANSWER:**    Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 25 and accordingly deny the allegations of paragraph 25.

26.    Counter-defendant Cablevision Systems Corporation is a corporation organized under the laws of the state of Delaware with its principal place of business at 1111 Stewart Avenue, Bethpage, New York 11714.  Cablevision Systems Corporation's registered agent for service of process in Delaware is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

**ANSWER:**    Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 26 and accordingly deny the allegations of paragraph 26.

27.    Counter-defendant Adelphia Communications Corporation ("ACC") is a corporation organized under the laws of the state of Delaware.  On June 25, 2002, ACC filed a petition in bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York in a case captioned *In re Adelphia Communications Corporation*, Case No. 02-41729 (REG).  That case remains pending in the bankruptcy court.  ACC's principal place of business on the Petition Date was located in Coudersport, Pennsylvania and is currently located in Greenwood Village, Colorado.  ACC was one of the leading cable and telecommunication companies in the United States.  After seeking bankruptcy protection on June 25, 2002, ACC continued to provide cable internet and television services to consumers throughout the United States until the sale of

12

substantially all of its assets on July 31, 2006. ACC's registered agent for service of process in Delaware is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

**ANSWER:**    Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 27 and accordingly deny the allegations of paragraph 27.

28.    Counter-defendant Century-TCI California Communications, LP is a partnership organized under the laws of the state of Delaware. Century-TCI California Communications, LP is an affiliate of ACC. On June 25, 2002, Century-TCI California Communications, LP filed a petition in bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York. Century-TCI California Communications, LP's bankruptcy proceedings are jointly administered with *In re Adelphia Communications Corporation*, Case No. 02-41729 (REG). Century-TCI California Communications, LP's registered agent for service of process in Delaware is Comcast Capital Corporation, 1201 N. Market Street, Suite 1000, Wilmington, DE 19081.

**ANSWER:**    Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 28 and accordingly deny the allegations of paragraph 28.

29.    Counter-defendant Century-TCI Holdings, LLC is a corporation organized under the laws of the state of Delaware. Century-TCI Holdings, LLC is an affiliate of ACC. On June 25, 2002, Century-TCI California Communications, LP filed a

13

petition in bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York. Century-TCI Holdings, LLC's bankruptcy proceedings are jointly administered with *In re Adelphia Communications Corporation*, Case No. 02-41729 (REG). Century-TCI Holdings, LLC's registered agent for service of process in Delaware is Comcast Capital Corporation, 1201 N. Market Street, Suite 1000, Wilmington, DE 19801.

**ANSWER:**    Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 29 and accordingly deny the allegations of paragraph 29.

30.    Counter-defendant Comcast of Florida/Pennsylvania, L.P. (f/k/a Parnassos, LP) is a partnership organized under the laws of the state of Delaware. Parnassos, LP was or is an affiliate of ACC. On June 25, 2002, Parnassos, LP filed a petition in bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York. Parnassos, LP's bankruptcy proceedings are jointly administered with *In re Adelphia Communications Corporation*, Case No. 02-41729 (REG). Comcast of Florida/Pennsylvania, L.P.'s registered agent for service of process in Delaware is Comcast Capital Corporation, 1201 N. Market Street, Suite 1000, Wilmington, DE 19801.

**ANSWER:**    Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 30 and accordingly deny the allegations of paragraph 30.

31.     Counter-defendant Comcast of Pennsylvania II, L.P. (f/k/a Century-TCI California, L.P.), is a partnership organized under the laws of the state of Delaware. Century-TCI California, L.P. was or is an affiliate of ACC. On June 25, 2002, Century-TCI California, L.P. filed a petition in bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York. Century-TCI California, LP's bankruptcy proceedings are jointly administered with *In re Adelphia Communications Corporation*, Case No. 02-41729 (REG). Comcast of Pennsylvania II, L.P.'s registered agent for service of process in Delaware is Comcast Capital Corporation, 1201 N. Market Street, Suite 1000, Wilmington, DE 19801.

**ANSWER:**     Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 31 and accordingly deny the allegations of paragraph 31.

32.     Counter-defendant Parnassos Communications, LP is a partnership organized under the laws of the state of Delaware. Parnassos Communications, LP is an affiliate of ACC. On June 25, 2002, Parnassos Communications, LP filed a petition in bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York. Parnassos Communications, LP's bankruptcy proceedings are jointly administered with *In re Adelphia Communications Corporation*, Case No. 02-41729 (REG). Parnassos Communications, LP's registered agent for service of process in Delaware is Comcast Capital Corporation, 1201 N. Market Street, Suite 1000, Wilmington, DE 19801.

15

**ANSWER:**    Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 32 and accordingly deny the allegations of paragraph 32.

33.    Counter-defendant Adelphia Consolidation, LLC, into which Parnassos Distribution Company I, LLC, Parnassos Distribution Company II, LLC, and Century-TCI Distribution Company, LLC, were merged, is a limited liability company organized under the laws of the state of Delaware.    Parnassos Distribution Company I, LLC, Parnassos Distribution Company, II, LLC, and Century-TCI Distribution Company, LLC were affiliates of ACC.    On June 25, 2002, Century-TCI Distribution Company, LLC filed a petition in bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York.    On October 6, 2005, Parnassos Distribution Company I, LLC, and Parnassos Distribution Company, II, LLC filed petitions in bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York. Parnassos Distribution Company I, LLC's, Parnassos Distribution Company II, LLC's, and Century-TCI Distribution Company, LLC's bankruptcy proceedings are jointly administered with *In re Adelphia Communications Corporation*, Case No. 02-41729 (REG).    Adelphia Consolidation, LLC's registered agent for service of process in Delaware is Corporation service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

**ANSWER:**    Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 33 and accordingly deny the allegations of paragraph 33.

34.    Counter-defendant Parnassos Holdings, LLC, is a corporation organized under the laws of the state of Delaware. Parnassos Holdings, LLC is an affiliate of ACC. On June 25, 2002, Parnassos Holdings, LLC filed a petition in bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York. Parnassos Holdings, LLC's bankruptcy proceedings are jointly administered with *In re Adelphia Communications Corporation*, Case No. 02-41729 (REG). Parnassos Holdings, LLC's registered agent for service of process in Delaware is Comcast Capital Corporation, 1201 N. Market Street, Suite 1000, Wilmington, DE 19801.

**ANSWER:**    Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 34 and accordingly deny the allegations of paragraph 34.

35.    Counter-defendant Western NY Cablevision, LP is a partnership organized under the laws of the state of Delaware. Western NY Cablevision, LP is an affiliate of ACC. On June 25, 2002, Western NY Cablevision, LP filed a petition in bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York. Western NY Cablevision, LP's bankruptcy proceedings are jointly administered with *In re Adelphia Communications Corporation*, Case No. 02-41729 (REG). Western NY Cablevision, LP's registered agent for service of process in Delaware is Comcast Capital Corporation, 1201 N. Market Street, Suite 1000, Wilmington, DE 19801.

**ANSWER:**   Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 35 and accordingly deny the allegations of paragraph 35.

36.   Counter-defendants ACC, Comcast of Florida/Pennsylvania, L.P. (f/k/a Parnassos, LP), Comcast of Pennsylvania II, L.P. (f/k/a Century-TCI California, L.P.), Century-TCI California Communications, LP, Century-TCI Holdings, LLC, Parnassos Communications, LP, Adelphia Consolidation, LLC, Parnassos Holdings, LLC, and Western NY Cablevision, LP, are herein referred to as the "ACC-Affiliated Counter-Defendants."   On September 13, 2006, Rembrandt commenced an adversary proceeding (the "Adversary Proceeding") against the ACC-Affiliated Counter-Defendants (or, in the case of Adelphia Consolidation, LLC, Rembrandt commenced an adversary proceeding against predecessor entities Parnassos Distribution Company I LLC, Parnassos Distribution Company II LLC, and Century-TCI Distribution Company LLC) and filed an administrative proof of claim (the "Proof of Claim") against the ACC-Affiliated Counter-Defendants (or their predecessor entities) in each case in the Bankruptcy Court for the Southern District of New York in which the ACC-Affiliated Counter-Defendants' (or their predecessor entities') Chapter 11 cases were pending.   In asserting the causes of action against the ACC-Affiliated Counter-Defendants that are set forth in the Counterclaim, the Counterclaim Plaintiffs intend to assert, and do assert, the same causes of action that Rembrandt previously asserted against the ACC-Affiliated Counter-Defendants (or their predecessor entities) in the Adversary Proceeding that are subject to the Proof of Claim and seek the same

18

recovery against the ACC-Affiliated Counter-Defendants' bankruptcy estates as was the subject of the Proof of Claim.

**ANSWER:**    Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 36 and accordingly deny the allegations of paragraph 36.

### JURISDICTION AND VENUE

37.    This is an action for patent infringement, arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*

**ANSWER:**    Plaintiffs/Counter-Defendants admit that the Counterclaim purports to recite an action arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*

38.    Subject matter jurisdiction is proper in this court under 28 U.S.C. §§ 1331 and 1338(a).

**ANSWER:**    Admitted with respect to Plaintiffs/Counter-Defendants' declaratory judgment claims against Rembrandt Technologies, LP.    Due to standing issues regarding the counterclaims, Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the remaining allegations contained in paragraph 38 and accordingly deny the remaining allegations of paragraph 38.

39.    This Court has personal jurisdiction over Plaintiffs/Counter-Defendants because they have submitted to the jurisdiction of this Court by filing the instant action; in addition, the Court has personal jurisdiction over Plaintiffs/Counter-Defendants

because they have committed acts of patent infringement in this judicial district, are Delaware entities, and/or have other sufficient contacts with Delaware.

**ANSWER:**    Plaintiffs/Counter-Defendants admit that this Court has personal jurisdiction over the Plaintiffs/Counter-Defendants in this specific case because they have submitted to the jurisdiction of this Court over this patent dispute by filing the instant action.  Plaintiffs/Counter-Defendants deny the remaining allegations contained in paragraph 39.

40.    This Court has personal jurisdiction over MSO Counter-Defendants because they either have previously availed themselves of the Court's jurisdiction, are Delaware entities, have property, offices, or personnel in Delaware, have committed acts of patent infringement in this judicial district, regularly transact business in Delaware, and/or have other sufficient contacts with Delaware.

**ANSWER:**    Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 40 and accordingly deny the allegations of paragraph 40.

41.    Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b), (c), and 1400(b).

**ANSWER:**    Admitted.

## COUNT I - INFRINGEMENT OF U.S. PATENT NO. 4,937,819

42.    Rembrandt realleges and incorporates herein by reference the allegations stated in paragraphs 1-41 of this Counterclaim.

20

**ANSWER:**    Plaintiffs/Counter-Defendants incorporate the answers provided to paragraphs 1-41 as though fully stated herein.

      43.    Rembrandt is the owner of all right, title, and interest, including the right to sue, enforce, and recover damages for all infringements, of U.S. Patent No. 4,937,819, entitled "Time Orthogonal Multiple Virtual DCE Device for Use in Analog and Digital Networks" (the "'819 patent") (Exhibit A to Plaintiff/Counter-Defendants' Complaint).

**ANSWER:**    Plaintiffs/Counter-Defendants admit that on its face, the '819 patent is entitled "Time Orthogonal Multiple Virtual DCE for Use in Analog and Digital Networks" and was attached as Exhibit A to Plaintiff/Counter-Defendants' Complaint. Plaintiffs/Counter-Defendants lack knowledge or information sufficient to deny or admit the remaining allegations contained in paragraph 43 and accordingly deny the remaining allegations of paragraph 43.

      44.    The '819 patent was duly and legally issued by the United States Patent and Trademark Office on June 26, 1990.

**ANSWER:**    Plaintiffs/Counter-Defendants admit that on its face the '819 patent recites an issuance date of June 26, 1990. Plaintiffs/Counter-Defendants deny the remaining allegations of paragraph 44.

      45.    Plaintiffs/Counter-Defendants are manufacturers of cable equipment, which equipment is sold to MSOs, including MSO Counter-Defendants, which, in turn, sell and/or lease some of that equipment and, additionally, use such equipment, throughout the United States in the operation of their cable networks.

**ANSWER:**   Plaintiffs/Counter-Defendants     admit     that     Plaintiff/Counter-Defendants

manufacture and/or sell cable equipment to multiple system operators ("MSOs"), including MSO

Counter-Defendants, and that such equipment may be used in the MSO Counter-Defendants'

cable systems.  Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit

or deny the truth of the remaining allegations contained in paragraph 45 and accordingly deny

the remaining allegations of paragraph 45.

46.   Upon information and belief, Plaintiffs/Counter-Defendants have indirectly

infringed, and are continuing to indirectly infringe, the '819 patent by practicing

or causing others to practice (by inducement and/or contributorily) the inventions

claimed in the '819 patent, in this district or otherwise within the United States.

For example, upon information and belief, Plaintiffs/Counter-Defendants have

indirectly infringed and continue to indirectly infringe the '819 patent by their

manufacture and sale of cable equipment to cable MSOs for inclusion into the

MSOs' cable networks for the specific provision of high speed internet, cable

broadband, and/or other services.

**ANSWER:**   Denied.

47.   Upon information and belief, MSO Counter-Defendants, excepting ACC-

Affiliated Counter-Defendants, have directly infringed, and are continuing to

directly infringe, the '819 patent by practicing the inventions claimed in the '819

patent, in this district or otherwise within the United States.  For example, upon

information and belief, MSO Counter-Defendants, excepting ACC-Affiliated

Counter-Defendants, have directly infringed and continue to directly infringe the

'819 patent by including Plaintiff/Counter-Defendants' cable equipment in MSO Counter-Defendant's cable networks for the specific provision of high speed internet, cable broadband, and/or other services.

**ANSWER:**    Denied.

48.    Upon information and belief, Plaintiffs/Counter-Defendants and MSO Counter-Defendants, excepting ACC-Affiliated Counter-Defendants, will continue to infringe the '819 patent unless enjoined by this Court. Upon information and belief, such infringement has been, and will continue to be, willful, making this an exceptional case and entitling Rembrandt to increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

**ANSWER:**    Denied.

## COUNT II - INFRINGEMENT OF U.S. PATENT NO. 5,008,903

49.    Rembrandt realleges and incorporates herein by reference the allegations stated in paragraphs 1-48 of this Counterclaim.

**ANSWER:**    Plaintiffs/Counter-Defendants incorporate the answers provided to paragraphs 1-48 as though fully stated herein.

50.    Rembrandt is the owner of all right, title, and interest, including the right to sue, enforce, and recover damages for all infringements, of U.S. Patent No. 5,008,903, entitled "Adaptive Transmit Pre-Emphasis for Digital Modem Computed from Noise Spectrum" (the "'903 patent") (Exhibit B to Plaintiff/Counter-Defendants' Complaint).

**ANSWER:**   Plaintiffs/Counter-Defendants admit that on its face, the '903 patent is entitled "Adaptive Transmit Pre-Emphasis for Digital Modem Computed from Noise Spectrum" and was attached as Exhibit B to Plaintiff/Counter-Defendants' Complaint.  Plaintiffs/Counter-Defendants lack knowledge or information sufficient to deny or admit the remaining allegations contained in paragraph 50 and accordingly deny the remaining allegations of paragraph 50.

      51.   The '903 patent was duly and legally issued by the United States Patent and Trademark Office on April 16, 1991.

**ANSWER:**   Plaintiffs/Counter-Defendants admit that on its face the '903 patent recites an issuance date of April 16, 1991.  Plaintiffs/Counter-Defendants deny the remaining allegations of paragraph 51.

      52.   Plaintiffs/Counter-Defendants are manufacturers of cable equipment, which equipment is sold to MSOs, including MSO Counter-Defendants, which, in turn, sell and/or lease some of that equipment and, additionally, use such equipment, throughout the United States in the operation of their cable networks.

**ANSWER:**   Plaintiffs/Counter-Defendants admit that Plaintiff/Counter-Defendants manufacture and/or sell cable equipment to multiple system operators ("MSOs"), including MSO Counter-Defendants, and that such equipment may be used in the MSO Counter-Defendants' cable systems.  Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the remaining allegations contained in paragraph 52 and accordingly deny the remaining allegations of paragraph 52.

