IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: REMBRANDT TECHNOLOGIES, LP PATENT LITIGATION | MDL Docket No. 07-md-1848 (GMS) |

| | |
|---|---|
| MOTOROLA, INC., CISCO SYSTEMS, INC., SCIENTIFIC-ATLANTA, INC., ARRIS GROUP, INC., THOMSON, INC., AMBIT MICROSYSTEMS, INC., and NETGEAR, INC. | **PUBLIC VERSION** |
| Plaintiffs, | |
| v. | Civil Action No. 07-752-GMS |
| REMBRANDT TECHNOLOGIES, LP, and REMBRANDT TECHNOLOGIES, LLC d/b/a REMSTREAM, | |
| Defendants. | |

| | |
|---|---|
| REMBRANDT TECHNOLOGIES, LP, and REMBRANDT TECHNOLOGIES, LLC d/b/a REMSTREAM, | |
| Counter-Plaintiffs, | |
| v. | Civil Action No. 07-752-GMS |
| MOTOROLA, INC., CISCO SYSTEMS, INC., SCIENTIFIC-ATLANTA, INC., ARRIS GROUP, INC., THOMSON, INC., AMBIT MICROSYSTEMS, INC., and NETGEAR, INC., TIME WARNER CABLE, INC., TIME WARNER CABLE LLC, TIME WARNER NEW YORK CABLE LLC, TIME WARNER ENTERTAINMENT COMPANY, LP, COMCAST CORPORATION, COMCAST | |

CABLE COMMUNICATIONS, LLC, CHARTER        )
COMMUNICATIONS OPERATING, LLC,            )
COXCOM, INC., COX COMMUNICATIONS,         )
INC., COX ENTERPRISES, INC., CSC          )
HOLDINGS, INC., CABLEVISION SYSTEMS       )
CORPORATION, ADELPHIA                     )
COMMUNICATIONS CORPORATION,               )
CENTURY-TCI CALIFORNIA                    )
COMMUNICATIONS, LP, CENTURY-TCI           )
HOLDINGS, LLC, COMCAST OF                 )
FLORIDA/PENNSYLVANIA, L.P. (f/k/a         )
PARNASSOS, LP), COMCAST OF                )
PENNSYLVANIA II, L.P. (f/k/a CENTURY-TCI  )
CALIFORNIA, L.P.), PARNASSOS              )
COMMUNICATIONS, LP, ADELPHIA              )
CONSOLIDATION, LLC, PARNASSOS             )
HOLDINGS, LLC, and WESTERN NY             )
CABLEVISION, LP,                          )
                                          )
            Counter-Defendants.           )

---

## PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT

Plaintiffs and Counter-Defendants Motorola, Inc., Cisco Systems, Inc., Scientific-Atlanta,

Inc., ARRIS Group, Inc., Thomson, Inc., Ambit Microsystems, Inc. and NETGEAR, Inc.

("Plaintiffs"), hereby move for leave to file the attached First Amended Complaint (Including

Antitrust and Unfair Competition Claims) pursuant to Federal Rule of Civil Procedure 15(a) and

Local Rule 15.1. The grounds for this motion are set forth in Plaintiffs' Opening Brief submitted

herewith.

Plaintiffs' proposed First Amended Complaint (Including Antitrust and Unfair

Competition Claims) is attached as Exhibit A. A redlined version of the proposed First

Amended Complaint (Including Antitrust and Unfair Competition Claims) indicating the respects

in which Plaintiffs' proposed amended pleading differs from Plaintiffs' currently pending

Amended Complaint, which was submitted by stipulation (C.A. No. 07-1848 D.I. 146), is

attached as Exhibit B.  Plaintiffs have redlined Exhibit A against their stipulated Amended

Complaint adding inequitable conduct claims, although not yet approved by the Court, in order

to most clearly set forth the allegations at issue in this motion.

Pursuant to Local Rule 7.1.1, the undersigned counsel certifies that reasonable efforts

were made to secure the consent of Rembrandt Technologies, LP and Rembrandt Technologies,

LLC d/b/a Remstream to this motion.

WHEREFORE, Plaintiffs and Counter-Defendants Motorola, Inc., Cisco Systems, Inc.,

Scientific-Atlanta, Inc., ARRIS Group, Inc., Thomson, Inc., Ambit Microsystems, Inc. and

NETGEAR, Inc. respectfully request the Court to enter the attached order granting this motion

for leave to amend.

<div style="margin-left: 40%;">

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

_John W. Shaw_

Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
1000 West Street
Wilmington, DE  19801
(302) 571-6600
jshaw@ycst.com
  *Co-Liaison Counsel and Attorneys for*
  *Plaintiffs/Counter-Defendants Motorola, Inc., Cisco*
  *Systems, Inc., Scientific-Atlanta, Inc., ARRIS Group,*
  *Inc., Thomson, Inc., Ambit Microsystems, Inc., and*
  *NETGEAR, Inc.*

</div>

*Of Counsel:*

John M. Desmarais, P.C.
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022-4611

Eric R. Lamison
Benjamin R. Ostapuk
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA  94104

Russell E. Levine, P.C.
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL   60601

*Attorneys for Plaintiffs/Counter-*
*Defendants Motorola, Inc., Cisco*
*Systems, Inc., Scientific-Atlanta, Inc.,*
*ARRIS Group, Inc., Thomson, Inc.,*
*Ambit Microsystems, Inc., and*
*NETGEAR, Inc.*

Dated: April 11, 2008

## CERTIFICATE OF SERVICE

I, Jeffrey T. Castellano, Esquire, hereby certify that on April 18, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Collins J. Seitz, Jr., Esquire
Francis DiGiovanni, Esquire
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building – 8th Floor
1007 N. Orange Street
Wilmington, DE 19801
cseitz@cblh.com
fdigiovanni@cblh.com

Jack B. Blumenfeld, Esquire
Morris Nichols Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
jblumenfeld@mnat.com

I further certify that on April 18, 2008, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel of record and on the following in the manner indicated:

### BY E-MAIL

David S. Benyacar, Esquire
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022
dbenyacar@kayescholer.com

### BY E-MAIL

Edward R. Reines, Esquire
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
edward.reines@weil.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
Jeffrey T. Castellano (No. 4837)
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
*jcastellano@ycst.com*

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: REMBRANDT TECHNOLOGIES, LP PATENT LITIGATION | ) ) ) ) ) ) | MDL Docket No. 07-md-1848 (GMS) |

| | |
|---|---|
| MOTOROLA, INC., CISCO SYSTEMS, INC., SCIENTIFIC-ATLANTA, INC., ARRIS GROUP, INC., THOMSON, INC., AMBIT MICROSYSTEMS, INC., and NETGEAR, INC.<br><br>Plaintiffs,<br><br>v.<br><br>REMBRANDT TECHNOLOGIES, LP, and REMBRANDT TECHNOLOGIES, LLC d/b/a REMSTREAM,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 07-752-GMS<br><br>**REDACTED – PUBLIC VERSION**<br><br>**JURY TRIAL DEMANDED** |

| | |
|---|---|
| REMBRANDT TECHNOLOGIES, LP, and REMBRANDT TECHNOLOGIES, LLC d/b/a REMSTREAM,<br><br>Counter-Plaintiffs,<br><br>v.<br><br>MOTOROLA, INC., CISCO SYSTEMS, INC., SCIENTIFIC-ATLANTA, INC., ARRIS GROUP, INC., THOMSON, INC., AMBIT MICROSYSTEMS, INC., and NETGEAR, INC., TIME WARNER CABLE, INC., TIME WARNER CABLE LLC, TIME WARNER NEW YORK CABLE LLC, TIME WARNER ENTERTAINMENT COMPANY, LP, COMCAST CORPORATION, COMCAST CABLE COMMUNICATIONS, LLC, CHARTER | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 07-752-GMS<br><br>**JURY TRIAL DEMANDED** |

COMMUNICATIONS OPERATING, LLC,       )
COXCOM, INC., COX COMMUNICATIONS,    )
INC., COX ENTERPRISES, INC., CSC     )
HOLDINGS, INC., CABLEVISION SYSTEMS  )
CORPORATION, ADELPHIA                )
COMMUNICATIONS CORPORATION,          )
CENTURY-TCI CALIFORNIA               )
COMMUNICATIONS, LP, CENTURY-TCI      )
HOLDINGS, LLC, COMCAST OF            )
FLORIDA/PENNSYLVANIA, L.P. (f/k/a    )
PARNASSOS, LP), COMCAST OF           )
PENNSYLVANIA II, L.P. (f/k/a CENTURY-TCI )
CALIFORNIA, L.P.), PARNASSOS         )
COMMUNICATIONS, LP, ADELPHIA         )
CONSOLIDATION, LLC, PARNASSOS        )
HOLDINGS, LLC, and WESTERN NY        )
CABLEVISION, LP,                     )
                                     )
          Counter-Defendants.        )
                                     )

## FIRST AMENDED COMPLAINT
## (INCLUDING ANTITRUST AND UNFAIR COMPETITION CLAIMS)

This case concerns the unlawful and anticompetitive conduct of a nonpracticing patent holding company, Rembrandt Technologies, LP. Rembrandt acquired invalid and unenforceable patents and is now asserting them against non-infringing leading operators of cable television systems and the manufacturers of cable modems and other products those operators use to deliver the broadband data services millions of Americans use to access the Internet. To gain negotiating leverage against the companies it accuses of infringing its invalid, non-infringed and unenforceable patents, Rembrandt seeks to prevent millions of cable subscribers from continuing to enjoy access to high-speed data delivered using a pervasive cable industry standard. Although Rembrandt now wishes to portray itself as a market participant entitled to lost profits damages and injunctive relief for alleged patent infringement, Rembrandt is, by its own admission, a nonpracticing entity ("NPE") that does not make or sell anything. Instead, Rembrandt solicits

2

investors to give it money so it can buy patents and assert those patents against companies like the plaintiffs in this action, who provide products and services enjoyed by the public.

To maximize its power to coerce cable system operators and equipment manufacturers to yield to its demands, Rembrandt has hatched an illegal, anticompetitive scheme. Specifically, Rembrandt Technologies, LP and its apparent affiliate, Remstream Technologies LLC d/b/a Remstream (which first appeared in these cases in January 2008) are attempting to monopolize and unfairly compete in the market for cable modem products that use the successful Data Over Cable Services Interface Specifications ("DOCSIS"). DOCSIS is a set of technical specification used by manufacturers to design and build equipment such as cable modems and cable modem termination systems that cable companies use to deliver broadband data services over their cable television networks. The adoption of the DOCSIS specification over ten years ago has led to the availability of affordable, interoperable cable modems and the emergence of broadband over cable systems as a leading method by which Americans access the Internet.

Against this backdrop comes Rembrandt's scheme. Rembrandt has purchased a portfolio of patents of a defunct company called Paradyne, which manufactured dial-up modems and other products used by consumers to access older, slower non-cable television telecommunications networks. Paradyne never developed or manufactured cable modems and did not help create the DOCSIS standard. Rembrandt now says that the plaintiffs in this case infringe the patents it purchased from Paradyne by implementing the DOCSIS standard.

The patents do not cover DOCSIS and are in fact unenforceable for inequitable conduct based upon facts of which Rembrandt became aware through the investigation it performed at the time it acquired the Paradyne portfolio. Even though neither Rembrandt nor Paradyne contributed to the DOCSIS standard, and Rembrandt knows both that the patents are

3

unenforceable and that, even if they were enforceable, they would not be infringed by implementers of DOCSIS such as the plaintiffs, Rembrandt now seeks to prevent plaintiffs from continuing to make and sell products that make the delivery of broadband over cable television networks possible.

Under the *eBay* decision, an NPE like Rembrandt is plainly not entitled to a permanent injunction.

These agreements are a sham: nothing about Rembrandt's history or business model suggests it wants to be a bona fide distributor of cable modems, as is plain from its own admissions. however, Rembrandt attempts to gain the right to exclude competition through the enforcement of its non-infringed, invalid, and unenforceable patents by enjoining what it claims is the use of those patents by virtually every major cable systems operator, as well as by companies that supply the bulk of US sales of cable modems and related equipment.

Rembrandt faced another obstacle in bringing its scheme to fruition.  Valid and enforceable patents that needed to license to implement the DOCSIS specification, patents owned by companies such as plaintiffs that had, unlike Rembrandt, participated in the development of DOCSIS, were available for license on a royalty-free basis through a patent pool.  The patent pool agreement, however, required

4

companies like                    to agree to reciprocally license patents they owned to other members of the patent pool on a royalty-free basis.  Participants in the development of DOCSIS had created this licensing structure to avoid precisely the kind of patent hold-up that Rembrandt now threatens.  But,

This is not a case about the lawful enforcement of valid and enforceable patents.  This is a case about the acquisition by an NPE of patents                    and the NPE's scheme to portraying itself as a practicing entity to coerce an industry into yielding to its demands, thereby attaining the power to exclude competition through unlawful and unfair business practices.

Accordingly, Plaintiffs Motorola, Inc. ("Motorola"), Cisco Systems, Inc. ("Cisco"), Scientific-Atlanta, Inc. ("Scientific-Atlanta"), ARRIS Group, Inc. ("ARRIS"), Thomson, Inc. ("Thomson"), Ambit Microsystems, Inc. ("Ambit") and NETGEAR, Inc. ("NETGEAR")(collectively "Plaintiffs") -- the principal suppliers of DOCSIS industry standard cable modem equipment that Rembrandt has accused of infringement -- have filed this First Amended Complaint to stop Rembrandt's anticompetitive and unfair conduct and vindicate their products and their customers' lawful use of those products.  Accordingly, for their Complaint against Rembrandt, Plaintiffs hereby demand a jury trial and allege as follows:

## PARTIES

1. Plaintiff Ambit is a California corporation with its principal place of business at 9570 La Costa Lane, Lone Tree, CO 80124.

2. Plaintiff ARRIS is a Delaware corporation with its principal place of business at 3871 Lakefield Drive, Suwanee, GA, 30024.

3. Plaintiff Cisco is a California corporation with its principal place of business at 170 West Tasman Drive, San Jose, CA 95134.

4. Plaintiff Motorola is a Delaware corporation with its principal place of business at 1303 E. Algonquin Road, Schaumburg, IL 60196.

5. Plaintiff NETGEAR is a Delaware corporation with its principal place of business at 4500 Great America Parkway, Santa Clara, CA 95054.

6. Plaintiff Scientific-Atlanta is a wholly owned subsidiary of Plaintiff Cisco and is a Georgia corporation with its principal place of business at 5030 Sugarloaf Parkway, Lawrenceville, GA 30044-2869.

7. Plaintiff Thomson is a Delaware corporation with its principal place of business at 101 W. 103rd Street, INH 3340, Indianapolis, IN 46290.

8. On information and belief, defendant Rembrandt is a limited partnership organized and existing under the laws of New Jersey, with a principal place of business at 401 City Avenue, Suite 528, Bala Cynwyd, PA 19004. Rembrandt asserts that its business is enforcing and licensing patents. In carrying out its business of patent enforcement, Rembrandt has sued Cablevision Systems Corporation and CSC Holdings Inc., in C.A. No. 06-635-GMS. In that action, Rembrandt has asserted that "DOCSIS is a specification that describes the operational parameters of equipment that is used for cable networks. Rembrandt alleges that DOCSIS-

compliant equipment infringes the '631, '858, '819, and '903 patents."  Rembrandt purports to have obtained the patents at-issue in this action by purchasing them from Paradyne Corp., a Delaware corporation, and Zhone Communications.    Rembrandt has also filed patent infringement law suits on another patent in this forum, suing ABC Inc., CBS Corporation, NBC Universal, Fox Entertainment Group Inc. and Fox Broadcasting Company.  Those actions can be found as C.A. No. 06-727-GMS, C.A. No. 06-729-GMS, C.A. No. 06-730-GMS and C.A. No. 06-731-GMS. Rembrandt has also caused to be formed in Delaware a number of limited liability corporations, limited partnerships, limited liability limited partnerships and/or corporations.  On information and belief, Rembrandt has caused those entities to be formed to assist with its business of patent enforcement and licensing.

9.  On information and belief, defendant Rembrandt Technologies, LLC, a Delaware LLC, is wholly owned by Rembrandt and does business as "Remstream."  Remstream has its headquarters at 401 City Avenue, Suite 900, Bala Cynwyd, PA 19004.

## NATURE OF THE ACTION

10. In this action, Plaintiffs seek a declaratory judgment of patent noninfringement and invalidity of eight United States Patents pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and the Patent Laws of the United States, 35 U.S.C. § 100 *et seq.*, damages and an injunction for violations of the Sherman Act § 2, and restitution and an injunction for violations of § 17200 *et seq.* of the California Business and Professions Code, and such other relief as the Court deems just and proper.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this action under, and without limitation, 28 U.S.C. §§ 1331, 1337, 1338(a), 1367, 2201, and 2202, and the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*

12. Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b).

## RELATED ACTIONS

13. Pursuant to D. Del. LR 3.1(b), Plaintiffs state that this declaratory judgment action is related to the following actions (the "Related Actions"):

- *Rembrandt Technologies, LP v. Cablevision et al.*, C.A. No. 06-635-GMS;

- *Coxcom v. Rembrandt Technologies, LP*, C.A. No. 06-721-GMS;

- *Rembrandt Technologies, LP v. Adelphia Comm'n Corp., et al.*, C.A. No. 07-396-GMS;

- *Rembrandt Technologies, LP v. Adelphia Comm'n Corp., et al.*, C.A. No. 07-397-GMS;

- *Rembrandt Technologies, LP v. Comcast Corp. et al.*, C.A. No. 07-398-GMS;

- *Rembrandt Technologies, LP v. Charter Comm'n, Inc., et al.*, C.A. No. 07-400-GMS;

- *Rembrandt Technologies, LP v. Time Warner Cable, et al.*, C.A. No. 07-401-GMS;

- *Rembrandt Technologies, LP v. Time Warner Cable, et al.*, C.A. No. 07-402-GMS;

- *Rembrandt Technologies, LP v. Comcast Corp. et al.*, C.A. No. 07-403-GMS;

- *Rembrandt Technologies, LP v. Charter Comm'n, Inc., et al.*, C.A. No. 07-404-GMS;

- *In re Rembrandt Technologies, LP Patent Litigation*, C.A. No. 07-1848-GMS.

## THE PATENTS

14. U.S. Patent No. 4,937,819 ("the '819 patent") entitled "Time Orthogonal Multiple Virtual DCE for Use in Analog and Digital Networks" reports that it was filed on September 26, 1988 and issued on June 26, 1990. The inventor named on the '819 patent is Joseph B. King. A copy of the '819 patent is attached hereto as Exhibit A. As alleged herein, Plaintiffs deny that the patent duly and legally issued.

15. U.S. Patent No. 5,008,903 ("the '903 patent") entitled "Adaptive Transmit Pre-Emphasis for Digital Modem Computed from Noise Spectrum" reports that it was filed on May 25, 1989 and issued on April 16, 1991. The inventors named on the '903 patent are William L. Betts and James J. DesRosiers. A copy of the '903 patent is attached hereto as Exhibit B. As alleged herein, Plaintiffs deny that the patent duly and legally issued.

16. U.S. Patent No. 5,710,761 ("the '761 patent") entitled "Error Control Negotiation Based on Modulation" reports that it was filed on May 31, 1995 and issued on January 20, 1998. The inventor named on the '761 patent is Robert Earl Scott. A copy of the '761 patent is attached hereto as Exhibit C. As alleged herein, Plaintiffs deny that the patent duly and legally issued.

17. U.S. Patent No. 5,719,858 ("the '858 patent") entitled "Time-Division Multiple-Access Method for Packet Transmission on Shared Synchronous Serial Buses" reports that it was filed on July 31, 1995 and issued on February 17, 1998. The inventor named on the '858 patent is Wayne T. Moore. A copy of the '858 patent is attached hereto as Exhibit D. As alleged herein, Plaintiffs deny that the patent duly and legally issued.

9

18. U.S. Patent No. 5,778,234 ("the '234 patent") entitled "Method for Downloading Programs" reports that it was filed on July 24, 1997 and issued on July 7, 1998. The inventors named on the '234 patent are Gideon Hecht, Kurt Ervin Holmquist, and Donald C. Snoll. A copy of the '234 patent is attached hereto as Exhibit E. As alleged herein, Plaintiffs deny that the patent duly and legally issued.

19. U.S. Patent No. 5,852,631 ("the '631 patent") entitled "System and Method for Establishing Link Layer Parameters Based on Physical Layer Modulation" reports that it was filed on January 8, 1997 and issued on December 22, 1998. The inventor named on the '631 patent is Robert Earl Scott. A copy of the '631 patent is attached hereto as Exhibit F. As alleged herein, Plaintiffs deny that the patent duly and legally issued.

20. U.S. Patent No. 6,131,159 ("the '159 patent") entitled "System for Downloading Programs" reports that it was filed on May 8, 1992 and issued on October 10, 2000. The inventors named on the '159 patent are Gideon Hecht, Kurt Ervin Holmquist, and Donald C. Snoll. A copy of the '159 patent is attached as Exhibit G. As alleged herein, Plaintiffs deny that the patent duly and legally issued.

21. U.S. Patent No. 6,950,444 ("the '444 patent") entitled "System and Method for a Robust Preamble and Transmission Delimiting in a Switched-Carrier Transceiver" reports that it was filed on August 11, 2000 and issued on September 27, 2005. The inventors named on the '444 patent are Kurt Holmquist and Joseph Chapman. A copy of the '444 patent is attached as Exhibit H. As alleged herein, Plaintiffs deny that the patent duly and legally issued.

22. Rembrandt asserts (but Plaintiffs do not admit) that Rembrandt is the owner of all rights, title, and interest in and to the '819, '903, '761, '858, '234, '631, '159, and '444 patents (collectively, the "Patents"). Rembrandt did not invent the technology in the Patents.

Rembrandt also did not invent DOCSIS or contribute to the development of DOCSIS. Rembrandt purports to have obtained the Patents through an agreement with Paradyne Corporation. Paradyne Corporation did not invent DOCSIS. Paradyne Corporation did not participate in the creation of DOCSIS. Paradyne did not design, manufacture, or sell cable modems or cable modem termination systems. Rembrandt has contended in discovery responses in one or more of the MSO actions that Paradyne sold products in the United States that Rembrandt alleges to practice the Patents. Rembrandt has also admitted that Paradyne products sold in the United States were not marked with the Patents. Rembrandt is presently aware that Paradyne sold products in the United States that were not marked with the Patents and Rembrandt believes that those products practiced claims of the Patents.

