IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE: REMBRANDT TECHNOLOGIES, LP PATENT LITIGATION | MDL Docket No. 07-md-1848 (GMS) |
| MOTOROLA, INC., CISCO SYSTEMS, INC., SCIENTIFIC-ATLANTA, INC., ARRIS GROUP, INC., THOMSON, INC., AMBIT MICROSYSTEMS, INC., and NETGEAR, INC. | |
| Plaintiffs, | |
| v. | Civil Action No. 07-752-GMS |
| REMBRANDT TECHNOLOGIES, LP, and REMBRANDT TECHNOLOGIES, LLC d/b/a REMSTREAM, | |
| Defendants. | **JURY TRIAL DEMANDED** |
| REMBRANDT TECHNOLOGIES, LP, and REMBRANDT TECHNOLOGIES, LLC d/b/a REMSTREAM, | |
| Counter-Plaintiffs, | |
| v. | Civil Action No. 07-752-GMS |
| MOTOROLA, INC., CISCO SYSTEMS, INC., SCIENTIFIC-ATLANTA, INC., ARRIS GROUP, INC., THOMSON, INC., AMBIT MICROSYSTEMS, INC., and NETGEAR, INC., TIME WARNER CABLE, INC., TIME WARNER CABLE LLC, TIME WARNER NEW YORK CABLE LLC, TIME WARNER ENTERTAINMENT COMPANY, LP, COMCAST CORPORATION, COMCAST CABLE COMMUNICATIONS, LLC, CHARTER | **JURY TRIAL DEMANDED** |

COMMUNICATIONS OPERATING, LLC, )
COXCOM, INC., COX COMMUNICATIONS, )
INC., COX ENTERPRISES, INC., CSC )
HOLDINGS, INC., CABLEVISION SYSTEMS )
CORPORATION, ADELPHIA )
COMMUNICATIONS CORPORATION, )
CENTURY-TCI CALIFORNIA )
COMMUNICATIONS, LP, CENTURY-TCI )
HOLDINGS, LLC, COMCAST OF )
FLORIDA/PENNSYLVANIA, L.P. (f/k/a )
PARNASSOS, LP), COMCAST OF )
PENNSYLVANIA II, L.P. (f/k/a CENTURY-TCI )
CALIFORNIA, L.P.), PARNASSOS )
COMMUNICATIONS, LP, ADELPHIA )
CONSOLIDATION, LLC, PARNASSOS )
HOLDINGS, LLC, and WESTERN NY )
CABLEVISION, LP, )
                                                      )
              Counter-Defendants.        )
_____  )

## AMENDED COMPLAINT

Plaintiffs Motorola, Inc. ("Motorola"), Cisco Systems, Inc. ("Cisco"), Scientific-Atlanta, Inc. ("Scientific-Atlanta"), ARRIS Group, Inc. ("ARRIS"), Thomson, Inc. ("Thomson"), Ambit Microsystems, Inc. ("Ambit") and NETGEAR, Inc. ("NETGEAR")(collectively "Plaintiffs") are suppliers of DOCSIS industry standard cable modem equipment that Rembrandt has accused of infringement.  Plaintiffs have filed this Amended Complaint to stop Rembrandt's improper assertion of invalid and unenforceable patents and to vindicate their products and their customers' lawful use of their products from Rembrandt's baseless infringement charges. Accordingly, for their Complaint against Rembrandt, Plaintiffs hereby demand a jury trial and allege as follows:

## PARTIES

1.  Plaintiff Ambit is a California corporation with its principal place of business at 9570 La Costa Lane, Lone Tree, CO 80124.

2.  Plaintiff ARRIS is a Delaware corporation with its principal place of business at 3871 Lakefield Drive, Suwanee, GA, 30024.

3.  Plaintiff Cisco is a California corporation with its principal place of business at 170 West Tasman Drive, San Jose, CA 95134.

4.  Plaintiff Motorola is a Delaware corporation with its principal place of business at 1303 E. Algonquin Road, Schaumburg, IL 60196.

5.  Plaintiff NETGEAR is a Delaware corporation with its principal place of business at 4500 Great America Parkway, Santa Clara, CA 95054.

6.  Plaintiff Scientific-Atlanta is a wholly owned subsidiary of Plaintiff Cisco and is a Georgia corporation with its principal place of business at 5030 Sugarloaf Parkway, Lawrenceville, GA 30044-2869.

7.  Plaintiff Thomson is a Delaware corporation with its principal place of business at 101 W. 103rd Street, INH 3340, Indianapolis, IN 46290.

8.  On information and belief, defendant Rembrandt is a limited partnership organized and existing under the laws of New Jersey, with a principal place of business at 401 City Avenue, Suite 528, Bala Cynwyd, PA 19004.  Rembrandt asserts that its business is enforcing and licensing patents.  In carrying out its business of patent enforcement, Rembrandt has sued Cablevision Systems Corporation and CSC Holdings Inc., in C.A. No. 06-635-GMS.  In that action, Rembrandt has asserted that "DOCSIS is a specification that describes the operational parameters of equipment that is used for cable networks.  Rembrandt alleges that DOCSIS-

3

compliant equipment infringes the '631, '858, '819, and '903 patents." Rembrandt purports to have obtained the patents at-issue in this action by purchasing them from Paradyne Corp., a Delaware corporation, and Zhone Communications. Rembrandt has also filed patent infringement law suits on another patent in this forum, suing ABC Inc., CBS Corporation, NBC Universal, Fox Entertainment Group Inc. and Fox Broadcasting Company. Those actions can be found as C.A. No. 06-727-GMS, C.A. No. 06-729-GMS, C.A. No. 06-730-GMS and C.A. No. 06-731-GMS. Rembrandt has also caused to be formed in Delaware a number of limited liability corporations, limited partnerships, limited liability limited partnerships and/or corporations. On information and belief, Rembrandt has caused those entities to be formed to assist with its business of patent enforcement and licensing.

9. On information and belief, defendant Rembrandt Technologies, LLC, a Delaware LLC, is wholly owned by Rembrandt and does business as "Remstream." Remstream has its headquarters at 401 City Avenue, Suite 900, Bala Cynwyd, PA 19004.

## NATURE OF THE ACTION

10. In this action, Plaintiffs seek a declaratory judgment of patent noninfringement and invalidity of eight United States Patents pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and the Patent Laws of the United States, 35 U.S.C. § 100 *et seq.*, damages, and such other relief as the Court deems just and proper.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this action under, and without limitation, 28 U.S.C. §§ 1331, 1337, 1338(a), 1367, 2201, and 2202, and the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*

12. Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b).

## RELATED ACTIONS

13. Pursuant to D. Del. LR 3.1(b), Plaintiffs state that this declaratory judgment action is related to the following actions (the "Related Actions"):

- *Rembrandt Technologies, LP v. Cablevision et al.*, C.A. No. 06-635-GMS;

- *Coxcom v. Rembrandt Technologies, LP*, C.A. No. 06-721-GMS;

- *Rembrandt Technologies, LP v. Adelphia Comm'n Corp., et al.*, C.A. No. 07-396-GMS;

- *Rembrandt Technologies, LP v. Adelphia Comm'n Corp., et al.*, C.A. No. 07-397-GMS;

- *Rembrandt Technologies, LP v. Comcast Corp. et al.*, C.A. No. 07-398-GMS;

- *Rembrandt Technologies, LP v. Charter Comm'n, Inc., et al.*, C.A. No. 07-400-GMS;

- *Rembrandt Technologies, LP v. Time Warner Cable, et al.*, C.A. No. 07-401-GMS;

- *Rembrandt Technologies, LP v. Time Warner Cable, et al.*, C.A. No. 07-402-GMS;

- *Rembrandt Technologies, LP v. Comcast Corp. et al.*, C.A. No. 07-403-GMS;

- *Rembrandt Technologies, LP v. Charter Comm'n, Inc., et al.*, C.A. No. 07-404-GMS;

- *In re Rembrandt Technologies, LP Patent Litigation*, C.A. No. 07-1848-GMS.

