IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: REMBRANDT TECHNOLOGIES, LP PATENT LITIGATION, | MDL Docket No. 07-md-1848 (GMS)  |
| MOTOROLA, INC., CISCO SYSTEMS, INC., SCIENTIFIC-ATLANTA, INC., ARRIS GROUP, INC., THOMSON, INC., AMBIT MICROSYSTEMS, INC., and NETGEAR, INC., | C.A. No. 07-752 (GMS) |
| Plaintiffs, | REDACTED DOCUMENT |
| v. | |
| REMBRANDT TECHNOLOGIES, LP, | |
| Defendant. | |
| REMBRANDT TECHNOLOGIES, LP, and REMBRANDT TECHNOLOGIES, LLC d/b/a REMSTREAM, | |
| Counter-Plaintiffs, | |
| v. | |
| MOTOROLA, INC., CISCO SYSTEMS, INC., SCIENTIFIC-ATLANTA, INC., ARRIS GROUP, INC., THOMSON, INC., AMBIT MICROSYSTEMS, INC., NETGEAR, INC., TIME WARNER CABLE, INC., TIME WARNER CABLE, LLC, TIME WARNER NEW YORK CABLE, LLC, TIME WARNER ENTERTAINMENT COMPANY, LP, COMCAST CORPORATION, COMCAST CABLE COMMUNICATIONS, INC., CHARTER COMMUNICATIONS, INC., CHARTER COMMUNICATIONS OPERATING, LLC, COXCOM, INC., CSC HOLDINGS, INC., CABLEVISION SYSTEMS CORPORATION, ADELPHIA COMMUNICATIONS CORPORATION, CENTURY-TCI CALIFORNIA | **JURY TRIAL DEMANDED** |

Original Filing Date: May 2, 2008
Redacted Filing Date: May 7, 2008

COMMUNICATIONS, LP, CENTURY-TCI )
HOLDINGS, LLC, COMCAST OF )
FLORIDA/PENNSYLVANIA, LP (f/k/a )
PARNASSOS, LP), COMCAST OF )
PENNSYLVANIA II, LP (f/k/a CENTURY- )
TCI CALIFORNIA, LP), PARNASSOS )
COMMUNICATIONS, LP, ADELPHIA )
CONSOLIDATION, LLC, PARNASSOS )
HOLDINGS, LLC, and WESTERN NY )
CABLEVISION, LP, )
)
)
Counter-Defendants, )

COMCAST CORPORATION, COMCAST )
CABLE COMMUNICATIONS, LLC, )
CENTURY-TCI CALIFORNIA )
COMMUNICATIONS, LP, COMCAST OF )
FLORIDA/PENNSYLVANIA, LP, )
COMCAST OF PENNSYLVANIA II, LP, )  **JURY TRIAL DEMANDED**
PARNASSOS COMMUNICATIONS, LP, and)
COMCAST CABLE COMMUNICATIONS )
HOLDINGS, INC., )
)
Counter-Counterclaimants, )
)
v. )
)
REMBRANDT TECHNOLOGIES, LP; and )
REMBRANDT TECHNOLOGIES, LLC, )
d/b/a REMSTREAM, )
)
Counter-Counterclaim Defendants. )

REMBRANDT TECHNOLOGIES, LP, and )
REMBRANDT TECHNOLOGIES, LLC d/b/a )
REMSTREAM, )
)
Counter Counterclaim-Plaintiffs, )
)
v. )
)
TIME WARNER ENTERTAINMENTS- )
ADVANCE/NEWHOUSE PARTNERSHIP, )
and COMCAST CABLE )
COMMUNICATION HOLDINGS, INC., )
)
Counter Counterclaim-Defendants. )

2

## REPLY OF COMCAST PARTIES TO COUNTER-COUNTERCLAIMS OF REMBRANDT TECHNOLOGIES, LP AND REMBRANDT TECHNOLOGIES, LLC, d/b/a REMSTREAM AND COUNTER-COUNTERCLAIMS

Comcast Corporation; Comcast Cable Communications, LLC; Century-TCI California Communications, LP; Comcast of Florida/Pennsylvania, LP (f/k/a/ Parnassos, LP); Comcast of Pennsylvania II, LP (f/k/a Century-TCI California, LP); Parnassos Communications, LP; and Comcast Cable Communication Holdings, Inc. (collectively, "Comcast Counterclaimants") reply to the Counterclaims of Counter-Plaintiffs Rembrandt Technologies, LP and Rembrandt Technologies, LLC d/b/a Remstream (collectively "Rembrandt") as follows:

Except as expressly admitted herein, the Comcast Counterclaimants deny each and every allegation in the Counterclaims of Rembrandt.

### THE PARTIES

1.     On information and belief, the Comcast Counterclaimants admit the allegations in this paragraph.

2.     On information and belief, the Comcast Counterclaimants admit that Rembrandt Technologies, LLC is organized under the laws of the State of Delaware with its headquarters at 401 City Avenue, Suite 900, Bala Cynwyd, Pennsylvania 19004. The Comcast Counterclaimants lack knowledge or information sufficient to form a belief as to the truth of the remainder of allegations in this paragraph, and on that basis deny those allegations.

3.     The Comcast Counterclaimants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis deny those allegations.

4.     Admitted.

5.     Admitted.

6.     Admitted.

3

7.    Admitted.

8.    Admitted.

9.    Admitted.

10.    Admitted.

### JURISDICTION AND VENUE

11.    The Comcast Counterclaimants admit that Rembrandt asserts that this is an action for patent infringement, arising under the patent laws of the United States, 35 U.S.C. § 1. *et seq.*

12.    Admitted.

13.    The Comcast Counterclaimants admit that the Court has personal jurisdiction over them, that they have availed themselves of this Court's jurisdiction and that one or more of them are Delaware entities. The Comcast Counterclaimants deny the remaining allegations in this paragraph.

14.    Admitted.

### COUNT I -- U.S. Patent No. 4,937,819

15.    This paragraph does not require a response.

16.    The Comcast Counterclaimants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis deny those allegations.

17.    Admitted that the issue date listed on the '819 patent is June 26, 1990. Except as expressly so admitted, the Comcast Counterclaimants deny the remaining allegations in this paragraph.

18.    Denied.

19.    Denied.

### COUNT II -- U.S. Patent No. 5,008,903

20.     This paragraph does not require a response.

21.     The Comcast Counterclaimants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis deny those allegations.

22.     Admitted that the issue date listed on the '903 patent is April 16, 1991. Except as expressly so admitted, the Comcast Counterclaimants deny the remaining allegations in this paragraph.

23.     Denied.

24.     Denied.

### COUNT III -- U.S. Patent No. 5,701,761

25.     This paragraph does not require a response.

26.     The Comcast Counterclaimants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis deny those allegations.

27.     Admitted that the issue date listed on the '761 patent is January 20, 1998. Except as expressly so admitted, the Comcast Counterclaimants deny the remaining allegations in this paragraph.

28.     Denied.

29.     Denied.

### COUNT IV -- U.S. Patent No. 5,719,858

30.     This paragraph does not require a response.

31.     The Comcast Counterclaimants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis deny those allegations.

32.     Admitted that the issue date listed on the '858 patent is February 17, 1998. Except as expressly so admitted, the Comcast Counterclaimants deny the remaining allegations in this paragraph.

33.     Denied.

34.     Denied.

### COUNT V -- U.S. Patent No. 5,778,234

35.     This paragraph does not require a response.

36.     The Comcast Counterclaimants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis deny those allegations.

37.     Admitted that the issue date listed on the '234 patent is July 7, 1998. Except as expressly so admitted, the Comcast Counterclaimants deny the remaining allegations in this paragraph.

38.     Denied.

39.     Denied.

### COUNT VI -- U.S. Patent No. 5,852,631

40.     This paragraph does not require a response.

41.     The Comcast Counterclaimants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis deny those allegations.

42.     Admitted that the issue date listed on the '631 patent is December 22, 1998. Except as expressly so admitted, the Comcast Counterclaimants deny the remaining allegations in this paragraph.

43.     Denied.

44.     Denied.

**COUNT VII -- U.S. Patent No. 6,131,159**

45.     This paragraph does not require a response.

46.     The Comcast Counterclaimants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis deny those allegations.

47.     Admitted that the issue date listed on the '159 patent is October 10, 2000. Except as expressly so admitted, the Comcast Counterclaimants deny the remaining allegations in this paragraph.

48.     Denied.

49.     Denied.

**COUNT VIII -- U.S. Patent No. 6,950,444**

50.     This paragraph does not require a response.

51.     The Comcast Counterclaimants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis deny those allegations.

52.     Admitted that the issue date listed on the '444 patent is September 27, 2005. Except as expressly so admitted, the Comcast Counterclaimants deny the remaining allegations in this paragraph.

53.     Denied.

54.     Denied.

**COUNT IX -- U.S. Patent No. 5,243,627**

55.     This paragraph does not require a response.

56.     The Comcast Counterclaimants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis deny those allegations.

57.    Admitted that the issue date listed on the '627 patent is September 7, 1993. Except as expressly so admitted, the Comcast Counterclaimants deny the remaining allegations in this paragraph.

58.    Admitted that Comcast Cable Communications, LLC, through one or more subsidiaries, provides cable television services in the United States. Except as expressly so admitted, the Comcast Counterclaimants deny the remaining allegations in this paragraph.

59.    Denied.

60.    Denied.

### PRAYER FOR RELIEF

WHEREFORE, the Comcast Counterclaimants request that Rembrandt take nothing by its Counter-Counterclaims and that the relief requested in Rembrandt's Prayer for Relief be denied.

Pursuant to the April 11, 2008 Stipulation and Order (D.I. 144), the Comcast Counterclaimants assert the following affirmative defenses:

### AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE: Failure to State a Claim (Counts I-IX)

1.    Counts I-IX of Rembrandt's Counterclaims fail to state a claim upon which relief can be granted.

2.    The Comcast Counterclaimants have not infringed any claim of any of the '819, '903, '761, '858, '234, '631, '159, '444 or '627 patents ("the asserted patents").

3.    The Comcast Counterclaimants have not caused, with knowledge, specific intent, or otherwise, equipment suppliers, service providers, and/or any others to infringe any claim of the asserted patents.

4.  Rembrandt has not been damaged in any amount, manner, or at all by reason of any act alleged against the Comcast Counterclaimants, and therefore the relief Rembrandt prays for cannot be granted.

5.  Rembrandt is not entitled to permanent injunctive relief.

### SECOND AFFIRMATIVE DEFENSE: Invalidity

6.  On information and belief, each of the asserted patents is invalid at least for failure to satisfy one or more of the conditions of Title 35 United States Code, including without limitation, Sections 101, 102, 103, and 112 thereof.

### THIRD AFFIRMATIVE DEFENSE: Misuse

7.  On information and belief, Rembrandt has misused the asserted patents by bringing and maintaining its claims of patent infringement against the Comcast Counterclaimants in bad faith and without probable cause when it knew or should have known that it had no valid claim of patent infringement against the Comcast Counterclaimants, that the patents it was asserting are invalid, and by purporting to enforce the asserted patents and demand royalties and other damages with respect to products not covered by the asserted patents.

