# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: REMBRANDT TECHNOLOGIES, LP PATENT LITIGATION | ) ) ) | MDL Docket No. 07-md-1848 (GMS) |
| ─────────────────────── | ) ) | |
| MOTOROLA, INC., CISCO SYSTEMS, INC., SCIENTIFIC-ATLANTA, INC., ARRIS GROUP, INC., THOMSON, INC., AMBIT MICROSYSTEMS, INC., and NETGEAR, INC., | ) ) ) ) ) ) | REDACTED PUBLIC VERSION |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 07-752-GMS |
| REMBRANDT TECHNOLOGIES, LP, and REMBRANDT TECHNOLOGIES, LLC d/b/a REMSTREAM, | ) ) ) ) | |
| Defendants. | ) ) | **JURY TRIAL DEMANDED** |
| ─────────────────────── | ) ) | |
| REMBRANDT TECHNOLOGIES, LP, and REMBRANDT TECHNOLOGIES, LLC d/b/a REMSTREAM, | ) ) ) ) | |
| Counter-Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 07-752-GMS |
| MOTOROLA, INC., CISCO SYSTEMS, INC., SCIENTIFIC-ATLANTA, INC., ARRIS GROUP, INC., THOMSON, INC., AMBIT MICROSYSTEMS, INC., NETGEAR, INC., TIME WARNER CABLE, INC., TIME WARNER CABLE) LLC, TIME WARNER NEW YORK CABLE LLC, TIME WARNER ENTERTAIN-MENT COMPANY, LP, COMCAST CORPORATION, COMCAST CABLE COMMUNICATIONS, LLC, CHARTER COMMUNICATIONS OPERATING, LLC, COXCOM, INC., COX COMMUNICATIONS, INC., COX ENTERPRISES, INC., CSC HOLD-INGS, INC., CABLEVISION SYSTEMS | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** **CONFIDENTIAL – FILED UNDER SEAL** |

CORPORATION, ADELPHIA                          )
COMMINICATIONS CORPORATION,                    )
CENTURY-TCI CALIFORNIA                         )
COMMUNICATIONS, LP, CENTURY-TCI                )
HOLDINGS, LLC, COMCAST OF                      )
FLORIDA/PENNSYLVANIA, L.P. (f/k/a              )
PARNASSOS, LP), COMCAST OF                     )
PENNSYLVANIA II, L.P. (f/k/a CENTURY-TCI       )
CALIFORNIA, L.P.), PARNASSOS                    )
COMMUNICATIONS, LP, ADELPHIA                    )
CONSOLIDATION, LLC, PARNASSOS                   )
HOLDINGS, LLC, and WESTERN NY                   )
CABLEVISION, LP,                                )
                                                )
                Counter-Defendants.             )
_____ )

**REMBRANDT'S OPPOSITION TO MOTION FOR LEAVE TO AMEND COMPLAINT
TO ADD ANTITRUST AND UNFAIR COMPETITION CLAIMS**

CONNOLLY BOVE LODGE & HUTZ LLP
Collins J. Seitz, Jr. (#2237)
Francis DiGiovanni (#3189)
James D. Heisman (#2746)
Kristen Healey Cramer (#4512)
The Nemours Building
1007 N. Orange Street
Wilmington, DE  19899
Phone (302) 658-9141
cseitz@cblh.com
fdigiovanni@cblh.com
jheisman@cblh.com
kcramer@cblh.com

*Attorneys for Rembrandt Technologies, LP, and
Rembrandt Technologies, LLC d/b/a Remstream*

Dated:  May 5, 2008

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

SUMMARY OF ARGUMENT ............................................................................................. 1

STATEMENT OF FACTS ................................................................................................... 5

      1.  The Bad Faith Litigation Allegations ......................................................................... 5

      2.  The Cable Equipment Marketing Agreement Allegations........................................... 6

      3.  Market Definition........................................................................................................ 8

      4.  The Alleged Causes of Action ..................................................................................... 8

ARGUMENT ...................................................................................................................... 10

      THE MANUFACTURERS' PROPOSED FIRST AMENDED COMPLAINT
      FAILS TO STATE A CAUSE OF ACTION UNDER THE SHERMAN
      ACT OR THE CALIFORNIA UNFAIR COMPETITION STATUTE ......................... 11

          A.  The Manufacturers Fail To Allege That the Alleged Agreements Between
             Remstream and ███████████ and Between Remstream and ███████████
             Communications Harm Competition .................................................................. 14

          B.  The Manufacturers Fail to Allege that Rembrandt has Monopoly Power in
             any Properly Defined Market or that Rembrandt Engaged in Exclusionary
             Conduct .............................................................................................................. 18

          C.  The Manufacturers Fail to Allege that Rembrandt has a Dangerous
             Probability of Acquiring Monopoly Power in any Product Market..................... 23

          D.  The Manufacturers Fail to Allege a Conspiracy to Monopolize in the
             Absence of any Alleged Harm to Competition................................................... 25

          E.  The Manufacturers' Claim under the California Unfair Competition Statute
             Fails Because Manufacturers have not Alleged Harm to Competition................. 27

      CONCLUSION........................................................................................................... 30

## TABLE OF AUTHORITIES

Page

**Cases**

*Akkerman v. Mecta Corp., Inc.,*
152 Cal. App. 4th 1094 (2007) ................................................................... 29

*ASM America, Inc. v. Genus, Inc.,*
No. 01-2190 EDL, 2002 WL 24444 (N.D. Cal. Jan. 9, 2002) ..................................... 23

*AT&T Corp. v. JMC Telecom, LLC,*
470 F.3d 525 (3d Cir. 2006) ............................................................ 5, 14, 17

*Atlantic Richfield Co. v. USA Petroleum Co.,*
495 U.S. 328 (1990) .................................................................... 14, 15

*Axis, S.p.A. v. Micafil, Inc.,*
870 F.2d 1105 (6th Cir. 1989) ................................................................ 11

*B.V. Optische Industrie De Oude Delft v. Hologic, Inc.,*
909 F. Supp. 162 (S.D.N.Y. 1995) ............................................................ 19

*Bell Atlantic Corp. v. Twombly,*
127 S. Ct. 1955 (2007) ................................................................. passim

*Belton v. Comcast Cable Holdings, LLC,*
151 Cal. App. 4th 1224 (2007) ............................................................... 27

*Broadcast Music Inc. v. CBS,*
441 U.S. 1 (1979) .......................................................................... 14

*Broadcom Corp. v. Qualcomm Inc.,*
501 F.3d 297 (3d Cir. 2007) ......................................................... 18, 20, 21

*Brotech Corp. v. White Eagle Int'l Techs. Group Inc.,*
Civ.A.03-232, 2004 WL 1427136 (E.D. Pa. June 21, 2004) ..................................... 22

*Brunswick Corp. v. Riegel Textile Corp.,*
752 F.2d 261 (7th Cir. 1984) ................................................................ 20

*Cargill, Inc. v. Monfort of Colorado, Inc.,*
479 U.S. 104 (1986) ........................................................................ 15

*CDC Techs, Inc. v. IDEXX Labs, Inc.,*
7 F. Supp. 2d 119 (D. Conn. 1998) ........................................................... 26

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.,*
20 Cal. 4th 63 (1999) ....................................................................... 27

*DM Research, Inc. v. College of Am. Pathologists,*
    170 F.3d 53 (1st Cir. 1999)................................................................. 13

*Hennessy Indus. Inc. v. FMC Corp.,*
    779 F.2d 402 (7th Cir. 1985) .............................................................. 17

*Chavez v. Whirlpool Corp.,*
    93 Cal. App. 4th 363 (2001) .............................................................. 27

*Ciabattoni v. United States,*
    Civ. No. 04-203-GMS, 2008 WL 78744 (D. Del. Jan. 7, 2008)........... 17

*Conley v. Gibson,*
    355 U.S. 41 (1957)............................................................................. 13

*Covad Communications Co. v. Bell Atlantic Corp.,*
    398 F.3d 666 (D.C. Cir. 2005)............................................................ 22

*Crossroads Cogeneration Corp. v. Orange & Rockland Utils., Inc.,*
    159 F.3d 129 (3d Cir. 1998)............................................................... 23

*Cureton v. NCAA,*
    252 F.3d 267 (3d Cir. 2001)............................................................... 10

*Doug Grant, Inc v. Greate Bay Casino Corp.,*
    232 F.3d 173 (3d Cir. 2000)............................................................... 23

*Electronics Communications Corp. v. Toshiba Am. Consumer Prods.,*
    129 F.3d 240 (2d Cir. 1997)......................................................... 14, 17

*Foman v. Davis,*
    371 U.S. 178 (1962)........................................................................... 10

*Globespanvirata, Inc. v. Texas Instruments, Inc.,*
    No. 03-2854, 2006 WL 543155 (D.N.J. Mar. 3, 2006) ...................... 19

*Gregory v. Fort Bridger Rendezvous Ass'n,*
    448 F.3d 1195 (10th Cir. 2006) ......................................................... 25

*Guichard v. Mandalay Pictures, LLC,*
    No. C 04-4363, 2005 WL 2007883, (N.D. Cal. Aug. 22, 2005)........... 28

*Hoffman-La Roche, Inc. v. Genpharm, Inc.,*
    50 F. Supp. 2d 367 (D.N.J. 1999) ...................................................... 12

*Howard Hess Dental Labs. Inc. v. Denstsply Int'l, Inc.,*
    516 F. Supp. 2d 324 (D. Del. 2007).................................................... 26

