Redacted Document – Publicly Filed

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: REMBRANDT TECHNOLOGIES, LP PATENT LITIGATION | ) ) ) | MDL Docket No. 07-md-1848 (GMS) |

| | |
|---|---|
| MOTOROLA, INC., CISCO SYSTEMS, INC., SCIENTIFIC-ATLANTA, INC., ARRIS GROUP, INC., THOMSON, INC., AMBIT MICROSYSTTEMS, INC., and NETGEAR, INC., | ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| REMBRANDT TECHNOLOGIES, LP, | ) ) |
| Defendant. | ) ) |

| | |
|---|---|
| REMBRANDT TECHNOLOGIES, LP and REMBRANDT TECHNOLOGIES, LLC d/b/a REMSTREAM, | ) ) ) ) |
| Counter-Plaintiffs, | ) ) |
| v. | ) ) |
| MOTOROLA, INC., CISCO SYSTEMS, INC., SCIENTIFIC-ATLANTA, INC., ARRIS GROUP, INC., THOMSON, INC., AMBIT MICROSYSTEMS, INC., NETGEAR, INC., TIME WARNER CABLE, INC., TIME WARNER CABLE LLC, TIME WARNER NEW YORK CABLE LLC, TIME WARNER ENTERTAINMENT COMPANY, LP, COMCAST CORPORATION, COMCAST CABLE COMMUNICATIONS, LLC, CHARTER COMMUNICATIONS, INC., CHARTER COMMUNICATIONSOPERATING, LLC, COXCOM, INC., COX COMMUNICATIONS, INC., COX | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

C.A. NO. 07-752 (GMS)
JURY TRIAL DEMANDED

Redacted Document – Publicly Filed

ENTERPRISES, INC., CSC HOLDINGS, )
INC., CABLEVISION SYSTEMS )
CORPORATION, ADELPHIA )
COMMUNICATIONS CORPORATION, )
CENTURY-TCI CALIFORNIA )
COMMUNICATIONS, LP, CENTURY-TCI )
HOLDINGS, LLC, COMCAST OF )
FLORIDA/PENNSYLVANIA, L.P. )
f/k/a PARNASSOS, LP), COMCAST OF )
PENNSYLVANIA II, L.P. (f/k/a CENTURY- )
TCI CALIFORNIA, L.P.), PARNASSOS )
COMMUNICATIONS, LP, ADELPHIA )
CONSOLIDATION, LLC, PARNASSOS )
HOLDINGS, LLC, and WESTERN NY )
CABLEVISION, LP, )
)
)
         Counter-Defendants. )
                                     )

## REMBRANDT TECHNOLOGIES, LP AND REMBRANDT TECHNOLOGIES, LLC d/b/a REMSTREAM'S REPLY TO CABLEVISION SYSTEMS CORPORATION AND CSC HOLDINGS, INC.'S COUNTER-COUNTERCLAIMS

Rembrandt Technologies, LP ("Rembrandt") and Rembrandt Technologies, LLC d/b/a Remstream ("Remstream"), by their undersigned attorneys, respectfully submit this Reply to the Counter-Counterclaims of Cablevision Systems Corporation and CSC Holdings, Inc. (collectively "Cablevision") as follows:

### PARTIES

164.    Cablevision Systems Corporation is a Delaware corporation with its principal place of business at 1111 Stewart Avenue, Bethpage, New York 11714.

     Answer:    Upon information and belief, Rembrandt and Remstream admit that Cablevision Systems Corporation is a Delaware corporation with its principal place of business at 1111 Stewart Avenue, Bethpage, New York 11714.

165.    CSC Holdings, Inc. is a Delaware corporation with its principal place of business at 1111 Stewart Avenue, Bethpage, New York 11714.

Answer:   Upon information and belief, Rembrandt and Remstream admit that CSC Holdings, Inc. is a Delaware corporation with its principal place of business at 1111 Stewart Avenue, Bethpage, New York 11714.

166.   Upon information and belief, Rembrandt Technologies, LP is a limited partnership organized under the laws of the state of New Jersey with its principal place of business at 401 City Avenue, Suite 815, Bala Cynwyd, Pennsylvania 19004.

Answer:   Admitted that Rembrandt Technologies, LP is a limited partnership organized under the laws of the State of New Jersey.   Denied that Rembrandt has its principal place of business at 401 City Avenue, Suite 815, Bala Cynwyd, PA 19004; Rembrandt's principal place of business is Suite 900 at the aforementioned address.

167.   Upon information and belief, Rembrandt Technologies, LLC, is a Delaware limited liability company with its principal place of business at 401 City Avenue, Suite 815, Bala Cynwyd, Pennsylvania 19004.

Answer:   Admitted that Rembrandt Technologies, LLC also does business as Remstream and is a Delaware Limited Liability Company.   Denied that Remstream has its principal place of business at 401 City Avenue, Suite 815, Bala Cynwyd, PA 19904; Remstream's principal place of business is Suite 900 at the aforementioned address.

## JURISDICTION AND VENUE

168.   These Counterclaims arise under federal law, and this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, 1367, 2201, and 2202, and the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*

Answer:   Rembrandt and Remstream admit that Cablevision purports to bring a declaratory judgment of patent noninfringement and invalidity of nine United States patents under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and the patent laws of the United States, 35 U.S.C. § 100 *et seq.*, but deny that Cablevision is entitled to its requested relief.

169.   This Court has supplemental jurisdiction over the state law claims asserted in this action under 28 U.S.C. § 1367. The federal and state law claims asserted in this action arise from a common nucleus of operative facts.

Answer:   Denied.

170.   This Court has personal jurisdiction over Rembrandt because it has submitted to the jurisdiction of this Court.

Answer:  Admitted only that this Court has jurisdiction over Rembrandt and Remstream for purposes of this litigation.

171.    Venue is proper under 28 U.S.C. § 1391 and 1400(b).

Answer:   Rembrandt and Remstream do not contest that venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b), but deny that Counter-Defendants are entitled to their requested relief.

