IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: REMBRANDT TECHNOLOGIES, LP PATENT LITIGATION | MDL Docket No. 07-md-1848 (GMS) |
| MOTOROLA, INC., CISCO SYSTEMS, INC., SCIENTIFIC-ATLANTA, INC., ARRIS GROUP, INC., THOMSON, INC., AMBIT MICROSYSTEMS, INC., and NETGEAR, INC. | **REDACTED – PUBLIC VERSION** |
| Plaintiffs, | |
| v. | Civil Action No. 07-752-GMS |
| REMBRANDT TECHNOLOGIES, LP, | |
| Defendant. | |
| REMBRANDT TECHNOLOGIES, LP, and REMBRANDT TECHNOLOGIES, LLC d/b/a REMSTREAM, | |
| Counter-Plaintiffs, | |
| v. | Civil Action No. 07-752-GMS |
| MOTOROLA, INC., CISCO SYSTEMS, INC., SCIENTIFIC-ATLANTA, INC., ARRIS GROUP, INC., THOMSON, INC., AMBIT MICROSYSTEMS, INC., and NETGEAR, INC., TIME WARNER CABLE, INC., TIME WARNER CABLE LLC, TIME WARNER NEW YORK CABLE LLC, TIME WARNER ENTERTAINMENT-ADVANCE/NEWHOUSE PARTNERSHIP, TIME WARNER ENTERTAINMENT COMPANY, LP, COMCAST CORPORATION, COMCAST CABLE COMMUNICATIONS, LLC, CHARTER | |

COMMUNICATIONS OPERATING, LLC,                )
COXCOM, INC., CABLEVISION SYSTEMS             )
CORPORATION, ADELPHIA                         )
COMMUNICATIONS CORPORATION,                   )
CENTURY-TCI CALIFORNIA                        )
COMMUNICATIONS, LP, CENTURY-TCI               )
HOLDINGS, LLC, COMCAST OF                     )
FLORIDA/PENNSYLVANIA, L.P. (f/k/a             )
PARNASSOS, LP), COMCAST OF                    )
PENNSYLVANIA II, L.P. (f/k/a CENTURY-TCI      )
CALIFORNIA, L.P.), PARNASSOS                  )
COMMUNICATIONS, LP, ADELPHIA                  )
CONSOLIDATION, LLC, PARNASSOS                 )
HOLDINGS, LLC, WESTERN NY                     )
CABLEVISION, LP, and SHARP                    )
CORPORATION, and SHARP ELECTRONICS           )
CORPORATION,                                  )
                                             )
            Counter-Defendants.               )
                                             )
                                             )

## PLAINTIFFS' REPLY TO MAY 5, 2008 COUNTERCLAIMS OF REMBRANDT TECHNOLOGIES, LP AND REMBRANDT TECHNOLOGIES, LLC D/B/A REMSTREAM AND PLAINTIFFS' COUNTER-COUNTERCLAIMS

Plaintiffs Motorola, Inc. ("Motorola"), Cisco Systems, Inc. ("Cisco"), Scientific-Atlanta, Inc. ("Scientific-Atlanta"), ARRIS Group, Inc. ("ARRIS"), Thomson, Inc. ("Thomson"), Ambit Microsystems, Inc. ("Ambit") and NETGEAR, Inc. ("NETGEAR") (collectively "Plaintiffs" or "Plaintiffs/Counter-Defendants") reply to the May 5, 2008 Counterclaims of Rembrandt Technologies, LP ("Rembrandt") and Rembrandt Technologies, LLC ("Remstream") (collectively "Counter-Plaintiffs") (D.I. 193) as follows:

1.      Rembrandt is a limited partnership organized under the laws of the state of New Jersey with its principal place of business at 401 City Avenue, Suite 900, Bala Cynwyd, PA 19004.

**ANSWER:**    Upon information and belief, Plaintiffs/Counter-Defendants admit that Rembrandt is a limited partnership organized under the laws of the state of New Jersey with its principal place of business at 401 City Avenue, Suite 900, Bala Cynwyd, PA 19004.

2.    Rembrandt Technologies, LLC, a Delaware LLC, is wholly owned by Rembrandt and does business as "Remstream." Remstream has its headquarters at 401 City Avenue, Suite 900, Bala Cynwyd, PA 19004.

**ANSWER:**    Upon information and belief, Plaintiffs/Counter-Defendants admit that Rembrandt Technologies, LLC is also known as "Remstream." Upon information and belief, Plaintiffs/Counter-Defendants admit that Remstream has its headquarters at 401 City Avenue, Suite 900, Bala Cynwyd, PA 19004. Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the remaining allegations contained in paragraph 2 and accordingly deny the remaining allegations of paragraph 2.

3.    Rembrandt has granted Remstream the exclusive right under the '761, '234, '159, and '444 patents, to make, have made, import, sell, offer to sell, or otherwise distribute, DOCSIS 1.0/1.1, 2.0 and/or 3.0 compliant cable modems and/or EMTA cable modems.

**ANSWER:**    Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 3 and accordingly deny the allegations of paragraph 3.

4.    Plaintiff/counter-defendant Ambit MicroSystems, Inc. ("Ambit") is a California corporation with its principal place of business at 9570 La Costa Lane, Lone Tree, CO 80124.

**ANSWER:**    Admitted.

3

5.    Plaintiff/counter-defendant ARRIS Group, Inc. ("ARRIS") is a Delaware corporation with its principal place of business at 3871 Lakefield Drive, Suwanee, GA 30024.

**ANSWER:**    Admitted.

6.    Plaintiff/counter-defendant Cisco Systems, Inc. ("Cisco") is a California corporation with its principal place of business at 170 West Tasman Drive, San Jose, CA 95134.

**ANSWER:**    Admitted.

7.    Plaintiff/counter-defendant Motorola, Inc. ("Motorola") is a Delaware corporation with its principal place of business at 1303 Algonquin Road, Shaumburg [sic], IL 60196.

**ANSWER:**    Admitted.  Plaintiff/counter-defendant Motorola, Inc. is a Delaware corporation with its principal place of business at 1303 Algonquin Road, Schaumburg, IL 60196.

8.    Plaintiff/counter-defendant NETGEAR, Inc. ("NETGEAR") is a Delaware corporation with its principal place of business at 4500 Great America Parkway, Santa Clara, CA 95054.

**ANSWER:**    Admitted.

9.    Plaintiff/counter-defendant Scientific-Atlanta, Inc. ("Scientific-Atlanta") is a wholly-owned subsidiary of Plaintiff/Counter-Defendant Cisco and is a Georgia corporation with its principal place of business at 5030 Sugarloaf Parkway, Lawrenceville, GA 30044-2896.

**ANSWER:**    Admitted.

10.     Plaintiff/counter-defendant Thomson, Inc. ("Thomson") is a Delaware corporation with its principal place of business at 101 W. 103rd Street, INH 3340, Indianapolis, IN 46290.

**ANSWER:**     Admitted.

11.     Plaintiff/Counter-Defendants manufacture and/or sell cable equipment, including cable modems, to multiple system operators ("MSOs"), including but not limited to MSO Counter-Defendants.  MSO Counter-Defendants sell and/or lease some of the cable equipment and/or include the equipment in their networks for the provision of high speed internet, cable broadband, and/or other services.

**ANSWER:**     Plaintiffs/Counter-Defendants     admit     that     Plaintiff/Counter-Defendants manufacture and/or sell cable equipment, including cable modems, to multiple system operators ("MSOs"), including but not limited to MSO Counter-Defendants who may supply such equipment for use in cable systems.     Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the remaining allegations contained in paragraph 11 and accordingly deny the remaining allegations of paragraph 11.

12.     Counter-defendant Time Warner Cable, Inc. ("TWC") is a corporation organized under the laws of the state of Delaware with its principal place of business at 7910 Crescent Executive Drive, Suite 56, Charlotte, North Carolina 28217. TWC's registered agent for service of process in Delaware is The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

5

**ANSWER:**    Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 12 and accordingly deny the allegations of paragraph 12.

13.    Counter-defendant Time Warner Cable LLC ("TWCL") is a limited liability company organized under the laws of the state of Delaware with its principal place of business at 290 Harbor Drive, Stamford, Connecticut 06902. TWLC's registered agent for service of process is the Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

**ANSWER:**    Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 13 and accordingly deny the allegations of paragraph 13.

14.    Counter-defendant Time Warner NY Cable LLC ("TWNY") is a limited liability company organized under the laws of the state of Delaware with its principal place of business at 7910 Crescent Executive Drive, Suite 56, Charlotte, North Carolina 28217. TWNY's registered agent for service of process in Delaware is The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

**ANSWER:**    Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 14 and accordingly deny the allegations of paragraph 14.

15.    Counter-defendant Time Warner Entertainment-Advance/Newhouse Partnership ("TWEAN") is a New York partnership having its corporate headquarters at One Time Warner Center, New York, NY 10019.

**ANSWER:**    Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 15 and accordingly deny the allegations of paragraph 15.

16.    Counter-defendant Time Warner Entertainment Company, LP ("TWE") is a limited partnership organized under the laws of the state of Delaware with its principal place of business at 290 Harbor Drive, Stamford, Connecticut 06902 in care of Time Warner Cable. TWE's registered agent for service of process in Delaware is The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801

**ANSWER:**    Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 16 and accordingly deny the allegations of paragraph 16.

17.    Counter-defendant TWC is the direct or indirect parent of each of counter-defendants TWCL, TWNY, TWEAN and TWE.    Through one or more of its subsidiaries, affiliates, partners, or other related parties, TWC owns and/or operates cable systems throughout the United States.    TWCL, TWNY, TWEAN and TWE, each directly or through one or more subsidiaries, affiliates, partners, or other related parties, as set forth herein, have each committed and continue to commit tortuous acts of patent infringement.

7

**ANSWER:**    Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 17 and accordingly deny the allegations of paragraph 17.

18.    Counter-defendant Comcast Corporation is a corporation organized under the laws of the state of Pennsylvania with its principal place of business at 1500 Market Street, Philadelphia, Pennsylvania 19103.    Comcast Corporation is a national provider of cable television and internet products and services, and regularly conducts and transacts business in Delaware.

**ANSWER:**    Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 18 and accordingly deny the allegations of paragraph 18.

19.    Counter-defendant Comcast Cable Communications, LLC is a limited liability company organized under the laws of Delaware with its principal place of business at 1500 Market Street Philadelphia, Pennsylvania 19103.    Comcast Cable Communications, LLC's registered agent for service of process in Delaware is Comcast Capital Corporation, 1201 N. Market Street, Suite 1000, Wilmington, DE 19801.

**ANSWER:**    Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 19 and accordingly deny the allegations of paragraph 19.

20.    Counter-defendant Comcast Cable Communications Holdings, Inc. is a corporation organized under the law of the state of Delaware, having its principal place of

business at One Comcast Center, Philadelphia, PA 19103. Comcast Cable Communications Holdings, Inc.'s registered agent for service of process in Delaware is Comcast Capital Corporation, 1201 N. Market Street, Suite 1000, Wilmington, DE 19801.

**ANSWER:** Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 20 and accordingly deny the allegations of paragraph 20.

21. Counter-defendants Comcast Corporation, Comcast Cable Communications, LLC, and Comcast Cable Communications Holdings, Inc. are collectively referred to as "Comcast." Comcast is a national provider of cable television and internet products and services, and regularly conducts and transacts business in Delaware.

**ANSWER:** Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 21 and accordingly deny the allegations of paragraph 21.

22. Counter-defendant Charter Communications, Inc. is a corporation organized under the laws of the state of Delaware with its principal place of business at 12405 Powerscout Drive Ste. 100, St. Louis, Missouri 63131. Charter Communications, Inc. is a national provider of cable television and internet products and services, and regularly conducts and transacts business in Delaware. Charter Communications, Inc.'s registered agent for service of process in Delaware is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808

**ANSWER:**   Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 22 and accordingly deny the allegations of paragraph 22.

23.    Counter-defendant Charter Communications Operating, LLC is a limited liability company organized under the laws of the state of Delaware with its principal place of business at 12405 Powerscout Drive Ste. 100, St. Louis, Missouri 63131.   Charter Communications Operating, LLC is a subsidiary of Counter-Defendant Charter Communications, Inc. and is a national provider of cable television and internet products and services, and regularly conducts and transacts business in Delaware.   Charter Communications Operating, LLC's registered agent for service of process in Delaware is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

**ANSWER:**   Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 23 and accordingly deny the allegations of paragraph 23.

