IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>REMBRANDT TECHNOLOGIES, LP<br>PATENT LITIGATION | )<br>)<br>) MDL Docket No. 07-md-1848 (GMS)<br>)<br>)<br>)<br>) |

**NOTICE OF SUBPOENA TO ZENITH ELECTRONICS CORPORATION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE of the attached subpoena.

Dated: July 8, 2008                     CONNOLLY BOVE LODGE & HUTZ LLP

                                        /s/ Francis DiGiovanni
                                        Collins J. Seitz, Jr., Esquire (#2237)
                                        Francis DiGiovanni, Esquire (#3189)
                                        James D. Heisman, Esquire (#2746)
                                        1007 N. Orange Street
                                        P.O. Box 2207
                                        Wilmington, Delaware 19899
                                        (302) 658-9141
                                        cseitz@cblh.com
                                        fdigiovanni@cblh.com
                                        jheisman@cblh.com

                                        *Attorneys for Rembrandt Technology, LP*
                                        *and Rembrandt Technologies, LLC*

## **CERTIFICATE OF SERVICE**

I, Francis DiGiovanni, hereby certify that on the 8th day of July, 2008, a true copy of the foregoing **Notice of Subpoena to Zenith Electronics Corporation** was electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to the following and allow the document to be viewed and downloaded from CM/ECF, and has served on counsel as follows:

**BY E-MAIL**

Jack B. Blumenfeld
Karen Jacobs Louden
Rodger D. Smith II
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@mnat.com
klouden@mnat.com
rsmith@mnat.com

Richard K. Herrmann
Mary B. Matterer
Amy Arnott Quinlan
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801-1494
rherrmann@morrisjames.com

John W. Shaw
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391

jshaw@ycst.com

Richard D. Kirk
Scott G. Wilcox
Stephen B. Brauerman
Bayard, PA
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
rkirk@bayardlaw.com
swilcox@bayardlaw.com
sbrauerman@bayardlaw.com

2

1130479 v1

| | |
|---|---|
| Fredrick L. Cottrell, III<br>Kelly E. Farnan<br>Richards, Layton & Finger, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE 19801<br>cottrell@rlf.com<br>farnan@rlf.com | Peter J. Toren<br>Lawrence B. Goodwin<br>Monica V. Bhattacharyya<br>Stefan R. Stoyanov<br>Kasowitz, Benson, Torres & Friedman LLP<br>1633 Broadway<br>New York, NY 10019<br>ptoren@kasowitz.com<br>lgoodwin@kasowitz.com<br>mbhattacharyya@kasowitz.com<br>sstoyanov@kasowitz.com |
| Josh A. Krevitt<br>Charles J. Bourdreau<br>Gibson, Dunn & Crutcher LLP<br>200 Park Avenue, 47th Floor<br>New York, New York 10166-0193<br>jkrevitt@gibsondunn.com<br>cboudreau@gibsondunn.com | David Segal<br>Gibson, Dunn & Crutcher LLP<br>3161 Michelson Drive<br>Irvina, California 92612-4412<br>dsegal@gibsondunn.com |
| Amanda J. Tessar<br>Gibson, Dunn & Crutcher LLP<br>1801 California Street, Suite 4200<br>Denver, CO 80202-2642<br>atessar@gibsondunn.com | David S. Benyacar<br>Daniel L. Reisner<br>Kaye Scholer LLP<br>425 Park Avenue<br>New York, New York 10022<br>dbenyacar@kayescholer.com<br>dreisner@kayescholer.com |
| Matthew D. Powers<br>Edward R. Reines<br>Weil Gotshal & Manges LLP<br>201 Redwood Shores Parkway<br>Redwood Shores, CA 94065<br>matthew.powers@weil.com<br>edward.reines@weil.com | Robert A. Van Nest<br>Brian L. Ferrall<br>Daralyn J. Durie<br>Leo L. Lam<br>Matthew M. Werdegar<br>KEKER & VAN NEST LLP<br>710 Sansome Street<br>San Francisco, CA 94111<br>rvannest@kvn.com<br>bferrall@kvn.com<br>ddurie@kvn.com<br>llam@kvn.com<br>mwerdegar@kvn.com |

