REDACTED VERSION FILED 10/17/08

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

In Re:                                            )
                                                  )
REMBRANDT TECHNOLOGIES, LP    ) MDL Docket No. 07-md-1848 (GMS)
PATENT LITIGATION                      )
                                                  )      **CONFIDENTIAL –**
                                                  )      **FILED UNDER SEAL**


**REMBRANDT TECHNOLOGIES, LP'S BRIEF IN OPPOSITION TO
COX COMMUNICATION'S MOTION TO DISQUALIFY
WOODCOCK WASHBURN LLP AND IN OPPOSITION
TO COX COMMUNICATION'S MOTION FOR A PROTECTIVE ORDER**


Collins J. Seitz, Jr. (#2237)
CONNOLLY BOVE LODGE
& HUTZ LLP
1007 N. Orange Street
P.O. Box 2207
Wilmington, Delaware 19899
Telephone: (302) 658-9141
cseitz@cblh.com

OF COUNSEL:
Paul B. Milcetic
Michael J. Bonella
Albert J. Marcellino
David J. Wolfsohn
Erich M. Falke
WOODCOCK WASHBURN LLP
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104
(215) 568-3100

REDACTED VERSION FILED 10/17/08

# TABLE OF CONTENTS

I.    NATURE AND STAGE OF THE PROCEEDINGS ............................................................1

II.   SUMMARY OF ARGUMENT .......................................................................................1

III.  FACTUAL BACKGROUND ..........................................................................................2

IV.   ARGUMENT ..................................................................................................................4

    A.    The Law Governing Disqualification Motions Under Model Rule 1.9 ...................4

        1.    Motions for Disqualification Are Treated with Disfavor Because They are Often Used as "Procedural Weapons" ...........................................4

        2.    A Rule 1.9 Challenge Requires a "Painstaking Analysis of the Facts" not "Vague and Unsupported Allegations" ......................................4

    B.    Cox Has Utterly Failed to Meet Its Burden of "Clearly" Proving a "Substantial Relationship" Between any Matter in Which Woodcock Represented Cox and the '627 Patent Litigation ......................................................6

    C.    Rembrandt's Evidence Leaves No Doubt That the Matters in Which Woodcock Represented Cox are Not "Substantially Related" To This Litigation ...............................................................................................................8

        1.    The Nature and Scope of the 627 Patent Litigation ....................................8

        2.    The ████████████████ Matters Are not Substantially Related to the  627 Patent Litigation ...........................................................9

            a)    The ████ Patent Matter Concerned Video on Demand, not the '627 Patent or Its Technology ...........................................10

            b)    The ████████████████████████████ Is not Substantially Related to the '627 Patent Litigation or Its Technology ...........................................................................15

            c)    Woodcock's Review of Certain Patents Owned by ████ Is not Substantially Related to Its Representation of Rembrandt in the '627 Patent Litigation ......................................16

    D.    The "Severe Sanction" of Disqualification is Unwarranted Because No Woodcock Attorney Has Provided or Will Provide any Cox Confidential Information to Rembrandt or to a Member of the 627 Patent Litigation Team ......................................................................................................................18

REDACTED VERSION FILED 10/17/08

## TABLE OF AUTHORITIES

### FEDERAL CASES

*American Roller Co. v. Budinger,*
    513 F.2d 982 (3d Cir. 1975) ...............................................................................5, 13

*American Sterilizer Co. v. Surgikos, Inc.,*
    1992 U.S. Dist. LEXIS 21542 (N.D. Tex. Jun. 12, 1992)..........................................18

*Clark Capital Mgt. Group, Inc. v. Annuity Investors Life Ins. Co.,*
    149 F. Supp. 2d 193 (E.D. Pa. 2001).......................................................................19

*Duncan v. Merrill Lynch, Pierce, Fenner & Smith,*
    646 F.2d 1020 (5th Cir. 1981) ....................................................................................7

*Elonex I.P. Holdings, Ltd. v. Apple Computer, Inc.,*
    142 F. Supp. 2d 579 (D. Del. 2001) .............................................................2, 4, 14, 19

*INA Underwriters Ins. Co. v. Noblitsky,*
    594 F. Supp. 1199 (E.D. Pa. 1984) .....................................................................10, 14

*INA Underwriters Insurance Co. v. Rubin,*
    635 F. Supp. 1 (E.D. Pa. 1983)................................................................................19

*Integrated Health Services of Cliff Manor, Inc. v. THCI, Co.,*
    327 B.R. 200 (D. Del. Jul. 18, 2005)..............................................................6, 9, 14

*Microsoft Corp. v. Toshiba America Information System, Inc.,*
    2007 U.S. Dist. LEXIS 91550 (E.D. Tex. Dec. 13, 2007) ...........................................5

*Nemours Found. v. Gilbane,*
    632 F. Supp. 418 (D. Del. 1986) ...............................................................................19

*Panduit Corp. v. All States Plastic Manufacturing Co.,*
    744 F.2d 1564 (Fed. Cir. 1984) ................................................................................19

*Reliant Pharms., Inc. v. Par Pharm., Inc.,*
    2008 U.S. Dist. LEXIS 33461 ..............................................................4, 6, 10, 13, 14

*Santacroce v. Neff,*
    134 F. Supp. 2d 366 (D.N.J. 2001)...........................................................................18

*Satellite Fin. Planning v. First Nat'l Bank,*
    652 F. Supp. 1281 (D. Del. 1987) ..................................................................4, 5, 10, 14

