IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| IN RE: REMBRANDT TECHNOLOGIES, | ) | |
| PATENT LITIGATION | ) | MDL Docket No. 07-md-1848 (GMS) |
| | ) | |

## **ORDER**

WHEREAS, on November 16, 2009, All Other Parties[1] ("AOPs") filed a Motion for a Determination That This Is an Exceptional Case and an Award of Attorneys' And Experts' Fees and Costs ("AOPs' Motion") (D.I. 883);

WHEREAS, on November 16, 2009, the Adelphia defendants[2] also filed a Motion for an Award of Attorneys' and Experts' Fees and Costs ("Adelphia's Motion") (together with AOPs' Motion, "Defendants' Motions") (D.I. 887);

WHEREAS, on July 8, 2011, the court issued an Order denying the defendants' motion for summary judgment of noninfringement of U.S. Patent No. 5,243,657 (the "'657 Patent") (D.I. 920);

WHEREAS, on July 13, 2011, the court struck the Defendants' Motions as premature in light of the (at the time) live dispute regarding the '657 Patent (D.I. 921);

WHEREAS, on September 7, 2011, the court entered the parties' Stipulation for Entry of Final Judgment and Order ("the Stipulation"). (D.I. 926.) The Stipulation for Entry of Final Judgment and Order provides that "[p]ursuant to Federal Rule of Civil Procedure Rule 54(d)(2)(B), AOPs and Adelphia individually may renew their respective motions for awards of attorneys' and experts' fees and costs" and that:

---

[1] At the outset of litigation, the parties submitted a Joint Status Report establishing that "all parties adverse to Rembrandt, whether they are defendants or declaratory relief claimants," would be referred to as "All Other Parties." (D.I. 26 at 1.)

[2] Adelphia Communications Corporation and Adelphia Consolidation LLC.

> To minimize the burden on the Court and the parties, the motions, briefing and any supporting material filed by the AOPs (including Adelphia) and Rembrandt earlier in this case shall be deemed *re-filed* as of the date of this Stipulation For Final Judgment and Order, rendering these motions ripe for determination by the Court.

(D.I. 926 at ¶ 10 (emphasis added));

WHEREAS, on December 6, 2012, the court issued an order re-confirming that the Defendants' Motions were ripe for adjudication, as of September 7, 2011, and that no further action was required from the parties (D.I. 935);

WHEREAS, on February 10, 2014, the court issued an Order and Notice Regarding Return of Sealed Documents, which included, among others, the parties' papers in support of and in opposition to the Defendants' Motions (D.I. 939);

WHEREAS, the court having considered the parties' motions, briefing, supporting documents, and letters;

IT IS HEREBY ORDERED THAT:

1. The Defendants' Motions remain ripe for adjudication;[3]

2. AOPs' Motion (D.I. 883) is GRANTED;[4]

---

[3] The court's December 6, 2012, Order established that the Defendants' Motions remained "live," without additional action from the parties. The court's administrative Order on February 10, 2014, was not an indication that the Defendants' Motions were no longer being considered, and the court did not view the defendants' acceptance of their returned documents as an express or implied waiver. Rembrandt is correct that the Defendants' Motions having been pending for several years, but not due to any inaction on the part of the defendants. Rather, the delay was regrettably due to the court's own administrative carelessness.

[4] "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. Although the parties briefed the Defendants' Motions back in 2009, in 2014 the U.S. Supreme Court revisited the standard for an "exceptional case" under § 285:

> [A]n "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

*See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). *Octane Fitness* also clarified that parties seeking fees under § 285 need only establish their entitlement by a preponderance of the evidence. *Id.* at 1758.