24

53.    Upon information and belief, Plaintiffs/Counter-Defendants have indirectly infringed, and are continuing to indirectly infringe, the '903 patent by practicing or causing others to practice (by inducement and/or contributorily) the inventions claimed in the '903 patent, in this district or otherwise within the United States. For example, upon information and belief, Plaintiffs/Counter-Defendants have infringed and continue to infringe the '903 patent by their manufacture and sale of cable equipment to cable MSOs for inclusion into the MSOs' cable networks for the specific provision of high speed internet, cable broadband, and/or other services.

**ANSWER:**    Denied.

54.    Upon information and belief, MSO Counter-Defendants, excepting ACC-Affiliated Counter-Defendants, have directly infringed, and are continuing to directly infringe, the '903 patent by practicing the inventions claimed in the '903 patent, in this district or otherwise within the United States.  For example, upon information and belief, MSO Counter-Defendants, excepting ACC-Affiliated Counter-Defendants, have directly infringed and continue to directly infringe the '903 patent by including Plaintiff/Counter-Defendants' cable equipment in MSO Counter-Defendant cable networks for the specific provision of high speed internet, cable broadband, and/or other services.

**ANSWER:**    Denied.

55.    Upon information and belief, Plaintiffs/Counter-Defendants and MSO Counter-Defendants, excepting ACC-Affiliated Counter-Defendants, will continue to

25

infringe the '903 patent unless enjoined by this Court.  Upon information and belief, such infringement has been, and will continue to be, willful, making this an exceptional case and entitling Rembrandt to increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

**ANSWER:**    Denied.

## COUNT III - INFRINGEMENT OF U.S. PATENT NO. 5,710,761

56.    Rembrandt and Remstream reallege and incorporate herein by reference the allegations stated in paragraphs 1-55 of this Counterclaim.

**ANSWER:**    Plaintiffs/Counter-Defendants incorporate the answers provided to paragraphs 1-55 as though fully stated herein.

57.    Rembrandt is the owner, and Remstream is the exclusive licensee, of U.S. Patent No. 5,710,761, entitled "Error Control Negotiation Based on Modulation" (the "'761 patent") (Exhibit C to Plaintiff/Counter-Defendants' Complaint).

**ANSWER:**    Plaintiffs/Counter-Defendants admit that on its face, the '761 patent is entitled "Error Control Negotiation Based on Modulation" and was attached as Exhibit C to Plaintiff/Counter-Defendants' Complaint.    Plaintiffs/Counter-Defendants lack knowledge or information sufficient to deny or admit the remaining allegations contained in paragraph 57 and accordingly deny the remaining allegations of paragraph 57.

58.    The '761 patent was duly and legally issued by the United States Patent and Trademark Office on January 20, 1998.

**ANSWER:**    Plaintiffs/Counter-Defendants admit that on its face the '761 patent recites an issuance date of January 20, 1998.  Plaintiffs/Counter-Defendants deny the remaining allegations of paragraph 58.

59.    Plaintiffs/Counter-Defendants are manufacturers of cable equipment, which equipment is sold to MSOs, including MSO Counter-Defendants, which, in turn, sell and/or lease some of that equipment throughout the United States.

**ANSWER:**    Plaintiffs/Counter-Defendants    admit    that    Plaintiff/Counter-Defendants manufacture and/or sell cable equipment to multiple system operators ("MSOs"), including MSO Counter-Defendants, and that such equipment may be used in the MSO Counter-Defendants' cable systems.  Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the remaining allegations contained in paragraph 59 and accordingly deny the remaining allegations of paragraph 59.

60.    Plaintiffs/Counter-Defendants have directly and indirectly infringed, and are continuing to directly and indirectly infringe, the '761 patent by practicing or causing others to practice (by inducement and/or contributorily) the inventions claimed in the '761 patent, in this district or otherwise within the United States.

**ANSWER:**    Denied.

61.    Upon information and belief, MSO Counter-Defendants have directly infringed, and/or are continuing to directly infringe, the '761 patent by practicing the inventions claimed in the '761 patent, in this district or otherwise within the United States.

**ANSWER:**    Denied.

62.    Upon information and belief, Plaintiffs/Counter-Defendants and MSO Counter-Defendants (excepting ACC-Affiliated Counter-Defendants) will continue to infringe the '761 patent unless enjoined by this Court.

**ANSWER:**    Denied.

63.    Upon information and belief, the infringement by Plaintiffs/Counter-Defendants and MSO Counter-Defendants has been, and/or will continue to be, willful, making this an exceptional case and entitling Counter-Plaintiffs to increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

**ANSWER:**    Denied.

## COUNT IV - INFRINGEMENT OF U.S. PATENT NO. 5,719,858

64.    Rembrandt realleges and incorporates herein by reference the allegations stated in paragraphs 1-63 of this Counterclaim.

**ANSWER:**    Plaintiffs/Counter-Defendants incorporate the answers provided to paragraphs 1-63 as though fully stated herein.

65.    Rembrandt is the owner of all right, title, and interest, including the right to sue, enforce, and recover damages for all infringements, of U.S. Patent No. 5,719,858, entitled "Time-Division Multiple-Access Method for Packet Transmission on Shared Synchronous Serial Buses" (the "'858 patent") (Exhibit D to Plaintiff/Counter-Defendants' Complaint).

28

**ANSWER:**    Plaintiffs/Counter-Defendants admit that on its face, the '858 patent is entitled "Time-Division Multiple-Access Method for Packet Transmission on Shared Synchronous Serial Buses" and was attached as Exhibit D to Plaintiff/Counter-Defendants' Complaint. Plaintiffs/Counter-Defendants lack knowledge or information sufficient to deny or admit the remaining allegations contained in paragraph 65 and accordingly deny the remaining allegations of paragraph 65.

66.    The '858 patent was duly and legally issued by the United States Patent and Trademark Office on February 17, 1998.

**ANSWER:**    Plaintiffs/Counter-Defendants admit that on its face the '858 patent recites an issuance date of February 17, 1998.    Plaintiffs/Counter-Defendants deny the remaining allegations of paragraph 66.

67.    Plaintiffs/Counter-Defendants are manufacturers of cable equipment, which equipment is sold to MSOs, including MSO Counter-Defendants, which, in turn, sell and/or lease some of that equipment and, additionally, use such equipment, throughout the United States in the operation of their cable networks.

**ANSWER:**    Plaintiffs/Counter-Defendants    admit    that    Plaintiff/Counter-Defendants manufacture and/or sell cable equipment to multiple system operators ("MSOs"), including MSO Counter-Defendants, and that such equipment may be used in the MSO Counter-Defendants' cable systems. Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the remaining allegations contained in paragraph 67 and accordingly deny the remaining allegations of paragraph 67.

68.     On information and belief, Plaintiffs/Counter-Defendants have indirectly
        infringed, and are continuing to indirectly infringe, the '858 patent by practicing
        or causing others to practice (by inducement and/or contributorily) the inventions
        claimed in the '858 patent, in this district or otherwise within the United States.
        For example, upon information and belief, Plaintiffs/Counter-Defendants have
        infringed and continue to infringe the '858 patent by their manufacture and sale of
        cable equipment to MSOs for inclusion into the MSOs' cable networks for the
        specific provision of high speed internet, cable broadband, and/or other services.

**ANSWER:**     Denied.

69.     Upon information and belief, MSO Counter-Defendants, excepting ACC-
        Affiliated Counter-Defendants, have directly infringed, and are continuing to
        directly infringe, the '858 patent by practicing the inventions claimed in the '858
        patent, in this district or otherwise within the United States.  For example, upon
        information and belief, MSO Counter-Defendants, excepting ACC-Affiliated
        Counter-Defendants, have directly infringed and continue to directly infringe the
        '858 patent by including Plaintiff/Counter-Defendants' cable equipment in MSO
        Counter-Defendant's cable networks for the specific provision of high speed
        internet, cable broadband, and/or other services.

**ANSWER:**     Denied.

70.     Upon information and belief, Plaintiffs/Counter-Defendants and MSO Counter-
        Defendants, excepting ACC-Affiliated Counter-Defendants, will continue to
        infringe the '858 patent unless enjoined by this Court.  Upon information and

belief, such infringement has been, and will continue to be, willful, making this an exceptional case and entitling Rembrandt to increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

**ANSWER:**     Denied.

### COUNT V - INFRINGEMENT OF U.S. PATENT NO. 5,778,234

71.     Rembrandt and Remstream reallege and incorporate herein by reference the allegations stated in paragraphs 1-70 of this Counterclaim.

**ANSWER:**     Plaintiffs/Counter-Defendants incorporate the answers provided to paragraphs 1-70 as though fully stated herein.

72.     Rembrandt is the owner, and Remstream is the exclusive licensee, of U.S. Patent No. 5,778,234, entitled "Method for Downloading Programs" (the "'234 patent") (Exhibit E to Plaintiff/Counter-Defendants' Complaint).

**ANSWER:**     Plaintiffs/Counter-Defendants admit that on its face, the '234 patent is entitled "Method for Downloading Programs" and was attached as Exhibit E to Plaintiff/Counter-Defendants' Complaint.  Plaintiffs/Counter-Defendants lack knowledge or information sufficient to deny or admit the remaining allegations contained in paragraph 72 and accordingly deny the remaining allegations of paragraph 72.

73.     The '234 patent was duly and legally issued by the United States Patent and Trademark Office on July 7, 1998.

**ANSWER:**    Plaintiffs/Counter-Defendants admit that on its face the '234 patent recites an issuance date of July 7, 1998.  Plaintiffs/Counter-Defendants deny the remaining allegations of paragraph 73.

74.    Plaintiffs/Counter-Defendants are manufacturers of cable equipment, which equipment is sold to MSOs, including MSO Counter-Defendants, which, in turn, sell and/or lease some of that equipment throughout the United States.

**ANSWER:**    Plaintiffs/Counter-Defendants    admit    that    Plaintiff/Counter-Defendants manufacture and/or sell cable equipment to multiple system operators ("MSOs"), including MSO Counter-Defendants, and that such equipment may be used in the MSO Counter-Defendants' cable systems.  Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the remaining allegations contained in paragraph 74 and accordingly deny the remaining allegations of paragraph 74.

75.    Plaintiffs/Counter-Defendants have directly and indirectly infringed, and are continuing to directly and indirectly infringe, the '234 patent by practicing or causing others to practice (by inducement and/or contributorily) the inventions claimed in the '234 patent, in this district or otherwise within the United States.

**ANSWER:**    Denied.

76.    Upon information and belief, MSO Counter-Defendants have directly infringed, and/or are continuing to directly infringe, the '234 patent by practicing the inventions claimed in the '234 patent, in this district or otherwise within the United States.

**ANSWER:**     Denied.

77.     Upon information and belief, Plaintiffs/Counter-Defendants and MSO Counter-Defendants (excepting ACC-Affiliated Counter-Defendants) will continue to infringe the '234 patent unless enjoined by this Court.

**ANSWER:**     Denied.

78.     Upon information and belief, the infringement by Plaintiffs/Counter-Defendants and MSO Counter-Defendants has been, and/or will continue to be, willful, making this an exceptional case and entitling Counter-Plaintiffs to increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

**ANSWER:**     Denied.

## COUNT VI - INFRINGEMENT OF U.S. PATENT NO. 5,852,631

79.     Rembrandt realleges and incorporates herein by reference the allegations stated in paragraphs 1-78 of this Counterclaim.

**ANSWER:**     Plaintiffs/Counter-Defendants incorporate the answers provided to paragraphs 1-78 as though fully stated herein.

80.     Rembrandt is the owner of all right, title, and interest, including the right to sue, enforce, and recover damages for all infringements, of U.S. Patent No. 5,852,631, entitled "System and Method for Establishing Link Layer Parameters Based on Physical Layer Modulation" (the "'631 patent") (Exhibit F to Plaintiff/Counter-Defendants' Complaint).

33

**ANSWER:**    Plaintiffs/Counter-Defendants admit that on its face, the '631 patent is entitled "System and Method for Establishing Link Layer Parameters Based on Physical Layer Modulation" and was attached as Exhibit F to Plaintiff/Counter-Defendants' Complaint. Plaintiffs/Counter-Defendants lack knowledge or information sufficient to deny or admit the remaining allegations contained in paragraph 80 and accordingly deny the remaining allegations of paragraph 80.

      81.    The '631 patent was duly and legally issued by the United States Patent and Trademark Office on December 22, 1998.

**ANSWER:**    Plaintiffs/Counter-Defendants admit that on its face the '631 patent recites an issuance date of December 22, 1998.    Plaintiffs/Counter-Defendants deny the remaining allegations of paragraph 81.

      82.    Plaintiffs/Counter-Defendants are manufacturers of cable equipment, which equipment is sold to MSOs, including MSO Counter-Defendants, which, in turn, sell and/or lease some of that equipment and, additionally, use such equipment, throughout the United States in the operation of their cable networks.

**ANSWER:**    Plaintiffs/Counter-Defendants    admit    that    Plaintiff/Counter-Defendants manufacture and/or sell cable equipment to multiple system operators ("MSOs"), including MSO Counter-Defendants, and that such equipment may be used in the MSO Counter-Defendants' cable systems.  Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the remaining allegations contained in paragraph 82 and accordingly deny the remaining allegations of paragraph 82.

34

83.    On information and belief, Plaintiffs/Counter-Defendants have indirectly infringed, and are continuing to indirectly infringe, the '631 patent by practicing or causing others to practice (by inducement and/or contributorily) the inventions claimed in the '631 patent, in this district or otherwise within the United States. For example, on information and belief, Plaintiffs/Counter-Defendants have infringed and continue to infringe the '631 patent by their manufacture and sale of cable equipment to MSOs for inclusion into the MSOs' cable networks for the specific provision of high speed internet, cable broadband, and/or other services.

**ANSWER:**    Denied.

84.    Upon information and belief, MSO Counter-Defendants, excepting ACC-Affiliated Counter-Defendants, have directly infringed, and are continuing to directly infringe, the '631 patent by practicing the inventions claimed in the '631 patent, in this district or otherwise within the United States. For example, upon information and belief, MSO Counter-Defendants, excepting ACC-Affiliated Counter-Defendants, have directly infringed and continue to directly infringe the '631 patent by including Plaintiff/Counter-Defendants' cable equipment in MSO Counter-Defendants' cable networks for the specific provision of high speed internet, cable broadband, and/or other services.

**ANSWER:**    Denied.

85.    Upon information and belief, Plaintiffs/Counter-Defendants and MSO Counter-Defendants, excepting ACC-Affiliated Counter-Defendants, will continue to infringe the '631 patent unless enjoined by this Court. Upon information and

35

belief, such infringement has been, and will continue to be, willful, making this an exceptional case and entitling Counter-Plaintiffs to increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

**ANSWER:**    Denied.

### COUNT VII - INFRINGEMENT OF U.S. PATENT NO. 6,131,159

86.    Rembrandt and Remstream reallege and incorporate herein by reference the allegations stated in paragraphs 1-85 of this Counterclaim.

**ANSWER:**    Plaintiffs/Counter-Defendants incorporate the answers provided to paragraphs 1-85 as though fully stated herein.

87.    Rembrandt is the owner, and Remstream is the exclusive licensee, of U.S. Patent No. 6,131,159, entitled "System for Downloading Programs" (the "'159 patent") (Exhibit G to Plaintiff/Counter-Defendants' Complaint).

**ANSWER:**    Plaintiffs/Counter-Defendants admit that on its face, the '159 patent is entitled "System for Downloading Programs" and was attached as Exhibit G to Plaintiff/Counter-Defendants' Complaint.  Plaintiffs/Counter-Defendants lack knowledge or information sufficient to deny or admit the remaining allegations contained in paragraph 87 and accordingly deny the remaining allegations of paragraph 87.

88.    The '159 patent was duly and legally issued by the United States Patent and Trademark Office on October 10, 2000.

**ANSWER:**    Plaintiffs/Counter-Defendants admit that on its face the '159 patent recites an issuance date of October 10, 2000.  Plaintiffs/Counter-Defendants deny the remaining allegations of paragraph 88.

89.    Plaintiffs/Counter-Defendants are manufacturers of cable equipment, which equipment is sold to MSOs, including MSO Counter-Defendants, which, in turn, sell and/or lease some of that equipment throughout the United States.

**ANSWER:**    Plaintiffs/Counter-Defendants    admit    that    Plaintiff/Counter-Defendants manufacture and/or sell cable equipment to multiple system operators ("MSOs"), including MSO Counter-Defendants, and that such equipment may be used in the MSO Counter-Defendants' cable systems.  Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the remaining allegations contained in paragraph 89 and accordingly deny the remaining allegations of paragraph 89.