## COUNT I
### (Declaratory Judgment Action for a Declaration
### of Noninfringement and Invalidity of U.S. Patent No. 4,937,819)

23. Paragraphs 1 through 22 are incorporated by reference as if stated fully herein.

24. Rembrandt has accused Cablevision Systems Corporation, Charter Communications Operating, LLC, Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast Corporation, Comcast of Plano, LP, Coxcom, Inc., CSC Holdings, Inc., Time Warner Cable Inc., Time Warner Cable LLC, Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner Entertainment Company, L.P. and Time Warner New York Cable LLC of infringing the '819 patent because of the operational parameters of the cable equipment that they purchase for their cable systems. Specifically, Rembrandt has alleged that DOCSIS is a specification that describes operational parameters of equipment that is used for cable networks. Rembrandt further asserts that DOCSIS-compliant cable modem ("CM") and cable modem termination system ("CMTS") equipment allegedly infringe the '819 patent. Plaintiffs manufacture and sell accused CM and/or CMTS equipment, and each of Plaintiffs has supplied

accused CM and/or CMTS equipment to one or more of the cable MSOs that Rembrandt has accused of infringement.

25. An actual and justiciable controversy exists between Plaintiffs and Rembrandt regarding the infringement and validity of the '819 patent.

26. Plaintiffs have not infringed (directly or indirectly) any valid, enforceable claim of the '819 patent, either literally or under the doctrine of equivalents.

27. The '819 patent is invalid because of its failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

28. A judicial declaration of noninfringement and invalidity is necessary and appropriate in order to resolve this controversy.

## COUNT II
### (Declaratory Judgment Action for a Declaration
### of Noninfringement and Invalidity of U.S. Patent No. 5,008,903)

29. Paragraphs 1 through 22 are incorporated by reference as if stated fully herein.

30. Rembrandt has accused Cablevision Systems Corporation, Charter Communications Operating, LLC, Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast Corporation, Comcast of Plano, LP, Coxcom, Inc., CSC Holdings, Inc., Time Warner Cable Inc., Time Warner Cable LLC, Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner Entertainment Company, L.P. and Time Warner New York Cable LLC of infringing the '903 patent because of the operational parameters of the cable equipment that they purchase for their cable systems. Specifically, Rembrandt has alleged that DOCSIS is a specification that describes operational parameters of equipment that is used for cable networks. Rembrandt further asserts that DOCSIS-compliant cable modem ("CM") and cable modem termination system ("CMTS") equipment allegedly infringe the '903 patent.    Plaintiffs manufacture and sell accused CM and/or CMTS equipment, and each of Plaintiffs has supplied

12

accused CM and/or CMTS equipment to one or more of the cable MSOs that Rembrandt has accused of infringement.

31. An actual and justiciable controversy exists between Plaintiffs and Rembrandt regarding the infringement and validity of the '903 patent.

32. Plaintiffs have not infringed (directly or indirectly) any valid, enforceable claim of the '903 patent, either literally or under the doctrine of equivalents.

33. The '903 patent is invalid because of its failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

34. A judicial declaration of noninfringement and invalidity is necessary and appropriate in order to resolve this controversy.

## COUNT III
### (Declaratory Judgment Action for a Declaration of Noninfringement and Invalidity of U.S. Patent No. 5,710,761)

35. Paragraphs 1 through 22 are incorporated by reference as if stated fully herein.

36. Rembrandt has accused Adelphia Communications Corporation, Century-TCI Distribution Company, LLC, Century-TCI California, LP, Century-TCI California Communications, LP, Century-TCI Holdings, LLC, Charter Communications Operating, LLC, Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast Corporation, Comcast of Plano, LP, Coxcom, Inc., Parnassos Communications, LP, Parnassos Distribution Company I, LLC, Parnassos Distribution Company II, LLC, Parnassos Holdings, LLC, Parnassos, LP, Time Warner Cable Inc., Time Warner Cable LLC, Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner Entertainment Company, L.P., Time Warner New York Cable LLC and Western NY Cablevision, LP of infringing the '761 patent because of the operational parameters of the cable equipment that they purchase for their cable systems. Specifically, Rembrandt has alleged that DOCSIS is a specification that describes operational

parameters of equipment that is used for cable networks. Rembrandt further asserts that DOCSIS-compliant cable modem ("CM") and cable modem termination system ("CMTS") equipment allegedly infringe the '761 patent. Plaintiffs manufacture and sell accused CM and/or CMTS equipment, and each of Plaintiffs has supplied accused CM and/or CMTS equipment to one or more of the cable MSOs that Rembrandt has accused of infringement.

37. An actual and justiciable controversy exists between Plaintiffs and Rembrandt regarding the infringement and validity of the '761 patent.

38. Plaintiffs have not infringed (directly or indirectly) any valid, enforceable claim of the '761 patent, either literally or under the doctrine of equivalents.

39. The '761 patent is invalid because of its failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

40. A judicial declaration of noninfringement and invalidity is necessary and appropriate in order to resolve this controversy.

## COUNT IV
### (Declaratory Judgment Action for a Declaration of Noninfringement and Invalidity of U.S. Patent No. 5,719,858)

41. Paragraphs 1 through 22 are incorporated by reference as if stated fully herein.

42. Rembrandt has accused Cablevision Systems Corporation, Charter Communications Operating, LLC, Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast Corporation, Comcast of Plano, LP, Coxcom, Inc., CSC Holdings, Inc., Time Warner Cable Inc., Time Warner Cable LLC, Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner Entertainment Company, L.P. and Time Warner New York Cable LLC of infringing the '858 patent because of the operational parameters of the cable equipment that they purchase for their cable systems. Specifically, Rembrandt has alleged that DOCSIS is a specification that describes operational parameters of equipment that is used for cable networks.

14

Rembrandt further asserts that DOCSIS-compliant cable modem ("CM") and cable modem termination system ("CMTS") equipment allegedly infringe the '858 patent. Plaintiffs manufacture and sell accused CM and/or CMTS equipment, and each of Plaintiffs has supplied accused CM and/or CMTS equipment to one or more of the cable MSOs that Rembrandt has accused of infringement.

43. An actual and justiciable controversy exists between Plaintiffs and Rembrandt regarding the infringement and validity of the '858 patent.

44. Plaintiffs have not infringed (directly or indirectly) any valid, enforceable claim of the '858 patent, either literally or under the doctrine of equivalents.

45. The '858 patent is invalid because of its failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

46. A judicial declaration of noninfringement and invalidity is necessary and appropriate in order to resolve this controversy.

## COUNT V
### (Declaratory Judgment Action for a Declaration
### of Noninfringement and Invalidity of U.S. Patent No. 5,778,234)

47. Paragraphs 1 through 22 are incorporated by reference as if stated fully herein.

48. Rembrandt has accused Adelphia Communications Corporation, Century-TCI Distribution Company, LLC, Century-TCI California, LP, Century-TCI California Communications, LP, Century-TCI Holdings, LLC, Charter Communications Operating, LLC, Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast Corporation, Comcast of Plano, LP, Coxcom, Inc., Parnassos Communications, LP, Parnassos Distribution Company I, LLC, Parnassos Distribution Company II, LLC, Parnassos Holdings, LLC, Parnassos, LP, Time Warner Cable Inc., Time Warner Cable LLC, Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner Entertainment Company, L.P., Time Warner New

York Cable LLC and Western NY Cablevision, LP of infringing the '234 patent because of the operational parameters of the cable equipment that they purchase for their cable systems. Specifically, Rembrandt has alleged that DOCSIS is a specification that describes operational parameters of equipment that is used for cable networks. Rembrandt further asserts that DOCSIS-compliant cable modem ("CM") and cable modem termination system ("CMTS") equipment allegedly infringe the '234 patent. Plaintiffs manufacture and sell accused CM and/or CMTS equipment, and each of Plaintiffs has supplied accused CM and/or CMTS equipment to one or more of the cable MSOs that Rembrandt has accused of infringement.

49. An actual and justiciable controversy exists between Plaintiffs and Rembrandt regarding the infringement and validity of the '234 patent.

50. Plaintiffs have not infringed (directly or indirectly) any valid, enforceable claim of the '234 patent, either literally or under the doctrine of equivalents.

51. The '234 patent is invalid because of its failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

52. A judicial declaration of noninfringement and invalidity is necessary and appropriate in order to resolve this controversy.

## COUNT VI
### (Declaratory Judgment Action for a Declaration of Noninfringement and Invalidity of U.S. Patent No. 5,852,631)

53. Paragraphs 1 through 22 are incorporated by reference as if stated fully herein.

54. Rembrandt has accused Cablevision Systems Corporation, Charter Communications Operating, LLC, Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast Corporation, Comcast of Plano, LP, Coxcom, Inc., CSC Holdings, Inc., Time Warner Cable Inc., Time Warner Cable LLC, Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner Entertainment Company, L.P. and Time Warner New York Cable

16

LLC of infringing the '631 patent because of the operational parameters of the cable equipment that they purchase for their cable systems. Specifically, Rembrandt has alleged that DOCSIS is a specification that describes operational parameters of equipment that is used for cable networks. Rembrandt further asserts that DOCSIS-compliant cable modem ("CM") and cable modem termination system ("CMTS") equipment allegedly infringe the '631 patent. Plaintiffs manufacture and sell accused CM and/or CMTS equipment, and each of the Plaintiffs has supplied accused CM and/or CMTS equipment to one or more of the cable MSOs that Rembrandt has accused of infringement.

55. An actual and justiciable controversy exists between Plaintiffs and Rembrandt regarding the infringement and validity of the '631 patent.

56. Plaintiffs have not infringed (directly or indirectly) any valid, enforceable claim of the '631 patent, either literally or under the doctrine of equivalents.

57. The '631 patent is invalid because of its failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

58. A judicial declaration of noninfringement and invalidity is necessary and appropriate in order to resolve this controversy.

## COUNT VII
### (Declaratory Judgment Action for a Declaration of Noninfringement and Invalidity of U.S. Patent No. 6,131,159)

59. Paragraphs 1 through 22 are incorporated by reference as if stated fully herein.

60. Rembrandt has accused Adelphia Communications Corporation, Century-TCI Distribution Company, LLC, Century-TCI California, LP, Century-TCI California Communications, LP, Century-TCI Holdings, LLC, Charter Communications Operating, LLC, Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast Corporation, Comcast of Plano, LP, Coxcom, Inc., Parnassos Communications, LP, Parnassos Distribution

Company I, LLC, Parnassos Distribution Company II, LLC, Parnassos Holdings, LLC, Parnassos, LP, Time Warner Cable Inc., Time Warner Cable LLC, Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner Entertainment Company, L.P., Time Warner New York Cable LLC and Western NY Cablevision, LP of infringing the '159 patent because of the operational parameters of the cable equipment that they purchase for their cable systems. Specifically, Rembrandt has alleged that DOCSIS is a specification that describes operational parameters of equipment that is used for cable networks. Rembrandt further asserts that DOCSIS-compliant cable modem ("CM") and cable modem termination system ("CMTS") equipment allegedly infringe the '159 patent. Plaintiffs manufacture and sell accused CM and/or CMTS equipment, and each of Plaintiffs has supplied accused CM and/or CMTS equipment to one or more of the cable MSOs that Rembrandt has accused of infringement.

61. An actual and justiciable controversy exists between Plaintiffs and Rembrandt regarding the infringement of the '159 patent.

62. Plaintiffs have not infringed (directly or indirectly) any valid, enforceable claim of the '159 patent, either literally or under the doctrine of equivalents.

63. The '159 patent is invalid because of its failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

64. A judicial declaration of noninfringement and invalidity is necessary and appropriate in order to resolve this controversy.

### COUNT VIII
### (Declaratory Judgment Action for a Declaration of Noninfringement and Invalidity of U.S. Patent No. 6,950,444)

65. Paragraphs 1 through 22 are incorporated by reference as if stated fully herein.

66. Rembrandt has accused Adelphia Communications Corporation, Century-TCI Distribution Company, LLC, Century-TCI California, LP, Century-TCI California

Communications, LP, Century-TCI Holdings, LLC, Charter Communications Operating, LLC, Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast Corporation, Comcast of Plano, LP, Coxcom, Inc., Parnassos Communications, LP, Parnassos Distribution Company I, LLC, Parnassos Distribution Company II, LLC, Parnassos Holdings, LLC, Parnassos, LP, Time Warner Cable Inc., Time Warner Cable LLC, Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner Entertainment Company, L.P., Time Warner New York Cable LLC and Western NY Cablevision, LP of infringing the '444 patent because of the operational parameters of the cable equipment that they purchase for their cable systems. Specifically, Rembrandt has alleged that DOCSIS is a specification that describes operational parameters of equipment that is used for cable networks. Rembrandt further asserts that DOCSIS-compliant cable modem ("CM") and cable modem termination system ("CMTS") equipment allegedly infringe the '444 patent. Plaintiffs manufacture and sell accused CM and/or CMTS equipment, and each of Plaintiffs has supplied accused CM and/or CMTS equipment to one or more of the cable MSOs that Rembrandt has accused of infringement.

67. An actual and justiciable controversy exists between Plaintiffs and Rembrandt regarding the infringement and validity of the '444 patent.

68. Plaintiffs have not infringed (directly or indirectly) any valid, enforceable claim of the '444 patent, either literally or under the doctrine of equivalents.

69. The '444 patent is invalid because of its failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

70. A judicial declaration of noninfringement and invalidity is necessary and appropriate in order to resolve this controversy.

## COUNT IX
### (Declaratory Judgment Action for a Declaration
### of Patent Unenforceability Due to Inequitable Conduct)

71. Paragraphs 1 through 22 are incorporated by reference as if stated fully herein.

72. An actual and justiciable controversy exists between Plaintiffs and Defendants regarding the enforceability of the '819, '903, '761, '858, '234, '631, '159, and '444 patents (the "Fraudulently Obtained Patents").

73. Individuals subject to the duty of candor under 37 C.F.R. 1.56 ("Applicants"), including named inventors in the applications referenced below and employees with substantive involvement in the filing and/or prosecution of patent applications for Paradyne entities, engaged in inequitable conduct by engaging in a pattern and practice of withholding or misstating material information with intent to deceive the United States Patent & Trademark Office ("USPTO") in connection with patent prosecution of the Fraudulently Obtained Patents. On multiple occasions, Applicants failed to disclose their own previously issued patents that comprised material prior art, failed to disclose material information regarding their own co-pending applications for patents, failed to disclose prior art that was known to them through the prosecution of their own patents and applications, and failed to disclose their own systems that implemented undisclosed, material prior art and that were on-sale prior to the relevant critical dates. In addition to nondisclosure, Applicants in the prosecution chain of the '159 and '234 patents provided affirmative misstatements as set forth below. Accordingly, Applicants engaged in an overall pattern and practice of repeatedly and continuously failing to disclose to the USPTO material information of which Applicants were indisputably aware. The permeation and continuation of this misconduct throughout prosecution of multiple patent applications confirms that Applicants acted with deceptive intent rendering the patents unenforceable. Further, the doctrine of infectious unenforceability renders related patents unenforceable.

20

74. More specifically, during prosecution of the '761 patent, Applicants engaged in inequitable conduct before the USPTO, rendering the '761 patent unenforceable by withholding and failing to disclose material information with intent to deceive including the following acts:

(i)     By way of example, MPEP § 2001.06(b) states that "there is a duty to bring to the attention of the examiner, or other Office official involved with the examination of a particular application, information within their knowledge as to other co-pending United States applications which are 'material to patentability' of the application in question." The MPEP cites to caselaw providing that "[W]e think that it is unfair to the busy examiner, no matter how diligent and well informed he may be, to assume that he retains details of every pending file in his mind when he is reviewing a particular application . . . [T]he applicant has the burden of presenting the examiner with a complete and accurate record to support the allowance of letters patent." The MPEP provides express examples of material information as to other co-pending applications, stating "[f]or example, if a particular inventor has different applications pending in which similar subject matter but patentably indistinct claims are present that fact must be disclosed to the examiner of each of the involved applications. Similarly, the prior art references from one application must be made of record in another subsequent application if such prior art references are 'material to patentability' of the subsequent application."

(ii)    Notwithstanding these clear obligations, during prosecution, Applicants repeatedly failed to disclose material information within their knowledge as to co-pending applications of which they were aware. One or more Applicants were

21

aware of and failed to disclose, without limitation, co-pending application 08/780,762 (now the '631 patent, which is now commonly asserted here along with the '761 patent), as well as Application Nos. 08/781,787, now issued as U.S. Patent No. 5,751,796 ("Rapid Startup Protocol For Communication Between a Plurality of Modems"), to Scott and Zuranski, 08/781,067 now issued as U.S. Patent No. 5,796,808 ("System and Method for Automatically Selecting the Mode of Communication between a Plurality of Modems"), to Scott and Lastinger Jr., 08/780,238, now issued as U.S. Patent No. 5,787,363 ("System and Method for Connect Message Synchronization of Modems in a Cellular Data Gateway"), to Scott and Lastinger Jr., 08/457,881, now issued as U.S. Patent No. 5,793,809 ("Transparent Technique for Mu-Law Modems to Detect an All-Digital Circuit Connection"), to Holmquist, 08/912,126, now issued as U.S. Patent No. 6,081,556 ("Transparent Technique for Mu-Law Modems to Detect an All-Digital Circuit Connection"), to Holmquist, and 08/978,536, now issued as U.S. Patent No. 5,349,635 ("Half-Duplex or Full-Duplex Automode Operation for use in Data Communications Equipment"), to Scott (the "'761 Co-Pending Applications"). The Applicants for the '761 patent failed to identify any of these co-pending applications or their claims to the examiner in the prosecution of the '761 patent. These applications were never disclosed on any IDS that was submitted in the '761 patent or otherwise made of record in the '761 patent. Information relating to the '761 Co-Pending Applications and their claims was material to patentability. One or more Applicants were aware of the '761 Co-Pending Applications. Four of the '761 Co-Pending Applications include Robert Scott as a named inventor,

22

and in the case of the '761 and '631 patents, he is the sole named inventor on both. Robert Scott was aware of the co-pendency of his applications. In addition, on information and belief, a reasonable opportunity for discovery will show that Paradyne personnel were substantively involved in the filing or prosecution of the '761 patent and were aware of the '761 Co-Pending Applications. Material information relating to the '761 Co-Pending Applications was withheld with intent to deceive the USPTO as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

(iii)   Further, Applicants failed to disclose in prosecution of the '761 patent, the prior art of record from the '761 Co-Pending Applications, including without limitation U.S. Patent Nos. 4,905,282 ("Feature Negotiation Protocol and Dynamically Adjustable Retraining Sequence for a High Speed Half Duplex Modem"), to McGlynn and Nash ("McGlynn"), 5,425,080 ("Transaction Terminal Apparatus and Method Using Host Dial String Control of Modem Connect Protocols"), to Abbie ("Abbie"), 4,931,250 ("Multimode Modem"), to Greszczuk ("Greszczuk"), 5,491,720 ("Method and System for Automatically Determining Data Communication Device Type and Corresponding Transmission Rate"), to Davis, Linger, Mandalia, Sinibaldi, Zevin, and Ziegenhain ("Davis"), 5,311,578 ("Technique for Automatic Identification of a Remote Modem"), to Bremer ("'578 Bremer et al."), 5,317,594 ("Systems for and Method of Identifying V.Fast Modem Within Existing Automatic Interworking Procedure Standards"), to Goldstein ("Goldstein"), 5,528,679 ("Automatic Detection of Digital Call Paths in a Telephone System"), to Taarud ("Taarud"), 4,680,773 ("Data

Telecommunications System"), to Amundson ("Amundson"), and 4,782,498 ("Modem with Improved Handshaking Capability"), to Copeland, III ("Copeland") (the "'761 Co-Pending Art"). The '761 Co-Pending Art was material to the patentability of the '761 patent. Applicants for the '761 patent failed to identify any '761 Co-Pending Art to the examiner in the prosecution of the '761 patent. For example, McGlynn, Abbie, Greszczuk, Davis and Goldstein were each cited by the Examiner of the '631 patent in a Detailed Office Action and accompanying Notice of References Cited mailed on 9/12/97. Further, Greszczuk was cited in the 08/781,067 application on an IDS submitted on August 12, 1997, and in the 08/781,787 application on an IDS submitted October 6, 1997. The '761 patent was still pending and did not issue until January 20, 1998. One or more Applicants were aware of the '761 Co-Pending Art. Robert Scott is the same and only named inventor on both the '631 and the '761 patents. In addition, on information and belief, a reasonable opportunity for discovery will show that Paradyne personnel substantively involved in the filing or prosecution of the '761 patent were aware of the '761 Co-Pending Art, as well as U.S. Patent Nos. 5,600,712 ("Enabling Technique for Quickly Establishing High Speed PSTN Connections In Telecommuting Applications"), to Hanson, 5,577,105 ("Telephone Call Routing and Switching Techniques for Data Communications"), to Baum, 5,127,041 ("System and Method for Interfacing Computers to Diverse Telephone Networks"), to O'Sullivan, and Weissman, et al., "Interoperable Wireless Data," IEEE Communications Magazine, vol. 31, No. 2, pp. 68-77. In fact, while the '761 patent remained co-pending, Applicants attempted to

distinguish prior art of record in the '631 patent, including transmitting a First Response with Amendments on October 23, 1997. Notwithstanding the October 23, 1997 response, the USPTO issued a Detailed Action rejecting the claims in the '631 patent based upon prior art to McGlynn in an office action dated November 18, 1997, while the application for the '761 patent remained co-pending, and Applicants nevertheless failed to disclose McGlynn in prosecution of the '761 patent. Further, Applicants for the '761 patent failed to disclose in prosecuting the '761 patent the office actions and responses from the co-pending '631 patent and the prior art of record referenced in those office actions and responses. The undisclosed information described herein was material to patentability of the '761 patent. The undisclosed information described herein was material to patentability of the '761 patent and was withheld with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

75. Additional instances of misconduct occurred in prosecution of the '631 patent, where Applicants engaged in inequitable conduct before the USPTO rendering the patent unenforceable by withholding and failing to disclose material information with intent to deceive including the following acts:

(i)     By way of example, MPEP § 2001.06(b) states that "there is a duty to bring to the attention of the examiner, or other Office official involved with the examination of a particular application, information within their knowledge as to other co-pending United States applications which are 'material to patentability' of the application in question." The MPEP cites to caselaw providing that "[W]e think

25

that it is unfair to the busy examiner, no matter how diligent and well informed he may be, to assume that he retains details of every pending file in his mind when he is reviewing a particular application . . . [T]he applicant has the burden of presenting the examiner with a complete and accurate record to support the allowance of letters patent." The MPEP provides express examples of material information as to other co-pending applications, stating "[f]or example, if a particular inventor has different applications pending in which similar subject matter but patentably indistinct claims are present that fact must be disclosed to the examiner of each of the involved applications. Similarly, the prior art references from one application must be made of record in another subsequent application if such prior art references are 'material to patentability' of the subsequent application."