## THE PATENTS

14. U.S. Patent No. 4,937,819 ("the '819 patent") entitled "Time Orthogonal Multiple Virtual DCE for Use in Analog and Digital Networks" reports that it was filed on September 26,

1988 and issued on June 26, 1990. The inventor named on the '819 patent is Joseph B. King. A copy of the '819 patent is attached hereto as Exhibit A. As alleged herein, Plaintiffs deny that the patent duly and legally issued.

15. U.S. Patent No. 5,008,903 ("the '903 patent") entitled "Adaptive Transmit Pre-Emphasis for Digital Modem Computed from Noise Spectrum" reports that it was filed on May 25, 1989 and issued on April 16, 1991. The inventors named on the '903 patent are William L. Betts and James J. DesRosiers. A copy of the '903 patent is attached hereto as Exhibit B. As alleged herein, Plaintiffs deny that the patent duly and legally issued.

16. U.S. Patent No. 5,710,761 ("the '761 patent") entitled "Error Control Negotiation Based on Modulation" reports that it was filed on May 31, 1995 and issued on January 20, 1998. The inventor named on the '761 patent is Robert Earl Scott. A copy of the '761 patent is attached hereto as Exhibit C. As alleged herein, Plaintiffs deny that the patent duly and legally issued.

17. U.S. Patent No. 5,719,858 ("the '858 patent") entitled "Time-Division Multiple-Access Method for Packet Transmission on Shared Synchronous Serial Buses" reports that it was filed on July 31, 1995 and issued on February 17, 1998. The inventor named on the '858 patent is Wayne T. Moore. A copy of the '858 patent is attached hereto as Exhibit D. As alleged herein, Plaintiffs deny that the patent duly and legally issued.

18. U.S. Patent No. 5,778,234 ("the '234 patent") entitled "Method for Downloading Programs" reports that it was filed on July 24, 1997 and issued on July 7, 1998. The inventors named on the '234 patent are Gideon Hecht, Kurt Ervin Holmquist, and Donald C. Snoll. A copy of the '234 patent is attached hereto as Exhibit E. As alleged herein, Plaintiffs deny that the patent duly and legally issued.

19. U.S. Patent No. 5,852,631 ("the '631 patent") entitled "System and Method for Establishing Link Layer Parameters Based on Physical Layer Modulation" reports that it was filed on January 8, 1997 and issued on December 22, 1998.  The inventor named on the '631 patent is Robert Earl Scott.  A copy of the '631 patent is attached hereto as Exhibit F.  As alleged herein, Plaintiffs deny that the patent duly and legally issued.

20. U.S. Patent No. 6,131,159 ("the '159 patent") entitled "System for Downloading Programs" reports that it was filed on May 8, 1992 and issued on October 10, 2000.  The inventors named on the '159 patent are Gideon Hecht, Kurt Ervin Holmquist, and Donald C. Snoll.  A copy of the '159 patent is attached as Exhibit G.  As alleged herein, Plaintiffs deny that the patent duly and legally issued.

21. U.S. Patent No. 6,950,444 ("the '444 patent") entitled "System and Method for a Robust Preamble and Transmission Delimiting in a Switched-Carrier Transceiver" reports that it was filed on August 11, 2000 and issued on September 27, 2005.  The inventors named on the '444 patent are Kurt Holmquist and Joseph Chapman.  A copy of the '444 patent is attached as Exhibit H.  As alleged herein, Plaintiffs deny that the patent duly and legally issued.

22. Rembrandt asserts (but Plaintiffs do not admit) that Rembrandt is the owner of all rights, title, and interest in and to the '819, '903, '761, '858, '234, '631, '159, and '444 patents (collectively, the "Patents").  Rembrandt did not invent the technology in the Patents. Rembrandt also did not invent DOCSIS or contribute to the development of DOCSIS. Rembrandt purports to have obtained the Patents through an agreement with Paradyne Corporation.  Paradyne Corporation did not invent DOCSIS.  Paradyne Corporation did not participate in the creation of DOCSIS.  Paradyne did not sell cable modems or cable modem termination systems.  Rembrandt has contended in discovery responses in one or more of the

MSO actions that Paradyne sold products in the United States that Rembrandt alleges to practice the Patents. Rembrandt has also admitted that Paradyne products sold in the United States were not marked with the Patents. Rembrandt is presently aware that Paradyne sold products in the United States that were not marked with the Patents and Rembrandt believes that those products practiced claims of the Patents.

### COUNT I
### (Declaratory Judgment Action for a Declaration
### of Noninfringement and Invalidity of U.S. Patent No. 4,937,819)

23. Paragraphs 1 through 22 are incorporated by reference as if stated fully herein.

24. Rembrandt has accused Cablevision Systems Corporation, Charter Communications Operating, LLC, Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast Corporation, Comcast of Plano, LP, Coxcom, Inc., CSC Holdings, Inc., Time Warner Cable Inc., Time Warner Cable LLC, Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner Entertainment Company, L.P. and Time Warner New York Cable LLC of infringing the '819 patent because of the operational parameters of the cable equipment that they purchase for their cable systems. Specifically, Rembrandt has alleged that DOCSIS is a specification that describes operational parameters of equipment that is used for cable networks. Rembrandt further asserts that DOCSIS-compliant cable modem ("CM") and cable modem termination system ("CMTS") equipment allegedly infringe the '819 patent. Plaintiffs manufacture and sell accused CM and/or CMTS equipment, and each of Plaintiffs has supplied accused CM and/or CMTS equipment to one or more of the cable MSOs that Rembrandt has accused of infringement.

25. An actual and justiciable controversy exists between Plaintiffs and Rembrandt regarding the infringement and validity of the '819 patent.

8

26. Plaintiffs have not infringed (directly or indirectly) any valid, enforceable claim of the '819 patent, either literally or under the doctrine of equivalents.

27. The '819 patent is invalid because of its failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

28. A judicial declaration of noninfringement and invalidity is necessary and appropriate in order to resolve this controversy.

## COUNT II
### (Declaratory Judgment Action for a Declaration of Noninfringement and Invalidity of U.S. Patent No. 5,008,903)

29. Paragraphs 1 through 22 are incorporated by reference as if stated fully herein.

30. Rembrandt has accused Cablevision Systems Corporation, Charter Communications Operating, LLC, Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast Corporation, Comcast of Plano, LP, Coxcom, Inc., CSC Holdings, Inc., Time Warner Cable Inc., Time Warner Cable LLC, Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner Entertainment Company, L.P. and Time Warner New York Cable LLC of infringing the '903 patent because of the operational parameters of the cable equipment that they purchase for their cable systems.  Specifically, Rembrandt has alleged that DOCSIS is a specification that describes operational parameters of equipment that is used for cable networks. Rembrandt further asserts that DOCSIS-compliant cable modem ("CM") and cable modem termination system ("CMTS") equipment allegedly infringe the '903 patent.  Plaintiffs manufacture and sell accused CM and/or CMTS equipment, and each of Plaintiffs has supplied accused CM and/or CMTS equipment to one or more of the cable MSOs that Rembrandt has accused of infringement.