8.  More specifically, and without limiting the generality of the foregoing paragraph, Rembrandt committed further patent misuse with respect to its assertion of the '627 patent against the Comcast Counterclaimants. When the '627 patent issued in 1993, it was assigned to AT&T Bell Laboratories, a subsidiary or affiliate of AT&T Corporation ("AT&T"). Also in 1993, AT&T and several other companies and institutions joined together to form the HDTV Grand Alliance, whose mission was to develop a standard for the transmission of digital television. The Grand Alliance coordinated with the Advanced Television Systems Committee ("ATSC"), a standards-setting organization, to create a standard for high-definition television broadcasting. The FCC ultimately adopted the major components of the ATSC standard. In adopting the ATSC standard, the FCC expressly premised its order upon, among other things, the

Grand Alliance members' agreement to make any of their relevant patents available either free of charge or on fair, reasonable, and nondiscriminatory terms. AT&T, as a member of the Grand Alliance, was bound by this agreement, and expressly committed to make licenses to any patents essential to practicing that standard available on fair, reasonable and non-discriminatory terms.

9.   When Paradyne Networks, Inc. ("Paradyne") was spun off from AT&T, it took any rights that it may have had to the '627 patent subject to AT&T's commitment to license that patent on fair, reasonable and non-discriminatory terms if essential to the ATSC standard. When Rembrandt purchased the '627 patent from Paradyne, it similarly took any rights to that patent subject to the agreement that AT&T had made to license the patent on fair, reasonable terms and non-discriminatory terms if essential to the ATSC standard.

10.   Rembrandt has and had actual knowledge of AT&T's commitment with respect to the '627 patent. Yet in asserting that the Comcast Counterclaimants infringe the '627 patent by allegedly practicing the ATSC standard, Rembrandt has failed to honor AT&T's commitment to license that patent on fair, reasonable and non-discriminatory terms; instead, Rembrandt seeks exorbitant and oppressive royalty rates, and an injunction. Rembrandt's conduct constitutes patent misuse.

11.   In addition, and without limiting the foregoing, Rembrandt has knowingly asserted and is asserting U.S. Patents '444, '234, '159, '761, '631, '858, '819 and '903 in a manner that exceeds their scope, all for the purpose of attempting to compete unfairly (in conjunction with various business partners and joint-venturers):

a.   in the provision of Data Over Cable Service Interface Specification ("DOCSIS")-compliant equipment to cable subscribers; and/or

b.   in the provision of equipment that enjoys the protection of the

DOCSIS Intellectual Property Rights pool established by Cable

Television Laboratories, Inc. ("CableLabs");  and/or

c.   in the provision of high-speed data cable services to cable

subscribers.

Rembrandt's conduct as to these patents also constitutes patent misuse.

### FOURTH AFFIRMATIVE DEFENSE:  Laches

12.   Rembrandt's claims are barred, in whole or in part, by the doctrine of

laches.

13.   More specifically, and without limiting the generality of the foregoing

paragraph, Rembrandt has accused devices that practice one of more of the DOCSIS standards of

infringing the asserted patents.

14.   The Comcast Counterclaimants and/or their predecessors in interest have

used products or services that comply with one or more of the DOCSIS standards since no later

than May 1998.  Rembrandt and/or its predecessors in interest knew or reasonably should have

known that the Comcast Counterclaimants and/or their predecessors in interest had used such

products or services at that time and since.  However, neither Rembrandt nor its predecessors in

interest asserted the '819, '858, and '631 patents against the Comcast Counterclaimants or any of

their predecessors in interest until September 2005, and neither Rembrandt nor its predecessors

in interest asserted the '903, '761, '234, '159, and '444 patents against the Comcast

Counterclaimants or any of their predecessors in interest until November 2006.  Rembrandt's and

its predecessors in interest's delay is unreasonable and inexcusable, and has caused the Comcast

Counterclaimants material evidentiary and/or economic prejudice.

15.   Any attempt by Rembrandt to assert the claims of the '627 patent against

the Comcast Counterclaimants also is barred by the doctrine of laches.  Rembrandt has accused

devices that practice the ATSC standard of infringing the '627 patent. However, the Comcast Counterclaimants and/or their predecessors in interest have relied upon the adoption of the ATSC standard by the ATSC in December 1995, and have used products or services that comply with the ATSC standard since no later than February 2001. Rembrandt and/or its predecessors in interest knew or reasonably should have known that the Comcast Counter-Counterclaimants, their parents, subsidiaries or affiliates, and/or each of the foregoing's predecessors in interest had used such products or services at that time and since. However, Rembrandt failed to assert the '627 patent against the Comcast Counterclaimants until September 2005. Rembrandt's delay is unreasonable and inexcusable, and has caused the Comcast Counterclaimants material evidentiary and/or economic prejudice.

16.     Rembrandt's claims are accordingly barred by the doctrine of laches.

### FIFTH AFFIRMATIVE DEFENSE: Estoppel

17.     Rembrandt's claims for relief are barred in whole or in part by the equitable doctrines of waiver and/or estoppel.

### SIXTH AFFIRMATIVE DEFENSE:  Rembrandt is Not Entitled to Damages

18.     Rembrandt is not entitled to alleged damages due to its failure to plead and, on information and belief, its inability to prove compliance with the provisions of 35 U.S.C. § 287 on patent marking and pre-suit notice. Additionally, the limitations period further bars past damages claims.

### SEVENTH AFFIRMATIVE DEFENSE: Remstream Lacks Standing

19.     Rembrandt Technologies, LLC d/b/a Remstream, lacks standing to bring the instant counterclaims because Rembrandt has failed to allege that all substantial rights, including the right to enforce the patents, have been granted to Rembrandt Technologies, LLC d/b/a Remstream.

#### EIGHTH AFFIRMATIVE DEFENSE: License

20.    Rembrandt's claims for relief are barred in whole or in part by express or implied license.

#### NINTH AFFIRMATIVE DEFENSE: Unclean Hands

21.    Rembrandt's claims for relief are barred in whole or in part by the doctrine of unclean hands.

#### TENTH AFFIRMATIVE DEFENSE: Unenforceability

22.    The claims of the '761, '858, '234, '631, '159, '444 and '627 patents are unenforceable due to the inequitable conduct of the named inventors and/or others having substantive involvement in the prosecution of the foregoing patents.  These individuals committed inequitable conduct in violation of their duty of candor under 37 C.F.R. § 1.56 by engaging in a pattern and practice of withholding or misstating material information with intent to deceive the U.S. Patent and Trademark Office ("PTO").  For this affirmative defense, the allegations in the following Counter-Counterclaims, including, but not limited to, Paragraphs 64 through 77 of the THIRD CLAIM FOR RELIEF, Paragraphs 78 through 86 of the FOURTH CLAIM FOR RELIEF, Paragraphs 87 through 94 of the FIFTH CLAIM FOR RELIEF, Paragraphs 95 through 105 of the SIXTH CLAIM FOR RELIEF, Paragraphs 106 through 114 of the SEVENTH CLAIM FOR RELIEF,  Paragraphs 115 through 123 of the EIGHTH CLAIM FOR RELIEF,  and Paragraphs 124 through 150 of the NINTH CLAIM FOR RELIEF, are herein incorporated by reference.

#### COUNTER-COUNTERCLAIMS

Comcast Corporation, Comcast Cable Communications, LLC, Century-TCI California Communications, LP, Comcast of Florida/Pennsylvania, LP, Comcast of Pennsylvania II, LP, and Parnassos Communications, LP and Comcast Cable Communications Holdings, Inc. (collectively, the "Comcast Counter-Counterclaimants") assert the following Counter-

13

Counterclaims against Defendant/Counter-Plaintiff-Rembrandt Technologies, LP and Counter-Plaintiff Rembrandt Technologies, LLC d/b/a Remstream (collectively, "Rembrandt").

## PARTIES

1.      Comcast Corporation is a corporation organized under the laws of the Commonwealth of Pennsylvania, having its principal place of business at One Comcast Center, Philadelphia, Pennsylvania, 19103.

2.      Comcast Cable Communications, LLC is a limited liability company organized under the laws of the state of Delaware, having its principal place of business at One Comcast Center, Philadelphia, Pennsylvania, 19103.

3.      Century-TCI California Communications, LP is a limited partnership organized under the laws of the state of Delaware, having its principal place of business at One Comcast Center, Philadelphia, Pennsylvania, 19103.

4.      Comcast of Florida/Pennsylvania, LP, f/k/a Parnassos, LP, is a limited partnership organized under the laws of the state of Delaware, having its principal place of business at One Comcast Center, Philadelphia, Pennsylvania, 19103.

5.      Comcast of Pennsylvania II, LP, f/k/a Century-TCI California, LP is a limited partnership organized under the laws of the state of Delaware, having its principal place of business at One Comcast Center, Philadelphia, Pennsylvania, 19103.

6.      Parnassos Communications, LP is a limited partnership organized under the laws of the state of Delaware, having its principal place of business at One Comcast Center, Philadelphia, Pennsylvania, 19103.

7.      Comcast Cable Communications Holdings, Inc. is a corporation organized under the laws of the state of Delaware, having its principal place of business at One Comcast Center, Philadelphia, Pennsylvania, 19103.  Joinder of Comcast Cable Communications

Holdings, Inc., as a counter-counterclaimant is proper under Federal Rules of Civil Procedure 13(h) and 19.

8.    On information and belief, Rembrandt Technologies, LP is a limited partnership organized under the laws of the state of New Jersey with its principal place of business at 401 City Avenue, Suite 900, Bala Cynwyd, Pennsylvania 19004.

9.    On information and belief, Rembrandt Technologies, LLC d/b/a Remstream is a limited liability corporation organized under the laws of Delaware with its headquarters at 401 City Avenue, Suite 900, Bala Cynwyd, Pennsylvania 19004.

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over the Counter-Counterclaims under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and federal question jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Patent Laws in Title 35 of the United States Code.

11.    This Court has supplemental jurisdiction over the state law claims asserted in this action under 28 U.S.C. § 1367.  The federal and state law claims asserted in this action arise from a common nucleus of operative facts.

12.    This Court has personal jurisdiction over Rembrandt Technologies, LP and Rembrandt Technologies, LLC d/b/a Remstream, because they have submitted to the jurisdiction of this Court, regularly conduct business in Delaware, and have other sufficient contacts with Delaware.  In addition, Rembrandt Technologies, LLC d/b/a Remstream is a Delaware entity.

13.    Venue in this District is proper under 28 U.S.C. § 1391.

**FACTS**

**PATENT ISSUES**

14.    On information and belief, Rembrandt claims to own all rights, title, and interest in and to the '819, '903, '761, '858, '234, '631, '159, '444 and '627 patents ("Rembrandt's asserted patents").