*Hydranautics v. FilmTec Corp.,*
    70 F.3d 533 (9th Cir. 1995) ............................................................... 23

*ID Security Sys. Canada, Inc. v. Checkpoint Sys., Inc.*,
    249 F. Supp. 2d 622 (E.D. Pa. 2003) ............................................................................ 24

*Illinois Tool Works Inc. v. Independent Ink, Inc.*,
    547 U.S. 42 (2006) ........................................................................................................... 19

*In re Independent Serv. Orgs. Antitrust Litig.*,
    203 F.3d 1322 (Fed. Cir. 2000) ................................................................................. 16, 20

*Intergraph Corp. v. Intel Corp.*,
    195 F.3d 1346 (Fed. Cir. 1999) ...................................................................................... 11

*International Dist. Ctrs., Inc. v. Walsh Trucking Co., Inc.*,
    812 F.2d 786 (2d Cir. 1987) ........................................................................................... 26

*Jacobsen v. Katzer*,
    No. C 06-01905, 2007 WL 2358628, (N.D. Cal. Aug. 17, 2007) ................................. 29

*Kentmaster Mfg. Co. v. Jarvis Prods. Corp.*,
    146 F.3d 691 (9th Cir. 1998) .......................................................................................... 28

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) .................................................................................................. 29

*Miller Insituform, Inc. v. Insituform of North Am., Inc.*,
    830 F.2d 606 (6th Cir. 1987) .......................................................................................... 11

*Morse v. Lower Merion Sch. Dist.*,
    132 F.3d 902 (3d Cir. 1997) ........................................................................................... 17

*National Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club*,
    325 F.3d 712 (6th Cir. 2003) .......................................................................................... 15

*Nguyen v. Proton Tech. Corp.*,
    69 Cal. App. 4th 140 (1999) ........................................................................................... 29

*Nobelpharma AB v. Implant Innovations, Inc.*,
    141 F.3d 1059 (Fed. Cir. 1998) ................................................................................. 12, 16

*Northeastern Tel. Co. v. American Tel. & Tel. Co.*,
    651 F.2d 76 (2d Cir. 1981) ............................................................................................. 26

*NYNEX Corp. v. Discon, Inc.*,
    525 U.S. 128 (1998) ........................................................................................................ 25

*Orson, Inc. v. Miramax Film Corp.*,
    79 F.3d 1358 (3d Cir. 1996) ........................................................................................... 14

*Pace Elecs., Inc. v. Canon Computer Sys., Inc.*,
    213 F.3d 118 (3d Cir. 2000) ........................................................................................... 14

*Parrish v. National Football League Players Ass'n,*
534 F. Supp. 2d 1081 (N.D. Cal. 2007) ................................................................. 27

*Pastore v. Bell Tel. Co. of Pa.,*
24 F.3d 508 (3d Cir. 1994) .................................................................................... 24

*Philips Med. Capital, LLC v. Medical Insights Diagnostics Center,*
471 F. Supp. 2d 1035 (N.D. Cal. 2007) ................................................................. 28

*Phillips v. County of Allegheny,*
515 F.3d 224 (3d Cir. 2008) ......................................................................... 2, 5, 13, 17

*Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,*
508 U.S. 49 (1993) ........................................................................................... 16, 22

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.,*
124 F.3d 430 (3d Cir. 1997) .................................................................................. 19

*Rambus Inc. v. FTC,*
Nos. 07-1086, 07-1124, 2008 WL 1795594 (D.C. Cir. Apr. 22, 2008) ...................... 12, 20, 21

*Rubin v. Green,*
4 Cal. 4th 1187 (1993) ........................................................................................... 29

*SCM Corp. v. Xerox Corp.,*
645 F.2d 1195 (2d Cir. 1981) .......................................................................... 12, 20

*Serio-US Indus., Inc. v. Plastic Recovery Techs. Corp.,*
459 F.3d 1311 (Fed. Cir. 2006) .............................................................................. 29

*Sharper Image Corp. v. Target Corp.,*
425 F. Supp. 2d 1056 (N.D. Cal. 2006) ........................................................... 28, 29

*Sheet Metal Duct Inc. v. Lindab, Inc.,*
55 U.S.P.Q.2d 1480 (E.D. Pa. 2000) ...................................................................... 12

*Sierra Club v. Union Oil Co. of Cal.,*
813 F.2d 1480 (9th Cir. 1987),
*judgment reinstated after remand,* 853 F.2d 667 (9th Cir. 1988) ............................. 11

*Silberg v. Anderson,*
50 Cal. 3d 205 (1990) ............................................................................................ 28

*Spanish Broad. Sys. of Florida, Inc. v. Clear Channel Communications, Inc.,*
376 F.3d 1065 (11th Cir. 2004) .............................................................................. 25

*Spectrum Sports, Inc. v. McQuillan,*
506 U.S. 447 (1993) ............................................................................................... 15

*Tanaka v. University of S. Cal.,*
252 F.3d 1059 (9th Cir. 2001) ................................................................................ 15

*Ticketmaster L.L.C. v. RMG Techs., Inc.*,
    536 F. Supp. 2d 1191 (C.D. Cal. 2008) ............................................................ 28

*United States v Studiengesellschaft Kohle, m.b.H.*,
    670 F.2d 1122 (D.C. Cir. 1981) ........................................................................ 11

*United States v. Westinghouse Elec. Corp.*,
    648 F.2d 642 (9th Cir. 1981) ............................................................................. 11

*Unitherm Food Sys., Inc. v. Swift Eckrich, Inc.*,
    375 F.3d 1341 (Fed. Cir. 2004) .................................................................... 12, 19

*Urdinaran v. Aarons*,
    115 F. Supp. 2d 484 (D.N.J. 2000) ................................................................... 25

*Verizon Communications Inc. v. Law Offices of Curtis V. Trinko*,
    540 U.S. 398 (2004) ........................................................................................... 18

*Walker Process Equip. v. Food Mach. & Chem. Corp.*,
    382 U.S. 172 (1965) ...................................................................................... 12, 22

*Winer Family Trust v. Queen*,
    503 F.3d 319 (3d Cir. 2007) .............................................................................. 10

**Other Authorities**

3 Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law*
    ¶ 704a (2d ed. 2002) .......................................................................................... 19

3 Phillip Areeda & Donald F. Turner, Antitrust Law
    ¶ 831 at 336 (1978) ........................................................................................... 24

3A Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law*
    ¶ 803d, at 335 (2d ed. 2002) ............................................................................. 20

Herbert Hovenkamp, Mark D. Janis, and Mark A. Lemley, *IP and Antitrust*
    § 11.2 ............................................................................................................. 22, 23

Philip B. Nelson, *Patent Pools: An Economic Assessment of Current Law
and Policy*, 38 RUTGERS L.J. 539 (2007) ............................................................. 17

Sherman Act, Section 1 ............................................................................... passim

Sherman Act, Section 2 ............................................................................... passim

**Statutes**

Cal. Bus. & Prof. Code § 17200 ................................................................. 1, 28

Cal. Bus. & Prof. Code § 17204 ................................................................. 29

Cal. Civ. Code § 47(b)(2) ........................................................................ 28

## SUMMARY OF ARGUMENT

The parties seeking amendment (herein, "Manufacturers") are cable equipment manufacturers who filed this declaratory judgment action on the eve of the Court's December 2007 Scheduling Conference.    According to their original complaint—which sought a declaration that the equipment Plaintiffs manufacture does not infringe eight patents owned by Defendant Rembrandt Technologies, LP ("Rembrandt") and that the patents are invalid—Manufacturers filed suit because Rembrandt had previously filed infringement actions against cable companies and the cable companies "sought indemnification" from Manufacturers. Complaint for Declaratory Judgment at 2 (filed Nov. 21, 2007) (D.I. 1 in Civ. No. 07-752-GMS).

At the time Manufacturers filed their action, each of Rembrandt's suits had been pending for at least eleven-and-a-half months; one of the cases had been pending for more than two years. The Multi-District Litigation Panel consolidated for pre-trial proceedings in this Court all of Rembrandt's infringement actions—involving the eight patents at issue in Manufacturers' suit and a ninth patent that is not relevant to Manufacturers' claims—along with a single declaratory judgment action filed by one of the cable companies.

Two days before the final deadline for amending pleadings—April 11, 2008—Manufacturers sent Rembrandt a proposed amended complaint that added inequitable conduct allegations and, more significantly, antitrust claims under Sections 1 and 2 of the Sherman Act. *See* 15 U.S.C. §§ 1, 2, and Section 17200 of the California Business and Professions Code.  The antitrust claims are extensive, comprising 97 new paragraphs, and would be the first claims in this Multi-District Litigation that are not limited to infringement, validity, or enforceability of Rembrandt's patents—not one of the infringement defendants brought an antitrust counterclaim.

Manufacturers' federal antitrust and state unfair competition claims focus on two sets of allegations. First, Manufacturers allege that Rembrandt, through an affiliate, has agreed with one or more of Manufacturers' competitors to market cable modems and (perhaps) cable systems in competition with Manufacturers. In so doing, Manufacturers allege, Rembrandt intends to establish its entitlement to injunctive relief against the Manufacturers, and to develop power in the alleged market for certain cable equipment. Second, Manufacturers allege that Rembrandt has enforced its patents in bad faith, knowing the patents "to be invalid, unenforceable, and/or not infringed." [Proposed] First Amended Complaint ¶ 117 (filed Apr. 9, 2008) (MDL D.I. 147 at Ex. A) ("Am. Compl.").