172.    Rembrandt has previously asserted in this litigation that Cablevision Systems Corporation and CSC Holdings, Inc. infringe U.S. Patent No. 4,937,819, 5,008,903, 5,243,627, 5,719,858, and 5,852,631. Rembrandt's Counterclaims additionally assert that that Cablevision infringes U.S. Patent Nos. 4,937,819, 5,008,903, 5,710,761, 5,719,858, 5,778,234, 5,852,631, 6,131,159, 6,950,444, and 5,243,627 ("the asserted patents"). An actual controversy exists between Rembrandt and Cablevision over the alleged infringement, invalidity, and unenforceability of the asserted patents.

Answer:  Admitted.  By way of further answer, Rembrandt and Remstream have asserted that Cablevision Corporation and CSC Holdings, Inc. infringe the '761, '234, '159 and '444 patents and that Rembrandt has asserted that Cablevision Corporation and CSC Holdings, Inc. infringe the '819, '903, '858, '631 and' 627 patents.

## FACTS

### Patent Issues

173.    On information and belief, Rembrandt claims to own all rights, title, and interest in and to the '819, '903, '761, '858, '234, '631, '159, '444 and '627 patents ("Rembrandt's asserted patents").

Answer:   Admitted that Rembrandt is the owner of all right, title and interest to the asserted patents subject to the rights granted to Remstream in the '761, '234, '159 and '444 patents.

174.    Rembrandt has accused Cablevision of infringing Rembrandt's asserted patents.

Answer:  Admitted.  By way of further answer, Rembrandt and Remstream have asserted that Cablevision Corporation and CSC Holdings, Inc. infringe the '761, '234, '159 and '444 patents and that Rembrandt has asserted that Cablevision Corporation and CSC Holdings, Inc. infringe the '819, '903, '858, '631 and' 627 patents.

Redacted Document – Publicly Filed

### Creation of the ATSC Standard

175. The American Television Systems Committee ("ATSC") is a private standard setting organization ("SSO") organized according to the policies of the American National Standards Institute. Following a multi-year competitive bidding process for the technology that would become the standard for terrestrial digital television broadcasting, the ATSC published the ATSC A-53 Digital Television Standard ("ATSC standard") on or about September 16, 1995.

Answer: Admitted that the ATSC published the ATSC standard on or about September 16, 1995. The remaining allegations of Paragraph 175 are denied as stated.

176. As a condition for participating in the ATSC's standard development, American Telephone and Telegraph Company ("AT&T")—the original owner of the '627 patent during the ATSC standard setting process—was required to agree, and did agree, to abide by the ATSC Patent Policy that required all ATSC participants to license any proprietary technology essential for ATSC compliance either without compensation or on fair, reasonable, and non-discriminatory ("FRAND") terms. On or about January 12, 1995, AT&T promised that it would license its patents, to the extent they are essential to implementation of the ATSC standard, under reasonable terms and conditions on a non-discriminatory, non-exclusive basis.

Answer: Admitted that on or about January 12, 1995, AT&T IPM wrote a letter, which is a writing that speaks for itself. The remainder of the allegations of Paragraph 176 are denied.

177. Besides the technology that Rembrandt currently alleges infringes the '627 patent, at all relevant times multiple other alternative and then-competing technologies were available to the ATSC for incorporation into the standard. Had the ATSC known that any ATSC signatory or its successor would repudiate its FRAND obligations and assert that the '627 patent covers all or part of the standard, the ATSC would have adopted one of the then-competing technologies.

Answer: Denied.

178. On or about December 24, 1996, the Federal Communication Commission "FCC") adopted the ATSC standard as the mandatory standard for terrestrial digital television broadcasting in the United States. In adopting the ATSC standard, the FCC explicitly conditioned its adoption on all ATSC participants, including AT&T, agreeing to license essential proprietary technology on FRAND terms.

Answer: Admitted that on or about December 24, 1996, the Federal Communication Commission adopted the ATSC standard. The alleged legal obligations associated with the standard are a matter of law to which no response is required. The remaining allegations of Paragraph 178 are denied.

Redacted Document – Publicly Filed

179.    If the FCC had known that an ATSC signatory or its successor would repudiate its FRAND) obligations, and would assert that its patent(s) were essential to the ATSC standard, then the FCC would have adopted one of the competing standards.

Answer: Denied.

180.    Both ATSC and the FCC relied on AT&T's and others' FRAND commitments in adopting the ATSC standard not only as a voluntary industry standard, but also a government mandated standard. Because the ATSC standard is the only technology accepted by the FCC for broadcasting terrestrial digital television in the United States, Cablevision and its content providers must implement and follow the standard by at least no later than the upcoming deadline set by Congress for transition to a digital television format. Cablevision already invested a significant amount of time, energy and money into implementing the ATSC standard.

Answer: The first sentence is denied. The allegations in the second sentence are a matter of law to which no response is required. Rembrandt and Remstream lack knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 180, and therefore deny them.

181.    Congress has established February 17, 2009 as the deadline for the final transition from an analog to a digital system for terrestrial broadcast television in accordance with the ATSC standard. Cablevision will be required to comply with the ATSC standard if it wishes to provide its subscribers with any content from terrestrial broadcast television at all in the United States.

Answer: The allegations in the first sentence are a matter of law to which no response is required. Rembrandt and Remstream lack knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 181, and therefore deny them.

## Rembrandt's Repudiation of its FRAND Commitment to ATSC

182.    AT&T owned the '627 patent at the time the ATSC promulgated the ATSC standard, and before the FCC adopted that standard as a government-mandated standard. After the FCC adopted the ATSC standard, in or around December 2004, Rembrandt acquired the '627 patent from Paradyne Networks, Inc. ("Paradyne"), a former subsidiary or affiliate of AT&T, successor-in-interest to AT&T with respect to the rights and obligations associated with the '627 patent, and now a wholly owned subsidiary of Zhone Technologies ("Zhone"). Paradyne obtained its ownership rights to the '627 patent from AT&T. AT&T and its successors-In-interest to the '627 patent were and are bound by the FRAND licensing commitment that AT&T made to the ATSC. As a successor-in-interest to the '627 patent, Rembrandt also is bound by that FRAND licensing commitment to the extent that the patent covers technologies necessary to implement or comply with the ATSC standard.