24.    Counter-defendant Coxcom, Inc. is a corporation organized under the laws of the state of Delaware with its principal place of business at 1400 Lake Hearn Drive, Atlanta, Georgia 30319.   Coxcom, Inc. is a national provider of cable television and internet products and services, and regularly conducts and transacts business in Delaware.   Coxcom, Inc.'s registered agent for service of process in Delaware is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

**ANSWER:**   Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 24 and accordingly deny the allegations of paragraph 24.

25.   Counter-defendant CSC Holdings, Inc. is a corporation organized under the laws of the state of Delaware with its principal place of business at 1111 Stewart Avenue, Bethpage, New York 11714. CSC Holdings, Inc.'s registered agent for service of process in Delaware is The Prentice-Hall Corporation System Inc., 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

**ANSWER:**   Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 25 and accordingly deny the allegations of paragraph 25.

26.   Counter-defendant Cablevision Systems Corporation is a corporation organized under the laws of the state of Delaware with its principal place of business at 1111 Stewart Avenue, Bethpage, New York 11714. Cablevision Systems Corporation's registered agent for service of process in Delaware is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

**ANSWER:**   Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 26 and accordingly deny the allegations of paragraph 26.

27.   Counter-defendant Adelphia Communications Corporation ("ACC") is a corporation organized under the laws of the state of Delaware. On June 25, 2002, ACC filed a

11

petition in bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York in a case captioned *In re Adelphia Communications Corporation*, Case No. 02-41729 (REG). That case remains pending in the bankruptcy court. ACC's principal place of business on the Petition Date was located in Coudersport, Pennsylvania and is currently located in Greenwood Village, Colorado. ACC was one of the leading cable and telecommunication companies in the United States. After seeking bankruptcy protection on June 25, 2002, ACC continued to provide cable internet and television services to consumers throughout the United States until the sale of substantially all of its assets on July 31, 2006. ACC's registered agent for service of process in Delaware is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

**ANSWER:**    Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 27 and accordingly deny the allegations of paragraph 27.

28.    Counter-defendant Century-TCI California Communications, LP is a partnership organized under the laws of the state of Delaware. Century-TCI California Communications, LP is an affiliate of ACC. On June 25, 2002, Century-TCI California Communications, LP filed a petition in bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York. Century-TCI California Communications, LP's bankruptcy proceedings are jointly administered with *In re Adelphia Communications Corporation*, Case No. 02-41729 (REG). Century-TCI California Communications, LP's registered agent for service of process in Delaware is Comcast Capital Corporation, 1201 N. Market Street, Suite 1000, Wilmington, DE 19081.

**ANSWER:**    Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 28 and accordingly deny the allegations of paragraph 28.

29.    Counter-defendant Century-TCI Holdings, LLC is a corporation organized under the laws of the state of Delaware. Century-TCI Holdings, LLC is an affiliate of ACC. On June 25, 2002, Century-TCI California Communications, LP filed a petition in bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York. Century-TCI Holdings, LLC's bankruptcy proceedings are jointly administered with *In re Adelphia Communications Corporation*, Case No. 02-41729 (REG). Century-TCI Holdings, LLC's registered agent for service of process in Delaware is Comcast Capital Corporation, 1201 N. Market Street, Suite 1000, Wilmington, DE 19801.

**ANSWER:**    Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 29 and accordingly deny the allegations of paragraph 29.

30.    Counter-defendant Comcast of Florida/Pennsylvania, L.P. (f/k/a Parnassos, LP) is a partnership organized under the laws of the state of Delaware. Parnassos, LP was or is an affiliate of ACC. On June 25, 2002, Parnassos, LP filed a petition in bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York. Parnassos, LP's bankruptcy proceedings are jointly administered with *In re Adelphia Communications Corporation*, Case No. 02-41729 (REG). Comcast of Florida/Pennsylvania, L.P.'s registered agent for service of process in Delaware is Comcast Capital Corporation, 1201 N. Market Street, Suite 1000, Wilmington, DE 19801.

**ANSWER:**     Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 30 and accordingly deny the allegations of paragraph 30.

31.     Counter-defendant Comcast of Pennsylvania II, L.P. (f/k/a Century-TCI California, L.P.), is a partnership organized under the laws of the state of Delaware. Century-TCI California, L.P. was or is an affiliate of ACC. On June 25, 2002, Century-TCI California, L.P. filed a petition in bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York. Century-TCI California, LP's bankruptcy proceedings are jointly administered with *In re Adelphia Communications Corporation*, Case No. 02-41729 (REG). Comcast of Pennsylvania II, L.P.'s registered agent for service of process in Delaware is Comcast Capital Corporation, 1201 N. Market Street, Suite 1000, Wilmington, DE 19801.

**ANSWER:**     Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 31 and accordingly deny the allegations of paragraph 31.

32.     Counter-defendant Parnassos Communications, LP is a partnership organized under the laws of the state of Delaware. Parnassos Communications, LP is an affiliate of ACC. On June 25, 2002, Parnassos Communications, LP filed a petition in bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York. Parnassos Communications, LP's bankruptcy proceedings are jointly administered with *In re Adelphia Communications Corporation*, Case No. 02-41729 (REG). Parnassos Communications, LP's registered agent for service of process in Delaware is Comcast Capital Corporation, 1201 N. Market Street, Suite 1000, Wilmington, DE 19801.

14

**ANSWER:**   Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 32 and accordingly deny the allegations of paragraph 32.

33.     Counter-defendant Adelphia Consolidation, LLC, into which Parnassos Distribution Company I, LLC, Parnassos Distribution Company II, LLC, and Century-TCI Distribution Company, LLC, were merged, is a limited liability company organized under the laws of the state of Delaware.  Parnassos Distribution Company I, LLC, Parnassos Distribution Company, II, LLC, and Century-TCI Distribution Company, LLC were affiliates of ACC.  On June 25, 2002, Century-TCI Distribution Company, LLC filed a petition in bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York.  On October 6, 2005, Parnassos Distribution Company I, LLC, and Parnassos Distribution Company, II, LLC filed petitions in bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York. Parnassos Distribution Company I, LLC's, Parnassos Distribution Company II, LLC's, and Century-TCI Distribution Company, LLC's bankruptcy proceedings are jointly administered with *In re Adelphia Communications Corporation*, Case No. 02-41729 (REG).  Adelphia Consolidation, LLC's registered agent for service of process in Delaware is Corporation service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

**ANSWER:**   Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 33 and accordingly deny the allegations of paragraph 33.

34.    Counter-defendant Parnassos Holdings, LLC, is a corporation organized under the laws of the state of Delaware.  Parnassos Holdings, LLC is an affiliate of ACC.  On June 25, 2002, Parnassos Holdings, LLC filed a petition in bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York.  Parnassos Holdings, LLC's bankruptcy proceedings are jointly administered with *In re Adelphia Communications Corporation*, Case No. 02-41729 (REG).  Parnassos Holdings, LLC's registered agent for service of process in Delaware is Comcast Capital Corporation, 1201 N. Market Street, Suite 1000, Wilmington, DE 19801.

**ANSWER:**    Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 34 and accordingly deny the allegations of paragraph 34.

35.    Counter-defendant Western NY Cablevision, LP is a partnership organized under the laws of the state of Delaware.  Western NY Cablevision, LP is an affiliate of ACC.  On June 25, 2002, Western NY Cablevision, LP filed a petition in bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York.  Western NY Cablevision, LP's bankruptcy proceedings are jointly administered with *In re Adelphia Communications Corporation*, Case No. 02-41729 (REG).  Western NY Cablevision, LP's registered agent for service of process in Delaware is Comcast Capital Corporation, 1201 N. Market Street, Suite 1000, Wilmington, DE 19801.

**ANSWER:**    Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 35 and accordingly deny the allegations of paragraph 35.

36.    Counter-defendants ACC, Comcast of Florida/Pennsylvania, L.P. (f/k/a Parnassos, LP), Comcast of Pennsylvania II, L.P. (f/k/a Century-TCI California, L.P.), Century-TCI California Communications, LP, Century-TCI Holdings, LLC, Parnassos Communications, LP, Adelphia Consolidation, LLC, Parnassos Holdings, LLC, and Western NY Cablevision, LP, are herein referred to as the "ACC-Affiliated Counter-Defendants." On September 13, 2006, Rembrandt commenced an adversary proceeding (the "Adversary Proceeding") against the ACC-Affiliated Counter-Defendants (or, in the case of Adelphia Consolidation, LLC, Rembrandt commenced an adversary proceeding against predecessor entities Parnassos Distribution Company I LLC, Parnassos Distribution Company II LLC, and Century-TCI Distribution Company LLC) and filed an administrative proof of claim (the "Proof of Claim") against the ACC-Affiliated Counter-Defendants (or their predecessor entities) in each case in the Bankruptcy Court for the Southern District of New York in which the ACC-Affiliated Counter-Defendants' (or their predecessor entities') Chapter 11 cases were pending. In asserting the causes of action against the ACC-Affiliated Counter-Defendants that are set forth in the Counterclaim, the Counterclaim Plaintiffs intend to assert, and do assert, the same causes of action that Rembrandt previously asserted against the ACC-Affiliated Counter-Defendants (or their predecessor entities) in the Adversary Proceeding that are subject to the Proof of Claim and seek the same recovery against the ACC-Affiliated Counter-Defendants' bankruptcy estates as was the subject of the Proof of Claim.

**ANSWER:**    Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 36 and accordingly deny the allegations of paragraph 36.

17

37.    Counter-defendant Sharp Corporation is a corporation existing under the laws of Japan with a principal place of business in Osaka, Japan.

**ANSWER:**    Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 37 and accordingly deny the allegations of paragraph 37.

38.    Counter-defendant Sharp Electronics Corporation is a corporation existing under the laws of New York with a principal place of business in Mahway [sic], NJ. Sharp Electronics Corporation is a wholly-owned subsidiary of Sharp Corporation. Sharp Corporation and Sharp Electronic Corporation will be collectively referred to as "Sharp."

**ANSWER:**    Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 38 and accordingly deny the allegations of paragraph 38.

### JURISDICTION AND VENUE

39.    This is an action for patent infringement, arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq*.

**ANSWER:**    Plaintiffs/Counter-Defendants admit that the Counterclaim purports to recite an action arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq*.

40.    Subject matter jurisdiction is proper in this court under 28 U.S.C. §§ 1331 and 1338(a).

**ANSWER:**   Admitted with respect to Plaintiffs/Counter-Defendants' declaratory judgment claims against Rembrandt Technologies, LP.   Due to standing issues regarding the counterclaims, Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the remaining allegations contained in paragraph 38 and accordingly deny the remaining allegations of paragraph 38.

41.    This Court has personal jurisdiction over Plaintiffs/Counter-Defendants because they have submitted to the jurisdiction of this Court by filing the instant action; in addition, the Court has personal jurisdiction over Plaintiffs/Counter-Defendants because they have committed acts of patent infringement in this judicial district, are Delaware entities, and/or have other sufficient contacts with Delaware.

**ANSWER:**   Plaintiffs/Counter-Defendants admit that this Court has personal jurisdiction over the Plaintiffs/Counter-Defendants in this specific case because they have submitted to the jurisdiction of this Court over this patent dispute by filing the instant action.  Plaintiffs/Counter-Defendants deny the remaining allegations contained in paragraph 41.

42.    This Court has personal jurisdiction over MSO Counter-Defendants and Sharp because they either have previously availed themselves of the Court's jurisdiction, are Delaware entities, have property, offices, or personnel in Delaware, have committed acts of patent infringement in this judicial district, regularly transact business in Delaware, and/or have other sufficient contacts with Delaware.

**ANSWER:**   Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the allegations contained in paragraph 42 and accordingly deny the allegations of paragraph 42.

43.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b), (c), and 1400(b).

**ANSWER:**    Admitted.

## COUNT I - INFRINGEMENT OF U.S. PATENT NO. 4,937,819

44.     Rembrandt realleges and incorporates herein by reference the allegations stated in paragraphs 1-43 of this Counterclaim.

**ANSWER:**    Plaintiffs/Counter-Defendants incorporate the answers provided to paragraphs 1-43 as though fully stated herein.

45.     Rembrandt is the owner of all right, title, and interest, including the right to sue, enforce, and recover damages for all infringements, of U.S. Patent No. 4,937,819, entitled "Time Orthogonal Multiple Virtual DCE Device for Use in Analog and Digital Networks" (the "'819 patent") (Exhibit A to Plaintiff/Counter-Defendants' Complaint).