1130479 v1

| | |
|---|---|
| John Desmarais<br>Kirkland & Ellis LLP<br>Citigroup Center<br>153 East 53rd Street<br>New York, New York 10022<br>jdesmarais@kirkland.com | Eric R. Lamison<br>Kirkland & Ellis LLP<br>555 California Street, Ste. 2700<br>San Francisco, CA 94104<br>elamison@kirkland.com |
| Mitchell Stockwell<br>Kilpatrick & Stockton LLP<br>110 Peachtree Street, N.E.<br>Suite 2800<br>Atlanta, GA 30309<br>MStockwell@KilpatrickStockton.com | Bradford P. Lyerla<br>Kevin D. Hogg<br>Charles E. Juister<br>Marshall, Gerstein & Borun LLP<br>6300 Sears Tower<br>233 South Wacker Drive<br>Chicago, IL 60606-6357<br>blyerla@marshallip.com<br>khogg@marshallip.com<br>cjuister@marshallip.com |
| Richard Brown<br>Day Pitney LLP<br>200 Campus Drive<br>Florham Park, NJ 07932<br>rbrown@daypitney.com | Gerald Levy<br>Day Pitney LLP<br>7 Times Square<br>New York, NY 10036<br>glevy@daypitney.com |
| Jonathan Tropp<br>Day Pitney LLP<br>One Canterbury Green<br>201 Broad Street<br>Stamford, CT 06901 | |

By:    */s/ Francis DiGiovanni*
      Francis DiGiovanni (#3189)
      fdigiovanni@cblh.com

1130479 v1

# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

SUBPOENA IN A CIVIL CASE

In re:                                               )
                                                     )
REMBRANDT TECHNOLOGIES, LP                           )   MDL Docket No. 07-md-1848 (GMS)
PATENT LITIGATION                                    )
                                                     )
                                                     )
                                                     )

To:   Zenith Electronics LLC
      c/o The Corporation Trust Company
      Corporation Trust Center
      1209 Orange Street
      Wilmington, DE 19801

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF TESTIMONY | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date and time specified below (list documents or objects).

| PLACE OF DOCUMENT PRODUCTION | DATE AND TIME |
|---|---|
| CONNOLLY BOVE LODGE & HUTZ LLP<br>1007 N. Orange Street<br>P.O. Box 2207<br>Wilmington, Delaware 19899<br>(302) 658-9141 | July 22, 2008<br>9:30 a.m. |

☐ YOU ARE COMMANDED to produce and permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| [signature]<br>Attorney For Plaintiff Rembrandt Technologies, LP | July 8, 2008 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Francis DiGiovanni (#3189), CONNOLLY BOVE LODGE & HUTZ LLP, 1007 N. Orange Street, Wilmington, Delaware 19899   (302) 658-9141

(see Rule 45 Federal Rules of Civil Procedure Parts C&D on Reverse)

## PROOF OF SERVICE

| SERVED | DATE | Place: |
|---|---|---|
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
| SERVED BY (PRINT NAME) | | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____, 2008
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

## RULE 45. FEDERAL RULES OF CIVIL PROCEDURE, PARTS C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises - or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it:

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena:

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

## SCHEDULE A
## ATTACHED TO REMBRANDT'S SUBPOENA
## TO ZENITH ELECTRONICS LLC

### DEFINITIONS

    1.    "Zenith", "You", or "Your" means and refers to Zenith Electronics LLC, its divisions, affiliates, parent or controlling companies, all of their subsidiaries, divisions, past and present joint ventures, partnerships, predecessors-in-interest, successors, limited partnerships or other operating entities and, without limitations, all of their officers, directors, employees, representatives, agents, accountants, auditors, experts, consultants, attorneys, and other persons under their control or acting on behalf or at the direction of Zenith Electronics LLC or any of its related entities.