REDACTED VERSION FILED 10/17/08

*SWS Finance Fund A v. Salomon Brothers, Inc.,*
    790 F. Supp. 1392 (N.D. Ill. 1992) ............................................................................4

*Talecris Biotherapeutics, Inc. v. Baxter Int'l, Inc.,*
    491 F. Supp. 2d 510 (D. Del. 2007) .......................................................5, 7, 12, 13, 16

*United States v. Kossak*, 275 F. Supp. 2d 525 (D. Del. 2003) ...........................................4

## STATE CASES

*In re Appeal of Infotechnology, Inc.*, 582 A.2d 215 (Del.1990) .........................................4

## MISCELLANEOUS

*Manual on Complex Litigation, Fourth* ...........................................................................4

## I.   NATURE AND STAGE OF THE PROCEEDINGS

This is a multidistrict litigation ("MDL") that encompasses at least fifteen underlying

patent infringement actions against more than fifteen defendants (D.I. 1).  Plaintiff Rembrandt

Technologies, LP ("Rembrandt") is asserting nine patents, including "Eight Patents" and U.S.

Patent No. 5,243,627 ("the 627 Patent") (D.I. 126).  Rembrandt alleges that certain defendants,

including Cox Communications, Inc. ("Cox"), infringe the 627 Patent by the "receipt and

retransmission over cable television systems of digital terrestrial broadcast signals that comply

with the ATSC Digital Television Standard" (D.I. 191 at ¶ 12).  Rembrandt has selected

Woodcock Washburn ("Woodcock") to be its trial counsel for the 627 Patent side of the MDL

("the 627 Patent Litigation").  On September 22, 2008, Cox, one of the more than fifteen

defendants in the MDL, filed a motion to disqualify Woodcock, relying upon its status as a

former client of Woodcock's (D.I. 355).  Rembrandt now opposes Cox's motion.

## II.   SUMMARY OF ARGUMENT

Disqualification motions are disfavored.  Cox nevertheless claims that three discrete

transactional matters that Woodcock performed for Cox are "substantially related" to the 627

Patent Litigation and that Model Rules 1.9 and 1.10 warrant Woodcock's disqualification.  But

Cox has failed to carry its burden to clearly demonstrate that disqualification is warranted

because the evidence that it relies upon contains only vague and unsupported allegations.

There is no doubt that the matters that Cox describes in its brief and its supporting

declaration are not substantially related to the litigation.  Those matters did not involve the 627

Patent or its technology, did not involve any of the Eight Patents, and did not involve what Cox

considers to be prior art to the 627 Patent.  The three matters that Cox describes in its brief had

nothing to do with error correction techniques described in the ATSC standard.  Instead, the

three matters related to Cox's video on demand, ad insertion, electronic program guide services,

1

REDACTED VERSION FILED 10/17/08

and a 20-minute-per-patent review of certain patents owned by a patent holding company in which Cox has an interest.  Cox tries to make the transactions that Woodcock previously worked on for Cox sound related to this litigation by claiming the transactions related to "digital television."  But that claim is akin to arguing that a patent on a tire is "related" to a patent on a radio because tires and radios are both found on cars.  The relevant legal precedent establishes that more is needed than a statement that the matters that Woodcock worked on for Cox are superficially similar to this litigation.

Finally, even if there were a "substantial relationship" between any of the prior Cox matters and this case, disqualification would still not be warranted because the Court could address that purported violation by implementing a less drastic measure, such as ordering an ethical screen.  Rembrandt has already offered and implemented an ethical screen, but Cox has insisted that it would only consent to Woodcock's representation of Rembrandt if Rembrandt's substantive claims are limited or waived.  Cox's motion is merely a "dilatory tactic[] intended to divert the litigation from attention to the merits" and should be denied. *Elonex I.P. Holdings, Ltd. v. Apple Computer, Inc.*, 142 F. Supp. 2d 579, 584 (D. Del. 2001).

III.   **FACTUAL BACKGROUND**

Cox is a former client of Woodcock's.  Woodcock, a patent law firm, had represented Cox in a few discrete patent-related matters until March 11, 2008.  Roccia Decl. ¶ 14 (Rembrandt Ex. A).  By that time, Woodcock had already represented Rembrandt in matters unrelated to the 627 Patent Litigation since January, 2006. *Id.* at ¶ 33.  Woodcock has never represented Cox in any litigation. *Id.* at ¶ 11.  Woodcock has never represented Cox with respect to the '627 Patent or any other patents asserted in this MDL. *Id.* at ¶ 12.  The matters that Cox engaged Woodcock to work on have concerned patents and technology completely unrelated to the '627 Patent and its subject matter. *Id.* at ¶¶ 12, 14, 17, 21.

On March 11, 2008, Woodcock completed its only outstanding project for Cox, and then informed Cox's in-house counsel, Marcus Delgado, Esq., that it was formally terminating the relationship because it could in the future be engaged in a matter that would be adverse to Cox. Rembrandt Ex. A at ¶¶ 29, 31. At the time, Mr. Delgado never objected to such a potential representation. *Id.* at ¶¶ 30-32. Nor did Mr. Delgado take the position that this MDL, which was then already pending, was, in fact, related to any work Woodcock had done for Cox. *Id.*

Woodcock was not retained to represent Rembrandt in this MDL until August 19, 2008. Rembrandt Ex. A at ¶ 33. Woodcock entered its appearance on September 4, 2008 (D.I. 327) Cox first asserted that Woodcock's representation of Rembrandt in the '627 Patent Litigation posed a conflict in a letter dated September 9, 2008 (Ex. 1 to Cox's Motion), more than five months after Woodcock had disclosed to Cox that it might at some point be adverse to Cox.