2

  3. Adelphia's MOTION (D.I. 887) is DENIED as moot;[5]

---

  In light of the evidence adduced by AOPs, this case is indeed exceptional. First, the evidence shows that Rembrandt improperly compensated its fact witnesses, in violation of ethical rules of conduct. *See* Model Rules of Prof'l Conduct R. 3.4(b) (A lawyer shall not . . . offer an inducement to a witness that is prohibited by law."); *see also id.* cmt. 3 ("The common law rule in most jurisdictions is that it is improper to pay an occurrence witness any fee for testifying . . . ."). In view of the evidence, the court finds that the fee structure for Rembrandt's fact witnesses was unreasonable and improperly linked to the outcome of the case, giving rise to a considerable risk of tainted testimony.
  Second, the court is convinced that Rembrandt engaged in (or failed to prevent) widespread document spoliation, over a number of years. Rembrandt argues that it did not directly destroy any documents and that it lacked control over those who did actually commit the spoliation. But the court is persuaded by a preponderance of the evidence that Rembrandt did have control and did anticipate forthcoming litigation such that it had a duty to preserve or instruct others to retain certain documents. AOPs' inability to conduct full discovery of relevant documents was prejudicial.
  Finally, Rembrandt should have known that the "revived patents" were unenforceable. The parties essentially agree on the underlying facts: third-party Paradyne failed to pay maintenance fees on two patents resulting in the patents expiring. Paradyne subsequently revived the abandoned patents, asserting that the delayed payments had been unintentional. Paradyne then sold the two patents to Rembrandt who asserted them in these actions. The evidence shows that the Paradyne employees fraudulently revived the abandoned patents—*i.e.*, the delay was not unintentional but deliberate. Notwithstanding the fact that Rembrandt itself had no dealings with the PTO concerning the two patents, the court finds that Rembrandt had sufficient knowledge to learn of the fraud. And the fact witnesses—discussed above—were the very same Paradyne employees who engaged in the inequitable conduct. "[Rembrandt] is not so removed from the underlying conduct rendering this an exceptional case under § 285 that it should be insulated from the imposition of a fee sanction." *See Synthon IP, Inc. v. Pfizer Inc.*, 484 F. Supp. 2d 437, 443 (E.D. Va. 2007), *aff'd*, 281 F. App'x 995 (Fed. Cir. 2008).
  AOPs also contend that Rembrandt "fabricated" a request for injunctive relief solely as a scare tactic to exact higher settlements. AOPs acknowledge that Rembrandt made at least some effort to compete in the market, even if only minimally. The court cannot say Rembrandt's prayer for injunctive relief was objectively baseless. And if the threat of an injunction was as transparent as they make it out to be, AOPs would not have been concerned. The court does not view this as a meaningful consideration in the overall "exceptional case" calculus.
  Nonetheless, the court still finds that the evidence amply supports a finding that this case is exceptional. Rembrandt attempts to wipe its hands of all wrongdoing, pointing the finger at third parties. But at a certain point, Rembrandt must take responsibility for its own massive litigation. If it had only been a single issue, perhaps the court's view would be different. But the "totality of the circumstances"— the wrongful inducements, the spoliation, and the assertion of fraudulently revived patents—supports AOPs' characterization of this case as "exceptional"—it "stands out." *See Octane Fitness*, 134 S. Ct. at 1756. The court will grant AOPs' Motion.

 [5] In addition to AOPs' Motion (with which Adelphia joins), Adelphia filed a separate motion asserting individual bases for finding its case exceptional. Whereas AOPs' Motion focused on the "the unreasonable manner in which the case was litigated" (*i.e.*, spoliation, fraud, improper compensation), Adelphia's Motion depends primarily on the "substantive strength of [Rembrandt's] litigating position (considering both the governing law and the facts of the case)." *See Octane Fitness*, 134 S. Ct. at 1756.
 Because the court grants AOPs' Motion, Adelphia's separate motion is moot—it cannot recover on both motions. The court, however, will briefly discuss some of Adelphia's substantive concerns.
 First, Rembrandt only pursued pre-suit damages against Adelphia. As such, Adelphia contends that Rembrandt's failure to comply with the marking statute was fatal to its claims. 35 U.S.C. § 287 ("In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice."). The parties, however, appear to have a good faith dispute over which side bears the burden of identifying historical products embodying the patents. The court finds that there is insufficient evidence that Rembrandt asserted its claims against Adelphia in bad faith, even if ultimately mistaken about the law. The court cannot say Rembrandt's litigation position is exceptionally unreasonable.

4. AOPs shall submit documentation detailing its requests, along with a proposed order, on or before September 30, 2015. Rembrandt shall have leave to file objections within thirty days of AOPs' submission of documentation.[6]

Dated: August 20, 2015

UNITED STATES DISTRICT JUDGE

---

Second, Adelphia contends that Rembrandt possessed evidence of an on-sale bar, which invalidates two of the asserted patents. This, however, is not the appropriate forum for the court to address what is an issue of patent validity. The patents in question *remain valid*—as of yet, this court has not ruled otherwise, nor has any other. The court is not comfortable holding that Rembrandt's assertion of still-valid patents was objectively baseless. None of Adelphia's cited cases involve a set of facts as this. *See Microstrategy Inc. v. Crystal Decisions, Inc.*, 555 F. Supp. 2d 475, 479 (D. Del. 2008) (rejecting the plaintiff's "presumption of validity" argument where it "failed to answer with any evidence" and where the "court *previously held any claims on the [asserted patent] invalid* given the clear and convincing evidence of anticipation" (emphasis added)).

Finally, Adelphia contends that Rembrandt's bad-faith conduct before the Bankruptcy Court for the Southern District of New York warrants an exceptional case finding. The court declines to consider actions that occurred before another court.

[6] Rembrandt correctly notes that "[p]rompt filing affords an opportunity for the court to resolve fee disputes shortly after trial, while the services performed are freshly in mind." Fed. R. Civ. P. 54 advisory committee's notes. Indeed, AOPs' filings were prompt, and AOPs provided evidence supporting "a fair estimate." *See id.* Unfortunately, the delay in adjudication is primarily the fault of the court.

4