90.    Plaintiffs/Counter-Defendants have directly and indirectly infringed, and are continuing to directly and indirectly infringe, the '159 patent by practicing or causing others to practice (by inducement and/or contributorily) the inventions claimed in the '159 patent, in this district or otherwise within the United States.

**ANSWER:**    Denied.

91.    Upon information and belief, MSO Counter-Defendants have directly infringed, and/or are continuing to directly infringe, the '159 patent by practicing the inventions claimed in the '159 patent, in this district or otherwise within the United States.

**ANSWER:**    Denied.

92.    Upon information and belief, Plaintiffs/Counter-Defendants and MSO Counter-Defendants (excepting ACC-Affiliated Counter-Defendants) will continue to infringe the '159 patent unless enjoined by this Court.

**ANSWER:**    Denied.

93.    Upon information and belief, the infringement by Plaintiffs/Counter-Defendants and MSO Counter-Defendants has been, and/or will continue to be, willful, making this an exceptional case and entitling Counter-Plaintiffs to increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

**ANSWER:**    Denied.

### COUNT VIII - INFRINGEMENT OF U.S. PATENT NO. 6,950,444

94.    Rembrandt and Remstream reallege and incorporate herein by reference the allegations stated in paragraphs 1-93 of this Counterclaim.

**ANSWER:**    Plaintiffs/Counter-Defendants incorporate the answers provided to paragraphs 1-93 as though fully stated herein.

95.    Rembrandt is the owner, and Remstream is the exclusive licensee, of U.S. Patent No. 6,950,444, entitled "System and Method for a Robust Preamble and Transmission Delimiting in a Switched-Carrier Transceiver (the "'444 patent") (Exhibit H to Plaintiff/Counter-Defendants' Complaint).

**ANSWER:**    Plaintiffs/Counter-Defendants admit that on its face, the '444 patent is entitled "System and Method for a Robust Preamble and Transmission Delimiting in a Switched-Carrier Transceiver" and was attached as Exhibit H to Plaintiff/Counter-Defendants' Complaint. Plaintiffs/Counter-Defendants lack knowledge or information sufficient to deny or admit the remaining allegations contained in paragraph 95 and accordingly deny the remaining allegations of paragraph 95.

96.    The '444 patent was duly and legally issued by the United States Patent and Trademark Office on September 27, 2005.

**ANSWER:**    Plaintiffs/Counter-Defendants admit that on its face the '444 patent recites an issuance date of September 27, 2005.    Plaintiffs/Counter-Defendants deny the remaining allegations of paragraph 96.

97.    Plaintiffs/Counter-Defendants are manufacturers of cable equipment, which equipment is sold to MSOs, including MSO Counter-Defendants, which, in turn, sell and/or lease some of that equipment throughout the United States.

**ANSWER:**    Plaintiffs/Counter-Defendants    admit    that    Plaintiff/Counter-Defendants manufacture and/or sell cable equipment to multiple system operators ("MSOs"), including MSO Counter-Defendants, and that such equipment may be used in the MSO Counter-Defendants' cable systems.  Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the remaining allegations contained in paragraph 97 and accordingly deny the remaining allegations of paragraph 97.

98.    Plaintiffs/Counter-Defendants have directly and indirectly infringed, and are continuing to directly and indirectly infringe, the '444 patent by practicing or causing others to practice (by inducement and/or contributorily) the inventions claimed in the '444 patent, in this district or otherwise within the United States.

**ANSWER:**    Denied.

99.    Upon information and belief, MSO Counter-Defendants have directly infringed, and/or are continuing to directly infringe, the '444 patent by practicing the inventions claimed in the '444 patent, in this district or otherwise within the United States.

**ANSWER:**    Denied.

100.    Upon information and belief, Plaintiffs/Counter-Defendants and MSO Counter-Defendants (excepting ACC-Affiliated Counter-Defendants) will continue to infringe the '444 patent unless enjoined by this Court.

**ANSWER:**    Denied.

101.    Upon information and belief, the infringement by Plaintiffs/Counter-Defendants and MSO Counter-Defendants the infringement has been, and/or will continue to be, willful, making this an exceptional case and entitling Counter-Plaintiffs to increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

**ANSWER:**    Denied.

## **PRAYER FOR RELIEF**

WHEREFORE, Rembrandt and Remstream pray that they have judgment against Plaintiffs/Counter-Defendants and MSO Counter-Defendants for the following:

1.    A judgment that Plaintiffs/Counter-Defendants and MSO Counter-Defendants have infringed the patents-in-suit as alleged in the Counterclaim;

2.    A permanent injunction enjoining and restraining Plaintiffs/Counter-Defendants, MSO Counter-Defendants (excepting ACC-Affiliated Counter-Defendants), and their agents, servants, employees, affiliates, divisions, and subsidiaries, and those in association with them, from making, using, testing, offering to sell, selling, leasing, and importing into the United States any product, or using, offering to sell, offering to lease, selling, or leasing any service, that falls within the scope of any claim of a patent-in-suit asserted against a party.

3.    An award of damages, and pre-judgment and post-judgment interest;

4.    An award of increased damages pursuant to 35 U.S.C. § 284;

5.    A judgment that this case is exceptional under 35 U.S.C. § 285 and requiring Plaintiffs/Counter-Defendants and/or MSO Counter-Defendants to pay the costs of this action, including all disbursements and attorneys' fees; and

6.    Such other and further relief, at law or in equity, to which counter-plaintiffs Rembrandt and/or Remstream are justly entitled.

## RESPONSE TO PRAYER FOR RELIEF:

Plaintiffs/Counter-Defendants deny that Counter-Plaintiffs are entitled to any relief in these Counterclaims against Plaintiffs/Counter-Defendants and specifically request that:

1.      judgment be entered for Plaintiffs/Counter-Defendants that they do not infringe U.S. Patent Nos. 4,937,819; 5,008,903; 5,710,761; 5,719,858; 5,778,234; 5,852,631; 6,131,159; and 6,950,444; and that those patents are invalid;

2.      no injunctive relief issue to Counter-Plaintiffs against Plaintiffs/Counter-Defendants;

3.      no damages be awarded to Counter-Plaintiffs against Plaintiffs/Counter-Defendants;

4.      no costs, expenses, nor attorney fees be awarded to Counter-Plaintiffs against Plaintiffs/Counter-Defendants; and

5.      costs, expenses and attorney fees be awarded to Plaintiffs/Counter-Defendants for their defense of this case.

## AFFIRMATIVE AND OTHER DEFENSES

For the asserted and other affirmative defenses, Plaintiffs/Counter-Defendants do not assume the burden of proof where such burden is not legally upon Plaintiffs/Counter-Defendants. Plaintiffs/Counter-Defendants assert the following affirmative and other defenses and reserve the right to amend their answer to assert any other basis for invalidity, unenforceability, or any other defense:

## FIRST DEFENSE: NON-INFRINGEMENT

1.      Plaintiffs/Counter-Defendants do not infringe and have not infringed, either directly, indirectly, contributorily, or by inducement any claim of the '819, '903, '761, '858, '234, '631, '159, or '444 patents, either literally or under the doctrine of equivalents, willfully or otherwise.  Counter-Plaintiffs have also failed to identify which, if any, of Plaintiffs/Counter-Defendants' products are alleged to infringe any valid claim of the patents-at-issue either literally or under the doctrine of equivalents.

## SECOND DEFENSE: INVALIDITY

2.      The '819, '903, '761, '858, '234, '631, '159, and '444 patents are invalid for failure to comply with the requirements of Title 35, United States Code, including, but not limited to, sections 101, 102, 103, and/or 112.

## THIRD DEFENSE: LACHES

3.      Counter-Plaintiffs' claims for relief are barred in whole or in part by the equitable doctrine of laches.

## FOURTH DEFENSE: ESTOPPEL

4.      Counter-Plaintiffs' claims for relief are barred in whole or in part by the equitable doctrines of waiver and/or estoppel.

## FIFTH DEFENSE: PROSECUTION HISTORY ESTOPPEL

5.    Counter-Plaintiffs' claims for relief are barred in whole or in part by the equitable doctrine of prosecution history estoppel, and any disclosed but unclaimed embodiments are dedicated to the public.

## SIXTH DEFENSE: COUNTER-PLAINTIFFS NOT ENTITLED TO DAMAGES

6.    Counter-Plaintiffs are not entitled to alleged damages due to their failure to plead and, on information and belief, their inability to prove compliance with 35 U.S.C. § 287 provisions of patent marking and pre-suit notice.  Additionally, the limitations period further bars past damages claims.

## SEVENTH DEFENSE: COUNTER-PLAINTIFF REMSTREAM LACKS STANDING

7.    Counter-Plaintiff Remstream lacks standing to bring the instant counterclaims. Counter-Plaintiff Rembrandt has failed to allege that all substantial rights, including the right to enforce the patents, have been granted to Remstream.  *See Prima Tek II, L.L.C. v. A-Roo Co.,* 222 F.3d 1372, 1379-80 (Fed. Cir. 2000) ("In evaluating whether a particular license agreement transfers all substantial rights in a patent to the licensee, we pay particular attention to whether the agreement conveys *in full* the right to exclude others from making, using and selling the patented invention in the exclusive territory." (emphasis in original)).

## EIGHTH DEFENSE: PATENT EXHAUSTION

8.    Counter-Plaintiffs' claims for relief are barred in whole or in part by express or implied license and/or the doctrine of patent exhaustion.

## NINTH DEFENSE: NO INJUNCTIVE RELIEF

9.     Counter-Plaintiffs are not entitled to any injunctive relief because any alleged injury to Counter-Plaintiffs is not immediate or irreparable, and Counter-Plaintiffs have an adequate remedy at law for any alleged injury.

## TENTH DEFENSE: FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

10.     Counter-Plaintiffs have failed to state a claim upon which relief may be granted.

## ELEVENTH DEFENSE: IMPROPER INVENTORSHIP

11.     On information and belief, a reasonable opportunity for discovery will show that one or more of the claims of the patents-in-suit are invalid and/or unenforceable because of incorrect claims of inventorship.

## TWELFTH DEFENSE: DOUBLE PATENTING

12.     One or more of the claims of the patents-in-suit are invalid for double patenting.

## THIRTEENTH DEFENSE: INEQUITABLE CONDUCT

13.     Individuals subject to the duty of candor under 37 C.F.R. 1.56 ("Applicants"), including named inventors in the applications referenced below and employees with substantive involvement in the filing and/or prosecution of patent applications for Paradyne entities, engaged in inequitable conduct by engaging in a pattern and practice of withholding or misstating material information with intent to deceive the United States Patent & Trademark Office ("USPTO") in connection with patent prosecution of the '761, '631, '903, '234, '159, '819, '858,

and '444 patents.  On multiple occasions, Applicants failed to disclose their own previously issued patents that comprised material prior art, failed to disclose material information regarding their own co-pending applications for patents, failed to disclose prior art that was known to them through the prosecution of their own patents and applications, and failed to disclose their own systems that implemented undisclosed, material prior art and that were on-sale prior to the relevant critical dates.  In addition to nondisclosure, Applicants in the prosecution chain of the '159 and '234 patents provided affirmative misstatements as set forth below.  Accordingly, Applicants engaged in an overall pattern and practice of repeatedly and continuously failing to disclose to the USPTO material information of which Applicants were indisputably aware.  The permeation and continuation of this misconduct throughout prosecution of multiple patent applications confirms that Applicants acted with deceptive intent rendering the patents unenforceable.  Further, the doctrine of infectious unenforceability renders related patents unenforceable.

14.    More specifically, during prosecution of the '761 patent, Applicants engaged in inequitable conduct before the USPTO, rendering the '761 patent unenforceable by withholding and failing to disclose material information with intent to deceive including the following acts:

(i)    By way of example, MPEP § 2001.06(b) states that "there is a duty to bring to the attention of the examiner, or other Office official involved with the examination of a particular application, information within their knowledge as to other co-pending United States applications which are 'material to patentability' of the application in question." The MPEP cites to caselaw providing that "[W]e think that it is unfair to the busy examiner, no matter how diligent and well informed he may be, to assume

that he retains details of every pending file in his mind when he is reviewing a particular application . . . [T]he applicant has the burden of presenting the examiner with a complete and accurate record to support the allowance of letters patent." The MPEP provides express examples of material information as to other co-pending applications, stating "[f]or example, if a particular inventor has different applications pending in which similar subject matter but patentably indistinct claims are present that fact must be disclosed to the examiner of each of the involved applications. Similarly, the prior art references from one application must be made of record in another subsequent application if such prior art references are 'material to patentability' of the subsequent application."

(ii)    Notwithstanding these clear obligations, during prosecution, Applicants repeatedly failed to disclose material information within their knowledge as to co-pending applications of which they were aware. One or more Applicants were aware of and failed to disclose, without limitation, co-pending application 08/780,762 (now the '631 patent, which is now commonly asserted here along with the '761 patent), as well as Application Nos. 08/781,787, now issued as U.S. Patent No. 5,751,796 ("Rapid Startup Protocol For Communication Between a Plurality of Modems"), to Scott and Zuranski, 08/781,067, now issued as U.S. Patent No. 5,796,808 ("System and Method for Automatically Selecting the Mode of Communication between a Plurality of Modems"), to Scott and Lastinger Jr.,   08/780,238, now issued as U.S. Patent No. 5,787,363

47

("System and Method for Connect Message Synchronization of Modems in a Cellular Data Gateway"), to Scott and Lastinger Jr., 08/457,881, now issued as U.S. Patent No. 5,793,809 ("Transparent Technique for Mu-Law Modems to Detect an All-Digital Circuit Connection"), to Holmquist, 08/912,126, now issued as U.S. Patent No. 6,081,556 ("Transparent Technique for Mu-Law Modems to Detect an All-Digital Circuit Connection"), to Holmquist, and 08/978,536, now issued as U.S. Patent No. 5,349,635 ("Half-Duplex or Full-Duplex Automode Operation for use in Data Communications Equipment"), to Scott (the "'761 Co-Pending Applications"). The Applicants for the '761 patent failed to identify any of these co-pending applications or their claims to the examiner in the prosecution of the '761 patent. These applications were never disclosed on any IDS that was submitted in the '761 patent or otherwise made of record in the '761 patent. Information relating to the '761 Co-Pending Applications and their claims was material to patentability. One or more Applicants were aware of the '761 Co-Pending Applications. Four of the '761 Co-Pending Applications include Robert Scott as a named inventor, and in the case of the '761 and '631 patents, he is the sole named inventor on both. Robert Scott was aware of the co-pendency of his applications. In addition, on information and belief, a reasonable opportunity for discovery will show that Paradyne personnel were substantively involved in the filing or prosecution of the '761 patent and were aware of the '761 Co-Pending Applications. Material information relating to the '761 Co-

Pending Applications was withheld with intent to deceive the USPTO as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Affirmative Defense.