(ii)  Notwithstanding these clear obligations, during prosecution, Applicants repeatedly failed to disclose information within their knowledge as to co-pending applications of which they were aware, including without limitation co-pending application 08/458,048 (now the '761 patent, which is now commonly asserted here along with the '631 patent), as well as Application Nos. 08/781,787, now issued as U.S. Patent No. 5,751,796 ("Rapid Startup Protocol For Communication Between a Plurality of Modems") to Scott and Zuranski, 08/781,067 now issued as U.S. Patent No. 5,796,808 ("System and Method for Automatically Selecting the Mode of Communication between a Plurality of Modems"), to Scott and Lastinger Jr., 08/780,238, now issued as U.S. Patent No. 5,787,363 ("System and Method for Connect Message Synchronization of Modems in a Cellular Data

26

Gateway"), to Scott and Lastinger Jr., 08/457,881, now issued as U.S. Patent 5,793,809 ("Transparent Technique for Mu-Law Modems to Detect an All-Digital Circuit Connection"), to Holmquist, and 08/912,126, now issued as U.S. Patent No. 6,081,556 ("Transparent Technique for Mu-Law Modems to Detect an All-Digital Circuit Connection"), to Holmquist (the "'631 Co-Pending Applications."). Applicants for the '631 patent failed to identify any of these co-pending applications or their claims to the examiner in the prosecution of the '631 patent. These applications are never disclosed on an IDS that was submitted in the '631 patent or otherwise made of record in the '631 patent. One or more Applicants were aware of the '631 Co-Pending Applications during prosecution of the '631 patent. Three of the '631 Co-Pending Applications include Robert Scott as a named inventor and claim priority to the same provisional applications for which priority is claimed by the '631 patent. In addition, on information and belief a reasonable opportunity for discovery will show that further Paradyne personnel were substantively involved in the filing or prosecution of the '631 patent and were aware of the '631 Co-Pending Applications. The information relating to the '631 Co-Pending Applications was material to the patentability of the '631 Patent and was withheld with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

(iii)    Further, Applicants failed to disclose in prosecution of the '631 patent, the prior art of record from the '631 Co-Pending Applications, including without limitation U.S. Patent Nos. 5,550,881 ("Automatic Modulation Mode Selecting Unit and Method for Modems"), to Sridhar and Sheer ("Sridhar"), '578 Bremer et al.

27

("Bremer"), 5,430,793 ("Apparatus and Method for Configuring a Computer System and a Modem for use in a Particular Country"), to Ueltzen, Mahan, and Horn ("Ueltzen"), 4,715,044 ("Automatic Synchronous/Asynchronous Modem"), to Gartner ("Gartner"), and 5,528,679 ("Automatic Detection of Digital Call Paths in a Telephone System"), to Taarud ("Taarud") (the "'631 Co-Pending Art"). The Applicants did not disclose the '631 Co-Pending Art during prosecution of the '631 patent. Applicants were aware of the '631 Co-Pending Art during prosecution of the '631 patent. Robert Scott is the same and only named inventor on both the '631 and the '761 patents. In addition, on information and belief a reasonable opportunity for discovery will show that further Paradyne personnel substantively involved in the filing or prosecution of the '631 patent were aware of the '631 Co-Pending Art, as well as U.S. Patent Nos. 5,349,635 ("Half-Duplex or Full-Duplex Automode Operation for use in Data Communications Equipment"), to Scott, 5,600,712 ("Enabling Technique for Quickly Establishing High Speed PSTN Connections In Telecommuting Applications"), to Hanson, 5,577,105 ("Telephone Call Routing and Switching Techniques for Data Communications"), to Baum, 5,127,041 ("System and Method for Interfacing Computers to Diverse Telephone Networks"), to O'Sullivan, 4,680,773 ("Data Telecommunications System"), to Amundson ("Amundson"), and 4,782,498 ("Modem with Improved Handshaking Capability"), to Copeland, III ("Copeland"), and Weissman, et al., "Interoperable Wireless Data," IEEE Communications Magazine, vol. 31, No. 2, pp. 68-77. For example, Sridhar et al. was cited by the Examiner of the '761 patent and used for claim rejections in a

Detailed Office Action and accompanying Notice of References Cited dated December 26, 1996. Similarly, Ueltzen was "considered pertinent to applicant's disclosure" in that same Detailed Office Action. The '631 and '761 patent were co-pending on December 26, 1996, and the '631 patent did not issue until December 22, 1998. While the '631 patent remained co-pending, Applicants attempted to distinguish prior art of record in the '761 patent in a Response and Amendment transmitted March 31, 1997. Applicants for the '631 patent failed to disclose in prosecuting the '631 patent, the December 26, 1996 office action and the March 31, 1997 response from the co-pending '761 patent or the prior art of record referenced in those communications. The '631 Co-Pending Art and information described in this paragraph was material to patentability of the '631 patent. The '631 Co-Pending Art and information described in this paragraph was withheld with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count. In addition, on information and belief, a reasonable opportunity for discovery will show that Robert Scott was improperly listed as sole inventor of the '631 patent with deceptive intent to defraud the USPTO into issuing the '631 patent over the '761 patent.

76. Additional instances of misconduct occurred in prosecution of the '903 patent, where Applicants engaged in inequitable conduct before the USPTO rendering the patent unenforceable by withholding and failing to disclose material information with intent to deceive including the following acts:

(i)     The application for the '903 patent was filed on May 25, 1989, issued April 16,

1991, and named Betts and DesRosiers as inventors. One or more Applicants was

aware of and failed to disclose in prosecution of the '903 patent the following

prior art: U.S. Patent Nos. 4,771,232 ("Non-interruptive Spectrum Analyzer for

Digital Modems"), to Betts and Zuranski, 4,555,790 ("Digital Modem Having A

Monitor For Signal-To-Noise Ratio"), to Betts and Martinez, 4,811,357

("Secondary Channel for Digital Modems Using Spread Spectrum Subliminal

Induced Modulation"), to Betts and Zuranski, 4,833,690 ("Remote Eye Pattern

Display For Digital Modems"), to Betts, Zuranski, Springer, and Balka, 4,639,934

("Line Impairment Display for Digital Modems"), to Betts, Scott and Zuranski,

4,646,325 ("Index Decoder for Digital Modems"), to Zuranski and Martinez,

3,889,108 ("Adaptive Low Pass Filter"), to Cantrell, 4,669,090 ("Half-Duplex

Modem without Turnaround Delay"), to Betts and Martinez, 4,744,092

("Transparent Error Detection in Half Duplex Modems"), to Betts and Martinez,

4,532,640 ("Phase Tracking Loop for Digital Modem"), to Bremer, Betts, and

Martinez, 4,796,279 ("Substrate Preamble Decoder For A High Speed Modem"),

to Betts and Martinez (collectively, the "'903 Undisclosed References"). One or

more Applicants was aware of the '903 Undisclosed References during

prosecution of the '903 patent. For example, Betts is a named inventor in multiple

'903 Undisclosed References. In addition, on information and belief a reasonable

opportunity for discovery will show that Paradyne personnel substantively

involved in the filing or prosecution of the '903 patent were aware of the '903

Undisclosed References. The '903 Undisclosed References were not disclosed to

the USPTO in prosecution of the '903 patent. The '903 Undisclosed References were material to patentability of the '903 patent. The '903 Undisclosed References were withheld with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count. In addition, on information and belief, a reasonable opportunity for discovery will show that one or more Applicants was aware of the 3,978,407 ("Fast Start-Up Adaptive Equalizer Communication System Using Two Data Transmission Rates"), to Forney and Hart (the "'407 patent"), a patent issued to a competitor of Paradyne. The '407 patent was material to patentability. On information and belief, a reasonable opportunity for discovery will show that the '407 patent was withheld with intent to deceive in light of the overall pattern and practice of nondisclosure.

77. Additional instances of misconduct occurred in prosecution of the '444 patent, where Applicants engaged in inequitable conduct before the USPTO rendering the patent unenforceable by withholding and failing to disclose material information with intent to deceive including the following acts:

(i) By way of example, MPEP § 2001.06(b) states that "there is a duty to bring to the attention of the examiner, or other Office official involved with the examination of a particular application, information within their knowledge as to other co-pending United States applications which are 'material to patentability' of the application in question." The MPEP cites to caselaw providing that "[W]e think that it is unfair to the busy examiner, no matter how diligent and well informed he may be, to assume that he retains details of every pending file in his mind when

31

he is reviewing a particular application . . . [T]he applicant has the burden of presenting the examiner with a complete and accurate record to support the allowance of letters patent." The MPEP provides express examples of material information as to other co-pending applications, stating "[f]or example, if a particular inventor has different applications pending in which similar subject matter but patentably indistinct claims are present that fact must be disclosed to the examiner of each of the involved applications. Similarly, the prior art references from one application must be made of record in another subsequent application if such prior art references are 'material to patentability' of the subsequent application."

(ii)    Notwithstanding these clear obligations, during prosecution, Applicants repeatedly failed to disclose information within their knowledge as to co-pending applications of which they were aware, including without limitation co-pending Application No. 8/980,996 (the "Co-Pending '996 Application"). The Co-Pending '996 Application, which subsequently issued as U.S. Patent 6,414,964 ("Method and Apparatus for Performing a Multipoint Polling Protocol which Employs Silence Intervals for Controlling Circuit Operation"), and names Holmquist and Betts as inventors, and was filed on December 1, 1997 and issued on July 2, 2002. The application for the '444 patent was filed on August 11, 2000, and issued September 27, 2005, and named Holmquist and Chapman as inventors. In addition, Applicants failed to disclose in the prosecution of the '444, material prior art of record from the Co-Pending '996 Application, including without limitation U.S. Patent No. 5,677,909 ("Apparatus For Exchanging Data Between

A Central Station And A Plurality of Wireless Remote Stations On A Time Divided Channel"), issued to Heide. One or more Applicants was aware of the above-referenced information during prosecution of the '444 patent. The undisclosed information referenced in this paragraph was material to patentability of the '444 patent. Applicants failed to disclose this material information relating to this co-pending application with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

(iii)    By way of further example, Application 09/307,454 filed May 7, 1999 for a "System and Method For Transmitting Special Marker Symbol" (subsequently issued as U.S. Patent No. 6,487,244) and Application No. 08/979,455, subsequently issued as U.S. Patent No. 6,137,829 (the "'444 Co-Pending '454 and '455 Applications"), were also co-pending with the '444 patent. The '444 Co-Pending '454 and '455 Applications of Betts comprised prior art to the '444 Patent and were not disclosed to the USPTO in prosecution of the '444 Patent. One or more Applicants was aware of the '444 Co-Pending '454 and '455 Applications during prosecution of the '444 patent. The '444 Co-Pending '454 and '455 applications were material to patentability of the '444 patent and withheld with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

(iv)    By way of further example, during prosecution of the '444 patent application, Applicants repeatedly failed to disclose information within their knowledge as to material prior art of which they were aware, including without limitation

33

5,506,866 ("Side-Channel Communications In Simultaneous Voice and Data Transmission"), to Bremer, Holmquist, Ko, and Sonders, 5,475,691 ("Voice Activated Data Rate Change in Simultaneous Voice and Data Transmission"), to Chapman and Holmquist, 5,369,703 ("Command and Control Signalling Method and Apparatus"), to Archibald, Davis, and Holmquist, and 4,864,617 ("System and Method for Reducing Deadlock Conditions Caused By Repeated Transmission of Data Sequences Equivalent to Those Used for Inter-Device Signalling"), to Holmquist.

(v)     In addition, on information and belief, a reasonable opportunity for discovery will show that one or more Applicants was aware of U.S. Patent Nos. 3,978,407 ("Fast Start-Up Adaptive Equalizer Communication System Using Two Data Transmission Rates"), to Forney and Hart, 4,796,279 ("Substrate Preamble Decoder For A High Speed Modem"), to Betts and Martinez, and 5,912,895 ("Information Network Access Apparatus and Methods for Communicating Information Packets Via Telephone Lines"), to Terry and Richards.  Applicants failed to disclose these patents to the USPTO in prosecution of the '444 patent. These references were material to patentability of the '444 patent.  On information and belief, a reasonable opportunity for discovery will show that Applicants knew of and withheld them with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

(vi)    In addition, on information and belief a reasonable opportunity for discovery will show that Paradyne offered for sale MVL technology more than one year before applying for the '444 patent, that was material to the '444 patent, but failed to

34

disclose those sales as prior art to the USPTO. The withheld information was material to patentability and, on information and belief a reasonable opportunity for discovery will show that this information was withheld with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

78. Additional instances of misconduct occurred during prosecution of the '159 patent, where Applicants engaged in inequitable conduct before the USPTO rendering the patent unenforceable by omitting and misstating material information with intent to deceive including the following acts:

(i)    In prosecution of the '159 patent, the USPTO repeatedly rejected pending claims due to prior art, including without limitation references to Lang and Mori. In response to these and other rejections, Applicants represented that claims required and that they had invented a system that included a "displacement multibit memory address." However, Applicants lacked support for the invention as represented to the USPTO. Applicants misstated and omitted this material information with intent to deceive the USPTO into issuing the claims. These material misstatements and omissions were made with intent to deceive, as further confirmed by the pattern and practice of inequitable conduct alleged throughout this Count. Further, the '234 patent is a divisional of the '159 patent, refers back to acts occurring in prosecution of the '159 patent, and is infected by the unenforceability associated with the '159 patent.

(ii)   In addition, on information and belief, a reasonable opportunity for discovery will show that the Applicants offered the invention on-sale or placed it in public use

more than one year before the application date, and applicants withheld this information which was material to patentability with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

79. Additional instances of misconduct occurred in prosecution of the '858 patent, Applicants engaged in inequitable conduct before the USPTO rendering the patent unenforceable by withholding and failing to disclose material information with intent to deceive including the following acts:

(i)    By way of example, MPEP § 2001.06(b) states that "there is a duty to bring to the attention of the examiner, or other Office official involved with the examination of a particular application, information within their knowledge as to other co-pending United States applications which are 'material to patentability' of the application in question." The MPEP cites to caselaw providing that " [W]e think that it is unfair to the busy examiner, no matter how diligent and well informed he may be, to assume that he retains details of every pending file in his mind when he is reviewing a particular application . . . [T]he applicant has the burden of presenting the examiner with a complete and accurate record to support the allowance of letters patent." The MPEP provides express examples of material information as to other co-pending applications, stating "[f]or example, if a particular inventor has different applications pending in which similar subject matter but patentably indistinct claims are present that fact must be disclosed to the examiner of each of the involved applications. Similarly, the prior art references from one application must be made of record in another subsequent

36

application if such prior art references are 'material to patentability' of the subsequent application."

(ii)  Notwithstanding these clear obligations, during prosecution, Applicants failed to disclose information as to co-pending applications including without limitation Application Nos. 08/607,912, now issued as U.S. Patent No. 5,754,799 ("System and Method for Bus Contention Resolution"), to Hiles, 08/608,378 now issued as 5,768,543 ("Slot-Token Protocol"), to Hiles, and 08/947,279, now issued as 6,108,347 ("Non-Polled Dynamic Slot Time Allocation Protocol") to Holmquist, (the "'858 Co-Pending Applications."). The Applicants for the '858 patent failed to identify any of these co-pending applications or their claims to the examiner in the prosecution of the '858 patent. On information and belief, a reasonable opportunity for discovery will show that Applicants were aware of the '858 Co-Pending Applications during prosecution of the '858 patent. These co-pending applications and their claims were material to the patentability. On information and belief, a reasonable opportunity for discovery will show that this undisclosed information was withheld with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

(iii)  Further, Applicants failed to disclose in prosecution of the '858 patent, the material prior art of record from the '858 Co-Pending Applications, including without limitation U.S. Patent Nos. 4,608,700 ("Serial Multi-Drop Data Link"), to Kirtley, Sterling, and Williams, and 5,398,243 ("Arbitration Method and Bus for Serial Data Transmission"), to Aguilhon, Doucet, and Karcher (the "'858 Co-

37

Pending Art"). The Applicants did not disclose the '858 Co-Pending Art during prosecution of the '858 patent. On information and belief, a reasonable opportunity for discovery will show that one or more Applicants was aware of the '858 Co-Pending Art during prosecution of the '858 patent. This undisclosed information was material to patentability of the '858 patent. On information and belief, a reasonable opportunity for discovery will show this information was withheld with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

(iv)    In addition, one or more Applicants was aware of U.S. Patent No. 4,797,815 ("Interleaved Synchronous Bus Access Protocol for a Shared Memory Multi-Processor System"), to Moore (the same inventor as the '858), and, on information and belief, a reasonable opportunity for discovery will show one or more Applicants was aware of U.S. Patent Nos. 3,997,896 ("Data Processing System Providing Split Bus Cycle Operation"), to Cassarino, Jr., Bekampis, Conway, and Lemay, 4,181,974 ("System Providing Multiple Outstanding Information Requests"), to Lemay and Curley, and 4,669,056 ("Data Processing System with a Plurality of Processors Accessing a Common Bus to Interleaved Storage"), to Waldecker and Wright. Applicants failed to disclose these patents to the USPTO in prosecution of the '858 patent. These reference were material to patentability of the '858 patent and on information and belief a reasonable opportunity for discovery will show that Applicants knew of and withheld them with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

38

(v)    Further, in the prosecution of the '858 patent, the Applicants failed to disclose the previously issued '819 patent also assigned to Paradyne. In light of Defendants' allegations in this matter, the '819 patent was material to the '858 patent. On information and belief, a reasonable opportunity for discovery will show that one or more Applicants was aware of the '819 patent and Applicants' nondisclosure of the '819 patent, in light of the pattern and practice alleged throughout this Count, occurred with the requisite intent to deceive the USPTO into issuing the '858 patent.

80. Additional instances of misconduct occurred in prosecution of the '819 patent, where Applicants failed to disclose previously issued and material prior art U.S. Patent No. 4,630,286 ("Device for Synchronization of Multiple Telephone Circuits"), assigned to Paradyne Corporation. On information and belief, a reasonable opportunity for discovery will show that one or more Applicants was aware of this undisclosed reference during prosecution and that Applicants' nondisclosure of the 4,630,286 patent, in light of the pattern and practice alleged throughout this Count, occurred with the requisite intent to deceive the USPTO into issuing the '819 patent.

## COUNT X
### (Declaratory Judgment Action for a Declaration of Unclean Hands)

81. Paragraphs 1 through 80 are incorporated by reference as if stated fully herein.

82. Rembrandt's claims are barred by unclean hands. Rembrandt asserts the patents identified in Courts I through VIII despite its awareness of the nondisclosures described in the inequitable conduct allegations. Rembrandt asserts that it has acquired a portfolio of patents previously assigned to Paradyne.

Rembrandt is aware of the undisclosed and material information referred to in Counts I through IX above through Rembrandt's alleged acquisition of a portfolio of patents assigned to Paradyne and its assertion of the patents in this case. In fact, after originally filing lawsuits on four patents including the '631 patent, Rembrandt later filed lawsuits specifically adding the '761 patent, specifically alleging infringement of both patents by the same accused instrumentalities. Rembrandt was aware of the co-pendency of those patents as well as their prosecution histories, and the cited art and office actions, and nevertheless specifically endeavored to assert both patents. Rembrandt's knowing assertion of unenforceable patents comprises unclean hands. In addition, as described more fully in their antitrust claims below, Rembrandt has asserted claims for relief without proper basis under the law, and otherwise engaged in conduct comprising further unclean hands.

## ANTITRUST AND UNFAIR COMPETITION CLAIMS

### A. Rembrandt's Acquisition of the Patents

83. In 2006, in amicus briefing, Rembrandt referred to itself as a "a non-practicing entity ("NPE") — a firm that invests in patents but does not practice them." Rembrandt's website states that it "acquires promising patents from inventors and innovative companies that can't defend their patents against infringement because of the cost of litigation or the threat of business or legal retaliation."

84. In 2004, Rembrandt purportedly acquired the patents-in-suit

Rembrandt bought the Paradyne patents-in-suit with the intention of asserting them against, among others, MSOs that

40

implement DOCSIS.

85. After selling patents to Rembrandt in 2004, Paradyne was acquired by Zhone Technologies in 2005.   Rembrandt thereafter engaged in further transactions with Zhone Technologies to acquire additional patents, including one or more of the patents-in-suit.   These Paradyne and Zhone Technologies transactions allowed Rembrandt to amass patents it claims are essential to practice DOCSIS.

86.

Paradyne did not offer or supply any cable modem equipment to cable operators or cable equipment manufacturers or their customers.

**B. Evading The Supreme Court's eBay Decision**

87.

On information and belief, Rembrandt hoped to use the threat of injunctive relief and/or lost profits-based damages to impose pressure on the cable industry to pay Rembrandt money to license its patents.

88.

### C. Evading the DOCSIS Pool License

89.    Beginning in the mid-1990s, a group of companies, including a number of Plaintiffs, began to work together to develop a technical specification for the delivery of high-speed data over cable television networks.  The first version of DOCSIS was released by CableLabs, a cable industry standards development organization, in 1997.  Subsequent versions of the specification have been released since.