31. An actual and justiciable controversy exists between Plaintiffs and Rembrandt regarding the infringement and validity of the '903 patent.

32. Plaintiffs have not infringed (directly or indirectly) any valid, enforceable claim of the '903 patent, either literally or under the doctrine of equivalents.

33. The '903 patent is invalid because of its failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

34. A judicial declaration of noninfringement and invalidity is necessary and appropriate in order to resolve this controversy.

## COUNT III
### (Declaratory Judgment Action for a Declaration of Noninfringement and Invalidity of U.S. Patent No. 5,710,761)

35. Paragraphs 1 through 22 are incorporated by reference as if stated fully herein.

36. Rembrandt has accused Adelphia Communications Corporation, Century-TCI Distribution Company, LLC, Century-TCI California, LP, Century-TCI California Communications, LP, Century-TCI Holdings, LLC, Charter Communications Operating, LLC, Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast Corporation, Comcast of Plano, LP, Coxcom, Inc., Parnassos Communications, LP, Parnassos Distribution Company I, LLC, Parnassos Distribution Company II, LLC, Parnassos Holdings, LLC, Parnassos, LP, Time Warner Cable Inc., Time Warner Cable LLC, Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner Entertainment Company, L.P., Time Warner New York Cable LLC and Western NY Cablevision, LP of infringing the '761 patent because of the operational parameters of the cable equipment that they purchase for their cable systems. Specifically, Rembrandt has alleged that DOCSIS is a specification that describes operational parameters of equipment that is used for cable networks. Rembrandt further asserts that DOCSIS-compliant cable modem ("CM") and cable modem termination system ("CMTS") equipment allegedly infringe the '761 patent. Plaintiffs manufacture and sell accused CM and/or

CMTS equipment, and each of Plaintiffs has supplied accused CM and/or CMTS equipment to one or more of the cable MSOs that Rembrandt has accused of infringement.

37. An actual and justiciable controversy exists between Plaintiffs and Rembrandt regarding the infringement and validity of the '761 patent.

38. Plaintiffs have not infringed (directly or indirectly) any valid, enforceable claim of the '761 patent, either literally or under the doctrine of equivalents.

39. The '761 patent is invalid because of its failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

40. A judicial declaration of noninfringement and invalidity is necessary and appropriate in order to resolve this controversy.

### COUNT IV
### (Declaratory Judgment Action for a Declaration
### of Noninfringement and Invalidity of U.S. Patent No. 5,719,858)

41. Paragraphs 1 through 22 are incorporated by reference as if stated fully herein.

42. Rembrandt has accused Cablevision Systems Corporation, Charter Communications Operating, LLC, Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast Corporation, Comcast of Plano, LP, Coxcom, Inc., CSC Holdings, Inc., Time Warner Cable Inc., Time Warner Cable LLC, Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner Entertainment Company, L.P. and Time Warner New York Cable LLC of infringing the '858 patent because of the operational parameters of the cable equipment that they purchase for their cable systems. Specifically, Rembrandt has alleged that DOCSIS is a specification that describes operational parameters of equipment that is used for cable networks. Rembrandt further asserts that DOCSIS-compliant cable modem ("CM") and cable modem termination system ("CMTS") equipment allegedly infringe the '858 patent. Plaintiffs manufacture and sell accused CM and/or CMTS equipment, and each of Plaintiffs has supplied

accused CM and/or CMTS equipment to one or more of the cable MSOs that Rembrandt has accused of infringement.

43. An actual and justiciable controversy exists between Plaintiffs and Rembrandt regarding the infringement and validity of the '858 patent.

44. Plaintiffs have not infringed (directly or indirectly) any valid, enforceable claim of the '858 patent, either literally or under the doctrine of equivalents.

45. The '858 patent is invalid because of its failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

46. A judicial declaration of noninfringement and invalidity is necessary and appropriate in order to resolve this controversy.

## COUNT V
### (Declaratory Judgment Action for a Declaration of Noninfringement and Invalidity of U.S. Patent No. 5,778,234)

47. Paragraphs 1 through 22 are incorporated by reference as if stated fully herein.

48. Rembrandt has accused Adelphia Communications Corporation, Century-TCI Distribution Company, LLC, Century-TCI California, LP, Century-TCI California Communications, LP, Century-TCI Holdings, LLC, Charter Communications Operating, LLC, Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast Corporation, Comcast of Plano, LP, Coxcom, Inc., Parnassos Communications, LP, Parnassos Distribution Company I, LLC, Parnassos Distribution Company II, LLC, Parnassos Holdings, LLC, Parnassos, LP, Time Warner Cable Inc., Time Warner Cable LLC, Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner Entertainment Company, L.P., Time Warner New York Cable LLC and Western NY Cablevision, LP of infringing the '234 patent because of the operational parameters of the cable equipment that they purchase for their cable systems. Specifically, Rembrandt has alleged that DOCSIS is a specification that describes operational

parameters of equipment that is used for cable networks. Rembrandt further asserts that DOCSIS-compliant cable modem ("CM") and cable modem termination system ("CMTS") equipment allegedly infringe the '234 patent. Plaintiffs manufacture and sell accused CM and/or CMTS equipment, and each of Plaintiffs has supplied accused CM and/or CMTS equipment to one or more of the cable MSOs that Rembrandt has accused of infringement.

49. An actual and justiciable controversy exists between Plaintiffs and Rembrandt regarding the infringement and validity of the '234 patent.

50. Plaintiffs have not infringed (directly or indirectly) any valid, enforceable claim of the '234 patent, either literally or under the doctrine of equivalents.

51. The '234 patent is invalid because of its failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

52. A judicial declaration of noninfringement and invalidity is necessary and appropriate in order to resolve this controversy.

## COUNT VI
### (Declaratory Judgment Action for a Declaration of Noninfringement and Invalidity of U.S. Patent No. 5,852,631)

53. Paragraphs 1 through 22 are incorporated by reference as if stated fully herein.

54. Rembrandt has accused Cablevision Systems Corporation, Charter Communications Operating, LLC, Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast Corporation, Comcast of Plano, LP, Coxcom, Inc., CSC Holdings, Inc., Time Warner Cable Inc., Time Warner Cable LLC, Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner Entertainment Company, L.P. and Time Warner New York Cable LLC of infringing the '631 patent because of the operational parameters of the cable equipment that they purchase for their cable systems. Specifically, Rembrandt has alleged that DOCSIS is a specification that describes operational parameters of equipment that is used for cable networks.

13

Rembrandt further asserts that DOCSIS-compliant cable modem ("CM") and cable modem termination system ("CMTS") equipment allegedly infringe the '631 patent.   Plaintiffs manufacture and sell accused CM and/or CMTS equipment, and each of the Plaintiffs has supplied accused CM and/or CMTS equipment to one or more of the cable MSOs that Rembrandt has accused of infringement.