15.    Rembrandt has accused one or more of the Comcast Counter-Counterclaimants and one or more of the Comcast Counter-Counterclaimants' parents, subsidiaries or affiliates, including the parent of and subsidiaries of Comcast Cable Communications Holdings, Inc., of infringing Rembrandt's asserted patents.

16.    An actual case or controversy exists between the Comcast Counter-Counterclaimants and Rembrandt as to the infringement, validity, and enforceability of Rembrandt's asserted patents.

**CREATION OF THE ATSC STANDARD**

17.    The American Television Systems Committee ("ATSC") is a private standard setting organization ("SSO") organized according to the policies of the American National Standards Institute.  Following a multi-year competitive bidding process for the technology that would become the standard for terrestrial digital television broadcasting, the ATSC published the ATSC A-53 Digital Television Standard ("ATSC standard") on or about September 16, 1995.

18.    As a condition for participating in the ATSC's standard development, American Telephone and Telegraph Company ("AT&T")—the original owner of the '627 patent during the ATSC standard setting process—was required to agree, and did agree, to abide by the ATSC Patent Policy that required all ATSC participants to license any proprietary technology essential for ATSC compliance either without compensation or on fair, reasonable, and non-discriminatory ("FRAND") terms.  On or about January 12, 1995, AT&T promised that it would

license its patents, to the extent they are essential to implementation of the ATSC standard, under reasonable terms and conditions on a non-discriminatory, non-exclusive basis.

19.    Besides the technology that Rembrandt currently alleges infringes the '627 patent, at all relevant times, multiple other alternative and then-competing technologies were available to the ATSC for incorporation into the standard. Had the ATSC known that any ATSC signatory or its successor would repudiate its FRAND obligations and assert that the '627 patent covers all or part of the standard, the ATSC would have adopted one of the then-competing technologies.

20.    On or about December 24, 1996, the Federal Communication Commission ("FCC") adopted the ATSC standard as the mandatory standard for terrestrial digital television broadcasting in the United States. In adopting the ATSC standard, the FCC explicitly conditioned its adoption on all ATSC participants, including AT&T, agreeing to license essential proprietary technology on FRAND terms.

21.    If the FCC had known that an ATSC signatory or its successor would repudiate its FRAND obligations, and would assert that its patent(s) were essential to the ATSC standard, then the FCC would have adopted one of the competing standards.

22.    Both ATSC and the FCC relied on AT&T's and others' FRAND commitments in adopting the ATSC standard not only as a voluntary industry standard, but also a government-mandated standard. As the only technology accepted by the FCC for broadcasting terrestrial digital television in the United States, the Comcast Counter-Counterclaimants and their content providers must implement and follow the standard by at least no later than the upcoming deadline set by Congress for transition to a digital television format. The Comcast Counter-Counterclaimants have already invested a significant amount of time, energy and money into implementing the ATSC standard. Congress has established February 17, 2009 as the deadline for the final transition from an analog to a digital system for terrestrial broadcast television in accordance with the ATSC standard. The Comcast Counter-Counterclaimants will be required to

comply with the ATSC standard if they wish to provide to their subscribers with any content from terrestrial broadcast television at all in the United States.

## REMBRANDT'S REPUDIATION OF ITS FRAND COMMITMENT TO ATSC

23.    AT&T owned the '627 patent at the time the ATSC promulgated the ATSC standard, and before the FCC adopted that standard as a government-mandated standard. After the FCC adopted the ATSC standard, in or around December 2004, Rembrandt acquired the '627 patent from Paradyne Networks, Inc. ("Paradyne"), a former subsidiary or affiliate of AT&T, successor-in-interest to AT&T with respect to the rights and obligations associated with the '627 patent, and now a wholly owned subsidiary of Zhone Technologies ("Zhone"). Paradyne obtained its ownership rights to the '627 patent from AT&T. AT&T and its successors-in-interest to the '627 patent were and are bound by the FRAND licensing commitment that AT&T made to the ATSC. As a successor-in-interest to the '627 patent, Rembrandt also is bound by that FRAND licensing commitment to the extent that the patent covers technologies necessary to implement or comply with the ATSC standard.

24.    Rembrandt claims that the '627 patent is "essential" to the ATSC standard. But Rembrandt has disavowed, reneged on, and repudiated the FRAND licensing commitment that its predecessors-in-interest made to ATSC and by which its predecessors-in-interest were bound.

25.    AT&T, as a predecessor in interest to the '627 patent, never claimed that the '627 patent was essential to the ATSC standard. And through its acts and omissions, AT&T implicitly denied that the '627 patent applied to the ATSC standard.

26.    Rembrandt sued the Comcast Counter-Counterclaimants and other Multiple System Operators ("MSOs") without providing any prior notice of the '627 patent and without offering any license whatsoever, let alone one on FRAND terms. After Rembrandt sued the Comcast Counter-Counterclaimants and other MSOs, Rembrandt demanded exorbitant royalties from the Comcast Counter-Counterclaimants and others that far exceeded any royalty based on FRAND. Specifically, Rembrandt demanded royalties from Comcast "for a license fee

18

of one-half percent (0.5%) of all revenues your company derives from use of the ATSC standard for digital broadcast over a cable network . . . ." Upon information and belief, Rembrandt intends this royalty demand to exceed many times the sales price of ATSC-compliant receivers used by the Comcast Counter-Counterclaimants, even though under any FRAND regime, such equipment would have already been licensed by the time Comcast purchased it. Rembrandt's demands directly harm the Comcast Counter-Counterclaimants and threaten the benefits that inure to all those who broadcast or receive the ATSC standard.

27. After acquiring the '627 patent, Rembrandt intentionally repudiated any FRAND commitment with respect to the allegedly ATSC-essential '627 patent.

28. Rembrandt acquired the '627 patent with the specific intent to repudiate, in bad faith, its FRAND obligations and to obtain exorbitant royalties far in excess of FRAND.

29. Rembrandt has expressly denied having any FRAND obligations. For example, upon information and belief, it denied owing any such obligation to Harris Corporation, a manufacturer of digital transmission devices, in a complaint it filed in Delaware state court in 2007.

30. Rembrandt seeks non-FRAND term royalties from the Comcast Counter-Counterclaimants, who must, according to Rembrandt's allegations, pay an exorbitant royalty far in excess of FRAND for practicing the mandated ATSC standard, or cease receiving terrestrial digital broadcast television signals in the United States.

31. Rembrandt's acquisition of the '627 patent has now subjected the Comcast Counter-Counterclaimants to Rembrandt's patent infringement suit, whereas AT&T could not and would not have asserted such suit. Because AT&T implicitly denied application of the '627 patent to ATSC standard, and because they could not charge greater than FRAND terms in any event, Rembrandt has harmed the Comcast Counter-Counterclaimants in a way its predecessors could not and would not have done.

## CREATION OF THE DOCSIS SPECIFICATION

32.    Beginning in the mid-1990s, work began to develop a technical specification for the delivery of high-speed data over cable television networks. In 1997, The first version of Data Over Cable Services Interface Specifications ("DOCSIS") was released by Cable Television Laboratories, Inc. ("CableLabs").

33.    The goal in the development of DOCSIS was to specify interface requirements so that cable operators and their subscribers would be able to purchase affordable, interchangeable, highly functional cable modems and other equipment from multiple suppliers. To ensure that customers who purchased cable modems would receive products that were fully compatible with the DOCSIS standard, CableLabs established a certification program to identify DOCSIS-compliant manufacturers. Certified equipment could then be used in cable systems supporting DOCSIS, and cable operators could then ensure that the equipment used on their network is DOCSIS certified.

34.    On information and belief, both during and after the DOCSIS standardization process, and prior to filing lawsuits against the Comcast Counter-Counter-counterclaimants and other MSOs, neither Rembrandt nor its Paradyne predecessors-in interest informed CableLabs or cable equipment vendors that they had intellectual property they believed read on or covered the DOCSIS standard.

35.    To facilitate efficient licensing of patented technology that was essential to implement the original DOCSIS specification and subsequent versions, CableLabs developed a patent pool for such intellectual property. CableLabs announced the DOCSIS patent pool in July 1998. Companies contributing technology essential to the DOCSIS standardization effort signed an agreement, entitled, "Data Over Cable Service Interface Specifications License Agreement."

36.    DOCSIS patent pool members agree to contribute a non-exclusive, royalty-free license to any intellectual property rights they have that are essential to comply with the DOCSIS specifications. In exchange for this obligation to the patent pool, DOCSIS pool

members receive non-exclusive, royalty-free licenses to the patent pool intellectual property to the extent it is essential to comply with the DOCSIS specification.

37.    Rembrandt and Remstream contend that they have not signed, nor are bound by, the DOCSIS License Agreement.

## REMBRANDT'S BREACH OF THE DOCSIS LICENSING AGREEMENT

38.    Rembrandt is a non-practicing entity ("NPE")—*viz.*, a company that invests in patents but does not intend to practice them.  According to its website, "Rembrandt invests its capital to acquire patents to pursue infringement."

39.    Rembrandt acquired the patents-in-suit with the intent to assert them against, among others, MSOs that useDOCSIS-compliant equipment.  Rembrandt contends that its patents are essential to compliance with the DOCSIS specification.

40.    As part of Rembrandt's scheme to assert the patents-in-suit, on information and belief, Rembrandt endeavored to become a supposed market participant or direct competitor of the MSOs and/or DOCSIS-compliant equipment manufacturers for the sole purpose of seeking injunctive relief and/or lost profits in its infringement suits.



████████████████████████████████████████████████

████████████████████████████

48.    Remstream—either alone or through partnerships with ████████ and others—lacks the capacity to meet U.S. demand for DOCSIS-compliant cable modems. Rembrandt's efforts to establish its entity Remstream as the sole supplier of cable modems is not being done for proper business purposes but rather to conjure up an advantage in litigation.

49.    Upon information and belief, Rembrandt has also reached an agreement with ████████████████████████████████ to further its scheme of attempting to pose as a practicing entity that has suffered damages as a purported competitor in the cable systems market.

### FIRST CLAIM FOR RELIEF: Declaratory Judgment of Non-Infringement, Invalidity, and Unenforceability of the '819 Patent

50.    The Comcast Counter-Counterclaimants reallege and incorporate by reference Paragraphs 1 through 49 above, and all responses set forth above by the Comcast Counterclaimants in their Reply to Rembrandt's Counterclaims and Affirmative Defenses.

51.    The Comcast Counter-Counterclaimants, and their parents, subsidiaries or affiliates, have not infringed and are not now infringing the '819 patent.

52.    The Comcast Counter-Counterclaimants, and their parents, subsidiaries or affiliates have not caused others to infringe, and are not now causing others to infringe, the '819 patent.

53.    The '819 patent is invalid under, without limitation, 35 U.S.C. §§ 101-103, 112.

54.    Rembrandt has committed patent misuse by accusing the Comcast Counter-Counterclaimants, and their parents, subsidiaries or affiliates, of infringing the '819 patent with knowledge that the '819 patent is invalid and/or not infringed.