Manufacturers' motion should be denied on the grounds of futility: their allegations fail to state a claim under federal antitrust law or the California unfair competition statute. To state a claim for relief, a complaint must provide "'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)). Rule 8 instead requires "'[f]actual allegations'" that "'raise a right to relief above the speculative level.'" *Id.* at 232 (quoting *Twombly*, 127 S. Ct. at 1965 n.3). None of Manufacturers' antitrust or unfair competition claims satisfies that standard:

    **A.**    Count XI claims that Rembrandt's alleged agreements with ███████████ and ████████████████████████████ are unreasonable restraints of trade that violate Section 1 of the Sherman Act. Manufacturers allege no *per se* violation of the antitrust laws. Therefore, to state a claim they must allege facts establishing harm to competition, in the relevant market, that outweighs any pro-competitive benefits of the alleged agreement. But an agreement between Rembrandt and █████████████████ to market cable modems or cable

service in competition with Manufacturers would cause no harm to competition. There is no allegation that Rembrandt, ██████████████ have market power in the antitrust sense, either individually or collectively, and, in the absence of such power, an agreement cannot unreasonably restrain trade. Despite Manufacturers' inflammatory rhetoric, their claim that the agreements will allow Rembrandt to practice its own patent without being forced to surrender its intellectual property to the Data Over Cable Service Interface Specification ("DOCSIS") patent pool does not state a claim under the antitrust laws.

    **B.** Count XII claims that Rembrandt has monopolized "the DOCSIS Technology Markets," obscurely defined as "the United States and worldwide markets for technology essential to implement the DOCSIS standard and for technology essential to perform certain functions, allegedly covered by the patents-in-suit, necessary to implement the DOCSIS standard." Am. Compl. ¶ 117. The complaint provides no explanation for the contours of this alleged relevant market—there are no allegations as to what technologies are included or excluded or the availability of substitutes—and, in any event, there is no allegation that Rembrandt has any *improper* power in any such technology market. Indeed, Rembrandt is not alleged to have *any* present market power and no conceivable prospect of obtaining any *except* to the extent that it is able to establish that Manufacturers and others infringe Rembrandt's valid patents. Yet, enforcement of a valid patent is entirely proper and does not violate the antitrust laws. To the extent that Rembrandt's patents are invalid, Rembrandt has no market power. Any potential litigation costs are irrelevant, because such costs do not confer any power on Rembrandt and do not constitute antitrust injury—that is, injury to the Manufacturers that stems from the injury to the vigor of competition in the relevant market.

**C.**    Count XIII claims that Rembrandt is attempting to monopolize "DOCSIS Equipment Markets." Even leaving aside the point—which Manufacturers effectively concede—that Rembrandt has made clear that it is willing to license its patents, *see* Am. Compl. ¶ 107, which would insure no monopoly coming into existence, Manufacturers do not allege that Rembrandt has *any* current share of the market for such equipment, and they likewise do not allege that Rembrandt has any likelihood—let alone a "dangerous probability"—of acquiring monopoly power in any such market through improper means. To the extent Rembrandt is able to secure market share as a result of injunctive relief against patent infringers, granted by the court, such "market power" would reflect only the lawful right conferred by Rembrandt's valid patents.

**D.**    Count XIV accuses Rembrandt and others of a "conspiracy to monopolize," but the law is clear that, in the absence of any allegation of harm to competition, the "conspiracy" label adds nothing. Furthermore, a conspiracy-to-monopolize complaint must allege that co-conspirators—not just Rembrandt—had a "specific intent" that Rembrandt should monopolize a relevant market, but the amended complaint alleges no facts (as opposed to mere conclusions) to establish any such intent.

**E.**    Count XV—which claims that Rembrandt violated Cal. Bus. & Prof. Code § 17200—is entirely derivative of Manufacturers' Sherman Act claims and fails for the same reasons.

4

## STATEMENT OF FACTS[1]

Manufacturers originally brought this action seeking a declaration of invalidity and non-infringement with respect to eight Rembrandt patents that use of the DOCSIS standard infringes. Manufacturers entered this litigation late—after Rembrandt's claims against the cable companies had been pending for at least 11 months and, in one case, over two years—and Manufacturers thus had ample time to investigate and formulate their patent-related claims. Moreover, given their precise alignment of interests with the cable companies, and the cable companies' alleged right to indemnification from Manufacturers, it is reasonable to presume that Manufacturers had access to non-confidential information and legal analysis developed by those parties—including all information related to the patents' prosecution history. In the original complaint, Manufacturers made no claim of inequitable conduct or any antitrust or unfair competition claims.

Manufacturers sought Rembrandt's agreement to amend their complaint to add inequitable conduct claims, as well as antitrust and unfair competition claims. Rembrandt stipulated to the addition of the inequitable conduct allegations. But Rembrandt would not agree to the addition of antitrust and unfair competition claims.

Those antitrust and unfair competition claims are based on two sets of allegations.

### 1.    The Bad Faith Litigation Allegations

The first set of allegations claims that the applicants for the eight patents at issue in Manufacturers' original complaint—that is, AT&T and its successor entities, not Rembrandt itself—failed to disclose to the PTO material prior art of which they were aware, and that the

---

[1] At this stage, Manufacturers' factual allegations must be accepted as true for purposes of testing the legal adequacy of the proposed amended complaint. *See Phillips*, 515 F.3d at 231. Accordingly, the statement of facts is taken from the proposed amended complaint, even though many of those allegations are false.

applicants acted "with deceptive intent." Am. Compl. ¶ 73. (Manufacturers nowhere allege that, if the prior art had been disclosed, that the patents-in-suit would not have issued.) Manufacturers claim that Rembrandt—which allegedly acquired the patents-in-suit in 2004 and 2005, *see id.* ¶¶ 101, 102—was "aware[] of the nondisclosures described" in the complaint and has "assert[ed] unenforceable patents," *Id.* ¶ 82. Manufacturers allege that Rembrandt's infringement claims therefore "are both objectively and subjectively baseless." *Id.* ¶ 120.

## 2.    The Cable Equipment Marketing Agreement Allegations

The second set of allegations relate to supposed agreements between Rembrandt and

███████████████████████████████████████████████████████████████

¶ 115. According to the complaint, Rembrandt's affiliate, Rembrandt Technologies, LLC d/b/a Remstream ("Remstream"), entered into an agreement with ████████████ would supply cable modems that Remstream would sell in the United States under Remstream's brand. *See id.* ¶¶ 111, 112. The complaint also alleges that Remstream entered into a similar agreement with ██████ with respect to cable systems. *See id.* ¶ 115.[2] According to the complaint, these agreements achieve two purposes.

The first of these alleged purposes relates to the so-called "DOCSIS patent pool." *Id.* ¶ 95. According to the complaint, in 1996, cable companies—working with cable equipment manufacturers—established a specification[3] for equipment used for transmission of data over

---

[2] Manufacturers' Motion for Leave casts doubt on whether Manufacturers can, in good faith, allege any agreement between Rembrandt and ██████ they argue there that Rembrandt "attempted to reach, and likely reached, an agreement with ██████ Manufacturers' Opening Brief in Support of Motion For Leave to Amend Complaint at 10 (filed Apr. 11, 2008) (MDL D.I. 148). Manufacturers offer no basis for the allegation in the complaint that there is, in actuality, an agreement.

[3] The DOCSIS specification is sometimes loosely referred to as a "standard"; to avoid confusion,

cable networks; the resulting DOCSIS standard was completed in 1997 and updated thereafter. *See id.* ¶¶ 83-87. (Neither Rembrandt nor any prior owner of the patents-in-suit or patent applications either participated in that standard-setting process or made any representation to any participant in that process as to whether the patents covered any aspect of the DOCSIS standard. *See id.* ¶ 93.) The cable companies—through CableLabs, an entity owned by the cable companies—established a certification program for equipment that complies with the DOCSIS standard. *See id.* ¶¶ 88-90.

In addition, "CableLabs developed a patent pool for the intellectual property essential to the DOCSIS standards." *Id.* ¶ 95. If any would-be manufacturer of cable modems or other equipment wishes to obtain a license under the DOCSIS patent pool, it must agree to grant a license without fee to "any intellectual property essential to sell DOCSIS compliant equipment." *Id.* ¶ 96. As alleged in the complaint, Rembrandt wished to enter the business of selling DOCSIS-compliant cable equipment, but it did not wish to surrender its intellectual property. *See id.* ¶ 110. Rembrandt therefore sought out a supplier of equipment "that was a member of the DOCSIS patent pool, that was eligible for CableLabs certification, and with whom Remstream could partner to purport to sell DOCSIS compliant [cable modem] products in the United States." *Id.* ¶ 107. ████████ such a company. *See id.* ¶ 108. In other words, by agreeing to use as its supplier a company that was already licensed under the DOCSIS patent pool, Remstream could sell equipment without infringing the patents in the DOCSIS patent pool and without being forced to relinquish its intellectual property to the pool.

The second alleged reason for entering into agreements with ████████ (and allegedly also with ██████) concerns Rembrandt's claims for relief in this litigation. According to the

---

we adopt the "standard" terminology of the proposed amended complaint.

complaint, Rembrandt decided to become a "market participant" because that would facilitate its claims for "injunctive relief and/or lost profits," and therefore would "impose pressure on the cable industry to pay Rembrandt money." *Id.* ¶ 107.