Answer: Admitted that AT&T was the original owner of the '627 patent. The remaining allegations of Paragraph 182 are denied.

183.    Rembrandt claims that the '627 patent is "essential" to the ATSC standard. But Rembrandt has disavowed, reneged on, and repudiated the FRAND licensing commitment that its predecessors-in-interest made to ATSC and by which its predecessors-in-interest were bound.

Answer: Admitted that the '627 patent is "essential" to the implementation of the ATSC standard. The remaining allegations of Paragraph 183 are denied.

184.    AT&T, as a predecessor-in-interest to the '627 patent, never claimed that the '627 patent was essential to the ATSC standard. And through its acts and omissions, AT&T implicitly denied the '627 patent applied to the ATSC standard.

Answer: Rembrandt and Remstream lack knowledge or information sufficient to form a belief as to the allegations in the first sentence of Paragraph 184, and therefore deny them. The allegations in the second sentence of Paragraph 184 are denied.

185.    Rembrandt sued Cablevision and other MSOs without first providing any prior notice of the '627 patent and without offering any license, let alone a license on FRAND terms. After Rembrandt sued Cablevision and other MSOs, Rembrandt demanded exorbitant royalties from Cablevision and others that far exceeded any royalty based on FRAND. These demands directly harm Cablevision and the MSOs and threaten the benefits that inure to all those who use the ATSC standard.

Answer: Denied.

186.    After acquiring the '627 patent, Rembrandt intentionally repudiated any FRAND commitment with respect to the allegedly essential '627 patent.

Answer: Denied.

187.    Rembrandt acquired the '627 patent with the specific intent to repudiate, in bad faith, its FRAND obligations and to obtain exorbitant royalties far in excess of FRAND.

Answer: Denied.

188.    Rembrandt has expressly denied having any FRAND obligations. For example, upon information and belief, it denied owing any such obligation to Harris Corporation, a

Redacted Document – Publicly Filed

manufacturer of digital transmission devices, in a complaint it filed in Delaware state court in 2007.

Answer:  Admitted that Rembrandt sued Harris Corporation in Delaware state court and that Rembrandt's complaint in that action speaks for itself and that Rembrandt has no "FRAND" obligations with respect to the '627 patent.  The remaining allegations of Paragraph 188 are denied.

189.    Rembrandt seeks non-FRAND term royalties from Cablevision, who must according to Rembrandt's allegations pay an exorbitant royalty far in excess of FRAND for practicing the mandated ATSC standard, or cease receiving terrestrial digital broadcast television signals in the United States.

Answer: Denied.

190.    Rembrandt's acquisition of the '627 patent has now subjected Cablevision to Rembrandt's patent infringement suit, whereas AT&T could not and would not have asserted such suit. Because AT&T implicitly denied application of the '627 patent to ATSC standard, and because they could not charge greater than FRAND terms in any event, Rembrandt has harmed Cablevision in a way its predecessors could not and would not have done.

Answer: Denied.

## Creation of the DOCSIS Specification

191.    Beginning in the mid-1990s, work began to develop a technical specification for the delivery of high-speed data over cable television networks. In 1997, the first version of Data Over Cable Services Interface Specifications (DOCSIS) was released by CableLabs.

Answer:  Rembrandt and Remstream lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 191, and therefore deny them.

192.    The goal in the development of DOCSIS was to specify interface requirements so that cable operators and their subscribers would be able to purchase affordable, interchangeable, highly functional cable modems and other equipment from multiple suppliers. To ensure that customers who purchased cable modems would receive products that were fully compatible with the DOCSIS standard, CableLabs established a certification program to identify DOCSIS-compliant manufacturers.  Certified equipment could then be used in cable systems supporting DOCSIS, and cable operators could then ensure that the equipment used on their network is DOCSIS certified.

Redacted Document – Publicly Filed

Answer:  Rembrandt and Remstream lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 192, and therefore deny them.

193.    On information and belief, both during and after the DOCSIS standardization process, and prior to filing lawsuits against Cablevision and other MSOs, neither Rembrandt nor its Paradyne predecessors-in interest informed CableLabs or cable equipment vendors that they had intellectual property they believed read on or covered the DOCSIS standard.

Answer:  This allegation is unintelligible, and is therefore denied.  For example, the time period corresponding to "both during and after the DOCSIS standardization process, and prior to filing lawsuits against …" is not comprehensible.  By way of further answer, there is no DOCSIS "standard" or DOCSIS "standardization" process. DOCSIS is a specification, rather than a standard.

194.    To facilitate efficient licensing of patented technology essential to implement the original DOCSIS specification and subsequent versions, CableLabs developed a patent pool for such intellectual property. CableLabs announced the DOCSIS patent pool in July 1998. Companies contributing technology essential to the DOCSIS standardization effort signed an agreement, entitled, "Data Over Cable Service Interface Specifications License Agreement."

Answer:  Rembrandt and Remstream lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 194, and therefore deny them.

195.    DOCSIS patent pool members contribute a non-exclusive, royalty-free license to any intellectual property rights they have that are essential to comply with the DOCSIS specifications. In exchange for this grant to the patent pool, DOCSIS pool members receive non-exclusive, royalty-free licenses to the patent pool intellectual property to the extent it is essential to comply with the DOCSIS specification.

Answer:  Rembrandt and Remstream lack knowledge or information sufficient to form a belief as to the allegations of Paragraph 195, and therefore deny them.

196.    Rembrandt and Remstream contend that they have not signed, nor are bound by, the DOCSIS License Agreement.

Answer:  Admitted.

Redacted Document – Publicly Filed

## Rembrandt's Breach of the DOCSIS Licensing Agreement



**Redacted Document – Publicly Filed**



██████████████

206.    Remstream—either alone or through partnerships with ██████████ and others—lacks the capacity to meet U.S. demand for DOCSIS-compliant cable modems. Rembrandt's efforts to establish its entity Remstream as the sole supplier of cable modems is not being done for any legitimate business purposes but rather to conjure up an advantage in litigation.

<u>Answer</u>:  Denied.