**ANSWER:**    Plaintiffs/Counter-Defendants admit that on its face, the '819 patent is entitled "Time Orthogonal Multiple Virtual DCE for Use in Analog and Digital Networks" and was attached as Exhibit A to Plaintiff/Counter-Defendants' Complaint.    Plaintiffs/Counter-Defendants lack knowledge or information sufficient to deny or admit the remaining allegations contained in paragraph 43 and accordingly deny the remaining allegations of paragraph 45.

46.     The '819 patent was duly and legally issued by the United States Patent and Trademark Office on June 26, 1990.

**ANSWER:**    Plaintiffs/Counter-Defendants admit that on its face the '819 patent recites an issuance date of June 26, 1990.  Plaintiffs/Counter-Defendants deny the remaining allegations of paragraph 46.

47.    Plaintiffs/Counter-Defendants are manufacturers of cable equipment, which equipment is sold to MSOs, including MSO Counter-Defendants, which, in turn, sell and/or lease some of that equipment and, additionally, use such equipment, throughout the United States in the operation of their cable networks.

**ANSWER:**    Plaintiffs/Counter-Defendants    admit    that    Plaintiff/Counter-Defendants manufacture and/or sell cable equipment to multiple system operators ("MSOs"), including MSO Counter-Defendants, and that such equipment may be used in the MSO Counter-Defendants' cable systems.  Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the remaining allegations contained in paragraph 47 and accordingly deny the remaining allegations of paragraph 47.

48.    Upon information and belief, Plaintiffs/Counter-Defendants have indirectly infringed, and are continuing to indirectly infringe, the '819 patent by practicing or causing others to practice (by inducement and/or contributorily) the inventions claimed in the '819 patent, in this district or otherwise within the United States.  For example, upon information and belief, Plaintiffs/Counter-Defendants have indirectly infringed and continue to indirectly infringe the '819 patent by their manufacture and sale of cable equipment to cable MSOs for inclusion into the MSOs' cable networks for the specific provision of high speed internet, cable broadband, and/or other services.

**ANSWER:**    Denied.

21

49.     Upon information and belief, MSO Counter-Defendants, excepting ACC-Affiliated Counter-Defendants, have directly infringed, and are continuing to directly infringe, the '819 patent by practicing the inventions claimed in the '819 patent, in this district or otherwise within the United States.  For example, upon information and belief, MSO Counter-Defendants, excepting ACC-Affiliated Counter-Defendants, have directly infringed and continue to directly infringe the '819 patent by including Plaintiff/Counter-Defendants' cable equipment in MSO Counter-Defendant's cable networks for the specific provision of high speed internet, cable broadband, and/or other services.

**ANSWER:**     Denied.

50.     Upon information and belief, Plaintiffs/Counter-Defendants and MSO Counter-Defendants, excepting ACC-Affiliated Counter-Defendants, will continue to infringe the '819 patent unless enjoined by this Court.  Upon information and belief, such infringement has been, and will continue to be, willful, making this an exceptional case and entitling Rembrandt to increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

**ANSWER:**     Denied.

### COUNT II - INFRINGEMENT OF U.S. PATENT NO. 5,008,903

51.     Rembrandt realleges and incorporates herein by reference the allegations stated in paragraphs 1-50 of this Counterclaim.

**ANSWER:**     Plaintiffs/Counter-Defendants incorporate the answers provided to paragraphs 1-50 as though fully stated herein.

22

52.    Rembrandt is the owner of all right, title, and interest, including the right to sue, enforce, and recover damages for all infringements, of U.S. Patent No. 5,008,903, entitled "Adaptive Transmit Pre-Emphasis for Digital Modem Computed from Noise Spectrum" (the "'903 patent") (Exhibit B to Plaintiff/Counter-Defendants' Complaint).

**ANSWER:**    Plaintiffs/Counter-Defendants admit that on its face, the '903 patent is entitled "Adaptive Transmit Pre-Emphasis for Digital Modem Computed from Noise Spectrum" and was attached as Exhibit B to Plaintiff/Counter-Defendants' Complaint.    Plaintiffs/Counter-Defendants lack knowledge or information sufficient to deny or admit the remaining allegations contained in paragraph 52 and accordingly deny the remaining allegations of paragraph 52.

53.    The '903 patent was duly and legally issued by the United States Patent and Trademark Office on April 16, 1991.

**ANSWER:**    Plaintiffs/Counter-Defendants admit that on its face the '903 patent recites an issuance date of April 16, 1991.  Plaintiffs/Counter-Defendants deny the remaining allegations of paragraph 53.

54.    Plaintiffs/Counter-Defendants are manufacturers of cable equipment, which equipment is sold to MSOs, including MSO Counter-Defendants, which, in turn, sell and/or lease some of that equipment and, additionally, use such equipment, throughout the United States in the operation of their cable networks.

**ANSWER:**    Plaintiffs/Counter-Defendants    admit    that    Plaintiff/Counter-Defendants manufacture and/or sell cable equipment to multiple system operators ("MSOs"), including MSO Counter-Defendants, and that such equipment may be used in the MSO Counter-Defendants'

23

cable systems. Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the remaining allegations contained in paragraph 54 and accordingly deny the remaining allegations of paragraph 54.

55.    Upon information and belief, Plaintiffs/Counter-Defendants have indirectly infringed, and are continuing to indirectly infringe, the '903 patent by practicing or causing others to practice (by inducement and/or contributorily) the inventions claimed in the '903 patent, in this district or otherwise within the United States. For example, upon information and belief, Plaintiffs/Counter-Defendants have infringed and continue to infringe the '903 patent by their manufacture and sale of cable equipment to MSOs for inclusion into the MSOs' cable networks for the specific provision of high speed internet, cable broadband, and/or other services.

**ANSWER:**    Denied.

56.    Upon information and belief, MSO Counter-Defendants, excepting ACC-Affiliated Counter-Defendants, have directly infringed, and are continuing to directly infringe, the '903 patent by practicing the inventions claimed in the '903 patent, in this district or otherwise within the United States. For example, upon information and belief, MSO Counter-Defendants, excepting ACC-Affiliated Counter-Defendants, have directly infringed and continue to directly infringe the '903 patent by including Plaintiff/Counter-Defendants' cable equipment in MSO Counter-Defendant cable networks for the specific provision of high speed internet, cable broadband, and/or other services.

**ANSWER:**    Denied.

24

57.     Upon information and belief, Plaintiffs/Counter-Defendants and MSO Counter-Defendants, excepting ACC-Affiliated Counter-Defendants, will continue to infringe the '903 patent unless enjoined by this Court. Upon information and belief, such infringement has been, and will continue to be, willful, making this an exceptional case and entitling Rembrandt to increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

**ANSWER:**    Denied.

### COUNT III - INFRINGEMENT OF U.S. PATENT NO. 5,710,761

58.     Rembrandt and Remstream reallege and incorporate herein by reference the allegations stated in paragraphs 1-57 of this Counterclaim.

**ANSWER:**    Plaintiffs/Counter-Defendants incorporate the answers provided to paragraphs 1-57 as though fully stated herein.

59.     Rembrandt is the owner, and Remstream is the exclusive licensee, of U.S. Patent No. 5,710,761, entitled "Error Control Negotiation Based on Modulation" (the "'761 patent") (Exhibit C to Plaintiff/Counter-Defendants' Complaint).

**ANSWER:**    Plaintiffs/Counter-Defendants admit that on its face, the '761 patent is entitled "Error Control Negotiation Based on Modulation" and was attached as Exhibit C to Plaintiff/Counter-Defendants' Complaint. Plaintiffs/Counter-Defendants lack knowledge or information sufficient to deny or admit the remaining allegations contained in paragraph 59 and accordingly deny the remaining allegations of paragraph 59.

60.     The '761 patent was duly and legally issued by the United States Patent and Trademark Office on January 20, 1998.

**ANSWER:**    Plaintiffs/Counter-Defendants admit that on its face the '761 patent recites an issuance date of January 20, 1998. Plaintiffs/Counter-Defendants deny the remaining allegations of paragraph 60.

61.     Plaintiffs/Counter-Defendants are manufacturers of cable equipment, which equipment is sold to MSOs, including MSO Counter-Defendants, which, in turn, sell and/or lease some of that equipment throughout the United States.

**ANSWER:**    Plaintiffs/Counter-Defendants    admit    that    Plaintiff/Counter-Defendants manufacture and/or sell cable equipment to multiple system operators ("MSOs"), including MSO Counter-Defendants, and that such equipment may be used in the MSO Counter-Defendants' cable systems. Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the remaining allegations contained in paragraph 61 and accordingly deny the remaining allegations of paragraph 61.

62.     Plaintiffs/Counter-Defendants have directly and indirectly infringed, and are continuing to directly and indirectly infringe, the '761 patent by practicing or causing others to practice (by inducement and/or contributorily) the inventions claimed in the '761 patent, in this district or otherwise within the United States.

**ANSWER:**    Denied.

26

63.    Upon information and belief, MSO Counter-Defendants have directly infringed, and/or are continuing to directly infringe, the '761 patent by practicing the inventions claimed in the '761 patent, in this district or otherwise within the United States.

**ANSWER:**    Denied.

64.    Upon information and belief, Plaintiffs/Counter-Defendants and MSO Counter-Defendants (excepting ACC-Affiliated Counter-Defendants) will continue to infringe the '761 patent unless enjoined by this Court.

**ANSWER:**    Denied.

65.    Upon information and belief, the infringement by Plaintiffs/Counter-Defendants and MSO Counter-Defendants has been, and/or will continue to be, willful, making this an exceptional case and entitling Counter-Plaintiffs to increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

**ANSWER:**    Denied.

### COUNT IV - INFRINGEMENT OF U.S. PATENT NO. 5,719,858

66.    Rembrandt realleges and incorporates herein by reference the allegations stated in paragraphs 1-65 of this Counterclaim.

**ANSWER:**    Plaintiffs/Counter-Defendants incorporate the answers provided to paragraphs 1-65 as though fully stated herein.

67.    Rembrandt is the owner of all right, title, and interest, including the right to sue, enforce, and recover damages for all infringements, of U.S. Patent No. 5,719,858, entitled

"Time-Division Multiple-Access Method for Packet Transmission on Shared Synchronous Serial Buses" (the "'858 patent") (Exhibit D to Plaintiff/Counter-Defendants' Complaint).

**ANSWER:**    Plaintiffs/Counter-Defendants admit that on its face, the '858 patent is entitled "Time-Division Multiple-Access Method for Packet Transmission on Shared Synchronous Serial Buses" and was attached as Exhibit D to Plaintiff/Counter-Defendants' Complaint. Plaintiffs/Counter-Defendants lack knowledge or information sufficient to deny or admit the remaining allegations contained in paragraph 67 and accordingly deny the remaining allegations of paragraph 67.

68.    The '858 patent was duly and legally issued by the United States Patent and Trademark Office on February 17, 1998.

**ANSWER:**    Plaintiffs/Counter-Defendants admit that on its face the '858 patent recites an issuance date of February 17, 1998.    Plaintiffs/Counter-Defendants deny the remaining allegations of paragraph 68.

69.    Plaintiffs/Counter-Defendants are manufacturers of cable equipment, which equipment is sold to MSOs, including MSO Counter-Defendants, which, in turn, sell and/or lease some of that equipment and, additionally, use such equipment, throughout the United States in the operation of their cable networks.

**ANSWER:**    Plaintiffs/Counter-Defendants    admit    that    Plaintiff/Counter-Defendants manufacture and/or sell cable equipment to multiple system operators ("MSOs"), including MSO Counter-Defendants, and that such equipment may be used in the MSO Counter-Defendants' cable systems.  Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit

28

or deny the truth of the remaining allegations contained in paragraph 69 and accordingly deny the remaining allegations of paragraph 69.

70.    On information and belief, Plaintiffs/Counter-Defendants have indirectly infringed, and are continuing to indirectly infringe, the '858 patent by practicing or causing others to practice (by inducement and/or contributorily) the inventions claimed in the '858 patent, in this district or otherwise within the United States.  For example, upon information and belief, Plaintiffs/Counter-Defendants have infringed and continue to infringe the '858 patent by their manufacture and sale of cable equipment to MSOs for inclusion into the MSOs' cable networks for the specific provision of high speed internet, cable broadband, and/or other services.