    2.    "Comcast" means and includes Comcast Corporation and Comcast Cable Communications, LLC, individually and collectively, including without limitation all of their corporate locations, and all predecessors, and affiliates, and all past or present directors, officers, agents, representatives, employees, consultants and attorneys, entities acting in joint-venture or partnership relationships with anyone or more of them, and others acting on behalf of anyone or more of them.

    3.    "Time Warner" means and includes Time Warner Cable, Inc., Time Warner Cable, LLC, Time Warner New York Cable, LLC, and Time Warner Entertainment Company, LP, individually and collectively, including without limitation all of their corporate locations, and all predecessors, and affiliates, and all past or present directors, officers, agents, representatives, employees, consultants, and attorneys, entities acting in joint-venture or partnership relationships with anyone or more of them, and others acting on behalf of anyone or more of them.

    4.    "Charter" means and includes Charter Communications, Inc. and Charter Communications Operating, LLC, individually and collectively, including without limitation all of their corporate locations, and all predecessors, and affiliates, and all past or present directors, officers, agents, representatives, employees, consultants, and attorneys, entities acting in joint-venture or partnership relationships with anyone or more of them, and others acting on behalf of anyone or more of them.

    5.    "Cox" means and includes Coxcom, Inc., Cox Communications, Inc., and Cox Enterprises, Inc., individually and collectively, including without limitation all of their corporate locations, and all predecessors, and affiliates, and all past or present directors, officers, agents, representatives, employees, consultants, and attorneys, entities acting in joint-venture or partnership relationships with anyone or more of them, and others acting on behalf of anyone or more of them.

    6.    "Cablevision" means and includes Cablevision System Corporation and CSC Holdings, Inc., individually and collectively, including without limitation all of their corporate locations, and all predecessors, and affiliates, and all past or present directors, officers, agents,

representatives, employees, consultants, and attorneys, entities acting in joint-venture or partnership relationships with anyone or more of them, and others acting on behalf of anyone or more of them.

      7. "Adelphia" means and includes Adelphia Communications Corporation, Century-TCI California Communications, LP, Century-TCI Holdings, LLC, Comcast of Florida/Pennsylvania, L.P. (f/k/a Parnassos, LP), Comcast of Pennsylvania II, L.P. (formerly Century-TCI California, L.P., Parnassos Communications, LP, Adelphia Consolidation, LLC, Parnassos Holdings, LLC, Western NY Cablevision, LP, individually and collectively, including without limitation all of their corporate locations, and all predecessors, and affiliates, and all past or present directors, officers, agents, representatives, employees, consultants, and attorneys, entities acting in joint-venture or partnership relationships with anyone or more of them, and others acting on behalf of anyone or more of them.

      8. The term "Multiple System Operators" means and includes Comcast, Time Warner, Charter, Cox, Cablevision, and Adelphia.

      9. "ABC" means ABC, Inc., individually and collectively, including without limitation all of their corporate locations, and all predecessors, and affiliates, and all past or present directors, officers, agents, representatives, employees, consultants, and attorneys, entities acting in joint-venture or partnership relationships with anyone or more of them, and others acting on behalf of anyone or more of them.

      10. "CBS" means CBS Corporation, individually and collectively, including without limitation all of their corporate locations, and all predecessors, and affiliates, and all past or present directors, officers, agents, representatives, employees, consultants, and attorneys, entities acting in joint-venture or partnership relationships with anyone or more of them, and others acting on behalf of anyone or more of them.

      11. "FOX" means Fox Entertainment Group, Inc. and Fox Broadcasting Company, individually and collectively, including without limitation all of their corporate locations, and all predecessors, and affiliates, and all past or present directors, officers, agents, representatives, employees, consultants, and attorneys, entities acting in joint-venture or partnership relationships with anyone or more of them, and others acting on behalf of anyone or more of them.