Despite the fact that Cox offered no basis for its position that any matter in which Woodcock had represented Cox was at all related to the '627 Patent Litigation, to say nothing of *substantially* related, Woodcock nevertheless offered to screen all attorneys who had worked on any Cox matters from the litigation. Ex. 9 to Cox's motion. Cox rejected the offer, without explaining why such a screen would not fully insulate any perceived Cox confidential information from the Woodcock attorneys handling the 627 Patent litigation. Cox indicated that it would consent to Woodcock's representation of Rembrandt only if Rembrandt agreed to limit or waive its substantive claims, including its damages claims. Ex. 8 to Cox's motion; Cox Br. at 14-15. After filing this motion, Cox used it as an excuse to delay discovery. *See, e.g.,* Rembrandt Ex. B at p. 1 ("Given the parties' current unresolved concerns relating to your firm's representation of Rembrandt, CoxCom is not in a position to make any witnesses available to Woodcock Washburn for depositions."). Cox has used its motion as the very "procedural

weapon" that the courts abhor. *United States v. Kossak,* 275 F. Supp. 2d 525, 531 (D. Del. 2003) (Sleet, J.), *quoting In re Appeal of Infotechnology, Inc.,* 582 A.2d 215, 220 (Del.1990).

## IV.   ARGUMENT

### A.   The Law Governing Disqualification Motions Under Model Rule 1.9

#### 1.   Motions for Disqualification Are Treated with Disfavor Because They are Often Used as "Procedural Weapons"

"Because public policy favors allowing a litigant to choose his or her own counsel, motions to disqualify are generally disfavored" because they "'have increasingly been used as one weapon in the litigation arsenal.'" *Reliant Pharms., Inc. v. Par Pharm. Inc.,* 2008 U.S. Dist. LEXIS 33461 at * 6 (D. Del. Apr. 23, 2008), *quoting Satellite Fin. Planning v. First Nat'l Bank,* 652 F. Supp. 1281, 1282-83 (D. Del. 1987). "[M]otions to disqualify are viewed with caution because of the potential for their misuse . . . as 'dilatory tactics intended to divert the litigation from attention to the merits.'" *Elonex I.P. Holdings,* 142 F. Supp. 2d at 584, *quoting SWS Fin. Fund A v. Salomon Bros., Inc.*, 790 F. Supp. 1392, 1401 (N.D. Ill. 1992). Court's especially scrutinize motions to disqualify when those motions are filed in an MDL because of the sheer number of parties and issues in the case. *Manual on Complex Litigation, Fourth* at 29 ("Motions for disqualification should be reviewed carefully to ensure that they are not being used merely to harass. . . .").

#### 2.   A Rule 1.9 Challenge Requires a "Painstaking Analysis of the Facts" not "Vague and Unsupported Allegations"

The sole basis for Cox's motion is Rule 1.9 and 1.10 of the ABA Model Rules. Rule 1.9 provides that:

> "[a] ***lawyer*** who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."

(emphasis supplied). "Courts routinely consider three factors when considering the substantial

relationship test" to determine whether lawyer is disqualified. *Talecris Biotherapeutics, Inc. v.*

*Baxter Int'l, Inc.*, 491 F. Supp. 2d 510, 514 (D. Del. 2007) (Sleet, J.)  The factors are "1) the

nature and scope of the prior representation; 2) the nature and scope of the current

representation; and 3) during the prior representation, the possibility that the client disclosed

confidences which could be relevant to the current action and detrimental to the former client in

the course of the current litigation." *Id.*   In determining whether the "substantial relationship"

test has been met, "a court should undertake a 'painstaking analysis of the facts.'" *Satellite Fin.*

*Planning*, 652 F. Supp. at 1283.  In a patent case, this "painstaking analysis" requires analyzing

the "subject matter of the patents" in suit, the issues likely to arise, and a comparison of the prior

representation to the specific substantive issues likely to arise in the case. *American Roller Co.*

*v. Budinger*, 513 F.2d 982, 986 (3d Cir. 1975).  "Vague and unsupported allegations are not

sufficient to meet the standard that requires a party moving to disqualify to clearly show that

continued representation would be impermissible." *Talecris,* 491 F. Supp. 2d at 515 n.2.  Where,

as here, the later adverse representation involves a different patent in suit than that which was at

issue in the previous engagement, courts find that disqualification is generally not warranted. *Id.*

at 514-15 (no "substantial relationship" where attorney previously represented owner of patent in

suit and later represented adversary of prior client in patent litigation in which earlier patent in

suit was prior art to current patent in suit); *Microsoft Corp. v. Toshiba Am. Info. Sys., Inc.*, 2007

U.S. Dist. LEXIS 91550, at *24-*25 (E.D. Tex. Dec. 13, 2007) (where law firm had done "vast

amounts of intellectual property work for Marvell on WLAN technology" and later litigation

involved patent on WLAN technology, held: insufficient to establish "substantial relationship";

"sole presence of related subject matter does not establish a substantial relationship").