(iii)    Further, Applicants failed to disclose in prosecution of the '761 patent, the prior art of record from the '761 Co-Pending Applications, including without limitation U.S. Patent Nos. 4,905,282 ("Feature Negotiation Protocol and Dynamically Adjustable Retraining Sequence for a High Speed Half Duplex Modem"), to McGlynn and Nash ("McGlynn"), 5,425,080 ("Transaction Terminal Apparatus and Method Using Host Dial String Control of Modem Connect Protocols"), to Abbie ("Abbie"), 4,931,250 ("Multimode Modem"), to Greszczuk ("Greszczuk"), 5,491,720 ("Method and System for Automatically Determining Data Communication Device Type and Corresponding Transmission Rate"), to Davis, Linger, Mandalia, Sinibaldi, Zevin, and Ziegenhain ("Davis"), 5,311,578 ("Technique for Automatic Identification of a Remote Modem"), to Bremer ("'578 Bremer et al."), 5,317,594 ("Systems for and Method of Identifying V.Fast Modem Within Existing Automatic Interworking Procedure Standards"), to Goldstein ("Goldstein"), 5,528,679 ("Automatic Detection of Digital Call Paths in a Telephone System"), to Taarud ("Taarud"), 4,680,773 ("Data Telecommunications System"), to Amundson ("Amundson"), and 4,782,498 ("Modem with Improved Handshaking Capability"), to Copeland, III ("Copeland") (the "'761 Co-Pending Art"). The '761 Co-Pending Art was material to the patentability

of the '761 patent.  Applicants for the '761 patent failed to identify any '761 Co-Pending Art to the examiner in the prosecution of the '761 patent. For example, McGlynn, Abbie, Greszczuk, Davis and Goldstein were each cited by the Examiner of the '631 patent in a Detailed Office Action and accompanying Notice of References Cited mailed on 9/12/97.  Further, Greszczuk was cited in the 08/781,067 application on an IDS submitted on August 12, 1997, and in the 08/781,787 application on an IDS submitted October 6, 1997.  The '761 patent was still pending and did not issue until January 20, 1998.  One or more Applicants were aware of the '761 Co-Pending Art.  Robert Scott is the same and only named inventor on both the '631 and the '761 patents.  In addition, on information and belief, a reasonable opportunity for discovery will show that Paradyne personnel substantively involved in the filing or prosecution of the '761 patent were aware of the '761 Co-Pending Art, as well as U.S. Patent Nos. 5,600,712 ("Enabling Technique for Quickly Establishing High Speed PSTN Connections In Telecommuting Applications"), to Hanson, 5,577,105 ("Telephone Call Routing and Switching Techniques for Data Communications"), to Baum, 5,127,041 ("System and Method for Interfacing Computers to Diverse Telephone Networks"), to O'Sullivan, and Weissman, et al., "Interoperable Wireless Data," IEEE Communications Magazine, vol. 31, No. 2, pp. 68-77.  In fact, while the '761 patent remained co-pending, Applicants attempted to distinguish prior art of record in the '631 patent, including transmitting a First Response

with Amendments on October 23, 1997. Notwithstanding the October 23, 1997 response, the USPTO issued a Detailed Action rejecting the claims in the '631 patent based upon prior art to McGlynn in an office action dated November 18, 1997, while the application for the '761 patent remained co-pending, and Applicants nevertheless failed to disclose McGlynn in prosecution of the '761 patent. Further, Applicants for the '761 patent failed to disclose in prosecuting the '761 patent the office actions and responses from the co-pending '631 patent and the prior art of record referenced in those office actions and responses. The undisclosed information described herein was material to patentability of the '761 patent. The undisclosed information described herein was material to patentability of the '761 patent and was withheld with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Affirmative Defense.

15.    Additional instances of misconduct occurred in prosecution of the '631 patent, where Applicants engaged in inequitable conduct before the USPTO rendering the patent unenforceable by withholding and failing to disclose material information with intent to deceive including the following acts:

(i)    By way of example, MPEP § 2001.06(b) states that "there is a duty to bring to the attention of the examiner, or other Office official involved with the examination of a particular application, information within their knowledge as to other co-pending United States applications which are 'material to patentability' of the application in question." The MPEP cites

51

to caselaw providing that "[W]e think that it is unfair to the busy examiner, no matter how diligent and well informed he may be, to assume that he retains details of every pending file in his mind when he is reviewing a particular application . . . [T]he applicant has the burden of presenting the examiner with a complete and accurate record to support the allowance of letters patent." The MPEP provides express examples of material information as to other co-pending applications, stating "[f]or example, if a particular inventor has different applications pending in which similar subject matter but patentably indistinct claims are present that fact must be disclosed to the examiner of each of the involved applications. Similarly, the prior art references from one application must be made of record in another subsequent application if such prior art references are 'material to patentability' of the subsequent application."

(ii)     Notwithstanding these clear obligations, during prosecution, Applicants repeatedly failed to disclose information within their knowledge as to co-pending applications of which they were aware, including without limitation co-pending application 08/458,048 (now the '761 patent, which is now commonly asserted here along with the '631 patent), as well as Application Nos. 08/781,787, now issued as U.S. Patent No. 5,751,796 ("Rapid Startup Protocol For Communication Between a Plurality of Modems") to Scott and Zuranski, 08/781,067 now issued as U.S. Patent No. 5,796,808 ("System and Method for Automatically Selecting the Mode of Communication between a Plurality of Modems"), to Scott and

52

Lastinger Jr., 08/780,238, now issued as U.S. Patent No. 5,787,363 ("System and Method for Connect Message Synchronization of Modems in a Cellular Data Gateway"), to Scott and Lastinger Jr., 08/457,881, now issued as U.S. Patent 5,793,809 ("Transparent Technique for Mu-Law Modems to Detect an All-Digital Circuit Connection"), to Holmquist, and 08/912,126, now issued as U.S. Patent No. 6,081,556 ("Transparent Technique for Mu-Law Modems to Detect an All-Digital Circuit Connection"), to Holmquist (the "'631 Co-Pending Applications"). Applicants for the '631 patent failed to identify any of these co-pending applications or their claims to the examiner in the prosecution of the '631 patent. These applications are never disclosed on an IDS that was submitted in the '631 patent or otherwise made of record in the '631 patent. One or more Applicants were aware of the '631 Co-Pending Applications during prosecution of the '631 patent. Three of the '631 Co-Pending Applications include Robert Scott as a named inventor and claim priority to the same provisional applications for which priority is claimed by the '631 patent. In addition, on information and belief a reasonable opportunity for discovery will show that further Paradyne personnel were substantively involved in the filing or prosecution of the '631 patent and were aware of the '631 Co-Pending Applications. The information relating to the '631 Co-Pending Applications was material to the patentability of the '631 Patent and was withheld with intent to deceive the

USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Affirmative Defense.

(iii)    Further, Applicants failed to disclose in prosecution of the '631 patent, the prior art of record from the '631 Co-Pending Applications, including without limitation U.S. Patent Nos. 5,550,881 ("Automatic Modulation Mode Selecting Unit and Method for Modems"), to Sridhar and Sheer ("Sridhar"), '578 Bremer et al. ("Bremer"), 5,430,793 ("Apparatus and Method for Configuring a Computer System and a Modem for use in a Particular Country"), to Ueltzen, Mahan, and Horn ("Ueltzen"), 4,715,044 ("Automatic Synchronous/Asynchronous Modem"), to Gartner ("Gartner"), and 5,528,679 ("Automatic Detection of Digital Call Paths in a Telephone System"), to Taarud ("Taarud") (the "'631 Co-Pending Art"). The Applicants did not disclose the '631 Co-Pending Art during prosecution of the '631 patent. Applicants were aware of the '631 Co-Pending Art during prosecution of the '631 patent. Robert Scott is the same and only named inventor on both the '631 and the '761 patents. In addition, on information and belief a reasonable opportunity for discovery will show that further Paradyne personnel substantively involved in the filing or prosecution of the '631 patent were aware of the '631 Co-Pending Art, as well as U.S. Patent Nos. 5,349,635 ("Half-Duplex or Full-Duplex Automode Operation for use in Data Communications Equipment"), to Scott, 5,600,712 ("Enabling Technique for Quickly Establishing High Speed PSTN Connections In Telecommuting Applications"), to Hanson,

54

5,577,105 ("Telephone Call Routing and Switching Techniques for Data Communications"), to Baum, 5,127,041 ("System and Method for Interfacing Computers to Diverse Telephone Networks"), to O'Sullivan, 4,680,773 ("Data Telecommunications System"), to Amundson ("Amundson"), and 4,782,498 ("Modem with Improved Handshaking Capability"), to Copeland, III ("Copeland"), and Weissman, et al., "Interoperable Wireless Data," IEEE Communications Magazine, vol. 31, No. 2, pp. 68-77. For example, Sridhar et al. was cited by the Examiner of the '761 patent and used for claim rejections in a Detailed Office Action and accompanying Notice of References Cited dated December 26, 1996. Similarly, Ueltzen was "considered pertinent to applicant's disclosure" in that same Detailed Office Action. The '631 and '761 patent were co-pending on December 26, 1996, and the '631 patent did not issue until December 22, 1998. While the '631 patent remained co-pending, Applicants attempted to distinguish prior art of record in the '761 patent in a Response and Amendment transmitted March 31, 1997. Applicants for the '631 patent failed to disclose in prosecuting the '631 patent, the December 26, 1996 office action and the March 31, 1997 response from the co-pending '761 patent or the prior art of record referenced in those communications. The '631 Co-Pending Art and information described in this paragraph was material to patentability of the '631 patent. The '631 Co-Pending Art and information described in this paragraph was withheld with intent to deceive the USPTO, as is particularly shown by the

continuing pattern and practice of nondisclosure referenced in this Affirmative Defense. In addition, on information and belief, a reasonable opportunity for discovery will show that Robert Scott was improperly listed as sole inventor of the '631 patent with deceptive intent to defraud the USPTO into issuing the '631 patent over the '761 patent.

16.     Additional instances of misconduct occurred in prosecution of the '903 patent, where Applicants engaged in inequitable conduct before the USPTO rendering the patent unenforceable by withholding and failing to disclose material information with intent to deceive including the following acts:

(i)     The application for the '903 patent was filed on May 25, 1989, issued April 16, 1991, and named Betts and DesRosiers as inventors. One or more Applicants was aware of and failed to disclose in prosecution of the '903 patent the following prior art: U.S. Patent Nos. 4,771,232 ("Non-interruptive Spectrum Analyzer for Digital Modems"), to Betts and Zuranski, 4,555,790 ("Digital Modem Having A Monitor For Signal-To-Noise Ratio"), to Betts and Martinez, 4,811,357 ("Secondary Channel for Digital Modems Using Spread Spectrum Subliminal Induced Modulation"), to Betts and Zuranski, 4,833,690 ("Remote Eye Pattern Display For Digital Modems"), to Betts, Zuranski, Springer, and Balka, 4,639,934 ("Line Impairment Display for Digital Modems"), to Betts, Scott and Zuranski, 4,646,325 ("Index Decoder for Digital Modems"), to Zuranski and Martinez, 3,889,108 ("Adaptive Low Pass Filter"), to Cantrell, 4,669,090 ("Half-Duplex Modem without Turnaround Delay"),

to Betts and Martinez, 4,744,092 ("Transparent Error Detection in Half Duplex Modems"), to Betts and Martinez, 4,532,640 ("Phase Tracking Loop for Digital Modem"), to Bremer, Betts, and Martinez, 4,796,279 ("Substrate Preamble Decoder For A High Speed Modem"), to Betts and Martinez (collectively, the "'903 Undisclosed References"). One or more Applicants was aware of the '903 Undisclosed References during prosecution of the '903 patent. For example, Betts is a named inventor in multiple '903 Undisclosed References. In addition, on information and belief a reasonable opportunity for discovery will show that Paradyne personnel substantively involved in the filing or prosecution of the '903 patent were aware of the '903 Undisclosed References. The '903 Undisclosed References were not disclosed to the USPTO in prosecution of the '903 patent. The '903 Undisclosed References were material to patentability of the '903 patent. The '903 Undisclosed References were withheld with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Affirmative Defense. In addition, on information and belief, a reasonable opportunity for discovery will show that one or more Applicants was aware of the 3,978,407 ("Fast Start-Up Adaptive Equalizer Communication System Using Two Data Transmission Rates"), to Forney and Hart (the"'407 patent"), a patent issued to a competitor of Paradyne. The '407 patent was material to patentability. On information and belief, a reasonable opportunity for discovery will show that the '407 patent was

withheld with intent to deceive in light of the overall pattern and practice of nondisclosure.

17.    Additional instances of misconduct occurred in prosecution of the '444 patent, where Applicants engaged in inequitable conduct before the USPTO rendering the patent unenforceable by withholding and failing to disclose material information with intent to deceive including the following acts:

(i)    By way of example, MPEP § 2001.06(b) states that "there is a duty to bring to the attention of the examiner, or other Office official involved with the examination of a particular application, information within their knowledge as to other co-pending United States applications which are 'material to patentability' of the application in question." The MPEP cites to caselaw providing that "[W]e think that it is unfair to the busy examiner, no matter how diligent and well informed he may be, to assume that he retains details of every pending file in his mind when he is reviewing a particular application . . . [T]he applicant has the burden of presenting the examiner with a complete and accurate record to support the allowance of letters patent." The MPEP provides express examples of material information as to other co-pending applications, stating "[f]or example, if a particular inventor has different applications pending in which similar subject matter but patentably indistinct claims are present that fact must be disclosed to the examiner of each of the involved applications. Similarly, the prior art references from one application must

be made of record in another subsequent application if such prior art references are 'material to patentability' of the subsequent application."

(ii)    Notwithstanding these clear obligations, during prosecution, Applicants repeatedly failed to disclose information within their knowledge as to co-pending applications of which they were aware, including without limitation co-pending Application No. 8/980,996 (the "Co-Pending '996 Application").   The Co-Pending '996 Application, which subsequently issued as U.S. Patent 6,414,964 ("Method and Apparatus for Performing a Multipoint Polling Protocol which Employs Silence Intervals for Controlling Circuit Operation"), and names Holmquist and Betts as inventors, and was filed on December 1, 1997 and issued on July 2, 2002. The application for the '444 patent was filed on August 11, 2000, and issued September 27, 2005, and named Holmquist and Chapman as inventors.  In addition, Applicants failed to disclose in the prosecution of the '444, material prior art of record from the Co-Pending '996 Application, including without limitation U.S. Patent No. 5,677,909 ("Apparatus For Exchanging Data Between A Central Station And A Plurality of Wireless Remote Stations On A Time Divided Channel"), issued to Heide.   One or more Applicants was aware of the above-referenced information during prosecution of the '444 patent.    The undisclosed information referenced in this paragraph was material to patentability of the '444 patent.  Applicants failed to disclose this material information relating to this co-pending application with intent to deceive

the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Affirmative Defense.

(iii)  By way of further example, Application 09/307,454 filed May 7, 1999 for a "System and Method For Transmitting Special Marker Symbol" (subsequently issued as U.S. Patent No. 6,487,244) and Application No. 08/979,455, subsequently issued as U.S. Patent No. 6,137,829 (the "'444 Co-Pending '454 and '455 Applications"), were also co-pending with the '444 patent.  The '444 Co-Pending '454 and '455 Applications of Betts comprised prior art to the '444 Patent and were not disclosed to the USPTO in prosecution of the '444 Patent.  One or more Applicants was aware of the '444 Co-Pending '454 and '455 Applications during prosecution of the '444 patent.  The '444 Co-Pending '454 and '455 applications were material to patentability of the '444 patent and withheld with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Affirmative Defense.

(iv)  By way of further example, during prosecution of the '444 patent application, Applicants repeatedly failed to disclose information within their knowledge as to material prior art of which they were aware, including without limitation 5,506,866 ("Side-Channel Communications In Simultaneous Voice and Data Transmission"), to Bremer, Holmquist, Ko, and Sonders, 5,475,691 ("Voice Activated Data Rate Change in Simultaneous Voice and Data Transmission"), to Chapman and

Holmquist, 5,369,703 ("Command and Control Signalling Method and Apparatus"), to Archibald, Davis, and Holmquist, and 4,864,617 ("System and Method for Reducing Deadlock Conditions Caused By Repeated Transmission of Data Sequences Equivalent to Those Used for Inter-Device Signalling"), to Holmquist.

(v)     In addition, on information and belief, a reasonable opportunity for discovery will show that one or more Applicants was aware of U.S. Patent Nos. 3,978,407 ("Fast Start-Up Adaptive Equalizer Communication System Using Two Data Transmission Rates"), to Forney and Hart, 4,796,279 ("Substrate Preamble Decoder For A High Speed Modem"), to Betts and Martinez, and 5,912,895 ("Information Network Access Apparatus and Methods for Communicating Information Packets Via Telephone Lines"), to Terry and Richards.  Applicants failed to disclose these patents to the USPTO in prosecution of the '444 patent.  These references were material to patentability of the '444 patent.  On information and belief, a reasonable opportunity for discovery will show that Applicants knew of and withheld them with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Affirmative Defense.

(vi)    In addition, on information and belief a reasonable opportunity for discovery will show that Paradyne offered for sale MVL technology more than one year before applying for the '444 patent, that was material to the '444 patent, but failed to disclose those sales as prior art to the USPTO.

61

The withheld information was material to patentability and, on information and belief a reasonable opportunity for discovery will show that this information was withheld with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Affirmative Defense.