90. The goal of the companies involved in the development of DOCSIS was to specify interface requirements so that cable operators and their subscribers would be able to purchase affordable, interchangeable, highly functional cable modems and other equipment from multiple suppliers. The goal has been realized.  Cable modems are affordable, highly reliable, and available from numerous suppliers, and the delivery of broadband over cable has become a popular method for the delivery of high-speed data services to residential and commercial customers. To ensure that consumers who purchased cable modems would be receiving products that were fully compatible with the DOCSIS standard, CableLabs established a certification program to identify DOCSIS-compliant manufacturers. Certified equipment could then be used in cable systems supporting DOCSIS.  Major cable operators may ask vendors to obtain certification from CableLabs.

91. Neither Rembrandt/Remstream[1] nor its Paradyne predecessors participated in the DOCSIS standardization process or publicly commented on the DOCSIS standards.  On

---

[1]    Rembrandt has several affiliated companies, including Remstream.  Because it is not clear where one company ends and the other begins, it is impossible for Plaintiffs at this point to state which entity performed each act.  If
(Continued...)

information and belief, both during and after DOCSIS standardization process, and prior to filing lawsuits against cable operators to enforce the patents, neither Rembrandt/Remstream nor its Paradyne predecessors informed CableLabs or Plaintiffs that they had intellectual property they believed read on or covered the DOCSIS standard.

92. To facilitate efficient licensing of patented technology that was essential to implement the original DOCSIS specification and subsequent versions, CableLabs developed a patent pool for the intellectual property essential to the DOCSIS standards. The DOCSIS patent pool was announced by CableLabs in July 1998. Some companies contributing technology essential to the DOCSIS standardization effort signed a document entitled "Data Over Cable Service Interface Specifications License Agreement" (the "DOCSIS License Agreement"), which memorialized the DOCSIS patent pool and the signatories' reciprocal rights to the intellectual property in the pool.

93. DOCSIS patent pool members contribute a non-exclusive license to any intellectual property rights necessary to make products in accordance with the DOCSIS standard, and receive in exchange a license from the pool for all of the intellectual property rights contributed by other signatories. Pool members receive non-exclusive, royalty-free licenses, conditioned upon that member's agreement to *contribute freely*, or on a *reciprocal*, no-cost basis, any intellectual property essential to sell DOCSIS-compliant equipment. Cable operators and cable modem manufacturers saw the DOCSIS patent pool as a major achievement that would help support

---

Plaintiffs have information or belief that a specific act was performed by a specific affiliate, the complaint shall so state. In all other circumstances, Plaintiffs' reference to Rembrandt shall include Rembrandt and all affiliated companies, including Remstream.

systems interoperability, enable industry growth, enhance consumer choice, and lower the cost of data over cable services for the consumer.

94. The competitive benefits of the DOCSIS pool structure can best be seen in the fact that over 60 companies have signed licensing agreements to enter the patent pool. So has in its scheme to destroy many of the benefits of DOCSIS standards and circumvent the DOCSIS patent pool

95

96.

and subsequently asserting patents it claims are essential to implement the DOCSIS specification against pool participants and others.

97.

Rembrandt thereby positioned itself to evade *eBay* by trying to

98.

99.

100.    On information and belief, Remstream and

101.    On information and belief, Remstream will continue to agree with one or more entities to engage in similar acts relating to additional cable modems.

45

102.    Remstream — either alone or through partnerships with                    and others -- lacks the capacity to meet U.S. demand for DOCSIS-compliant cable modems.    Nevertheless, Remstream claims it may seek lost profits in this litigation.

103.    Rembrandt has also reached an                    Rembrandt has created or plans to create a sham company through which it will gain access to customers of Comcast or other competing MSOs that are implementing the DOCSIS standard and marketing cable services.  This scheme is intended to support Rembrandt's false claim that it is a practicing entity that has suffered damages as a purported competitor in the cable systems market.

104.

### D. *The Relevant Antitrust Markets*

105.    As a result of the transactions with Paradyne and Zhone Technologies described above and certain further actions by Rembrandt/Remstream, Rembrandt/Remstream actually, potentially, and/or purportedly compete in (1) the United States and worldwide markets for technology essential to implement the DOCSIS standard and for technology essential to perform certain functions, allegedly covered by the patents-in-suit, necessary to implement the DOCSIS standard (hereinafter "DOCSIS Technology"); and (2) the United States and worldwide markets for DOCSIS-compliant cable modems  (hereinafter "DOCSIS Equipment") (collectively, the "relevant markets").

106.    The United States and worldwide development and license of DOCSIS Technology is a relevant market for the following, among other, reasons:  (1) once CableLabs selected a particular technology to be incorporated into the DOCSIS standard, all other technologies capable of performing particular functions described in the specification were excluded; (2) a cable modem used by a cable system must conform to the technology of the network system used by the service provider; and (3) once a cable system implements the DOCSIS standard on its system, the cost of switching the network to a different specification for the transmission of broadband data is likely cost prohibitive.  Cable operators are unlikely to respond even to a significant increase in the cost of royalties associated with the license of patents essential to implement the DOCSIS specification by switching to a different specification.

107.    The United States and worldwide markets for the development, manufacture and distribution of cable modems is a relevant antitrust market for the following, among other, reasons:  cable system operators that have chosen to provide broadband services over DOCSIS-

compliant networks, which often provide cable modems to their subscribers so that their subscribers can receive broadband, do not regard alternative customer premises equipment receiving broadband services, such as dial-up modems or DSL modems, as substitutes for DOCSIS-compliant cable modems. Because cable operators provide paid subscriptions to broadband services delivered using DOCSIS, they cannot substitute other modems or other equipment that performs similar functions. Once a cable operator implements DOCSIS on its network, the cost of switching the network to a different specification for the transmission of broadband data is likely prohibitive. Cable operators are unlikely to respond even to a significant increase in the cost of royalties associated with the license of patents essential to implement DOCSIS sby switching to a different specification.

### E. Rembrandt Asserts the Patents

108. Remstream continued its "business plan" to exploit the relevant markets by bringing improper patent infringement suits against cable system operators. As alleged in Count IX above, multiple patents-in-suit are unenforceable for inequitable conduct committed during patent prosecution. This inequitable conduct arises from, among other things, Paradyne's pattern and practice of failing to disclose previously issued prior art Paradyne patents and co-pending Paradyne applications and art cited therein that was material to patentability and known to persons subject to a duty of candor to disclose this information to the USPTO. The widespread pattern of Paradyne's failures to satisfy its disclosure obligations confirms that it acted with intent to deceive the USPTO at all relevant times.

and Rembrandt has selected various patents for assertion in litigation while aware of the improper patent prosecution practices of Paradyne.

109.    The litigation against the cable operators, which claimed that the operators infringed Rembrandt's intellectual property by implementing the DOCSIS standard, was both objectively and subjectively baseless because of these infirmities of which Rembrandt is aware. Further, in addition to these unenforceability issues, Rembrandt asserts infringement where it is aware that these patents were not developed in the cable industry and that its infringement claims are both objectively and subjectively baseless. Rembrandt attempts to graft its allegations to DOCSIS and yet these patents have no relationship to and are not infringed by compliance with that standard -- facts of which Rembrandt is aware. Furthermore, Rembrandt has attempted to manufacture sham claims for relief where it is aware that as a non-practicing entity it is not entitled to lost profits or injunctive relief. Rembrandt's efforts to manufacture harms fail to meet the relevant standards for the claims to relief and were committed as part of an effort to improperly extract monies from the cable industry.

## COUNT XI
### (Monopolization of the DOCSIS Technology Markets in Violation of Section 2 of the Sherman Act)

110.    Plaintiffs repeat and reallege all of the allegations of all of the Paragraphs above as if set forth fully herein.

111.    Rembrandt's patent portfolio includes eight patents that it claims are essential to the DOCSIS standard. Rembrandt has accused firms selling and using DOCSIS-compliant cable modems and CMTS's of infringing these allegedly "essential" patents.

112.    Rembrandt claims there are no alternative or design-around technologies by which the DOCSIS standards can be practiced without infringing Rembrandt's intellectual property.

113.    Rembrandt has stated that "inventions covered by the asserted claims of the patents-in-suit were implemented as requirements of the DOCSIS standard."

114.    Rembrandt claims it has the right to exclude all competition in the DOCSIS Technology Markets. Thus, Rembrandt claims to have monopoly power in the DOCSIS Technology Markets.

115.    If Rembrandt's illegal efforts to exclude competition in the market for technology essential to the DOCSIS standard are successful, Rembrandt will have acquired and/or maintained this monopoly power through various exclusionary and predatory acts, and not through superior skill, foresight, or industry. These acts include, but are not limited to, the acts described in the paragraphs above.

116.    Rembrandt's agreements and potentially others are intended to, and if upheld, will hijack the DOCSIS standard after the fact, circumvent the long-established DOCSIS patent pool, raise prices and costs, reduce output, and exclude competition, all to the harm of customers, consumers and competition.

117.    Rembrandt is attempting to enforce patents it knows to be invalid, unenforceable, and/or not infringed. Its allegations and claims in its patent actions, including its claims for relief, are brought in bad faith, are objectively and subjectively baseless, and are motivated by Rembrandt's desire to impose collateral, anti-competitive injury rather than to obtain a justifiable legal remedy.

118.    Rembrandt has wrongfully asserted invalid and unenforceable patents, including the patents-in-suit, against multiple non-infringing parties in many forums, establishing a pattern of bad faith litigation as part of an overall scheme to achieve or maintain a monopoly position in the DOCSIS technology market. Particularized allegations of inequitable conduct are set forth above.

119.    Rembrandt's monopolistic conduct has already directly and irreparably injured Plaintiffs and competition by forcing Plaintiffs and cable operators to expend significant sums in attorney and litigation fees, and by harming Plaintiffs' reputations and business relationships with customers and consumers.

120.    Rembrandt's patent claims are unfair, predatory, and anticompetitive and have no legitimate business or efficiency justification. Rembrandt's conduct has no legitimate pro-competitive justification that would outweigh its anticompetitive effects.

121.    Rembrandt's conduct has and will continue to directly and substantially affect and restrain interstate commerce in the United States.

122.    Rembrandt's anticompetitive conduct has and will directly and proximately cause antitrust injury to Plaintiffs within the DOCSIS Technology Markets, including but not limited to causing substantial injury to competition, consumers and competitors (including Plaintiffs) in the DOCSIS Technology Markets.

123.    Plaintiffs have directly and proximately suffered injury as a result of Rembrandt's anticompetitive conduct.

124.    The damages and injuries that Plaintiffs have sustained because of Rembrandt's antitrust violations are direct and unique, and are not duplicative or derivative of any injuries suffered by any other participant in any market alleged herein. Plaintiffs' damages and injuries

51

flow directly from Rembrandt's wrongful, exclusionary acts that make Rembrandt's conduct unlawful.

125.   Plaintiffs' antitrust injuries are the direct result of Rembrandt's anticompetitive conduct, alleged herein, which occurred within the United States.   The harm and losses to Plaintiffs from Rembrandt's illegal conduct are ongoing and cumulative.   Because Rembrandt's actions substantially and adversely injure Plaintiffs' goodwill with their customers and in the DOCSIS Technology Markets generally, monetary compensation alone is not sufficient, leaving Plaintiffs without a sufficient remedy at law.

126.   Plaintiffs have suffered irreparable injury by reason of Rembrandt's anticompetitive conduct and will continue to suffer injury unless and until the Court enjoins such conduct.

## COUNT XII
### (Attempted Monopolization of the DOCSIS Equipment Markets in Violation of Section 2 of the Sherman Act)

127.   Plaintiffs repeat and reallege all of the allegations of all of the Paragraphs above as if set forth fully herein.

128.   As alleged with particularity above, Rembrandt claims to have monopoly power in the DOCSIS Technology Markets, gained in part through agreements with Paradyne, and potentially others.

129.   Rembrandt is attempting to;                                    and use its above-alleged monopoly power in the DOCSIS Technology Markets by

                    enforcing patents it knows to be invalid, unenforceable, or not infringed, and wrongfully hi-jacking the DOCSIS standard and

                    so that it can exclude competition and/or raise its competitors' costs in the worldwide and U.S. DOCSIS Equipment Markets.

130.    Rembrandt's anticompetitive conduct was intended to give, and has the dangerous probability of giving, Remstream monopoly power over the DOCSIS Equipment Markets. Through this conduct, Remstream will have the power to exclude competition, reduce output, and raise prices in the DOCSIS Equipment Markets -- whether or not Remstream is able to satisfy market demand for such equipment -- which are necessary and sufficient elements of monopoly power.

131.    Rembrandt's anticompetitive acts are unfair, predatory, and anticompetitive and have no legitimate business or efficiency justification. Rembrandt's conduct, thus, has no legitimate pro-competitive justification that would outweigh its anticompetitive effects.

132.    Rembrandt's conduct has and will continue to directly affect and restrain interstate commerce in the United States.

133.    Rembrandt's anticompetitive conduct will directly and proximately cause antitrust injury to Plaintiffs within the DOCSIS Equipment Markets, including but not limited to causing substantial injury to competition, and hence to consumers and competitors (including Plaintiffs), in the DOCSIS Equipment Markets. Plaintiffs have and will directly and proximately suffer injury as a result of Rembrandt's anticompetitive conduct.

134.    Rembrandt has set upon this course of conduct with the specific intent of monopolizing the DOCSIS Equipment Markets. By asserting its intellectual property against all DOCSIS-compliant equipment, and purporting to seek injunctive relief, Rembrandt has claimed to have the power to exclude competitors in (and hence market power over) the DOCSIS Equipment Markets. There is a dangerous probability that, unless restrained, Rembrandt will acquire monopoly power in the DOCSIS Equipment Markets.

135.    If Rembrandt successfully excludes competitors from DOCSIS Equipment Markets, it will unilaterally set or maintain prices substantially above competitive levels for the foreseeable future.

136.    By reason of Rembrandt's attempted monopolization of the DOCSIS Equipment Markets in violation of Section 2 of the Sherman Act, Plaintiffs have been injured in their business or property including the loss of profits, the loss of customers, the loss of goodwill and product image, loss of sums expanded for attorney and litigation costs, and by their prospective exclusion from DOCSIS Equipment Markets.

137.    Plaintiffs have suffered irreparable injury by reason of Rembrandt's anticompetitive conduct and will continue to suffer injury unless and until the Court enjoins such conduct.

## COUNT XIII
### (Conspiracy to Monopolize the DOCSIS Technology Markets and the DOCSIS Equipment Markets in Violation of Section 2 of the Sherman Act)

138.    Plaintiffs repeat and reallege all of the allegations of all of the Paragraphs above as if set forth fully herein.

139.    Rembrandt has entered into illegal agreements with

and potentially others with the intent and effect of giving Remstream monopoly power in the relevant markets, including the DOCSIS Technology and Equipment Markets, or with the intent and effect of giving Remstream a dangerous probability of successfully achieving such monopoly power. These illegal agreements (1) facilitate Remstream's scheme to hi-jack the long-established DOCSIS standard and hold hostage those who have spent years and millions of dollars developing products relying on the DOCSIS standard, and thereby raise prices, reduce output, and exclude competition; and (2) facilitate Remstream's scheme

140.    Rembrandt,                                              and potentially others have

all committed overt acts in furtherance of the conspiracies to monopolize, including, but not

limited to

141.    These conspiracies to monopolize in violation of Section 2 of the Sherman Act

harm consumers, customers, and competition, are unfair, predatory, and anticompetitive, and

have no legitimate business or efficiency justification.    Rembrandt's conduct, thus, has no

legitimate pro-competitive justification that would outweigh its anticompetitive effects.

142.    These conspiracies to monopolize in violation of Section 2 of the Sherman Act

have and will continue to directly affect and restrain interstate commerce in the United States.

143.    Rembrandt's anticompetitive conduct will directly and proximately cause antitrust

injury to Plaintiffs within the relevant markets, including but not limited to causing substantial

injury to competition, and hence to consumers and competitors (including Plaintiffs), in the

relevant markets.    Plaintiffs have and will directly and proximately suffer injury as a result of

Rembrandt's anticompetitive conduct.

144.    Rembrandt                                              and potentially others to

be revealed in discovery) have set upon this course of conduct with the specific intent for

Rembrandt to monopolize the relevant markets.    There is a dangerous probability that, unless

restrained, Rembrandt will acquire a monopoly in the relevant markets.

145. By asserting its intellectual property against all DOCSIS-compliant equipment, and purporting to seek injunctive relief, Rembrandt claims to have the power to exclude other competitors from (and hence have monopoly power in) each of the relevant markets. If Rembrandt drives its competitors from the market by raising competitors' costs, it will have the power to unilaterally set or maintain prices substantially above competitive levels for the foreseeable future.

146. By reason of Rembrandt's participation in the conspiracy to monopolize the relevant markets in violation of Section 2 of the Sherman Act, Plaintiffs face a substantial risk of injury to their business or property including the loss of profits, the loss of customers, the loss of goodwill and product image, lost sums expended for attorneys fees and litigation costs, and the prospective destruction of the relevant markets.

147. Plaintiffs have suffered irreparable injury by reason of Rembrandt's anticompetitive conduct and will continue to suffer injury unless and until the Court enjoins such conduct.

## COUNT XIV
### (Unfair Business Practices Under Section 17200 of
### California Business & Professions Code)

148. Plaintiffs repeat and reallege all of the allegations of all of the Paragraphs above as if set forth fully herein.

149. Rembrandt has engaged in unfair competition within the meaning of Section 17200 of the California Business and Professions Code.

150. Rembrandt's conduct constitutes: (1) unlawful business acts or practices; (2) unfair business acts or practices; and (3) fraudulent business acts or practices.

151. Several of the plaintiffs are located in California, and, on information and belief, several of Rembrandt's illegal, unfair, and fraudulent acts occurred in California. Each of

Rembrandt's illegal, unfair and fraudulent acts have harmed and threaten to further harm California customers, consumers, and competition within California, including by increasing the prices California consumers pay for cable modems or decreasing the supply of cable modems.

152.    As is alleged with particularity above, Rembrandt committed unlawful business acts by:  (1) monopolizing the DOCSIS Technology Markets, and (2) attempting to monopolize the DOCSIS Equipment Markets.

153.    Each of the unlawful business acts identified above have continuing anticompetitive effects in the state of California and throughout the United States.

154.    As alleged with particularity above, Rembrandt engaged in unfair business practices by: (1) facilitating Remstream's scheme to hijack the DOCSIS standard and hold hostage those who rely on the DOCSIS standard, and thereby raise costs, limit competition, and reduce efficiency; and (2)

155.    These actions reduce output, prevent competition on the standardized product, raise prices, waste the time and money spent standardizing the product, and run counter to the policy of encouraging the setting of standards to promote competition.  Such actions subvert the key purpose of standard setting.  Under Remstream's approach, only one company -- Remstream -- is legally permitted to sell DOCSIS-compliant cable modems.  Remstream cannot meet the market demand, and could charge supra-competitive prices for the limited cable modems it can sell. Customers and consumers will be seriously harmed, either by not getting a cable modem or

having to pay an exorbitant price for one. These actions would result in higher prices and less competition, and are therefore unfair business practices.

156. Each of the unfair business acts identified above is unfair when the effect of the act on Plaintiffs is balanced against Rembrandt's reasons, justifications, and motives for that act.

157. Each of the unfair business acts identified above violates the policy or spirit of the antitrust laws because it harms Plaintiffs, competition, and consumers.

158. Each of the unfair business acts identified above has continuing anticompetitive effects in California and throughout the United States.

159. Rembrandt committed fraudulent business acts by engaging in the conduct as pleaded herein, including but not limited to, by asserting patents it knows were obtained via fraud on the Patent Office; asserting patents it knows to be unenforceable or not infringed; asserting sham claims for relief, causing these fraudulent claims to be publicized to consumers; and perpetuating a ruse to exclude competitors through patent litigation.

160. Each of the fraudulent business acts identified above has continuing anticompetitive effects in California and throughout the United States.

161. By reason of Rembrandt's unlawful, unfair, and fraudulent business conduct, Plaintiffs have suffered injury-in-fact and have been deprived of money or property in which they have a vested interest unless and until the Court enjoins such conduct, Plaintiffs' injuries in fact are irreparable, and Plaintiffs will continue to suffer injury-in-fact.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask that this Court enter judgment in Plaintiffs' favor and grant the following relief:

A. A declaration that Plaintiffs have not infringed any of the claims of U.S. Patent Nos. 4,937,819; 5,008,903; 5,710,761; 5,719,858; 5,778,234; 5,852,631; 6,131,159 or 6,950,444;

B. A declaration that U.S. Patent Nos. 4,937,819; 5,008,903; 5,710,761; 5,719,858; 5,778,234; 5,852,631; 6,131,159 or 6,950,444 are invalid for failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112;

C. A declaration that U.S. Patent Nos. 4,937,819; 5,008,903; 5,710,761; 5,719,858; 5,778,234; 5,852,631; 6,131,159 or 6,950,444 are unenforceable and/or that Rembrandt's unclean hands preclude its enforcement of the patents in this suit;

D. An injunction against Rembrandt and its affiliates, subsidiaries, assigns, employees, agents or anyone acting in privity or concert with Rembrandt from charging infringement or instituting or continuing any legal action for infringement of U.S. Patent Nos. 4,937,819; 5,008,903; 5,710,761; 5,719,858; 5,778,234; 5,852,631; 6,131,159 or 6,950,444 against Plaintiffs, their customers, or anyone acting in privity with Plaintiffs;

E. An order declaring that Plaintiffs are prevailing parties and that this is an exceptional case, awarding Plaintiffs their costs, expenses, disbursements and reasonable attorney fees under 35 U.S.C. § 285 and all other applicable statutes, rules and common law;

F. Adjudge and decree that Rembrandt has violated Section 2 of the Sherman Act, 15 U.S.C. § 2; that Rembrandt has violated Section 17200, *et seq.*, of the California Business and Professions Code;

G. On Plaintiffs' ninth through fourteenth claims for relief, enter judgment against Rembrandt for treble the amount of Plaintiffs' damages as proven at trial in accordance with Section 4 of the Clayton Act, 15 U.S.C. § 15;

59

H. Pursuant to applicable federal and state laws, including the Clayton Act, 15 U.S. § 16 and Section 17200, *et seq.,* of the California Business & Professions Code, enjoin Rembrandt's continuing violations of law by: (1) barring Rembrandt from asserting the patents and other intellectual property rights it has claimed are essential to practice the DOCSIS standard against parties manufacturing, selling, purchasing or using products practicing that standard; (2) requiring Rembrandt to grant CableLabs' royalty-free patent pool a license to those patents claimed essential to the DOCSIS standards; (3) prohibiting actions in furtherance of the illegal agreements reached between Rembrandt and                        and Rembrandt and

I. Enter further equitable relief as necessary or appropriate, including full restitution to Plaintiffs and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Rembrandt from Plaintiffs, its actual customers, and its potential customers as a result of Rembrandt's unlawful, unfair, and fraudulent business acts;

J. Award Plaintiffs their costs and expenses of litigation, including attorneys' fees and expert witness fees; and

K. Enter judgment against Rembrandt for such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a jury trial on all issues so triable.