55. An actual and justiciable controversy exists between Plaintiffs and Rembrandt regarding the infringement and validity of the '631 patent.

56. Plaintiffs have not infringed (directly or indirectly) any valid, enforceable claim of the '631 patent, either literally or under the doctrine of equivalents.

57. The '631 patent is invalid because of its failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

58. A judicial declaration of noninfringement and invalidity is necessary and appropriate in order to resolve this controversy.

### COUNT VII
### (Declaratory Judgment Action for a Declaration
### of Noninfringement and Invalidity of U.S. Patent No. 6,131,159)

59. Paragraphs 1 through 22 are incorporated by reference as if stated fully herein.

60. Rembrandt has accused Adelphia Communications Corporation, Century-TCI Distribution Company, LLC, Century-TCI California, LP, Century-TCI California Communications, LP, Century-TCI Holdings, LLC, Charter Communications Operating, LLC, Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast Corporation, Comcast of Plano, LP, Coxcom, Inc., Parnassos Communications, LP, Parnassos Distribution Company I, LLC, Parnassos Distribution Company II, LLC, Parnassos Holdings, LLC, Parnassos, LP, Time Warner Cable Inc., Time Warner Cable LLC, Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner Entertainment Company, L.P., Time Warner New

York Cable LLC and Western NY Cablevision, LP of infringing the '159 patent because of the operational parameters of the cable equipment that they purchase for their cable systems. Specifically, Rembrandt has alleged that DOCSIS is a specification that describes operational parameters of equipment that is used for cable networks. Rembrandt further asserts that DOCSIS-compliant cable modem ("CM") and cable modem termination system ("CMTS") equipment allegedly infringe the '159 patent. Plaintiffs manufacture and sell accused CM and/or CMTS equipment, and each of Plaintiffs has supplied accused CM and/or CMTS equipment to one or more of the cable MSOs that Rembrandt has accused of infringement.

61. An actual and justiciable controversy exists between Plaintiffs and Rembrandt regarding the infringement of the '159 patent.

62. Plaintiffs have not infringed (directly or indirectly) any valid, enforceable claim of the '159 patent, either literally or under the doctrine of equivalents.

63. The '159 patent is invalid because of its failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

64. A judicial declaration of noninfringement and invalidity is necessary and appropriate in order to resolve this controversy.

**COUNT VIII**
**(Declaratory Judgment Action for a Declaration**
**of Noninfringement and Invalidity of U.S. Patent No. 6,950,444)**

65. Paragraphs 1 through 22 are incorporated by reference as if stated fully herein.

66. Rembrandt has accused Adelphia Communications Corporation, Century-TCI Distribution Company, LLC, Century-TCI California, LP, Century-TCI California Communications, LP, Century-TCI Holdings, LLC, Charter Communications Operating, LLC, Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast Corporation, Comcast of Plano, LP, Coxcom, Inc., Parnassos Communications, LP, Parnassos Distribution

Company I, LLC, Parnassos Distribution Company II, LLC, Parnassos Holdings, LLC, Parnassos, LP, Time Warner Cable Inc., Time Warner Cable LLC, Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner Entertainment Company, L.P., Time Warner New York Cable LLC and Western NY Cablevision, LP of infringing the '444 patent because of the operational parameters of the cable equipment that they purchase for their cable systems. Specifically, Rembrandt has alleged that DOCSIS is a specification that describes operational parameters of equipment that is used for cable networks. Rembrandt further asserts that DOCSIS-compliant cable modem ("CM") and cable modem termination system ("CMTS") equipment allegedly infringe the '444 patent. Plaintiffs manufacture and sell accused CM and/or CMTS equipment, and each of Plaintiffs has supplied accused CM and/or CMTS equipment to one or more of the cable MSOs that Rembrandt has accused of infringement.

67. An actual and justiciable controversy exists between Plaintiffs and Rembrandt regarding the infringement and validity of the '444 patent.

68. Plaintiffs have not infringed (directly or indirectly) any valid, enforceable claim of the '444 patent, either literally or under the doctrine of equivalents.

69. The '444 patent is invalid because of its failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112.

70. A judicial declaration of noninfringement and invalidity is necessary and appropriate in order to resolve this controversy.

## COUNT IX
### (Declaratory Judgment Action for a Declaration
of Patent Unenforceability Due to Inequitable Conduct)

71. Paragraphs 1 through 22 are incorporated by reference as if stated fully herein.

72. An actual and justiciable controversy exists between Plaintiffs and Defendants regarding the enforceability of the '819, '903, '761, '858, '234, '631, '159, and '444 patents (the "Fraudulently Obtained Patents").

73. Individuals subject to the duty of candor under 37 C.F.R. 1.56 ("Applicants"), including named inventors in the applications referenced below and employees with substantive involvement in the filing and/or prosecution of patent applications for Paradyne entities, engaged in inequitable conduct by engaging in a pattern and practice of withholding or misstating material information with intent to deceive the United States Patent & Trademark Office ("USPTO") in connection with patent prosecution of the Fraudulently Obtained Patents.   On multiple occasions, Applicants failed to disclose their own previously issued patents that comprised material prior art, failed to disclose material information regarding their own co-pending applications for patents, failed to disclose prior art that was known to them through the prosecution of their own patents and applications, and failed to disclose their own systems that implemented undisclosed, material prior art and that were on-sale prior to the relevant critical dates.   In addition to nondisclosure, Applicants in the prosecution chain of the '159 and '234 patents provided affirmative misstatements as set forth below.   Accordingly, Applicants engaged in an overall pattern and practice of repeatedly and continuously failing to disclose to the USPTO material information of which Applicants were indisputably aware.   The permeation and continuation of this misconduct throughout prosecution of multiple patent applications confirms that Applicants acted with deceptive intent rendering the patents unenforceable.   Further, the doctrine of infectious unenforceability renders related patents unenforceable.

74. More specifically, during prosecution of the '761 patent, Applicants engaged in inequitable conduct before the USPTO, rendering the '761 patent unenforceable by withholding and failing to disclose material information with intent to deceive including the following acts:

(i)     By way of example, MPEP § 2001.06(b) states that "there is a duty to bring to the attention of the examiner, or other Office official involved with the examination of a particular application, information within their knowledge as to other co-pending United States applications which are 'material to patentability' of the application in question." The MPEP cites to caselaw providing that "[W]e think that it is unfair to the busy examiner, no matter how diligent and well informed he may be, to assume that he retains details of every pending file in his mind when he is reviewing a particular application . . . [T]he applicant has the burden of presenting the examiner with a complete and accurate record to support the allowance of letters patent." The MPEP provides express examples of material information as to other co-pending applications, stating "[f]or example, if a particular inventor has different applications pending in which similar subject matter but patentably indistinct claims are present that fact must be disclosed to the examiner of each of the involved applications. Similarly, the prior art references from one application must be made of record in another subsequent application if such prior art references are 'material to patentability' of the subsequent application."