55.    The Comcast Counter-Counterclaimants are entitled to a declaratory judgment that neither they, nor their parents, subsidiaries or affiliates have infringed, nor are infringing, the '819 patent, and that the '819 patent is invalid and unenforceable.

56.    This Counter-Counterclaim is exceptional under 35 U.S.C. § 285, and the Comcast Counter-Counterclaimants are entitled to an award of their reasonable attorneys' fees.

**SECOND CLAIM FOR RELIEF: Declaratory Judgment of Non-Infringement, Invalidity and Unenforceability of the '903 Patent**

57.    The Comcast Counter-Counterclaimants reallege and incorporate by reference Paragraphs 1 through 56 above, and all responses set forth above by the Comcast Counterclaimants in their Reply to Rembrandt's Counterclaims and Affirmative Defenses.

58.    The Comcast Counter-Counterclaimants, and their parents, subsidiaries or affiliates, have not infringed and are not now infringing the '903 patent.

59.    The Comcast Counter-Counterclaimants, and their parents, subsidiaries or affiliates have not caused others to infringe, and are not now causing others to infringe, the '903 patent.

60.    The '903 patent is invalid under, without limitation, 35 U.S.C. §§ 101-103, 112.

61.    Rembrandt has committed patent misuse by accusing the Comcast Counter-Counterclaimants, and their parents, subsidiaries or affiliates, of infringing the '903 patent with knowledge that the '903 patent is invalid and/or not infringed.

62.    The Comcast Counter-Counterclaimants are entitled to a declaratory judgment that neither they, nor their parents, subsidiaries or affiliates have infringed, nor are infringing, the '903 patent, and that the '903 patent is invalid and unenforceable.

63.    This Counter-Counterclaim is exceptional under 35 U.S.C. § 285, and the Comcast Counter-Claimants are entitled to an award of their reasonable attorneys' fees.

24

**THIRD CLAIM FOR RELIEF: Declaratory Judgment of Non-Infringement, Invalidity, and Unenforceability of the '761 Patent**

64.    The Comcast Counter-Counterclaimants reallege and incorporate by reference Paragraphs 1 through 63 above, and all responses set forth above by the Comcast Counterclaimants in their Reply to Rembrandt's Counterclaims and Affirmative Defenses.

65.    The Comcast Counter-Counterclaimants, and their parents, subsidiaries or affiliates, have not infringed and are not now infringing the '761 patent.

66.    The Comcast Counter-Counterclaimants, and their parents, subsidiaries or affiliates have not caused others to infringe, and are not now causing others to infringe, the '761 patent.

67.    The '761 patent is invalid under, without limitation, 35 U.S.C. §§ 101-103, 112.

68.    Rembrandt has committed patent misuse by accusing the Comcast Counter-Counterclaimants, and their parents, subsidiaries or affiliates, of infringing the '761 patent with knowledge that the '761 patent is invalid and/or not infringed.

69.    The Manual of Patent Examining Procedures ("MPEP") § 2001.06(b) imposes "a duty to bring to the attention of the examiner, or other Office official involved with the examination of a particular application, information within their knowledge as to other co-pending United States applications which are 'material to patentability' of the application in question." The MPEP further cites case law providing that "it is unfair to the busy examiner, no matter how diligent and well informed he may be, to assume that he retains details of every pending file in his mind when he is reviewing a particular application. . . . [T]he applicant has the burden of presenting the examiner with a complete and accurate record to support the allowance of letters patent." The MPEP also provides that "if a particular inventor has different applications pending in which similar subject matter but patentably indistinct claims are present

that fact must be disclosed to the examiner of each of the involved applications. Similarly, the prior art references from one application must be made of record in another subsequent application if such prior art references are 'material to patentability' of the subsequent application."

70.     On information and belief, the named inventors of the patents asserted by Rembrandt and/or others with substantive involvement in the filing and/or prosecution of the application for these patents (collectively "Applicants") engaged in inequitable conduct by engaging in a pattern and practice of withholding or misstating material information with intent to deceive the PTO. Such intent to deceive is further informed by the claim constructions and infringement contentions that Rembrandt seeks to advance in this litigation. On information and belief, a reasonable opportunity for discovery will show that Applicants failed to disclose their own previously-issued patents that constituted material prior art; material information regarding their own co-pending patent applications; other prior art that was known to them through the prosecution of their own other patents and applications; and their own systems that were on sale before the relevant critical dates. Accordingly, Applicants engaged in a pattern and practice of repeatedly and continuously failing to disclose to the PTO material information of which Applicants were aware. The permeation and continuation of this misconduct throughout the prosecution of multiple applications demonstrates that Applicants acted with deceptive intent rendering the asserted patents unenforceable.

71.     With respect to the '761 patent, Applicants were aware of but did not disclose co-pending application 08/780,762 ("the '762 application" which resulted in the '631 patent that Rembrandt also asserts in this litigation). The '761 Applicants failed to identify the '762 application or its claims to the PTO while prosecuting the '761 patent. The '762 application was never listed in any Information Disclosure Statement or otherwise made of

record during the prosecution of the '761 patent. The '762 application and its claims were material to patentability. Robert Scott is the sole named inventor on both the '761 and '631 patents and, on information and belief, was aware of the co-pendency of his respective applications for these patents and withheld disclosure of the '762 application with intent to deceive the PTO. In addition, on information and belief, a reasonable opportunity for discovery will show that others who were substantively involved in the filing or prosecution of the '761 patent were also aware of the '762 application and withheld disclosure of it with intent to deceive the PTO.

72.    While prosecuting the '761 patent, Applicants also failed to disclose the prior art of record from the '762 application, as well as the prior art of record from Application Serial Nos. 08/781,787 (which resulted in U.S. Patent No. 5,751,796 entitled "Rapid Startup Protocol For Communication Between a Plurality of Modems" to Scott and Zuranski), 08/781,067 (which resulted in U.S. Patent No. 5,796,808 entitled "System and Method for Automatically Selecting the Mode of Communication between a Plurality of Modems" to Scott and Lastinger Jr.), 08/457,881 (which resulted in U.S. Patent No. 5,793,809 entitled "Transparent Technique for Mu-Law Modems to Detect an All-Digital Circuit Connection" to Holmquist), 08/912,126 (which resulted in U.S. Patent No. 6,081,556 entitled "Transparent Technique for Mu-Law Modems to Detect an All-Digital Circuit Connection" to Holmquist), and 08/978,536 (which resulted in U.S. Patent No. 5,349,635 entitled "Half-Duplex or Full-Duplex Automode Operation for use in Data Communications Equipment" to Scott) (collectively "the '761 Co-Pending Applications"). On information and belief, Applicants were aware of the '761 Co-Pending Applications. In fact, two of the '761 Co-Pending Applications name Robert Scott as an inventor. In addition, on information and belief, a reasonable opportunity for discovery will

show that others who were substantively involved in the filing or prosecution of the '761 patent were also aware of the '761 Co-Pending Applications.

73. Applicants failed to disclose prior art of record from the '761 Co-Pending Applications that includes without limitation U.S. Patent Nos. 4,905,282 entitled "Feature Negotiation Protocol and Dynamically Adjustable Retraining Sequence for a High Speed Half Duplex Modem" to McGlynn and Nash ("McGlynn"); 5,528,679 entitled "Automatic Detection of Digital Call Paths in a Telephone System" to Taarud ("Taarud"); 4,680,773 entitled "Data Telecommunications System" to Amundson ("Amundson"); and 4,782,498 entitled "Modem with Improved Handshaking Capability" to Copeland, III ("Copeland") (collectively "the '761 Co-Pending Art"). The '761 Co-Pending Art was material to the patentability of the '761 patent. Applicants for the '761 patent were aware of but failed to disclose any of '761 Co-Pending Art to the PTO during prosecution of the '761 patent.

74. Further, McGlynn was cited during prosecution of the '631 patent in a Detailed Office Action and accompanying Notice of References Cited mailed on September 12, 1997. Applicants attempted to distinguish McGlynn in a First Response with Amendments on October 23, 1997. Notwithstanding this First Response, the PTO rejected the then-pending claims of the '631 patent based on McGlynn in an office action dated November 18, 1997, while the application for the '761 patent remained co-pending. Nevertheless, Applicants failed to disclose McGlynn while prosecuting the '761 patent. Further, Applicants for the '761 patent failed to disclose the office actions and responses from the co-pending '631 patent.

75. On information and belief, a reasonable opportunity for discovery will show that Applicants for the '761 patent were aware of the '761 Co-Pending Art, as well as U.S. Patent Nos. 5,600,712 entitled "Enabling Technique for Quickly Establishing High Speed PSTN Connections In Telecommuting Applications" to Hanson; 5,577,105 entitled "Telephone Call Routing and Switching Techniques for Data Communications" to Baum; and 5,127,041 entitled

"System and Method for Interfacing Computers to Diverse Telephone Networks" to O'Sullivan. The undisclosed information described herein was material to patentability of the '761 patent and was withheld with intent to deceive the PTO.

76.     The Comcast Counter-Counterclaimants are entitled to a declaratory judgment that neither they, nor their parents, subsidiaries or affiliates have infringed, nor are infringing, the '761 patent, and that the '761 patent is invalid and unenforceable.

77.     This Counter-Counterclaim is exceptional under 35 U.S.C. § 285, and the Comcast Counter-Counterclaimants are entitled to an award of their reasonable attorneys' fees.

**FOURTH CLAIM FOR RELIEF: Declaratory Judgment of Non-Infringement, Invalidity, and Unenforceability of the '858 Patent**

78.     The Comcast Counter-Counterclaimants reallege and incorporate by reference Paragraphs 1 through 77 above, and all responses set forth above by the Comcast Counterclaimants in their Reply to Rembrandt's Counterclaims and Affirmative Defenses.

79.     The Comcast Counter-Counterclaimants, and their parents, subsidiaries or affiliates, have not infringed and are not now infringing the '858 patent.

80.     The Comcast Counter-Counterclaimants, and their parents, subsidiaries or affiliates have not caused others to infringe, and are not now causing others to infringe, the '858 patent.

81.     The '858 patent is invalid under, without limitation, 35 U.S.C. §§ 101-103, 112.

82.     Rembrandt has committed patent misuse by accusing the Comcast Counter-Counterclaimants, and their parents, subsidiaries or affiliates, of infringing the '858 patent with knowledge that the '858 patent is invalid and/or not infringed.

83.     On information and belief, Applicants for the '858 patent engaged in inequitable conduct by engaging in a pattern and practice of withholding or misstating material

information with intent to deceive the PTO. Applicants were aware of but did not disclose the material prior art of record with respect to Application Serial No. 08/607,912 (which resulted in U.S. Patent No. 5,754,799 entitled "System and Method for Bus Contention Resolution" to Hiles), including without limitation U.S. Patent Nos. 4,608,700 entitled "Serial Multi-Drop Data Link" to Kirtley, Sterling, and Williams; and 5,398,243 entitled "Arbitration Method and Bus for Serial Data Transmission" to Aguilhon, Doucet, and Karcher (collectively "the '858 Co-Pending Art"). Applicants did not disclose the '858 Co-Pending Art during prosecution of the '858 patent. On information and belief, a reasonable opportunity for discovery will show that Applicants were aware of the '858 Co-Pending Art during prosecution of the '858 patent. This undisclosed information was material to patentability of the '858 patent. On information and belief, a reasonable opportunity for discovery will show this information was withheld with intent to deceive the PTO as part of Applicants' continuing pattern and practice of nondisclosure and corresponding violation of their duty of candor to the PTO.