### 3.    Market Definition

The proposed amended complaint purports to describe two alleged relevant markets for purposes of its antitrust claims: DOCSIS technology and DOCSIS equipment. The "DOCSIS Technology" markets are described as "the United States and worldwide markets for technology essential to implement the DOCSIS standard and for technology essential to perform certain functions, allegedly covered by the patents-in-suit, necessary to implement the DOCSIS standard." *Id.* ¶ 117. There is no further elaboration on the contours of these supposedly relevant markets, how many such markets there are, what substitute technologies exist as to any of the technologies, or what share of any particular market Rembrandt may have. The "DOCSIS Equipment" markets consist of "United States and worldwide markets for DOCSIS-compliant [cable modems] and for DOCSIS-compliant [cable modem termination systems]." *Id.* Again, there is no allegation as to what percentage share of any such market Rembrandt (or any other named person) has.

### 4.    The Alleged Causes of Action

Manufacturers plead five new counts:

Count XI claims an agreement in unreasonable restraint of trade in violation of Section 1 of the Sherman Act based on Remstream's alleged "agreements . . . with ████████ and ████████████████████" *Id.* ¶ 122. The proposed amended complaint does not state in which relevant market competition may be harmed (referring merely to "one or more of the relevant markets," *id.*). The proposed complaint states that the alleged agreements harm competition "by

facilitating Remstream's scheme to acquire patents with the purpose of hijacking the . . . DOCSIS standard," "by facilitating Remstream's scheme to exploit the key advantage of the DOCSIS patent pool . . . while at the same time side-stepping the central and most critical obligation of patent pool members," and "on information and belief, by expressly or implicitly allocating markets and customers." *Id.*

Count XII alleges that Rembrandt has monopolized the "DOCSIS Technology Markets" in violation of Section 2 of the Sherman Act. The proposed complaint does not allege that Rembrandt has any power in this alleged market, but rather alleges that "Rembrandt claims it has the right to exclude" based on its patents and thus that "*Rembrandt* claims to have monopoly power in the DOCSIS Technology Markets." *Id.* ¶ 133 (emphasis added). Manufacturers allege that "[i]f Rembrandt's efforts to exclude competition . . . are successful," that it "will have acquired and/or maintained this monopoly power through various exclusionary . . . acts," apparently including the acquisition of the patents-in-suit, agreements with████████and ████████ and the bad-faith pursuit of litigation. *Id.* ¶ 134; *see also id.* ¶¶ 135-137.

Count XIII alleges that Rembrandt has attempted to monopolize the "DOCSIS Equipment Markets" in violation of Section 2. The proposed complaint alleges that Rembrandt is "attempting to leverage its monopoly power in the DOCSIS Technology Markets" by "entering into [unidentified] illegal agreements[,] demanding excessive royalties, excluding competitors, enforcing patents it knows to be invalid, unenforceable, or not infringed, and wrongfully hi-jacking the DOCSIS standard and circumventing the DOCSIS patent pool." *Id.* ¶ 148. The proposed complaint does not allege that Rembrandt currently has any share of any equipment market.

Count XIV alleges a conspiracy to monopolize the DOCSIS Technology Markets and the

DOCSIS Equipment Markets in violation of Section 2. The proposed amended complaint states,

but alleges no facts to support, that not just Rembrandt, but also ███████████████████

███████████████████████ have all acted "with the specific intent of Rembrandt monopolizing

the relevant market." *Id.* ¶ 163.

Count XV is a claim for unfair business practices under California Business &

Professions Code § 17200. That claim is expressly based on the same violations of antitrust

law—and the same supposed anticompetitive harms—that provided the basis for Manufacturers'

claims under the Sherman Act. *See* Am. Compl. ¶¶ 171, 173.

## ARGUMENT

"[A] District Court may deny leave to amend on the grounds . . . that amendment would

be futile." *Winer Family Trust v. Queen*, 503 F.3d 319, 330-31 (3d Cir. 2007) (internal quotation

marks omitted). Here, Manufacturers' motion for leave to amend should be denied as futile

because Manufacturers have failed to allege any cause of action under the federal antitrust laws

or California unfair competition law.[4]

---

[4] "A district court may [also] deny leave to amend a complaint if a plaintiff's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the opposing party." *Cureton v. NCAA*, 252 F.3d 267, 272-73 (3d Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Even under Rule 15(a)'s permissive standards, the Court would be within its discretion to deny Manufacturers' proposed amendment in light of the burden that such amendment would place on the Court and the parties and the absence of justification for Manufacturers' delay. The MDL panel consolidated these cases because they all have in common Rembrandt's allegations of infringement and the defendants' defenses of invalidity and non-infringement: as the MDL panel stated, the cases "share factual questions concerning such matters as the technology underlying the patents, prior art, claim construction and/or issues of infringement involving the patents." Transfer Order at 2 (June 21, 2007). If allowed to proceed, Manufacturers' antitrust and unfair competition claims would inject extraneous issues not implicated by any of the pre-existing lawsuits, including questions of market definition, market power, anticompetitive impact, and antitrust injury and damages, adding a new level of complexity and expert-driven expense to this litigation. Furthermore, Manufacturers have inexcusably delayed in seeking to

**THE MANUFACTURERS' PROPOSED FIRST AMENDED COMPLAINT
FAILS TO STATE A CAUSE OF ACTION UNDER THE SHERMAN
ACT OR THE CALIFORNIA UNFAIR COMPETITION STATUTE**

Manufacturers' claims under the Sherman Act and the California unfair competition statute ignore both (1) the critical substantive distinction between the *legitimate exclusionary rights* granted by statute to the owner of a valid patent and *illegitimate monopoly power* obtained through prohibited exclusionary conduct and (2) the procedural requirement—affirmed by the Supreme Court in *Bell Atlantic Corp. v. Twombly*—that a plaintiff supply adequate factual allegations that, if proven, would establish that the plaintiff is entitled to the relief it seeks.

As to the first point: "the antitrust laws do not negate the patentee's right to exclude others from patent property." *Intergraph Corp. v. Intel Corp.*, 195 F.3d 1346, 1362 (Fed. Cir. 1999). "A patent holder who lawfully acquires a patent cannot be held liable under Section 2 of the Sherman Act for maintaining the monopoly power he lawfully acquired by refusing to license the patent to others." *Miller Insituform, Inc. v. Insituform of North Am., Inc.*, 830 F.2d 606, 609 (6th Cir. 1987); *see Axis, S.p.A. v. Micafil, Inc.*, 870 F.2d 1105, 1111 (6th Cir. 1989) ("a lawfully acquired patent creates a monopoly that does not violate the antitrust laws"). Indeed, a patent owner has the "untrammeled" right to license or not, exclusively or otherwise. *United States v. Westinghouse Elec. Corp.*, 648 F.2d 642, 647-48 (9th Cir. 1981) (internal quotation marks omitted), *accord United States v Studiengesellschaft Kohle, m.b.H.*, 670 F.2d 1122, 1127 (D.C. Cir. 1981); *see also Rambus Inc. v. FTC*, Nos. 07-1086, 07-1124, 2008 WL 1795594, at *8 (D.C.

---

bring their claims: the basic facts underlying their claims—including the fact that Rembrandt sought DOCSIS certification for a cable modem—have been available to Plaintiffs before they filed their *original* complaint. *See Sierra Club v. Union Oil Co. of Cal.*, 813 F.2d 1480, 1493 (9th Cir. 1987) ("[W]here the party seeking amendment knows or should know of the facts underlying the amendment when the original complaint is filed, the motion to amend may be denied."), *judgment reinstated after remand*, 853 F.2d 667 (9th Cir. 1988). Nothing that Plaintiffs purport to have discovered explains their failure to include their antitrust claims—especially those based on alleged bad-faith patent enforcement—at an earlier time.

Cir. Apr. 22, 2008) (monopoly power resulting from incorporation of patent into technology standard not illegitimate).

Furthermore, "[a]s a general rule, behavior conforming to the patent laws oriented towards procuring or enforcing a patent enjoys immunity from the antitrust laws." *Unitherm Food Sys., Inc. v. Swift Eckrich, Inc.*, 375 F.3d 1341, 1356 (Fed. Cir. 2004), *rev'd on other grounds*, 546 U.S. 394 (2006). A patentee has a *lawful* monopoly over an invention, so that antitrust liability cannot flow from conduct that is permissible under the patent laws. *See SCM Corp. v. Xerox Corp.*, 645 F.2d 1195, 1206 (2d Cir. 1981) ("we hold that where a patent has been lawfully acquired, subsequent conduct permissible under the patent laws cannot trigger any liability under the antitrust laws"); *Sheet Metal Duct Inc. v. Lindab, Inc.*, 55 U.S.P.Q.2d 1480, 1486-87 (E.D. Pa. 2000); *Hoffman-La Roche, Inc. v. Genpharm, Inc.*, 50 F. Supp. 2d 367, 378 (D.N.J. 1999). Although bad-faith litigation of a patent under circumstances where a patent holder's claims are both objectively and subjectively baseless is not immune from antitrust scrutiny, *see, e.g., Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1072 (Fed. Cir. 1998); *Walker Process Equip. v. Food Mach. & Chem. Corp.*, 382 U.S. 172 (1965), proper allegations of bad-faith litigation would "mark only the beginning of the antitrust inquiry, not its endpoint." *Unitherm*, 375 F.3d at 1355. A plaintiff must still allege that the bad-faith claim either conferred, or had a dangerous probability of conferring, monopoly power in the "relevant market for the product involved." *Walker Process*, 382 U.S. at 177. As explained below, Manufacturers' claims cannot support a claim of market power if Rembrandt's patents are not valid and infringed. And, if Rembrandt's patents are valid and infringed, any resulting market power is entirely lawful.