207.    Upon information and belief, Rembrandt has also reached an agreement with ████████████████████████ a cable systems provider, to further its scheme of attempting to further its litigation aims, not any legitimate business purpose. On information and belief, this scheme is intended to support Rembrandt's false claim that it is a practicing entity that has suffered damages as a purported competitor in the cable systems market.

<u>Answer</u>:  Denied.

208.    An actual case or controversy exists between Cablevision and Rembrandt as to the infringement, validity, and enforceability of Rembrandt's asserted patents.

<u>Answer</u>:  Admitted.

## FIRST COUNTER-COUNTERCLAIM

209.    Cablevision incorporates and realleges Paragraphs 1 through 208 as though fully set forth herein.

<u>Answer</u>:    Rembrandt and Remstream incorporate by reference their responses to Paragraphs 1 through 208 as if fully set forth herein.

210.    Cablevision has not infringed and does not directly or indirectly infringe any valid, enforceable claim of any of the asserted patents, either literally or under the doctrine of equivalents.

<u>Answer</u>:  Denied.

## SECOND COUNTER-COUNTERCLAIM

211.    Cablevision incorporates and realleges Paragraphs 1 through 210 as though fully set forth herein.

Redacted Document – Publicly Filed

Answer:  Rembrandt and Remstream incorporate by reference their responses to Paragraphs 1 through 209 as if fully set forth herein.

212.    The asserted patents are invalid for failing to satisfy one or more of the requirements of the Patent Act, 35 U.S.C. § 1 *et seq.*, including, but not limited to, the conditions of patentability set forth in 35 U.S.C. §§ 101, 102, 103, and 112.

Answer: Denied.

## THIRD COUNTER-COUNTERCLAIM

213.    Cablevision incorporates and realleges Paragraphs 1 through 212 as though fully set forth herein.

Answer:  Rembrandt and Remstream incorporate by reference their responses to Paragraphs 1 through 212 as if fully set forth herein.

214.    The asserted patents are unenforceable in whole or in part as a result of inequitable conduct in their procurement or in the prosecution of related applications, including, but not limited to, failure to adequately disclose, and material misrepresentation of the significance of, relevant material prior art of which Rembrandt was aware to the PTO, and for the reasons set forth above in Cablevision's Twelfth and Thirteenth Defenses. On information and belief, such acts were made with intent to deceive the PTO.

Answer: Denied.

## FOURTH COUNTER-COUNTERCLAIM
### Breach of Contract and Specific Performance re ATSC

215.    Cablevision realleges and incorporates by reference Paragraphs 1 through 214 above, and all responses set forth above by Cablevision in its Reply to Rembrandt's Counterclaims and Affirmative Defenses.

Answer:  Rembrandt and Remstream repeat and re-allege their responses to paragraphs 1 through 214 above and their Counterclaims asserted against Cablevision. Cablevision Counter-Defendants attempt to incorporate by reference their Affirmative Defenses does not comply with Federal Rule of Civil Procedure 10(b) requiring a separate statement of a single set of circumstances, and is therefore too vague and general to permit or require a response. Rembrandt and Remstream deny the applicability of each and every Affirmative Defense.

Redacted Document – Publicly Filed

216.    As set forth above, Rembrandt took title to the '627 Patent subject to AT&T's FRAND commitment, and is therefore required to license it in good faith and to grant FRAND license terms to any user of the ATSC standard, including Cablevision and its equipment suppliers.

Answer: Denied.

217.    Alternatively, Cablevision is an intended third-party beneficiary of AT&T's contract with the ATSC in that the ATSC and those who participated in the ATSC standard setting process (including AT&T) intended all manufacturers of ATSC-compliant equipment to have available to them FRAND licensing terms, which would inure to the benefit of purchasers of such ATSC-compliant equipment, including MSOs such as Cablevision. Cablevision has standing to enforce AT&T's promise to grant FRAND licenses against AT&T's successor-in-interest, Rembrandt.

Answer: Denied.

218.    Rembrandt has breached its obligations by refusing to offer a license in good faith and by failing to license on FRAND terms.

Answer: Denied.

219.    As a result of Rembrandt's breaches, Cablevision has been irreparably injured in its business or property through the loss of customers and potential customers, by the loss of goodwill and product image, and by the prospective damage to its business to the extent it relies upon the ATSC standard and continuing threat of patent infringement litigation.

Answer: Denied.

220.    As a result of Cablevision's injuries, Cablevision seeks specific performance of Rembrandt's contractual obligations to offer licenses in good faith and on FRAND terms.

Answer:  Admitted that Cablevision seeks specific performance but denied that it is entitled to any requested relief.  The remaining allegations of Paragraph 220 are denied.

221.    Cablevision has no adequate remedy at law.

Answer: Denied.

222.    In addition to an order requiring Rembrandt to specifically perform its contractual obligations, Cablevision also seeks damages for the injuries it has incurred and continues to incur, in an amount to be proven at trial.

Answer:  Admitted that Cablevision seeks specific performance and damages but denied that it is entitled to any relief whatsoever.

## FIFTH COUNTER-COUNTERCLAIM
### Declaration of Contractual Rights and Liabilities re ATSC

223.    Cablevision realleges and incorporates by reference Paragraphs 1 through 222 above, and all responses set forth above by Cablevision in its Reply to Rembrandt's Counterclaims and Affirmative Defenses.

Answer:  Rembrandt and Remstream repeat and re-allege their responses to paragraphs 1 through 222 above and their Counterclaims asserted against Cablevision. Cablevision Counter-Defendants attempt to incorporate by reference their Affirmative Defenses does not comply with Federal Rule of Civil Procedure 10(b) requiring a separate statement of a single set of circumstances, and is therefore too vague and general to permit or require a response. Rembrandt and Remstream deny the applicability of each and every Affirmative Defense.

224.    An actual controversy exists between Cablevision and Rembrandt regarding Cablevision's right to license the '627 Patent on FRAND terms.

Answer:  Admitted that an actual controversy exists between Cablevision and Rembrandt, but denied as stated with regard to "FRAND."