**ANSWER:**    Denied.

71.    Upon information and belief, MSO Counter-Defendants, excepting ACC-Affiliated Counter-Defendants, have directly infringed, and are continuing to directly infringe, the '858 patent by practicing the inventions claimed in the '858 patent, in this district or otherwise within the United States.  For example, upon information and belief, MSO Counter-Defendants, excepting ACC-Affiliated Counter-Defendants, have directly infringed and continue to directly infringe the '858 patent by including Plaintiff/Counter-Defendants' cable equipment in MSO Counter-Defendants' cable networks for the specific provision of high speed internet, cable broadband, and/or other services.

**ANSWER:**    Denied.

72.     Upon information and belief, Plaintiffs/Counter-Defendants and MSO Counter-Defendants, excepting ACC-Affiliated Counter-Defendants, will continue to infringe the '858 patent unless enjoined by this Court. Upon information and belief, such infringement has been, and will continue to be, willful, making this an exceptional case and entitling Rembrandt to increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

**ANSWER:**     Denied.

### COUNT V - INFRINGEMENT OF U.S. PATENT NO. 5,778,234

73.     Rembrandt and Remstream reallege and incorporate herein by reference the allegations stated in paragraphs 1-72 of this Counterclaim.

**ANSWER:**     Plaintiffs/Counter-Defendants incorporate the answers provided to paragraphs 1-72 as though fully stated herein.

74.     Rembrandt is the owner, and Remstream is the exclusive licensee, of U.S. Patent No. 5,778,234, entitled "Method for Downloading Programs" (the "'234 patent") (Exhibit E to Plaintiff/Counter-Defendants' Complaint).

**ANSWER:**     Plaintiffs/Counter-Defendants admit that on its face, the '234 patent is entitled "Method for Downloading Programs" and was attached as Exhibit E to Plaintiff/Counter-Defendants' Complaint. Plaintiffs/Counter-Defendants lack knowledge or information sufficient to deny or admit the remaining allegations contained in paragraph 74 and accordingly deny the remaining allegations of paragraph 74.

75.    The '234 patent was duly and legally issued by the United States Patent and Trademark Office on July 7, 1998.

**ANSWER:**    Plaintiffs/Counter-Defendants admit that on its face the '234 patent recites an issuance date of July 7, 1998. Plaintiffs/Counter-Defendants deny the remaining allegations of paragraph 75.

76.    Plaintiffs/Counter-Defendants are manufacturers of cable equipment, which equipment is sold to MSOs, including MSO Counter-Defendants, which, in turn, sell and/or lease some of that equipment throughout the United States.

**ANSWER:**    Plaintiffs/Counter-Defendants    admit    that    Plaintiff/Counter-Defendants manufacture and/or sell cable equipment to multiple system operators ("MSOs"), including MSO Counter-Defendants, and that such equipment may be used in the MSO Counter-Defendants' cable systems. Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the remaining allegations contained in paragraph 76 and accordingly deny the remaining allegations of paragraph 76.

77.    Plaintiffs/Counter-Defendants have directly and indirectly infringed, and are continuing to directly and indirectly infringe, the '234 patent by practicing or causing others to practice (by inducement and/or contributorily) the inventions claimed in the '234 patent, in this district or otherwise within the United States.

**ANSWER:**    Denied.

78.    Upon information and belief, MSO Counter-Defendants have directly infringed, and/or are continuing to directly infringe, the '234 patent by practicing the inventions claimed in the '234 patent, in this district or otherwise within the United States.

**ANSWER:**    Denied.

79.    Upon information and belief, Plaintiffs/Counter-Defendants and MSO Counter-Defendants (excepting ACC-Affiliated Counter-Defendants) will continue to infringe the '234 patent unless enjoined by this Court.

**ANSWER:**    Denied.

80.    Upon information and belief, the infringement by Plaintiffs/Counter-Defendants and MSO Counter-Defendants has been, and/or will continue to be, willful, making this an exceptional case and entitling Counter-Plaintiffs to increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

**ANSWER:**    Denied.

## COUNT VI - INFRINGEMENT OF U.S. PATENT NO. 5,852,631

81.    Rembrandt realleges and incorporates herein by reference the allegations stated in paragraphs 1-80 of this Counterclaim.

**ANSWER:**    Plaintiffs/Counter-Defendants incorporate the answers provided to paragraphs 1-80 as though fully stated herein.

82.    Rembrandt is the owner of all right, title, and interest, including the right to sue, enforce, and recover damages for all infringements, of U.S. Patent No. 5,852,631, entitled

"System and Method for Establishing Link Layer Parameters based on Physical Layer Modulation" (the "'631 patent") (Exhibit F to Plaintiff/Counter-Defendants' Complaint).

**ANSWER:**  Plaintiffs/Counter-Defendants admit that on its face, the '631 patent is entitled "System and Method for Establishing Link Layer Parameters Based on Physical Layer Modulation" and was attached as Exhibit F to Plaintiff/Counter-Defendants' Complaint. Plaintiffs/Counter-Defendants lack knowledge or information sufficient to deny or admit the remaining allegations contained in paragraph 82 and accordingly deny the remaining allegations of paragraph 82.

83.    The '631 patent was duly and legally issued by the United States Patent and Trademark Office on December 22, 1998.

**ANSWER:**  Plaintiffs/Counter-Defendants admit that on its face the '631 patent recites an issuance date of December 22, 1998.  Plaintiffs/Counter-Defendants deny the remaining allegations of paragraph 83.

84.    Plaintiffs/Counter-Defendants are manufacturers of cable equipment, which equipment is sold to MSOs, including MSO Counter-Defendants, which, in turn, sell and/or lease some of that equipment and, additionally, use such equipment, throughout the United States in the operation of their cable networks.

**ANSWER:**  Plaintiffs/Counter-Defendants    admit    that    Plaintiff/Counter-Defendants manufacture and/or sell cable equipment to multiple system operators ("MSOs"), including MSO Counter-Defendants, and that such equipment may be used in the MSO Counter-Defendants' cable systems.  Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit

33

or deny the truth of the remaining allegations contained in paragraph 84 and accordingly deny the remaining allegations of paragraph 84.

85.    On information and belief, Plaintiffs/Counter-Defendants have indirectly infringed, and are continuing to indirectly infringe, the '631 patent by practicing or causing others to practice (by inducement and/or contributorily) the inventions claimed in the '631 patent, in this district or otherwise within the United States. For example, on information and belief, Plaintiffs/Counter-Defendants have infringed and continue to infringe the '631 patent by their manufacture and sale of cable equipment to MSOs for inclusion into the MSOs' cable networks for the specific provision of high speed internet, cable broadband, and/or other services.

**ANSWER:**    Denied.

86.    Upon information and belief, MSO Counter-Defendants, excepting ACC-Affiliated Counter-Defendants, have directly infringed, and are continuing to directly infringe, the '631 patent by practicing the inventions claimed in the '631 patent, in this district or otherwise within the United States. For example, upon information and belief, MSO Counter-Defendants, excepting ACC-Affiliated Counter-Defendants, have directly infringed and continue to directly infringe the '631 patent by including Plaintiff/Counter-Defendants' cable equipment in MSO Counter-Defendants' cable networks for the specific provision of high speed internet, cable broadband, and/or other services.

**ANSWER:**    Denied.

34

87.    Upon information and belief, Plaintiffs/Counter-Defendants and MSO Counter-Defendants, excepting ACC-Affiliated Counter-Defendants, will continue to infringe the '631 patent unless enjoined by this Court. Upon information and belief, such infringement has been, and will continue to be, willful, making this an exceptional case and entitling Counter-Plaintiffs to increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

**ANSWER:**    Denied.

### COUNT VII - INFRINGEMENT OF U.S. PATENT NO. 6,131,159

88.    Rembrandt and Remstream reallege and incorporate herein by reference the allegations stated in paragraphs 1-87 of this Counterclaim.

**ANSWER:**    Plaintiffs/Counter-Defendants incorporate the answers provided to paragraphs 1-87 as though fully stated herein.

89.    Rembrandt is the owner, and Remstream is the exclusive licensee, of U.S. Patent No. 6,131,159, entitled "System for Downloading Programs" (the "'159 patent") (Exhibit G to Plaintiff/Counter-Defendants' Complaint).

**ANSWER:**    Plaintiffs/Counter-Defendants admit that on its face, the '159 patent is entitled "System for Downloading Programs" and was attached as Exhibit G to Plaintiff/Counter-Defendants' Complaint. Plaintiffs/Counter-Defendants lack knowledge or information sufficient to deny or admit the remaining allegations contained in paragraph 89 and accordingly deny the remaining allegations of paragraph 89.

90.     The '159 patent was duly and legally issued by the United States Patent and Trademark Office on October 10, 2000.

**ANSWER:**     Plaintiffs/Counter-Defendants admit that on its face the '159 patent recites an issuance date of October 10, 2000. Plaintiffs/Counter-Defendants deny the remaining allegations of paragraph 90.

91.     Plaintiffs/Counter-Defendants are manufacturers of cable equipment, which equipment is sold to MSOs, including MSO Counter-Defendants, which, in turn, sell and/or lease some of that equipment throughout the United States.

**ANSWER:**     Plaintiffs/Counter-Defendants     admit     that     Plaintiff/Counter-Defendants manufacture and/or sell cable equipment to multiple system operators ("MSOs"), including MSO Counter-Defendants, and that such equipment may be used in the MSO Counter-Defendants' cable systems. Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit or deny the truth of the remaining allegations contained in paragraph 91 and accordingly deny the remaining allegations of paragraph 91.

92.     Plaintiffs/Counter-Defendants have directly and indirectly infringed, and are continuing to directly and indirectly infringe, the '159 patent by practicing or causing others to practice (by inducement and/or contributorily) the inventions claimed in the '159 patent, in this district or otherwise within the United States.

**ANSWER:**     Denied.

93.     Upon information and belief, MSO Counter-Defendants have directly infringed, and/or are continuing to directly infringe, the '159 patent by practicing the inventions claimed in the '159 patent, in this district or otherwise within the United States.

**ANSWER:**     Denied.

94.     Upon information and belief, Plaintiffs/Counter-Defendants and MSO Counter-Defendants (excepting ACC-Affiliated Counter-Defendants) will continue to infringe the '159 patent unless enjoined by this Court.

**ANSWER:**     Denied.

95.     Upon information and belief, the infringement by Plaintiffs/Counter-Defendants and MSO Counter-Defendants has been, and/or will continue to be, willful, making this an exceptional case and entitling Counter-Plaintiffs to increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

**ANSWER:**     Denied.

## COUNT VIII - INFRINGEMENT OF U.S. PATENT NO. 6,950,444

96.     Rembrandt and Remstream reallege and incorporate herein by reference the allegations stated in paragraphs 1-95 of this Counterclaim.

**ANSWER:**     Plaintiffs/Counter-Defendants incorporate the answers provided to paragraphs 1-95 as though fully stated herein.

97.     Rembrandt is the owner, and Remstream is the exclusive licensee, of U.S. Patent No. 6,950,444, entitled "System and Method for a Robust Preamble and Transmission

37

Delimiting in a Switched-Carrier Transceiver (the "'444 patent") (Exhibit H to Plaintiff/Counter-Defendants' Complaint).

**ANSWER:**    Plaintiffs/Counter-Defendants admit that on its face, the '444 patent is entitled "System and Method for a Robust Preamble and Transmission Delimiting in a Switched-Carrier Transceiver" and was attached as Exhibit H to Plaintiff/Counter-Defendants' Complaint. Plaintiffs/Counter-Defendants lack knowledge or information sufficient to deny or admit the remaining allegations contained in paragraph 97 and accordingly deny the remaining allegations of paragraph 97.

98.    The '444 patent was duly and legally issued by the United States Patent and Trademark Office on September 27, 2005.

**ANSWER:**    Plaintiffs/Counter-Defendants admit that on its face the '444 patent recites an issuance date of September 27, 2005.    Plaintiffs/Counter-Defendants deny the remaining allegations of paragraph 98.

99.    Plaintiffs/Counter-Defendants are manufacturers of cable equipment, which equipment is sold to MSOs, including MSO Counter-Defendants, which, in turn, sell and/or lease some of that equipment throughout the United States.