      12. "NBC" means NBC Universal, Inc., individually and collectively, including without limitation all of their corporate locations, and all predecessors, and affiliates, and all past or present directors, officers, agents, representatives, employees, consultants, and attorneys, entities acting in joint-venture or partnership relationships with anyone or more of them, and others acting on behalf of anyone or more of them.

      13. The term "Broadcasters" means and includes ABC, CBS, FOX, and NBC.

      14. The term "Harris Corporation" means Harris Corporation, individually and collectively, including without limitation all of their corporate locations, and all predecessors, and affiliates, and all past or present directors, officers, agents, representatives, employees,

consultants, and attorneys, entities acting in joint-venture or partnership relationships with anyone or more of them, and others acting on behalf of anyone or more of them.

15. "Rembrandt" means Rembrandt Technologies, LP including without limitation all of its corporate locations, and all predecessors, and affiliates, and all past or present directors, officers, agents, representatives, employees, and consultants.

16. "Remstream" means Rembrandt Technologies, LLC d/b/a Remstream, including without limitation all of its corporate locations, and all predecessors, and affiliates, and all past or present directors, officers, agents, representatives, employees, and consultants.

17. Any reference to any individual person, either singularly or as a part of a defined group, includes that individual person's employees, agents, successors, assignees, heirs, and representatives.

18. "Person" means any natural person or any business, legal, or governmental entity or association.

19. "Document" is used synonymously with the broadest meaning provided by Rule 34 of the Federal Rules of Civil Procedure, including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate Document within the meaning of this term. The term "Document" encompasses electronically stored information, including, without limitation, electronic files in their native format stored with any associated metadata.

20. "Thing" means any tangible object other than a Document including, without limitation, objects of every kind and nature, as well as prototypes, models, drafts, or specimens thereof.

21. The term "Communication" (or any variant thereof) means any contact between or among two or more Persons and includes, without limitation: written contact by any means such as letters, memoranda, telegrams, telecopies, telexes, e-mail, text messaging, instant messaging, and voicemail; the transmittal of information by any means; any oral contact such as face-to-face meetings or telephone conversations; and any writings memorializing such oral contact.

22. The words "relate," "regard," "concern" and "refer," and all derivatives thereof, signify reference, relation, or relevance to the subject matter, source document or thing (if any) and any document or thing that contains, records, discusses, involves, concerns, mentions, notes, evidences, memorializes, examines, describes, regards, pertains to, comments upon, reflects, identifies, or refers in any way to the matters set forth in the subject matter, source document, or thing.

23. The term "ATSC-Compliant Devices" includes digital television equipment compliant with the ATSC Digital Television Standard manufactured, sold, leased, or offered for sale by You, that have been offered for sale, leased, or sold by You to any of the Multiple

System Operators or Broadcasters or used by any of the Multiple System Operators or Broadcasters.

24.  The "ATSC Digital Television Standard" means the "ATSC Standard: Digital Television Standard (A/53), Revision B, with Amendment 1," and, where appropriate in context, specifically Section 4 of Annex D of that standard.

25.  "ATSC-Compliant Digital TV Signals" means signals that are generated in compliance with the requirements for terrestrial broadcast signals described in Section 4 of Annex D of the ATSC Digital Television Standard.