REDACTED VERSION FILED 10/17/08

> **B.** **Cox Has Utterly Failed to Meet Its Burden of "Clearly" Proving a "Substantial Relationship" Between any Matter in Which Woodcock Represented Cox and the '627 Patent Litigation**

The burden is on Cox to "*clearly* demonstrate[] that the disqualification . . . is warranted." *Reliant Pharms.*, 2008 U.S. Dist. LEXIS 33461, at *13 (emphasis supplied); *Integrated Health Servs. of Cliff Manor, Inc. v. THCI, Co.*, 327 B.R. 200, 209 (D. Del. Jul. 18, 2005) (disqualification motion denied where plaintiffs had not "clearly shown" that continued representation would be impermissible). Cox has failed to carry its burden because it has only provided vague, superficial allegations. For example, throughout Mr. Delgado's declaration and Cox's brief there are vague, general references to unspecified "numerous interviews" about unspecified matters between unidentified "Woodcock Attorneys" and unidentified "Cox employees." Cox Br. at 1-2; Delgado Decl. ¶¶ 3, 5, 6, 8, 9, 12.

Notably, Mr. Delgado mentions Woodcock attorneys by name on only four occasions, each in the context of discrete legal assignments that are indisputably unrelated to this litigation. Delgado Decl. ¶¶7, 10, 13-14. Even Cox does not argue that the legal work that was allegedly performed by the attorneys that are actually named in the Delgado declaration is somehow substantially related to this litigation.

Unable to meet its burden, Cox also takes liberties with the record, as when it contends that "Woodcock Washburn advised Cox about 'what settlements to accept and what offers to reject,'" Cox. Br. at 12, when, in fact, even Mr. Delgado's declaration says no such thing, and Woodcock *never* represented Cox in *any* litigation. Rembrandt Ex. A at ¶ 11. Cox also resorts to conclusory allegations, describing Woodcock's representation of Cox as "substantial," Cox. Br. at 18, "significant," *id.* at 8, and making broad, vague statements such as "Woodcock Washburn gained familiarity with Cox's approach to infringement matters," *id.* at 12, and it acquired "insight into the thinking and demeanor of [unidentified] key Cox employees whose

REDACTED VERSION FILED 10/17/08

work centers around Cox's digital television services," *id.*  Such vague statements are plainly

insufficient to support disqualification. *Talecris,* 491 F.Supp. 2d. at 515 n. 2.  Rather Cox must

show how Woodcock acquired confidential information that would "be used to the detriment" of

Cox *in this litigation*, and that would not "become known and available through the normal

course of discovery." *Talecris,* 491 F. Supp. 2d at 515 & n.2.  Certainly, Rembrandt will be able

to acquire "insight into" the "thinking" and "demeanor" of any "key" Cox employees by taking

their depositions. *See also* Comment to Rule 1.9 ("a lawyer who recurrently handled a type of

problem for a former client is not precluded from later representing another client in a factually

distinct problem of that type even though the subsequent representation involves a position

adverse to the prior client.").

     In *Satellite Financial Planning,* Judge Wright held that the Morris Nichols firm's prior

representation *of* Satellite-Delaware in certain corporate matters was not substantially related to

its representation of First National Bank in a lawsuit *against* Satellite-Delaware. 652 F. Supp. at

1285.  In so holding, Judge Wright relied heavily on the Fifth Circuit's opinion in *Duncan v.*

*Merrill Lynch, Pierce, Fenner & Smith,* 646 F.2d 1020, 1029 (5th Cir. 1981):

> Merely stating that the previous representation involved securities work,
> conferences with Merrill Lynch employees, and the preparation of various legal
> documents provides the district court with no opportunity to engage in a
> 'painstaking analysis of the facts.' The statements offered by and accepted by the
> district court as evidence of a substantial relationship, could be applied to
> virtually any law firm that had ever represented Merrill Lynch or any large
> brokerage firm. However, the fact that Smathers & Thompson used to represent
> Merrill Lynch even on a variety of matters and over a relatively long period of
> time, is alone insufficient to establish the required nexus with the present case.

     For the reasons stated in *Duncan*, Cox cannot seek disqualification merely by asserting

that certain unidentified Woodcock attorneys had "conferences" with unidentified Cox

employees, "learned about Cox's strategic thinking and business imperatives," or had a "long-

standing attorney-client relationship with Cox" that was "substantial."  In view of Cox's

complete failure to offer specific allegations of an alleged ethical violation, this Court would be justified in denying Cox's motion even if Rembrandt had submitted no evidence in support of this opposition.

### C.   Rembrandt's Evidence Leaves No Doubt That the Matters in Which Woodcock Represented Cox are Not "Substantially Related" To This Litigation

#### 1.   The Nature and Scope of the 627 Patent Litigation

Among other things, the technology set forth in the 627 Patent applies certain forward error correction techniques (described in the ATSC standard) to digital TV signals, such as those that are broadcast through the air by television stations (referred to as terrestrial signals). Cox infringes the '627 Patent by, for example, receiving these over-the-air broadcast TV signals, and recovering the content carried by such signals using the teachings of the 627 Patent. Cox maintains that the technology of Cox's that is at issue is its receivers that receive "digital terrestrial broadcast signals that comply with the ATSC Digital Television Standard." Cox. Br. at 10. Cox also claims that it does not have information about that technology. Cox has responded to discovery seeking information about the "structure, function, and operation of [Cox's] ATSC-Compliant Devices," by stating:

> Cox further objects to this request as overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence on the grounds that it *seeks information that is not within Cox's possession, custody or control,* or to the extent it seeks information that is more easily or appropriately obtainable from Cox's equipment vendors the other defendants, or other third-parties. *Cox was not involved in the conception, design, manufacturing, production or development of any ATSC-Compliant Devices.*

*See, e.g.,* Rembrandt Ex. C at p. 7. Given Cox's position that it was ***not*** involved in the conception, design, manufacturing, production or development of the accused equipment, and that the pertinent information about such equipment is ***not within Cox's possession, custody or control,*** it strains the imagination to understand what pertinent confidential information

8

Woodcock could have possibly learned from Cox about the technology at issue in the 627 Patent Litigation. If, as Cox contends, the pertinent confidential technical information at issue in this case resides with Cox's *equipment vendors*—rather than Cox itself—it is clear that no such confidential technical information could possibly have passed from Cox to the Woodcock firm during the prior representation.