18.     Additional instances of misconduct occurred during prosecution of the '159 patent, where Applicants engaged in inequitable conduct before the USPTO rendering the patent unenforceable by omitting and misstating material information with intent to deceive including the following acts:

(i)     In prosecution of the '159 patent, the USPTO repeatedly rejected pending claims due to prior art, including without limitation references to Lang and Mori.  In response to these and other rejections, Applicants represented that claims required and that they had invented a system that included a "displacement multibit memory address."  However, Applicants lacked support for the invention as represented to the USPTO.  Applicants misstated and omitted this material information with intent to deceive the USPTO into issuing the claims.  These material misstatements and omissions were made with intent to deceive, as further confirmed by the pattern and practice of inequitable conduct alleged throughout this Affirmative Defense.  Further, the '234 patent is a divisional of the '159 patent, refers back to acts occurring in prosecution of the '159 patent, and is infected by the unenforceabilty associated with the '159 patent.

(ii)    In addition, on information and belief, a reasonable opportunity for discovery will show that the Applicants offered the invention on-sale or placed it in public use more than one year before the application date, and applicants withheld this information which was material to patentability with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Affirmative Defense.

19.    Additional instances of misconduct occurred in prosecution of the '858 patent, Applicants engaged in inequitable conduct before the USPTO rendering the patent unenforceable by withholding and failing to disclose material information with intent to deceive including the following acts:

(i)    By way of example, MPEP § 2001.06(b) states that "there is a duty to bring to the attention of the examiner, or other Office official involved with the examination of a particular application, information within their knowledge as to other co-pending United States applications which are 'material to patentability' of the application in question." The MPEP cites to caselaw providing that "[W]e think that it is unfair to the busy examiner, no matter how diligent and well informed he may be, to assume that he retains details of every pending file in his mind when he is reviewing a particular application . . . [T]he applicant has the burden of presenting the examiner with a complete and accurate record to support the allowance of letters patent." The MPEP provides express examples of material information as to other co-pending applications, stating "[f]or

63

example, if a particular inventor has different applications pending in which similar subject matter but patentably indistinct claims are present that fact must be disclosed to the examiner of each of the involved applications. Similarly, the prior art references from one application must be made of record in another subsequent application if such prior art references are 'material to patentability' of the subsequent application."

(ii)    Notwithstanding these clear obligations, during prosecution, Applicants failed to disclose information as to co-pending applications including without limitation Application Nos. 08/607,912, now issued as U.S. Patent No. 5,754,799 ("System and Method for Bus Contention Resolution"), to Hiles, 08/608,378, now issued as 5,768,543 ("Slot-Token Protocol"), to Hiles, and 08/947,279, now issued as 6,108,347 ("Non-Polled Dynamic Slot Time Allocation Protocol") to Holmquist, (the "'858 Co-Pending Applications"). The Applicants for the '858 patent failed to identify any of these co-pending applications or their claims to the examiner in the prosecution of the '858 patent. On information and belief, a reasonable opportunity for discovery will show that Applicants were aware of the '858 Co-Pending Applications during prosecution of the '858 patent. These co-pending applications and their claims were material to the patentability. On information and belief, a reasonable opportunity for discovery will show that this undisclosed information was withheld with intent to deceive the USPTO, as is particularly shown by the continuing

pattern and practice of nondisclosure referenced in this Affirmative Defense.

(iii)    Further, Applicants failed to disclose in prosecution of the '858 patent, the material prior art of record from the '858 Co-Pending Applications, including without limitation U.S. Patent Nos. 4,608,700 ("Serial Multi-Drop Data Link"), to Kirtley, Sterling, and Williams, and 5,398,243 ("Arbitration Method and Bus for Serial Data Transmission"), to Aguilhon, Doucet, and Karcher (the "'858 Co-Pending Art"). The Applicants did not disclose the '858 Co-Pending Art during prosecution of the '858 patent. On information and belief, a reasonable opportunity for discovery will show that one or more Applicants was aware of the '858 Co-Pending Art during prosecution of the '858 patent. This undisclosed information was material to patentability of the '858 patent. On information and belief, a reasonable opportunity for discovery will show this information was withheld with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Affirmative Defense.

(iv)    In addition, one or more Applicants was aware of U.S. Patent No. 4,797,815 ("Interleaved Synchronous Bus Access Protocol for a Shared Memory Multi-Processor System"), to Moore (the same inventor as the '858), and, on information and belief, a reasonable opportunity for discovery will show one or more Applicants was aware of U.S. Patent Nos. 3,997,896 ("Data Processing System Providing Split Bus Cycle

Operation"), to Cassarino, Jr., Bekampis, Conway, and Lemay, 4,181,974 ("System Providing Multiple Outstanding Information Requests"), to Lemay and Curley, and 4,669,056 ("Data Processing System with a Plurality of Processors Accessing a Common Bus to Interleaved Storage"), to Waldecker and Wright. Applicants failed to disclose these patents to the USPTO in prosecution of the '858 patent. These reference were material to patentability of the '858 patent and on information and belief a reasonable opportunity for discovery will show that Applicants knew of and withheld them with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Affirmative Defense.

(v)     Further, in the prosecution of the '858 patent, the Applicants failed to disclose the previously issued '819 patent also assigned to Paradyne. In light of Defendants' allegations in this matter, the '819 patent was material to the '858 patent. On information and belief, a reasonable opportunity for discovery will show that one or more Applicants was aware of the '819 patent and Applicants' nondisclosure of the '819 patent, in light of the pattern and practice alleged throughout this Affirmative Defense, occurred with the requisite intent to deceive the USPTO into issuing the '858 patent.

20.     Additional instances of misconduct occurred in prosecution of the '819 patent, where Applicants failed to disclose previously issued and material prior art U.S. Patent No. 4,630,286 ("Device for Synchronization of Multiple Telephone Circuits"), assigned to Paradyne Corporation. On information and belief, a reasonable opportunity for discovery will show that

one or more Applicants was aware of this undisclosed reference during prosecution and that Applicants' nondisclosure of the 4,630,286 patent, in light of the pattern and practice alleged throughout this Affirmative Defense, occurred with the requisite intent to deceive the USPTO into issuing the '819 patent.

## FOURTEENTH DEFENSE: UNCLEAN HANDS

21.     Plaintiffs incorporate by reference the allegations underlying their Inequitable Conduct affirmative defense above.

22.     Rembrandt's claims are barred by unclean hands.  Rembrandt's assertion of the patents in this case with awareness of the nondisclosures described in the inequitable conduct allegations above comprises unclean hands. Rembrandt asserts to have acquired a portfolio of patents previously assigned to Paradyne.  Rembrandt has consulting agreements with all named inventors on all of the patents-in-suit.  Further, prior to making charges against Plaintiffs, Rembrandt communicated with one or more additional Paradyne personnel who had substantive involvement in the filing or prosecution of Paradyne patent applications.  Rembrandt is aware of the undisclosed and material information referred to above through Rembrandt's alleged acquisition of a portfolio of patents assigned to Paradyne and its assertion of the patents in this case.  In fact, after originally filing lawsuits on four patents including the '631 patent, Rembrandt later filed lawsuits specifically adding the '761 patent, specifically alleging infringement of both patents by the same accused instrumentalities. Rembrandt was aware of the co-pendency of those patents as well as their prosecution histories, and the cited art and office actions, and

nevertheless specifically endeavored to assert both patents.  Rembrandt's knowing assertion of

unenforceable patents comprises unclean hands.

Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
1000 West Street
Wilmington, DE 19801
(302) 571-6600
jshaw@ycst.com

*Co-Liaison Counsel and Attorneys for
Plaintiffs/Counter-Defendants Motorola, Inc., Cisco
Systems, Inc., Scientific-Atlanta, Inc., ARRIS Group,
Inc., Thomson, Inc., Ambit Microsystems, Inc., and
NETGEAR, Inc.*

Of Counsel:

John M. Desmarais, P.C.
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022-4611

Eric Lamison
Benjamin Ostapuk
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104

Russell E. Levine, P.C.
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL 60601

*Attorneys for Plaintiffs/Counter-Defendants
Motorola, Inc., Cisco Systems, Inc.,
Scientific-Atlanta, Inc., ARRIS Group, Inc.,
Thomson, Inc., Ambit Microsystems, Inc., and
NETGEAR, Inc.*

Date:   April 11, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE: REMBRANDT TECHNOLOGIES, LP PATENT LITIGATION | MDL Docket No. 07-md-1848 (GMS) |
| MOTOROLA, INC., CISCO SYSTEMS, INC., SCIENTIFIC-ATLANTA, INC., ARRIS GROUP, INC., THOMSON, INC., AMBIT MICROSYSTEMS, INC., and NETGEAR, INC. | |
| Plaintiffs, | |
| v. | Civil Action No. 07-752-GMS |
| REMBRANDT TECHNOLOGIES, LP, and REMBRANDT TECHNOLOGIES, LLC d/b/a REMSTREAM, | |
| Defendants. | **JURY TRIAL DEMANDED** |
| REMBRANDT TECHNOLOGIES, LP, and REMBRANDT TECHNOLOGIES, LLC d/b/a REMSTREAM, | |
| Counter-Plaintiffs, | |
| v. | Civil Action No. 07-752-GMS |
| MOTOROLA, INC., CISCO SYSTEMS, INC., SCIENTIFIC-ATLANTA, INC., ARRIS GROUP, INC., THOMSON, INC., AMBIT MICROSYSTEMS, INC., and NETGEAR, INC., TIME WARNER CABLE, INC., TIME WARNER CABLE LLC, TIME WARNER NEW YORK CABLE LLC, TIME WARNER ENTERTAINMENT COMPANY, LP, COMCAST CORPORATION, COMCAST CABLE COMMUNICATIONS, LLC, CHARTER | **JURY TRIAL DEMANDED** |

COMMUNICATIONS OPERATING, LLC,              )
COXCOM, INC., COX COMMUNICATIONS,           )
INC., COX ENTERPRISES, INC., CSC            )
HOLDINGS, INC., CABLEVISION SYSTEMS         )
CORPORATION, ADELPHIA                       )
COMMUNICATIONS CORPORATION,                 )
CENTURY-TCI CALIFORNIA                      )
COMMUNICATIONS, LP, CENTURY-TCI             )
HOLDINGS, LLC, COMCAST OF                   )
FLORIDA/PENNSYLVANIA, L.P. (f/k/a           )
PARNASSOS, LP), COMCAST OF                  )
PENNSYLVANIA II, L.P. (f/k/a CENTURY-TCI    )
CALIFORNIA, L.P.), PARNASSOS                )
COMMUNICATIONS, LP, ADELPHIA                )
CONSOLIDATION, LLC, PARNASSOS               )
HOLDINGS, LLC, and WESTERN NY               )
CABLEVISION, LP,                            )
                                            )
              Counter-Defendants.           )
_____ )

## AMENDED COMPLAINT

Plaintiffs Motorola, Inc. ("Motorola"), Cisco Systems, Inc. ("Cisco"), Scientific-Atlanta,

Inc. ("Scientific-Atlanta"), ARRIS Group, Inc. ("ARRIS"), Thomson, Inc. ("Thomson"), Ambit

Microsystems, Inc. ("Ambit") and NETGEAR, Inc. ("NETGEAR")(collectively "Plaintiffs") are

suppliers of DOCSIS industry standard cable modem equipment that Rembrandt has accused of

infringement. Plaintiffs have filed this Amended Complaint to stop Rembrandt's improper

assertion of invalid and unenforceable patents and to vindicate their products and their

customers' lawful use of their products from Rembrandt's baseless infringement charges.

Accordingly, for their Complaint against Rembrandt, Plaintiffs hereby demand a jury trial and

allege as follows:

## PARTIES

1. Plaintiff Ambit is a California corporation with its principal place of business at 9570 La Costa Lane, Lone Tree, CO 80124.

2. Plaintiff ARRIS is a Delaware corporation with its principal place of business at 3871 Lakefield Drive, Suwanee, GA, 30024.

3. Plaintiff Cisco is a California corporation with its principal place of business at 170 West Tasman Drive, San Jose, CA 95134.

4. Plaintiff Motorola is a Delaware corporation with its principal place of business at 1303 E. Algonquin Road, Schaumburg, IL 60196.

5. Plaintiff NETGEAR is a Delaware corporation with its principal place of business at 4500 Great America Parkway, Santa Clara, CA 95054.

6. Plaintiff Scientific-Atlanta is a wholly owned subsidiary of Plaintiff Cisco and is a Georgia corporation with its principal place of business at 5030 Sugarloaf Parkway, Lawrenceville, GA 30044-2869.

7. Plaintiff Thomson is a Delaware corporation with its principal place of business at 101 W. 103rd Street, INH 3340, Indianapolis, IN 46290.

8. On information and belief, defendant Rembrandt is a limited partnership organized and existing under the laws of New Jersey, with a principal place of business at 401 City Avenue, Suite 528, Bala Cynwyd, PA 19004. Rembrandt asserts that its business is enforcing and licensing patents. In carrying out its business of patent enforcement, Rembrandt has sued Cablevision Systems Corporation and CSC Holdings Inc., in C.A. No. 06-635-GMS. In that action, Rembrandt has asserted that "DOCSIS is a specification that describes the operational parameters of equipment that is used for cable networks. Rembrandt alleges that DOCSIS-

3

compliant equipment infringes the '631, '858, '819, and '903 patents." Rembrandt purports to have obtained the patents at-issue in this action by purchasing them from Paradyne Corp., a Delaware corporation, and Zhone Communications. Rembrandt has also filed patent infringement law suits on another patent in this forum, suing ABC Inc., CBS Corporation, NBC Universal, Fox Entertainment Group Inc. and Fox Broadcasting Company. Those actions can be found as C.A. No. 06-727-GMS, C.A. No. 06-729-GMS, C.A. No. 06-730-GMS and C.A. No. 06-731-GMS. Rembrandt has also caused to be formed in Delaware a number of limited liability corporations, limited partnerships, limited liability limited partnerships and/or corporations. On information and belief, Rembrandt has caused those entities to be formed to assist with its business of patent enforcement and licensing.

9. On information and belief, defendant Rembrandt Technologies, LLC, a Delaware LLC, is wholly owned by Rembrandt and does business as "Remstream." Remstream has its headquarters at 401 City Avenue, Suite 900, Bala Cynwyd, PA 19004.

## NATURE OF THE ACTION

10. In this action, Plaintiffs seek a declaratory judgment of patent noninfringement and invalidity of eight United States Patents pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and the Patent Laws of the United States, 35 U.S.C. § 100 *et seq.*, damages, and such other relief as the Court deems just and proper.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this action under, and without limitation, 28 U.S.C. §§ 1331, 1337, 1338(a), 1367, 2201, and 2202, and the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*

12. Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b).

## RELATED ACTIONS

13. Pursuant to D. Del. LR 3.1(b), Plaintiffs state that this declaratory judgment action is related to the following actions (the "Related Actions"):

- *Rembrandt Technologies, LP v. Cablevision et al.*, C.A. No. 06-635-GMS;

- *Coxcom v. Rembrandt Technologies, LP*, C.A. No. 06-721-GMS;

- *Rembrandt Technologies, LP v. Adelphia Comm'n Corp., et al.*, C.A. No. 07-396-GMS;

- *Rembrandt Technologies, LP v. Adelphia Comm'n Corp., et al.*, C.A. No. 07-397-GMS;

- *Rembrandt Technologies, LP v. Comcast Corp. et al.*, C.A. No. 07-398-GMS;

- *Rembrandt Technologies, LP v. Charter Comm'n, Inc., et al.*, C.A. No. 07-400-GMS;

- *Rembrandt Technologies, LP v. Time Warner Cable, et al.*, C.A. No. 07-401-GMS;

- *Rembrandt Technologies, LP v. Time Warner Cable, et al.*, C.A. No. 07-402-GMS;

- *Rembrandt Technologies, LP v. Comcast Corp. et al.*, C.A. No. 07-403-GMS;

- *Rembrandt Technologies, LP v. Charter Comm'n, Inc., et al.*, C.A. No. 07-404-GMS;

- *In re Rembrandt Technologies, LP Patent Litigation*, C.A. No. 07-1848-GMS.

## THE PATENTS

14. U.S. Patent No. 4,937,819 ("the '819 patent") entitled "Time Orthogonal Multiple Virtual DCE for Use in Analog and Digital Networks" reports that it was filed on September 26,

1988 and issued on June 26, 1990. The inventor named on the '819 patent is Joseph B. King. A copy of the '819 patent is attached hereto as Exhibit A. As alleged herein, Plaintiffs deny that the patent duly and legally issued.