Respectfully submitted,

Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
1000 West Street
Wilmington, DE 19801
(302) 571-6600
jshaw@ycst.com

*Co-Liaison Counsel and Attorneys for Plaintiffs/Counter-Defendants Motorola, Inc., Cisco Systems, Inc., Scientific-Atlanta, Inc., ARRIS Group, Inc., Thomson, Inc., Ambit Microsystems, Inc., and NETGEAR, Inc.*

Of Counsel:

John M. Desmarais, P.C.
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022-4611

Eric R. Lamison
Benjamin Ostapuk
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104

Date:   April 11, 2008

61

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE: REMBRANDT TECHNOLOGIES, LP PATENT LITIGATION | ) ) ) ) ) | MDL Docket No. 07-md-1848 (GMS) |
| | ) ) ) | |
| MOTOROLA, INC., CISCO SYSTEMS, INC., SCIENTIFIC-ATLANTA, INC., ARRIS GROUP, INC., THOMSON, INC., AMBIT MICROSYSTEMS, INC., and NETGEAR, INC. | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 07-752-GMS |
| REMBRANDT TECHNOLOGIES, LP, and REMBRANDT TECHNOLOGIES, LLC d/b/a REMSTREAM, | ) ) ) ) ) | **REDACTED – PUBLIC VERSION** |
| Defendants. | ) ) | **JURY TRIAL DEMANDED** |
| REMBRANDT TECHNOLOGIES, LP, and REMBRANDT TECHNOLOGIES, LLC d/b/a REMSTREAM, | ) ) ) ) ) | |
| Counter-Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 07-752-GMS |
| MOTOROLA, INC., CISCO SYSTEMS, INC., SCIENTIFIC-ATLANTA, INC., ARRIS GROUP, INC., THOMSON, INC., AMBIT MICROSYSTEMS, INC., and NETGEAR, INC., TIME WARNER CABLE, INC., TIME WARNER CABLE LLC, TIME WARNER NEW YORK CABLE LLC, TIME WARNER ENTERTAINMENT COMPANY, LP, COMCAST CORPORATION, COMCAST CABLE COMMUNICATIONS, LLC, CHARTER | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |

COMMUNICATIONS OPERATING, LLC,                    )
COXCOM, INC., COX COMMUNICATIONS,                 )
INC., COX ENTERPRISES, INC., CSC                  )
HOLDINGS, INC., CABLEVISION SYSTEMS               )
CORPORATION, ADELPHIA                             )
COMMUNICATIONS CORPORATION,                       )
CENTURY-TCI CALIFORNIA                            )
COMMUNICATIONS, LP, CENTURY-TCI                   )
HOLDINGS, LLC, COMCAST OF                         )
FLORIDA/PENNSYLVANIA, L.P. (f/k/a                 )
PARNASSOS, LP), COMCAST OF                        )
PENNSYLVANIA II, L.P. (f/k/a CENTURY-TCI          )
CALIFORNIA, L.P.), PARNASSOS                      )
COMMUNICATIONS, LP, ADELPHIA                      )
CONSOLIDATION, LLC, PARNASSOS                     )
HOLDINGS, LLC, and WESTERN NY                     )
CABLEVISION, LP,                                  )
                                                  )
             Counter-Defendants.                  )
_____       )
                                                  )

## FIRST AMENDED COMPLAINT
## (INCLUDING ANTITRUST AND UNFAIR COMPETITION CLAIMS)

## ~~AMENDED COMPLAINT~~

This case concerns the unlawful and anticompetitive conduct of a nonpracticing patent holding company, Rembrandt Technologies, LP. Rembrandt acquired invalid and unenforceable patents and is now asserting them against non-infringing leading operators of cable television systems and the manufacturers of cable modems and other products those operators use to deliver the broadband data services millions of Americans use to access the Internet. To gain negotiating leverage against the companies it accuses of infringing its invalid, non-infringed and unenforceable patents, Rembrandt seeks to prevent millions of cable subscribers from continuing to enjoy access to high-speed data delivered using a pervasive cable industry standard. Although Rembrandt now wishes to portray itself as a market participant entitled to lost profits damages and injunctive relief for alleged patent infringement, Rembrandt is, by its own admission, a nonpracticing entity ("NPE") that does not make or sell anything. Instead, Rembrandt solicits investors to give it money so it can buy patents and assert those patents against companies like the plaintiffs in this action, who provide products and services enjoyed by the public.

To maximize its power to coerce cable system operators and equipment manufacturers to yield to its demands, Rembrandt has hatched an illegal, anticompetitive scheme. Specifically, Rembrandt Technologies, LP and its apparent affiliate, Remstream Technologies LLC d/b/a Remstream (which first appeared in these cases in January 2008) are attempting to monopolize and unfairly compete in the market for cable modem products that use the successful Data Over Cable Services Interface Specifications ("DOCSIS"). DOCSIS is a set of technical specification used by manufacturers to design and build equipment such as cable modems and cable modem termination systems that

cable companies use to deliver broadband data services over their cable television networks. The adoption of the DOCSIS specification over ten years ago has led to the availability of affordable, interoperable cable modems and the emergence of broadband over cable systems as a leading method by which Americans access the Internet.

Against this backdrop comes Rembrandt's scheme. Rembrandt has purchased a portfolio of patents of a defunct company called Paradyne, which manufactured dial-up modems and other products used by consumers to access older, slower non-cable television telecommunications networks. Paradyne never developed or manufactured cable modems and did not help create the DOCSIS standard. Rembrandt now says that the plaintiffs in this case infringe the patents it purchased from Paradyne by implementing the DOCSIS standard.

The patents do not cover DOCSIS and are in fact unenforceable for inequitable conduct based upon facts of which Rembrandt became aware through the investigation it performed at the time it acquired the Paradyne portfolio. Even though neither Rembrandt nor Paradyne contributed to the DOCSIS standard, and Rembrandt knows both that the patents are unenforceable and that, even if they were enforceable, they would not be infringed by implementers of DOCSIS such as the plaintiffs, Rembrandt now seeks to prevent plaintiffs from continuing to make and sell products that make the delivery of broadband over cable television networks possible.

Under the *eBay* decision, an NPE like Rembrandt is plainly not entitled to a permanent injunction.

These agreements are a sham: nothing about Rembrandt's history or business model suggests it wants to be a bona fide distributor of cable modems, as is plain from its own admissions. however, Rembrandt attempts to gain the right to exclude competition through the enforcement of its non-infringed, invalid, and unenforceable patents by enjoining what it claims is the use of those patents by virtually every major cable systems operator as well as by companies that supply the bulk of US sales of cable modems and related equipment.

Rembrandt faced another obstacle in bringing its scheme to fruition. Valid and enforceable patents that                                    needed to license to implement the DOCSIS specification, patents owned by companies such as plaintiffs that had, unlike Rembrandt, participated in the development of DOCSIS, were available for license on a royalty-free basis through a patent pool. The patent pool agreement, however, required companies like                        to agree to reciprocally license patents they owned to other members of the patent pool on a royalty-free basis. Participants in the development of DOCSIS had created this licensing structure to avoid precisely the kind of patent hold-up that Rembrandt now threatens. But

<u>**This is not a case about the lawful enforcement of valid and enforceable patents.**</u>
<u>**This is a case about the acquisition by an NPE of patents**</u>
<u>**and the NPE's scheme to portraying itself as a practicing entity to coerce an**</u>
<u>**industry into yielding to its demands, thereby attaining the power to exclude competition**</u>
<u>**through unlawful and unfair business practices.**</u>

<u>**Accordingly,**</u> Plaintiffs Motorola, Inc. ("Motorola"), Cisco Systems, Inc. ("Cisco"), Scientific-Atlanta, Inc. ("Scientific-Atlanta"), ARRIS Group, Inc. ("ARRIS"), Thomson, Inc. ("Thomson"), Ambit Microsystems, Inc. ("Ambit") and NETGEAR, Inc. ("NETGEAR")(collectively "Plaintiffs") ~~are~~ <u>-- the principal</u> suppliers of DOCSIS industry standard cable modem equipment that Rembrandt has accused of infringement. ~~Plaintiffs~~ <u>--</u> have filed this <u>First</u> Amended Complaint to stop Rembrandt's ~~improper assertion of invalid and unenforceable patents and to~~<u>anticompetitive and unfair conduct and</u> vindicate their products and their customers' lawful use of th<u>ose</u>~~eir~~ products ~~from Rembrandt's baseless infringement charges~~. Accordingly, for their Complaint against Rembrandt, Plaintiffs hereby demand a jury trial and allege as follows:

## PARTIES

1.  Plaintiff Ambit is a California corporation with its principal place of business at 9570 La Costa Lane, Lone Tree, CO 80124.

2.  Plaintiff ARRIS is a Delaware corporation with its principal place of business at 3871 Lakefield Drive, Suwanee, GA, 30024.

3.  Plaintiff Cisco is a California corporation with its principal place of business at 170 West Tasman Drive, San Jose, CA 95134.

4.  Plaintiff Motorola is a Delaware corporation with its principal place of business at 1303 E. Algonquin Road, Schaumburg, IL 60196.

5.  Plaintiff NETGEAR is a Delaware corporation with its principal place of business at 4500 Great America Parkway, Santa Clara, CA 95054.

6.  Plaintiff Scientific-Atlanta is a wholly owned subsidiary of Plaintiff Cisco and is a Georgia corporation with its principal place of business at 5030 Sugarloaf Parkway, Lawrenceville, GA 30044-2869.

7.  Plaintiff Thomson is a Delaware corporation with its principal place of business at 101 W. 103rd Street, INH 3340, Indianapolis, IN 46290.

8.  On information and belief, defendant Rembrandt is a limited partnership organized and existing under the laws of New Jersey, with a principal place of business at 401 City Avenue, Suite 528, Bala Cynwyd, PA 19004. Rembrandt asserts that its business is enforcing and licensing patents. In carrying out its business of patent enforcement, Rembrandt has sued Cablevision Systems Corporation and CSC Holdings Inc., in C.A. No. 06-635-GMS. In that action, Rembrandt has asserted that "DOCSIS is a specification that describes the operational parameters of equipment that is used for cable networks. Rembrandt alleges that DOCSIS-compliant equipment infringes the '631, '858, '819, and '903 patents." Rembrandt purports to have obtained the patents at-issue in this action by purchasing them from Paradyne Corp., a Delaware corporation, and Zhone Communications. Rembrandt has also filed patent infringement law suits on another patent in this forum, suing ABC Inc., CBS Corporation, NBC Universal, Fox Entertainment Group Inc. and Fox Broadcasting Company. Those actions can be

found as C.A. No. 06-727-GMS, C.A. No. 06-729-GMS, C.A. No. 06-730-GMS and C.A. No. 06-731-GMS. Rembrandt has also caused to be formed in Delaware a number of limited liability corporations, limited partnerships, limited liability limited partnerships and/or corporations. On information and belief, Rembrandt has caused those entities to be formed to assist with its business of patent enforcement and licensing.

9. On information and belief, defendant Rembrandt Technologies, LLC, a Delaware LLC, is wholly owned by Rembrandt and does business as "Remstream." Remstream has its headquarters at 401 City Avenue, Suite 900, Bala Cynwyd, PA 19004.

## NATURE OF THE ACTION

10. In this action, Plaintiffs seek a declaratory judgment of patent noninfringement and invalidity of eight United States Patents pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and the Patent Laws of the United States, 35 U.S.C. § 100 *et seq.*, damages_and an injunction for violations of the Sherman Act § 2, and restitution and an injunction for violations of § 17200 *et seq.* of the California Business and Professions Code, and such other relief as the Court deems just and proper.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this action under, and without limitation, 28 U.S.C. §§ 1331, 1337, 1338(a), 1367, 2201, and 2202, and the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*

12. Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b).

## RELATED ACTIONS

13. Pursuant to D. Del. LR 3.1(b), Plaintiffs state that this declaratory judgment action is related to the following actions (the "Related Actions"):

- *Rembrandt Technologies, LP v. Cablevision et al.*, C.A. No. 06-635-GMS;

- *Coxcom v. Rembrandt Technologies, LP*, C.A. No. 06-721-GMS;

- *Rembrandt Technologies, LP v. Adelphia Comm'n Corp., et al.*, C.A. No. 07-396-GMS;

- *Rembrandt Technologies, LP v. Adelphia Comm'n Corp., et al.*, C.A. No. 07-397-GMS;

- *Rembrandt Technologies, LP v. Comcast Corp. et al.*, C.A. No. 07-398-GMS;

- *Rembrandt Technologies, LP v. Charter Comm'n, Inc., et al.*, C.A. No. 07-400-GMS;

- *Rembrandt Technologies, LP v. Time Warner Cable, et al.*, C.A. No. 07-401-GMS;

- *Rembrandt Technologies, LP v. Time Warner Cable, et al.*, C.A. No. 07-402-GMS;

- *Rembrandt Technologies, LP v. Comcast Corp. et al.*, C.A. No. 07-403-GMS;

- *Rembrandt Technologies, LP v. Charter Comm'n, Inc., et al.*, C.A. No. 07-404-GMS;

- *In re Rembrandt Technologies, LP Patent Litigation*, C.A. No. 07-1848-GMS.

## THE PATENTS

14. U.S. Patent No. 4,937,819 ("the '819 patent") entitled "Time Orthogonal Multiple Virtual DCE for Use in Analog and Digital Networks" reports that it was filed on September 26, 1988 and issued on June 26, 1990. The inventor named on the '819 patent is Joseph B. King. A copy of the '819 patent is attached hereto as Exhibit A. As alleged herein, Plaintiffs deny that the patent duly and legally issued.

15. U.S. Patent No. 5,008,903 ("the '903 patent") entitled "Adaptive Transmit Pre-Emphasis for Digital Modem Computed from Noise Spectrum" reports that it was filed on May 25, 1989 and issued on April 16, 1991. The inventors named on the '903 patent are William L. Betts and James J. DesRosiers. A copy of the '903 patent is attached hereto as Exhibit B. As alleged herein, Plaintiffs deny that the patent duly and legally issued.

16. U.S. Patent No. 5,710,761 ("the '761 patent") entitled "Error Control Negotiation Based on Modulation" reports that it was filed on May 31, 1995 and issued on January 20, 1998. The inventor named on the '761 patent is Robert Earl Scott. A copy of the '761 patent is attached hereto as Exhibit C. As alleged herein, Plaintiffs deny that the patent duly and legally issued.

17. U.S. Patent No. 5,719,858 ("the '858 patent") entitled "Time-Division Multiple-Access Method for Packet Transmission on Shared Synchronous Serial Buses" reports that it was filed on July 31, 1995 and issued on February 17, 1998. The inventor named on the '858 patent is Wayne T. Moore. A copy of the '858 patent is attached hereto as Exhibit D. As alleged herein, Plaintiffs deny that the patent duly and legally issued.

18. U.S. Patent No. 5,778,234 ("the '234 patent") entitled "Method for Downloading Programs" reports that it was filed on July 24, 1997 and issued on July 7, 1998. The inventors named on the '234 patent are Gideon Hecht, Kurt Ervin Holmquist, and Donald C. Snoll. A copy of the '234 patent is attached hereto as Exhibit E. As alleged herein, Plaintiffs deny that the patent duly and legally issued.

19. U.S. Patent No. 5,852,631 ("the '631 patent") entitled "System and Method for Establishing Link Layer Parameters Based on Physical Layer Modulation" reports that it was filed on January 8, 1997 and issued on December 22, 1998. The inventor named on the '631

patent is Robert Earl Scott. A copy of the '631 patent is attached hereto as Exhibit F. As alleged herein, Plaintiffs deny that the patent duly and legally issued.

20. U.S. Patent No. 6,131,159 ("the '159 patent") entitled "System for Downloading Programs" reports that it was filed on May 8, 1992 and issued on October 10, 2000. The inventors named on the '159 patent are Gideon Hecht, Kurt Ervin Holmquist, and Donald C. Snoll. A copy of the '159 patent is attached as Exhibit G. As alleged herein, Plaintiffs deny that the patent duly and legally issued.

21. U.S. Patent No. 6,950,444 ("the '444 patent") entitled "System and Method for a Robust Preamble and Transmission Delimiting in a Switched-Carrier Transceiver" reports that it was filed on August 11, 2000 and issued on September 27, 2005. The inventors named on the '444 patent are Kurt Holmquist and Joseph Chapman. A copy of the '444 patent is attached as Exhibit H. As alleged herein, Plaintiffs deny that the patent duly and legally issued.

22. Rembrandt asserts (but Plaintiffs do not admit) that Rembrandt is the owner of all rights, title, and interest in and to the '819, '903, '761, '858, '234, '631, '159, and '444 patents (collectively, the "Patents"). Rembrandt did not invent the technology in the Patents. Rembrandt also did not invent DOCSIS or contribute to the development of DOCSIS. Rembrandt purports to have obtained the Patents through an agreement with Paradyne Corporation. Paradyne Corporation did not invent DOCSIS. Paradyne Corporation did not participate in the creation of DOCSIS. Paradyne did not **design, manufacture, or** sell cable modems or cable modem termination systems. Rembrandt has contended in discovery responses in one or more of the MSO actions that Paradyne sold products in the United States that Rembrandt alleges to practice the Patents. Rembrandt has also admitted that Paradyne products sold in the United States were not marked with the Patents. Rembrandt is presently aware that

Paradyne sold products in the United States that were not marked with the Patents and Rembrandt believes that those products practiced claims of the Patents.

## COUNT I
### (Declaratory Judgment Action for a Declaration
### of Noninfringement and Invalidity of U.S. Patent No. 4,937,819)

23. Paragraphs 1 through 22 are incorporated by reference as if stated fully herein.

24. Rembrandt has accused Cablevision Systems Corporation, Charter Communications Operating, LLC, Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast Corporation, Comcast of Plano, LP, Coxcom, Inc., CSC Holdings, Inc., Time Warner Cable Inc., Time Warner Cable LLC, Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner Entertainment Company, L.P. and Time Warner New York Cable LLC of infringing the '819 patent because of the operational parameters of the cable equipment that they purchase for their cable systems. Specifically, Rembrandt has alleged that DOCSIS is a specification that describes operational parameters of equipment that is used for cable networks. Rembrandt further asserts that DOCSIS-compliant cable modem ("CM") and cable modem termination system ("CMTS") equipment allegedly infringe the '819 patent. Plaintiffs manufacture and sell accused CM and/or CMTS equipment, and each of Plaintiffs has supplied accused CM and/or CMTS equipment to one or more of the cable MSOs that Rembrandt has accused of infringement.

25. An actual and justiciable controversy exists between Plaintiffs and Rembrandt regarding the infringement and validity of the '819 patent.

26. Plaintiffs have not infringed (directly or indirectly) any valid, enforceable claim of the '819 patent, either literally or under the doctrine of equivalents.

27. The '819 patent is invalid because of its failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

28. A judicial declaration of noninfringement and invalidity is necessary and appropriate in order to resolve this controversy.

## COUNT II
### (Declaratory Judgment Action for a Declaration of Noninfringement and Invalidity of U.S. Patent No. 5,008,903)

29. Paragraphs 1 through 22 are incorporated by reference as if stated fully herein.

30. Rembrandt has accused Cablevision Systems Corporation, Charter Communications Operating, LLC, Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast Corporation, Comcast of Plano, LP, Coxcom, Inc., CSC Holdings, Inc., Time Warner Cable Inc., Time Warner Cable LLC, Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner Entertainment Company, L.P. and Time Warner New York Cable LLC of infringing the '903 patent because of the operational parameters of the cable equipment that they purchase for their cable systems. Specifically, Rembrandt has alleged that DOCSIS is a specification that describes operational parameters of equipment that is used for cable networks. Rembrandt further asserts that DOCSIS-compliant cable modem ("CM") and cable modem termination system ("CMTS") equipment allegedly infringe the '903 patent. Plaintiffs manufacture and sell accused CM and/or CMTS equipment, and each of Plaintiffs has supplied accused CM and/or CMTS equipment to one or more of the cable MSOs that Rembrandt has accused of infringement.

31. An actual and justiciable controversy exists between Plaintiffs and Rembrandt regarding the infringement and validity of the '903 patent.

32. Plaintiffs have not infringed (directly or indirectly) any valid, enforceable claim of the '903 patent, either literally or under the doctrine of equivalents.

33. The '903 patent is invalid because of its failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

34. A judicial declaration of noninfringement and invalidity is necessary and appropriate in order to resolve this controversy.

## COUNT III
### Declaratory Judgment Action for a Declaration of Noninfringement and Invalidity of U.S. Patent No. 5,710,761

35. Paragraphs 1 through 22 are incorporated by reference as if stated fully herein.

36. Rembrandt has accused Adelphia Communications Corporation, Century-TCI Distribution Company, LLC, Century-TCI California, LP, Century-TCI California Communications, LP, Century-TCI Holdings, LLC, Charter Communications Operating, LLC, Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast Corporation, Comcast of Plano, LP, Coxcom, Inc., Parnassos Communications, LP, Parnassos Distribution Company I, LLC, Parnassos Distribution Company II, LLC, Parnassos Holdings, LLC, Parnassos, LP, Time Warner Cable Inc., Time Warner Cable LLC, Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner Entertainment Company, L.P., Time Warner New York Cable LLC and Western NY Cablevision, LP of infringing the '761 patent because of the operational parameters of the cable equipment that they purchase for their cable systems. Specifically, Rembrandt has alleged that DOCSIS is a specification that describes operational parameters of equipment that is used for cable networks. Rembrandt further asserts that DOCSIS-compliant cable modem ("CM") and cable modem termination system ("CMTS") equipment allegedly infringe the '761 patent. Plaintiffs manufacture and sell accused CM and/or CMTS equipment, and each of Plaintiffs has supplied accused CM and/or CMTS equipment to one or more of the cable MSOs that Rembrandt has accused of infringement.