(ii)    Notwithstanding these clear obligations, during prosecution, Applicants repeatedly failed to disclose material information within their knowledge as to co-pending applications of which they were aware. One or more Applicants were

aware of and failed to disclose, without limitation, co-pending application 08/780,762 (now the '631 patent, which is now commonly asserted here along with the '761 patent), as well as Application Nos. 08/781,787, now issued as U.S. Patent No. 5,751,796 ("Rapid Startup Protocol For Communication Between a Plurality of Modems"), to Scott and Zuranski, 08/781,067 now issued as U.S. Patent No. 5,796,808 ("System and Method for Automatically Selecting the Mode of Communication between a Plurality of Modems"), to Scott and Lastinger Jr., 08/780,238, now issued as U.S. Patent No. 5,787,363 ("System and Method for Connect Message Synchronization of Modems in a Cellular Data Gateway"), to Scott and Lastinger Jr., 08/457,881, now issued as U.S. Patent No. 5,793,809 ("Transparent Technique for Mu-Law Modems to Detect an All-Digital Circuit Connection"), to Holmquist, 08/912,126, now issued as U.S. Patent No. 6,081,556 ("Transparent Technique for Mu-Law Modems to Detect an All-Digital Circuit Connection"), to Holmquist, and 08/978,536, now issued as U.S. Patent No. 5,349,635 ("Half-Duplex or Full-Duplex Automode Operation for use in Data Communications Equipment"), to Scott (the "'761 Co-Pending Applications"). The Applicants for the '761 patent failed to identify any of these co-pending applications or their claims to the examiner in the prosecution of the '761 patent. These applications were never disclosed on any IDS that was submitted in the '761 patent or otherwise made of record in the '761 patent. Information relating to the '761 Co-Pending Applications and their claims was material to patentability. One or more Applicants were aware of the '761 Co-Pending Applications. Four of the '761 Co-Pending Applications include Robert Scott as a named inventor,

and in the case of the '761 and '631 patents, he is the sole named inventor on both. Robert Scott was aware of the co-pendency of his applications. In addition, on information and belief, a reasonable opportunity for discovery will show that Paradyne personnel were substantively involved in the filing or prosecution of the '761 patent and were aware of the '761 Co-Pending Applications. Material information relating to the '761 Co-Pending Applications was withheld with intent to deceive the USPTO as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

(iii)    Further, Applicants failed to disclose in prosecution of the '761 patent, the prior art of record from the '761 Co-Pending Applications, including without limitation U.S. Patent Nos. 4,905,282 ("Feature Negotiation Protocol and Dynamically Adjustable Retraining Sequence for a High Speed Half Duplex Modem"), to McGlynn and Nash ("McGlynn"), 5,425,080 ("Transaction Terminal Apparatus and Method Using Host Dial String Control of Modem Connect Protocols"), to Abbie ("Abbie"), 4,931,250 ("Multimode Modem"), to Greszczuk ("Greszczuk"), 5,491,720 ("Method and System for Automatically Determining Data Communication Device Type and Corresponding Transmission Rate"), to Davis, Linger, Mandalia, Sinibaldi, Zevin, and Ziegenhain ("Davis"), 5,311,578 ("Technique for Automatic Identification of a Remote Modem"), to Bremer ("'578 Bremer et al."), 5,317,594 ("Systems for and Method of Identifying V.Fast Modem Within Existing Automatic Interworking Procedure Standards"), to Goldstein ("Goldstein"), 5,528,679 ("Automatic Detection of Digital Call Paths in a Telephone System"), to Taarud ("Taarud"), 4,680,773 ("Data

Telecommunications System"), to Amundson ("Amundson"), and 4,782,498 ("Modem with Improved Handshaking Capability"), to Copeland, III ("Copeland") (the "'761 Co-Pending Art"). The '761 Co-Pending Art was material to the patentability of the '761 patent. Applicants for the '761 patent failed to identify any '761 Co-Pending Art to the examiner in the prosecution of the '761 patent. For example, McGlynn, Abbie, Greszczuk, Davis and Goldstein were each cited by the Examiner of the '631 patent in a Detailed Office Action and accompanying Notice of References Cited mailed on 9/12/97. Further, Greszczuk was cited in the 08/781,067 application on an IDS submitted on August 12, 1997, and in the 08/781,787 application on an IDS submitted October 6, 1997. The '761 patent was still pending and did not issue until January 20, 1998. One or more Applicants were aware of the '761 Co-Pending Art. Robert Scott is the same and only named inventor on both the '631 and the '761 patents. In addition, on information and belief, a reasonable opportunity for discovery will show that Paradyne personnel substantively involved in the filing or prosecution of the '761 patent were aware of the '761 Co-Pending Art, as well as U.S. Patent Nos. 5,600,712 ("Enabling Technique for Quickly Establishing High Speed PSTN Connections In Telecommuting Applications"), to Hanson, 5,577,105 ("Telephone Call Routing and Switching Techniques for Data Communications"), to Baum, 5,127,041 ("System and Method for Interfacing Computers to Diverse Telephone Networks"), to O'Sullivan, and Weissman, et al., "Interoperable Wireless Data," IEEE Communications Magazine, vol. 31, No. 2, pp. 68-77. In fact, while the '761 patent remained co-pending, Applicants attempted to

distinguish prior art of record in the '631 patent, including transmitting a First Response with Amendments on October 23, 1997. Notwithstanding the October 23, 1997 response, the USPTO issued a Detailed Action rejecting the claims in the '631 patent based upon prior art to McGlynn in an office action dated November 18, 1997, while the application for the '761 patent remained co-pending, and Applicants nevertheless failed to disclose McGlynn in prosecution of the '761 patent. Further, Applicants for the '761 patent failed to disclose in prosecuting the '761 patent the office actions and responses from the co-pending '631 patent and the prior art of record referenced in those office actions and responses. The undisclosed information described herein was material to patentability of the '761 patent. The undisclosed information described herein was material to patentability of the '761 patent and was withheld with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

75. Additional instances of misconduct occurred in prosecution of the '631 patent, where Applicants engaged in inequitable conduct before the USPTO rendering the patent unenforceable by withholding and failing to disclose material information with intent to deceive including the following acts:

(i)     By way of example, MPEP § 2001.06(b) states that "there is a duty to bring to the attention of the examiner, or other Office official involved with the examination of a particular application, information within their knowledge as to other co-pending United States applications which are 'material to patentability' of the application in question." The MPEP cites to caselaw providing that "[W]e think

that it is unfair to the busy examiner, no matter how diligent and well informed he may be, to assume that he retains details of every pending file in his mind when he is reviewing a particular application . . . [T]he applicant has the burden of presenting the examiner with a complete and accurate record to support the allowance of letters patent." The MPEP provides express examples of material information as to other co-pending applications, stating "[f]or example, if a particular inventor has different applications pending in which similar subject matter but patentably indistinct claims are present that fact must be disclosed to the examiner of each of the involved applications. Similarly, the prior art references from one application must be made of record in another subsequent application if such prior art references are 'material to patentability' of the subsequent application."