84.    In addition, Applicants were aware of U.S. Patent No. 4,797,815 entitled "Interleaved Synchronous Bus Access Protocol for a Shared Memory Multi-Processor System" to Moore (the same individual named as inventor on the '858 patent). On information and belief, a reasonable opportunity for discovery will show Applicants were also aware of U.S. Patent Nos. 3,997,896 entitled "Data Processing System Providing Split Bus Cycle Operation" to Cassarino, Jr., Bekampis, Conway, and Lemay; 4,181,974 entitled "System Providing Multiple Outstanding Information Requests" to Lemay and Curley; and 4,669,056 entitled "Data Processing System with a Plurality of Processors Accessing a Common Bus to Interleaved Storage" to Waldecker and Wright. Applicants failed to disclose any of these patents to the PTO during prosecution of the '858 patent. These references were material to the patentability of the '858 patent, and on information and belief a reasonable opportunity for discovery will show that Applicants knew of

but withheld them with intent to deceive the PTO as part of their continuing pattern and practice of nondisclosure and corresponding violation of their duty of candor to the PTO.

85.    The Comcast Counter-Counterclaimants are entitled to a declaratory judgment that neither they, nor their parents, subsidiaries or affiliates have infringed, nor are infringing, the '858 patent, and that the '858 patent is invalid and unenforceable.

86.    This Counter-Counterclaim is exceptional under 35 U.S.C. § 285, and the Comcast Counter-Counterclaimants are entitled to an award of their reasonable attorneys' fees.

### FIFTH CLAIM FOR RELIEF: Declaratory Judgment of Non-Infringement, Invalidity, and Unenforceability of the '234 Patent

87.    The Comcast Counter-Counterclaimants reallege and incorporate by reference Paragraphs 1 through 86 above, and all responses set forth above by the Comcast Counterclaimants in their Reply to Rembrandt's Counterclaims and Affirmative Defenses.

88.    The Comcast Counter-Counterclaimants, and their parents, subsidiaries or affiliates, have not infringed and are not now infringing the '234 patent.

89.    The Comcast Counter-Counterclaimants, and their parents, subsidiaries or affiliates have not caused others to infringe, and are not now causing others to infringe, the '234 patent.

90.    The '234 patent is invalid under, without limitation, 35 U.S.C. §§ 101-103, 112.

91.    Rembrandt has committed patent misuse by accusing the Comcast Counter-Counterclaimants, and their parents, subsidiaries or affiliates, of infringing the '234 patent with knowledge that the '234 patent is invalid and/or not infringed.

92.    On information and belief, Applicants for the '234 patent engaged in inequitable conduct by engaging in a pattern and practice of withholding or misstating material

information with intent to deceive the PTO. Paragraphs 110 through 113 of the SEVENTH

CLAIM FOR RELIEF (as to the '159 patent) are herein incorporated by reference.

93.    The Comcast Counter-Counterclaimants are entitled to a declaratory

judgment that neither they, nor their parents, subsidiaries or affiliates have infringed, nor are

infringing, the '234 patent, and that the '234 patent is invalid and unenforceable.

94.    This Counter-Counterclaim is exceptional under 35 U.S.C. § 285, and the

Comcast Counter-Counterclaimants are entitled to an award of their reasonable attorneys' fees.

### SIXTH CLAIM FOR RELIEF: Declaratory Judgment of Non-Infringement, Invalidity, and Unenforceability of the '631 Patent

95.    The Comcast Counter-Counterclaimants reallege and incorporate by

reference Paragraphs 1 through 94 above, and all responses set forth above by the Comcast

Counterclaimants in their Reply to Rembrandt's Counterclaims and Affirmative Defenses.

96.    The Comcast Counter-Counterclaimants, and their parents, subsidiaries or

affiliates, have not infringed and are not now infringing the '631 patent.

97.    The Comcast Counter-Counterclaimants, and their parents, subsidiaries or

affiliates have not caused others to infringe, and are not now causing others to infringe, the '631

patent.

98.    The '631 patent is invalid under, without limitation, 35 U.S.C. §§ 101-

103, 112.

99.    Rembrandt has committed patent misuse by accusing the Comcast

Counter-Counterclaimants, and their parents, subsidiaries or affiliates, of infringing the '631

patent with knowledge that the '631 patent is invalid and/or not infringed.

100.    On information and belief, Applicants for the '631 patent engaged in

inequitable conduct by engaging in a pattern and practice of withholding or misstating material

information with intent to deceive the PTO. Applicants were aware of but did not disclose

information as to co-pending applications of which they were aware, including without limitation co-pending application 08/458,048 (which resulted in the '761 patent that Rembrandt asserts in this litigation), as well as Application Serial Nos. 08/781,787 (which resulted in U.S. Patent No. 5,751,796 entitled "Rapid Startup Protocol For Communication Between a Plurality of Modems" to Scott and Zuranski), and 08/780,238 (which resulted in U.S. Patent No. 5,787,363 entitled "System and Method for Connect Message Synchronization of Modems in a Cellular Data Gateway" to Scott and Lastinger Jr). (collectively "the '631 Co-Pending Applications"). Applicants for the '631 patent failed to disclose information regarding any of these co-pending applications to the PTO during prosecution of the '631 patent. Applicants for the '631 patent were aware of the '631 Co-Pending Applications during prosecution of the '631 patent. Two of the '631 Co-Pending Applications name Robert Scott as an inventor and claim priority based on the same provisional applications upon which priority is claimed for the '631 patent. In the case of the '761 and '631 patents, Robert Scott is the sole named inventor on both patents. Information relating to the '631 Co-Pending Applications was material to the patentability of the '631 patent and was withheld with intent to deceive the PTO.

       101.    Further, while prosecuting the '631 patent Applicants were aware of but failed to disclose the prior art of record from the '631 Co-Pending Applications, including without limitation U.S. Patent Nos. 5,550,881 entitled "Automatic Modulation Mode Selecting Unit and Method for Modems" to Sridhar and Sheer ("Sridhar"); and 5,528,679 entitled "Automatic Detection of Digital Call Paths in a Telephone System" to Taarud ("Taarud") (collectively "the '631 Co-Pending Art"). Sridhar was cited and relied upon for claim rejections in connection with the '761 patent in a Detailed Office Action and accompanying Notice of References Cited dated December 26, 1996; and Applicants attempted to distinguish Sridhar in a Response and Amendment dated March 31, 1997. The respective applications for '631 and '761

patents were co-pending as of December 26, 1996, and the '631 patent did not issue until December 22, 1998. Yet Applicants for the '631 patent did not disclose to the PTO the December 26, 1996 office action and the March 31, 1997 response from the co-pending prosecution of the '761 patent, or the prior art of record referenced in those communications.

102.    On information and belief, a reasonable opportunity for discovery will show that Applicants for the '631 patent were aware of but did not disclose the '631 Co-Pending Art, as well as U.S. Patent Nos. 5,600,712 entitled "Enabling Technique for Quickly Establishing High Speed PSTN Connections In Telecommuting Applications" to Hanson; 5,577,105 entitled "Telephone Call Routing and Switching Techniques for Data Communications" to Baum; 5,127,041 entitled "System and Method for Interfacing Computers to Diverse Telephone Networks" to O'Sullivan; 4,680,773 entitled "Data Telecommunications System" to Amundson ("Amundson"); and 4,782,498 entitled "Modem with Improved Handshaking Capability" to Copeland, III ("Copeland"). The '631 Co-Pending Art and information described in this paragraph were material to patentability of the '631 patent and were withheld with intent to deceive the PTO.

103.    In addition, on information and belief, a reasonable opportunity for discovery will show that Robert Scott was improperly listed as sole inventor of the '631 patent with deceptive intent to defraud the PTO into issuing the patent over the '761 patent.

104.    The Comcast Counter-Counterclaimants are entitled to a declaratory judgment that neither they, nor their parents, subsidiaries or affiliates have infringed, nor are infringing, the '631 patent, and that the '631 patent is invalid and unenforceable.

105.    This Counter-Counterclaim is exceptional under 35 U.S.C. § 285, and the Comcast Counter-Counterclaimants are entitled to an award of their reasonable attorneys' fees.

**SEVENTH CLAIM FOR RELIEF: Declaratory Judgment of Non-Infringement, Invalidity, and Unenforceability of the '159 Patent**

106.    The Comcast Counter-Counterclaimants reallege and incorporate by reference Paragraphs 1 through 105 above, and all responses set forth above by the Comcast Counterclaimants in their Reply to Rembrandt's Counterclaims and Affirmative Defenses.

107.    The Comcast Counter-Counterclaimants, and their parents, subsidiaries or affiliates, have not infringed and are not now infringing the '159 patent.

108.    The Comcast Counter-Counterclaimants, and their parents, subsidiaries or affiliates have not caused others to infringe, and are not now causing others to infringe, the '159 patent.

109.    The '159 patent is invalid under, without limitation, 35 U.S.C. §§ 101-103, 112.

110.    Rembrandt has committed patent misuse by accusing the Comcast Counter-Counterclaimants, and their parents, subsidiaries or affiliates, of infringing the '159 patent with knowledge that the '159 patent is invalid and/or not infringed.

111.    On information and belief, Applicants for the '159 patent engaged in inequitable conduct by engaging in a pattern and practice of withholding or misstating material information with intent to deceive the PTO. During prosecution of the '159 patent, the PTO repeatedly rejected Applicants' pending claims due to prior art, including without limitation references by Lang and Mori. In response to these and other rejections, Applicants represented that their claims required and that they had invented a system that included a "displacement multibit memory address." Applicants had no support, however, for the invention as they represented it to the PTO. Applicants misstated and omitted this material information with intent to deceive the PTO into issuing Applicants' claims. These material misstatements and omissions were made with intent to deceive, and were part of Applicants' pattern and practice of

inequitable conduct throughout the prosecution of the asserted patents. Further, as the related '234 patent is a divisional of the '159 patent, the '234 patent is also infected by inequitable conduct committed with respect to the '159 patent and is likewise rendered unenforceable as well.

112.    In addition, on information and belief, a reasonable opportunity for discovery will show that Applicants offered the '159/'234 invention for sale and/or placed it in public use more than one year before the application date, and that applicants withheld this information which was material to patentability with intent to deceive the PTO. This nondisclosure is also part of Applicants' continuing pattern and practice of violating their duty of candor to the PTO.

113.    The Comcast Counter-Counterclaimants are entitled to a declaratory judgment that neither they, nor their parents, subsidiaries or affiliates have infringed, nor are infringing, the '159 patent, and that the '159 patent is invalid and unenforceable.