As to the second point: "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65 (alteration in original; quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must set forth "allegations plausibly suggesting (not merely consistent with)" illegal conduct, in light of "the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to sho[w] that the pleader is entitled to relief.'" *Id.* at 1966 (alteration in original); *see Phillips*, 515 F.3d at 231-232. In applying this pleading standard in the antitrust context in particular, the Supreme Court noted the expense of antitrust litigation and stressed that "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Twombly*, 127 S. Ct. at 1966-67 (internal quotation marks omitted). Manufacturers' pejorative rhetoric—accusing Rembrandt of "hijack[ing] the DOCSIS standard" (Am. Compl. ¶ 135) or "circumventing the DOCSIS patent pool" (*id.* ¶ 148)—far from bolstering its claims, are a "danger sign" that the plaintiff cannot allege sufficient facts to support its claims. *Cf. DM Research, Inc. v. College of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999).

As discussed below with respect to each of Manufacturers' claims, Manufacturers fail to allege harm to competition that stems from any allegedly unlawful conduct, although such allegations are required for all of its claims under the Sherman Act and under the California statute. Accordingly, all of its antitrust claims fail to state a claim and the Court should deny the motion.

A.    **The Manufacturers Fail to Allege that the Alleged Agreements Between Remstream and ████████ and Between Remstream and ████████ Communications Harm Competition**

The gravamen of Manufacturers' claim under Section 1 is that Remstream had entered into supply agreements with ████████ to sell cable modems and with ████████ to sell cable systems.  In effect, the allegation is that Remstream agreed to distribute, under its own brand, equipment manufactured for it by others.

The type of distribution agreement alleged in the complaint is subject to scrutiny under the antitrust "rule of reason." *AT&T Corp. v. JMC Telecom, LLC*, 470 F.3d 525, 530-31 (3d Cir. 2006); *see also Electronics Communications Corp. v. Toshiba Am. Consumer Prods.*, 129 F.3d 240, 243-44 (2d Cir. 1997).[5]  Under the rule of reason, an agreement is unlawful only if it causes harm to competition in the relevant market.  *See Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1367 (3d Cir. 1996).  When neither party to the type of distribution agreement at issue here has actual market power, there can be no implication of harm to competition.  *See, e.g., AT&T v. JMC*, 470 F.3d at 530-31; *Orson*, 79 F.3d at 1368; *cf. Electronics Communications*, 129 F.3d at 243 (holding that restraints intended to preserve exclusive distribution of cellular phones manufactured by Toshiba under "Audiovox" brand name did not threaten competition in the market).

---

[5] In contrast to rule-of reason analysis, "*per se*" analysis requires less elaborate inquiry into anticompetitive effects to establish a violation of the antitrust laws (as opposed to a private plaintiff's right of recovery).  "*Per se*" condemnation is therefore restricted to practices—such as horizontal price-fixing—that "considerable experience" demonstrates are harmful to competition and without redeeming pro-competitive benefits.  *Broadcast Music Inc. v. CBS*, 441 U.S. 1, 9 (1979) (internal quotation marks omitted); *see, e.g., Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 342 (1990) (a rule of reason analysis seeks to determine whether the alleged restraint is unreasonable because its "anticompetitive effects outweigh its procompetitive effects"); *Pace Elecs., Inc. v. Canon Computer Sys., Inc.*, 213 F.3d 118, 123 (3d Cir. 2000).

14

Manufacturers' claims of harm to competition—set out in paragraph 122 of the proposed amended complaint—fail to carry Manufacturers' burden. At the outset, Manufacturers fail to identify the market that is allegedly harmed by the alleged agreements. The complaint alleges only that the agreements "restrain[] . . . trade . . . in *one or more* of the relevant markets," without identifying *which* market or markets may be affected. Am. Compl. ¶ 122 (emphasis added). This is insufficient: failure to define the market in which competition has been harmed is fatal to a rule-of-reason claim under Section 1. *See National Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club*, 325 F.3d 712, 719-20 (6th Cir. 2003); *Tanaka v. University of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001) ("Failure to identify a relevant market is a proper ground for dismissing a Sherman Act claim.").

Furthermore, the supposed "harms" that Manufacturers allege do not constitute the kind of antitrust harms that could provide the basis for any claim under Section 1. *See generally Atlantic Richfield*, 495 U.S. at 335 n.5, 337 (private plaintiff must establish antitrust injury—that is, harm to the competitive process that also causes harm to the individual plaintiff); *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 111 (1986) (same for injunctive relief); *see also Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458 (1993) ("The law directs itself not against conduct which is competitive, even severely so, but against conduct which unfairly tends to destroy competition itself.").

*First*, Manufacturers claim that the agreements "facilitat[e] Remstream's scheme to acquire patents with the purpose of hijacking the . . . DOCSIS standard." Am. Compl. ¶ 122. But there is no allegation that Remstream's alleged agreements with ███████████ had anything to do with Remstream's acquisition of the patents-in-suit—to the contrary, the complaint alleges that such agreements were reached *after* Rembrandt had acquired the patents.

To the extent Manufacturers refer instead to the possibility that, as a result of these agreements, Rembrandt will qualify for judicial relief—in the form of an injunction or lost-profits damages—for which (accepting Manufacturers' arguments) Rembrandt would not qualify in the absence of such agreements, that allegation necessarily depends on the validity of Rembrandt's patents. As noted above, enforcement of valid patents is lawful. *See supra* at 11-12.[6] The suggestion that Remstream has entered into these agreements for purposes of "manufactur[ing] *sham* claims for relief," Am. Compl. ¶ 120 (emphasis added), adds nothing. Manufacturers do not allege that the agreements are shams in the sense that Remstream does not intend to compete as a vendor of cable equipment; Manufacturers will be free to make such arguments if and when Remstream seeks an injunction. In any event, Remstream's motive is irrelevant. *See Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993) ("Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation."); *In re Independent Serv. Orgs. Antitrust Litig.*, 203 F.3d 1322, 1327-29 (Fed. Cir. 2000) (subjective motivation of intellectual property owner in refusing to license is immaterial); *Nobelpharma*, 141 F.3d at 1072 ("if a [patent infringement] suit is not objectively baseless, an antitrust defendant's subjective motivation is immaterial").

*Second*, Manufacturers claim that the agreements "facilitat[ed] Remstream's scheme" to obtain a royalty-free license to the patents in the DOCSIS patent pool without surrendering Rembrandt's patents. Am. Compl. ¶ 122. But there is no basis for the claim that, by refusing to join the DOCSIS patent pool, Rembrandt violates any duty under the antitrust laws. No such duty exists and no authority is cited to support it. To the contrary, patent pools are an object of antitrust suspicion. *See* Philip B. Nelson, *Patent Pools:  An Economic Assessment of Current*

---

[6] To the extent Rembrandt's patents are invalid or not infringed by Manufacturers, there will be no impact on this litigation from the alleged agreements. *See also infra* 20-21.

*Law and Policy*, 38 RUTGERS L.J. 539, 542 (2007) ("patent pools can . . . support anticompetitive behavior" and may "facilitate collusion"). And there is no rule of antitrust law that would restrict Rembrandt's entering into an agreement to sell products manufactured by a member of a patent pool.

*Third*, Manufacturers allege "on information and belief" that Remstream, ███████████ and ███████ have "expressly or implicitly allocat[ed] markets and customers." Am. Compl. ¶ 122. This is precisely the sort of "formulaic recitation" of the rudiments of a "cause of action" that cannot suffice to state a claim, particularly after *Twombly*. *See Phillips*, 515 F.3d at 231; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *Ciabattoni v. United States*, Civ. No. 04-203-GMS, 2008 WL 78744, at *2 (D. Del. Jan. 7, 2008) (Court need not credit plaintiff's "bald assertions" or "legal conclusions" when deciding a motion to dismiss) (internal quotation marks omitted). Manufacturers do not identify what markets or customers have been allocated; moreover, even if there were such an "allocation," such an agreement would be judged under the rule of reason because Remstream, as a would-be distributor, and ███████████████ as an alleged manufacturer, are in a vertical, not a horizontal, relationship. *See AT&T v. JMC*, 470 F.3d at 531; *cf. Hennessy Indus. Inc. v. FMC Corp.*, 779 F.2d 402, 404 (7th Cir. 1985) (agreement between patent owner, licensee, and former licensee "constitutes a vertical restraint between a supplier of a license and its purchaser"). And that is nonetheless true even assuming that Remstream will "swap-ou██████████s existing products in the U.S. market with the Remstream branded model." Am. Compl. ¶ 112. "[A]n actual adverse effect on interbrand competition is not established merely because an agreement removes from the marketplace one brand name under which a manufacturer's products are sold." *Electronics Communications*, 129 F.3d at 244. Accordingly, Manufacturers' allegation that

17

Remstream and others agreed to allocate markets—even if those markets were adequately identified, which they are not—would fail to support Manufacturers' claim under Section 1.

**B.     The Manufacturers Fail to Allege that Rembrandt has Monopoly Power in any Properly Defined Market or that Rembrandt Engaged in Exclusionary Conduct**

Manufacturers' claim that Rembrandt monopolized the "DOCSIS Technology Markets"—Count XII—fails to state a claim under Section 2 both because Manufacturers fail to allege that Rembrandt has monopoly power in any well-defined market and because Manufacturers fail to allege that Rembrandt engaged in any unlawful conduct giving rise to any such power.

To state a claim for monopolization, Manufacturers must allege "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power." *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 307 (3d Cir. 2007) (internal quotation marks omitted); *see also Verizon Communications Inc. v. Law Offices of Curtis V. Trinko*, 540 U.S. 398, 407 (2004) ("To safeguard the incentive to innovate, the possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive *conduct*."). Here, Manufacturers fail to allege either element.