225.    Cablevision is entitled to a declaratory judgment that: (i) Cablevision is entitled to license the '627 Patent on FRAND terms; (ii) Rembrandt's refusal to provide FRAND licenses, despite its obligation to do so, is a breach of contract; (iii) Cablevision is a third-party beneficiary that has been damaged by Rembrandt's failure to comply with its contractual obligations and are entitled to enforce those obligations and to recover damages due to said breach of contract; and/or (iv) the claims of various patents allegedly owned by Rembrandt are unenforceable because Rembrandt has repudiated its obligation to and failed to license the technology covered by the '627 patent, if essential to the ATSC standard as Rembrandt contends, on FRAND terms.

Answer:  Denied.

## SIXTH COUNTER-COUNTERCLAIM
### Breach of Contract and Specific Performance re DOCSIS

226.    Cablevision realleges and incorporates by reference Paragraphs 1 through 225 above, and all responses set forth above Cablevision in its Reply to Rembrandt's Counterclaims and Affirmative Defenses.

Answer:  Rembrandt and Remstream repeat and re-allege their responses to paragraphs 1 through 225 above and their Counterclaims asserted against Cablevision.  Cablevision Counter-Defendants attempt to incorporate by reference their Affirmative Defenses does not comply with Federal Rule of Civil Procedure 10(b) requiring a separate statement of a single set of circumstances, and is therefore too vague and general to permit or require a response. Rembrandt and Remstream deny the applicability of each and every Affirmative Defense.

227.    Cablevision is an intended third-party beneficiary of the DOCSIS License Agreement entered into by various signatories, including █████████████████ Those who participated in the DOCSIS standard-setting process, and in particular the signatories to the DOCSIS License Agreement, intended all manufacturers and providers of DOCSIS-compliant equipment and services to have available to them such royalty-free licenses to patent claims deemed essential for compliance with DOCSIS, subject to the terms of the DOCSIS License Agreement, which would inure to the benefit of purchasers and operators of such DOCSIS-compliant equipment, including MSOs such as Cablevision. Cablevision has standing to enforce each DOCSIS License Agreement's signatory's promise to grant royalty-free licenses under the DOCSIS License Agreement.

Answer:  The first and last sentences are legal conclusions to which no response is required.  The remaining allegations of Paragraph 227 are denied.

228.    As set forth above, █████████ signed and was bound by the terms of the DOCSIS License Agreement.  Under those terms, █████████ and any of its affiliates agreed to grant a nontransferable, worldwide, nonexclusive, and royalty-free license to any of its patent claims deemed essential for DOCSIS compliance to CableLabs, which in turn sublicensed such rights to all other signatories to the DOCSIS License Agreement. 

Answer:  Admitted that █████████ is a party to a certain DOCSIS License Agreement, which is a writing that speaks for itself.  The alleged terms of such DOCSIS License Agreement are a matter of law to which no response is required.  The remaining allegations of Paragraph 228 are denied.

229.    As alleged above, Rembrandt assisted █████████ in obtaining CableLabs certification for modems that Rembrandt intended to resell. Rembrandt did so for the specific

purpose of partnering with ▓▓▓▓▓▓▓▓▓▓▓▓▓ rights under the DOCSIS License Agreement while attempting to avoid its corresponding obligation to grant a royalty free license under its own patents. Rembrandt engaged in this scheme to portray itself misleadingly as a true practicing entity in the cable modem business, solely for the purposes of seeking lost profits and/or injunctive relief from Cablevision, among others.

    Answer:  Denied.


    230.    Rembrandt has or had a relationship, both business and legal, with ▓▓▓▓▓▓ such that they effectively acted as, partners, joint venturers, alter egos of each other, and/or agent and principal. Alternatively, Rembrandt adopted, confirmed and ratified ▓▓▓▓▓▓ entering into the DOCSIS License Agreement when it entered into its business relationship with ▓▓▓▓▓▓.

    Answer:  Denied.


    231.    As a result, Rembrandt has been and continues to be bound by ▓▓▓▓▓▓ obligations under the DOCSIS License Agreement. Rembrandt has breached its obligations by refusing to offer in good faith a royalty-free license, as provided for under the DOCSIS License Agreement, to the patents it alleges are essential for DOCSIS compliance while simultaneously assuming ▓▓▓▓▓▓ rights under the DOCSIS License Agreement to royalty-free licenses to others' patents essential for compliance with the standard for purposes of portraying itself as a business competitor.

    Answer:  Denied.


    232.    As a result of Rembrandt's breaches, Cablevision has been irreparably injured or threatened with irreparable injury.

    Answer:  Denied.


    233.    As a result of Cablevision's injuries, Cablevision seeks specific performance of Rembrandt's contractual obligations to offer royalty-free licenses in good faith under the DOCSIS License Agreement.

    Answer:    Admitted that Cablevision seeks specific performance of Rembrandt's purported contractual obligations but denied that Cablevision is entitled to any relief whatsoever.


    234.    Cablevision has no adequate remedy at law.  In addition to an order requiring Rembrandt to specifically perform its contractual obligations, Cablevision also seeks damages for the injuries they have incurred and continue to incur, in an amount to be proven at trial.

Redacted Document – Publicly Filed

Answer:  Admitted that Cablevision seeks specific performance and damages but denied that Cablevision is entitled to any relief whatsoever.  The remaining allegations of Paragraph 234 are denied.

## SEVENTH COUNTER-COUNTERCLAIM
### Declaratory Judgment of Contractual Rights and Liabilities re DOCSIS

235.   Cablevision realleges and incorporates by reference Paragraphs 1 through 234 above, and all responses set forth above by Cablevision in its Reply to Rembrandt's Counterclaims and Affirmative Defenses.

Answer:  Rembrandt and Remstream repeat and re-allege their responses to paragraphs 1 through 234 above and their Counterclaims asserted against Cablevision.  Cablevision Counter-Defendants attempt to incorporate by reference their Affirmative Defenses does not comply with Federal Rule of Civil Procedure 10(b) requiring a separate statement of a single set of circumstances, and is therefore too vague and general to permit or require a response.  Rembrandt and Remstream deny the applicability of each and every Affirmative Defense.