**ANSWER:**    Plaintiffs/Counter-Defendants    admit    that    Plaintiff/Counter-Defendants manufacture and/or sell cable equipment to multiple system operators ("MSOs"), including MSO Counter-Defendants, and that such equipment may be used in the MSO Counter-Defendants' cable systems.  Plaintiffs/Counter-Defendants lack knowledge or information sufficient to admit

or deny the truth of the remaining allegations contained in paragraph 99 and accordingly deny the remaining allegations of paragraph 99.

100.    Plaintiffs/Counter-Defendants have directly and indirectly infringed, and are continuing to directly and indirectly infringe, the '444 patent by practicing or causing others to practice (by inducement and/or contributorily) the inventions claimed in the '444 patent, in this district or otherwise within the United States.

**ANSWER:**    Denied.

101.    Upon information and belief, MSO Counter-Defendants have directly infringed, and/or are continuing to directly infringe, the '444 patent by practicing the inventions claimed in the '444 patent, in this district or otherwise within the United States.

**ANSWER:**    Denied.

102.    Upon information and belief, Plaintiffs/Counter-Defendants and MSO Counter-Defendants (excepting ACC-Affiliated Counter-Defendants) will continue to infringe the '444 patent unless enjoined by this Court.

**ANSWER:**    Denied.

103.    Upon information and belief, the infringement by Plaintiffs/Counter-Defendants and MSO Counter-Defendants the infringement has been, and/or will continue to be, willful, making this an exceptional case and entitling Counter-Plaintiffs to increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

**ANSWER:**    Denied.

## COUNT VIII - INFRINGEMENT OF U.S. PATENT NO. 5,234,627

104.    Rembrandt realleges and incorporates herein by reference the allegations stated in paragraphs 1-103 of this Counterclaim.

**ANSWER:**    Plaintiffs/Counter-Defendants incorporate the answers provided to paragraphs 1-103 as though fully stated herein.

105.    Rembrandt is the owner of all right, title and interest of U.S. Patent No.5,243,627, entitled "Signal Point Interleaving Technique" ("the '627 patent") (Exhibit A hereto).

**ANSWER:**    These allegations are not alleged against Plaintiffs/Counter-Defendants. Accordingly, no response is required from Plaintiffs/Counter-Defendants, and any allegations are denied on that basis.

106.    The '627 patent was duly and legally issued by the United States Patent and Trademark Office on September 7, 1993.

**ANSWER:**    These allegations are not alleged against Plaintiffs/Counter-Defendants. Accordingly, no response is required from Plaintiffs/Counter-Defendants, and any allegations are denied on that basis.

107.    Upon information and belief, Comcast Cable Communications Holdings, Inc., Comcast Corporation, Comcast Cable Communications, LLC, Century-TCI California Communications, LP, Comcast of Florida/Pennsylvania, L.P. (f/k/a Parnassos, LP), Comcast of Pennsylvania 11, L.P., Parnassos Communications LP, Cablevision Systems Corporation, CSC Holdings, Inc., Time Warner Cable, Inc., Time Warner Cable LLC, Time Warner NY Cable LLC, Time Warner Entertainment Company, LP, Time Warner Entertainment-

Advance/Newhouse Partnership, CoxCom, Inc., Charter Communications, Inc., Charter Communications Operating, LCC, Sharp Corporation, and Sharp Electronics Corporation (the "'627 Infringers") have directly or indirectly infringed, and are continuing to directly or indirectly infringe, the '627 patent by practicing or causing others to practice (by inducement and/or contributorily) the inventions claimed in the '627 patent, in this district or otherwise within the United States.

**ANSWER:** These allegations are not alleged against Plaintiffs/Counter-Defendants. Accordingly, no response is required from Plaintiffs/Counter-Defendants, and any allegations are denied on that basis.

108.    Upon information and belief, the '627 Infringers will continue to infringe the '627 patent unless enjoined by this Court. Upon information and belief, such infringement has been, and will continue to be, willful, making this an exceptional case and entitling Rembrandt to increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

**ANSWER:** These allegations are not alleged against Plaintiffs/Counter-Defendants. Accordingly, no response is required from Plaintiffs/Counter-Defendants, and any allegations are denied on that basis.

109.    Rembrandt and Remstream demand a jury trial for all Counts set forth above to which they are a party and wherein such issues are jury triable.

**ANSWER:** No allegations requiring a response are asserted in this paragraph. Plaintiffs/Counter-Defendants have requested a jury trial for all counterclaims to which they are a party.

## PRAYER FOR RELIEF

WHEREFORE, Rembrandt and Remstream pray that they have judgment against Plaintiffs/Counter-Defendants, MSO Counter-Defendants, and '627 Infringers for the following:

1.     A judgment that Plaintiffs/Counter-Defendants, MSO Counter-Defendants, and '627 Infringers have infringed the patents-in-suit as alleged in the Counterclaim;

2.     A permanent injunction enjoining and restraining Plaintiffs/Counter-Defendants, MSO Counter-Defendants (excepting ACC-Affiliated Counter-Defendants), and the '627 Infringers and their agents, servants, employees, affiliates, divisions, and subsidiaries, and those in association with them, from making, using, testing, offering to sell, selling, leasing, and importing into the United States any product, or using, offering to sell, offering to lease, selling, or leasing any service, that falls within the scope of any claim of a patent-in-suit asserted against a party as alleged in the Counterclaims.

3.     An award of damages, and pre-judgment and post-judgment interest;

4.     An award of increased damages pursuant to 35 U.S.C. § 284;

5.     A judgment that this case is exceptional under 35 U.S.C. § 285 and requiring Plaintiffs/Counter-Defendants, MSO Counter-Defendants and/or '627 Infringers to pay the costs of this action, including all disbursements and attorneys' fees; and

6.     Such other and further relief, at law or in equity, to which counter-plaintiffs Rembrandt and/or Remstream are justly entitled.

**RESPONSE TO PRAYER FOR RELIEF:**    Plaintiffs/Counter-Defendants  deny  that Counter-Plaintiffs are entitled to any relief in these Counterclaims against Plaintiffs/Counter-Defendants and specifically request that:

1.    judgment be entered for Plaintiffs/Counter-Defendants that they do not infringe U.S. Patent Nos. 4,937,819; 5,008,903; 5,710,761; 5,719,858; 5,778,234; 5,852,631; 6,131,159; and 6,950,444; and that those patents are invalid;

2.    no  injunctive  relief  issue  to  Counter-Plaintiffs  against  Plaintiffs/Counter-Defendants;

3.    no  damages  be  awarded  to  Counter-Plaintiffs  against  Plaintiffs/Counter-Defendants;

4.    no costs, expenses, or attorney fees be awarded to Counter-Plaintiffs against Plaintiffs/Counter-Defendants; and

5.    costs, expenses and attorney fees be awarded to Plaintiffs/Counter-Defendants for their defense of this case.

## AFFIRMATIVE AND OTHER DEFENSES

For the asserted and other affirmative defenses, Plaintiffs/Counter-Defendants do not assume the burden of proof where such burden is not legally upon Plaintiffs/Counter-Defendants. Plaintiffs/Counter-Defendants assert the following affirmative and other defenses and reserve the right to amend their answer to assert any other basis for invalidity, unenforceability, or any other defense:

## FIRST DEFENSE: NON-INFRINGEMENT

Plaintiffs/Counter-Defendants do not infringe and have not infringed, either directly, indirectly, contributorily, or by inducement any claim of the '819, '903, '761, '858, '234, '631, '159, or '444 patents, either literally or under the doctrine of equivalents, willfully or otherwise. Counter-Plaintiffs have also failed to identify which, if any, of Plaintiffs/Counter-Defendants' products are alleged to infringe any valid claim of the patents-at-issue either literally or under the doctrine of equivalents.

## SECOND DEFENSE: INVALIDITY

The '819, '903, '761, '858, '234, '631, '159, and '444 patents are invalid for failure to comply with the requirements of Title 35, United States Code, including, but not limited to, sections 101, 102, 103, and/or 112.

## THIRD DEFENSE: LACHES

Counter-Plaintiffs' claims for relief are barred in whole or in part by the equitable doctrine of laches.

## FOURTH DEFENSE: ESTOPPEL

Counter-Plaintiffs' claims for relief are barred in whole or in part by the equitable doctrines of waiver and/or estoppel.

**FIFTH DEFENSE: PROSECUTION HISTORY ESTOPPEL**

Counter-Plaintiffs' claims for relief are barred in whole or in part by the equitable doctrine of prosecution history estoppel, and any disclosed but unclaimed embodiments are dedicated to the public.

**SIXTH DEFENSE: COUNTER-PLAINTIFFS NOT ENTITLED TO DAMAGES**

Counter-Plaintiffs are not entitled to alleged damages due to their failure to plead and, on information and belief, their inability to prove compliance with 35 U.S.C. § 287 provisions of patent marking and pre-suit notice.  Additionally, the limitations period further bars past damages claims.

**SEVENTH DEFENSE: COUNTER-PLAINTIFF REMSTREAM LACKS STANDING**

Counter-Plaintiff Remstream lacks standing to bring the instant counterclaims.  Counter-Plaintiff Rembrandt has failed to allege that all substantial rights, including the right to enforce the patents, have been granted to Remstream.  *See Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1379-80 (Fed. Cir. 2000) ("In evaluating whether a particular license agreement transfers all substantial rights in a patent to the licensee, we pay particular attention to whether the agreement conveys *in full* the right to exclude others from making, using and selling the patented invention in the exclusive territory." (emphasis in original)).

**EIGHTH DEFENSE: PATENT EXHAUSTION/LICENSE**

Counter-Plaintiffs' claims for relief are barred in whole or in part by express or implied license and/or the doctrine of patent exhaustion.

45

## NINTH DEFENSE: NO INJUNCTIVE RELIEF

Counter-Plaintiffs are not entitled to any injunctive relief because any alleged injury to Counter-Plaintiffs is not immediate or irreparable, and Counter-Plaintiffs have an adequate remedy at law for any alleged injury.

## TENTH DEFENSE: FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Counter-Plaintiffs have failed to state a claim upon which relief may be granted.

## ELEVENTH DEFENSE: IMPROPER INVENTORSHIP

On information and belief, a reasonable opportunity for discovery will show that one or more of the claims of the patents-in-suit are invalid and/or unenforceable because of incorrect claims of inventorship.

## TWELFTH DEFENSE: DOUBLE PATENTING

One or more of the claims of the patents-in-suit are invalid for double patenting.

## THIRTEENTH DEFENSE: INEQUITABLE CONDUCT

Plaintiffs incorporate by reference the allegations in their Amended Complaint underlying their inequitable conduct claims. The patents-in-suit are unenforceable as previously alleged.

## FOURTEENTH DEFENSE: UNCLEAN HANDS

Plaintiffs incorporate by reference the allegations underlying their Inequitable Conduct affirmative defense above.

Counter-Plaintiffs' claims are barred by unclean hands.   Counter-Plaintiffs' assertion of the patents in this case with awareness of the nondisclosures described in the inequitable conduct allegations above comprises unclean hands. Counter-Plaintiffs' assert to have acquired a portfolio of patents previously assigned to Paradyne.  Counter-Plaintiffs' have consulting agreements with all named inventors on all of the patents-in-suit.   Further, prior to making charges against Plaintiffs, Counter-Plaintiffs communicated with one or more additional Paradyne personnel who had substantive involvement in the filing or prosecution of Paradyne patent applications. Counter-Plaintiffs are aware of the undisclosed and material information referred to above through Counter-Plaintiffs' alleged acquisition of a portfolio of patents assigned to Paradyne and its assertion of the patents in this case.  In fact, after originally filing lawsuits on four patents including the '631 patent, Counter-Plaintiffs later filed lawsuits specifically adding the '761 patent, specifically alleging infringement of both patents by the same accused instrumentalities. Counter-Plaintiffs were aware of the co-pendency of those patents as well as their prosecution histories, and the cited art and office actions, and nevertheless specifically endeavored to assert both patents.  Counter-Plaintiffs' knowing assertion of unenforceable patents comprises unclean hands.

Counter-Plaintiffs' claims are further barred by unclean hands allegations set forth in plaintiffs' counterclaims below, which are incorporated by reference.