26.  The "MDL Litigation" means and includes the Multi-District Litigation In re: Rembrandt Technologies LP Patent Litigation, C.A. No. 07-1848-GMS (D. Del.), and the lawsuits consolidated therein, including the following: 06-cv-00635-GMS, Rembrandt Technologies LP v. Cablevision Systems Corporation et al.; 06-cv-00721-GMS, Coxcom Inc. v. Rembrandt Technologies LP; 06-cv-00727-GMS, Rembrandt Technologies LP v. CBS Corporation; 06-cv-00729-GMS, Rembrandt Technologies LP v. NBC Universal Inc.; 06-cv-00730-GMS, Rembrandt Technologies LP v. ABC Inc.; 06-cv-00731-GMS, Rembrandt Technologies LP v. Fox Entertainment Group Inc. et al.; 07-cv-00396-GMS, Rembrandt Technologies LP v. Adelphia Communications Corporation et al.; 07-cv-00397-GMS, Rembrandt Technologies LP v. Adelphia Communications Corp.; 07-cv-00398-GMS, Rembrandt Technologies LP v. Comcast Corporation et al.; 07-cv-00399-GMS, Rembrandt Technologies LP v. Sharp Corporation et al.; 07-cv-00400-GMS, Rembrandt Technologies LP v. Charter Communications Inc. et al.; 07-cv-00401-GMS, Rembrandt Technologies LP v. Time Warner Cable Inc. et al; 07-cv-00402-GMS, Rembrandt Technologies LP v. Time Warner Cable Inc.; 07-cv-00403-GMS, Rembrandt Technologies LP v. Comcast Corporation et al.; and 07-cv-00404-GMS, Rembrandt Technologies LP v. Charter Communications Inc. et al.

27.  The "Rembrandt v. Comcast Litigation" means the litigation styled Rembrandt technologies, LP v. Comcast Corporation, et al., Civil Action No. 2:05-cv-00443-TJW, filed in the Eastern District of Texas and since transferred to the District of Delaware.

28.  "Grand Alliance" means the group or entity that collaborated to develop a prototype of a digital television system from which the ATSC Digital Television Standard was initially established.

29.  "The '627 patent" means U.S. Patent No. 5,243,627.

30.  "Zenith Patents" mean all patents owned by or assigned to Zenith.

31.  "ATSC Patents" means patents which, if not licensed, would be infringed or You believe would be infringed by the implementation of the ATSC Digital Television Standard.

## **INSTRUCTIONS**

1.  For the purposes of this Subpoena, the following rules will apply: the singular form of a word includes the plural; any pronoun refers to the masculine, feminine, or neuter gender as the context requires; "and" and "or" are to be construed conjunctively or disjunctively, whichever is more inclusive; "all" includes and encompasses "any"; "any" includes and encompasses "each"; the use of a verb in any tense should be construed as the use of the verb in all other tenses.

2.  All documents must be produced either in the order and in the manner that they are kept in the usual course of business or organized and labeled to correspond with the document categories set forth in this Subpoena. Whenever a document or group of documents is removed from a file folder, binder, file drawer, file box, notebook, or other cover or container, a copy of the label or other means of identification of such cover or other container must be attached to the document.

3.  Each document and thing produced in response to this Subpoena must be produced along with any attachments or enclosures that have ever been attached to or enclosed with the document or thing at any time.

4.  If You cannot produce any of these documents in full, produce them to the fullest extent possible, specifying clearly the reasons for the inability to produce the remainder and stating whatever information, knowledge, or belief You have concerning the unproduced portion.

5.  If you cannot produce all of the requested documents, describe in detail every reason for any failure or inability to produce each of those requested documents.

6.  If you cannot locate documents or things responsive to this Subpoena after the exercise of due diligence, state in detail the particulars of the efforts You made to locate such documents or things and the reasons for their unavailability. If such documents or things exist but are unavailable to you, state, to the best of your knowledge, where the documents or things are located, including the name, address, and telephone number of the Person who has them.

7.  If any document covered by this Subpoena, or any portion thereof, is withheld by reason of a claimed privilege, a privilege log is to be furnished at the time that documents are produced, identifying any such document for which the privilege is claimed, together with the following information with respect to any document withheld, or any portion thereof: author(s); recipient(s); sender(s); indicated or blind copies; title of the document, if any; date; general subject matter; present location of all copies of such document; the basis or bases on which the privilege is claimed; and the request to which such document relates. Where a portion of a document has been withheld on the ground of privilege (for example, by redacting that portion of the document) the privilege log must identify the redacted document.