In responding to Rembrandt's invalidity interrogatories, Cox has cited 78 references that it claims are invalidating prior art. Rembrandt Ex. D at pp. 12-18. Cox does not contend that any of these prior art references were ever reviewed by Woodcock in connection with a Cox matter, much less that any confidential information regarding any of these alleged prior art references was provided to Woodcock by Cox.

2. The ▓▓▓▓▓▓▓▓▓▓▓▓ **Matters Are not Substantially Related to the 627 Patent Litigation**

Cox asserts that three matters in which Woodcock represented Cox are "substantially related" to the 627 Patent Litigation. Cox Br. at 8-9. But Cox never shows how Woodcock acquired any confidential information from those matters that is (1) related to the subject matter of this litigation and (2) could be used "'to the detriment of the former client in the subsequent action.'" *Integrated Health Servs.*, 327 B.R. at 206. In determining whether Woodcock was ever provided with any such confidential information, the Court should consider whether Cox and Woodcock attorneys "ought to have discussed the relevant facts" of the '627 Patent Litigation or whether it "would not have been unusual" for Cox and Woodcock to have discussed such relevant facts. *Id.* at 209. In performing this analysis, the "court should not allow its imagination to run free with a view to hypothesizing conceivable but unlikely situations in which confidential information 'might' have been disclosed which would be relevant to the present suit.'" *Satellite Fin. Planning*, 652 F. Supp. at 1284, *quoting INA Underwriters Ins. Co. v.*

REDACTED VERSION FILED 10/17/08

*Nalibotsky*, 594 F. Supp. 1199, 1206 (E.D. Pa. 1984).  "The mere disclosure of confidential

information to counsel in the course of the prior representation is not, itself, sufficient grounds

for disqualification of that counsel when he later represents an adverse party.  The confidential

information *must be of the type which one would expect to be related to the issues in the present

litigation*." *INA Underwriters*, 594 F. Supp. at 1207 (emphasis supplied).  Cox does not come

close to meeting that burden.  Cox never shows that there is any "risk of disclosure of client

confidences [to Woodcock] that would be detrimental to [Cox] *in the context of this litigation*."

*Reliant Pharms.*, 2008 U.S. Dist. LEXIS 33461, at *12 (emphasis supplied).

> a) The ▓▓▓ Patent Matter Concerned Video on
> Demand, not the 627 Patent or Its Technology

Woodcock's representation of Cox in connection with the ▓▓▓ patents concerned

Cox's video on demand service in homes and hotels, plus Cox's use of ad insertion to distribute

advertising to cable subscribers ("ad insertion").  Rembrandt Ex. A at ¶¶ 16, 17.  A picture of a

typical video on demand architecture is shown below.



Video on Demand enables a viewer to have direct control over at least some of the content that is

distributed to them.  *Id.* at ¶ 7.  Viewers can request specific content via set top boxes and

exercise playback control over the selected content, received from the video server, including

fast forward, reverse and pause.  *Id.*  Ad insertion enables advertisers to provide advertising

REDACTED VERSION FILED 10/17/08

content to subscribers of cable services.  Advertisers pay Cox to insert their advertisements into Cox's cable distribution system.  *Id.*  Ads are distributed via cable to the viewers set top box, where the advertisements are inserted into the content and displayed to the viewers.  *Id.*

Woodcock was asked to provide ██████████████████████████████ ████████████████████████████████████████████████████████████ ████████ but it did not represent Cox in connection with any litigation.  Rembrandt Ex. A at ¶¶ 11, 18.  Mr. Roccia then ████████████████████████████████████████████████.  *Id.* at ¶ 19.

None of the ████████ patents is in suit in this MDL, or even listed as alleged prior art references in Cox's answers to Rembrandt's invalidity interrogatories.  Rembrandt Ex. D at pp. 12-18.  The technologies covered by the ████████ patents have nothing to do with Cox's receipt of ATSC TV signals, or the recovery of the content carried by such signals using the teachings of the '627 patent.  Rembrandt Ex. A at ¶ 17.

Woodcock never examined any actual systems of Cox's or learned any confidential information about any of Cox's systems in connection with this matter.  Rembrandt Ex. A at ¶ 16.  Woodcock received no source code, technical schematics or any other internal documents belonging to Cox in connection with the ████ matter.  *Id.*  Woodcock never learned anything about the devices accused of infringement in the 627 Patent Litigation —the "Accused Instrumentalities"-- and it is beyond dispute that Woodcock could not have learned anything confidential from Cox about such devices in light of Cox's position that it knows nothing about the "conception, design, manufacturing, production or development of any ATSC-Compliant Devices."  Rembrandt Ex. C at p. 7, No. 1.