15. U.S. Patent No. 5,008,903 ("the '903 patent") entitled "Adaptive Transmit Pre-Emphasis for Digital Modem Computed from Noise Spectrum" reports that it was filed on May 25, 1989 and issued on April 16, 1991. The inventors named on the '903 patent are William L. Betts and James J. DesRosiers. A copy of the '903 patent is attached hereto as Exhibit B. As alleged herein, Plaintiffs deny that the patent duly and legally issued.

16. U.S. Patent No. 5,710,761 ("the '761 patent") entitled "Error Control Negotiation Based on Modulation" reports that it was filed on May 31, 1995 and issued on January 20, 1998. The inventor named on the '761 patent is Robert Earl Scott. A copy of the '761 patent is attached hereto as Exhibit C. As alleged herein, Plaintiffs deny that the patent duly and legally issued.

17. U.S. Patent No. 5,719,858 ("the '858 patent") entitled "Time-Division Multiple-Access Method for Packet Transmission on Shared Synchronous Serial Buses" reports that it was filed on July 31, 1995 and issued on February 17, 1998. The inventor named on the '858 patent is Wayne T. Moore. A copy of the '858 patent is attached hereto as Exhibit D. As alleged herein, Plaintiffs deny that the patent duly and legally issued.

18. U.S. Patent No. 5,778,234 ("the '234 patent") entitled "Method for Downloading Programs" reports that it was filed on July 24, 1997 and issued on July 7, 1998. The inventors named on the '234 patent are Gideon Hecht, Kurt Ervin Holmquist, and Donald C. Snoll. A copy of the '234 patent is attached hereto as Exhibit E. As alleged herein, Plaintiffs deny that the patent duly and legally issued.

19. U.S. Patent No. 5,852,631 ("the '631 patent") entitled "System and Method for Establishing Link Layer Parameters Based on Physical Layer Modulation" reports that it was filed on January 8, 1997 and issued on December 22, 1998. The inventor named on the '631 patent is Robert Earl Scott. A copy of the '631 patent is attached hereto as Exhibit F. As alleged herein, Plaintiffs deny that the patent duly and legally issued.

20. U.S. Patent No. 6,131,159 ("the '159 patent") entitled "System for Downloading Programs" reports that it was filed on May 8, 1992 and issued on October 10, 2000. The inventors named on the '159 patent are Gideon Hecht, Kurt Ervin Holmquist, and Donald C. Snoll. A copy of the '159 patent is attached as Exhibit G. As alleged herein, Plaintiffs deny that the patent duly and legally issued.

21. U.S. Patent No. 6,950,444 ("the '444 patent") entitled "System and Method for a Robust Preamble and Transmission Delimiting in a Switched-Carrier Transceiver" reports that it was filed on August 11, 2000 and issued on September 27, 2005. The inventors named on the '444 patent are Kurt Holmquist and Joseph Chapman. A copy of the '444 patent is attached as Exhibit H. As alleged herein, Plaintiffs deny that the patent duly and legally issued.

22. Rembrandt asserts (but Plaintiffs do not admit) that Rembrandt is the owner of all rights, title, and interest in and to the '819, '903, '761, '858, '234, '631, '159, and '444 patents (collectively, the "Patents"). Rembrandt did not invent the technology in the Patents. Rembrandt also did not invent DOCSIS or contribute to the development of DOCSIS. Rembrandt purports to have obtained the Patents through an agreement with Paradyne Corporation. Paradyne Corporation did not invent DOCSIS. Paradyne Corporation did not participate in the creation of DOCSIS. Paradyne did not sell cable modems or cable modem termination systems. Rembrandt has contended in discovery responses in one or more of the

7

MSO actions that Paradyne sold products in the United States that Rembrandt alleges to practice the Patents. Rembrandt has also admitted that Paradyne products sold in the United States were not marked with the Patents. Rembrandt is presently aware that Paradyne sold products in the United States that were not marked with the Patents and Rembrandt believes that those products practiced claims of the Patents.

**COUNT I**
**(Declaratory Judgment Action for a Declaration**
**of Noninfringement and Invalidity of U.S. Patent No. 4,937,819)**

23. Paragraphs 1 through 22 are incorporated by reference as if stated fully herein.

24. Rembrandt has accused Cablevision Systems Corporation, Charter Communications Operating, LLC, Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast Corporation, Comcast of Plano, LP, Coxcom, Inc., CSC Holdings, Inc., Time Warner Cable Inc., Time Warner Cable LLC, Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner Entertainment Company, L.P. and Time Warner New York Cable LLC of infringing the '819 patent because of the operational parameters of the cable equipment that they purchase for their cable systems. Specifically, Rembrandt has alleged that DOCSIS is a specification that describes operational parameters of equipment that is used for cable networks. Rembrandt further asserts that DOCSIS-compliant cable modem ("CM") and cable modem termination system ("CMTS") equipment allegedly infringe the '819 patent. Plaintiffs manufacture and sell accused CM and/or CMTS equipment, and each of Plaintiffs has supplied accused CM and/or CMTS equipment to one or more of the cable MSOs that Rembrandt has accused of infringement.

25. An actual and justiciable controversy exists between Plaintiffs and Rembrandt regarding the infringement and validity of the '819 patent.

26. Plaintiffs have not infringed (directly or indirectly) any valid, enforceable claim of the '819 patent, either literally or under the doctrine of equivalents.

27. The '819 patent is invalid because of its failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

28. A judicial declaration of noninfringement and invalidity is necessary and appropriate in order to resolve this controversy.

### COUNT II
### (Declaratory Judgment Action for a Declaration
### of Noninfringement and Invalidity of U.S. Patent No. 5,008,903)

29. Paragraphs 1 through 22 are incorporated by reference as if stated fully herein.

30. Rembrandt has accused Cablevision Systems Corporation, Charter Communications Operating, LLC, Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast Corporation, Comcast of Plano, LP, Coxcom, Inc., CSC Holdings, Inc., Time Warner Cable Inc., Time Warner Cable LLC, Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner Entertainment Company, L.P. and Time Warner New York Cable LLC of infringing the '903 patent because of the operational parameters of the cable equipment that they purchase for their cable systems. Specifically, Rembrandt has alleged that DOCSIS is a specification that describes operational parameters of equipment that is used for cable networks. Rembrandt further asserts that DOCSIS-compliant cable modem ("CM") and cable modem termination system ("CMTS") equipment allegedly infringe the '903 patent. Plaintiffs manufacture and sell accused CM and/or CMTS equipment, and each of Plaintiffs has supplied accused CM and/or CMTS equipment to one or more of the cable MSOs that Rembrandt has accused of infringement.

31. An actual and justiciable controversy exists between Plaintiffs and Rembrandt regarding the infringement and validity of the '903 patent.

32. Plaintiffs have not infringed (directly or indirectly) any valid, enforceable claim of the '903 patent, either literally or under the doctrine of equivalents.

33. The '903 patent is invalid because of its failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

34. A judicial declaration of noninfringement and invalidity is necessary and appropriate in order to resolve this controversy.

## COUNT III
### (Declaratory Judgment Action for a Declaration of Noninfringement and Invalidity of U.S. Patent No. 5,710,761)

35. Paragraphs 1 through 22 are incorporated by reference as if stated fully herein.

36. Rembrandt has accused Adelphia Communications Corporation, Century-TCI Distribution Company, LLC, Century-TCI California, LP, Century-TCI California Communications, LP, Century-TCI Holdings, LLC, Charter Communications Operating, LLC, Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast Corporation, Comcast of Plano, LP, Coxcom, Inc., Parnassos Communications, LP, Parnassos Distribution Company I, LLC, Parnassos Distribution Company II, LLC, Parnassos Holdings, LLC, Parnassos, LP, Time Warner Cable Inc., Time Warner Cable LLC, Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner Entertainment Company, L.P., Time Warner New York Cable LLC and Western NY Cablevision, LP of infringing the '761 patent because of the operational parameters of the cable equipment that they purchase for their cable systems. Specifically, Rembrandt has alleged that DOCSIS is a specification that describes operational parameters of equipment that is used for cable networks. Rembrandt further asserts that DOCSIS-compliant cable modem ("CM") and cable modem termination system ("CMTS") equipment allegedly infringe the '761 patent. Plaintiffs manufacture and sell accused CM and/or

CMTS equipment, and each of Plaintiffs has supplied accused CM and/or CMTS equipment to one or more of the cable MSOs that Rembrandt has accused of infringement.

37. An actual and justiciable controversy exists between Plaintiffs and Rembrandt regarding the infringement and validity of the '761 patent.

38. Plaintiffs have not infringed (directly or indirectly) any valid, enforceable claim of the '761 patent, either literally or under the doctrine of equivalents.

39. The '761 patent is invalid because of its failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

40. A judicial declaration of noninfringement and invalidity is necessary and appropriate in order to resolve this controversy.

## COUNT IV
### (Declaratory Judgment Action for a Declaration of Noninfringement and Invalidity of U.S. Patent No. 5,719,858)

41. Paragraphs 1 through 22 are incorporated by reference as if stated fully herein.

42. Rembrandt has accused Cablevision Systems Corporation, Charter Communications Operating, LLC, Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast Corporation, Comcast of Plano, LP, Coxcom, Inc., CSC Holdings, Inc., Time Warner Cable Inc., Time Warner Cable LLC, Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner Entertainment Company, L.P. and Time Warner New York Cable LLC of infringing the '858 patent because of the operational parameters of the cable equipment that they purchase for their cable systems. Specifically, Rembrandt has alleged that DOCSIS is a specification that describes operational parameters of equipment that is used for cable networks. Rembrandt further asserts that DOCSIS-compliant cable modem ("CM") and cable modem termination system ("CMTS") equipment allegedly infringe the '858 patent. Plaintiffs manufacture and sell accused CM and/or CMTS equipment, and each of Plaintiffs has supplied

accused CM and/or CMTS equipment to one or more of the cable MSOs that Rembrandt has accused of infringement.

43. An actual and justiciable controversy exists between Plaintiffs and Rembrandt regarding the infringement and validity of the '858 patent.

44. Plaintiffs have not infringed (directly or indirectly) any valid, enforceable claim of the '858 patent, either literally or under the doctrine of equivalents.

45. The '858 patent is invalid because of its failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

46. A judicial declaration of noninfringement and invalidity is necessary and appropriate in order to resolve this controversy.

## COUNT V
### (Declaratory Judgment Action for a Declaration of Noninfringement and Invalidity of U.S. Patent No. 5,778,234)

47. Paragraphs 1 through 22 are incorporated by reference as if stated fully herein.

48. Rembrandt has accused Adelphia Communications Corporation, Century-TCI Distribution Company, LLC, Century-TCI California, LP, Century-TCI California Communications, LP, Century-TCI Holdings, LLC, Charter Communications Operating, LLC, Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast Corporation, Comcast of Plano, LP, Coxcom, Inc., Parnassos Communications, LP, Parnassos Distribution Company I, LLC, Parnassos Distribution Company II, LLC, Parnassos Holdings, LLC, Parnassos, LP, Time Warner Cable Inc., Time Warner Cable LLC, Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner Entertainment Company, L.P., Time Warner New York Cable LLC and Western NY Cablevision, LP of infringing the '234 patent because of the operational parameters of the cable equipment that they purchase for their cable systems. Specifically, Rembrandt has alleged that DOCSIS is a specification that describes operational

parameters of equipment that is used for cable networks. Rembrandt further asserts that DOCSIS-compliant cable modem ("CM") and cable modem termination system ("CMTS") equipment allegedly infringe the '234 patent. Plaintiffs manufacture and sell accused CM and/or CMTS equipment, and each of Plaintiffs has supplied accused CM and/or CMTS equipment to one or more of the cable MSOs that Rembrandt has accused of infringement.

49. An actual and justiciable controversy exists between Plaintiffs and Rembrandt regarding the infringement and validity of the '234 patent.

50. Plaintiffs have not infringed (directly or indirectly) any valid, enforceable claim of the '234 patent, either literally or under the doctrine of equivalents.

51. The '234 patent is invalid because of its failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

52. A judicial declaration of noninfringement and invalidity is necessary and appropriate in order to resolve this controversy.

### COUNT VI
#### (Declaratory Judgment Action for a Declaration
#### of Noninfringement and Invalidity of U.S. Patent No. 5,852,631)

53. Paragraphs 1 through 22 are incorporated by reference as if stated fully herein.

54. Rembrandt has accused Cablevision Systems Corporation, Charter Communications Operating, LLC, Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast Corporation, Comcast of Plano, LP, Coxcom, Inc., CSC Holdings, Inc., Time Warner Cable Inc., Time Warner Cable LLC, Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner Entertainment Company, L.P. and Time Warner New York Cable LLC of infringing the '631 patent because of the operational parameters of the cable equipment that they purchase for their cable systems. Specifically, Rembrandt has alleged that DOCSIS is a specification that describes operational parameters of equipment that is used for cable networks.

Rembrandt further asserts that DOCSIS-compliant cable modem ("CM") and cable modem termination system ("CMTS") equipment allegedly infringe the '631 patent. Plaintiffs manufacture and sell accused CM and/or CMTS equipment, and each of the Plaintiffs has supplied accused CM and/or CMTS equipment to one or more of the cable MSOs that Rembrandt has accused of infringement.

55. An actual and justiciable controversy exists between Plaintiffs and Rembrandt regarding the infringement and validity of the '631 patent.

56. Plaintiffs have not infringed (directly or indirectly) any valid, enforceable claim of the '631 patent, either literally or under the doctrine of equivalents.

57. The '631 patent is invalid because of its failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

58. A judicial declaration of noninfringement and invalidity is necessary and appropriate in order to resolve this controversy.

### COUNT VII
### (Declaratory Judgment Action for a Declaration
### of Noninfringement and Invalidity of U.S. Patent No. 6,131,159)

59. Paragraphs 1 through 22 are incorporated by reference as if stated fully herein.

60. Rembrandt has accused Adelphia Communications Corporation, Century-TCI Distribution Company, LLC, Century-TCI California, LP, Century-TCI California Communications, LP, Century-TCI Holdings, LLC, Charter Communications Operating, LLC, Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast Corporation, Comcast of Plano, LP, Coxcom, Inc., Parnassos Communications, LP, Parnassos Distribution Company I, LLC, Parnassos Distribution Company II, LLC, Parnassos Holdings, LLC, Parnassos, LP, Time Warner Cable Inc., Time Warner Cable LLC, Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner Entertainment Company, L.P., Time Warner New

York Cable LLC and Western NY Cablevision, LP of infringing the '159 patent because of the operational parameters of the cable equipment that they purchase for their cable systems. Specifically, Rembrandt has alleged that DOCSIS is a specification that describes operational parameters of equipment that is used for cable networks. Rembrandt further asserts that DOCSIS-compliant cable modem ("CM") and cable modem termination system ("CMTS") equipment allegedly infringe the '159 patent. Plaintiffs manufacture and sell accused CM and/or CMTS equipment, and each of Plaintiffs has supplied accused CM and/or CMTS equipment to one or more of the cable MSOs that Rembrandt has accused of infringement.

61. An actual and justiciable controversy exists between Plaintiffs and Rembrandt regarding the infringement of the '159 patent.

62. Plaintiffs have not infringed (directly or indirectly) any valid, enforceable claim of the '159 patent, either literally or under the doctrine of equivalents.

63. The '159 patent is invalid because of its failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

64. A judicial declaration of noninfringement and invalidity is necessary and appropriate in order to resolve this controversy.

### COUNT VIII
### (Declaratory Judgment Action for a Declaration of Noninfringement and Invalidity of U.S. Patent No. 6,950,444)

65. Paragraphs 1 through 22 are incorporated by reference as if stated fully herein.

66. Rembrandt has accused Adelphia Communications Corporation, Century-TCI Distribution Company, LLC, Century-TCI California, LP, Century-TCI California Communications, LP, Century-TCI Holdings, LLC, Charter Communications Operating, LLC, Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast Corporation, Comcast of Plano, LP, Coxcom, Inc., Parnassos Communications, LP, Parnassos Distribution

Company I, LLC, Parnassos Distribution Company II, LLC, Parnassos Holdings, LLC, Parnassos, LP, Time Warner Cable Inc., Time Warner Cable LLC, Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner Entertainment Company, L.P., Time Warner New York Cable LLC and Western NY Cablevision, LP of infringing the '444 patent because of the operational parameters of the cable equipment that they purchase for their cable systems. Specifically, Rembrandt has alleged that DOCSIS is a specification that describes operational parameters of equipment that is used for cable networks. Rembrandt further asserts that DOCSIS-compliant cable modem ("CM") and cable modem termination system ("CMTS") equipment allegedly infringe the '444 patent. Plaintiffs manufacture and sell accused CM and/or CMTS equipment, and each of Plaintiffs has supplied accused CM and/or CMTS equipment to one or more of the cable MSOs that Rembrandt has accused of infringement.