37. An actual and justiciable controversy exists between Plaintiffs and Rembrandt regarding the infringement and validity of the '761 patent.

38. Plaintiffs have not infringed (directly or indirectly) any valid, enforceable claim of the '761 patent, either literally or under the doctrine of equivalents.

39. The '761 patent is invalid because of its failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

40. A judicial declaration of noninfringement and invalidity is necessary and appropriate in order to resolve this controversy.

## COUNT IV
### (Declaratory Judgment Action for a Declaration of Noninfringement and Invalidity of U.S. Patent No. 5,719,858)

41. Paragraphs 1 through 22 are incorporated by reference as if stated fully herein.

42. Rembrandt has accused Cablevision Systems Corporation, Charter Communications Operating, LLC, Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast Corporation, Comcast of Plano, LP, Coxcom, Inc., CSC Holdings, Inc., Time Warner Cable Inc., Time Warner Cable LLC, Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner Entertainment Company, L.P. and Time Warner New York Cable LLC of infringing the '858 patent because of the operational parameters of the cable equipment that they purchase for their cable systems. Specifically, Rembrandt has alleged that DOCSIS is a specification that describes operational parameters of equipment that is used for cable networks. Rembrandt further asserts that DOCSIS-compliant cable modem ("CM") and cable modem termination system ("CMTS") equipment allegedly infringe the '858 patent. Plaintiffs manufacture and sell accused CM and/or CMTS equipment, and each of Plaintiffs has supplied accused CM and/or CMTS equipment to one or more of the cable MSOs that Rembrandt has accused of infringement.

43. An actual and justiciable controversy exists between Plaintiffs and Rembrandt regarding the infringement and validity of the '858 patent.

44. Plaintiffs have not infringed (directly or indirectly) any valid, enforceable claim of the '858 patent, either literally or under the doctrine of equivalents.

45. The '858 patent is invalid because of its failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

46. A judicial declaration of noninfringement and invalidity is necessary and appropriate in order to resolve this controversy.

### COUNT V
### (Declaratory Judgment Action for a Declaration of Noninfringement and Invalidity of U.S. Patent No. 5,778,234)

47. Paragraphs 1 through 22 are incorporated by reference as if stated fully herein.

48. Rembrandt has accused Adelphia Communications Corporation, Century-TCI Distribution Company, LLC, Century-TCI California, LP, Century-TCI California Communications, LP, Century-TCI Holdings, LLC, Charter Communications Operating, LLC, Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast Corporation, Comcast of Plano, LP, Coxcom, Inc., Parnassos Communications, LP, Parnassos Distribution Company I, LLC, Parnassos Distribution Company II, LLC, Parnassos Holdings, LLC, Parnassos, LP, Time Warner Cable Inc., Time Warner Cable LLC, Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner Entertainment Company, L.P., Time Warner New York Cable LLC and Western NY Cablevision, LP of infringing the '234 patent because of the operational parameters of the cable equipment that they purchase for their cable systems. Specifically, Rembrandt has alleged that DOCSIS is a specification that describes operational parameters of equipment that is used for cable networks. Rembrandt further asserts that DOCSIS-compliant cable modem ("CM") and cable modem termination system ("CMTS") equipment allegedly infringe the '234 patent. Plaintiffs manufacture and sell accused CM and/or

CMTS equipment, and each of Plaintiffs has supplied accused CM and/or CMTS equipment to one or more of the cable MSOs that Rembrandt has accused of infringement.

49. An actual and justiciable controversy exists between Plaintiffs and Rembrandt regarding the infringement and validity of the '234 patent.

50. Plaintiffs have not infringed (directly or indirectly) any valid, enforceable claim of the '234 patent, either literally or under the doctrine of equivalents.

51. The '234 patent is invalid because of its failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

52. A judicial declaration of noninfringement and invalidity is necessary and appropriate in order to resolve this controversy.

## COUNT VI
### (Declaratory Judgment Action for a Declaration
### of Noninfringement and Invalidity of U.S. Patent No. 5,852,631)

53. Paragraphs 1 through 22 are incorporated by reference as if stated fully herein.

54. Rembrandt has accused Cablevision Systems Corporation, Charter Communications Operating, LLC, Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast Corporation, Comcast of Plano, LP, Coxcom, Inc., CSC Holdings, Inc., Time Warner Cable Inc., Time Warner Cable LLC, Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner Entertainment Company, L.P. and Time Warner New York Cable LLC of infringing the '631 patent because of the operational parameters of the cable equipment that they purchase for their cable systems. Specifically, Rembrandt has alleged that DOCSIS is a specification that describes operational parameters of equipment that is used for cable networks. Rembrandt further asserts that DOCSIS-compliant cable modem ("CM") and cable modem termination system ("CMTS") equipment allegedly infringe the '631 patent. Plaintiffs manufacture and sell accused CM and/or CMTS equipment, and each of the Plaintiffs has

supplied accused CM and/or CMTS equipment to one or more of the cable MSOs that Rembrandt has accused of infringement.

55. An actual and justiciable controversy exists between Plaintiffs and Rembrandt regarding the infringement and validity of the '631 patent.

56. Plaintiffs have not infringed (directly or indirectly) any valid, enforceable claim of the '631 patent, either literally or under the doctrine of equivalents.

57. The '631 patent is invalid because of its failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

58. A judicial declaration of noninfringement and invalidity is necessary and appropriate in order to resolve this controversy.

<div align="center">

**COUNT VII**
**(Declaratory Judgment Action for a Declaration**
**of Noninfringement and Invalidity of U.S. Patent No. 6,131,159)**

</div>

59. Paragraphs 1 through 22 are incorporated by reference as if stated fully herein.

60. Rembrandt has accused Adelphia Communications Corporation, Century-TCI Distribution Company, LLC, Century-TCI California, LP, Century-TCI California Communications, LP, Century-TCI Holdings, LLC, Charter Communications Operating, LLC, Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast Corporation, Comcast of Plano, LP, Coxcom, Inc., Parnassos Communications, LP, Parnassos Distribution Company I, LLC, Parnassos Distribution Company II, LLC, Parnassos Holdings, LLC, Parnassos, LP, Time Warner Cable Inc., Time Warner Cable LLC, Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner Entertainment Company, L.P., Time Warner New York Cable LLC and Western NY Cablevision, LP of infringing the '159 patent because of the operational parameters of the cable equipment that they purchase for their cable systems. Specifically, Rembrandt has alleged that DOCSIS is a specification that describes operational

parameters of equipment that is used for cable networks. Rembrandt further asserts that DOCSIS-compliant cable modem ("CM") and cable modem termination system ("CMTS") equipment allegedly infringe the '159 patent. Plaintiffs manufacture and sell accused CM and/or CMTS equipment, and each of Plaintiffs has supplied accused CM and/or CMTS equipment to one or more of the cable MSOs that Rembrandt has accused of infringement.

61. An actual and justiciable controversy exists between Plaintiffs and Rembrandt regarding the infringement of the '159 patent.

62. Plaintiffs have not infringed (directly or indirectly) any valid, enforceable claim of the '159 patent, either literally or under the doctrine of equivalents.

63. The '159 patent is invalid because of its failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

64. A judicial declaration of noninfringement and invalidity is necessary and appropriate in order to resolve this controversy.

## COUNT VIII
### (Declaratory Judgment Action for a Declaration
### of Noninfringement and Invalidity of U.S. Patent No. 6,950,444)

65. Paragraphs 1 through 22 are incorporated by reference as if stated fully herein.

66. Rembrandt has accused Adelphia Communications Corporation, Century-TCI Distribution Company, LLC, Century-TCI California, LP, Century-TCI California Communications, LP, Century-TCI Holdings, LLC, Charter Communications Operating, LLC, Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast Corporation, Comcast of Plano, LP, Coxcom, Inc., Parnassos Communications, LP, Parnassos Distribution Company I, LLC, Parnassos Distribution Company II, LLC, Parnassos Holdings, LLC, Parnassos, LP, Time Warner Cable Inc., Time Warner Cable LLC, Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner Entertainment Company, L.P., Time Warner New

York Cable LLC and Western NY Cablevision, LP of infringing the '444 patent because of the operational parameters of the cable equipment that they purchase for their cable systems. Specifically, Rembrandt has alleged that DOCSIS is a specification that describes operational parameters of equipment that is used for cable networks. Rembrandt further asserts that DOCSIS-compliant cable modem ("CM") and cable modem termination system ("CMTS") equipment allegedly infringe the '444 patent. Plaintiffs manufacture and sell accused CM and/or CMTS equipment, and each of Plaintiffs has supplied accused CM and/or CMTS equipment to one or more of the cable MSOs that Rembrandt has accused of infringement.

67. An actual and justiciable controversy exists between Plaintiffs and Rembrandt regarding the infringement and validity of the '444 patent.

68. Plaintiffs have not infringed (directly or indirectly) any valid, enforceable claim of the '444 patent, either literally or under the doctrine of equivalents.

69. The '444 patent is invalid because of its failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

70. A judicial declaration of noninfringement and invalidity is necessary and appropriate in order to resolve this controversy.

## COUNT IX
### (Declaratory Judgment Action for a Declaration
### of Patent Unenforceability Due to Inequitable Conduct)

71. Paragraphs 1 through 22 are incorporated by reference as if stated fully herein.

72. An actual and justiciable controversy exists between Plaintiffs and Defendants regarding the enforceability of the '819, '903, '761, '858, '234, '631, '159, and '444 patents (the "Fraudulently Obtained Patents").

73. Individuals subject to the duty of candor under 37 C.F.R. 1.56 ("Applicants"), including named inventors in the applications referenced below and employees with substantive

involvement in the filing and/or prosecution of patent applications for Paradyne entities, engaged in inequitable conduct by engaging in a pattern and practice of withholding or misstating material information with intent to deceive the United States Patent & Trademark Office ("USPTO") in connection with patent prosecution of the Fraudulently Obtained Patents.  On multiple occasions, Applicants failed to disclose their own previously issued patents that comprised material prior art, failed to disclose material information regarding their own co-pending applications for patents, failed to disclose prior art that was known to them through the prosecution of their own patents and applications, and failed to disclose their own systems that implemented undisclosed, material prior art and that were on-sale prior to the relevant critical dates.  In addition to nondisclosure, Applicants in the prosecution chain of the '159 and '234 patents provided affirmative misstatements as set forth below.  Accordingly, Applicants engaged in an overall pattern and practice of repeatedly and continuously failing to disclose to the USPTO material information of which Applicants were indisputably aware.  The permeation and continuation of this misconduct throughout prosecution of multiple patent applications confirms that Applicants acted with deceptive intent rendering the patents unenforceable.  Further, the doctrine of infectious unenforceability renders related patents unenforceable.

74. More specifically, during prosecution of the '761 patent, Applicants engaged in inequitable conduct before the USPTO, rendering the '761 patent unenforceable by withholding and failing to disclose material information with intent to deceive including the following acts:

(i)    By way of example, MPEP § 2001.06(b) states that "there is a duty to bring to the attention of the examiner, or other Office official involved with the examination of a particular application, information within their knowledge as to other co-pending United States applications which are 'material to patentability' of the

application in question." The MPEP cites to caselaw providing that "[W]e think that it is unfair to the busy examiner, no matter how diligent and well informed he may be, to assume that he retains details of every pending file in his mind when he is reviewing a particular application . . . [T]he applicant has the burden of presenting the examiner with a complete and accurate record to support the allowance of letters patent." The MPEP provides express examples of material information as to other co-pending applications, stating "[f]or example, if a particular inventor has different applications pending in which similar subject matter but patentably indistinct claims are present that fact must be disclosed to the examiner of each of the involved applications. Similarly, the prior art references from one application must be made of record in another subsequent application if such prior art references are 'material to patentability' of the subsequent application."

(ii)   Notwithstanding these clear obligations, during prosecution, Applicants repeatedly failed to disclose material information within their knowledge as to co-pending applications of which they were aware. One or more Applicants were aware of and failed to disclose, without limitation, co-pending application 08/780,762 (now the '631 patent, which is now commonly asserted here along with the '761 patent), as well as Application Nos. 08/781,787, now issued as U.S. Patent No. 5,751,796 ("Rapid Startup Protocol For Communication Between a Plurality of Modems"), to Scott and Zuranski, 08/781,067 now issued as U.S. Patent No. 5,796,808 ("System and Method for Automatically Selecting the Mode of Communication between a Plurality of Modems"), to Scott and Lastinger Jr.,

08/780,238, now issued as U.S. Patent No. 5,787,363 ("System and Method for Connect Message Synchronization of Modems in a Cellular Data Gateway"), to Scott and Lastinger Jr., 08/457,881, now issued as U.S. Patent No. 5,793,809 ("Transparent Technique for Mu-Law Modems to Detect an All-Digital Circuit Connection"), to Holmquist, 08/912,126, now issued as U.S. Patent No. 6,081,556 ("Transparent Technique for Mu-Law Modems to Detect an All-Digital Circuit Connection"), to Holmquist, and 08/978,536, now issued as U.S. Patent No. 5,349,635 ("Half-Duplex or Full-Duplex Automode Operation for use in Data Communications Equipment"), to Scott (the "'761 Co-Pending Applications"). The Applicants for the '761 patent failed to identify any of these co-pending applications or their claims to the examiner in the prosecution of the '761 patent. These applications were never disclosed on any IDS that was submitted in the '761 patent or otherwise made of record in the '761 patent. Information relating to the '761 Co-Pending Applications and their claims was material to patentability. One or more Applicants were aware of the '761 Co-Pending Applications. Four of the '761 Co-Pending Applications include Robert Scott as a named inventor, and in the case of the '761 and '631 patents, he is the sole named inventor on both. Robert Scott was aware of the co-pendency of his applications. In addition, on information and belief, a reasonable opportunity for discovery will show that Paradyne personnel were substantively involved in the filing or prosecution of the '761 patent and were aware of the '761 Co-Pending Applications. Material information relating to the '761 Co-Pending Applications was withheld with intent

to deceive the USPTO as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

(iii)    Further, Applicants failed to disclose in prosecution of the '761 patent, the prior art of record from the '761 Co-Pending Applications, including without limitation U.S. Patent Nos. 4,905,282 ("Feature Negotiation Protocol and Dynamically Adjustable Retraining Sequence for a High Speed Half Duplex Modem"), to McGlynn and Nash ("McGlynn"), 5,425,080 ("Transaction Terminal Apparatus and Method Using Host Dial String Control of Modem Connect Protocols"), to Abbie ("Abbie"), 4,931,250 ("Multimode Modem"), to Greszczuk ("Greszczuk"), 5,491,720 ("Method and System for Automatically Determining Data Communication Device Type and Corresponding Transmission Rate"), to Davis, Linger, Mandalia, Sinibaldi, Zevin, and Ziegenhain ("Davis"), 5,311,578 ("Technique for Automatic Identification of a Remote Modem"), to Bremer ("'578 Bremer et al."), 5,317,594 ("Systems for and Method of Identifying V.Fast Modem Within Existing Automatic Interworking Procedure Standards"), to Goldstein ("Goldstein"), 5,528,679 ("Automatic Detection of Digital Call Paths in a Telephone System"), to Taarud ("Taarud"), 4,680,773 ("Data Telecommunications System"), to Amundson ("Amundson"), and 4,782,498 ("Modem with Improved Handshaking Capability"), to Copeland, III ("Copeland") (the "'761 Co-Pending Art"). The '761 Co-Pending Art was material to the patentability of the '761 patent. Applicants for the '761 patent failed to identify any '761 Co-Pending Art to the examiner in the prosecution of the '761 patent. For example, McGlynn, Abbie, Greszczuk, Davis and Goldstein

were each cited by the Examiner of the '631 patent in a Detailed Office Action and accompanying Notice of References Cited mailed on 9/12/97. Further, Greszczuk was cited in the 08/781,067 application on an IDS submitted on August 12, 1997, and in the 08/781,787 application on an IDS submitted October 6, 1997. The '761 patent was still pending and did not issue until January 20, 1998. One or more Applicants were aware of the '761 Co-Pending Art. Robert Scott is the same and only named inventor on both the '631 and the '761 patents. In addition, on information and belief, a reasonable opportunity for discovery will show that Paradyne personnel substantively involved in the filing or prosecution of the '761 patent were aware of the '761 Co-Pending Art, as well as U.S. Patent Nos. 5,600,712 ("Enabling Technique for Quickly Establishing High Speed PSTN Connections In Telecommuting Applications"), to Hanson, 5,577,105 ("Telephone Call Routing and Switching Techniques for Data Communications"), to Baum, 5,127,041 ("System and Method for Interfacing Computers to Diverse Telephone Networks"), to O'Sullivan, and Weissman, et al., "Interoperable Wireless Data," IEEE Communications Magazine, vol. 31, No. 2, pp. 68-77. In fact, while the '761 patent remained co-pending, Applicants attempted to distinguish prior art of record in the '631 patent, including transmitting a First Response with Amendments on October 23, 1997. Notwithstanding the October 23, 1997 response, the USPTO issued a Detailed Action rejecting the claims in the '631 patent based upon prior art to McGlynn in an office action dated November 18, 1997, while the application for the '761 patent remained co-pending, and Applicants nevertheless failed to disclose McGlynn in prosecution

of the '761 patent. Further, Applicants for the '761 patent failed to disclose in prosecuting the '761 patent the office actions and responses from the co-pending '631 patent and the prior art of record referenced in those office actions and responses. The undisclosed information described herein was material to patentability of the '761 patent. The undisclosed information described herein was material to patentability of the '761 patent and was withheld with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

75. Additional instances of misconduct occurred in prosecution of the '631 patent, where Applicants engaged in inequitable conduct before the USPTO rendering the patent unenforceable by withholding and failing to disclose material information with intent to deceive including the following acts:

(i)    By way of example, MPEP § 2001.06(b) states that "there is a duty to bring to the attention of the examiner, or other Office official involved with the examination of a particular application, information within their knowledge as to other co-pending United States applications which are 'material to patentability' of the application in question." The MPEP cites to caselaw providing that "[W]e think that it is unfair to the busy examiner, no matter how diligent and well informed he may be, to assume that he retains details of every pending file in his mind when he is reviewing a particular application . . . [T]he applicant has the burden of presenting the examiner with a complete and accurate record to support the allowance of letters patent." The MPEP provides express examples of material information as to other co-pending applications, stating "[f]or example, if a

particular inventor has different applications pending in which similar subject matter but patentably indistinct claims are present that fact must be disclosed to the examiner of each of the involved applications.   Similarly, the prior art references from one application must be made of record in another subsequent application if such prior art references are 'material to patentability' of the subsequent application."

(ii)   Notwithstanding these clear obligations, during prosecution, Applicants repeatedly failed to disclose information within their knowledge as to co-pending applications of which they were aware, including without limitation co-pending application 08/458,048 (now the '761 patent, which is now commonly asserted here along with the '631 patent), as well as Application Nos. 08/781,787, now issued as U.S. Patent No. 5,751,796 ("Rapid Startup Protocol For Communication Between a Plurality of Modems") to Scott and Zuranski, 08/781,067 now issued as U.S. Patent No. 5,796,808 ("System and Method for Automatically Selecting the Mode of Communication between a Plurality of Modems"), to Scott and Lastinger Jr., 08/780,238, now issued as U.S. Patent No. 5,787,363 ("System and Method for Connect Message Synchronization of Modems in a Cellular Data Gateway"), to Scott and Lastinger Jr., 08/457,881, now issued as U.S. Patent 5,793,809 ("Transparent Technique for Mu-Law Modems to Detect an All-Digital Circuit Connection"), to Holmquist, and 08/912,126, now issued as U.S. Patent No. 6,081,556 ("Transparent Technique for Mu-Law Modems to Detect an All-Digital Circuit Connection"), to Holmquist (the "'631 Co-Pending Applications."). Applicants for the '631 patent failed to identify any of these co-pending

applications or their claims to the examiner in the prosecution of the '631 patent. These applications are never disclosed on an IDS that was submitted in the '631 patent or otherwise made of record in the '631 patent. One or more Applicants were aware of the '631 Co-Pending Applications during prosecution of the '631 patent. Three of the '631 Co-Pending Applications include Robert Scott as a named inventor and claim priority to the same provisional applications for which priority is claimed by the '631 patent. In addition, on information and belief a reasonable opportunity for discovery will show that further Paradyne personnel were substantively involved in the filing or prosecution of the '631 patent and were aware of the '631 Co-Pending Applications. The information relating to the '631 Co-Pending Applications was material to the patentability of the '631 Patent and was withheld with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

(iii)  Further, Applicants failed to disclose in prosecution of the '631 patent, the prior art of record from the '631 Co-Pending Applications, including without limitation U.S. Patent Nos. 5,550,881 ("Automatic Modulation Mode Selecting Unit and Method for Modems"), to Sridhar and Sheer ("Sridhar"), '578 Bremer et al. ("Bremer"), 5,430,793 ("Apparatus and Method for Configuring a Computer System and a Modem for use in a Particular Country"), to Ueltzen, Mahan, and Horn ("Ueltzen"), 4,715,044 ("Automatic Synchronous/Asynchronous Modem"), to Gartner ("Gartner"), and 5,528,679 ("Automatic Detection of Digital Call Paths in a Telephone System"), to Taarud ("Taarud") (the "'631 Co-Pending Art"). The Applicants did not disclose the '631 Co-Pending Art during prosecution of the

'631 patent. Applicants were aware of the '631 Co-Pending Art during prosecution of the '631 patent. Robert Scott is the same and only named inventor on both the '631 and the '761 patents. In addition, on information and belief a reasonable opportunity for discovery will show that further Paradyne personnel substantively involved in the filing or prosecution of the '631 patent were aware of the '631 Co-Pending Art, as well as U.S. Patent Nos. 5,349,635 ("Half-Duplex or Full-Duplex Automode Operation for use in Data Communications Equipment"), to Scott, 5,600,712 ("Enabling Technique for Quickly Establishing High Speed PSTN Connections In Telecommuting Applications"), to Hanson, 5,577,105 ("Telephone Call Routing and Switching Techniques for Data Communications"), to Baum, 5,127,041 ("System and Method for Interfacing Computers to Diverse Telephone Networks"), to O'Sullivan, 4,680,773 ("Data Telecommunications System"), to Amundson ("Amundson"), and 4,782,498 ("Modem with Improved Handshaking Capability"), to Copeland, III ("Copeland"), and Weissman, et al., "Interoperable Wireless Data," IEEE Communications Magazine, vol. 31, No. 2, pp. 68-77. For example, Sridhar et al. was cited by the Examiner of the '761 patent and used for claim rejections in a Detailed Office Action and accompanying Notice of References Cited dated December 26, 1996. Similarly, Ueltzen was "considered pertinent to applicant's disclosure" in that same Detailed Office Action. The '631 and '761 patent were co-pending on December 26, 1996, and the '631 patent did not issue until December 22, 1998. While the '631 patent remained co-pending, Applicants attempted to distinguish prior art of record in the '761 patent in a Response and

Amendment transmitted March 31, 1997.  Applicants for the '631 patent failed to disclose in prosecuting the '631 patent, the December 26, 1996 office action and the March 31, 1997 response from the co-pending '761 patent or the prior art of record referenced in those communications.  The '631 Co-Pending Art and information described in this paragraph was material to patentability of the '631 patent.  The '631 Co-Pending Art and information described in this paragraph was withheld with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.  In addition, on information and belief, a reasonable opportunity for discovery will show that Robert Scott was improperly listed as sole inventor of the '631 patent with deceptive intent to defraud the USPTO into issuing the '631 patent over the '761 patent.