(ii)    Notwithstanding these clear obligations, during prosecution, Applicants repeatedly failed to disclose information within their knowledge as to co-pending applications of which they were aware, including without limitation co-pending application 08/458,048 (now the '761 patent, which is now commonly asserted here along with the '631 patent), as well as Application Nos. 08/781,787, now issued as U.S. Patent No. 5,751,796 ("Rapid Startup Protocol For Communication Between a Plurality of Modems") to Scott and Zuranski, 08/781,067 now issued as U.S. Patent No. 5,796,808 ("System and Method for Automatically Selecting the Mode of Communication between a Plurality of Modems"), to Scott and Lastinger Jr., 08/780,238, now issued as U.S. Patent No. 5,787,363 ("System and Method for Connect Message Synchronization of Modems in a Cellular Data

Gateway"), to Scott and Lastinger Jr., 08/457,881, now issued as U.S. Patent 5,793,809 ("Transparent Technique for Mu-Law Modems to Detect an All-Digital Circuit Connection"), to Holmquist, and 08/912,126, now issued as U.S. Patent No. 6,081,556 ("Transparent Technique for Mu-Law Modems to Detect an All-Digital Circuit Connection"), to Holmquist (the "'631 Co-Pending Applications."). Applicants for the '631 patent failed to identify any of these co-pending applications or their claims to the examiner in the prosecution of the '631 patent. These applications are never disclosed on an IDS that was submitted in the '631 patent or otherwise made of record in the '631 patent. One or more Applicants were aware of the '631 Co-Pending Applications during prosecution of the '631 patent. Three of the '631 Co-Pending Applications include Robert Scott as a named inventor and claim priority to the same provisional applications for which priority is claimed by the '631 patent. In addition, on information and belief a reasonable opportunity for discovery will show that further Paradyne personnel were substantively involved in the filing or prosecution of the '631 patent and were aware of the '631 Co-Pending Applications. The information relating to the '631 Co-Pending Applications was material to the patentability of the '631 Patent and was withheld with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

(iii)    Further, Applicants failed to disclose in prosecution of the '631 patent, the prior art of record from the '631 Co-Pending Applications, including without limitation U.S. Patent Nos. 5,550,881 ("Automatic Modulation Mode Selecting Unit and Method for Modems"), to Sridhar and Sheer ("Sridhar"), '578 Bremer et al.

("Bremer"), 5,430,793 ("Apparatus and Method for Configuring a Computer System and a Modem for use in a Particular Country"), to Ueltzen, Mahan, and Horn ("Ueltzen"), 4,715,044 ("Automatic Synchronous/Asynchronous Modem"), to Gartner ("Gartner"), and 5,528,679 ("Automatic Detection of Digital Call Paths in a Telephone System"), to Taarud ("Taarud") (the "'631 Co-Pending Art"). The Applicants did not disclose the '631 Co-Pending Art during prosecution of the '631 patent.   Applicants were aware of the '631 Co-Pending Art during prosecution of the '631 patent.  Robert Scott is the same and only named inventor on both the '631 and the '761 patents.  In addition, on information and belief a reasonable opportunity for discovery will show that further Paradyne personnel substantively involved in the filing or prosecution of the '631 patent were aware of the '631 Co-Pending Art, as well as U.S. Patent Nos. 5,349,635 ("Half-Duplex or Full-Duplex Automode Operation for use in Data Communications Equipment"), to Scott, 5,600,712 ("Enabling Technique for Quickly Establishing High Speed PSTN Connections In Telecommuting Applications"), to Hanson, 5,577,105 ("Telephone Call Routing and Switching Techniques for Data Communications"), to Baum, 5,127,041 ("System and Method for Interfacing Computers to Diverse Telephone Networks"), to O'Sullivan, 4,680,773 ("Data Telecommunications System"), to Amundson ("Amundson"), and 4,782,498 ("Modem with Improved Handshaking Capability"), to Copeland, III ("Copeland"), and Weissman, et al., "Interoperable Wireless Data," IEEE Communications Magazine, vol. 31, No. 2, pp. 68-77.  For example, Sridhar et al. was cited by the Examiner of the '761 patent and used for claim rejections in a

Detailed Office Action and accompanying Notice of References Cited dated December 26, 1996. Similarly, Ueltzen was "considered pertinent to applicant's disclosure" in that same Detailed Office Action. The '631 and '761 patent were co-pending on December 26, 1996, and the '631 patent did not issue until December 22, 1998. While the '631 patent remained co-pending, Applicants attempted to distinguish prior art of record in the '761 patent in a Response and Amendment transmitted March 31, 1997. Applicants for the '631 patent failed to disclose in prosecuting the '631 patent, the December 26, 1996 office action and the March 31, 1997 response from the co-pending '761 patent or the prior art of record referenced in those communications. The '631 Co-Pending Art and information described in this paragraph was material to patentability of the '631 patent. The '631 Co-Pending Art and information described in this paragraph was withheld with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count. In addition, on information and belief, a reasonable opportunity for discovery will show that Robert Scott was improperly listed as sole inventor of the '631 patent with deceptive intent to defraud the USPTO into issuing the '631 patent over the '761 patent.

76. Additional instances of misconduct occurred in prosecution of the '903 patent, where Applicants engaged in inequitable conduct before the USPTO rendering the patent unenforceable by withholding and failing to disclose material information with intent to deceive including the following acts:

(i)     The application for the '903 patent was filed on May 25, 1989, issued April 16,

1991, and named Betts and DesRosiers as inventors.  One or more Applicants was

aware of and failed to disclose in prosecution of the '903 patent the following

prior art: U.S. Patent Nos. 4,771,232 ("Non-interruptive Spectrum Analyzer for

Digital Modems"), to Betts and Zuranski, 4,555,790 ("Digital Modem Having A

Monitor  For  Signal-To-Noise  Ratio"),  to  Betts  and  Martinez,  4,811,357

("Secondary Channel for Digital Modems Using Spread Spectrum Subliminal

Induced Modulation"), to Betts and Zuranski, 4,833,690 ("Remote Eye Pattern

Display For Digital Modems"), to Betts, Zuranski, Springer, and Balka, 4,639,934

("Line Impairment Display for  Digital Modems"), to Betts, Scott and Zuranski,

4,646,325 ("Index Decoder for Digital Modems"), to Zuranski and Martinez,

3,889,108 ("Adaptive Low Pass Filter"), to Cantrell, 4,669,090 ("Half-Duplex

Modem  without  Turnaround  Delay"),  to  Betts  and  Martinez,  4,744,092

("Transparent Error Detection in Half Duplex Modems"), to Betts and Martinez,

4,532,640 ("Phase Tracking Loop for Digital Modem"), to Bremer, Betts, and

Martinez, 4,796,279 ("Substrate Preamble Decoder For A High Speed Modem"),

to Betts and Martinez (collectively, the "'903 Undisclosed References").  One or

more  Applicants  was  aware  of  the  '903  Undisclosed  References  during

prosecution of the '903 patent.  For example, Betts is a named inventor in multiple

'903 Undisclosed References.  In addition, on information and belief a reasonable

opportunity  for  discovery  will  show  that  Paradyne  personnel  substantively

involved in the filing or prosecution of the '903 patent were aware of the '903

Undisclosed References.  The '903 Undisclosed References were not disclosed to

the USPTO in prosecution of the '903 patent. The '903 Undisclosed References were material to patentability of the '903 patent. The '903 Undisclosed References were withheld with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count. In addition, on information and belief, a reasonable opportunity for discovery will show that one or more Applicants was aware of the 3,978,407 ("Fast Start-Up Adaptive Equalizer Communication System Using Two Data Transmission Rates"), to Forney and Hart (the'"407 patent"), a patent issued to a competitor of Paradyne. The '407 patent was material to patentability. On information and belief, a reasonable opportunity for discovery will show that the '407 patent was withheld with intent to deceive in light of the overall pattern and practice of nondisclosure.