114.    This Counter-Counterclaim is exceptional under 35 U.S.C. § 285, and the Comcast Counter-Counterclaimants are entitled to an award of their reasonable attorneys' fees.

**EIGHTH CLAIM FOR RELIEF: Declaratory Judgment of Non-Infringement, Invalidity, and Unenforceability of the '444 Patent**

115.    The Comcast Counter-Counterclaimants reallege and incorporate by reference Paragraphs 1 through 114 above, and all responses set forth above by the Comcast Counterclaimants in their Reply to Rembrandt's Counterclaims and Affirmative Defenses.

116.    The Comcast Counter-Counterclaimants, and their parents, subsidiaries or affiliates, have not infringed and are not now infringing the '444 patent.

117.    The Comcast Counter-Counterclaimants, and their parents, subsidiaries or affiliates have not caused others to infringe, and are not now causing others to infringe, the '444 patent.

36

118.    The '444 patent is invalid under, without limitation, 35 U.S.C. §§ 101-103, 112.

119.    Rembrandt has committed patent misuse by accusing the Comcast Counter-Counterclaimants, and their parents, subsidiaries or affiliates, of infringing the '444 patent with knowledge that the '444 patent is invalid and/or not infringed.

120.    On information and belief, Applicants for the '444 patent engaged in inequitable conduct by engaging in a pattern and practice of withholding or misstating material information with intent to deceive the PTO. On information and belief, a reasonable opportunity for discovery will show that Applicants were aware of U.S. Patent No. 3,978,407 entitled "Fast Start-Up Adaptive Equalizer Communication System Using Two Data Transmission Rates" to Forney and Hart. Applicants failed to disclose this patent to the PTO during prosecution of the '444 patent. This reference was material to patentability of the '444 patent. On information and belief, a reasonable opportunity for discovery will show that Applicants knew of and withheld this reference with intent to deceive the PTO.

121.    In addition, on information and belief a reasonable opportunity for discovery will show that Paradyne offered for sale MVL technology more than one year before applying for the '444 patent, that such information was material to the '444 patent, but that Applicants failed to disclose such information to the PTO while prosecuting the '444 patent. The withheld information was material to patentability, and on information and belief a reasonable opportunity for discovery will show that this information was withheld with intent to deceive the PTO as another example of the continuing pattern and practice of Applicants' nondisclosure and corresponding violation of their duty of candor to the PTO.

122.    The Comcast Counter-Counterclaimants are entitled to a declaratory judgment that neither they, nor their parents, subsidiaries or affiliates have infringed, nor are infringing, the '444 patent, and that the '444 patent is invalid and unenforceable.

123.    This Counter-Counterclaim is exceptional under 35 U.S.C. § 285, and the Comcast Counter-Counterclaimants are entitled to an award of their reasonable attorneys' fees.

**NINTH CLAIM FOR RELIEF: Declaratory Judgment of Non-Infringement, Invalidity, and Unenforceability of the '627 Patent**

124.    The Comcast Counter-Counterclaimants reallege and incorporate by reference Paragraphs 1 through 123 above, and all responses set forth above by the Comcast Counterclaimants in their Reply to Rembrandt's Counterclaims and Affirmative Defenses.

125.    The Comcast Counter-Counterclaimants, and their parents, subsidiaries or affiliates, have not infringed and are not now infringing the '627 patent.

126.    The Comcast Counter-Counterclaimants, and their parents, subsidiaries or affiliates have not caused others to infringe, and are not now causing others to infringe, the '627 patent.

127.    The '627 patent is invalid under, without limitation, 35 U.S.C. §§ 101-103, 112.

128.    Rembrandt has committed patent misuse by accusing the Comcast Counter-Counterclaimants, and their parents, subsidiaries or affiliates, of infringing the '627 patent with knowledge that the '627 patent is invalid and/or not infringed.  The Comcast Counter-Counterclaimants further incorporate by reference herein the allegations of paragraphs 7 to 11 of the THIRD AFFIRMATIVE DEFENSE: Patent Misuse of the Comcast Counterclaimants.

129.    The '627 patent is also unenforceable because it was obtained through inequitable conduct.  More specifically, William Betts (a named inventor on the '627 patent)

committed fraud on the PTO when prosecuting the '627 patent. Mr. Betts's fraud on the PTO renders the '627 patent unenforceable.

130.    As described in more detail below, while prosecuting the '627 patent, Mr. Betts knew of multiple prior art references material to the patentability of the claims in the '627 patent. But Mr. Betts failed to disclose those items of prior art and in so doing violated his duty of candor to the PTO. Moreover, Comcast is informed and believes that Mr. Betts failed to disclose these references with an intent to deceive the PTO.

131.    Mr. Betts is a named inventor on United States Patent No. 4,677,626 ("the '626 patent"), entitled "Self-Synchronizing Interleaver for Trellis Encoder Used in Wireline Modems." That patent issued on June 30, 1987, and is therefore prior art to the '627 patent. The '626 patent constitutes material prior art to the '627 patent, such that a reasonable patent examiner would have been substantially likely to consider it important in deciding whether to allow any claims in the application for the '627 patent to issue. Mr. Betts indisputably knew of the '626 patent and its materiality, as he was a named inventor on that prior-art patent. His failure to disclose the '626 patent violated his duty of candor to the PTO and constituted inequitable conduct, thus rendering the '627 patent unenforceable.

132.    In addition, Mr. Betts failed to disclose United States Patent No. 4,641,327 ("the '327 patent"), United States Patent No. 5,052,000 ("the '000 patent"), United States Patent Application No. 363,793 ("the '793 application"), United States Patent No. 5,056,112 ("the '112 patent"), United States Patent Application No. 457,438 ("the '438 application"), United States Patent No. 5,105,442 ("the '442 patent"), United States Patent Application No. 611,200 ("the '200 application"), United States Patent No. 5,214,656 ("the '656 patent") and United States Patent Application No. 627,156 ("the '156 application") to the PTO.

133.    The '327 patent is entitled "Frame Synchronization in Trellis-Coded Communication Systems," and was issued to Lee-Fang Wei on February 3, 1987. It is therefore prior art to the '627 patent. The '327 patent constitutes material prior art to the '627 patent, such that a reasonable patent examiner would have been likely to consider it important in deciding whether to allow any claims in the application for the '627 patent to issue.

134.    On information and belief, Mr. Betts knew of the invention of the '327 patent and its materiality. On information and belief, Mr. Betts was aware that the '327 patent contained material information including, but not limited to the following:

(i)     "Another general feature of the invention is an interleaver that changes the original sequence of signal points to a revised sequence for transmission and a deinterleaver that changes the received sequence of signal points in a manner that will restore the original sequence . . . ." ('327 Col. 1:51-56; see also 2:18-20.)

(ii)    "The communication system is a trellis-coded modulation system. Each signal point is two-dimensional. The two-dimensional points are grouped into multi-dimensional points." ('327 Col. 1:59-62.)

(iii)   "[E]ncoders and grouping device 18 deliver to interleaver 19, N pairs of in-phase and quadrature coordinates in series, one pair in each signaling interval, each pair corresponding to a point in a two-dimensional (2D) signal constellation. Interleaver 19 reorders the coordinate pairs . . . ." ('327 Col. 2:68-3:5.)

135.    Mr. Betts's failure to disclose the '327 patent to the PTO violated his duty of candor to the PTO and constituted inequitable conduct, thus rendering the '627 patent unenforceable.

136.    The '000 patent is entitled "Technique for Improving the Operation of Decision Feedback Equalizers in Communications Systems Using Error Correction," issued on September 24, 1991 to Wang et al. based on an application, the '793 application, filed on June 9, 1989.  It is therefore prior art to the '627 patent.  The '000 patent constitutes material prior art to the '627 patent, such that a reasonable patent examiner would have been likely to consider it important in deciding whether to allow any claims in the application for the '627 patent to issue. On information and belief, Mr. Betts knew of the invention of the '000 patent and its materiality, as he was a colleague of Wang's in the AT&T family of companies, and received a paper co-authored by Wang that described the invention of the prior-art '000 patent.

137.    On information and belief, Mr. Betts was aware that the '793 application and the '000 patent contained material information including, but not limited to the following:

(i)    "The use of plural coders provide interleaving of the transmitted symbols and, accordingly, each decoder is operative upon every Mth symbol, where M is the number of encoders or decoders.  If M is properly chosen, the probability of noise impairing the recovery of two successive symbols by any decoder is reduced." ('000 Col. 2:20-24.)

(ii)    "Illustratively, encoders 206-i may each be a convolutional encoder of the type that is used in a standard trellis encoder.  Switch 207 takes the outputs of encoders 206-i, preferably in a cyclic fashion, and feeds them to symbol mapping apparatus 208 which generates two-dimensional symbols . . . ." ('000 Col. 4:36-42; see also 8:1-4.)

(iii)    "[W]hile the present invention has been described in reference to particular two-dimensional signal constellations, the invention is also applicable to other two-dimensional signal constellations.  Indeed, the

present invention is applicable to signal constellations having other than two dimensions." ('000 Col. 7:60-65.)

138.    Mr. Betts's failure to disclose the '000 patent to the PTO violated his duty of candor to the PTO and constituted inequitable conduct, thus rendering the '627 patent unenforceable.

139.    The '112 patent is entitled "Interleaving in Coded Modulation for Mobile Radio," and was issued to Lee-Fang Wei on October 8, 1991. Mr. Betts also failed to disclose the existence of the '438 application to the PTO. The '438 application was filed on December 27, 1989, and eventually issued as the '112 patent. The '112 patent constitutes material prior art to the '627 patent, such that a reasonable patent examiner would have been likely to consider it important in deciding whether to allow any claims in the application for the '627 patent to issue. On information and belief, Mr. Betts knew of the invention of the '112 patent and its materiality.

140.    On information and belief, Mr. Betts was aware that the '438 application and the '112 patent contained material information including, but not limited to the following:

(i)    "Interleavers used in fading channel applications can be matched to a particular trellis or block code being used. . . . Matching both the interleaver and the code increases the separation between interdependent signal points and provides an improvement in error performance." ('112 Abstract.)

(ii)    "As an illustration, assume that N is equal to four (an eight-dimensional code) so that four interdependent signal points would be produced for each codeword every four signaling intervals." ('112 Col. 4:39-43.)

(iii)    "In accordance with the invention, FIG. 14 illustrates the operation of the interleaver on the illustrative trellis code (with two-fold time diversity between successive signal points) of FIG. 10." ('112 Col. 10:14-17.)

141.    Mr. Betts's failure to disclose the '112 patent and the '438 application to the PTO violated his duty of candor to the PTO and constituted inequitable conduct, thus rendering the '627 patent unenforceable.

142.    The '442 patent is entitled "Coded Modulation with Unequal Error Protection," and was issued to Lee-Fang Wei on April 14, 1992. Mr. Betts also failed to disclose the existence of the '200 application to the PTO. The '200 application was filed on November 7, 1990, and eventually issued as the '442 patent. The '442 patent constitutes material prior art to the '627 patent, such that a reasonable patent examiner would have been likely to consider it important in deciding whether to allow any claims in the application for the '627 patent to issue. On information and belief, Mr. Betts knew of the invention of the '442 patent and its materiality.