1.     Manufacturers' allegations of monopoly power fall short both because Manufacturers fail to define a relevant market and because they do not allege that Rembrandt has monopoly power in any market.

"Plaintiffs have the burden of defining the relevant market," and "[w]here the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion

to dismiss may be granted." *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997). Furthermore, it is insufficient to define a market in terms of *technical* substitutability, rather than *economic* substitutability. *See Unitherm*, 375 F.3d at 1364-65.

Manufacturers' "DOCSIS Technology Markets" fail to clear this initial hurdle; the markets are defined solely in terms of a particular technology standard, without any reference to potential substitutes or the economic product markets in which the technologies may be used. *See* Am. Compl. ¶¶ 117, 118. Moreover, Manufacturers fail even to identify which technologies are relevant to its claims of monopolization, describing an undefined number of alleged "markets" that fall under the "DOCSIS Technology" rubric, including (apparently) technologies that have nothing to do with Rembrandt's patents. To the extent Manufacturers intend to limit their market definition to the technologies that are "covered by the patents-in-suit," *id.* ¶ 117, then their market definition "essentially rests upon a tautology": the market is simply defined as the market for Rembrandt's patents. *Unitherm*, 375 F.3d at 1365. But while any patent owner has a "monopoly" over the patent that it owns (by definition), that does not confer monopoly power in the antitrust sense. *See Illinois Tool Works Inc. v. Independent Ink, Inc.*, 547 U.S. 42, 45-46 (2006); 3 Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 704a, at 159 (2d ed. 2002) ("Neither ownership of the [patent] nor the power to exclude conveys monopoly power unless the property right in question dominates a properly defined relevant market."); *Globespanvirata, Inc. v. Texas Instruments, Inc.*, No. 03-2854, 2006 WL 543155 (D.N.J. Mar. 3, 2006) (dismissing antitrust claims based on inadequate technology market allegations); *B.V. Optische Industrie De Oude Delft v. Hologic, Inc.*, 909 F. Supp. 162, 172 (S.D.N.Y. 1995).

Furthermore, even if Manufacturers could define a market consisting solely of the patents-in-suit, they fail to allege that Rembrandt has monopoly power for purposes of Section 2.

Rather, Manufacturers allege that "Rembrandt *claims* it has the right to exclude" and thus that "Rembrandt *claims* to have monopoly power." Am. Compl. ¶ 133 (emphasis added); *see also id.* ¶ 117. This is plainly inadequate: Manufacturers' allegation is simply that Rembrandt claims to have a valid patent. They do not allege that Rembrandt *has* monopoly power, and without such an allegation their Section 2 claim cannot proceed.

      **2.**     In any event, Manufacturers fail to allege that Rembrandt has engaged in exclusionary conduct that could create or sustain any alleged monopoly power. As an initial matter, Rembrandt's acquisition of the patents-in-suit cannot itself give rise to any antitrust claim: there is no allegation that Rembrandt had market power when it acquired the patents, and "acquisitions of patents by firms lacking substantial market power should be presumed non-exclusionary." 3A Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 803d, at 335 (2d ed. 2002); *see Independent Serv. Orgs. Antitrust Litig.*, 203 F.3d at 1324 (where patent acquisition was lawful when made, acquirer could lawfully refuse to license patent to would-be competitors); *Brunswick Corp. v. Riegel Textile Corp.*, 752 F.2d 261, 267 (7th Cir. 1984) ("[I]t is a matter of indifference whether [one owner or another] exploits a [patent] monopoly of antistatic yarn."); *SCM Corp.* 645 F.2d at 1204 (2d Cir. 1981).

      Manufacturers' claim that Rembrandt "hijack[ed] the DOCSIS standard after the fact," Am. Compl. ¶ 135, also fails. The cases make clear that the owner of a patent that covers a standard does not violate Section 2 by enforcing its patent against those who practice the standard in the absence of any allegation of deceptive or wrongful conduct leading to the incorporation of the patented technology (rather than an alternative) into the standard. *See Rambus*, 2008 WL 1795594, at *5-*9; *Broadcom*, 501 F.3d at 312 & n.7, 314. Rather, cases that have recognized potential claims for monopolization based on adoption of patented technologies

within an industry standard have required that a plaintiff allege both that a patent holder intentionally misled the standard-setting organization *and* that, as a result of the deception, the standard-setting organization adopted the patented technology in its standard rather than an alternative that would have been more attractive to the organization had the facts been known. *See Broadcom*, 501 F.3d at 314; *see also Rambus*, 2008 WL 1795594, at *6. But Manufacturers positively *disclaim* any such allegations here: they affirmatively allege that neither Rembrandt nor its predecessors-in-interest "participated in the DOCSIS standardization process or publicly commented on the DOCSIS standards." Am. Compl. ¶ 93. In the absence of any claim that Rembrandt deliberately abused the standard-setting process in an attempt to monopolize the market later, Manufacturers' "hijacking" allegations provide no basis for concluding that Rembrandt's conduct was anticompetitive.

Manufacturers' allegation that Rembrandt's patent infringement claims are objectively baseless and brought in subjective bad faith, *see id.* ¶ 136, likewise fail for several reasons. First, there is no allegation that such litigation has led to the "acquisition or maintenance" of monopoly power. *Broadcom*, 501 F.3d at 307 (internal quotation marks omitted). Manufacturers do not allege that Rembrandt has been able to raise prices or restrict output of any product or technology that it sells as a result of the alleged litigation conduct. *See id.* ("Monopoly power is the ability to control prices and exclude competition in a given market."). As Manufacturers have filed this case, their complaints about "attorney and litigation fees," Am. Compl. ¶ 138, are particularly unfounded—Manufacturers voluntarily incurred those fees—but in any event such fees would not constitute an antitrust injury when they have nothing to do with maintenance of

any alleged monopoly power.[7]  *See Brotech Corp. v. White Eagle Int'l Techs. Group Inc.*, Civ.A.03-232, 2004 WL 1427136, at *7 (E.D. Pa. June 21, 2004).

Second, there is no factual basis for the Manufacturers' allegation that any infringement litigation was brought out of "Rembrandt's desire to impose collateral . . . injury rather than to obtain a justifiable legal remedy." Am. Compl. ¶ 136.  To the contrary, the allegations of the complaint make clear that Rembrandt is motivated by a desire to obtain judicial relief for infringement.  *See, e.g., id.* ¶ 120.  Where, as is alleged here, the potentially "anticompetitive" effect of litigation stems from the intended *outcome* of the litigation rather than the impact *of the litigation itself* on a competitor's business, there can be no claim that the litigation violates the antitrust laws.  *See Professional Real Estate Investors*, 508 U.S. at 60-61.

Finally, the allegation that Rembrandt's infringement claims are objectively baseless fails in light of the history of this litigation.  Rembrandt's infringement claims have been pending against one or more of the defendant cable companies for nearly three years.  If Rembrandt's claims were objectively baseless, the cable companies' sophisticated counsel would have moved for summary adjudication of those claims long ago.  On similar grounds, the D.C. Circuit affirmed the dismissal on the pleadings of an antitrust claim based on supposedly groundless patent litigation against a competitor.  In *Covad Communications Co. v. Bell Atlantic Corp.*, 398 F.3d 666 (D.C. Cir. 2005), even though the defendant's infringement claims had failed at summary judgment (a decision affirmed by the Federal Circuit), the fact that the defendant had,

---

[7] By contrast, in a classic *Walker Process* case, a defendant with monopoly power in a well-defined product market uses a fraudulently obtained patent to deter would-be competitors from entering the market and/or to deter would-be competitors' customers from dealing.  In those circumstances, the existence or even the threat of litigation may deter market entry and preserve monopoly power.  *See* Herbert Hovenkamp, Mark D. Janis, and Mark A. Lemley, *IP and Antitrust* § 11.2, at 11-14.  Because Rembrandt has no alleged market power (except the lawful power conferred by its patents), there is no such prospect here.

in its infringement suit, "advanced reasonable arguments that each court went to some lengths to reject" was a sufficient basis to dismiss plaintiff's claim. *Id.* at 677-78. Likewise, here, the fact that sophisticated defendants have been litigating Rembrandt's claims for years demonstrates that the claims are not objectively baseless.[8]

## C.    The Manufacturers Fail to Allege that Rembrandt has a Dangerous Probability of Acquiring Monopoly Power in any Product Market

Manufacturers' claim that Rembrandt is attempting to monopolize "DOCSIS Equipment Markets" fails because Manufacturers fail to allege that Rembrandt has a dangerous probability of acquiring any illegitimate power in any market.