236.   An actual controversy exists between Cablevision and Rembrandt regarding Cablevision's right to obtain royalty-free licenses to patent claims Rembrandt asserts are essential for compliance with DOCSIS under the DOCSIS License Agreement.

Answer:  Admitted.

237.   For the reasons set forth above, Cablevision is entitled to a declaratory judgment that: (1) Cablevision is entitled to a royalty-free licenses to patent claims deemed essential for compliance with DOCSIS under the DOCSIS License Agreement; (ii) Rembrandt's refusal to provide royalty-free licenses, despite its obligation to do so, is a breach of contract; (iii) Cablevision is a third-party beneficiary that has been damaged by Rembrandt's failure to comply with its contractual obligations and are entitled to enforce those obligations and to recover damages due to said breach of contract; (iv) Cablevision's customers have a right to use the technology licensed pursuant to the DOCSIS License Agreement by virtue of their relationship with Cablevision; and/or (v) the claims of various patents allegedly owned by Rembrandt are unenforceable because Rembrandt has repudiated its obligation to and failed to license the technology, which as Rembrandt contends, is essential for compliance with the DOCSIS standard.

Answer:  Denied.

Redacted Document – Publicly Filed

## EIGHTH COUNTER-COUNTERCLAIM
### Unfair Business Practices, Cal. Bus. & Prof. Code § 17200 re DOCSIS

238.    Cablevision realleges and incorporates by reference Paragraphs 1 through 237 above, and all responses set forth above by Cablevision in its Reply to Rembrandt's Counterclaims and Affirmative Defenses.

Answer:  Rembrandt and Remstream repeat and re-allege their responses to paragraphs 1 through 237 above and their Counterclaims asserted against Cablevision.  Cablevision Counter-Defendants attempt to incorporate by reference their Affirmative Defenses does not comply with Federal Rule of Civil Procedure 10(b) requiring a separate statement of a single set of circumstances, and is therefore too vague and general to permit or require a response. Rembrandt and Remstream deny the applicability of each and every Affirmative Defense.

239.    As alleged more fully above, Rembrandt has engaged in unfair, deceptive and/or unlawful business practices within the meaning of California Bus. & Prof. Code § 17200. These practices have occurred, at least in part, in California, and/or have affected California residents and consumers, or threaten to do so.

Answer:  Denied.

240.    Several of Rembrandt's illegal, unfair, and fraudulent acts have harmed and/or threaten to further harm California customers, consumers, and competition within California, including by increasing the prices California consumers pay for cable modems or decreasing the supply of cable modems, or threatening the same.

Answer:  Denied.

241.    Rembrandt has engaged in unfair business practices by, among other things, refusing to abide by its obligations under the DOCSIS License Agreement to offer royalty-free licenses any intellectual property that is asserted to be essential to the practice of the DOCSIS standard, while at the same time purporting to be a bona fide participant in the business of providing cable modems licensed under the DOCSIS License Agreement.

Answer:  Denied.

242.    Rembrandt has engaged in unlawful business practices by, among other things, failing to abide by its obligation to license any technology asserted to be essential to compliance with the DOCSIS standard.

Answer:  Denied.

243. Rembrandt has engaged in deceptive business practices by representing, or threatening to represent, itself as a purported bona fide cable modem provider when in fact its involvement in the cable modem business is for the purpose of generating evidence for this litigation. Rembrandt has also engaged in deceptive business practices by representing, or threatening to represent, itself as a purported bona fide cable modem provider when in fact the true participant in the cable modem business is ███████████ its business partner, joint venturer and/or agent.

Answer: Denied.

244. Cablevision has suffered actual injury, and is threatened with further actual injury unless Rembrandt is enjoined, as a result of the unfair, deceptive and unlawful business practices of Rembrandt described above.

Answer: Denied.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Cablevision Counter-Defendants' Counter-Counterclaims fail to state a claim upon which relief may be granted.

### Second Affirmative Defense

Cablevision Counter-Defendants' Counter-Counterclaims are barred, in whole or in part, by the doctrine of estoppel.

### Third Affirmative Defense

Cablevision Counter-Defendants' Counter-Counterclaims are barred, in whole or in part, by the doctrine of waiver.

### Fourth Affirmative Defense

Cablevision Counter-Defendants' Counter-Counterclaims are barred, in whole or in part, by applicable limitations doctrines, including the statute of limitations.

### Fifth Affirmative Defense

Cablevision Counter-Defendants' Counter-Counterclaims are based on a purported agreement to agree, which is unenforceable under applicable law.

Redacted Document – Publicly Filed

### Sixth Affirmative Defense

Cablevision Counter-Defendants' Counter-Counterclaims are based upon a purported agreement with open essential terms, which cannot be supplied under applicable law.

### Seventh Affirmative Defense

To the extent there was an enforceable promise, it was solely a promise to negotiate; there was no intention to permit any third party or a court to impose licensing terms.

### Eighth Affirmative Defense

Cablevision Counter-Defendants' Counter-Counterclaims are barred by the doctrines of laches.

### Ninth Affirmative Defense

Cablevision Counter-Defendants' Counter-Counterclaims fail as a matter of law based on a lack of contractual privity between Rembrandt and Cablevision Counter-Defendants involving any alleged contractually binding obligation entered into by AT&T and/or AT&T IPM.

### Tenth Affirmative Defense

Cablevision Counter-Defendants' Counter-Counterclaims fail as a matter of law because Cablevision Counter-Defendants materially breached and/or repudiated any express or implied contract, thereby excusing Rembrandt from any alleged obligation that it might otherwise have had.

### Eleventh Affirmative Defense

Cablevision Counter-Defendants are not entitled to the relief requested as a matter of law.

### Twelfth Affirmative Defense

Cablevision Counter-Defendants' Counter-Counterclaims fail, in whole or in part, because Cablevision Counter-Defendants failed to fulfill conditions precedent to any obligation to offer a license to it.

### Thirteenth Affirmative Defense

Cablevision Counter-Defendants' Counter-Counterclaims fail as a matter of law because neither Rembrandt nor Remstream are a signatory to, and are not bound by, the CableLabs' Data Over Cable Service Interface Specifications License Agreement.