47

## PLAINTIFFS' ANTITRUST AND UNFAIR COMPETITION COUNTER-COUNTERCLAIMS

This case concerns the unlawful and anticompetitive conduct of a nonpracticing patent holding company, Rembrandt Technologies, LP. Rembrandt acquired invalid and unenforceable patents and is now asserting them against non-infringing leading operators of cable television systems and the manufacturers of cable modems and other products those operators use to deliver the broadband data services millions of Americans use to access the Internet. To gain negotiating leverage against the companies it accuses of infringing its invalid, non-infringed and unenforceable patents, Rembrandt seeks to prevent millions of cable subscribers from continuing to enjoy access to high-speed data delivered using a pervasive cable industry standard. Although Rembrandt now wishes to portray itself as a market participant entitled to lost profits damages and injunctive relief for alleged patent infringement, Rembrandt is, by its own admission, a nonpracticing entity ("NPE") that does not make or sell anything. Instead, Rembrandt solicits investors to give it money so it can buy patents and assert those patents against companies like the plaintiffs in this action, who provide products and services enjoyed by the public.

To maximize its power to coerce cable system operators and equipment manufacturers to yield to its demands, Rembrandt has hatched an illegal, anticompetitive scheme. Specifically, Rembrandt Technologies, LP and its apparent affiliate, Remstream Technologies LLC d/b/a Remstream (which first appeared in these cases in January 2008) are attempting to monopolize and unfairly compete in the market for cable modem products that use the successful Data Over Cable Services Interface Specifications ("DOCSIS"). DOCSIS is a set of technical specification used by manufacturers to design and build equipment such as cable modems and cable modem termination systems that cable companies use to deliver broadband data services over their cable television networks. The adoption of the DOCSIS specification over ten years ago has led to the

availability of affordable, interoperable cable modems and the emergence of broadband over cable systems as a leading method by which Americans access the Internet.

Against this backdrop comes Rembrandt's scheme. Rembrandt has purchased a portfolio of patents of a defunct company called Paradyne, which manufactured dial-up modems and other products used by consumers to access older, slower non-cable television telecommunications networks. Paradyne never developed or manufactured cable modems and did not help create the DOCSIS standard. Rembrandt now says that the plaintiffs in this case infringe the patents it purchased from Paradyne by implementing the DOCSIS standard.

The patents do not cover DOCSIS and are in fact unenforceable for inequitable conduct based upon facts of which Rembrandt became aware through the investigation it performed at the time it acquired the Paradyne portfolio. Even though neither Rembrandt nor Paradyne contributed to the DOCSIS standard, and Rembrandt knows both that the patents are unenforceable and that, even if they were enforceable, they would not be infringed by implementers of DOCSIS such as the plaintiffs, Rembrandt now seeks to prevent plaintiffs from continuing to make and sell products that make the delivery of broadband over cable television networks possible.

Rembrandt understood that the Supreme Court's decision in *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006) would frustrate its plan to use its non-infringed, invalid, and unenforceable patents to threaten to enjoin plaintiffs and others. Under the *eBay* decision, an NPE like Rembrandt is plainly not entitled to a permanent injunction. To avoid the *eBay* decision, Rembrandt hatched a scheme to portray itself as a supposed reseller of cable modems. It did so by entering into two agreements, one for the supply of DOCSIS-compliant cable

modems from a manufacturer of non-branded cable modems, and another for the sale of cable modems. These agreements are a sham: nothing about Rembrandt's history or business model suggests it wants to be a bona fide distributor of cable modems, as is plain from its own admissions. By entering into these agreements, however, Rembrandt attempts to gain the right to exclude competition through the enforcement of its non-infringed, invalid, and unenforceable patents by enjoining what it claims is the use of those patents by virtually every major cable systems operator as well as by companies that supply the bulk of US sales of cable modems and related equipment.

Rembrandt faced another obstacle in bringing its scheme to fruition. Valid and enforceable patents that its non-branded manufacturer of cable modems needed to license to implement the DOCSIS specification, patents owned by companies such as plaintiffs that had, unlike Rembrandt, participated in the development of DOCSIS, were available for license on a royalty-free basis through a patent pool. The patent pool agreement, however, required companies like Rembrandt's supplier to agree to reciprocally license patents they owned to other members of the patent pool on a royalty-free basis. Participants in the development of DOCSIS had created this licensing structure to avoid precisely the kind of patent hold-up that Rembrandt now threatens. But, just as it sought to evade the Supreme Court's *eBay* decision by portraying itself as a practicing entity, Rembrandt sought to evade the requirements of the DOCSIS patent pool by contracting to purchase and resell DOCSIS-compliant cable modems while claiming not to be subject to the reciprocal licensing obligations to which other industry participants, including the manufacturer it bought cable modems from, were subject.

This is not a case about the lawful enforcement of valid and enforceable patents. This is a case about the acquisition by an NPE of patents it knew to be unenforceable and invalid, and

the NPE's scheme to portraying itself as a practicing entity to coerce an industry into yielding to its demands, thereby attaining the power to exclude competition through unlawful and unfair business practices.

Accordingly, Plaintiffs -- the principal suppliers of DOCSIS industry standard cable modem equipment that Rembrandt has accused of infringement -- have filed these Counter-Counterclaims to stop Rembrandt's anticompetitive and unfair conduct and vindicate their products and their customers' lawful use of those products as follows.

### NATURE OF COUNTERCLAIMS

1.      In these counterclaims, Plaintiffs seek damages and an injunction for violations of the Sherman Act §§ 1 and 2, and restitution and an injunction for violations of § 17200 et seq. of the California Business and Professions Code, and such other relief as the Court deems just and proper.

### JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action under, and without limitation, 28 U.S.C. §§ 1331, 1337, 1338(a), 1367, 2201, and 2202, and the Patent Laws of the United States, 35 U.S.C. § 1 et seq.

3.      Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b).

### ANTITRUST AND UNFAIR COMPETITION CLAIMS

**A.      Rembrandt's Acquisition of the Patents**

4.      In 2006, in amicus briefing, Rembrandt referred to itself as a "a non-practicing entity ("NPE") — a firm that invests in patents but does not practice them." Rembrandt's website

51

states that it "acquires promising patents from inventors and innovative companies that can't defend their patents against infringement because of the cost of litigation or the threat of business or legal retaliation."

5.    In 2004, Rembrandt purportedly acquired the patents-in-suit as part of a portfolio of at least 116 patents and applications held by Paradyne Networks, Inc. Rembrandt bought the Paradyne patents-in-suit with the intention of asserting them against, among others, MSOs that implement DOCSIS. Paradyne was to receive a percentage of any royalties obtained by Rembrandt from its assertion of the patents.

6.    After selling patents to Rembrandt in 2004, Paradyne was acquired by Zhone Technologies in 2005. Rembrandt thereafter engaged in further transactions with Zhone Technologies to acquire additional patents, including one or more of the patents-in-suit. These Paradyne and Zhone Technologies transactions allowed Rembrandt to amass patents it claims are essential to practice DOCSIS.

7.    The Paradyne patents were developed and intended to apply to telephone wire technologies and had no applicability to cable systems. Paradyne did not offer or supply any cable modem equipment to cable operators or cable equipment manufacturers or their customers.

**B.    Evading The Supreme Court's *eBay* Decision**

8.    Under the Supreme Court's decision in *eBay v. MercExchange*, Rembrandt knew it had to be, at minimum, a market participant to further its scheme to seek injunctive relief and/or lost profits. On information and belief, Rembrandt hoped to use the threat of injunctive relief and/or lost profits-based damages to impose pressure on the cable industry to pay Rembrandt money to license its patents. So Rembrandt hired a consultant,

9.          identified one or more companies that might meet Rembrandt's needs. For example,

REDACTED

### C.    Evading the DOCSIS Pool License

10.    Beginning in the mid-1990s, a group of companies, including a number of Plaintiffs, began to work together to develop a technical specification for the delivery of high-speed data over cable television networks. The first version of DOCSIS was released by CableLabs, a cable industry standards development organization, in 1997. Subsequent versions of the specification have been released since.

11.    The goal of the companies involved in the development of DOCSIS was to specify interface requirements so that cable operators and their subscribers would be able to purchase affordable, interchangeable, highly functional cable modems and other equipment from multiple suppliers. The goal has been realized. Cable modems are affordable, highly reliable, and available from numerous suppliers, and the delivery of broadband over cable has become a popular method for the delivery of high-speed data services to residential and commercial customers. To ensure that consumers who purchased cable modems would be receiving products that were fully compatible with the DOCSIS standard, CableLabs established a certification program to identify DOCSIS-compliant manufacturers. Certified equipment could

53

then be used in cable systems supporting DOCSIS. Major cable operators may ask vendors to obtain certification from CableLabs.

12.    Neither Rembrandt/Remstream nor its Paradyne predecessors participated in the DOCSIS standardization process or publicly commented on the DOCSIS standards. On information and belief, both during and after DOCSIS standardization process, and prior to filing lawsuits against cable operators to enforce the patents, neither Rembrandt/Remstream nor its Paradyne predecessors informed CableLabs or Plaintiffs that they had intellectual property they believed read on or covered the DOCSIS standard.

13.    To facilitate efficient licensing of patented technology that was essential to implement the original DOCSIS specification and subsequent versions, CableLabs developed a patent pool for the intellectual property essential to the DOCSIS standards. The DOCSIS patent pool was announced by CableLabs in July 1998. Some companies contributing technology essential to the DOCSIS standardization effort signed a document entitled "Data Over Cable Service Interface Specifications License Agreement" (the "DOCSIS License Agreement"), which memorialized the DOCSIS patent pool and the signatories' reciprocal rights to the intellectual property in the pool.

14.    DOCSIS patent pool members contribute a non-exclusive license to any intellectual property rights necessary to make products in accordance with the DOCSIS standard, and receive in exchange a license from the pool for all of the intellectual property rights contributed by other signatories. Pool members receive non-exclusive, royalty-free licenses, conditioned upon that member's agreement to contribute freely, or on a reciprocal, no-cost basis, any intellectual property essential to sell DOCSIS-compliant equipment. Cable operators and cable modem manufacturers saw the DOCSIS patent pool as a major achievement that would

help support systems interoperability, enable industry growth, enhance consumer choice, and lower the cost of data over cable services for the consumer.

15.     The competitive benefits of the DOCSIS pool structure can best be seen in the fact that over 60 companies have signed licensing agreements to enter the patent pool. So has REDACTED -- Rembrandt/Remstream's partner in its scheme to destroy many of the benefits of DOCSIS standards and circumvent the DOCSIS patent pool.

16.     Rembrandt and Remstream contend that they have not signed the DOCSIS License Agreement.

17.     As Rembrandt and Remstream executed their scheme to evade the Supreme Court's *eBay* decision by transforming Rembrandt into a so-called practicing entity, they learned of the DOCSIS Patent Pool and the requirement it imposed on manufacturers of cable modem equipment to reciprocally license patents they owned that were essential to implement DOCSIS. In furtherance of their scheme to evade the *eBay* decision, Rembrandt and Remstream also sought to evade the requirements of the DOCSIS patent pool by buying DOCSIS-certified cable modems from REDACTED but not signing the pool agreement itself and subsequently asserting patents it claims are essential to implement the DOCSIS specification against pool participants and others.

18.     Rembrandt's consultant,

CM that would be sold by a company newly created by Rembrandt to sell CMs in the United States. Rembrandt created Remstream, an entity intended to re-sell DOCSIS-compliant CMs in the United States, for the purpose of supporting Rembrandt's scheme of extracting royalties from the cable industry.  Remstream thereafter entered into the agreement with          Rembrandt thereby positioned itself to evade

*eBay* by trying to receive the royalty-free licensing benefits of the DOCSIS patent pool agreement and purport to sell DOCSIS-compliant products in the United States, while at the same time maintain its ability to sue other DOCSIS patent pool members for patent infringement for continuing to make products compliant with the DOCSIS standard.

19.     After reaching an arrangement with

REDACTED                                                was to supply to

Remstream.

20.     On information and belief, Remstream and                also agreed, among other things,

REDACTED

21.     On information and belief, Remstream will continue to agree with one or more entities to engage in similar acts relating to additional cable modems.

22.     Remstream -- either alone or through partnerships with                and others -- lacks the capacity to meet U.S. demand for DOCSIS-compliant cable modems.  Nevertheless, Remstream claims it may seek lost profits in this litigation.

23.     Rembrandt has also reached an agreement with cable systems provider. Rembrandt has created or plans to create a sham company through which it will gain access to customers of Comcast or other competing MSOs that are implementing the DOCSIS standard and marketing cable services.  This scheme is intended to support Rembrandt's false claim that it is a practicing entity that has suffered damages as a purported competitor in the cable systems market.