      8.     This Subpoena applies to all responsive documents in your possession, custody or control at the present time or that come into Your possession, custody, or control prior to the date of the production.

      9.     Except where the context otherwise provides, the relevant time frame for the purposes of Your providing document, things, and testimony in response to this Subpoena is from June 6, 1990 to the date of the completion of Your deposition (where a deposition is sought) or the date of production of documents or things (where a deposition is not sought).

      10.    You are not obligated by this Subpoena to produce again any documents or things, including source code, that You have already produced to Rembrandt or deposited into escrow in the Rembrandt v. Comcast Litigation, provided that You agree in writing that the Parties to the MDL Litigation may use the documents and things, including source code, so produced or deposited for all purposes in connection with all of the actions comprised in the MDL Litigation, subject to the terms and conditions of any Protective Orders in effect in the Rembrandt v. Comcast Litigation and in the MDL Litigation.

## REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS

Please produce the following documents pursuant to Fed. R. Civ. P. 45:

      1.     All Documents comprising Communications relating to the MDL Litigation between You and any of the Multiple System Operators, the Broadcasters, or any manufacturers of ATSC-Compliant Devices, including, without limitation, Harris Corporation, transmitter manufacturers, and/or modem manufacturers.

      2.     Documents, including all license agreements, evidencing the royalty rates paid by You to any Person for the right to make, use, sell, or import any ATSC-Compliant Device from September 7, 1993 to present.

      3.     Documents, including all license agreements, evidencing the royalty rates paid to You by any Person for the right to make, use, sell, or import any device compliant with the ATSC Digital Television Standard, from September 7, 1993 to present.

      4.     All Documents relating to the development and your involvement in the development of the ATSC Digital Television Standard.

      5.     All Documents relating to any evaluation by You of the ATSC Digital Television Standard, or any related standard.

      6.     All Documents comprising Communications between You and any other Person regarding licensing patents essential to the ATSC Digital Television Standard.

      7.     All Documents relating to the '627 patent.

      8.     All Documents, including all pertinent license agreements, evidencing the existence and terms of any agreement between You and any of the Multiple System Operators, the Broadcasters or any manufacturers of ATSC-Compliant Devices, including, without

limitation, Harris Corporation, transmitter manufacturers, and/or modem manufacturers, relating to the '627 patent.

9. All Documents comprising Communications between You and any of the Multiple System Operators, the Broadcasters or any manufacturers of ATSC-Compliant Devices, including, without limitation, Harris Corporation, transmitter manufacturers, and/or modem manufacturers, relating to the '627 patent.

10. All Documents relating to Your relationship with the Grand Alliance or its members in their role as part of the Grand Alliance.

11. All Documents comprising Communications between You and any of the Multiple System Operators, the Broadcasters, or any manufacturers of ATSC-Compliant Devices, including, without limitation, Harris Corporation, transmitter manufacturers, and/or modem manufacturers, relating to the Grand Alliance or its members in their role as part of the Grand Alliance.

12. Documents concerning whether the ATSC Digital Television Standard requires the use of the '627 patent, or whether the '627 patent is directed toward and essential to the implementation of the ATSC Digital Television Standard.

13. Documents identifying Zenith ATSC Patents.

14. Documents identifying non-Zenith ATSC Patents.

15. All license agreements relating to ATSC Patents.

16. All documents relating to licensing or related to attempts to license ATSC Patents.

17. Documents identifying patents which are essential to the implementation of the ATSC Digital Television Standard including, but not limited to, Zenith patents.

18. Documents from any action and/or proceeding, including, without limitation, Zenith v. Thompson Inc., et al., 5:06-cv-0017 (E.D. Tex.) in which Zenith asserted a claim of infringement of an ATSC Patent, including, without limitation, pleadings, discovery materials, court transcripts, deposition transcripts, and/or settlement agreements.