REDACTED VERSION FILED 10/17/08

Cox argues that Woodcock "studied Cox's digital television systems, including specifically how Cox *__transmits__* digital television signals." Cox Br. at 9.  But Cox's position that it lacks possession, custody or control of information concerning its implementation of the technology at issue in the 627 Patent Litigation makes clear that the information allegedly studied by Woodcock has *nothing* to do with the 627 Patent Litigation.  Significantly, Cox fails to inform the Court that Woodcock never examined *any* Cox equipment used to *__receive__* digital signals.  Rembrandt Ex. A at ¶ 16.  More importantly, Mr. Delgado never claims that Woodcock learned anything about the functionality in Cox's systems for receiving (and recovering content carried by) ATSC TV signals, the only technology of Cox's that Cox claims to be at issue in the 627 Patent Litigation.  Cox. Br. at 10.  Indeed, Mr. Delgado never says that he believes that anything that Woodcock "studied" had anything whatsoever to do with Cox's receipt (or recovery) of ATSC transmissions or Cox's use of any of the teachings claimed in the 627 Patent.

Cox's strategy of describing highly technical, circumscribed representations at a 30,000-foot level of generality by using vague terms like "digital television" in an attempt to make dissimilar technologies and representations appear "related" has been tried before, and always rejected—even in cases in which the patent in suit *was* related to a prior representation.  In *Talecris*, Talecris argued that Baxter's counsel Townsend should be disqualified under Rule 1.9 because Baxter's counsel had previously represented Talecris in patent litigation, and now was representing Baxter in patent litigation against Talecris.  *Talecris*, 491 F. Supp. 2d at 512-14.  Talecris argued that the two matters overlapped because the patent in suit (the Tenold patent) in the prior case was invalidating prior art to the patent in suit in the later case.  The court concluded that "the two litigations overlap to some degree," but found that any confidential information received by Talecris' former counsel about the invalidating Tenold patent would not

REDACTED VERSION FILED 10/17/08

be relevant in the later suit: "Given that it is the validity of the '191 patent and not the validity of the Tenold patent that is at issue in the present litigation, any confidential information Townsend might have learned about the Tenold patent during its brief representation of Miles is not relevant to the validity of the '191 patent." *Id.* at 515. Moreover, whatever Talecris' prior counsel might have learned about "individuals who are witnesses in the instant litigation, as well as access to confidential licensing agreements that were subject matter of the prior litigation and are now subject matter of the instant litigation" would have "become known and available through the normal course of discovery." *Id.* at 515 n.2. Disqualification was therefore denied.[1]

And in *Reliant Pharmaceuticals*, the firm being challenged—Frommer Lawrence—had previously represented Reliant in connection with its purchase of Rythmol and of the '588 patent. *Reliant Pharms.*, 2008 U.S. Dist. LEXIS 33461, at *2. Frommer Lawrence had even sent Reliant an opinion regarding the feasibility of a design around for the '588 patent, done a prior art analysis, and given advice about Hatch-Waxman exclusivity. *Id.* at *8-*9. Frommer Lawrence then undertook the representation of Par against Reliant in a case in which the '588 was the *patent in suit*. Despite the Frommer Lawrence's representation of Reliant regarding aspects of the same patent being asserted against Par, the court found no substantial relationship: the issues of the infringement, validity, and enforceability of '588 patent would be different, and

---

[1] *See also American Roller,* 513 F.2d at 984 (where litigation counsel for American Roller in a patent lawsuit against Du Pont had previously prepared and filed 17 patent applications for Du Pont dealing with Corfam and American Roller sought damages against Du Pont arising from Du Pont's sale of Corfam to American Roller, matters were "related" to Corfam but not substantially related: patent prosecution work for Du Pont did not relate to Corfam *sales;* such work "bore no meaningful relationship with the subject matters" of those counts of the complaint that assumed the validity of the patents in suit).

REDACTED VERSION FILED 10/17/08

there was therefore "no risk of disclosure of client confidences that would be detrimental to Reliant in the context of this litigation." *Id.* at *12.[2]

Mr. Delgado's declaration does not support the conclusion that there is any "risk of disclosure of client confidences that would be detrimental to" Cox based on Woodcock's representations of Cox involving video on demand in homes or hotels and ad insertion.  Those technologies have nothing to do with the issues involving the enforcement of the '627 Patent and Woodcock learned nothing confidential about any of Cox's systems in connection with this matter.  Indeed, Cox was happy to have Mr. Roccia share his ████████ views with ████—the directly adverse party in that matter.  Rembrandt Ex. A at ¶ 19; *see* Comment to Rule 1.9 ("Information that has been disclosed . . . to other parties adverse to the former client ordinarily will not be disqualifying.").  Cox does not come close to meeting its burden that the matters are so related that Cox and Woodcock attorneys "ought to have discussed the relevant facts" of the '627 Patent Litigation, *Integrated Health Servs.*, 327 B.R. at 209, or that any confidential information disclosed was "of the type which one would expect to be related to the issues in the present litigation." *INA Underwriters*, 594 F. Supp. at 1207.  As the court stated in *Satellite Financial Planning,* "[m]ore facts of a relationship are needed than a simple statement of prior work done in a superficially similar area." *Id.* at 1285.

---

[2] *See also Elonex,* 142 F. Supp. 2d at 582, 583-85 (finding permissible under Rule 1.7 the concurrent representation of two adversaries by the Dechert firm—as local counsel *for* Apple Computer in one patent litigation and as lead counsel in another patent litigation filed *against* Apple Computer—despite Apple's claim that "the overlap between the two suits is too great"; holding that the two patent infringement matters were not "directly related," since they involved a "different type of technology").