67. An actual and justiciable controversy exists between Plaintiffs and Rembrandt regarding the infringement and validity of the '444 patent.

68. Plaintiffs have not infringed (directly or indirectly) any valid, enforceable claim of the '444 patent, either literally or under the doctrine of equivalents.

69. The '444 patent is invalid because of its failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

70. A judicial declaration of noninfringement and invalidity is necessary and appropriate in order to resolve this controversy.

## COUNT IX
### (Declaratory Judgment Action for a Declaration
### of Patent Unenforceability Due to Inequitable Conduct)

71. Paragraphs 1 through 22 are incorporated by reference as if stated fully herein.

72. An actual and justiciable controversy exists between Plaintiffs and Defendants regarding the enforceability of the '819, '903, '761, '858, '234, '631, '159, and '444 patents (the "Fraudulently Obtained Patents").

73. Individuals subject to the duty of candor under 37 C.F.R. 1.56 ("Applicants"), including named inventors in the applications referenced below and employees with substantive involvement in the filing and/or prosecution of patent applications for Paradyne entities, engaged in inequitable conduct by engaging in a pattern and practice of withholding or misstating material information with intent to deceive the United States Patent & Trademark Office ("USPTO") in connection with patent prosecution of the Fraudulently Obtained Patents. On multiple occasions, Applicants failed to disclose their own previously issued patents that comprised material prior art, failed to disclose material information regarding their own co-pending applications for patents, failed to disclose prior art that was known to them through the prosecution of their own patents and applications, and failed to disclose their own systems that implemented undisclosed, material prior art and that were on-sale prior to the relevant critical dates. In addition to nondisclosure, Applicants in the prosecution chain of the '159 and '234 patents provided affirmative misstatements as set forth below. Accordingly, Applicants engaged in an overall pattern and practice of repeatedly and continuously failing to disclose to the USPTO material information of which Applicants were indisputably aware. The permeation and continuation of this misconduct throughout prosecution of multiple patent applications confirms that Applicants acted with deceptive intent rendering the patents unenforceable. Further, the doctrine of infectious unenforceability renders related patents unenforceable.

17

74. More specifically, during prosecution of the '761 patent, Applicants engaged in inequitable conduct before the USPTO, rendering the '761 patent unenforceable by withholding and failing to disclose material information with intent to deceive including the following acts:

(i)     By way of example, MPEP § 2001.06(b) states that "there is a duty to bring to the attention of the examiner, or other Office official involved with the examination of a particular application, information within their knowledge as to other co-pending United States applications which are 'material to patentability' of the application in question." The MPEP cites to caselaw providing that "[W]e think that it is unfair to the busy examiner, no matter how diligent and well informed he may be, to assume that he retains details of every pending file in his mind when he is reviewing a particular application . . . [T]he applicant has the burden of presenting the examiner with a complete and accurate record to support the allowance of letters patent." The MPEP provides express examples of material information as to other co-pending applications, stating "[f]or example, if a particular inventor has different applications pending in which similar subject matter but patentably indistinct claims are present that fact must be disclosed to the examiner of each of the involved applications. Similarly, the prior art references from one application must be made of record in another subsequent application if such prior art references are 'material to patentability' of the subsequent application."

(ii)    Notwithstanding these clear obligations, during prosecution, Applicants repeatedly failed to disclose material information within their knowledge as to co-pending applications of which they were aware. One or more Applicants were

aware of and failed to disclose, without limitation, co-pending application 08/780,762 (now the '631 patent, which is now commonly asserted here along with the '761 patent), as well as Application Nos. 08/781,787, now issued as U.S. Patent No. 5,751,796 ("Rapid Startup Protocol For Communication Between a Plurality of Modems"), to Scott and Zuranski, 08/781,067 now issued as U.S. Patent No. 5,796,808 ("System and Method for Automatically Selecting the Mode of Communication between a Plurality of Modems"), to Scott and Lastinger Jr., 08/780,238, now issued as U.S. Patent No. 5,787,363 ("System and Method for Connect Message Synchronization of Modems in a Cellular Data Gateway"), to Scott and Lastinger Jr., 08/457,881, now issued as U.S. Patent No. 5,793,809 ("Transparent Technique for Mu-Law Modems to Detect an All-Digital Circuit Connection"), to Holmquist, 08/912,126, now issued as U.S. Patent No. 6,081,556 ("Transparent Technique for Mu-Law Modems to Detect an All-Digital Circuit Connection"), to Holmquist, and 08/978,536, now issued as U.S. Patent No. 5,349,635 ("Half-Duplex or Full-Duplex Automode Operation for use in Data Communications Equipment"), to Scott (the "'761 Co-Pending Applications"). The Applicants for the '761 patent failed to identify any of these co-pending applications or their claims to the examiner in the prosecution of the '761 patent. These applications were never disclosed on any IDS that was submitted in the '761 patent or otherwise made of record in the '761 patent. Information relating to the '761 Co-Pending Applications and their claims was material to patentability. One or more Applicants were aware of the '761 Co-Pending Applications. Four of the '761 Co-Pending Applications include Robert Scott as a named inventor,

19

and in the case of the '761 and '631 patents, he is the sole named inventor on both. Robert Scott was aware of the co-pendency of his applications. In addition, on information and belief, a reasonable opportunity for discovery will show that Paradyne personnel were substantively involved in the filing or prosecution of the '761 patent and were aware of the '761 Co-Pending Applications. Material information relating to the '761 Co-Pending Applications was withheld with intent to deceive the USPTO as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

(iii)     Further, Applicants failed to disclose in prosecution of the '761 patent, the prior art of record from the '761 Co-Pending Applications, including without limitation U.S. Patent Nos. 4,905,282 ("Feature Negotiation Protocol and Dynamically Adjustable Retraining Sequence for a High Speed Half Duplex Modem"), to McGlynn and Nash ("McGlynn"), 5,425,080 ("Transaction Terminal Apparatus and Method Using Host Dial String Control of Modem Connect Protocols"), to Abbie ("Abbie"), 4,931,250 ("Multimode Modem"), to Greszczuk ("Greszczuk"), 5,491,720 ("Method and System for Automatically Determining Data Communication Device Type and Corresponding Transmission Rate"), to Davis, Linger, Mandalia, Sinibaldi, Zevin, and Ziegenhain ("Davis"), 5,311,578 ("Technique for Automatic Identification of a Remote Modem"), to Bremer ("'578 Bremer et al."), 5,317,594 ("Systems for and Method of Identifying V.Fast Modem Within Existing Automatic Interworking Procedure Standards"), to Goldstein ("Goldstein"), 5,528,679 ("Automatic Detection of Digital Call Paths in a Telephone System"), to Taarud ("Taarud"), 4,680,773 ("Data

20

Telecommunications System"), to Amundson ("Amundson"), and 4,782,498 ("Modem with Improved Handshaking Capability"), to Copeland, III ("Copeland") (the "'761 Co-Pending Art"). The '761 Co-Pending Art was material to the patentability of the '761 patent. Applicants for the '761 patent failed to identify any '761 Co-Pending Art to the examiner in the prosecution of the '761 patent. For example, McGlynn, Abbie, Greszczuk, Davis and Goldstein were each cited by the Examiner of the '631 patent in a Detailed Office Action and accompanying Notice of References Cited mailed on 9/12/97. Further, Greszczuk was cited in the 08/781,067 application on an IDS submitted on August 12, 1997, and in the 08/781,787 application on an IDS submitted October 6, 1997. The '761 patent was still pending and did not issue until January 20, 1998. One or more Applicants were aware of the '761 Co-Pending Art. Robert Scott is the same and only named inventor on both the '631 and the '761 patents. In addition, on information and belief, a reasonable opportunity for discovery will show that Paradyne personnel substantively involved in the filing or prosecution of the '761 patent were aware of the '761 Co-Pending Art, as well as U.S. Patent Nos. 5,600,712 ("Enabling Technique for Quickly Establishing High Speed PSTN Connections In Telecommuting Applications"), to Hanson, 5,577,105 ("Telephone Call Routing and Switching Techniques for Data Communications"), to Baum, 5,127,041 ("System and Method for Interfacing Computers to Diverse Telephone Networks"), to O'Sullivan, and Weissman, et al., "Interoperable Wireless Data," IEEE Communications Magazine, vol. 31, No. 2, pp. 68-77. In fact, while the '761 patent remained co-pending, Applicants attempted to

distinguish prior art of record in the '631 patent, including transmitting a First Response with Amendments on October 23, 1997. Notwithstanding the October 23, 1997 response, the USPTO issued a Detailed Action rejecting the claims in the '631 patent based upon prior art to McGlynn in an office action dated November 18, 1997, while the application for the '761 patent remained co-pending, and Applicants nevertheless failed to disclose McGlynn in prosecution of the '761 patent. Further, Applicants for the '761 patent failed to disclose in prosecuting the '761 patent the office actions and responses from the co-pending '631 patent and the prior art of record referenced in those office actions and responses. The undisclosed information described herein was material to patentability of the '761 patent. The undisclosed information described herein was material to patentability of the '761 patent and was withheld with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

75. Additional instances of misconduct occurred in prosecution of the '631 patent, where Applicants engaged in inequitable conduct before the USPTO rendering the patent unenforceable by withholding and failing to disclose material information with intent to deceive including the following acts:

(i)    By way of example, MPEP § 2001.06(b) states that "there is a duty to bring to the attention of the examiner, or other Office official involved with the examination of a particular application, information within their knowledge as to other co-pending United States applications which are 'material to patentability' of the application in question." The MPEP cites to caselaw providing that "[W]e think

that it is unfair to the busy examiner, no matter how diligent and well informed he may be, to assume that he retains details of every pending file in his mind when he is reviewing a particular application . . . [T]he applicant has the burden of presenting the examiner with a complete and accurate record to support the allowance of letters patent." The MPEP provides express examples of material information as to other co-pending applications, stating "[f]or example, if a particular inventor has different applications pending in which similar subject matter but patentably indistinct claims are present that fact must be disclosed to the examiner of each of the involved applications. Similarly, the prior art references from one application must be made of record in another subsequent application if such prior art references are 'material to patentability' of the subsequent application."

(ii)    Notwithstanding these clear obligations, during prosecution, Applicants repeatedly failed to disclose information within their knowledge as to co-pending applications of which they were aware, including without limitation co-pending application 08/458,048 (now the '761 patent, which is now commonly asserted here along with the '631 patent), as well as Application Nos. 08/781,787, now issued as U.S. Patent No. 5,751,796 ("Rapid Startup Protocol For Communication Between a Plurality of Modems") to Scott and Zuranski, 08/781,067 now issued as U.S. Patent No. 5,796,808 ("System and Method for Automatically Selecting the Mode of Communication between a Plurality of Modems"), to Scott and Lastinger Jr., 08/780,238, now issued as U.S. Patent No. 5,787,363 ("System and Method for Connect Message Synchronization of Modems in a Cellular Data

Gateway"), to Scott and Lastinger Jr., 08/457,881, now issued as U.S. Patent 5,793,809 ("Transparent Technique for Mu-Law Modems to Detect an All-Digital Circuit Connection"), to Holmquist, and 08/912,126, now issued as U.S. Patent No. 6,081,556 ("Transparent Technique for Mu-Law Modems to Detect an All-Digital Circuit Connection"), to Holmquist (the "'631 Co-Pending Applications."). Applicants for the '631 patent failed to identify any of these co-pending applications or their claims to the examiner in the prosecution of the '631 patent. These applications are never disclosed on an IDS that was submitted in the '631 patent or otherwise made of record in the '631 patent. One or more Applicants were aware of the '631 Co-Pending Applications during prosecution of the '631 patent. Three of the '631 Co-Pending Applications include Robert Scott as a named inventor and claim priority to the same provisional applications for which priority is claimed by the '631 patent. In addition, on information and belief a reasonable opportunity for discovery will show that further Paradyne personnel were substantively involved in the filing or prosecution of the '631 patent and were aware of the '631 Co-Pending Applications. The information relating to the '631 Co-Pending Applications was material to the patentability of the '631 Patent and was withheld with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

(iii)    Further, Applicants failed to disclose in prosecution of the '631 patent, the prior art of record from the '631 Co-Pending Applications, including without limitation U.S. Patent Nos. 5,550,881 ("Automatic Modulation Mode Selecting Unit and Method for Modems"), to Sridhar and Sheer ("Sridhar"), '578 Bremer et al.

("Bremer"), 5,430,793 ("Apparatus and Method for Configuring a Computer System and a Modem for use in a Particular Country"), to Ueltzen, Mahan, and Horn ("Ueltzen"), 4,715,044 ("Automatic Synchronous/Asynchronous Modem"), to Gartner ("Gartner"), and 5,528,679 ("Automatic Detection of Digital Call Paths in a Telephone System"), to Taarud ("Taarud") (the "'631 Co-Pending Art"). The Applicants did not disclose the '631 Co-Pending Art during prosecution of the '631 patent. Applicants were aware of the '631 Co-Pending Art during prosecution of the '631 patent. Robert Scott is the same and only named inventor on both the '631 and the '761 patents. In addition, on information and belief a reasonable opportunity for discovery will show that further Paradyne personnel substantively involved in the filing or prosecution of the '631 patent were aware of the '631 Co-Pending Art, as well as U.S. Patent Nos. 5,349,635 ("Half-Duplex or Full-Duplex Automode Operation for use in Data Communications Equipment"), to Scott, 5,600,712 ("Enabling Technique for Quickly Establishing High Speed PSTN Connections In Telecommuting Applications"), to Hanson, 5,577,105 ("Telephone Call Routing and Switching Techniques for Data Communications"), to Baum, 5,127,041 ("System and Method for Interfacing Computers to Diverse Telephone Networks"), to O'Sullivan, 4,680,773 ("Data Telecommunications System"), to Amundson ("Amundson"), and 4,782,498 ("Modem with Improved Handshaking Capability"), to Copeland, III ("Copeland"), and Weissman, et al., "Interoperable Wireless Data," IEEE Communications Magazine, vol. 31, No. 2, pp. 68-77. For example, Sridhar et al. was cited by the Examiner of the '761 patent and used for claim rejections in a

Detailed Office Action and accompanying Notice of References Cited dated December 26, 1996. Similarly, Ueltzen was "considered pertinent to applicant's disclosure" in that same Detailed Office Action. The '631 and '761 patent were co-pending on December 26, 1996, and the '631 patent did not issue until December 22, 1998. While the '631 patent remained co-pending, Applicants attempted to distinguish prior art of record in the '761 patent in a Response and Amendment transmitted March 31, 1997. Applicants for the '631 patent failed to disclose in prosecuting the '631 patent, the December 26, 1996 office action and the March 31, 1997 response from the co-pending '761 patent or the prior art of record referenced in those communications. The '631 Co-Pending Art and information described in this paragraph was material to patentability of the '631 patent. The '631 Co-Pending Art and information described in this paragraph was withheld with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count. In addition, on information and belief, a reasonable opportunity for discovery will show that Robert Scott was improperly listed as sole inventor of the '631 patent with deceptive intent to defraud the USPTO into issuing the '631 patent over the '761 patent.