76. Additional instances of misconduct occurred in prosecution of the '903 patent, where Applicants engaged in inequitable conduct before the USPTO rendering the patent unenforceable by withholding and failing to disclose material information with intent to deceive including the following acts:

(i)    The application for the '903 patent was filed on May 25, 1989, issued April 16, 1991, and named Betts and DesRosiers as inventors.  One or more Applicants was aware of and failed to disclose in prosecution of the '903 patent the following prior art: U.S. Patent Nos. 4,771,232 ("Non-interruptive Spectrum Analyzer for Digital Modems"), to Betts and Zuranski, 4,555,790 ("Digital Modem Having A Monitor For Signal-To-Noise Ratio"), to Betts and Martinez, 4,811,357 ("Secondary Channel for Digital Modems Using Spread Spectrum Subliminal

Induced Modulation"), to Betts and Zuranski, 4,833,690 ("Remote Eye Pattern Display For Digital Modems"), to Betts, Zuranski, Springer, and Balka, 4,639,934 ("Line Impairment Display for Digital Modems"), to Betts, Scott and Zuranski, 4,646,325 ("Index Decoder for Digital Modems"), to Zuranski and Martinez, 3,889,108 ("Adaptive Low Pass Filter"), to Cantrell, 4,669,090 ("Half-Duplex Modem without Turnaround Delay"), to Betts and Martinez, 4,744,092 ("Transparent Error Detection in Half Duplex Modems"), to Betts and Martinez, 4,532,640 ("Phase Tracking Loop for Digital Modem"), to Bremer, Betts, and Martinez, 4,796,279 ("Substrate Preamble Decoder For A High Speed Modem"), to Betts and Martinez (collectively, the "'903 Undisclosed References"). One or more Applicants was aware of the '903 Undisclosed References during prosecution of the '903 patent. For example, Betts is a named inventor in multiple '903 Undisclosed References. In addition, on information and belief a reasonable opportunity for discovery will show that Paradyne personnel substantively involved in the filing or prosecution of the '903 patent were aware of the '903 Undisclosed References. The '903 Undisclosed References were not disclosed to the USPTO in prosecution of the '903 patent. The '903 Undisclosed References were material to patentability of the '903 patent. The '903 Undisclosed References were withheld with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count. In addition, on information and belief, a reasonable opportunity for discovery will show that one or more Applicants was aware of the 3,978,407 ("Fast Start-Up Adaptive Equalizer Communication System Using Two Data

Transmission Rates"), to Forney and Hart (the "'407 patent"), a patent issued to a competitor of Paradyne. The '407 patent was material to patentability. On information and belief, a reasonable opportunity for discovery will show that the '407 patent was withheld with intent to deceive in light of the overall pattern and practice of nondisclosure.

77. Additional instances of misconduct occurred in prosecution of the '444 patent, where Applicants engaged in inequitable conduct before the USPTO rendering the patent unenforceable by withholding and failing to disclose material information with intent to deceive including the following acts:

(i)   By way of example, MPEP § 2001.06(b) states that "there is a duty to bring to the attention of the examiner, or other Office official involved with the examination of a particular application, information within their knowledge as to other co-pending United States applications which are 'material to patentability' of the application in question." The MPEP cites to caselaw providing that "[W]e think that it is unfair to the busy examiner, no matter how diligent and well informed he may be, to assume that he retains details of every pending file in his mind when he is reviewing a particular application . . . [T]he applicant has the burden of presenting the examiner with a complete and accurate record to support the allowance of letters patent." The MPEP provides express examples of material information as to other co-pending applications, stating "[f]or example, if a particular inventor has different applications pending in which similar subject matter but patentably indistinct claims are present that fact must be disclosed to the examiner of each of the involved applications. Similarly, the prior art

references from one application must be made of record in another subsequent application if such prior art references are 'material to patentability' of the subsequent application."

(ii)   Notwithstanding these clear obligations, during prosecution, Applicants repeatedly failed to disclose information within their knowledge as to co-pending applications of which they were aware, including without limitation co-pending Application No. 8/980,996 (the "Co-Pending '996 Application"). The Co-Pending '996 Application, which subsequently issued as U.S. Patent 6,414,964 ("Method and Apparatus for Performing a Multipoint Polling Protocol which Employs Silence Intervals for Controlling Circuit Operation"), and names Holmquist and Betts as inventors, and was filed on December 1, 1997 and issued on July 2, 2002. The application for the '444 patent was filed on August 11, 2000, and issued September 27, 2005, and named Holmquist and Chapman as inventors. In addition, Applicants failed to disclose in the prosecution of the '444, material prior art of record from the Co-Pending '996 Application, including without limitation U.S. Patent No. 5,677,909 ("Apparatus For Exchanging Data Between A Central Station And A Plurality of Wireless Remote Stations On A Time Divided Channel"), issued to Heide. One or more Applicants was aware of the above-referenced information during prosecution of the '444 patent. The undisclosed information referenced in this paragraph was material to patentability of the '444 patent. Applicants failed to disclose this material information relating to this co-pending application with intent to deceive the USPTO, as is particularly

shown by the continuing pattern and practice of nondisclosure referenced in this Count.

(iii)    By way of further example, Application 09/307,454 filed May 7, 1999 for a "System and Method For Transmitting Special Marker Symbol" (subsequently issued as U.S. Patent No. 6,487,244) and Application No. 08/979,455, subsequently issued as U.S. Patent No. 6,137,829 (the "'444 Co-Pending '454 and '455 Applications"), were also co-pending with the '444 patent. The '444 Co-Pending '454 and '455 Applications of Betts comprised prior art to the '444 Patent and were not disclosed to the USPTO in prosecution of the '444 Patent. One or more Applicants was aware of the '444 Co-Pending '454 and '455 Applications during prosecution of the '444 patent. The '444 Co-Pending '454 and '455 applications were material to patentability of the '444 patent and withheld with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

(iv)    By way of further example, during prosecution of the '444 patent application, Applicants repeatedly failed to disclose information within their knowledge as to material prior art of which they were aware, including without limitation 5,506,866 ("Side-Channel Communications In Simultaneous Voice and Data Transmission"), to Bremer, Holmquist, Ko, and Sonders, 5,475,691 ("Voice Activated Data Rate Change in Simultaneous Voice and Data Transmission"), to Chapman and Holmquist, 5,369,703 ("Command and Control Signalling Method and Apparatus"), to Archibald, Davis, and Holmquist, and 4,864,617 ("System and Method for Reducing Deadlock Conditions Caused By Repeated

Transmission of Data Sequences Equivalent to Those Used for Inter-Device Signalling"), to Holmquist.

(v)    In addition, on information and belief, a reasonable opportunity for discovery will show that one or more Applicants was aware of U.S. Patent Nos. 3,978,407 ("Fast Start-Up Adaptive Equalizer Communication System Using Two Data Transmission Rates"), to Forney and Hart, 4,796,279 ("Substrate Preamble Decoder For A High Speed Modem"), to Betts and Martinez, and 5,912,895 ("Information Network Access Apparatus and Methods for Communicating Information Packets Via Telephone Lines"), to Terry and Richards. Applicants failed to disclose these patents to the USPTO in prosecution of the '444 patent. These references were material to patentability of the '444 patent. On information and belief, a reasonable opportunity for discovery will show that Applicants knew of and withheld them with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

(vi)    In addition, on information and belief a reasonable opportunity for discovery will show that Paradyne offered for sale MVL technology more than one year before applying for the '444 patent, that was material to the '444 patent, but failed to disclose those sales as prior art to the USPTO. The withheld information was material to patentability and, on information and belief a reasonable opportunity for discovery will show that this information was withheld with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

78. Additional instances of misconduct occurred during prosecution of the '159 patent, where Applicants engaged in inequitable conduct before the USPTO rendering the patent unenforceable by omitting and misstating material information with intent to deceive including the following acts:

(i)    In prosecution of the '159 patent, the USPTO repeatedly rejected pending claims due to prior art, including without limitation references to Lang and Mori. In response to these and other rejections, Applicants represented that claims required and that they had invented a system that included a "displacement multibit memory address." However, Applicants lacked support for the invention as represented to the USPTO. Applicants misstated and omitted this material information with intent to deceive the USPTO into issuing the claims. These material misstatements and omissions were made with intent to deceive, as further confirmed by the pattern and practice of inequitable conduct alleged throughout this Count. Further, the '234 patent is a divisional of the '159 patent, refers back to acts occurring in prosecution of the '159 patent, and is infected by the unenforceability associated with the '159 patent.

(ii)    In addition, on information and belief, a reasonable opportunity for discovery will show that the Applicants offered the invention on-sale or placed it in public use more than one year before the application date, and applicants withheld this information which was material to patentability with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

79. Additional instances of misconduct occurred in prosecution of the '858 patent, Applicants engaged in inequitable conduct before the USPTO rendering the patent unenforceable by withholding and failing to disclose material information with intent to deceive including the following acts:

(i)    By way of example, MPEP § 2001.06(b) states that "there is a duty to bring to the attention of the examiner, or other Office official involved with the examination of a particular application, information within their knowledge as to other co-pending United States applications which are 'material to patentability' of the application in question." The MPEP cites to caselaw providing that " [W]e think that it is unfair to the busy examiner, no matter how diligent and well informed he may be, to assume that he retains details of every pending file in his mind when he is reviewing a particular application . . . [T]he applicant has the burden of presenting the examiner with a complete and accurate record to support the allowance of letters patent." The MPEP provides express examples of material information as to other co-pending applications, stating "[f]or example, if a particular inventor has different applications pending in which similar subject matter but patentably indistinct claims are present that fact must be disclosed to the examiner of each of the involved applications. Similarly, the prior art references from one application must be made of record in another subsequent application if such prior art references are 'material to patentability' of the subsequent application."

(ii)   Notwithstanding these clear obligations, during prosecution, Applicants failed to disclose information as to co-pending applications including without limitation

Application Nos. 08/607,912, now issued as U.S. Patent No. 5,754,799 ("System and Method for Bus Contention Resolution"), to Hiles, 08/608,378 now issued as 5,768,543 ("Slot-Token Protocol"), to Hiles, and 08/947,279, now issued as 6,108,347 ("Non-Polled Dynamic Slot Time Allocation Protocol") to Holmquist, (the "'858 Co-Pending Applications."). The Applicants for the '858 patent failed to identify any of these co-pending applications or their claims to the examiner in the prosecution of the '858 patent. On information and belief, a reasonable opportunity for discovery will show that Applicants were aware of the '858 Co-Pending Applications during prosecution of the '858 patent. These co-pending applications and their claims were material to the patentability. On information and belief, a reasonable opportunity for discovery will show that this undisclosed information was withheld with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

(iii)    Further, Applicants failed to disclose in prosecution of the '858 patent, the material prior art of record from the '858 Co-Pending Applications, including without limitation U.S. Patent Nos. 4,608,700 ("Serial Multi-Drop Data Link"), to Kirtley, Sterling, and Williams, and 5,398,243 ("Arbitration Method and Bus for Serial Data Transmission"), to Aguilhon, Doucet, and Karcher (the "'858 Co-Pending Art"). The Applicants did not disclose the '858 Co-Pending Art during prosecution of the '858 patent. On information and belief, a reasonable opportunity for discovery will show that one or more Applicants was aware of the '858 Co-Pending Art during prosecution of the '858 patent. This undisclosed

information was material to patentability of the '858 patent. On information and belief, a reasonable opportunity for discovery will show this information was withheld with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

(iv)    In addition, one or more Applicants was aware of U.S. Patent No. 4,797,815 ("Interleaved Synchronous Bus Access Protocol for a Shared Memory Multi-Processor System"), to Moore (the same inventor as the '858), and, on information and belief, a reasonable opportunity for discovery will show one or more Applicants was aware of U.S. Patent Nos. 3,997,896 ("Data Processing System Providing Split Bus Cycle Operation"), to Cassarino, Jr., Bekampis, Conway, and Lemay, 4,181,974 ("System Providing Multiple Outstanding Information Requests"), to Lemay and Curley, and 4,669,056 ("Data Processing System with a Plurality of Processors Accessing a Common Bus to Interleaved Storage"), to Waldecker and Wright. Applicants failed to disclose these patents to the USPTO in prosecution of the '858 patent. These reference were material to patentability of the '858 patent and on information and belief a reasonable opportunity for discovery will show that Applicants knew of and withheld them with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

(v)    Further, in the prosecution of the '858 patent, the Applicants failed to disclose the previously issued '819 patent also assigned to Paradyne. In light of Defendants' allegations in this matter, the '819 patent was material to the '858 patent. On information and belief, a reasonable opportunity for discovery will show that one

or more Applicants was aware of the '819 patent and Applicants' nondisclosure of the '819 patent, in light of the pattern and practice alleged throughout this Count, occurred with the requisite intent to deceive the USPTO into issuing the '858 patent.

80. Additional instances of misconduct occurred in prosecution of the '819 patent, where Applicants failed to disclose previously issued and material prior art U.S. Patent No. 4,630,286 ("Device for Synchronization of Multiple Telephone Circuits"), assigned to Paradyne Corporation. On information and belief, a reasonable opportunity for discovery will show that one or more Applicants was aware of this undisclosed reference during prosecution and that Applicants' nondisclosure of the 4,630,286 patent, in light of the pattern and practice alleged throughout this Count, occurred with the requisite intent to deceive the USPTO into issuing the '819 patent.

## COUNT X
### (Declaratory Judgment Action for a Declaration of Unclean Hands)

81. Paragraphs 1 through 80 are incorporated by reference as if stated fully herein.

82. Rembrandt's claims are barred by unclean hands. Rembrandt asserts the patents identified in Courts I through VIII despite its awareness of the nondisclosures described in the inequitable conduct allegations. Rembrandt asserts to have that it has acquired a portfolio of patents previously assigned to Paradyne.

Rembrandt is aware of the undisclosed and material information referred to in Counts I through IX above through

Rembrandt's alleged acquisition of a portfolio of patents assigned to Paradyne and its assertion of the patents in this case. In fact, after originally filing lawsuits on four patents including the '631 patent, Rembrandt later filed lawsuits specifically adding the '761 patent, specifically alleging infringement of both patents by the same accused instrumentalities. Rembrandt was aware of the co-pendency of those patents as well as their prosecution histories, and the cited art and office actions, and nevertheless specifically endeavored to assert both patents. Rembrandt's knowing assertion of unenforceable patents comprises unclean hands. In addition, as described more fully in their antitrust claims below, Rembrandt has asserted claims for relief without proper basis under the law, and otherwise engaged in conduct comprising further unclean hands.

### ANTITRUST AND UNFAIR COMPETITION CLAIMS

*A. Rembrandt's Acquisition of the Patents*

83. In 2006, in amicus briefing, Rembrandt referred to itself as a "a non-practicing entity ("NPE") — a firm that invests in patents but does not practice them." Rembrandt's website states that it "acquires promising patents from inventors and innovative companies that can't defend their patents against infringement because of the cost of litigation or the threat of business or legal retaliation."

84. In 2004, Rembrandt purportedly acquired the patents-in-suit.

Rembrandt bought the Paradyne patents-in-suit with the intention of asserting them against, among others, MSOs that implement DOCSIS.

85. After selling patents to Rembrandt in 2004, Paradyne was acquired by Zhone Technologies in 2005. Rembrandt thereafter engaged in further transactions with Zhone

Technologies to acquire additional patents, including one or more of the patents-in-suit. These Paradyne and Zhone Technologies transactions allowed Rembrandt to amass patents it claims are essential to practice DOCSIS.

86.

Paradyne did not offer or supply any cable modem equipment to cable operators or cable equipment manufacturers or their customers.

**B. Evading The Supreme Court's eBay Decision**

87.

On information and belief, Rembrandt hoped to use the threat of injunctive relief and/or lost profits-based damages to impose pressure on the cable industry to pay Rembrandt money to license its patents.

88.

*C. Evading the DOCSIS Pool License*

89.   Beginning in the mid-1990s, a group of companies, including a number of Plaintiffs, began to work together to develop a technical specification for the delivery of high-speed data over cable television networks. The first version of DOCSIS was released by CableLabs, a cable industry standards development organization, in 1997. Subsequent versions of the specification have been released since.

90. The goal of the companies involved in the development of DOCSIS was to specify interface requirements so that cable operators and their subscribers would be able to purchase   affordable, interchangeable, highly functional cable modems and other equipment from multiple suppliers. The goal has been realized.  Cable modems are affordable, highly reliable, and available from numerous suppliers, and the delivery of broadband over cable has become a popular method for the delivery of high-speed data services to residential and commercial customers. To ensure that consumers who purchased cable modems would be receiving products that were fully compatible with the DOCSIS standard, CableLabs established a certification program to identify DOCSIS-compliant manufacturers. Certified equipment could then be used in cable systems supporting DOCSIS. Major cable operators may ask vendors to obtain certification from CableLabs.

91. Neither Rembrandt/Remstream[1] nor its Paradyne predecessors participated in the DOCSIS standardization process or publicly commented on the DOCSIS standards.

---

[1]   Rembrandt has several affiliated companies, including Remstream. Because it is not clear where one company ends and the other begins, it is impossible for Plaintiffs at this point to state which entity performed each act. If Plaintiffs have information or belief that a specific act was performed by a specific affiliate, the complaint shall so state. In all other circumstances, Plaintiffs' reference to Rembrandt shall include Rembrandt and all affiliated companies, including Remstream.

On information and belief, both during and after DOCSIS standardization process, and prior to filing lawsuits against cable operators to enforce the patents, neither Rembrandt/Remstream nor its Paradyne predecessors informed CableLabs or Plaintiffs that they had intellectual property they believed read on or covered the DOCSIS standard.

92. To facilitate efficient licensing of patented technology that was essential to implement the original DOCSIS specification and subsequent versions, CableLabs developed a patent pool for the intellectual property essential to the DOCSIS standards. The DOCSIS patent pool was announced by CableLabs in July 1998. Some companies contributing technology essential to the DOCSIS standardization effort signed a document entitled "Data Over Cable Service Interface Specifications License Agreement" (the "DOCSIS License Agreement"), which memorialized the DOCSIS patent pool and the signatories' reciprocal rights to the intellectual property in the pool.

93. DOCSIS patent pool members contribute a non-exclusive license to any intellectual property rights necessary to make products in accordance with the DOCSIS standard, and receive in exchange a license from the pool for all of the intellectual property rights contributed by other signatories. Pool members receive non-exclusive, royalty-free licenses, conditioned upon that member's agreement to *contribute freely*, or on a *reciprocal*, no-cost basis, any intellectual property essential to sell DOCSIS-compliant equipment. Cable operators and cable modem manufacturers saw the DOCSIS patent pool as a major achievement that would help support systems interoperability, enable industry growth, enhance consumer choice, and lower the cost of data over cable services for the consumer.

94. The competitive benefits of the DOCSIS pool structure can best be seen in the fact that over 60 companies have signed licensing agreements to enter the patent pool.

So has                                              in its scheme to destroy many of

the benefits of DOCSIS standards and circumvent the DOCSIS patent pool.

95. Rembrandt

96.

and subsequently

asserting patents it claims are essential to implement the DOCSIS specification against pool

participants and others.

97.

**98.**

**99.**

**100.** <u>On information and belief, Remstream and</u>

**101.** <u>On information and belief, Remstream will continue to agree with one or more entities to engage in similar acts relating to additional cable modems.</u>

**102.** <u>Remstream -- either alone or through partnerships and others -- lacks the capacity to meet U.S. demand for DOCSIS-compliant cable modems. Nevertheless, Remstream claims it may seek lost profits in this litigation.</u>

103.  Rembrandt has also

a cable systems provider. Rembrandt has created or plans to create a sham company

through which it will gain access to customers of Comcast or other competing MSOs that

are implementing the DOCSIS standard and marketing cable services.  This scheme is

intended to support Rembrandt's false claim that it is a practicing entity that has suffered

damages as a purported competitor in the cable systems market.

104.

### D.  The Relevant Antitrust Markets

105. As a result of the transactions with Paradyne and Zhone Technologies described above and certain further actions by Rembrandt/Remstream, Rembrandt/Remstream actually, potentially, and/or purportedly compete in (1) the United States and worldwide markets for technology essential to implement the DOCSIS standard and for technology essential to perform certain functions, allegedly covered by the patents-in-suit, necessary to implement the DOCSIS standard (hereinafter "DOCSIS Technology"); and (2) the United States and worldwide markets for DOCSIS-compliant cable modems (hereinafter "DOCSIS Equipment") (collectively, the "relevant markets").

106. The United States and worldwide development and license of DOCSIS Technology is a relevant market for the following, among other, reasons: (1) once CableLabs selected a particular technology to be incorporated into the DOCSIS standard, all other technologies capable of performing particular functions described in the specification were excluded; (2) a cable modem used by a cable system must conform to the technology of the network system used by the service provider; and (3) once a cable system implements the DOCSIS standard on its system, the cost of switching the network to a different specification for the transmission of broadband data is likely cost prohibitive. Cable operators are unlikely to respond even to a significant increase in the cost of royalties associated with the license of patents essential to implement the DOCSIS specification by switching to a different specification.