77. Additional instances of misconduct occurred in prosecution of the '444 patent, where Applicants engaged in inequitable conduct before the USPTO rendering the patent unenforceable by withholding and failing to disclose material information with intent to deceive including the following acts:

(i)     By way of example, MPEP § 2001.06(b) states that "there is a duty to bring to the attention of the examiner, or other Office official involved with the examination of a particular application, information within their knowledge as to other co-pending United States applications which are 'material to patentability' of the application in question." The MPEP cites to caselaw providing that "[W]e think that it is unfair to the busy examiner, no matter how diligent and well informed he may be, to assume that he retains details of every pending file in his mind when

he is reviewing a particular application . . . [T]he applicant has the burden of presenting the examiner with a complete and accurate record to support the allowance of letters patent." The MPEP provides express examples of material information as to other co-pending applications, stating "[f]or example, if a particular inventor has different applications pending in which similar subject matter but patentably indistinct claims are present that fact must be disclosed to the examiner of each of the involved applications. Similarly, the prior art references from one application must be made of record in another subsequent application if such prior art references are 'material to patentability' of the subsequent application."

(ii)   Notwithstanding these clear obligations, during prosecution, Applicants repeatedly failed to disclose information within their knowledge as to co-pending applications of which they were aware, including without limitation co-pending Application No. 8/980,996 (the "Co-Pending '996 Application"). The Co-Pending '996 Application, which subsequently issued as U.S. Patent 6,414,964 ("Method and Apparatus for Performing a Multipoint Polling Protocol which Employs Silence Intervals for Controlling Circuit Operation"), and names Holmquist and Betts as inventors, and was filed on December 1, 1997 and issued on July 2, 2002. The application for the '444 patent was filed on August 11, 2000, and issued September 27, 2005, and named Holmquist and Chapman as inventors. In addition, Applicants failed to disclose in the prosecution of the '444, material prior art of record from the Co-Pending '996 Application, including without limitation U.S. Patent No. 5,677,909 ("Apparatus For Exchanging Data Between

29

A Central Station And A Plurality of Wireless Remote Stations On A Time Divided Channel"), issued to Heide.  One or more Applicants was aware of the above-referenced information during prosecution of the '444 patent.  The undisclosed information referenced in this paragraph was material to patentability of the '444 patent.  Applicants failed to disclose this material information relating to this co-pending application with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

(iii)     By way of further example, Application 09/307,454 filed May 7, 1999 for a "System and Method For Transmitting Special Marker Symbol" (subsequently issued as U.S. Patent No. 6,487,244) and Application No. 08/979,455, subsequently issued as U.S. Patent No. 6,137,829 (the "'444 Co-Pending '454 and '455 Applications"), were also co-pending with the '444 patent.  The '444 Co-Pending '454 and '455 Applications of Betts comprised prior art to the '444 Patent and were not disclosed to the USPTO in prosecution of the '444 Patent.  One or more Applicants was aware of the '444 Co-Pending '454 and '455 Applications during prosecution of the '444 patent.  The '444 Co-Pending '454 and '455 applications were material to patentability of the '444 patent and withheld with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

(iv)     By way of further example, during prosecution of the '444 patent application, Applicants repeatedly failed to disclose information within their knowledge as to material prior art of which they were aware, including without limitation

5,506,866 ("Side-Channel Communications In Simultaneous Voice and Data Transmission"), to Bremer, Holmquist, Ko, and Sonders, 5,475,691 ("Voice Activated Data Rate Change in Simultaneous Voice and Data Transmission"), to Chapman and Holmquist, 5,369,703 ("Command and Control Signalling Method and Apparatus"), to Archibald, Davis, and Holmquist, and 4,864,617 ("System and Method for Reducing Deadlock Conditions Caused By Repeated Transmission of Data Sequences Equivalent to Those Used for Inter-Device Signalling"), to Holmquist.

(v)     In addition, on information and belief, a reasonable opportunity for discovery will show that one or more Applicants was aware of U.S. Patent Nos. 3,978,407 ("Fast Start-Up Adaptive Equalizer Communication System Using Two Data Transmission Rates"), to Forney and Hart, 4,796,279 ("Substrate Preamble Decoder For A High Speed Modem"), to Betts and Martinez, and 5,912,895 ("Information Network Access Apparatus and Methods for Communicating Information Packets Via Telephone Lines"), to Terry and Richards. Applicants failed to disclose these patents to the USPTO in prosecution of the '444 patent. These references were material to patentability of the '444 patent. On information and belief, a reasonable opportunity for discovery will show that Applicants knew of and withheld them with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

(vi)     In addition, on information and belief a reasonable opportunity for discovery will show that Paradyne offered for sale MVL technology more than one year before applying for the '444 patent, that was material to the '444 patent, but failed to

disclose those sales as prior art to the USPTO. The withheld information was material to patentability and, on information and belief a reasonable opportunity for discovery will show that this information was withheld with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

78. Additional instances of misconduct occurred during prosecution of the '159 patent, where Applicants engaged in inequitable conduct before the USPTO rendering the patent unenforceable by omitting and misstating material information with intent to deceive including the following acts:

(i)     In prosecution of the '159 patent, the USPTO repeatedly rejected pending claims due to prior art, including without limitation references to Lang and Mori. In response to these and other rejections, Applicants represented that claims required and that they had invented a system that included a "displacement multibit memory address." However, Applicants lacked support for the invention as represented to the USPTO. Applicants misstated and omitted this material information with intent to deceive the USPTO into issuing the claims. These material misstatements and omissions were made with intent to deceive, as further confirmed by the pattern and practice of inequitable conduct alleged throughout this Count. Further, the '234 patent is a divisional of the '159 patent, refers back to acts occurring in prosecution of the '159 patent, and is infected by the unenforceabilty associated with the '159 patent.

(ii)    In addition, on information and belief, a reasonable opportunity for discovery will show that the Applicants offered the invention on-sale or placed it in public use

more than one year before the application date, and applicants withheld this
information which was material to patentability with intent to deceive the
USPTO, as is particularly shown by the continuing pattern and practice of
nondisclosure referenced in this Count.

79. Additional instances of misconduct occurred in prosecution of the '858 patent,
Applicants engaged in inequitable conduct before the USPTO rendering the patent unenforceable
by withholding and failing to disclose material information with intent to deceive including the
following acts:

(i)     By way of example, MPEP § 2001.06(b) states that "there is a duty to bring to the
        attention of the examiner, or other Office official involved with the examination
        of a particular application, information within their knowledge as to other co-
        pending United States applications which are 'material to patentability' of the
        application in question." The MPEP cites to caselaw providing that " [W]e think
        that it is unfair to the busy examiner, no matter how diligent and well informed he
        may be, to assume that he retains details of every pending file in his mind when
        he is reviewing a particular application . . . [T]he applicant has the burden of
        presenting the examiner with a complete and accurate record to support the
        allowance of letters patent." The MPEP provides express examples of material
        information as to other co-pending applications, stating "[f]or example, if a
        particular inventor has different applications pending in which similar subject
        matter but patentably indistinct claims are present that fact must be disclosed to
        the examiner of each of the involved applications. Similarly, the prior art
        references from one application must be made of record in another subsequent

33

application if such prior art references are 'material to patentability' of the subsequent application."