143.    On information and belief, Mr. Betts was aware that the '200 application and the '442 patent contained material information including, but not limited to the following:

(i)    "In accordance with the invention, as described more fully herein below, the respective groups of bits on leads 112 and 113 are extended to channel encoders-- illustratively trellis encoders--114 and 115 which generate, for each symbol interval, respective expanded groups of the expanded r and p bits on leads 121 and 122, where r>m and p>k." ('442 Col. 4:30-36; see also 9:3-4; 12:33-36.)

(ii)    "Decoding in the case where multi-dimensional symbols are used--such as the four-dimensional examples described below--is carried out in a similar manner, as will be appreciated by those skilled in the art." ('442 Col. 8:27-30; see also 8:49- 9:11.)

(iii)  "A further protection against impulse noise for the most important bits in coded modulation schemes based on constellations of the type of FIG. 8 can be achieved by rearranging the bits that are output by channel encoder 114 so that bits that are generated in proximity to one another by the encoder are separated from one another as much as possible, given that the system delay constraints are met. To this end, channel encoder 114 may include a bit interleaver, which performs such rearrangement, as shown in FIG. 15." ('442 Col. 9:40-49.)

144.    Mr. Betts's failure to disclose the '442 patent and the '200 application to the PTO violated his duty of candor to the PTO and constituted inequitable conduct, thus rendering the '627 patent unenforceable.

145.    The '656 patent is entitled "Multiplexed Coded Modulation With Unequal Error Protection," and was issued to Hong Y. Chung, Jin-Der Wang and Lee-Fang Wei on May 25, 1993. Mr. Betts also failed to disclose the existence of the '156 application to the PTO. The '156 application was filed on December 13, 1990, and eventually issued as the '656 patent. The '656 patent constitutes material prior art to the '627 patent, such that a reasonable patent examiner would have been likely to consider it important in deciding whether to allow any claims in the application for the '627 patent to issue. On information and belief, Mr. Betts knew of the invention of the '656 patent and its materiality.

146.    On information and belief, Mr. Betts was aware that the '156 application and the '656 patent contained material information including, but not limited to the following:

(i)  "Specifically, and in accordance with the present invention, unequal error protection is provided for a signal comprised of a plurality of classes of information by a) separately coding each one of the plurality of classes of information using a different coded modulation scheme and b)

44

multiplexing the plurality of coded outputs for transmission." ('656 Col. 2:10-17.)

(ii)    "Each class of information is then separately coded by a different, and conventional, coded modulation scheme, e.g., a 4D 8-state trellis code and a uniformly-spaced QAM signal constellation." ('656 Col. 2:21-24; see also 5:55-61; 6:26-52.)

(iii)    "Also, the coded modulation scheme for each class of information can be enhanced using interleaving techniques, or more complex coded modulation schemes, to protect against other forms of noise, e.g., to protect against 'colored' noise." ('656 Col. 7:26-30.)

147.    Mr. Betts's failure to disclose the '656 patent and the '156 application to the PTO violated his duty of candor to the PTO and constituted inequitable conduct, thus rendering the '627 patent unenforceable.

148.    In addition, the '627 patent is unenforceable under the doctrine of inequitable conduct because, on information and belief, during the prosecution of the '627 patent, one of the prosecuting attorneys represented to the PTO that "[t]he Prior Art, as described in Applicants' patent application, does not teach independently trellis encoding a plurality of streams of trellis bits" and that "[t]he Prior Art clearly does not include a plurality of trellis encoders to independently encode a plurality of streams of trellis bits as in Applicants' invention." (12/24/92 Amendment filed in '627 patent application, at 5, 6). The Prior Art described by the applicants in the '627 patent application included United States Patent No. 4,677,625 (the "'625 patent"). The '625 patent discloses a plurality of trellis encoders to independently encode a plurality of streams of trellis bits, contrary to the prosecuting attorney's statements to the PTO. The prosecuting attorney's false statements were material because they were made to overcome prior art asserted by the PTO in rejecting pending claims.

149.    The Comcast Counter-Counterclaimants are entitled to a declaratory judgment that neither they, nor their parents, subsidiaries or affiliates have infringed, nor are infringing the '627 patent, and that the '627 patent is invalid and unenforceable.

150.    This Counter-Counterclaim is exceptional under 35 U.S.C. § 285, and the Comcast Counter-Counterclaimants are entitled to an award of its reasonable attorneys' fees.

### TENTH CLAIM FOR RELIEF: Breach of Contract and Specific Performance Regarding ATSC

151.    The Comcast Counter-Counterclaimants reallege and incorporate by reference Paragraphs 1 through 150 above, and all responses set forth above by the Comcast Counterclaimants in their Reply to Rembrandt's Counterclaims and Affirmative Defenses.

152.    As set forth above, Rembrandt took title to the '627 Patent subject to AT&T's FRAND commitment, and is therefore required to license it in good faith and to grant FRAND license terms to any user of the ATSC standard, including the Comcast Counter-Counterclaimants and its equipment suppliers.

153.    Alternatively, the Comcast Counter-Counterclaimants are intended third-party beneficiaries of AT&T's contract with the ATSC in that the ATSC and those who participated in the ATSC standard setting process (including AT&T) intended all manufacturers of ATSC-compliant equipment to have available to them FRAND licensing terms, which would inure to the benefit of purchasers of such ATSC-compliant equipment, including MSOs such as the Comcast Counter-Counterclaimants. The Comcast Counter-Counterclaimants have standing to enforce AT&T's promise to grant FRAND licenses against AT&T's successor-in-interest, Rembrandt.

154.    Rembrandt has breached its obligations by refusing to offer a license in good faith and by failing to license on FRAND terms.

155.    As a result of Rembrandt's breaches, the Comcast Counter-Counterclaimants have been irreparably injured in their business or property .

156.    As a result of the Comcast Counter-Counterclaimants' injuries, the Comcast Counter-Counterclaimants seek specific performance of Rembrandt's contractual obligations to offer licenses in good faith and on FRAND terms.

157.    The Comcast Counter-Counterclaimants have no adequate remedy at law.

158.    In addition to an order requiring Rembrandt to specifically perform its contractual obligations, the Comcast Counter-Counterclaimants also seek damages for the injuries they have incurred and continue to incur, in an amount to be proven at trial.

### ELEVENTH CLAIM FOR RELIEF: Declaration of Contractual Rights and Liabilities Regarding ATSC

159.    The Comcast Counter-Counterclaimants reallege and incorporate by reference Paragraphs 1 through 158 above, and all responses set forth above by the Comcast Counterclaimants in their Reply to Rembrandt's Counterclaims and Affirmative Defenses.

160.    An actual controversy exists between the Comcast Counter-Counterclaimants and Rembrandt regarding the Comcast Counter-Counterclaimants right to license the '627 Patent on FRAND terms.

161.    The Comcast Counter-Counterclaimants are entitled to a declaratory judgment that:  (i) the Comcast Counter-Counterclaimants are entitled to license the '627 Patent on FRAND terms; (ii) Rembrandt's refusal to provide FRAND licenses, despite its obligation to do so, is a breach of contract; (iii) the Comcast Counter-Counterclaimants are third-party beneficiaries that have been damaged by Rembrandt's failure to comply with its contractual obligations and are entitled to enforce those obligations and to recover damages due to said breach of contract; and/or (iv) the claims of various patents allegedly owned by Rembrandt are unenforceable because Rembrandt has repudiated its obligation to and failed to license the technology covered by the '627 patent, if essential to the ATSC standard as Rembrandt contends, on FRAND terms.

**TWELFTH CLAIM FOR RELIEF: Breach of Contract
and Specific Performance Regarding DOCSIS**

162.    The Comcast Counter-Counterclaimants reallege and incorporate by reference Paragraphs 1 through 161 above, and all responses set forth above by the Comcast Counterclaimants in their Reply to Rembrandt's Counterclaims and Affirmative Defenses.

163.    The Comcast Counter-Counterclaimants are intended third-party beneficiaries of the DOCSIS License Agreement entered into by various signatories, including ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Those who participated in the DOCSIS standard-setting process, and in particular the signatories to the DOCSIS License Agreement, intended all manufacturers and providers of DOCSIS-compliant equipment and services to have available to them such royalty-free licenses to patent claims deemed essential for compliance with DOCSIS, subject to the terms of the DOCSIS License Agreement, which would inure to the benefit of purchasers and operators of such DOCSIS-compliant equipment, including MSOs such as the Comcast Counter-Counterclaimants. The Comcast Counter-Counterclaimants have standing to enforce each DOCSIS License Agreement's signatory's promise to grant royalty-free licenses under the DOCSIS License Agreement.

164.    As set forth above, ▮▮▮▮▮▮▮ signed and was bound by the terms of the DOCSIS License Agreement. Under those terms, ▮▮▮▮▮▮▮ and any of its affiliates agreed to grant a nontransferable, worldwide, nonexclusive, and royalty-free license to any of its patent claims deemed essential for DOCSIS compliance to CableLabs, which in turn sublicensed such rights to all other signatories to the DOCSIS License Agreement. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮

165.    As alleged above, Rembrandt assisted ▮▮▮▮▮▮▮ in obtaining CableLabs certification for modems that Rembrandt intended to resell. Rembrandt did so for the specific purpose of partnering with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ under the DOCSIS License Agreement, while attempting to avoid its corresponding obligation to grant a

royalty-free license under its own patents. Rembrandt engaged in this scheme to portray itself misleadingly as a true practicing entity in the cable modem business, solely for the purposes of seeking lost profits and/or injunctive relief from the Comcast Counter-Counterclaimaints, among others.

166.    Rembrandt has, or had a relationship and shared a commonality of interest with ████████ such that they effectively acted as partners, joint venturers, alter egos of each other, and/or agent and principal.   Alternatively, Rembrandt adopted, confirmed and ratified ████████ entering into the DOCSIS License Agreement when it entered into its business relationship with ████████

167.    As a result, Rembrandt has been and continues to be bound by ████████ obligations under the DOCSIS License Agreement. Rembrandt has breached its obligations by refusing to offer in good faith a royalty-free license, as provided for under the DOCSIS License Agreement, to the patents it alleges are essential for DOCSIS compliancewhile simultaneously assuming ████████ rights under the DOCSIS License Agreement to royalty-free licenses to others' patents essential for compliance with the standard for purposes of portraying itself as a business competitor.

168.    As a result of Rembrandt's breaches, the Comcast Counter-Counterclaimants have been irreparably injured or are threatened with irreparable injury.

169.    As a result of the Comcast Counter-Counterclaimants' injuries, the Comcast Counter-Counterclaimants seek specific performance of Rembrandt's contractual obligations to offer royalty-free licenses in good faith under the DOCSIS License Agreement.