To state a claim for attempted monopolization, a plaintiff must allege "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Crossroads Cogeneration Corp. v. Orange & Rockland Utils., Inc.*, 159 F.3d 129, 141 (3d Cir. 1998) (internal quotation marks omitted). Manufacturers allege that Rembrandt intends to leverage its supposed power in the "DOCSIS Technology Markets," to obtain "monopoly power over the DOCSIS Equipment Markets." Am. Compl. ¶¶ 148, 149. But, notwithstanding the conclusory assertion that Rembrandt's conduct "has a dangerous probability" of giving Rembrandt monopoly power, *id.* ¶ 149, the factual allegations belie any such claim. *See Doug Grant, Inc v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (conclusory allegations

---

[8] Even if Manufacturers could otherwise allege a claim under the Sherman Act based on patent-enforcement activity, the Court should not allow that claim to proceed now but should stay any litigation over those claims at least until after the Court has decided summary judgment on Rembrandt's patent-infringement claims. *See* Hovenkamp, *et al., IP and Antitrust* § 11.3b6, at 11-37 (noting that courts have held "that it is appropriate to bifurcate the antitrust claims from the underlying intellectual property claim"); *see also, e.g., Hydranautics v. FilmTec Corp.*, 70 F.3d 533, 536 (9th Cir. 1995); *ASM America, Inc. v. Genus, Inc.*, No. 01-2190 EDL, 2002 WL 24444 (N.D. Cal. Jan. 9, 2002) (staying antitrust claims, including claims based on bad-faith patent enforcement, pending determination of infringement claim).

disregarded in assessing adequacy of complaint).  As an initial matter, Manufacturers fail to allege that Rembrandt has any present market share at all in any product market.  Yet, "[a]s a matter of law, a market share of less than 30 percent is presumptively insufficient to establish the market power that is a prerequisite to a defendant's enjoying a dangerous probability of achieving monopoly power."  *ID Security Sys. Canada, Inc. v. Checkpoint Sys., Inc.*, 249 F. Supp. 2d 622, 648 (E.D. Pa. 2003); *see also Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 513 (3d Cir. 1994) (noting that market share is the "most significant" fact in assessing dangerous probability of achieving monopoly power and noting that "a pair of leading antitrust commentators state that 'it is clear that the basic thrust of the classic rule is the presumption that attempt does not occur in the absence of a rather significant market share'") (quoting 3 Phillip Areeda & Donald F. Turner, Antitrust Law ¶ 831 at 336 (1978)).

Manufacturers will argue that the presumption that a substantial market share is a prerequisite for an attempt claim under Section 2 should not apply here because of Rembrandt's ownership of patents, but that argument does not bear scrutiny.  First, Manufacturers themselves allege that Rembrandt has offered to license its patents.  *See* Am. Compl. ¶ 148.  If competitors remain in the product market as a result of licensing, then there is no basis for a presumption that Rembrandt will gain any substantial market share, let alone a monopoly share.  Second, if Rembrandt were able to exclude competitors from any product market as a result of a court-issued injunction, any resulting power would not be unlawful, but would reflect the lawful exclusionary power of Rembrandt's patents—and that would be true even if Rembrandt did not ultimately prevail in its litigation.  *See supra* at 11-12.  Third, if (as Manufacturers elsewhere allege), Rembrandt's patents are invalid and/or not infringed by Manufacturers, then there is no

prospect that Rembrandt's attempt to enforce its patents will lead to monopoly power in a market where Rembrandt's current share—from all that is alleged—is zero.[9]

### D.   The Manufacturers Fail to Allege a Conspiracy to Monopolize in the Absence of any Alleged Harm to Competition

Manufacturers' conspiracy-to-monopolize claim adds nothing of substance to their earlier claims under Section 1 and Section 2.  Thus, the failure of Manufacturers' claim under Section 1 and their claims for monopolization and attempted monopolization is likewise fatal to their claim of conspiracy to monopolize (Count XIV), because Plaintiff has failed to allege either the dangerous probability of success or the anticompetitive effect required to state a conspiracy-to-monopolize claim.

To state a claim for conspiracy to monopolize, a plaintiff must allege "(1) an agreement or understanding between two or more economic entities, (2) a specific intent to monopolize the relevant market, (3) the commission of an overt act in furtherance of the alleged conspiracy, and (4) that there was a dangerous probability of success."  *Urdinaran v. Aarons*, 115 F. Supp. 2d 484, 491 (D.N.J. 2000) (internal quotation marks omitted).   A plaintiff must allege that the "challenged conduct harmed the competitive process" to state a claim.  *Gregory v. Fort Bridger Rendezvous Ass'n*, 448 F.3d 1195, 1206 (10th Cir. 2006) (citing *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 139 (1998)); *see also Spanish Broad. Sys. of Florida, Inc. v. Clear Channel Communications, Inc.*, 376 F.3d 1065, 1078 (11th Cir. 2004) (affirming dismissal of conspiracy-to-monopolize claim for failure to "allege[] facts sufficient to support a finding of harm to

---

[9] Furthermore—assuming for the sake of argument that Manufacturers' allegations of bad-faith litigation could satisfy the anticompetitive-conduct element of Manufacturers' attempt claim—there is, as discussed above, no *other* anticompetitive conduct alleged that could provide the basis for a claim under Section 2.  *See supra* at 19-20.

competition"). For reasons already discussed above, Manufacturers have failed to allege either a dangerous probability of achieving monopoly power or harm to competition.

Furthermore, Manufacturers have not properly alleged that any alleged co-conspirator— other than Rembrandt itself—had the requisite intent to monopolize the market. Yet "a plurality of actors sharing such an intent is required under Section 2." *International Dist. Ctrs., Inc. v. Walsh Trucking Co., Inc.,* 812 F.2d 786, 796 (2d Cir. 1987) (*citing Northeastern Tel. Co. v. American Tel. & Tel. Co.*, 651 F.2d 76, 85 (2d Cir. 1981)); *see also CDC Techs, Inc. v. IDEXX Labs, Inc.,* 7 F. Supp. 2d 119, 131 (D. Conn. 1998) ("If one party's intent to monopolize is not shared by another party, there can be no conspiracy to monopolize."), *aff'd on other grounds,* 186 F. 3d 74 (2d Cir. 1999).

Manufacturers allege, in general terms, only that various parties "have set upon this course of conduct with the specific intent of Rembrandt monopolizing the relevant markets." Am. Compl. ¶ 163. But such a "general allegation" is insufficient in the absence of "facts from which it can reasonably be inferred that [other parties] formulated [the] intent that maintaining [Rembrandt's] monopol[y] was a goal that they themselves wanted to accomplish." *Howard Hess Dental Labs. Inc. v. Denstsply Int'l, Inc.*, 516 F. Supp. 2d 324, 342 (D. Del. 2007) (internal quotation marks omitted). The only conduct alleged for parties other than Rembrandt consists of ordinary commercial transactions—alleged agreements to sell intellectual property or electronic equipment. Because such conduct is perfectly consistent with lawful intent, "a bare assertion of conspiracy will not suffice." *Twombly*, 127 S. Ct. at 1965-66.

E.     **The Manufacturers' Claim under the California Unfair Competition Statute Fails Because the Manufacturers have not Alleged Harm to Competition**

Manufacturers' claim under California's unfair competition statute—Bus. & Prof. Code § 17200—is primarily based on the allegations underlying their Sherman Act claims, and it fails for the same reasons; Manufacturers also fail to provide any other basis for its state-law claim.

Section 17200 prohibits "unlawful, unfair or fraudulent business acts or practices." "Thus, Section 17200 establishes three alternative theories for finding illegal conduct: (1) unlawful, (2) unfair and deceptive, or (3) fraudulent." *Parrish v. National Football League Players Ass'n*, 534 F. Supp. 2d 1081, 1090 (N.D. Cal. 2007) (citing *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 63 (1999)). To the extent Manufacturers' claim is predicated on violations of the federal antitrust laws, *see* Am. Compl. ¶¶ 167, 171, 173, the claim fails for the same reasons that Manufacturers have failed to state a claim under the Sherman Act. *See e.g. Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1234 (2007) (where conduct does not violate predicate statute, conduct is not "unlawful" for purposes of Section 17200).

Manufacturers likewise fail to allege conduct that is "*unfair*" under § 17200. Under California law, "unfair practices . . . must . . . at least threaten significant harm to competition because of a violation of a recognized policy of antitrust law." *Parrish*, 534 F. Supp. 2d at 1092 (citing *Cel-Tech*, 20 Cal. 4th at 186-87). Accordingly, "[i]f the same conduct is alleged to be both an antitrust violation and an 'unfair' business act or practice for the same reason—because it unreasonably restrains competition and harms consumers—the determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not 'unfair' toward consumers." *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001). "To permit a separate inquiry into essentially the same question under the unfair competition law would only

27

invite conflict and uncertainty and could lead to the enjoining of procompetitive conduct." *Id.*;
*see also Belton*, 151 Cal. App. 4th at 1240. Accordingly, Manufacturers' failure to state a claim
under the federal antitrust laws is fatal to its Section 17200 claim as well. *See Philips Med.*
*Capital, LLC v. Medical Insights Diagnostics Center*, 471 F. Supp. 2d 1035, 1045 (N.D. Cal.
2007) (dismissing a § 17200 counterclaim because counterclaimants did not allege antitrust
injury or violation); *see also, e.g., Kentmaster Mfg. Co. v. Jarvis Prods. Corp.*, 146 F.3d 691,
695 (9th Cir. 1998) (dismissing Section 17200 claim "for the same reasons that the federal
[antitrust] claims fail"); *Ticketmaster L.L.C. v. RMG Techs., Inc.*, 536 F. Supp. 2d 1191, 1199
(C.D. Cal. 2008) ("[S]ince the Court has found that RMG has in fact not pled a viable Sherman
Act claim, there is nothing left on which to predicate the 17200 claim."); *Guichard v. Mandalay*
*Pictures, LLC*, No. C 04-4363, 2005 WL 2007883, at *5 (N.D. Cal. Aug. 22, 2005) (holding
"[i]n the absence of anticompetitive conduct capable of harming competition in the relevant
market" that "Plaintiff's state unfair competition claim fails").