Redacted Document – Publicly Filed

### Fourteenth Affirmative Defense

Cablevision Counter-Defendants' Counter-Counterclaims fail as a matter of law because CableLabs is a necessary party and has not been joined.

### Fifteenth Affirmative Defense

Cablevision Counter-Defendants' Counter-Counterclaims fail as a matter of law because the Cablevision Counter-Defendants' lack standing to assert such Counter-Counterclaims.

### Sixteenth Affirmative Defense

Rembrandt and Remstream reserve the right to assert additional and/or different affirmative defenses as discovery progresses, and hereby reserve the right to amend its reply to Cablevision Counter-Defendants' Counter-Counterclaims in support of any such defenses.

### PRAYER FOR RELIEF

WHEREFORE, Rembrandt and Remstream respectfully request: (i) that judgment be entered in their favor, and against Counter-Defendants, on Counter-Defendants' Counter-Counterclaims, and that Counter-Defendants not be awarded any relief in connection therewith; and (ii) that Rembrandt and Remstream be awarded all the relief sought in the Prayer for Relief of their Counterclaims, which is incorporated herein by reference.

Dated: May 22, 2008

CONNOLLY BOVE LODGE & HUTZ LLP

By: _/s/ Collins J. Seitz, Jr._
Collins J. Seitz, Jr. (#2237)
Francis DiGiovanni (#3189)
James D. Heisman (#2746)
Kristen Healey Cramer (#4512)
CONNOLLY BOVE LODGE & HUTZ LLP
1007 N. Orange Street
P.O. Box 2207
Wilmington, Delaware 19899
(302) 658-9141
cseitz@cblh.com
fdigiovanni@cblh.com
jheisman@cblh.com
kcramer@cblh.com

*Attorneys for Rembrandt Technologies, LP and
Rembrandt Technologies, LLC d/b/a Remstream*

612864

## CERTIFICATE OF SERVICE

I, Collins J. Seitz, Jr., hereby certify that on the 22nd day of May, 2008, a true

copy of the foregoing document was electronically filed with the Clerk of the Court using

CM/ECF which will send notification of such filing to the following and the document is

available for viewing and downloading from CM/ECF:

### BY E-MAIL

| | |
|---|---|
| Jack B. Blumenfeld<br>Karen Jacobs Louden<br>Rodger D. Smith II<br>Morris, Nichols, Arsht & Tunnell LLP<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>jblumenfeld@mnat.com<br>klouden@mnat.com<br>rsmith@mnat.com | John W. Shaw<br>Young, Conaway, Stargatt & Taylor<br>The Brandywine Building<br>1000 West Street, 17th Floor<br>P.O. Box 391<br>Wilmington, DE 19899-0391<br>jshaw@ycst.com |
| Richard K. Herrmann<br>Mary B. Matterer<br>Amy Arnott Quinlan<br>Morris James LLP<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801-1494<br>rherrmann@morrisjames.com | Richard D. Kirk<br>Scott G. Wilcox<br>Stephen B. Brauerman<br>Bayard, PA<br>222 Delaware Avenue, Suite 900<br>P.O. Box 25130<br>Wilmington, DE 19899<br>rkirk@bayardlaw.com<br>swilcox@bayardlaw.com<br>sbrauerman@bayardlaw.com |

Redacted Document – Publicly Filed

| | |
|---|---|
| Fredrick L. Cottrell, III<br>Kelly E. Farnan<br>Richards, Layton & Finger, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE 19801<br>cottrell@rlf.com<br>farnan@rlf.com | Peter J. Toren<br>Lawrence B. Goodwin<br>Monica V. Bhattacharyya<br>Stefan R. Stoyanov<br>Kasowitz, Benson, Torres & Friedman LLP<br>1633 Broadway<br>New York, NY 10019<br>ptoren@kasowitz.com<br>lgoodwin@kasowitz.com<br>mbhattacharyya@kasowitz.com<br>sstoyanov@kasowitz.com |
| Josh A. Krevitt<br>Charles J. Bourdreau<br>Gibson, Dunn & Crutcher LLP<br>200 Park Avenue, 47th Floor<br>New York, New York 10166-0193<br>jkrevitt@gibsondunn.com<br>cboudreau@gibsondunn.com | David Segal<br>Gibson, Dunn & Crutcher LLP<br>3161 Michelson Drive<br>Irvina, California 92612-4412<br>dsegal@gibsondunn.com |
| Amanda J. Tessar<br>Gibson, Dunn & Crutcher LLP<br>1801 California Street, Suite 4200<br>Denver, CO 80202-2642<br>atessar@gibsondunn.com | David S. Benyacar<br>Daniel L. Reisner<br>Kaye Scholer LLP<br>425 Park Avenue<br>New York, New York 10022<br>dbenyacar@kayescholer.com<br>dreisner@kayescholer.com |
| Matthew D. Powers<br>Edward R. Reines<br>Weil Gotshal & Manges LLP<br>201 Redwood Shores Parkway<br>Redwood Shores, CA 94065<br>matthew.powers@weil.com<br>edward.reines@weil.com | Robert A. Van Nest<br>Brian L. Ferrall<br>Daralyn J. Durie<br>Leo L. Lam<br>Matthew M. Werdegar<br>KEKER & VAN NEST LLP<br>710 Sansome Street<br>San Francisco, CA 94111<br>rvannest@kvn.com<br>bferrall@kvn.com<br>ddurie@kvn.com<br>llam@kvn.com<br>mwerdegar@kvn.com |

| | |
|---|---|
| John Desmarais<br>Kirkland & Ellis LLP<br>Citigroup Center<br>153 East 53rd Street<br>New York, New York 10022<br>jdesmarais@kirkland.com | Eric R. Lamison<br>Kirkland & Ellis LLP<br>555 California Street, Ste. 2700<br>San Francisco, CA 94104<br>elamison@kirkland.com |
| Mitchell Stockwell<br>Kilpatrick & Stockton LLP<br>110 Peachtree Street, N.E.<br>Suite 2800<br>Atlanta, GA 30309<br>MStockwell@KilpatrickStockton.com | Bradford P. Lyerla<br>Kevin D. Hogg<br>Charles E. Juister<br>Marshall, Gerstein & Borun LLP<br>6300 Sears Tower<br>233 South Wacker Drive<br>Chicago, IL 60606-6357<br>blyerla@marshallip.com<br>khogg@marshallip.com<br>cjuister@marshallip.com |
| Richard Brown<br>Day Pitney LLP<br>200 Campus Drive<br>Florham Park, NJ 07932<br>rbrown@daypitney.com | Gerald Levy<br>Day Pitney LLP<br>7 Times Square<br>New York, NY 10036<br>glevy@daypitney.com |
| Jonathan Tropp<br>Day Pitney LLP<br>One Canterbury Green<br>201 Broad Street<br>Stamford, CT 06901 | |