24.

REDACTED

**D.     The Relevant Antitrust Markets**

25.     As a result of the transactions with Paradyne and Zhone Technologies described

above and certain further actions by Rembrandt/Remstream, Rembrandt/Remstream actually,

potentially, and/or purportedly compete in (1) the United States and worldwide markets for

technology essential to implement the DOCSIS standard and for technology essential to perform

certain functions, allegedly covered by the patents-in-suit, necessary to implement the DOCSIS

standard (hereinafter "DOCSIS Technology"); and (2) the United States and worldwide markets

for DOCSIS-compliant cable modems  (hereinafter "DOCSIS Equipment") (collectively, the

"relevant markets"),

57

26.     The United States and worldwide development and license of DOCSIS Technology is a relevant market for the following, among other, reasons: (1) once CableLabs selected a particular technology to be incorporated into the DOCSIS standard, all other technologies capable of performing particular functions described in the specification were excluded; (2) a cable modem used by a cable system must conform to the technology of the network system used by the service provider; and (3) once a cable system implements the DOCSIS standard on its system, the cost of switching the network to a different specification for the transmission of broadband data is likely cost prohibitive. Cable operators are unlikely to respond even to a significant increase in the cost of royalties associated with the license of patents essential to implement the DOCSIS specification by switching to a different specification.

27.     The United States and worldwide markets for the development, manufacture and distribution of cable modems is a relevant antitrust market for the following, among other, reasons: cable system operators that have chosen to provide broadband services over DOCSIS-compliant networks, which often provide cable modems to their subscribers so that their subscribers can receive broadband, do not regard alternative customer premises equipment receiving broadband services, such as dial-up modems or DSL modems, as substitutes for DOCSIS-compliant cable modems. Because cable operators provide paid subscriptions to broadband services delivered using DOCSIS, they cannot substitute other modems or other equipment that performs similar functions. Once a cable operator implements DOCSIS on its network, the cost of switching the network to a different specification for the transmission of broadband data is likely prohibitive. Cable operators are unlikely to respond even to a

significant increase in the cost of royalties associated with the license of patents essential to implement DOCSIS sby switching to a different specification.

### E.    Rembrandt Asserts the Patents

28.    After entering into agreements to subvert the DOCSIS patent pool, and creating sham agreements to enable it to portray itself as a practicing entity, Remstream continued its "business plan" to exploit the relevant markets by bringing improper patent infringement suits against cable system operators. As alleged in Count IX in Plaintiffs' Amended Complaint, multiple patents-in-suit are unenforceable for inequitable conduct committed during patent prosecution. This inequitable conduct arises from, among other things, Paradyne's pattern and practice of failing to disclose previously issued prior art Paradyne patents and co-pending Paradyne applications and art cited therein that was material to patentability and known to persons subject to a duty of candor to disclose this information to the USPTO. The widespread pattern of Paradyne's failures to satisfy its disclosure obligations confirms that it acted with intent to deceive the USPTO at all relevant times. Rembrandt has asserted claims under these patents with knowledge of these facts. Rembrandt has reviewed Paradyne's patent portfolio, has retained the alleged inventors and communicated with former Paradyne personnel responsible for patent filing and/or prosecution, and Rembrandt has selected various patents for assertion in litigation while aware of the improper patent prosecution practices of Paradyne.

29.    The litigation against the cable operators, which claimed that the operators infringed Rembrandt's intellectual property by implementing the DOCSIS standard, was both objectively and subjectively baseless because of these infirmities of which Rembrandt is aware. Further, in addition to these unenforceability issues, Rembrandt asserts infringement where it is aware that these patents were not developed in the cable industry and that its infringement claims

59

are both objectively and subjectively baseless.  Rembrandt attempts to graft its allegations to DOCSIS and yet these patents have no relationship to and are not infringed by compliance with that standard -- facts of which Rembrandt is aware.  Furthermore, Rembrandt has attempted to manufacture sham claims for relief where it is aware that as a non-practicing entity it is not entitled to lost profits or injunctive relief.  Rembrandt's efforts to manufacture harms fail to meet the relevant standards for the claims to relief and were committed as part of an effort to improperly extract monies from the cable industry.

## COUNT XI

### (Agreement in Restraint of Trade in Violation of Section 1 of the Sherman Act)

30.    Plaintiffs repeat and reallege all of the allegations of all of the Paragraphs above as if set forth fully herein.

31.    Remstream has entered into several agreements in restraint of trade in one or more of the relevant markets, including with REDACTED These Remstream agreements unreasonably restrain trade and harm both Plaintiffs and competition in a number of ways, including, but not limited to: (1) by facilitating Remstream's scheme to acquire patents with the purpose of hijacking the long-established DOCSIS standard and holding hostage those who have spent years and millions of dollars developing products relying on the DOCSIS standard, and thereby raise costs, limit competition, and reduce efficiency; and (2) by facilitating Remstream's scheme to exploit the key advantage of the DOCSIS patent pool (royalty free access to intellectual property essential to practicing the DOCSIS standard) while at the same time side-stepping the central and most critical obligation of patent pool members (the agreement not to sue other members for infringement), and (3) on information and belief, by expressly or implicitly allocating markets and customers.

60

32.    These Remstream agreements with have no legitimate business or efficiency justification.    REDACTED

33.    These Remstream agreements with directly and substantially affect and restrain interstate commerce in the United States, and will continue to do so.

34.    These Remstream agreements with directly and proximately caused antitrust injury both to the Plaintiffs and to competition within the relevant markets.

35.    Plaintiffs' damages and injuries, including sums expended for attorney and litigation fees, flow from Remstream's wrongful and exclusionary acts. They are direct and unique and not duplicative or derivative of any injuries suffered by any other participant in any market alleged herein.

36.    The harm and lost profits to Plaintiffs from Remstream's illegal conduct are ongoing and cumulative. Because Remstream's illegal conduct substantially and adversely affects Plaintiffs' goodwill with customers and in the relevant markets generally, money damages alone will not suffice as a remedy, leaving Plaintiffs without sufficient remedy at law.

37.    Plaintiffs have suffered irreparable injury by reason of Remstream's actions and will continue to suffer injury unless and until the Court enjoins such conduct.

## COUNT XII

### (Monopolization of the DOCSIS Technology Markets in Violation of Section 2 of the Sherman Act)

38.    Plaintiffs repeat and reallege all of the allegations of all of the Paragraphs above as if set forth fully herein.

39.    Rembrandt's patent portfolio includes eight patents that it claims are essential to the DOCSIS standard.  Rembrandt has accused firms selling and using DOCSIS-compliant cable modems and CMTS's of infringing these allegedly "essential" patents.

40.    Rembrandt claims there are no alternative or design-around technologies by which the DOCSIS standards can be practiced without infringing Rembrandt's intellectual property.

41.    Rembrandt has stated that "inventions covered by the asserted claims of the patents-in-suit were implemented as requirements of the DOCSIS standard."

42.    Rembrandt claims it has the right to exclude all competition in the DOCSIS Technology Markets.  Thus, Rembrandt claims to have monopoly power in the DOCSIS Technology Markets.

43.    If Rembrandt's illegal efforts to evade the *eBay* decision and exclude competition in the market for technology essential to the DOCSIS standard are successful, Rembrandt will have acquired and/or maintained this monopoly power through various exclusionary and predatory acts, and not through superior skill, foresight, or industry.  These acts include, but are not limited to, the acts described in the paragraphs above.

44.    Rembrandt's  agreements  with      REDACTED           and potentially others are intended to, and if upheld, will, allow Rembrandt to subvert and evade the *eBay* decision, hijack the DOCSIS standard after the fact, circumvent the long-established DOCSIS patent pool, raise prices and costs, reduce output, and exclude competition, all to the harm of customers, consumers and competition.

45.    Rembrandt is attempting to enforce patents it knows to be invalid, unenforceable, and/or not infringed.  Its allegations and claims in its patent actions, including its claims for

relief, are brought in bad faith, are objectively and subjectively baseless, and are motivated by Rembrandt's desire to impose collateral, anti-competitive injury rather than to obtain a justifiable legal remedy.

46.    Rembrandt has wrongfully asserted invalid and unenforceable patents, including the patents-in-suit, against multiple non-infringing parties in many forums, establishing a pattern of bad faith litigation as part of an overall scheme to achieve or maintain a monopoly position in the DOCSIS technology market.   Particularized allegations of inequitable conduct are set forth above.

47.    Rembrandt's monopolistic conduct has already directly and irreparably injured Plaintiffs and competition by forcing Plaintiffs and cable operators to expend significant sums in attorney and litigation fees, and by harming Plaintiffs' reputations and business relationships with customers and consumers.

48.    Rembrandt's patent claims are unfair, predatory, and anticompetitive and have no legitimate business or efficiency justification.   Rembrandt's conduct has no legitimate pro-competitive justification that would outweigh its anticompetitive effects.

49.    Rembrandt's conduct has and will continue to directly and substantially affect and restrain interstate commerce in the United States.

50.    Rembrandt's anticompetitive conduct has and will directly and proximately cause antitrust injury to Plaintiffs within the DOCSIS Technology Markets, including but not limited to causing substantial injury to competition, consumers and competitors (including Plaintiffs) in the DOCSIS Technology Markets.

51.    Plaintiffs have directly and proximately suffered injury as a result of Rembrandt's anticompetitive conduct.

52.    The damages and injuries that Plaintiffs have sustained because of Rembrandt's antitrust violations are direct and unique, and are not duplicative or derivative of any injuries suffered by any other participant in any market alleged herein. Plaintiffs' damages and injuries flow directly from Rembrandt's wrongful, exclusionary acts that make Rembrandt's conduct unlawful.

53.    Plaintiffs' antitrust injuries are the direct result of Rembrandt's anticompetitive conduct, alleged herein, which occurred within the United States. The harm and losses to Plaintiffs from Rembrandt's illegal conduct are ongoing and cumulative. Because Rembrandt's actions substantially and adversely injure Plaintiffs' goodwill with their customers and in the DOCSIS Technology Markets generally, monetary compensation alone is not sufficient, leaving Plaintiffs without a sufficient remedy at law.

54.    Plaintiffs have suffered irreparable injury by reason of Rembrandt's anticompetitive conduct and will continue to suffer injury unless and until the Court enjoins such conduct.


**COUNT XIII**

**(Attempted Monopolization of the DOCSIS Equipment Markets in Violation of
Section 2 of the Sherman Act)**

55.    Plaintiffs repeat and reallege all of the allegations of all of the Paragraphs above as if set forth fully herein.

56.    As alleged with particularity above, Rembrandt claims to have monopoly power in the DOCSIS Technology Markets, gained in part through agreements with Paradyne, and potentially others.

REDACTED

64

57.     Rembrandt is attempting to create a sham practicing entity and use its above-alleged monopoly power in the DOCSIS Technology Markets by entering into agreements to exclude competitors, enforcing patents it knows to be invalid, unenforceable, or not infringed, and wrongfully hi-jacking the DOCSIS standard and circumventing the *eBay* decision and the DOCSIS patent pool so that it can exclude competition and/or raise its competitors' costs in the worldwide and U.S. DOCSIS Equipment Markets.

58.     Rembrandt's anticompetitive conduct was intended to give, and has the dangerous probability of giving, Remstream monopoly power over the DOCSIS Equipment Markets. Through this conduct, Remstream will have the power to exclude competition, reduce output, and raise prices in the DOCSIS Equipment Markets -- whether or not Remstream is able to satisfy market demand for such equipment -- which are necessary and sufficient elements of monopoly power.

59.     Rembrandt's anticompetitive acts are unfair, predatory, and anticompetitive and have no legitimate business or efficiency justification.  Rembrandt's conduct, thus, has no legitimate pro-competitive justification that would outweigh its anticompetitive effects.

60.     Rembrandt's conduct has and will continue to directly affect and restrain interstate commerce in the United States.

61.     Rembrandt's anticompetitive conduct will directly and proximately cause antitrust injury to Plaintiffs within the DOCSIS Equipment Markets, including but not limited to causing substantial injury to competition, and hence to consumers and competitors (including Plaintiffs), in the DOCSIS Equipment Markets.  Plaintiffs have and will directly and proximately suffer injury as a result of Rembrandt's anticompetitive conduct.