REDACTED VERSION FILED 10/17/08

b)   The ██████████████████████ Agreement Is not Substantially Related to the 627 Patent Litigation or Its Technology

The ████████ matter involved electronic program guide technology, which permit cable users to view menus of TV content and select particular content using various menu prompts. Rembrandt Ex. A at ¶ 21.  An electronic program guide is shown in the diagram below:



The technology covered by the ████████ patents examined by Woodcock and the ████████ ████████ had nothing to do with the functionality in Cox's systems for receiving (and recovering content carried by) ATSC signals.  Rembrandt Ex. A at ¶ 21; Arena Decl. at ¶¶ 9, 11 (Rembrandt Ex. E).  Moreover, Woodcock learned nothing confidential about any of Cox's systems in connection with this matter.

Mr. Delgado argues that unidentified "Woodcock Washburn attorneys provided specific legal *advice* concerning ████████████ of the ████████ ██████████, including for example those relating to the ██████████████ of Cox's digital television receivers and Cox's requirements for transmission broadcast and reception of digital television signals." Delgado Decl. ¶ 9 (emphasis supplied).  Once again Mr. Delgado plays word games in trying to create the impression that Woodcock learned something about the technology involved in the infringement claims against Cox--ATSC-compliant devices—by using the words "digital television receivers."  But, of course, Mr. Delgado does *not* say that Woodcock was engaged in

15

REDACTED VERSION FILED 10/17/08

any matter concerning ATSC-compliant devices or that it received confidential information

about such devices.  Instead, he argues that Woodcock "provided specific legal advice" about

███████████████████.  As made clear by Mr. Arena's declaration, the ██████████

about which Woodcock may have provided advice had nothing to do with ATSC-compliant

devices.  Rembrandt Ex. E at ¶ 11.  Moreover, it is difficult to understand how Mr. Arena could

have learned anything confidential that would not be found in the ██████████—which was

shared with Cox's adversary--█████.  *Id.*; *see* Comment to Rule 1.9.

In *Talecris,* this Court found no substantial relationship between two patent litigations,

despite the fact that the firm whose disqualification was sought had "access to confidential

licensing agreements that were subject matter of the prior litigation and are now subject matter of

the instant litigation."  *Talecris*, 491 F. Supp. 2d at n. 2.  Here, the ████ ██████████

will *not* be an issue in the 627 Litigation.  Accordingly, the case for finding a "substantial

relationship" here is even more "tenuous" than this Court found to be the case in *Talecris*.

          c)       **Woodcock's Review of Certain Patents ██████**
                           **████ Is not Substantially Related to Its Representation**
                           **of Rembrandt in the 627 Patent Litigation**

Woodcock's review of certain patents ████████████████████ involved

████████████████████████████████████████████████

██████████.  Rembrandt Ex. A at ¶ 24.[3]  None of the patents reviewed was the '627 patent, one

of the other patents in suit in the MDL, or even alleged prior art cited by Cox in response to

---

[3] Sedna is reportedly a consortium formed by Comcast, Charter and Cox initially formed to
develop an interactive program guide that would not be viewed as infringing by Gemstar's
attorneys.  *See* "TV Gateway group's second chapter: as Sedna, consortium manages MSO
patents," Rembrandt Ex. F.  At some point, Sedna began managing a patent portfolio for
Comcast, Cox, and Charter.  *Id.*

REDACTED VERSION FILED 10/17/08

Rembrandt's invalidity interrogatories.  The subject matter of the patents reviewed is completely unrelated to the 627 Patent and the technology that it covers.

No confidential information was obtained by Woodcock patents about Cox's systems, equipment, source code, or business.  Rembrandt Ex. A at ¶ 24.  Indeed, Woodcock learned nothing about Cox's systems or about ████████████████████████████████ ████████████ *Id.* at ¶ 26.  (Notably, Sedna has recorded its patent assignments with the PTO, so the fact that Sedna owns such patents is clearly not confidential.)  Woodcock did not even learn if Cox ultimately ███████████████████, and Woodcock acquired no nonpublic knowledge about Sedna's operations, purpose or strategic plans, or about Cox's involvement, if any, with Sedna's operations, purpose, or strategic plans. *Id.*

Mr. Delgado argues that he "provided confidential information about Cox's legal and business strategies for ██████████████████████████████████." Delgado Decl. ¶ 13. Mr. Roccia says that is false, and that the only thing he or anyone else at Woodcock learned was that Cox was █████████ ████████████████████████████████████ ████████████ Rembrandt Ex. A at ¶¶ 24, 27.  That aside, Mr. Delgado never explains how ████████████" completely unrelated to the '627 or its subject matter or ████████████████ ████████████ could possibly involve confidential information that could be used to Cox's detriment in the '627 Patent Litigation.  Indeed, Cox has contended that all discovery relating in any way to Sedna is completely irrelevant to any issue in this case.  Rembrandt Ex. G at p. 3, No. 9 ("CoxCom objects to the Requests on the ground that they seek documents relating to Sedna and/or TV Gateway LLC, which is neither relevant to the subject matter of this case, nor reasonably calculated to lead to the discovery of admissible evidence.").  Accordingly, Cox is estopped from arguing that information about its ██████████████████" is substantially related

17

REDACTED VERSION FILED 10/17/08

to the 627 Patent Litigation. *American Sterilizer Co. v. Surgikos, Inc.*, 1992 U.S. Dist. LEXIS 21542, at *11-*13 (N.D. Tex. Jun. 12, 1992) (where movant had responded to discovery by arguing that other patents were not pertained to the litigation, movant had not met "heavy burden" of showing a substantial relationship).[4]

> **D.    The "Severe Sanction" of Disqualification is Unwarranted Because No Woodcock Attorney Has Provided or Will Provide any Cox Confidential Information to Rembrandt or to a Member of the 627 Patent Litigation Team**