76. Additional instances of misconduct occurred in prosecution of the '903 patent, where Applicants engaged in inequitable conduct before the USPTO rendering the patent unenforceable by withholding and failing to disclose material information with intent to deceive including the following acts:

(i)    The application for the '903 patent was filed on May 25, 1989, issued April 16, 1991, and named Betts and DesRosiers as inventors. One or more Applicants was aware of and failed to disclose in prosecution of the '903 patent the following prior art: U.S. Patent Nos. 4,771,232 ("Non-interruptive Spectrum Analyzer for Digital Modems"), to Betts and Zuranski, 4,555,790 ("Digital Modem Having A Monitor For Signal-To-Noise Ratio"), to Betts and Martinez, 4,811,357 ("Secondary Channel for Digital Modems Using Spread Spectrum Subliminal Induced Modulation"), to Betts and Zuranski, 4,833,690 ("Remote Eye Pattern Display For Digital Modems"), to Betts, Zuranski, Springer, and Balka, 4,639,934 ("Line Impairment Display for Digital Modems"), to Betts, Scott and Zuranski, 4,646,325 ("Index Decoder for Digital Modems"), to Zuranski and Martinez, 3,889,108 ("Adaptive Low Pass Filter"), to Cantrell, 4,669,090 ("Half-Duplex Modem without Turnaround Delay"), to Betts and Martinez, 4,744,092 ("Transparent Error Detection in Half Duplex Modems"), to Betts and Martinez, 4,532,640 ("Phase Tracking Loop for Digital Modem"), to Bremer, Betts, and Martinez, 4,796,279 ("Substrate Preamble Decoder For A High Speed Modem"), to Betts and Martinez (collectively, the "'903 Undisclosed References"). One or more Applicants was aware of the '903 Undisclosed References during prosecution of the '903 patent. For example, Betts is a named inventor in multiple '903 Undisclosed References. In addition, on information and belief a reasonable opportunity for discovery will show that Paradyne personnel substantively involved in the filing or prosecution of the '903 patent were aware of the '903 Undisclosed References. The '903 Undisclosed References were not disclosed to

the USPTO in prosecution of the '903 patent. The '903 Undisclosed References were material to patentability of the '903 patent. The '903 Undisclosed References were withheld with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count. In addition, on information and belief, a reasonable opportunity for discovery will show that one or more Applicants was aware of the 3,978,407 ("Fast Start-Up Adaptive Equalizer Communication System Using Two Data Transmission Rates"), to Forney and Hart (the"'407 patent"), a patent issued to a competitor of Paradyne. The '407 patent was material to patentability. On information and belief, a reasonable opportunity for discovery will show that the '407 patent was withheld with intent to deceive in light of the overall pattern and practice of nondisclosure.

77. Additional instances of misconduct occurred in prosecution of the '444 patent, where Applicants engaged in inequitable conduct before the USPTO rendering the patent unenforceable by withholding and failing to disclose material information with intent to deceive including the following acts:

(i)    By way of example, MPEP § 2001.06(b) states that "there is a duty to bring to the attention of the examiner, or other Office official involved with the examination of a particular application, information within their knowledge as to other co-pending United States applications which are 'material to patentability' of the application in question." The MPEP cites to caselaw providing that "[W]e think that it is unfair to the busy examiner, no matter how diligent and well informed he may be, to assume that he retains details of every pending file in his mind when

he is reviewing a particular application . . . [T]he applicant has the burden of presenting the examiner with a complete and accurate record to support the allowance of letters patent." The MPEP provides express examples of material information as to other co-pending applications, stating "[f]or example, if a particular inventor has different applications pending in which similar subject matter but patentably indistinct claims are present that fact must be disclosed to the examiner of each of the involved applications. Similarly, the prior art references from one application must be made of record in another subsequent application if such prior art references are 'material to patentability' of the subsequent application."

(ii)     Notwithstanding these clear obligations, during prosecution, Applicants repeatedly failed to disclose information within their knowledge as to co-pending applications of which they were aware, including without limitation co-pending Application No. 8/980,996 (the "Co-Pending '996 Application"). The Co-Pending '996 Application, which subsequently issued as U.S. Patent 6,414,964 ("Method and Apparatus for Performing a Multipoint Polling Protocol which Employs Silence Intervals for Controlling Circuit Operation"), and names Holmquist and Betts as inventors, and was filed on December 1, 1997 and issued on July 2, 2002. The application for the '444 patent was filed on August 11, 2000, and issued September 27, 2005, and named Holmquist and Chapman as inventors. In addition, Applicants failed to disclose in the prosecution of the '444, material prior art of record from the Co-Pending '996 Application, including without limitation U.S. Patent No. 5,677,909 ("Apparatus For Exchanging Data Between

A Central Station And A Plurality of Wireless Remote Stations On A Time Divided Channel"), issued to Heide.  One or more Applicants was aware of the above-referenced information during prosecution of the '444 patent.  The undisclosed information referenced in this paragraph was material to patentability of the '444 patent.  Applicants failed to disclose this material information relating to this co-pending application with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

(iii)    By way of further example, Application 09/307,454 filed May 7, 1999 for a "System and Method For Transmitting Special Marker Symbol" (subsequently issued as U.S. Patent No. 6,487,244) and Application No. 08/979,455, subsequently issued as U.S. Patent No. 6,137,829 (the "'444 Co-Pending '454 and '455 Applications"), were also co-pending with the '444 patent.  The '444 Co-Pending '454 and '455 Applications of Betts comprised prior art to the '444 Patent and were not disclosed to the USPTO in prosecution of the '444 Patent.  One or more Applicants was aware of the '444 Co-Pending '454 and '455 Applications during prosecution of the '444 patent.  The '444 Co-Pending '454 and '455 applications were material to patentability of the '444 patent and withheld with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

(iv)    By way of further example, during prosecution of the '444 patent application, Applicants repeatedly failed to disclose information within their knowledge as to material prior art of which they were aware, including without limitation

5,506,866 ("Side-Channel Communications In Simultaneous Voice and Data Transmission"), to Bremer, Holmquist, Ko, and Sonders, 5,475,691 ("Voice Activated Data Rate Change in Simultaneous Voice and Data Transmission"), to Chapman and Holmquist, 5,369,703 ("Command and Control Signalling Method and Apparatus"), to Archibald, Davis, and Holmquist, and 4,864,617 ("System and Method for Reducing Deadlock Conditions Caused By Repeated Transmission of Data Sequences Equivalent to Those Used for Inter-Device Signalling"), to Holmquist.

(v)     In addition, on information and belief, a reasonable opportunity for discovery will show that one or more Applicants was aware of U.S. Patent Nos. 3,978,407 ("Fast Start-Up Adaptive Equalizer Communication System Using Two Data Transmission Rates"), to Forney and Hart, 4,796,279 ("Substrate Preamble Decoder For A High Speed Modem"), to Betts and Martinez, and 5,912,895 ("Information Network Access Apparatus and Methods for Communicating Information Packets Via Telephone Lines"), to Terry and Richards.  Applicants failed to disclose these patents to the USPTO in prosecution of the '444 patent. These references were material to patentability of the '444 patent.  On information and belief, a reasonable opportunity for discovery will show that Applicants knew of and withheld them with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

(vi)    In addition, on information and belief a reasonable opportunity for discovery will show that Paradyne offered for sale MVL technology more than one year before applying for the '444 patent, that was material to the '444 patent, but failed to

31

disclose those sales as prior art to the USPTO. The withheld information was material to patentability and, on information and belief a reasonable opportunity for discovery will show that this information was withheld with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

78. Additional instances of misconduct occurred during prosecution of the '159 patent, where Applicants engaged in inequitable conduct before the USPTO rendering the patent unenforceable by omitting and misstating material information with intent to deceive including the following acts:

(i)     In prosecution of the '159 patent, the USPTO repeatedly rejected pending claims due to prior art, including without limitation references to Lang and Mori. In response to these and other rejections, Applicants represented that claims required and that they had invented a system that included a "displacement multibit memory address." However, Applicants lacked support for the invention as represented to the USPTO. Applicants misstated and omitted this material information with intent to deceive the USPTO into issuing the claims. These material misstatements and omissions were made with intent to deceive, as further confirmed by the pattern and practice of inequitable conduct alleged throughout this Count. Further, the '234 patent is a divisional of the '159 patent, refers back to acts occurring in prosecution of the '159 patent, and is infected by the unenforceabilty associated with the '159 patent.

(ii)    In addition, on information and belief, a reasonable opportunity for discovery will show that the Applicants offered the invention on-sale or placed it in public use

32

more than one year before the application date, and applicants withheld this
information which was material to patentability with intent to deceive the
USPTO, as is particularly shown by the continuing pattern and practice of
nondisclosure referenced in this Count.

79. Additional instances of misconduct occurred in prosecution of the '858 patent,
Applicants engaged in inequitable conduct before the USPTO rendering the patent unenforceable
by withholding and failing to disclose material information with intent to deceive including the
following acts:

(i)     By way of example, MPEP § 2001.06(b) states that "there is a duty to bring to the
        attention of the examiner, or other Office official involved with the examination
        of a particular application, information within their knowledge as to other co-
        pending United States applications which are 'material to patentability' of the
        application in question." The MPEP cites to caselaw providing that " [W]e think
        that it is unfair to the busy examiner, no matter how diligent and well informed he
        may be, to assume that he retains details of every pending file in his mind when
        he is reviewing a particular application . . . [T]he applicant has the burden of
        presenting the examiner with a complete and accurate record to support the
        allowance of letters patent." The MPEP provides express examples of material
        information as to other co-pending applications, stating "[f]or example, if a
        particular inventor has different applications pending in which similar subject
        matter but patentably indistinct claims are present that fact must be disclosed to
        the examiner of each of the involved applications. Similarly, the prior art
        references from one application must be made of record in another subsequent

application if such prior art references are 'material to patentability' of the subsequent application."

(ii)    Notwithstanding these clear obligations, during prosecution, Applicants failed to disclose information as to co-pending applications including without limitation Application Nos. 08/607,912, now issued as U.S. Patent No. 5,754,799 ("System and Method for Bus Contention Resolution"), to Hiles, 08/608,378 now issued as 5,768,543 ("Slot-Token Protocol"), to Hiles, and 08/947,279, now issued as 6,108,347 ("Non-Polled Dynamic Slot Time Allocation Protocol") to Holmquist, (the "'858 Co-Pending Applications."). The Applicants for the '858 patent failed to identify any of these co-pending applications or their claims to the examiner in the prosecution of the '858 patent. On information and belief, a reasonable opportunity for discovery will show that Applicants were aware of the '858 Co-Pending Applications during prosecution of the '858 patent. These co-pending applications and their claims were material to the patentability. On information and belief, a reasonable opportunity for discovery will show that this undisclosed information was withheld with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

(iii)    Further, Applicants failed to disclose in prosecution of the '858 patent, the material prior art of record from the '858 Co-Pending Applications, including without limitation U.S. Patent Nos. 4,608,700 ("Serial Multi-Drop Data Link"), to Kirtley, Sterling, and Williams, and 5,398,243 ("Arbitration Method and Bus for Serial Data Transmission"), to Aguilhon, Doucet, and Karcher (the "'858 Co-

Pending Art"). The Applicants did not disclose the '858 Co-Pending Art during prosecution of the '858 patent. On information and belief, a reasonable opportunity for discovery will show that one or more Applicants was aware of the '858 Co-Pending Art during prosecution of the '858 patent. This undisclosed information was material to patentability of the '858 patent. On information and belief, a reasonable opportunity for discovery will show this information was withheld with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

(iv)     In addition, one or more Applicants was aware of U.S. Patent No. 4,797,815 ("Interleaved Synchronous Bus Access Protocol for a Shared Memory Multi-Processor System"), to Moore (the same inventor as the '858), and, on information and belief, a reasonable opportunity for discovery will show one or more Applicants was aware of U.S. Patent Nos. 3,997,896 ("Data Processing System Providing Split Bus Cycle Operation"), to Cassarino, Jr., Bekampis, Conway, and Lemay, 4,181,974 ("System Providing Multiple Outstanding Information Requests"), to Lemay and Curley, and 4,669,056 ("Data Processing System with a Plurality of Processors Accessing a Common Bus to Interleaved Storage"), to Waldecker and Wright. Applicants failed to disclose these patents to the USPTO in prosecution of the '858 patent. These reference were material to patentability of the '858 patent and on information and belief a reasonable opportunity for discovery will show that Applicants knew of and withheld them with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

(v)    Further, in the prosecution of the '858 patent, the Applicants failed to disclose the previously issued '819 patent also assigned to Paradyne. In light of Defendants' allegations in this matter, the '819 patent was material to the '858 patent. On information and belief, a reasonable opportunity for discovery will show that one or more Applicants was aware of the '819 patent and Applicants' nondisclosure of the '819 patent, in light of the pattern and practice alleged throughout this Count, occurred with the requisite intent to deceive the USPTO into issuing the '858 patent.

80. Additional instances of misconduct occurred in prosecution of the '819 patent, where Applicants failed to disclose previously issued and material prior art U.S. Patent No. 4,630,286 ("Device for Synchronization of Multiple Telephone Circuits"), assigned to Paradyne Corporation. On information and belief, a reasonable opportunity for discovery will show that one or more Applicants was aware of this undisclosed reference during prosecution and that Applicants' nondisclosure of the 4,630,286 patent, in light of the pattern and practice alleged throughout this Count, occurred with the requisite intent to deceive the USPTO into issuing the '819 patent.

## COUNT X
### (Declaratory Judgment Action for a Declaration of Unclean Hands)

81. Paragraphs 1 through 80 are incorporated by reference as if stated fully herein.

82. Rembrandt's claims are barred by unclean hands. Rembrandt asserts the patents identified in Courts I through VIII despite its awareness of the nondisclosures described in the inequitable conduct allegations. Rembrandt asserts to have acquired a portfolio of patents previously assigned to Paradyne. Rembrandt has consulting agreements with all named inventors on all of the patents-in-suit. Further, prior to making charges against Plaintiffs,

Rembrandt communicated with one or more additional Paradyne personnel who had substantive involvement in the filing or prosecution of Paradyne patent applications. Rembrandt is aware of the undisclosed and material information referred to in Counts I through IX above through Rembrandt's alleged acquisition of a portfolio of patents assigned to Paradyne and its assertion of the patents in this case. In fact, after originally filing lawsuits on four patents including the '631 patent, Rembrandt later filed lawsuits specifically adding the '761 patent, specifically alleging infringement of both patents by the same accused instrumentalities. Rembrandt was aware of the co-pendency of those patents as well as their prosecution histories, and the cited art and office actions, and nevertheless specifically endeavored to assert both patents. Rembrandt's knowing assertion of unenforceable patents comprises unclean hands.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask that this Court enter judgment in Plaintiffs' favor and grant the following relief:

A. A declaration that Plaintiffs have not infringed any of the claims of U.S. Patent Nos. 4,937,819; 5,008,903; 5,710,761; 5,719,858; 5,778,234; 5,852,631; 6,131,159 or 6,950,444;

B. A declaration that U.S. Patent Nos. 4,937,819; 5,008,903; 5,710,761; 5,719,858; 5,778,234; 5,852,631; 6,131,159 or 6,950,444 are invalid for failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112;

C. A declaration that U.S. Patent Nos. 4,937,819; 5,008,903; 5,710,761; 5,719,858; 5,778,234; 5,852,631; 6,131,159 or 6,950,444 are unenforceable and/or that Rembrandt's unclean hands preclude its enforcement of the patents in this suit;

D. An injunction against Rembrandt and its affiliates, subsidiaries, assigns, employees, agents or anyone acting in privity or concert with Rembrandt from charging infringement or instituting or continuing any legal action for infringement of U.S. Patent Nos. 4,937,819; 5,008,903; 5,710,761; 5,719,858; 5,778,234; 5,852,631; 6,131,159 or 6,950,444 against Plaintiffs, their customers, or anyone acting in privity with Plaintiffs;

E. An order declaring that Plaintiffs are prevailing parties and that this is an exceptional case, awarding Plaintiffs their costs, expenses, disbursements and reasonable attorney fees under 35 U.S.C. § 285 and all other applicable statutes, rules and common law;

F. Award Plaintiffs their costs and expenses of litigation, including attorneys' fees and expert witness fees; and

G. Enter judgment against Rembrandt for such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a jury trial on all issues so triable.

Respectfully submitted,

Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
1000 West Street
Wilmington, DE 19801
(302) 571-6600
jshaw@ycst.com

*Liaison Counsel and Attorneys for
Plaintiffs/Counter-Defendants Motorola,
Inc., Cisco Systems, Inc., Scientific-Atlanta,
Inc., ARRIS Group, Inc., Thomson, Inc.,
Ambit Microsystems, Inc., and NETGEAR,
Inc.*

Of Counsel:

John M. Desmarais, P.C.
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022-4611

Eric Lamison
Benjamin Ostapuk
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104

Date:   April 11, 2008