107. The United States and worldwide markets for the development, manufacture and distribution of cable modems is a relevant antitrust market for the following, among other, reasons: cable system operators that have chosen to provide broadband services over DOCSIS-compliant networks, which often provide cable modems to their subscribers

so that their subscribers can receive broadband, do not regard alternative customer premises equipment receiving broadband services, such as dial-up modems or DSL modems, as substitutes for DOCSIS-compliant cable modems. Because cable operators provide paid subscriptions to broadband services delivered using DOCSIS, they cannot substitute other modems or other equipment that performs similar functions. Once a cable operator implements DOCSIS on its network, the cost of switching the network to a different specification for the transmission of broadband data is likely prohibitive. Cable operators are unlikely to respond even to a significant increase in the cost of royalties associated with the license of patents essential to implement DOCSIS sby switching to a different specification.

**E.  Rembrandt Asserts the Patents**

108.                                                                                      Remstream continued its "business plan" to exploit the relevant markets by bringing improper patent infringement suits against cable system operators. As alleged in Count IX above, multiple patents-in-suit are unenforceable for inequitable conduct committed during patent prosecution. This inequitable conduct arises from, among other things, Paradyne's pattern and practice of failing to disclose previously issued prior art Paradyne patents and co-pending Paradyne applications and art cited therein that was material to patentability and known to persons subject to a duty of candor to disclose this information to the USPTO. The widespread pattern of Paradyne's failures to satisfy its disclosure obligations confirms that it acted with intent to deceive the USPTO at all relevant times.

and Rembrandt has selected various patents for assertion in litigation while aware of the improper patent prosecution practices of Paradyne.

109. The litigation against the cable operators, which claimed that the operators infringed Rembrandt's intellectual property by implementing the DOCSIS standard, was both objectively and subjectively baseless because of these infirmities of which Rembrandt is aware. Further, in addition to these unenforceability issues, Rembrandt asserts infringement where it is aware that these patents were not developed in the cable industry and that its infringement claims are both objectively and subjectively baseless. Rembrandt attempts to graft its allegations to DOCSIS and yet these patents have no relationship to and are not infringed by compliance with that standard -- facts of which Rembrandt is aware. Furthermore, Rembrandt has attempted to manufacture sham claims for relief where it is aware that as a non-practicing entity it is not entitled to lost profits or injunctive relief. Rembrandt's efforts to manufacture harms fail to meet the relevant standards for the claims to relief and were committed as part of an effort to improperly extract monies from the cable industry.

## COUNT XI
### (Monopolization of the DOCSIS Technology Markets in Violation of Section 2 of the Sherman Act)

110. Plaintiffs repeat and reallege all of the allegations of all of the Paragraphs above as if set forth fully herein.

111. Rembrandt's patent portfolio includes eight patents that it claims are essential to the DOCSIS standard. Rembrandt has accused firms selling and using

DOCSIS-compliant cable modems and CMTS's of infringing these allegedly "essential" patents.

112. Rembrandt claims there are no alternative or design-around technologies by which the DOCSIS standards can be practiced without infringing Rembrandt's intellectual property.

113. Rembrandt has stated that "inventions covered by the asserted claims of the patents-in-suit were implemented as requirements of the DOCSIS standard."

114. Rembrandt claims it has the right to exclude all competition in the DOCSIS Technology Markets. Thus, Rembrandt claims to have monopoly power in the DOCSIS Technology Markets.

115. If Rembrandt's illegal efforts to exclude competition in the market for technology essential to the DOCSIS standard are successful, Rembrandt will have acquired and/or maintained this monopoly power through various exclusionary and predatory acts, and not through superior skill, foresight, or industry. These acts include, but are not limited to, the acts described in the paragraphs above.

116. Rembrandt's agreements and potentially others are intended to, and if upheld, will, hijack the DOCSIS standard after the fact, circumvent the long-established DOCSIS patent pool, raise prices and costs, reduce output, and exclude competition, all to the harm of customers, consumers and competition.

117. Rembrandt is attempting to enforce patents it knows to be invalid, unenforceable, and/or not infringed. Its allegations and claims in its patent actions, including its claims for relief, are brought in bad faith, are objectively and subjectively

baseless, and are motivated by Rembrandt's desire to impose collateral, anti-competitive injury rather than to obtain a justifiable legal remedy.

118. Rembrandt has wrongfully asserted invalid and unenforceable patents, including the patents-in-suit, against multiple non-infringing parties in many forums, establishing a pattern of bad faith litigation as part of an overall scheme to achieve or maintain a monopoly position in the DOCSIS technology market. Particularized allegations of inequitable conduct are set forth above.

119. Rembrandt's monopolistic conduct has already directly and irreparably injured Plaintiffs and competition by forcing Plaintiffs and cable operators to expend significant sums in attorney and litigation fees, and by harming Plaintiffs' reputations and business relationships with customers and consumers.

120. Rembrandt's patent claims are unfair, predatory, and anticompetitive and have no legitimate business or efficiency justification. Rembrandt's conduct has no legitimate pro-competitive justification that would outweigh its anticompetitive effects.

121. Rembrandt's conduct has and will continue to directly and substantially affect and restrain interstate commerce in the United States.

122. Rembrandt's anticompetitive conduct has and will directly and proximately cause antitrust injury to Plaintiffs within the DOCSIS Technology Markets, including but not limited to causing substantial injury to competition, consumers and competitors (including Plaintiffs) in the DOCSIS Technology Markets.

123. Plaintiffs have directly and proximately suffered injury as a result of Rembrandt's anticompetitive conduct.

124. The damages and injuries that Plaintiffs have sustained because of Rembrandt's antitrust violations are direct and unique, and are not duplicative or derivative of any injuries suffered by any other participant in any market alleged herein. Plaintiffs' damages and injuries flow directly from Rembrandt's wrongful, exclusionary acts that make Rembrandt's conduct unlawful.

125. Plaintiffs' antitrust injuries are the direct result of Rembrandt's anticompetitive conduct, alleged herein, which occurred within the United States. The harm and losses to Plaintiffs from Rembrandt's illegal conduct are ongoing and cumulative. Because Rembrandt's actions substantially and adversely injure Plaintiffs' goodwill with their customers and in the DOCSIS Technology Markets generally, monetary compensation alone is not sufficient, leaving Plaintiffs without a sufficient remedy at law.

126. Plaintiffs have suffered irreparable injury by reason of Rembrandt's anticompetitive conduct and will continue to suffer injury unless and until the Court enjoins such conduct.

### COUNT XII
### (Attempted Monopolization of the DOCSIS Equipment Markets in Violation of Section 2 of the Sherman Act)

127. Plaintiffs repeat and reallege all of the allegations of all of the Paragraphs above as if set forth fully herein.

128. As alleged with particularity above, Rembrandt claims to have monopoly power in the DOCSIS Technology Markets, gained in part through agreements with Paradyne.                                        and potentially others.

129. Rembrandt is attempting to                                        and use its above-alleged monopoly power in the DOCSIS Technology Markets by:

enforcing patents it knows to be invalid, unenforceable,

or not infringed, and wrongfully hi-jacking the DOCSIS standard and

so that it can exclude competition and/or raise

its competitors' costs in the worldwide and U.S. DOCSIS Equipment Markets.

130.    Rembrandt's anticompetitive conduct was intended to give, and has the

dangerous probability of giving, Remstream monopoly power over the DOCSIS Equipment

Markets.  Through this conduct, Remstream will have the power to exclude competition,

reduce output, and raise prices in the DOCSIS Equipment Markets -- whether or not

Remstream is able to satisfy market demand for such equipment -- which are necessary

and sufficient elements of monopoly power.

131.    Rembrandt's anticompetitive acts are unfair, predatory, and anticompetitive

and have no legitimate business or efficiency justification.  Rembrandt's conduct, thus, has

no legitimate pro-competitive justification that would outweigh its anticompetitive effects.

132.    Rembrandt's conduct has and will continue to directly affect and restrain

interstate commerce in the United States.

133.    Rembrandt's anticompetitive conduct will directly and proximately cause

antitrust injury to Plaintiffs within the DOCSIS Equipment Markets, including but not

limited to causing substantial injury to competition, and hence to consumers and

competitors (including Plaintiffs), in the DOCSIS Equipment Markets.  Plaintiffs have and

will directly and proximately suffer injury as a result of Rembrandt's anticompetitive

conduct.

134.    Rembrandt has set upon this course of conduct with the specific intent of

monopolizing the DOCSIS Equipment Markets. By asserting its intellectual property

against all DOCSIS-compliant equipment, and purporting to seek injunctive relief,

Rembrandt has claimed to have the power to exclude competitors in (and hence market power over) the DOCSIS Equipment Markets. There is a dangerous probability that, unless restrained, Rembrandt will acquire monopoly power in the DOCSIS Equipment Markets.

135. If Rembrandt successfully excludes competitors from DOCSIS Equipment Markets, it will unilaterally set or maintain prices substantially above competitive levels for the foreseeable future.

136. By reason of Rembrandt's attempted monopolization of the DOCSIS Equipment Markets in violation of Section 2 of the Sherman Act, Plaintiffs have been injured in their business or property including the loss of profits, the loss of customers, the loss of goodwill and product image, loss of sums expanded for attorney and litigation costs, and by their prospective exclusion from DOCSIS Equipment Markets.

137. Plaintiffs have suffered irreparable injury by reason of Rembrandt's anticompetitive conduct and will continue to suffer injury unless and until the Court enjoins such conduct.

## COUNT XIII
### (Conspiracy to Monopolize the DOCSIS Technology Markets and the DOCSIS Equipment Markets in Violation of Section 2 of the Sherman Act)

138. Plaintiffs repeat and reallege all of the allegations of all of the Paragraphs above as if set forth fully herein.

139. Rembrandt has entered into illegal agreements with and potentially others with the intent and effect of giving Remstream monopoly power in the relevant markets, including the DOCSIS Technology and Equipment Markets, or with the intent and effect of giving Remstream a dangerous probability of successfully achieving such monopoly power. These illegal agreements (1)

facilitate Remstream's scheme to hi-jack the long-established DOCSIS standard and hold hostage those who have spent years and millions of dollars developing products relying on the DOCSIS standard, and thereby raise prices, reduce output, and exclude competition; and (2) facilitate Remstream's scheme to:

140.    Rembrandt,                                         and potentially others have all committed overt acts in furtherance of the conspiracies to monopolize, including, but not limited to,:

141.    These conspiracies to monopolize in violation of Section 2 of the Sherman Act harm consumers, customers, and competition, are unfair, predatory, and anticompetitive, and have no legitimate business or efficiency justification.  Rembrandt's conduct, thus, has no legitimate pro-competitive justification that would outweigh its anticompetitive effects.

142.    These conspiracies to monopolize in violation of Section 2 of the Sherman Act have and will continue to directly affect and restrain interstate commerce in the United States.

143.    Rembrandt's anticompetitive conduct will directly and proximately cause antitrust injury to Plaintiffs within the relevant markets, including but not limited to causing substantial injury to competition, and hence to consumers and competitors

## COUNT XIV
### (Unfair Business Practices Under Section 17200 of
### California Business & Professions Code)

148. Plaintiffs repeat and reallege all of the allegations of all of the Paragraphs above as if set forth fully herein.

149. Rembrandt has engaged in unfair competition within the meaning of Section 17200 of the California Business and Professions Code.

150. Rembrandt's conduct constitutes: (1) unlawful business acts or practices; (2) unfair business acts or practices; and (3) fraudulent business acts or practices.

151. Several of the plaintiffs are located in California, and, on information and belief, several of Rembrandt's illegal, unfair, and fraudulent acts occurred in California. Each of Rembrandt's illegal, unfair and fraudulent acts have harmed and threaten to further harm California customers, consumers, and competition within California, including by increasing the prices California consumers pay for cable modems or decreasing the supply of cable modems.

152. As is alleged with particularity above, Rembrandt committed unlawful business acts by: (1) monopolizing the DOCSIS Technology Markets, and (2) attempting to monopolize the DOCSIS Equipment Markets.

153. Each of the unlawful business acts identified above have continuing anticompetitive effects in the state of California and throughout the United States.

154. As alleged with particularity above, Rembrandt engaged in unfair business practices by: (1) facilitating Remstream's scheme to hijack the DOCSIS standard and hold hostage those who rely on the DOCSIS standard, and thereby raise costs, limit competition, and reduce efficiency; and (2)

(including Plaintiffs), in the relevant markets. Plaintiffs have and will directly and proximately suffer injury as a result of Rembrandt's anticompetitive conduct.

144. Rembrandt, (and potentially others to be revealed in discovery) have set upon this course of conduct with the specific intent for Rembrandt to monopolize the relevant markets. There is a dangerous probability that, unless restrained, Rembrandt will acquire a monopoly in the relevant markets.

145. By asserting its intellectual property against all DOCSIS-compliant equipment, and purporting to seek injunctive relief, Rembrandt claims to have the power to exclude other competitors from (and hence have monopoly power in) each of the relevant markets. If Rembrandt drives its competitors from the market by raising competitors' costs, it will have the power to unilaterally set or maintain prices substantially above competitive levels for the foreseeable future.

146. By reason of Rembrandt's participation in the conspiracy to monopolize the relevant markets in violation of Section 2 of the Sherman Act, Plaintiffs face a substantial risk of injury to their business or property including the loss of profits, the loss of customers, the loss of goodwill and product image, lost sums expended for attorneys fees and litigation costs, and the prospective destruction of the relevant markets.

147. Plaintiffs have suffered irreparable injury by reason of Rembrandt's anticompetitive conduct and will continue to suffer injury unless and until the Court enjoins such conduct.

155. These actions reduce output, prevent competition on the standardized product, raise prices, waste the time and money spent standardizing the product, and run counter to the policy of encouraging the setting of standards to promote competition. Such actions subvert the key purpose of standard setting. Under Remstream's approach, only one company -- Remstream -- is legally permitted to sell DOCSIS-compliant cable modems. Remstream cannot meet the market demand, and could charge supra-competitive prices for the limited cable modems it can sell. Customers and consumers will be seriously harmed, either by not getting a cable modem or having to pay an exorbitant price for one. These actions would result in higher prices and less competition, and are therefore unfair business practices.

156. Each of the unfair business acts identified above is unfair when the effect of the act on Plaintiffs is balanced against Rembrandt's reasons, justifications, and motives for that act.

157. Each of the unfair business acts identified above violates the policy or spirit of the antitrust laws because it harms Plaintiffs, competition, and consumers.

158. Each of the unfair business acts identified above has continuing anticompetitive effects in California and throughout the United States.

159. Rembrandt committed fraudulent business acts by engaging in the conduct as pleaded herein, including but not limited to, by asserting patents it knows were obtained via fraud on the Patent Office; asserting patents it knows to be unenforceable or not

infringed; asserting sham claims for relief, causing these fraudulent claims to be publicized to consumers; and perpetuating a ruse to exclude competitors through patent litigation.

160. Each of the fraudulent business acts identified above has continuing anticompetitive effects in California and throughout the United States.

161. By reason of Rembrandt's unlawful, unfair, and fraudulent business conduct, Plaintiffs have suffered injury-in-fact and have been deprived of money or property in which they have a vested interest unless and until the Court enjoins such conduct. Plaintiffs' injuries in fact are irreparable, and Plaintiffs will continue to suffer injury-in-fact.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask that this Court enter judgment in Plaintiffs' favor and grant the following relief:

A. A declaration that Plaintiffs have not infringed any of the claims of U.S. Patent Nos. 4,937,819; 5,008,903; 5,710,761; 5,719,858; 5,778,234; 5,852,631; 6,131,159 or 6,950,444;

B. A declaration that U.S. Patent Nos. 4,937,819; 5,008,903; 5,710,761; 5,719,858; 5,778,234; 5,852,631; 6,131,159 or 6,950,444 are invalid for failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112;

C. A declaration that U.S. Patent Nos. 4,937,819; 5,008,903; 5,710,761; 5,719,858; 5,778,234; 5,852,631; 6,131,159 or 6,950,444 are unenforceable and/or that Rembrandt's unclean hands preclude its enforcement of the patents in this suit;

D. An injunction against Rembrandt and its affiliates, subsidiaries, assigns, employees, agents or anyone acting in privity or concert with Rembrandt from charging infringement or

instituting or continuing any legal action for infringement of U.S. Patent Nos. 4,937,819;

5,008,903; 5,710,761; 5,719,858; 5,778,234; 5,852,631; 6,131,159 or 6,950,444 against

Plaintiffs, their customers, or anyone acting in privity with Plaintiffs;

  E.  An order declaring that Plaintiffs are prevailing parties and that this is an exceptional

case, awarding Plaintiffs their costs, expenses, disbursements and reasonable attorney fees under

35 U.S.C. § 285 and all other applicable statutes, rules and common law;

  **F.  Adjudge and decree that Rembrandt has violated Section 2 of the Sherman Act,**

**15 U.S.C. § 2; that Rembrandt has violated Section 17200, *et seq.*, of the California Business**

**and Professions Code;**

  **G.  On Plaintiffs' ninth through fourteenth claims for relief, enter judgment against**

**Rembrandt for treble the amount of Plaintiffs' damages as proven at trial in accordance**

**with Section 4 of the Clayton Act, 15 U.S.C. § 15;**

  **H.  Pursuant to applicable federal and state laws, including the Clayton Act, 15 U.S.**

**§ 16 and Section 17200, *et seq.*, of the California Business & Professions Code, enjoin**

**Rembrandt's continuing violations of law by:  (1) barring Rembrandt from asserting the**

**patents and other intellectual property rights it has claimed are essential to practice the**

**DOCSIS standard against parties manufacturing, selling, purchasing or using products**

**practicing that standard; (2) requiring Rembrandt to grant CableLabs' royalty-free patent**

**pool a license to those patents claimed essential to the DOCSIS standards; (3) prohibiting**

**actions in furtherance of the illegal agreements reached between Rembrandt and**

**and Rembrandt and**

  **I.  Enter further equitable relief as necessary or appropriate, including full**

**restitution to Plaintiffs and/or disgorgement of all revenues, earnings, profits,**

**compensation, and benefits that may have been obtained by Rembrandt from Plaintiffs, its actual customers, and its potential customers as a result of Rembrandt's unlawful, unfair, and fraudulent business acts;**

**J.** F. Award Plaintiffs their costs and expenses of litigation, including attorneys' fees and expert witness fees; and

**K.** G. Enter judgment against Rembrandt for such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a

jury trial on all issues so triable.

Respectfully submitted,

_____

Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
1000 West Street
Wilmington, DE 19801
(302) 571-6600
jshaw@ycst.com

*Co-Liaison Counsel and Attorneys for
Plaintiffs/Counter-Defendants Motorola,
Inc., Cisco Systems, Inc., Scientific-Atlanta,
Inc., ARRIS Group, Inc., Thomson, Inc.,
Ambit Microsystems, Inc., and NETGEAR,
Inc.*

Of Counsel:

John M. Desmarais, P.C.
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022-4611

Eric R. Lamison
Benjamin Ostapuk
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104

Date:   April 11, 2008

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: REMBRANDT TECHNOLOGIES, LP PATENT LITIGATION | ) ) ) ) ) ) ) |
| | MDL Docket No. 07-md-1848 (GMS) |

| | |
|---|---|
| MOTOROLA, INC., CISCO SYSTEMS, INC., SCIENTIFIC-ATLANTA, INC., ARRIS GROUP, INC., THOMSON, INC., AMBIT MICROSYSTEMS, INC., and NETGEAR, INC. | ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 07-752-GMS |
| REMBRANDT TECHNOLOGIES, LP, and REMBRANDT TECHNOLOGIES, LLC d/b/a REMSTREAM, | ) ) ) ) |
| Defendants. | ) ) ) |

| | |
|---|---|
| REMBRANDT TECHNOLOGIES, LP, and REMBRANDT TECHNOLOGIES, LLC d/b/a REMSTREAM, | ) ) ) ) |
| Counter-Plaintiffs, | ) ) |
| v. | ) Civil Action No. 07-752-GMS |
| MOTOROLA, INC., CISCO SYSTEMS, INC., SCIENTIFIC-ATLANTA, INC., ARRIS GROUP, INC., THOMSON, INC., AMBIT MICROSYSTEMS, INC., and NETGEAR, INC., TIME WARNER CABLE, INC., TIME WARNER CABLE LLC, TIME WARNER NEW YORK CABLE LLC, TIME WARNER ENTERTAINMENT COMPANY, LP, COMCAST CORPORATION, COMCAST CABLE COMMUNICATIONS, LLC, CHARTER | ) ) ) ) ) ) ) ) ) ) ) ) ) |

COMMUNICATIONS OPERATING, LLC,           )
COXCOM, INC., COX COMMUNICATIONS,        )
INC., COX ENTERPRISES, INC., CSC         )
HOLDINGS, INC., CABLEVISION SYSTEMS      )
CORPORATION, ADELPHIA                    )
COMMUNICATIONS CORPORATION,              )
CENTURY-TCI CALIFORNIA                   )
COMMUNICATIONS, LP, CENTURY-TCI          )
HOLDINGS, LLC, COMCAST OF                )
FLORIDA/PENNSYLVANIA, L.P. (f/k/a        )
PARNASSOS, LP), COMCAST OF               )
PENNSYLVANIA II, L.P. (f/k/a CENTURY-TCI )
CALIFORNIA, L.P.), PARNASSOS             )
COMMUNICATIONS, LP, ADELPHIA             )
CONSOLIDATION, LLC, PARNASSOS            )
HOLDINGS, LLC, and WESTERN NY            )
CABLEVISION, LP,                         )
                                         )
        Counter-Defendants.              )

_____

### [PROPOSED] ORDER

This _____ day of _____, 2008, Plaintiffs and Counter-Defendants Motorola, Inc,

Cisco Systems, Inc., Scientific-Atlanta, Inc., ARRIS Group, Inc., Thomson, Inc., Ambit

Microsystems, Inc., and NETGEAR, Inc.'s Motion for Leave to Amend Complaint is HEREBY

GRANTED.

_____
United States District Court Judge