(ii)     Notwithstanding these clear obligations, during prosecution, Applicants failed to disclose information as to co-pending applications including without limitation Application Nos. 08/607,912, now issued as U.S. Patent No. 5,754,799 ("System and Method for Bus Contention Resolution"), to Hiles, 08/608,378 now issued as 5,768,543 ("Slot-Token Protocol"), to Hiles, and 08/947,279, now issued as 6,108,347 ("Non-Polled Dynamic Slot Time Allocation Protocol") to Holmquist, (the "'858 Co-Pending Applications."). The Applicants for the '858 patent failed to identify any of these co-pending applications or their claims to the examiner in the prosecution of the '858 patent.  On information and belief, a reasonable opportunity for discovery will show that Applicants were aware of the '858 Co-Pending Applications during prosecution of the '858 patent.  These co-pending applications and their claims were material to the patentability.  On information and belief, a reasonable opportunity for discovery will show that this undisclosed information was withheld with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

(iii)    Further, Applicants failed to disclose in prosecution of the '858 patent, the material prior art of record from the '858 Co-Pending Applications, including without limitation U.S. Patent Nos. 4,608,700 ("Serial Multi-Drop Data Link"), to Kirtley, Sterling, and Williams, and 5,398,243 ("Arbitration Method and Bus for Serial Data Transmission"), to Aguilhon, Doucet, and Karcher (the "'858 Co-

Pending Art"). The Applicants did not disclose the '858 Co-Pending Art during prosecution of the '858 patent. On information and belief, a reasonable opportunity for discovery will show that one or more Applicants was aware of the '858 Co-Pending Art during prosecution of the '858 patent. This undisclosed information was material to patentability of the '858 patent. On information and belief, a reasonable opportunity for discovery will show this information was withheld with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

(iv)     In addition, one or more Applicants was aware of U.S. Patent No. 4,797,815 ("Interleaved Synchronous Bus Access Protocol for a Shared Memory Multi-Processor System"), to Moore (the same inventor as the '858), and, on information and belief, a reasonable opportunity for discovery will show one or more Applicants was aware of U.S. Patent Nos. 3,997,896 ("Data Processing System Providing Split Bus Cycle Operation"), to Cassarino, Jr., Bekampis, Conway, and Lemay, 4,181,974 ("System Providing Multiple Outstanding Information Requests"), to Lemay and Curley, and 4,669,056 ("Data Processing System with a Plurality of Processors Accessing a Common Bus to Interleaved Storage"), to Waldecker and Wright. Applicants failed to disclose these patents to the USPTO in prosecution of the '858 patent. These reference were material to patentability of the '858 patent and on information and belief a reasonable opportunity for discovery will show that Applicants knew of and withheld them with intent to deceive the USPTO, as is particularly shown by the continuing pattern and practice of nondisclosure referenced in this Count.

(v)     Further, in the prosecution of the '858 patent, the Applicants failed to disclose the previously issued '819 patent also assigned to Paradyne.  In light of Defendants' allegations in this matter, the '819 patent was material to the '858 patent.  On information and belief, a reasonable opportunity for discovery will show that one or more Applicants was aware of the '819 patent and Applicants' nondisclosure of the '819 patent, in light of the pattern and practice alleged throughout this Count, occurred with the requisite intent to deceive the USPTO into issuing the '858 patent.

80. Additional instances of misconduct occurred in prosecution of the '819 patent, where Applicants failed to disclose previously issued and material prior art U.S. Patent No. 4,630,286 ("Device for Synchronization of Multiple Telephone Circuits"), assigned to Paradyne Corporation.  On information and belief, a reasonable opportunity for discovery will show that one or more Applicants was aware of this undisclosed reference during prosecution and that Applicants' nondisclosure of the 4,630,286 patent, in light of the pattern and practice alleged throughout this Count, occurred with the requisite intent to deceive the USPTO into issuing the '819 patent.

### COUNT X
#### (Declaratory Judgment Action for a Declaration of Unclean Hands)

81. Paragraphs 1 through 80 are incorporated by reference as if stated fully herein.

82. Rembrandt's claims are barred by unclean hands.  Rembrandt asserts the patents identified in Courts I through VIII despite its awareness of the nondisclosures described in the inequitable conduct allegations. Rembrandt asserts to have acquired a portfolio of patents previously assigned to Paradyne.  Rembrandt has consulting agreements with all named inventors on all of the patents-in-suit.  Further, prior to making charges against Plaintiffs,

Rembrandt communicated with one or more additional Paradyne personnel who had substantive involvement in the filing or prosecution of Paradyne patent applications. Rembrandt is aware of the undisclosed and material information referred to in Counts I through IX above through Rembrandt's alleged acquisition of a portfolio of patents assigned to Paradyne and its assertion of the patents in this case. In fact, after originally filing lawsuits on four patents including the '631 patent, Rembrandt later filed lawsuits specifically adding the '761 patent, specifically alleging infringement of both patents by the same accused instrumentalities. Rembrandt was aware of the co-pendency of those patents as well as their prosecution histories, and the cited art and office actions, and nevertheless specifically endeavored to assert both patents. Rembrandt's knowing assertion of unenforceable patents comprises unclean hands.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask that this Court enter judgment in Plaintiffs' favor and grant the following relief:

A. A declaration that Plaintiffs have not infringed any of the claims of U.S. Patent Nos. 4,937,819; 5,008,903; 5,710,761; 5,719,858; 5,778,234; 5,852,631; 6,131,159 or 6,950,444;

B. A declaration that U.S. Patent Nos. 4,937,819; 5,008,903; 5,710,761; 5,719,858; 5,778,234; 5,852,631; 6,131,159 or 6,950,444 are invalid for failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112;

C. A declaration that U.S. Patent Nos. 4,937,819; 5,008,903; 5,710,761; 5,719,858; 5,778,234; 5,852,631; 6,131,159 or 6,950,444 are unenforceable and/or that Rembrandt's unclean hands preclude its enforcement of the patents in this suit;

D. An injunction against Rembrandt and its affiliates, subsidiaries, assigns, employees, agents or anyone acting in privity or concert with Rembrandt from charging infringement or instituting or continuing any legal action for infringement of U.S. Patent Nos. 4,937,819; 5,008,903; 5,710,761; 5,719,858; 5,778,234; 5,852,631; 6,131,159 or 6,950,444 against Plaintiffs, their customers, or anyone acting in privity with Plaintiffs;

E. An order declaring that Plaintiffs are prevailing parties and that this is an exceptional case, awarding Plaintiffs their costs, expenses, disbursements and reasonable attorney fees under 35 U.S.C. § 285 and all other applicable statutes, rules and common law;

F. Award Plaintiffs their costs and expenses of litigation, including attorneys' fees and expert witness fees; and

G. Enter judgment against Rembrandt for such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a

jury trial on all issues so triable.

Respectfully submitted,

Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
1000 West Street
Wilmington, DE 19801
(302) 571-6600
jshaw@ycst.com

*Liaison Counsel and Attorneys for
Plaintiffs/Counter-Defendants Motorola,
Inc., Cisco Systems, Inc., Scientific-Atlanta,
Inc., ARRIS Group, Inc., Thomson, Inc.,
Ambit Microsystems, Inc., and NETGEAR,
Inc.*

Of Counsel:

John M. Desmarais, P.C.
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022-4611

Eric Lamison
Benjamin Ostapuk
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104

Date:   April 11, 2008