170.    The Comcast Counter-Counterclaimants have no adequate remedy at law. In addition to an order requiring Rembrandt to specifically perform its contractual obligations, the Comcast Counter-Counterclaimants also seek damages for the injuries they have incurred and continue to incur, in an amount to be proven at trial.

### THIRTEENTH CLAIM FOR RELIEF:

### Declaratory Judgment of Contractual Rights and Liabilities Regarding DOCSIS

171.    The Comcast Counter-Counterclaimants reallege and incorporate by reference Paragraphs 1 through 170 above, and all responses set forth above by the Comcast Counterclaimants in their Reply to Rembrandt's Counterclaims and Affirmative Defenses.

172.    An actual controversy exists between the Comcast Counter-Counterclaimants and Rembrandt regarding the Comcast Counter-Counterclaimants' right to obtain royalty-free licenses to patent claims Rembrandt asserts are essential for compliance with DOCSIS under the DOCSIS License Agreement.

173.    For the reasons set forth above, the Comcast Counter-Counterclaimants are entitled to a declaratory judgment that:  (i) the Comcast Counter-Counterclaimants are entitled to a royalty-free licenses to patent claims deemed essential for compliance with DOCSIS under the DOCSIS License Agreement; (ii) Rembrandt's refusal to provide royalty-free licenses, despite its obligation to do so, is a breach of contract; (iii) the Comcast Counter-Counterclaimants are third-party beneficiaries that have been damaged by Rembrandt's failure to comply with its contractual obligations and are entitled to enforce those obligations and to recover damages due to said breach of contract; (iv) the Comcast Counter-Counterclaimants' customers have a right to use the technology licensed pursuant to the DOCSIS License Agreement by virtue of their relationship with the Comcast Counter-Counterclaimants; and/or (v) the claims of various patents allegedly owned by Rembrandt are unenforceable because Rembrandt has repudiated its obligation to and failed to license the technology, which Rembrandt contends, is essential for compliance with the DOCSIS standard.

### FOURTEENTH CLAIM FOR RELIEF:

### Unfair Business Practices, Cal. Bus. & Prof. Code §17200 Regarding ATSC

174.    The Comcast Counter-Counterclaimants reallege and incorporate by reference Paragraphs 1 through 173 above, and all responses set forth above by the Comcast Counterclaimants in their Reply to Rembrandt's Counterclaims and Affirmative Defenses.

175.    As alleged more fully above, Rembrandt has engaged in unfair, deceptive and/or unlawful business practices within the meaning of California Bus. & Prof. Code §17200.

These practices have occurred, at least in part, in California, and/or have affected California residents and consumers, or threaten to do so.

176.    Rembrandt has engaged in unfair business practices by, among other things, refusing to abide by its obligations as successor in interest to AT&T's commitment to offer FRAND licensing terms to any intellectual property that is asserted to be essential to the practice of the ATSC standard.

177.    Rembrandt has engaged in unlawful business practices by, among other things, failing to abide by the Dec. 24, 1996 FCC Fourth Report and Order that the ATSC format was adopted conditioned upon the participants' agreement to license any technology asserted to be essential on FRAND terms.

178.    The Comcast Counter-Counterclaimants have suffered actual injury, and are threatened with further actual injury unless enjoined, as a result of the unfair, deceptive and unlawful business practices of Rembrandt described above.

### FIFTEENTH CLAIM FOR RELIEF:

### Unfair Business Practices, Cal. Bus. & Prof. Code §17200 Regarding DOCSIS

179.    The Comcast Counter-Counterclaimants reallege and incorporate by reference Paragraphs 1 through 178 above, and all responses set forth above by the Comcast Counterclaimants in their Reply to Rembrandt's Counterclaims and Affirmative Defenses.

180.    As alleged more fully above, Rembrandt has engaged in unfair, deceptive and/or unlawful business practices within the meaning of California Bus. & Prof. Code §17200. These practices have occurred, at least in part, in California, and/or have affected California residents and consumers, or threaten to do so.

181.    Several of Rembrandt's illegal, unfair, and fraudulent acts have harmed and threaten to further harm California customers, consumers, and competition within California, including by increasing the prices California consumers pay for cable modems or decreasing the supply of cable modems, or threatening the same.

182.    Rembrandt has engaged in unfair business practices by, among other things, refusing to abide by its obligations under the DOCSIS License Agreement to offer royalty-free licenses any intellectual property that is asserted to be essential to the practice of the DOCSIS standard, while at the same time purporting to be a bona fide participant in the business of providing cable modems licensed under the DOCSIS License Agreement.

183.    Rembrandt has engaged in unlawful business practices by, among other things, failing to abide by its obligation to license any technology asserted to be essential to compliance with the DOCSIS standard.

184.    Rembrandt has engaged in deceptive business practices by representing, or threatening to represent, itself as a purported bona fide cable modem provider when in fact its involvement in the cable modem business is for the purpose of generating evidence for this litigation.  Rembrandt has also engaged in deceptive business practices by representing, or threatening to represent, itself as a purported bona fide cable modem provider when in fact the true participant in the cable modem business is ███████████ its business partner, joint venturer and/or agent.

185.    The Comcast Counter-Counterclaimants have suffered actual injury, and are threatened with further actual injury unless enjoined, as a result of the unfair, deceptive and unlawful business practices of Rembrandt described above.

### DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), the Comcast Counterclaimants demand a trial by jury of all issues so triable in this action, including, without limitation, those issues raised in the Reply, Affirmative Defenses and Counter-Counterclaims.

### PRAYER FOR RELIEF

WHEREFORE, the Comcast Counter-Counterclaimants pray for judgment against Rembrandt Technologies, LP and Rembrandt Technologies, LLC d/b/a Remstream (collectively, "Rembrandt") as follows:

52

A.    For dismissal of Rembrandt's Counterclaims in their entirety, with prejudice, and that the relief requested be denied;

B.    For a judgment declaring that no claim of the '819, '903, '761, '858, '234, '631, '159, '444, or '627 patents (collectively "the patents-in-suit") has been infringed willfully, deliberately, or otherwise by the Comcast Counter-Counterclaimants or the Comcast Counter-Counterclaimants' parents, subsidiaries and/or affiliates;

C.    For a judgment declaring that each and every claim of the patents-in-suit is invalid;

D.    For a judgment declaring that the patents-in-suit are unenforceable;

E.    For an award of the Comcast Counter-Counterclaimants' reasonable attorneys' fees under 35 U.S.C. § 285;

F.    That the Comcast Counter-Counterclaimants have no adequate remedy at law;

G.    For an order requiring Rembrandt to specifically perform its contractual obligation to license the '627 patent on FRAND terms;

H.    For an order requiring Rembrandt to specifically perform its contractual obligation to grant a royalty-free license on technology essential for compliance with the DOCSIS standard;

I.    For declarations that: (i) the Comcast Counter-Counterclaimants are entitled to license the '627 Patent on FRAND terms; (ii) Rembrandt's refusal to provide FRAND licenses, despite its obligation to do so, is a breach of contract; (iii) the Comcast Counter-Counterclaimants are third-party beneficiaries that have been damaged by Rembrandt's failure to

comply with its contractual obligations and are entitled to enforce those obligations and to recover damages due to said breach of contract; and/or (iv) the claims of various patents allegedly owned by Rembrandt are unenforceable because Rembrandt has failed to license the technology on FRAND terms;

J.    For declarations that: (i) The Comcast Counter-Counterclaimants are entitled to a royalty-free licenses to patent claims deemed essential for compliance with DOCSIS under the DLA; (ii) Rembrandt's refusal to provide royalty-free licenses, despite its obligation to do so, is a breach of contract; (iii) the Comcast Counter-Counterclaimants are third-party beneficiaries that have been damaged by Rembrandt's failure to comply with its contractual obligations and are entitled to enforce those obligations and to recover damages due to said breach of contract; (iv) the Comcast Counter-Counterclaimants' customers have a right to use the technology licensed pursuant to the DLA by virtue of their relationship with the Comcast Counter-Counterclaimants; and/or (v) the claims of various patents allegedly owned by Rembrandt are unenforceable because Rembrandt has repudiated its obligation to and failed to license the technology, which as Rembrandt contends, is essential for compliance with the DOCSIS standard;

K.    For an award of damages to the Comcast Counter-Counterclaimants on the breach of contracts claim in an amount to be determined at trial;

L.    For an award of restitution to the Comcast Counter-Counterclaimants on the unfair business practices claims, in an amount to be determined at trial;

M.    A preliminary and permanent injunction prohibiting any and all of

Rembrandt's ongoing acts of unfair business practices;

N.    Interest, attorneys fees and costs as allowed by law; and

O.    For such other and further relief as the Court may deem just and fair.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
klouden@mnat.com
*Attorneys for Comcast Corp.; Comcast Cable
Communications, LLC; Century-TCI
California Communications, LP; Comcast Of
Florida / Pennsylvania, LP; Comcast Of
Pennsylvania II, LP; Parnassos
Communications, LP; AND Comcast Cable
Communications Holdings, Inc.*

*Of Counsel*:

Robert A. Van Nest
Brian L. Ferrall
Daralyn J. Durie
Leo L. Lam
Matthew M. Werdegar
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA 94111
(415) 391-5400

May 2, 2008
2310725

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2008, I electronically filed the foregoing with the

Clerk of the Court using CM/ECF.

I further certify that I caused to be served copies of the foregoing document on

May 2, 2008 upon the following in the manner indicated:

## VIA ELECTRONIC MAIL

Collins J. Seitz, Jr., Esquire
Francis DiGiovanni, Esquire
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 North Orange Street
Wilmington, DE 19801
cseitz@cblh.com
fdigiovanni@cblh.com

John W. Shaw, Esquire
YOUNG CONAWAY STARGATT & TAYLOR LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
jshaw@ycst.com

David S. Benyacar, Esquire
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
dbenyacar@kayescholer.com

John M. DesMarais, Esquire
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, NY 10022-4611
jdesmarais@kirkland.com

Eric R. Lamison, Esquire
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
elamison@kirkland.com

Edward R. Reines, Esquire
WEIL GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
edward.reines@weil.com

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)

## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2008, I electronically filed the foregoing with the

Clerk of the Court using CM/ECF.

I further certify that I caused to be served copies of the foregoing document on

May 7, 2008 upon the following in the manner indicated:

## VIA ELECTRONIC MAIL

Collins J. Seitz, Jr., Esquire
Francis DiGiovanni, Esquire
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 North Orange Street
Wilmington, DE 19801
cseitz@cblh.com
fdigiovanni@cblh.com

John W. Shaw, Esquire
YOUNG CONAWAY STARGATT & TAYLOR LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
jshaw@ycst.com

David S. Benyacar, Esquire
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
dbenyacar@kayescholer.com

John M. DesMarais, Esquire
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, NY 10022-4611
jdesmarais@kirkland.com

Eric R. Lamison, Esquire
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
elamison@kirkland.com

Edward R. Reines, Esquire
WEIL GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
edward.reines@weil.com

*/s/ Jack B. Blumenfeld*

_____

Jack B. Blumenfeld (#1014)