Manufacturers' allegations that Rembrandt "committed fraudulent business acts" by
"asserting patents . . . against cable operators," Am. Compl. ¶ 177, are also insufficient.
California state law provides a broad privilege for litigation conduct. *See* Cal. Civ. Code
§ 47(b)(2). "[A]ny communications (1) made in a judicial proceeding; (2) by litigants . . . (3) to
achieve the objects of the litigation; (4) that have some connection or logical relation to the
action" cannot be the basis of any unfair competition claim. *Sharper Image Corp. v. Target*
*Corp.*, 425 F. Supp. 2d 1056 (N.D. Cal. 2006). The purpose of that provision is "'to afford
litigants . . . the utmost freedom of access to courts without fear of being harassed . . . by
derivative tort actions.'" *Id.* (quoting *Silberg v. Anderson*, 50 Cal. 3d 205, 213 (1990)). The sole
exception to the litigation privilege is in cases of malicious prosecution—which Manufacturers

do not and cannot allege. *See Rubin v. Green*, 4 Cal. 4th 1187, 1194 (1993). Manufacturers therefore cannot assert a valid claim against Rembrandt under California law for Rembrandt's assertion of its patent rights against cable operators. *See Nguyen v. Proton Tech. Corp.*, 69 Cal. App. 4th 140, 147 (1999) ("It is clear that whether a given communication is within the privilege is an issue of law, and not fact."). Section 47(b) has been applied in patent infringement litigation: for example, in *Sharper Image*, the court held that section 47(b) created "an absolute bar to Defendants' counterclaims" against the patentee for sending letters to retailers alerting them to the infringement litigation against the defendant and warning them not to infringe the patent by selling the defendants' product. 425 F. Supp. 2d at 1079.

Even if the litigation privilege were inapplicable, to the extent that Manufacturers' patent-enforcement efforts are immune from federal antitrust scrutiny because they are not objectively baseless or in subjective bad faith, *see supra* at 11-12, 20, any state-law claim based on the same conduct is preempted. *See Serio-US Indus., Inc. v. Plastic Recovery Techs. Corp.*, 459 F.3d 1311, 1320-21 (Fed. Cir. 2006). And, in any event, there is no allegation that *Manufacturers* were defrauded or deceived or that they lost any money or property as a result; in the absence of such an allegation, Manufacturers lack standing to assert any such claim.[10] This is particularly true because Section 17200 provides for equitable relief only—not damages[11]—and basic principles of standing prevent Manufacturers from seeking to enjoin litigation *against third parties* (litigation that is pending as part of this very proceeding). Finally, the enforcement of a

---

[10] Under Cal. Bus. & Prof. Code § 17204, "to make out an unfair competition claim under California law, Plaintiff must have suffered an injury in fact and have lost money or property." *Jacobsen v. Katzer*, No. C 06-01905, 2007 WL 2358628, *2 (N.D. Cal. Aug. 17, 2007); *see also Akkerman v. Mecta Corp., Inc.*, 152 Cal. App. 4th 1094, 1102 (2007) (no standing where plaintiff did not prove damages or suffer an out-of-pocket loss).

[11] Section 17200 permits restitutionary relief also, but such relief is limited to the repayment of money that a plaintiff paid the defendant. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144-45 (2003). Plaintiffs do not allege they have paid any money to Rembrandt.

patent—even if known to be invalid—is not the type of "fraudulent" conduct that is subject to challenge under Section 17200, which is limited to conduct by which the *public* is likely to be deceived. *See Buller v. Sutter Health*, 160 Cal. App. 4th 981 (2008); *Bank of the West v. Superior Court*, 2 Cal. 4th 1254 (1992); *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144 (2000). The proposed amended complaint fails to allege any facts indicating deception of the public or that any such deception caused Manufacturers any injury.

## CONCLUSION

For the foregoing reasons, the Court should deny Manufacturers' Motion for Leave to Amend Complaint to Add Antitrust and Unfair Competition Claims.

CONNOLLY BOVE LODGE & HUTZ LLP

*/s/ Collins J. Seitz, Jr.*
Collins J. Seitz, Jr. (#2237)
Francis DiGiovanni (#3189)
James D. Heisman (#2746)
Kristen Healey Cramer (#4512)
The Nemours Building
1007 N. Orange Street
Wilmington, DE  19899
Phone (302) 658-9141
cseitz@cblh.com
fdigiovanni@cblh.com
jheisman@cblh.com
kcramer@cblh.com

*Attorneys for Rembrandt Technologies, LP, and Rembrandt Technologies, LLC d/b/a Remstream*

Dated:  May 5, 2008

30

## CERTIFICATE OF SERVICE

I, Collins J. Seitz, Jr., hereby certify that on the 5th day of May, 2008, a true copy

of the foregoing **Rembrandt's Opposition to Motion for Leave to Amend Complaint**

**to Add Antitrust and Unfair Competition Claims** was electronically filed with the

Clerk of the Court using CM/ECF which will send notification of such filing to the

following and the document is available for viewing and downloading from CM/ECF:

## BY E-MAIL

| | |
|---|---|
| Jack B. Blumenfeld<br>Karen Jacobs Louden<br>Rodger D. Smith II<br>Morris, Nichols, Arsht & Tunnell LLP<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>jblumenfeld@mnat.com<br>klouden@mnat.com<br>rsmith@mnat.com | John W. Shaw<br>Young, Conaway, Stargatt & Taylor<br>The Brandywine Building<br>1000 West Street, 17th Floor<br>P.O. Box 391<br>Wilmington, DE 19899-0391<br>jshaw@ycst.com |
| Richard K. Herrmann<br>Mary B. Matterer<br>Amy Arnott Quinlan<br>Morris James LLP<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801-1494<br>rherrmann@morrisjames.com | Richard D. Kirk<br>Scott G. Wilcox<br>Stephen B. Brauerman<br>Bayard, PA<br>222 Delaware Avenue, Suite 900<br>P.O. Box 25130<br>Wilmington, DE 19899<br>rkirk@bayardlaw.com<br>swilcox@bayardlaw.com<br>sbrauerman@bayardlaw.com |

| | |
|---|---|
| Fredrick L. Cottrell, III<br>Kelly E. Farnan<br>Richards, Layton & Finger, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE 19801<br>cottrell@rlf.com<br>farnan@rlf.com | Peter J. Toren<br>Lawrence B. Goodwin<br>Monica V. Bhattacharyya<br>Stefan R. Stoyanov<br>Kasowitz, Benson, Torres & Friedman LLP<br>1633 Broadway<br>New York, NY 10019<br>ptoren@kasowitz.com<br>lgoodwin@kasowitz.com<br>mbhattacharyya@kasowitz.com<br>sstoyanov@kasowitz.com |
| Josh A. Krevitt<br>Charles J. Bourdreau<br>Gibson, Dunn & Crutcher LLP<br>200 Park Avenue, 47th Floor<br>New York, New York 10166-0193<br>jkrevitt@gibsondunn.com<br>cboudreau@gibsondunn.com | David Segal<br>Gibson, Dunn & Crutcher LLP<br>3161 Michelson Drive<br>Irvina, California 92612-4412<br>dsegal@gibsondunn.com |
| Amanda J. Tessar<br>Gibson, Dunn & Crutcher LLP<br>1801 California Street, Suite 4200<br>Denver, CO 80202-2642<br>atessar@gibsondunn.com | David S. Benyacar<br>Daniel L. Reisner<br>Kaye Scholer LLP<br>425 Park Avenue<br>New York, New York 10022<br>dbenyacar@kayescholer.com<br>dreisner@kayescholer.com |
| Matthew D. Powers<br>Edward R. Reines<br>Weil Gotshal & Manges LLP<br>201 Redwood Shores Parkway<br>Redwood Shores, CA 94065<br>matthew.powers@weil.com<br>edward.reines@weil.com | Robert A. Van Nest<br>Brian L. Ferrall<br>Daralyn J. Durie<br>Leo L. Lam<br>Matthew M. Werdegar<br>KEKER & VAN NEST LLP<br>710 Sansome Street<br>San Francisco, CA 94111<br>rvannest@kvn.com<br>bferrall@kvn.com<br>ddurie@kvn.com<br>llam@kvn.com<br>mwerdegar@kvn.com |

| | |
|---|---|
| John Desmarais<br>Kirkland & Ellis LLP<br>Citigroup Center<br>153 East 53rd Street<br>New York, New York 10022<br>jdesmarais@kirkland.com | Eric R. Lamison<br>Kirkland & Ellis LLP<br>555 California Street, Ste. 2700<br>San Francisco, CA 94104<br>elamison@kirkland.com |
| Mitchell Stockwell<br>Kilpatrick & Stockton LLP<br>110 Peachtree Street, N.E.<br>Suite 2800<br>Atlanta, GA 30309<br>MStockwell@KilpatrickStockton.com | Bradford P. Lyerla<br>Kevin D. Hogg<br>Charles E. Juister<br>Marshall, Gerstein & Borun LLP<br>6300 Sears Tower<br>233 South Wacker Drive<br>Chicago, IL 60606-6357<br>blyerla@marshallip.com<br>khogg@marshallip.com<br>cjuister@marshallip.com |
| Richard Brown<br>Day Pitney LLP<br>200 Campus Drive<br>Florham Park, NJ 07932<br>rbrown@daypitney.com | Gerald Levy<br>Day Pitney LLP<br>7 Times Square<br>New York, NY 10036<br>glevy@daypitney.com |
| Jonathan Tropp<br>Day Pitney LLP<br>One Canterbury Green<br>201 Broad Street<br>Stamford, CT 06901 | |

By:     /s/ Collins J. Seitz, Jr.
        Collins J. Seitz, Jr. (#2237)
        cseitz@cblh.com