By:     */s/ Collins J. Seitz, Jr.*
        Collins J. Seitz, Jr. (#2237)
        cseitz@cblh.com

## CERTIFICATE OF SERVICE

I, Collins J. Seitz, Jr., hereby certify that on the 30th day of May, 2008, a true copy of the foregoing document was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the following and the document is available for viewing and downloading from CM/ECF:

### BY E-MAIL

| | |
|---|---|
| Jack B. Blumenfeld<br>Karen Jacobs Louden<br>Rodger D. Smith II<br>Morris, Nichols, Arsht & Tunnell LLP<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>jblumenfeld@mnat.com<br>klouden@mnat.com<br>rsmith@mnat.com | John W. Shaw<br>Young, Conaway, Stargatt & Taylor<br>The Brandywine Building<br>1000 West Street, 17th Floor<br>P.O. Box 391<br>Wilmington, DE 19899-0391<br>jshaw@ycst.com |
| Richard K. Herrmann<br>Mary B. Matterer<br>Amy Arnott Quinlan<br>Morris James LLP<br>500 Delaware Avenue, Suite 1500<br>Wilmington, DE 19801-1494<br>rherrmann@morrisjames.com | Richard D. Kirk<br>Scott G. Wilcox<br>Stephen B. Brauerman<br>Bayard, PA<br>222 Delaware Avenue, Suite 900<br>P.O. Box 25130<br>Wilmington, DE 19899<br>rkirk@bayardlaw.com<br>swilcox@bayardlaw.com<br>sbrauerman@bayardlaw.com |

| | |
|---|---|
| Fredrick L. Cottrell, III<br>Kelly E. Farnan<br>Richards, Layton & Finger, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE 19801<br>cottrell@rlf.com<br>farnan@rlf.com | Peter J. Toren<br>Lawrence B. Goodwin<br>Monica V. Bhattacharyya<br>Stefan R. Stoyanov<br>Kasowitz, Benson, Torres & Friedman LLP<br>1633 Broadway<br>New York, NY 10019<br>ptoren@kasowitz.com<br>lgoodwin@kasowitz.com<br>mbhattacharyya@kasowitz.com<br>sstoyanov@kasowitz.com |
| Josh A. Krevitt<br>Charles J. Bourdreau<br>Gibson, Dunn & Crutcher LLP<br>200 Park Avenue, 47th Floor<br>New York, New York 10166-0193<br>jkrevitt@gibsondunn.com<br>cboudreau@gibsondunn.com | David Segal<br>Gibson, Dunn & Crutcher LLP<br>3161 Michelson Drive<br>Irvina, California 92612-4412<br>dsegal@gibsondunn.com |
| Amanda J. Tessar<br>Gibson, Dunn & Crutcher LLP<br>1801 California Street, Suite 4200<br>Denver, CO 80202-2642<br>atessar@gibsondunn.com | David S. Benyacar<br>Daniel L. Reisner<br>Kaye Scholer LLP<br>425 Park Avenue<br>New York, New York 10022<br>dbenyacar@kayescholer.com<br>dreisner@kayescholer.com |
| Matthew D. Powers<br>Edward R. Reines<br>Weil Gotshal & Manges LLP<br>201 Redwood Shores Parkway<br>Redwood Shores, CA 94065<br>matthew.powers@weil.com<br>edward.reines@weil.com | Robert A. Van Nest<br>Brian L. Ferrall<br>Daralyn J. Durie<br>Leo L. Lam<br>Matthew M. Werdegar<br>KEKER & VAN NEST LLP<br>710 Sansome Street<br>San Francisco, CA 94111<br>rvannest@kvn.com<br>bferrall@kvn.com<br>ddurie@kvn.com<br>llam@kvn.com<br>mwerdegar@kvn.com |

| | |
|---|---|
| John Desmarais<br>Kirkland & Ellis LLP<br>Citigroup Center<br>153 East 53rd Street<br>New York, New York 10022<br>jdesmarais@kirkland.com | Eric R. Lamison<br>Kirkland & Ellis LLP<br>555 California Street, Ste. 2700<br>San Francisco, CA 94104<br>elamison@kirkland.com |
| Mitchell Stockwell<br>Kilpatrick & Stockton LLP<br>110 Peachtree Street, N.E.<br>Suite 2800<br>Atlanta, GA 30309<br>MStockwell@KilpatrickStockton.com | Bradford P. Lyerla<br>Kevin D. Hogg<br>Charles E. Juister<br>Marshall, Gerstein & Borun LLP<br>6300 Sears Tower<br>233 South Wacker Drive<br>Chicago, IL 60606-6357<br>blyerla@marshallip.com<br>khogg@marshallip.com<br>cjuister@marshallip.com |
| Richard Brown<br>Day Pitney LLP<br>200 Campus Drive<br>Florham Park, NJ 07932<br>rbrown@daypitney.com | Gerald Levy<br>Day Pitney LLP<br>7 Times Square<br>New York, NY 10036<br>glevy@daypitney.com |
| Jonathan Tropp<br>Day Pitney LLP<br>One Canterbury Green<br>201 Broad Street<br>Stamford, CT 06901 | |

By:  */s/ Collins J. Seitz, Jr.*
     Collins J. Seitz, Jr. (#2237)
     cseitz@cblh.com