62. Rembrandt has set upon this course of conduct with the specific intent of monopolizing the DOCSIS Equipment Markets. By asserting its intellectual property against all DOCSIS-compliant equipment, and purporting to seek injunctive relief, Rembrandt has claimed to have the power to exclude competitors in (and hence market power over) the DOCSIS Equipment Markets. There is a dangerous probability that, unless restrained, Rembrandt will acquire monopoly power in the DOCSIS Equipment Markets.

63. If Rembrandt successfully excludes competitors from DOCSIS Equipment Markets, it will unilaterally set or maintain prices substantially above competitive levels for the foreseeable future.

64. By reason of Rembrandt's attempted monopolization of the DOCSIS Equipment Markets in violation of Section 2 of the Sherman Act, Plaintiffs have been injured in their business or property including the loss of profits, the loss of customers, the loss of goodwill and product image, loss of sums expanded for attorney and litigation costs, and by their prospective exclusion from DOCSIS Equipment Markets.

65. Plaintiffs have suffered irreparable injury by reason of Rembrandt's anticompetitive conduct and will continue to suffer injury unless and until the Court enjoins such conduct.

## COUNT XIV

### (Conspiracy to Monopolize the DOCSIS Technology Markets and the DOCSIS Equipment Markets in Violation of Section 2 of the Sherman Act)

66. Plaintiffs repeat and reallege all of the allegations of all of the Paragraphs above as if set forth fully herein.

67. Rembrandt has entered into illegal agreements with REDACTED and potentially others with the intent and effect of giving Remstream

66

monopoly power in the relevant markets, including the DOCSIS Technology and Equipment Markets, or with the intent and effect of giving Remstream a dangerous probability of successfully achieving such monopoly power. These illegal agreements (1) facilitate Remstream's scheme to hi-jack the long-established DOCSIS standard and hold hostage those who have spent years and millions of dollars developing products relying on the DOCSIS standard, and thereby raise prices, reduce output, and exclude competition; and (2) facilitate Remstream's scheme to evade the *eBay* decision, create a sham practicing entity, and exploit the key advantage of the DOCSIS patent pool (royalty free access to intellectual property essential to practicing the DOCSIS standard) while at the same time side-stepping the central and most critical obligation of patent pool members (the agreement to reciprocally license essential patents to other pool participants).

68.    Rembrandt,                REDACTED                and potentially others have all committed overt acts in furtherance of the conspiracies to monopolize, including, but not limited to, product development, execution of agreements, product sales, and product purchases.

69.    These conspiracies to monopolize in violation of Section 2 of the Sherman Act harm consumers, customers, and competition, are unfair, predatory, and anticompetitive, and have no legitimate business or efficiency justification.  Rembrandt's conduct, thus, has no legitimate pro-competitive justification that would outweigh its anticompetitive effects.

70.    These conspiracies to monopolize in violation of Section 2 of the Sherman Act have and will continue to directly affect and restrain interstate commerce in the United States.

71.    Rembrandt's anticompetitive conduct will directly and proximately cause antitrust injury to Plaintiffs within the relevant markets, including but not limited to causing substantial injury to competition, and hence to consumers and competitors (including Plaintiffs), in the

relevant markets. Plaintiffs have and will directly and proximately suffer injury as a result of Rembrandt's anticompetitive conduct.

72.    Rembrandt, REDACTED (and potentially others to be revealed in discovery) have set upon this course of conduct with the specific intent for Rembrandt to monopolize the relevant markets. There is a dangerous probability that, unless restrained, Rembrandt will acquire a monopoly in the relevant markets.

73.    By asserting its intellectual property against all DOCSIS-compliant equipment, and purporting to seek injunctive relief, Rembrandt claims to have the power to exclude other competitors from (and hence have monopoly power in) each of the relevant markets. If Rembrandt drives its competitors from the market by raising competitors' costs, using the illegal agreements to circumvent the patent pool, it will have the power to unilaterally set or maintain prices substantially above competitive levels for the foreseeable future.

74.    By reason of Rembrandt's participation in the conspiracy to monopolize the relevant markets in violation of Section 2 of the Sherman Act, Plaintiffs face a substantial risk of injury to their business or property including the loss of profits, the loss of customers, the loss of goodwill and product image, lost sums expended for attorneys fees and litigation costs, and the prospective destruction of the relevant markets.

75.    Plaintiffs have suffered irreparable injury by reason of Rembrandt's anticompetitive conduct and will continue to suffer injury unless and until the Court enjoins such conduct.

### COUNT XV

### (Unfair Business Practices Under Section 17200 of California Business & Professions Code)

76.    Plaintiffs repeat and reallege all of the allegations of all of the Paragraphs above as if set forth fully herein.

68

77.    Rembrandt has engaged in unfair competition within the meaning of Section 17200 of the California Business and Professions Code.

78.    Rembrandt's conduct constitutes:  (1) unlawful business acts or practices;  (2) unfair business acts or practices; and (3) fraudulent business acts or practices.

79.    Several of the plaintiffs are located in California, and, on information and belief, several of Rembrandt's illegal, unfair, and fraudulent acts occurred in California.  Each of Rembrandt's illegal, unfair and fraudulent acts have harmed and threaten to further harm California customers, consumers, and competition within California, including by increasing the prices California consumers pay for cable modems or decreasing the supply of cable modems.

80.    As is alleged with particularity above, Rembrandt committed unlawful business acts by:  (1) monopolizing the DOCSIS Technology Markets, and (2) attempting to monopolize the DOCSIS Equipment Markets.

81.    Each of the unlawful business acts identified above have continuing anticompetitive effects in the state of California and throughout the United States.

82.    As alleged with particularity above, Rembrandt engaged in unfair business practices by: (1) facilitating Remstream's scheme to hijack the DOCSIS standard and hold hostage those who rely on the DOCSIS standard, and thereby raise costs, limit competition, and reduce efficiency; and (2) facilitating Remstream's scheme to evade the *eBay* decision, create a sham practicing entity, and exploit the key advantage of the DOCSIS patent pool while at the same time side-stepping the obligation of patent pool members not to sue other members for infringement.

83.    These actions reduce output, prevent competition on the standardized product, raise prices, waste the time and money spent standardizing the product, and run counter to the

policy of encouraging the setting of standards to promote competition. Such actions subvert the key purpose of standard setting. Under Remstream's approach, only one company -- Remstream -- is legally permitted to sell DOCSIS-compliant cable modems. Remstream cannot meet the market demand, and could charge supra-competitive prices for the limited cable modems it can sell. Customers and consumers will be seriously harmed, either by not getting a cable modem or having to pay an exorbitant price for one. These actions would result in higher prices and less competition, and are therefore unfair business practices.

84.    Each of the unfair business acts identified above is unfair when the effect of the act on Plaintiffs is balanced against Rembrandt's reasons, justifications, and motives for that act.

85.    Each of the unfair business acts identified above violates the policy or spirit of the antitrust laws because it harms Plaintiffs, competition, and consumers.

86.    Each of the unfair business acts identified above has continuing anticompetitive effects in California and throughout the United States.

87.    Rembrandt committed fraudulent business acts by engaging in the conduct as pleaded herein, including but not limited to, by asserting patents it knows were obtained via fraud on the Patent Office; asserting patents it knows to be unenforceable or not infringed; asserting sham claims for relief, causing these fraudulent claims to be publicized to consumers; and perpetuating a ruse to exclude competitors through patent litigation.

88.    Each of the fraudulent business acts identified above has continuing anticompetitive effects in California and throughout the United States.

89.    By reason of Rembrandt's unlawful, unfair, and fraudulent business conduct, Plaintiffs have suffered injury-in-fact and have been deprived of money or property in which

70

they have a vested interest unless and until the Court enjoins such conduct, Plaintiffs' injuries in fact are irreparable, and Plaintiffs will continue to suffer injury-in-fact.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask that this Court enter judgment in Plaintiffs' favor and grant the following relief:

A.    A declaration that Plaintiffs have not infringed any of the claims of U.S. Patent Nos. 4,937,819; 5,008,903; 5,710,761; 5,719,858; 5,778,234; 5,852,631; 6,131,159 or 6,950,444;

B.    A declaration that U.S. Patent Nos. 4,937,819; 5,008,903; 5,710,761; 5,719,858; 5,778,234; 5,852,631; 6,131,159 or 6,950,444 are invalid for failure to meet the conditions of patentability and/or otherwise comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and/or 112;

C.    A declaration that U.S. Patent Nos. 4,937,819; 5,008,903; 5,710,761; 5,719,858; 5,778,234; 5,852,631; 6,131,159 or 6,950,444 are unenforceable and/or that Rembrandt's unclean hands preclude its enforcement of the patents in this suit;

D.    An injunction against Rembrandt and its affiliates, subsidiaries, assigns, employees, agents or anyone acting in privity or concert with Rembrandt from charging infringement or instituting or continuing any legal action for infringement of U.S. Patent Nos. 4,937,819; 5,008,903; 5,710,761; 5,719,858; 5,778,234; 5,852,631; 6,131,159 or 6,950,444 against Plaintiffs, their customers, or anyone acting in privity with Plaintiffs;

E.    An order declaring that Plaintiffs are prevailing parties and that this is an exceptional case, awarding Plaintiffs their costs, expenses, disbursements and reasonable attorney fees under 35 U.S.C. § 285 and all other applicable statutes, rules and common law;

F.    Adjudge and decree that Rembrandt has violated Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2; that Rembrandt has violated Section 17200, et seq., of the California Business and Professions Code;

G.    On Plaintiffs' eleventh through fourteenth claims for relief, enter judgment against Rembrandt for treble the amount of Plaintiffs' damages as proven at trial in accordance with Section 4 of the Clayton Act, 15 U.S.C. § 15;

H.    Pursuant to applicable federal and state laws, including the Clayton Act, 15 U.S. § 16 and Section 17200, et seq., of the California Business & Professions Code, enjoin Rembrandt's continuing violations of law by: (1) barring Rembrandt from asserting the patents and other intellectual property rights it has claimed are essential to practice the DOCSIS standard against parties manufacturing, selling, purchasing or using products practicing that standard; (2) requiring Rembrandt to grant CableLabs' royalty-free patent pool a license to those patents claimed essential to the DOCSIS standards; (3) prohibiting actions in furtherance of the illegal agreements reached between Rembrandt and                , and Rembrandt and

REDACTED

I.    Enter further equitable relief as necessary or appropriate, including full restitution to Plaintiffs and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Rembrandt from Plaintiffs, its actual customers, and its potential customers as a result of Rembrandt's unlawful, unfair, and fraudulent business acts;

J.    Award Plaintiffs their costs and expenses of litigation, including attorneys' fees and expert witness fees; and

K.    Enter judgment against Rembrandt for such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 28 of the Federal Rule of Civil procedure, Plaintiffs hereby demand a jury trial on all issues so triable.

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
Jeffrey T. Castellano (No. 4837)
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
jcastellano@ycst.com

*Liaison Counsel and Attorneys for Plaintiffs/Counter-Defendants Motorola, Inc., Cisco Systems, Inc., Scientific-Atlanta, Inc., ARRIS Group, Inc., Thomson, Inc., Ambit Microsystems, Inc., and NETGEAR, Inc.*

Of Counsel:

John Desmarais
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022-4611

Eric Lamison
Benjamin Ostapuk
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104

Russell E. Levine, P.C.
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL 60601

*Attorneys for Plaintiffs/Counter-Defendants*

Date:   May 30, 2008

73

## CERTIFICATE OF SERVICE

I, Jeffrey T. Castellano, Esquire, hereby certify that on June 5, 2008, a true and correct

copy of the foregoing document was served on the following in the manner indicated:

**BY E-MAIL**

Collins J. Seitz, Jr., Esquire
Francis DiGiovanni, Esquire
Connolly Bove Lodge & Hutz LLP
The Nemours Building – 8th Floor
1007 N. Orange Street
Wilmington, DE 19801
cseitz@cblh.com
fdigiovanni@cblh.com

Jack B. Blumenfeld, Esquire
Morris Nichols Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
jblumenfeld@mnat.com

David S. Benyacar, Esquire
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022
dbenyacar@kayescholer.com

Edward R. Reines, Esquire
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
edward.reines@weil.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Jeffrey T. Castellano*
Josy W. Ingersoll (No. 1088)
jingersoll@ycst.com
John W. Shaw (No. 3362)
jshaw@ycst.com
Jeffrey T. Castellano (No. 4837)
jcastellano@ycst.com
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600