Woodcock Washburn was retained in this matter on August 19, 2008.  Rembrandt Ex. A at ¶ 33.  Woodcock made a conscious effort not to put any attorney who worked on any Cox matter on the litigation team.  *Id.*  No confidential information regarding any Cox matter has been shared with any member of the litigation team.  *Id.* at ¶¶ 33, 34; Rembrandt Ex. E at ¶ 16.  With the exception of one preliminary meeting on August 25, 2008 that was attended by Mr. Roccia at which nothing about Cox was discussed, no Woodcock attorney who has worked on any Cox matter has had any involvement whatsoever in this litigation.  Rembrandt Ex. A at ¶¶ 33, 34.  Even if there were any confidential information that was somehow obtained by a Woodcock lawyer from Woodcock's unrelated work on Cox matters that could be used "to the detriment" of Cox in the 627 Patent Litigation, no such information has been or will be communicated to anyone working on the 627 Patent Litigation.  *Id.*; Rembrandt Ex. E at ¶ 16.  Such a "cone of silence" has been repeatedly held to alleviate any concerns about the transfer of

---

[4] Cox's reference to the "hot potato" doctrine is off-base.  Cox Br. at 14.  As Cox's own case law makes clear, this doctrine applies to situations in which a law firm terminates a client in the middle of a representation—typically during litigation--because a conflict arises regarding another matter for another client for which the firm has been engaged.  *Santacroce v. Neff*, 134 F. Supp. 2d 366 (D.N.J. 2001).  Here, the one pending matter that Woodcock was working on for Cox in 2008 concluded on March 11, 2008.  Only after that work was finished did Woodcock inform Cox that it did not want to take *additional* matters for Cox.  Moreover, Woodcock was not retained by Rembrandt in any litigation until 5 months later.  Woodcock therefore turned down additional work from Cox, taking the risk that it would not be retained by Rembrandt.

REDACTED VERSION FILED 10/17/08

a former client's confidential information, even where a substantial relationship *has* been found. *Nemours Found. v. Gilbane,* 632 F. Supp. at 418, 424, 428-29 (D. Del. 1986) (approving of the "cone of silence" approach to resolving a situation where a "substantial relationship" was found under Rule 1.9 and finding it "the more logically consistent, honest, and straightforward approach [than erecting a "Chinese wall"]"); *see also Panduit Corp. v. All States Plastic Mfg. Co.,* 744 F.2d 1564, 1580-81 (Fed. Cir. 1984) (reversing district court's disqualification order because no disqualification was warranted even though substantial relationship was found and no formal screen had been imposed because attorney had testified that he did not recall ever receiving confidences regarding former client and because the attorney was removed from the litigation presenting the conflict); *INA Underwriters Ins. Co. v. Rubin*, 635 F. Supp. 1, 12-13 (E.D. Pa. 1983) (where substantial relationship found, disqualification not granted because affidavit and representations from attorneys showed that substantive content of confidential meeting was not discussed between them); *Clark Capital Mgt. Group, Inc. v. Annuity Investors Life Ins. Co.*, 149 F. Supp. 2d 193, 198-99 (E.D. Pa. 2001).

The "cone of silence" imposed on all of those Woodcock Washburn attorneys who worked on Cox matters provides total protection to Cox, even though it needs none. Disqualification is a "severe sanction," *Elonex*, 142 F. Supp. 2d at 583, and it certainly is not warranted where there is no substantial relationship and where in fact no confidences have been disclosed.[5]  Cox's motion should be denied.

---

[5] At the end of its brief, Cox refers to "expedited discovery" but only if the Court finds that it "would be appropriate."  Cox Br. at 19-20.  Cox never actually explains why it thinks discovery might be "appropriate."  Moreover, Cox never raised this issue with Rembrandt's counsel. Accordingly, to the extent Cox is requesting discovery, that request should be denied.

REDACTED VERSION FILED 10/17/08

    /s/ Michael J. Bonella

Of COUNSEL:
Paul B. Milcetic, Esq. (pro hac vice)
Michael J. Bonella, Esq. (pro hac vice)
Albert J. Marcellino, Esq. (pro hac vice)
David J. Wolfsohn, Esq. (pro hac vice)
Erich M. Falke, Esq. (pro hac vice)
WOODCOCK WASHBURN LLP
Cira Centre. 12th Floor
2929 Arch Street
Philadelphia, PA 19104-2891
(215) 568-3100

CONNOLLY BOVE
LODGE & HUTZ LLP
Collins J. Seitz, Esq. (#2237)
Francis DiGiovanni, Esq. (#3189)
James D. Heisman, (#2746)
P.O. Box 2207
Wilmington, DE 19899
cseitz@cblh.com
fdigiovanni@cblh.com
jheisman@cblh.com

*Attorneys for Plaintiff*
*Rembrandt Technologies, LP*

October 9, 2008

REDACTED VERSION FILED 10/17/08

## CERTIFICATE OF SERVICE

I, Michael Bonella, hereby certify that on the 9th day of October, 2008, I caused a true

copy of the foregoing document to be served upon the following in the manner indicated:


### BY E-MAIL and HAND DELIVERY

Rodger D. Smith II
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
rsmith@mnat.com

### BY E-MAIL

Candice Decaire
Buddy Toliver
Nicole Morris
Kilpatrick & Stockton LLP
110 Peachtree Street, N.E.
Suite 2800
Atlanta, GA 30309
cdecaire@kilpatrickstockton.com
btoliver@kilpatrickstockton.com
nmorris@kilpatrickstockton.com


By:   */s/ Michael J. Bonella*
      Michael J. Bonella